1    **ZOLKIN TALERICO LLP**
     David B. Zolkin, State Bar No. 155410
2    *dzolkin@ztlegal.com*
     Derrick Talerico, State Bar No. 223763
3    *dtalerico@ztlegal.com*
     12121 Wilshire Blvd., Suite 1120
4    Los Angeles, California 90025
     Telephone:    424 500-8552
5

6    Attorneys for Appellants Jona Rechnitz
     and Rachel Rechnitz
7
     **SMILEY WANG-EKVALL, LLP**
8    Robert S. Marticello, State Bar No. 244256
     *rmarticello@swelawfirm.com*
9    Michael L. Simon, State Bar No. 300822
     *msimon@swelawfirm.com*
10   3200 Park Center Drive, Suite 250
     Costa Mesa, California 92626
11   Telephone:    714 445-1000
     Facsimile:    714 445-1002
12                                                              CV20-6183 DOC
     Attorneys for Appellant Jadelle Jewelry and
13   Diamonds, LLC

14

15                  **UNITED STATES BANKRUPTCY APPELLATE PANEL**

16                      **FOR THE NINTH CIRCUIT COURT OF APPEALS**

17

18   In re                                    BAP Case No. CC-20-1153

19   JADELLE JEWELRY AND DIAMONDS,             USBC Case No. 2:20-bk-13530-BR
     LLC,
20                                             Chapter 7
                              Debtor.
21                                             **APPELLANTS' JOINT EMERGENCY
                                               MOTION PURSUANT TO FEDERAL
22                                             RULE OF BANKRUPTCY PROCEDURE
                                               8007 FOR STAY PENDING APPEAL;
23                                             AND MEMORANDUM OF POINTS AND
                                               AUTHORITIES**
24
                                               [Appendix of Exhibits, Declaration of Robert
25                                             S. Marticello, Declaration of Michael V
                                               Schafler, and Request for Judicial Notice filed
26                                             concurrently herewith]

27

28

---

*(Left margin, vertical text):* SMILEY WANG-EKVALL, LLP · 3200 Park Center Drive, Suite 250 · Costa Mesa, California 92626 · Tel 714 445-1000 • Fax 714 445-1002

*(Stamp):* **FILED** CLERK, U.S. DISTRICT COURT / 7/10/20 / CENTRAL DISTRICT OF CALIFORNIA / BY: CP DEPUTY

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................2

II.   BACKGROUND ..........................................................................................5

      A.   The Involuntary Petition..................................................................5

      B.   The Pending Lawsuits by the Ineligible Creditors .........................5

           1.   The Noval Action ...................................................................5

           2.   The Marco Action ..................................................................6

           3.   First International, Inc. ...........................................................7

      C.   The Criminal Investigation..............................................................8

      D.   Commencement of the Involuntary Case ........................................8

      E.   The Hearing on the Motion to Dismiss and the Court's Order.................................9

      F.   The Ineligible Creditors Immediately Begin to Take Advantage of the Order........10

      G.   The Entry of the Order For Relief .................................................11

      H.   The Appointment of the Trustee ...................................................12

      I.   The Rechnitz Parties Appeal .........................................................13

      J.   The Debtor's Emergency Motion for a Stay Pending Appeal to the Bankruptcy Court ...............13

      K.   The Basis for the Order for Relief .................................................14

III.  THE LEGAL STANDARD FOR STAYING A CASE PENDING APPEAL ...................14

IV.   THE DEBTOR has a strong likelihood of success on appeal .................15

      A.   The Order for Relief is Appealable ...............................................15

      B.   The Appellants Have Standing to Appeal the Order for Relief .............................16

      C.   The Order For Relief Must Be Vacated .........................................17

           1.   Entry of the Order for Relief Violated the Code.............................17

           2.   The Order For Relief Cannot Be Justified as a Terminating Sanction.........19

           3.   The Order Is Void for Violation of Due Process .........................22

      D.   The Court's Denial of the Motion to Dismiss Was In Error....................................23

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

|     | 1.  | The Court Was Required to Dismiss the Case Because the Ineligible Creditors Lacked Statutory Standing | 23 |

1.  The Court Was Required to Dismiss the Case Because the Ineligible Creditors Lacked Statutory Standing ........................................23

2.  The Court Was Required to Enter a Dispositive Order Dismissing the Case Under the Bankruptcy Rules...........................................23

V.      The Debtor Will Be Irreparably Harmed Absent a Stay .....................................26

VI.     The Ineligible Creditors Will Not Be Substantially Injured by a Stay.................28

VII.    A Stay Will Not Harm Non-Parties........................................................................29

VIII.   The Public Interest Weighs In Favor of a Stay ....................................................29

IX.     The Debtor Can Appeal Without the Trustee's Consent ......................................30

A.  The Ninth Circuit has Permitted Debtors to Appeal Orders for Relief...................31

B.  The Panel has Permitted a Debtor to Appeal a Conversion Order Over Trustee Opposition ...............................................................................32

C.  The Bankruptcy Code Supports the Debtor's Right to Appeal Without the Trustee's Consent.........................................................................33

D.  The Cases Cited by the Court are Distinguishable...................................................37

X.      CONCLUSION ......................................................................................................39

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE NINTH CIRCUIT COURT OF APPEALS AND THE OTHER PARTIES IN INTEREST:**

Appellants Rachel Rechnitz, Jona Rechnitz, and Jadelle Jewelry and Diamonds, LLC (the "Debtor"), hereby file this joint emergency motion (the "Motion") for a stay of the case pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8007.  Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International, Inc. ("First International"), shall be collectively referred to as the "Ineligible Creditors."  In support of this Motion, the Appellants submit the concurrently-filed Appendix of Exhibits, Declaration of Robert S. Marticello, Declaration of Michael V Schafler, and Request for Judicial Notice, and the following memorandum of points and authorities.

On June 19, 2020, the Debtor filed a notice of appeal (the "Appeal") to the Bankruptcy Appellate Panel for the Ninth Circuit (the "Panel") of the following four orders:

1. The order entered on June 10, 2020 (the "June 10 Order") requiring that Jona Rechnitz and Rachel Rechnitz file a joint declaration under penalty of perjury identifying an providing certain information regarding the alleged creditors of the Debtor.  (*See* Appendix of Exhibits,[1] Ex. 12 at Bates Stamps 459-462.)

2. The order entered on June 16, 2020, (the "Reconsideration Order") denying the Debtor's motion for reconsideration of the June 10 Order or, alternatively, for a stay pending the ongoing criminal investigation.  (*See* Ex. 16 at Bates Stamps 516-520.)

3. The order entered on June 16, 2020 (the "June 16 Order") directing the entry of an order for relief.  (*See* Ex. 17 at Bates Stamps 521-523.)

4. The order for relief entered on June 16, 2020 (the "Order for Relief").  (*See* Ex. 18 at Bates Stamp 524.)

On June 30, 2020, Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz Parties" and together with the Debtor, the "Appellants") each filed a notice of appeal of the same four orders in their own right.

---

[1]    Unless otherwise expressly provided herein, all exhibit references are to the concurrently filed Appendix of Exhibits.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# MEMORANDUM AND POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court erred.  First, the Court erred by entering the Order for Relief when *none of the elements required by the Code had been satisfied*.  Second, the Court erred by not granting the Debtor's motion to dismiss when it determined that all of the petitioning creditors were ineligible and lacked standing to commence the case under the Ninth Circuit's recent decision *Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019).

This case was commenced by three petitioning creditors.  The Debtor timely contested the involuntary petition with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Relying on *Blixseth*, the Debtor argued that each of the petitioning creditors lacked standing to commence the case.  At the hearing on the Debtor's motion, *the Court agreed*, determining that the claims of all three petitioning creditors were subject to bona fide disputes based on their own judicial admissions and the facts subject to judicial notice.  The Court did not, however, grant the motion and dismiss the case.  Instead, the Court *sua sponte* ordered the Rechnitz Parties—two non-debtors who were not present or represented at the hearing—to file a joint declaration under penalty of perjury within seven days identifying all of the Debtor's alleged creditors.  The Court further ordered that if the Rechnitz Parties did not file the joint declaration for any reason, then it would enter an order for relief against the Debtor.  The Rechnitz Parties, on advice of non-bankruptcy counsel, exercised their Fifth Amendment rights and declined to file the joint declaration.  The Court entered the June 16 Order directing the entry of the Order for Relief (eliminating the Debtor's rights to answer, to a trial, and to contest the involuntary petition).

A stay pending appeal is appropriate because there is a strong likelihood that the Appellants will succeed on appeal.  The entry of the Order for Relief is contrary to the express requirements of the Code.  An involuntary case must be commenced by the requisite number of eligible petitioning creditors.  *See* 11 U.S.C. § 303(b).  If a putative debtor timely contests the involuntary petition, then a bankruptcy court can order relief "**after trial**" and "**only if**" it finds that

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2830638.1

2

EMERGENCY MOTION

1    the debtor is generally not paying its undisputed debts as they become due. *See* 11 U.S.C. §

2    303(h) (emphasis added). Here, none of the statutory requirements were satisfied:

3         1.   The Debtor timely contested the involuntary petition by its motion to dismiss.

4         2.   There were no eligible petitioning creditors pursuant to § 303(b).

5         3.   There was no trial.

6         4.   The Court did not find, as required by § 303(h), that the Debtor is not paying its

7              undisputed debts as they come due.

8    As such, the entry of the Order for Relief violated the Code.

9         The Court did not articulate the legal basis for the entry of the Order for Relief. However,

10   as an involuntary case proceeds as a trial, the entry of the order for relief can be viewed only as a

11   terminating sanction. The Court entered the Order for Relief as a terminating sanction against the

12   Debtor because someone else, the Rechnitz Parties, exercised their Fifth Amendment rights. The

13   entry of the Order for Relief exceeded the Court's inherent authority to sanction a party in at least

14   three respects. First, the Court lacks the authority to issue sanctions that are contrary to the

15   express provisions of the Code under the Supreme Court's decision in *Law v. Siegel*. Second, the

16   entry of the Order for Relief was not in response to the type of "extreme circumstances" (*i.e.*,

17   willful deception of the Court) required by the Ninth Circuit to justify terminating sanctions.

18   Third, the Ninth Circuit has made clear that imposing the harshest sanction—a terminating

19   sanction—in response to a proper exercise of the Fifth Amendment is an abuse of discretion.

20   Thus, the entry of the Order for Relief is not authorized under the Code and exceeded the Court's

21   authority. The Order for Relief must be vacated.

22        The Court was required to grant the Debtor's motion to dismiss. This case was not

23   commenced by a single creditor with standing to do so. Under controlling Ninth Circuit law, a

24   bona fide dispute as to any portion of a creditor's claim strips the creditor of statutory standing

25   under § 303. The Court found that the Ineligible Creditors lacked standing to commence the case

26   because their respective claims are subject to bona fide disputes and the Court did so based on the

27   standard for a Rule 12(b)(6) motion to dismiss. A lack of statutory standing *requires* dismissal for

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  failure to state a claim.  Moreover, because the Court concluded that the Debtor's motion to

2  dismiss had merit, it was required by Bankruptcy Rule 1013(a) and Ninth Circuit precedent to

3  grant the motion and dismiss the case without delay.  For all these reasons, there is a strong

4  likelihood that the Order for Relief will be vacated and that the case will be dismissed.

5  A stay is necessary to avoid irreparable harm.  An involuntary bankruptcy is an "extreme

6  remedy with dire consequences . . . ."  *See In re Anmuth Holdings LLC*, 600 B.R. 168, 188 (Bankr.

7  E.D.N.Y. 2019) (internal quotation marks omitted).  The entry of an order for relief may

8  "seriously affect substantive rights" and has "a great potential for irreparable injury. . . ."  *See In re*

9  *Mason*, 709 F.2d 1313, 1316-17 (9th Cir. 1983).  Debtors are dispossessed of their property,

10  operations cease, and a trustee is appointed to gather and liquidate assets.  *See id.* at 1317.

11  Placing a company in bankruptcy against its will and the legal ramifications that automatically and

12  immediately arise, constitute, in and of themselves, irreparable harm.  The irreparable harm caused

13  by a case proceeding is much greater where, as here, the case was commenced by three ineligible

14  creditors and *none* of the elements required by the Code for the entry of an order for relief were

15  satisfied.  The Debtor is being subjected to a bankruptcy case that should have never been

16  commenced.

17  The Debtor will continue to be irreparably harmed as the bankruptcy case moves forward.

18  For example, the Rechnitz Parties, on advice of counsel, have invoked their Fifth Amendment

19  rights with respect to the verified creditor list, schedules, and statements required by the

20  Bankruptcy Rules.  As such, the Debtor has been unable to comply with these particular

21  requirements, resulting in accusations from the Ineligible Creditors that the Debtor is violating

22  court orders.  Moreover, the Ineligible Creditors will use the case to obtain free discovery to which

23  they would not otherwise be entitled and to further their respective lawsuits in other forums.

24  There is also a risk that absent a stay pending appeal the case will so progress by the trustee's

25  administration of the case that the Appeal becomes practically moot.

26  In contrast, the Ineligible Creditors will not be harmed by a stay—they had no standing or

27  right to an order for relief in the first place.  Moreover, the Ineligible Creditors have alternative

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

forums for their disputes as each has filed a lawsuit relating to the same disputed claim upon which the bankruptcy case was commenced.  Absent a stay, the appointed trustee and his professionals will continue to administer the case, incurring administrative fees that will not be paid if the Order for Relief is vacated.  A stay merely preserves the *status quo*, minimizes unnecessary expenses, and furthers judicial economy pending the Appeal.  Given the extreme nature and serious consequences of the entry of an order for relief, the balance of harms weighs heavily in favor of staying this case pending appeal.  Accordingly, the Appellants request that the Panel stay the Order for Relief pending the Appeal.

## II.    BACKGROUND

### A.    The Involuntary Petition

The Debtor is a Delaware limited liability company.  Rachel Rechnitz is the managing member of the Debtor.  Jona Rechnitz is Rachel's husband.

On April 6, 2020 (the "Petition Date"), the Petitioning Creditors filed an involuntary chapter 7 petition against the Debtor [Docket No. 1] (the "Involuntary Petition"), alleging claims against the Debtor under penalty of perjury in the following amounts:

| Name of Petitioner | Claim Amount |
| --- | --- |
| Victor Franco Noval | $5,800,000 |
| Peter Marco, LLC | $7,676,744 |
| First International Diamond, Inc. | $1,976,225 |

(*See* Ex. 1 at Bates Stamp 7.)

### B.    The Pending Lawsuits by the Ineligible Creditors

#### 1.    The Noval Action

On February 10, 2020, Noval filed a complaint in superior court against the Debtor, the Rechnitz Parties, and other defendants (the "Noval Action").  Noval asserts that he loaned $5.8 million to the Debtor.  (*See* Ex. 2 at Bates Stamps 22-23, ¶¶ 15-17.)  However, Noval seeks damages "in an amount to be proven at trial, but at least $7,000,000[.]"  (*See id.* at Bates Stamp

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

31, ¶ 67, and Bates Stamp 33.)  According to the Noval Complaint, the $7,000,000 in purported damages constitutes the alleged value of the collateral for the loans.  (*See id.* at Bates Stamp 24, ¶ 29.)

Prior to commencing the Noval Action, Noval filed a police report with the Beverly Hills Police.  (*See Ex. id.* at Bates Stamp 25, ¶ 37.)  According to Noval, he filed his lawsuit to create a criminal investigation, as opposed to attempting to collect the amount allegedly due.  (*See, e.g.*, *id.*, at Bates Stamp 27, ¶ 49, "At this point, Plaintiff has no realistic belief that Rechnitz will ever pay him back . . . ."; *see also id.* at Bates Stamp 29, ¶ 53, "Plaintiff is hopeful that the publication of this action will cause more victims . . . to report these matters to proper authorities.")  As discussed in further detail below, Noval's disputed allegations led to a criminal investigation that has no merit, but, has nonetheless prejudiced the Appellants in their civil proceedings and in connection with the Involuntary Petition.

On March 10, 2020, less than one month before the Petition Date, the court in the Noval Action entered an order temporarily staying the case pending the hearing on the defendants' motion for a stay of proceedings.  (*See* Minute Order, Ex. 3, at Bates Stamp 53.)  The defendants sought a stay to protect their constitutional rights due to the ongoing criminal investigation manufactured by Noval.  The hearing on the motion for stay of proceedings is currently set for November 3, 2020.  (*See* Noval Action Docket, Ex. 4 at Bates Stamp 55.)

### 2.   The Marco Action

On March 18, 2020, a third party filed a complaint against Marco in district court seeking damages of $1.13 million.  (*See* Ex. 5 at Bates Stamp 68; *see also* Ex. 6 at Bates Stamp 73, ¶ 21.)  On April 24, 2020, seven days after the Involuntary Petition was filed, Marco filed a cross complaint (the "Marco Complaint") against the Rechnitz Parties and Levin Prado (collectively, the "Marco Complaint Defendants").  (*See* Ex. 6 at Bates Stamp 69.)  Marco did not name the Debtor as a defendant in the Marco Complaint.  (*See id.* at Bates Stamp 69.)  In the Marco Complaint, Marco alleges that he consigned jewelry to Mr. Rechnitz, as opposed to the Debtor.  (*See id.* at Bates Stamp 79, ¶ 33, "Accordingly, Marco LLC consigned the following pieces of Consigned

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Jewelry **to Rechnitz**." (emphasis added); *see also id.* at Bates Stamp 80, ¶ 35, and at Bates Stamps 99-100, ¶ 103.)  In addition, despite listing his claim in the amount of $7,676,744 in the Involuntary Petition, in the Marco Action, Marco requests damages in the lesser amount of $6,950,444.40, subject to proof at trial.  (*See id.* at Bates Stamp 97, ¶ 90.)  Marco admits that it asserted the wrong claim amount in the Involuntary Petition:  "The petitioning creditors are . . . Peter Marco, LLC, with Trade Debt/Damages of $7,676,744.00 **(The correct amount is $6,950,444.40)**." (*See id.* at Bates Stamp 71, ¶ 9.)

On May 18, 2020, the Marco Defendants filed a motion to stay the Marco Action pending the criminal investigation, which Marco opposed.  That motion is currently under submission with the District Court.

### 3. First International, Inc.

Although First International had not commenced any litigation against the Debtor, in the Involuntary Petition, First International alleged a claim in the amount of $1,976,225.  However, among other disputes, First International's asserted claim primarily arises from the alleged consignment of one of the same precious stones that is subject to the Marco Action discussed above.[2]

After the entry of the Order for Relief, on June 24, 2020, First International and Oved Anter, its principal owner and president, commenced a lawsuit against the Rechnitz Parties and others in superior court.  In the complaint, Mr. Anter and First International allege that First International consigned to the Debtor and Mr. Rechnitz seven pieces of jewelry totaling $2,826,890.00.  (*See* Ex. 7 at Bates Stamp 170, ¶ 42.)  These are the same pieces of jewelry that Mr. Anter testified were consigned to only the Debtor and that form the basis of First International's asserted claim against the Debtor in connection with the involuntary case.  (*See* Ex. 9 at Bates stamp 312, ¶ 4.)  After taking into consideration items that Mr. Anter and First

---

[2]     Marco and First International seek to collect, in part, on account of the same claim.  Marco's lawsuit includes a stone owned by First International at the stated value of $1,333,695.00.  (*See* Ex. 6 at Bates Stamp 80, lines 9-10.) First International's claim is primarily based on this same stone with a stated value of $1,200,000.  (*See* Ex. 9 at Bates Stamp 312 ¶ 5 and Ex. B at Bates Stamp 335.)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   International recovered and are now in their possession, Mr. Anter and First International seek to

2   recover damages in an amount to be proven at trial, but at least $1,976,225.00.  (*See* Ex. 7 at Bates

3   Stamp 179, ¶ 51, and at Bates Stamp 200, ¶¶ 108 & 112, and at Bates Stamp 212.)

4   **C.**      **The Criminal Investigation**

5          The Appellants first became aware of the ongoing criminal investigation through a draft of

6   Noval's complaint on February 4, 2020.  (Schafler Decl. at Ex. B, Cohen Decl. at ¶ 9.)  As

7   discussed above, the Noval Complaint indicates that Noval had filed a police report with the

8   Beverly Hills Police Department ("BHPD") concerning the allegations in the draft complaint.  (*See*

9   *id.*; *see also* Ex. 2 at Bates Stamp 25, at ¶ 37.)  The Appellants, through counsel, confirmed the

10  status of a criminal investigation related to the jewelry business by conferring with the BHPD and

11  the United States Attorney's Office.  (*See* Schafler Decl. at ¶ 3.)  However, the criminal

12  investigation was manufactured by Noval with his disputed and unproven allegations and no

13  charges have been filed.  The Appellants firmly believe that Noval triggered the criminal

14  investigation to prejudice them in connection with the civil litigation and the bankruptcy case.

15  The Court's orders, including the entry of the Order for Relief without trial or the satisfaction of

16  the elements in the Code, tends to suggest that the existence of the investigation and Ineligible

17  Creditors' disputed and inflammatory *allegations* had the desired effect.

18  **D.**      **Commencement of the Involuntary Case**

19         On April 6, 2020, less than one month after the Noval Action was stayed, the Ineligible

20  Creditors filed the Involuntary Petition.  A response to the Involuntary Petition was due on May 1,

21  2020, *i.e.*, within 21 days of service, plus three additional days because service was by mail.  *See*

22  Fed. R. Bankr. P. 1011 & 9006(f).  On May 1, 2020, the Debtor filed a motion to dismiss the case

23  for failure to state a claim under Rule 12(b)(6) [Docket No. 8] (the "Motion to Dismiss").  (*See* Ex.

24  8 at Bates Stamps 294-303.)  By the Motion to Dismiss, the Debtor also sought dismissal on the

25  grounds that the Ineligible Creditors filed the case in bad faith.  (*See id.* at Bates Stamps 303-306.)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**E.**     **The Hearing on the Motion to Dismiss and the Court's Order**

On June 9, 2020, at 10:00 a.m., the Court heard two motions, the Motion to Dismiss and the Ineligible Creditors' motion for the appointment of an interim trustee [Docket No. 12] (the "Trustee Motion").  A status conference was also on calendar that day.

With respect to the Motion to Dismiss, the Court determined that, as argued by the Debtor, the Ineligible Creditors are ineligible to be petitioning creditors because their claims are subject to bona fide disputes as to amount and/or liability based on the Ineligible Creditors' judicial admissions and the facts subject to judicial notice. (*See* Ex. 11 at Bates Stamps 396, lines 1-23; at Bates Stamp 398, lines 8-21; at Bates Stamp 402, lines 7-18; at Bates Stamp 402, line 24 - Bates Stamp 403, line 5; at Bates Stamp 412, lines 13-16; at Bates Stamp 426, lines 14-18; and Bates Stamp 451, lines 20-22.)  The Court also determined that the Ineligible Creditors were not allowed to amend the Involuntary Petition. (*See id.* at Bates Stamp 426, lines 18-20.)

The Court indicated that it was denying the Trustee Motion without prejudice. (*See id.* at Bate Stamp 432, lines 2-4.)  The Court stated that it did not see the need for a trustee because, based on the Ineligible Creditors' allegations, any trustee would be pursuing avoidance claims. (*See id.* at Bates Stamp 431, line 14 to Bates Stamp 432, line 4.)  Moreover, the Court sustained the majority of the evidentiary objections of the Debtor to the alleged evidence submitted by the Ineligible Creditors in support of their motion. (*See id.* at Bates Stamps 378-391.)  This included striking the purported evidence of Jona Rechnitz's prior unrelated conviction and sustaining objections to their improper testimony, which was merely a recitation of the arguments in the Ineligible Creditors' filed complaints. (*See id.* at Bates Stamp 389, lines 3-16.)

Notwithstanding the conclusion that the Ineligible Creditors had no standing to commence this case, the Court did not grant the Motion to Dismiss.  Instead, the Court ordered, *sua sponte* and without briefing, the Rechnitz Parties, and not the Debtor, to sign and file, under penalty of perjury, a joint declaration identifying each and every one of the Debtor's creditors as of the petition date of April 6, 2020. (*See id.* at Bates Stamp 430, lines 15-24; Ex. 12 at Bates Stamp 461, § 1.)  The Rechnitz Parties were not present or represented at the June 9 hearing. (*See* Ex. 11

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

at 367-458.)  The Court required that the declaration be filed within seven days of the hearing, by 3:00 p.m. on Tuesday, June 16, 2020.  (*See* Ex. 12 at Bates Stamp 461, § 2.)  The June 10 Order resulting from the June 9 hearing states that if the Rechnitz Parties failed to file the joint declaration by the deadline, the Court would deny the Motion to Dismiss and "immediately enter an order for relief in this case."  (*See id.* at Bates Stamps 461-462, § 3.)   The Court stated that it would enter the order for relief even if the joint declaration was not filed because the Rechnitz Parties invoked their Fifth Amendment rights.  (*See* Ex. 11 at Bates Stamp 450, lines 1-3.)  The Court did not make any findings of fact to support the entry of an order for relief or the imposition of terminating sanctions against Debtor.  (*See* Ex. 11 at 367-458.)

The June 10 Order provided the Ineligible Creditors with an additional 60 days to contact other creditors in order to determine whether any such creditors were willing to join the petition. (*See* Ex. 12 at Bates Stamp 462, § 4.a.)  Any joinders were to be filed by 3:00 p.m. on August 14, 2020.  (*See id*.)  The June 10 Order also authorized the Ineligible Creditors to conduct certain limited discovery if the joint declaration was filed by the Rechnitz Parties.  (*See id.* at Bates Stamp 462, § 4.b.)

### F.   The Ineligible Creditors Immediately Begin to Take Advantage of the Order

The Ineligible Creditors immediately began using the June 10 Order as a sword.  On June 11, 2020, the day after the entry of the June 10 Order, Marco's counsel filed a declaration in his pending lawsuit against Rechnitz Parties, among others, related to the motion for a stay of that case stating as follows:

> The point being, is that by filing their Joint Declarations sworn under penalty of perjury regarding their defrauded creditors (like Marco), and their having to be deposed by Petitioning Creditors re same. Rechnitz will *de facto*, have to ***waive*** their Fifth amendment rights against self-incrimination from criminal liability that they fear in this Motion. If indeed, Rechnitz complies with Judge Russell's Order, this Motion for Stay would be moot.

(*See* Ex. 13 at Bates Stamps 465-466 (emphasis in original).)

The Ineligible Creditors also began seeking discovery that was broader and more complicated than contemplated by the Court.  (*See* Ex. 14 at Bates Stamps 474-475.)  The

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Ineligible Creditors reiterated their position that if the Rechnitz Parties complied with the June 10 Order, they will have waived their Fifth Amendment rights "as to the entire subject matter which will be a large swath of questions about the various creditors and Jona and Rachel's credibility is fair game and at issue." (*See id*. at Bates Stamp 474.)

### G.     The Entry of the Order For Relief

There was a week between the June 9 hearing on the Motion to Dismiss and the June 16 deadline to file the joint declaration.  The day prior to the deadline, on June 15, 2020, the Debtor filed a motion for reconsideration of the June 10 Order or, alternatively, to stay the case pending the conclusion of the criminal investigation (the "Reconsideration Motion").  The Reconsideration Motion highlighted the untenable position in which the Appellants were placed.  (*See* Ex. 15 at Bates Stamps 509-511.)  The Rechnitz Parties could either file the joint declaration and, as asserted by the Ineligible Creditors, potentially waive their Fifth Amendment rights in the bankruptcy case and the pending lawsuits, or, alternatively, invoke their Fifth Amendment rights and risk a terminating sanction against the Debtor in the form of an order for relief.  (*See id.* at 509-510.)  As indicated in the Reconsideration Motion, the Rechnitz Parties, on advice of counsel, invoked their Fifth Amendment rights and did not file the joint declaration demanded by the Court.  (*See* Ex. 15 at Bates Stamp 502.)

On June 16, 2020, after the 3:00 p.m. deadline for the filing of the joint declaration passed, the Court entered the order denying the Reconsideration Motion.  In that order, the Court reiterated that it intended to enter the order for relief if the joint declaration was not filed because the Rechnitz Parties invoked their Fifth Amendment rights.  (*See* Ex. 16 at Bates Stamps 517-519.)  After entry of the order denying the Reconsideration Motion, the Court entered an order directing the Clerk of Court to enter an order for relief under chapter 7 and requiring the Debtor to file all schedules and related documentation for a chapter 7 case, in accordance with the Local Bankruptcy Rules, within fourteen days of the entry of the order.  (*See* Ex. 17 at Bates Stamp 523.)  On that same date, the Court entered the Order for Relief.  (*See* Ex. 18 at Bates Stamp 524.) The Order for Relief requires that the Debtor file a list of creditors and schedules within seven and

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

fourteen days, respectively, after the entry of the Order for Relief.  The deadline to file a list of creditors was June 23, 2020 and the deadline to file schedules under penalty of perjury was June 30, 2020.

### H.     The Appointment of the Trustee

Following the entry of the Order for Relief, on June 18, 2020, Sam S. Leslie (the "Trustee"), was appointed as the chapter 7 trustee in the case.  That same day, the Trustee emailed a letter to counsel for the Debtor (with a copy to the Ineligible Creditors' counsel), stating that the Debtor may no longer transact business, requesting the turnover of all inventory, and requesting, in seven days, a substantial amount of information.  (*See* Ex. 21 at Bates Stamps 530-533.)  The Debtor is in the process of gathering information to comply with the Trustee's request and has been producing documents on a rolling basis.  (*See* Marticello Decl. at ¶ 6.)

The Debtor has been unable to comply with certain of its obligations under the Code and the Bankruptcy Rules.  The Debtor was unable to file the list of creditors due on June 23, 2020, or the schedules and statement of financial affairs due on June 30, 2020, because the person who has access to the information to prepare, and who would prepare, sign, and verify, such items, on advice of counsel, declined to answer based on the Fifth Amendment privilege against self-incrimination.[3]  (*See* Ex. 19 at Bates Stamp 525 and Ex. 20 at Bates Stamp 527.)  As a result, the Ineligible Creditors have taken the position that the Debtor is violating the Court's orders.  (*See* Ex. 29 at Bates Stamps 591-592.)  To the extent that other obligations of the Debtor require that the Rechnitz Parties provide testimony or evidence, they will continue to assert their Fifth Amendment privilege.  (*See* Schafler Dec. at ¶ 5.)

The Debtor is in the process of gathering information to comply with the Trustee's request and has been producing documents on a rolling basis.  (*See* Marticello Decl. at ¶ 6.)

---

[3]  As discussed in the Reconsideration Motion, the creditor list and schedules implicate the Rechnitz Parties' Fifth Amendment rights because such documents require testimony under penalty perjury identifying, among other matters, the persons with whom Jadelle conducted its jewelry business and the very transactions subject to the criminal investigation.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**I.**     **The Rechnitz Parties Appeal**

On June 30, 2020, the Rechnitz Parties file notice of appeal of the Orders in their own right.  (*See* Exs. 22 & 23.)

**J.**     **The Debtor's Emergency Motion for a Stay Pending Appeal to the Bankruptcy Court**

On June 19, 2020, the Debtor filed an emergency motion for a stay pending the Appeal (the "Stay Motion").  (*See* Ex. 33 at Bates Stamp 659.)  Over a week later, on June 30, 2020, the Court denied the motion.  (*See* Ex. 24 at Bates Stamp 550.)  Importantly, the Court did not address the merits of the entry of the Order for Relief or any of the arguments in the Stay Motion regarding why the entry of the Order for Relief was in error.  (*See* Ex. 25 at Bates Stamps 551-559.)  The Court's ruling did not discuss the legal standard for granting a stay pending appeal or weigh the probability of success factor.  (*See id.*)

The Court denied the Stay Motion because it determined that the Debtor lacked standing to appeal without the Trustee's express authorization.[4]  (*See* Ex. *id.* at Bates Stamp 555.)  The Court stated its belief that the Debtor's attorneys have a conflict of interest and that the motion for a stay pending appeal was an effort to obstruct the Trustee.  (*See id.*)  The Court stated that the Debtor's assertions that the Ineligible Creditors commenced the involuntary case in bad faith lack merit because the Court has not made a finding that the Ineligible Creditors have acted in bad faith.  (*See id.* at Bates Stamp 556.)  The Court held that the Debtor failed to submit admissible evidence of irreparable harm because it has not proven that, notwithstanding the Order for Relief, it is operating or that it is paying its debts as they come due (*i.e.*, in essence, the issues that would have been litigated in the involuntary case had there been petitioning creditors with standing and a trial).  (*See id.* at 556-557.)  The Court stated that the Rechnitz Parties' invocation of their Fifth Amendment rights constitutes stonewalling by the Debtor and it has not yet determined whether the Rechnitz Parties invocation of the Fifth Amendment is permissible.  (*See id.* at 558.)

---

[4]     The issue of standing was raised by the Ineligible Creditors in opposition to the Stay Motion and was not briefed by the Debtor.  Moreover, because the Rechnitz Parties noticed their respective appeals earlier in the day on June 30, 2020, the Court's ruling did not take into consideration the Rechnitz Parties' standing to appeal and the impact of such standing.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**K.** **The Basis for the Order for Relief**

The purported legal basis for the entry of the Order for Relief is not clear.  The Court did not cite to any statute, rule, or other legal basis in either its June 10 Order or its June 16 Order to support the orders contained therein or the entry of the Order for Relief.  (*See* Ex. 12 at Bates Stamps 459-462; *see also* Ex. 17 at Bates Stamps 521-523.)  The Court did not make any findings on the record of the June 9 hearing or in its orders to support the entry of the Order for Relief under the Code or as a terminating sanction.  (*See* Ex. 11 at Bates Stamps 367-458.)  The Court's memorandum decision denying the Stay Motion did not address the legal basis for the entry for the Order for Relief.  (*See* Ex. 25 at Bates Stamps 551-559.)

**III.** **THE LEGAL STANDARD FOR STAYING A CASE PENDING APPEAL**

Federal Rule of Bankruptcy Procedure ("Rule") 8007(a)(1)(A) allows the appellate court to suspend an order pending appeal.  A stay enables a court to take the time it needs to consider an appeal without depriving justice for the party seeking review.  *See Nken v. Holder*, 556 U.S. 418, 422 (2009) ("It takes time to decide a case on appeal.  Sometimes a little; sometimes a lot.  'No court can make time stand still' while it considers an appeal, . . . and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review.").

The standard for determining whether to grant a stay pending appeal is similar to the standard for issuing a preliminary injunction.  *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988).  For both the appellate court and the district court, the factors to be considered are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties in the proceeding; and (4) where the public interest lies.

*Braunskill*, 481 U.S. at 776; *see also Nken v. Holder*, 556 U.S. 418, 425-26 (2009).  Equal weight does not need to be given to the four factors and the court may use the sliding scale approach to decide the motion for a stay.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011).

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Courts have typically placed more weight on the first two factors. *See Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012).

The factor requiring a strong showing of likelihood of success on appeal is not a rigid concept. It does not mean that the applicant must prove that they are more likely to succeed on appeal than not. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966-67 (9th Cir. 2011). After analyzing the different terminology, from a "reasonable probability" to "serious legal questions" to "fair prospect," the Ninth Circuit held:

> We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not. Regardless of how one expressed the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits.

*Id.* at 967-68.

According to the Ninth Circuit, a rule that the moving party need *not* demonstrate that success on appeal is probable "makes good sense." *See id.* at 967. The Ninth Circuit explained:

> A more stringent requirement would either, in essence, put every case in which a stay is requested on an expedited schedule, with parties required to brief the merits of the case in depth for stay purposes, or would have the court attempting to predict with accuracy the resolution of often-thorny legal issues without adequate briefing and argument. Such pre-adjudication adjudication would defeat the purpose of a stay, which is to give the reviewing court the time to "act responsibly," rather than doling out "justice on the fly."

*Id.*

## IV.   THE DEBTOR HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL

### A.   The Order for Relief is Appealable

An order for relief is a final appealable order. *See In re Mason* 709 F.2d 1313, 1316 & 1318 (9th Cir. 1985). "A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo.* Mixed questions of law and fact are reviewed *de novo*." *In re Quality Laser Works*, 211 B.R. 936, 940 (B.A.P. 9th Cir. 1997), *aff'd,* 165 F.3d 37 (9th Cir. 1998) (internal citations omitted).

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**B.** **The Appellants Have Standing to Appeal the Order for Relief**

Standing is determined under the "persons aggrieved" test. As stated by the Panel: "[a]ppellate standing in bankruptcy is determined under the so-called 'persons aggrieved' test that has been carried over from the former Bankruptcy Act. Only one who is directly and adversely affected pecuniarily has standing to appeal a bankruptcy court's order." *In re Menk*, 241 B.R. 896, 917 (B.A.P. 9th Cir. 1999). "A 'person aggrieved' is someone whose interest is directly affected by the bankruptcy court's order, either by a diminution in property, an increase in the burdens on the property, or some other detrimental effect on the rights of ownership inherent in the property." *In re Popp*, 323 B.R. 260, 265 (B.A.P. 9th Cir. 2005). For a person to have appellate standing, the order appealed must diminish the appellant's property, increase the appellant's burdens, or detrimentally affect the appellant's rights. *See Matter of Fondiller*, 707 F.2d 441, 442, 443 (9th Cir. 1983).

The Ninth Circuit, in determining that an order for relief is a final order that can be appealed, permitted a debtor to appeal the entry of the order for relief. *See In re Mason* 709 F.2d 1313, 1314 (9th Cir. 1985). Important to the Ninth Circuit's ruling in *Mason* was the serious effect on the debtor's substantive rights and the great potential for irreparable harm that occurs upon the entry of the order relief. *See id.* at 1316-17 (detailing the practical effect of the entry of the order for relief due to the provisions of the Code triggered as a result). The Ninth Circuit's *Mason* decision supports the position that a debtor has standing to appeal the entry of an order for relief.

The Appellants have standing. The Debtor, as the entity placed into bankruptcy against its will, is clearly a "person aggrieved" as it was directly and adversely affected by the Order for Relief. This is not an appeal of an order approving a single transaction affecting the size of the estate, but a challenge to the legitimacy of the case's existence in the first instance. Moreover, as detailed by the Ninth Circuit, the provisions of the Code triggered as a result of the entry of the Order for Relief substantially affect the Debtor's rights. *In re Mason* 709 F.2d at 1317.

The Rechnitz Parties also have standing. A party's failure to attend the hearing that led to the order appealed has no bearing on whether the party has standing. *See Matter of Point Ctr.*

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

*Fin., Inc.*, 890 F.3d 1188, 1193 (9th Cir. 2018).  As the parties ordered to provide testimony under oath by the June 10 Order, they were directly affected by the Court's order, which led to the Order for Relief.  (*See* Ex. 12 at Bates Stamp 461.)  Moreover, Rachel Rechnitz's rights and interests, as the member and managing member of the Debtor, were detrimentally affected by the entry of the Order for Relief.  *See, e.g.*, *Bellevue Place Assocs. v. Caisse Centrale Des Banques Populaires*, 1994 WL 687474, at *5 (N.D. Ill. 1994) (holding that the entities that managed the hotel owned by the debtor had standing to appeal the court's order appointing a trustee because the order impaired their rights to control the reorganization).  For example, according to the Court's decision denying the Stay Motion, the entry of the Order for Relief divested Rachel Rechnitz of authority to cause the Debtor to act.  As discussed below, the Debtor disputes that it lacks the authority to appeal without the Trustee's consent.  However, if the Panel agrees with the Court's ruling on this point, then Rachel Rechnitz's rights were necessarily affected and she has standing.

If any one of the Debtor, Mr. Rechnitz, or Mrs. Rechnitz have standing to appeal the Order for Relief, then the Panel may reach the merits of the Appeal as the appellants appeal the same orders and raise the same arguments.  *See, e.g.*, *Bd. of Nat. Res. of State of Wash. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993) ("If any one of these three has standing, we may reach the merits of the equal protection argument without considering whether the other two also have standing.")

### C.  The Order For Relief Must Be Vacated

#### 1.  Entry of the Order for Relief Violated the Code

The Bankruptcy Code permits the entry of an order for relief *only* in certain express circumstances, none of which have been satisfied in this case.  Under the Bankruptcy Code, an involuntary petition must be commenced by the requisite number of eligible petitioning creditors. *See* 11 U.S.C. § 303(b).  If an involuntary petition is timely controverted, the court shall, ***after trial***, enter an order for relief "***only if*** — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount . . . ."  *See* 11 U.S.C. § 303(h) (emphasis added).  The entry of an order for relief without making the finding required by § 303(h) constitutes reversible error.  *See Bartmann v. Maverick*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

*Tube Corp.*, 853 F.2d 1540, 1546 (10th Cir. 1988); *see also In re Arriola Energy Corp.*, 74 B.R. 784, 790-791 (S.D. Tex. 1987) (remanding a case to the bankruptcy court because the putative debtors were denied procedural due process by not having an opportunity to present evidence regarding whether they were generally paying their debts).

The entry of the Order for Relief was improper because none of the elements of the Code were satisfied.

- *First*, the Debtor timely controverted the Involuntary Petition, and, therefore, entry of an order for relief due to an alleged debtor's default is not appropriate. *See* 11 U.S.C. § 303(h).

- *Second*, the Court concluded that each of the Ineligible Creditors were ineligible under the Ninth Circuit's decision in *Blixseth* and, as a result, the Ineligible Creditors lacked standing to commence the case as required by § 303(b). *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019) (stating "that a bona fide dispute as to any amount of a petitioning creditor's claim strips the creditor of standing. . . .").

- *Third*, there was no finding, after trial (or at all), that the Debtor was generally not paying its undisputed debts as they became due on the agreed-to terms. *See* 11 U.S.C. § 303(h). **Instead, the Debtor was deprived of its statutory and due process rights to answer and have a trial on the Involuntary Petition**. *See In re Arriola Energy Corp.*, 74 B.R. at 790-791.

Because the Debtor timely controverted the Involuntary Petition, the Court coul enter an order for relief "*only if*" there were the requisite number of petitioning creditors and the Court determined after a trial that the Debtor was generally not paying its undisputed debts as they became due. These requirements were not satisfied. For this reason alone, the Order for Relief must be vacated.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**2. The Order For Relief Cannot Be Justified as a Terminating Sanction**

The basis for the Court's entry of the Order for Relief is not clear from the record. However, as an involuntary bankruptcy case proceeds as an adversary proceeding with the order for relief serving as the judgment sought by the petitioners, the entry of the Order for Relief can be viewed only as a terminating sanction. *See In re Mason* 709 F.2d 1313, 1316 & 1318 (9th Cir. 1985) (stating that an involuntary case has many of the "attributes of 'adversary proceedings'" and that the "rules contemplate a procedure much like any other lawsuit. . . ."). Because the Court did not cite to any rule or Code provision to support the issuance of terminating sanctions and because entry of the Order for Relief did not satisfy the elements of the Code, the Appellants have also analyzed the entry of the Order for Relief as an exercise of the Court's inherent authority. The entry of the Order for Relief also exceeded the Court's inherent authority.

**(a) The Entry of the Order for Relief Is Contrary to Supreme Court Precedent**

The entry of the Order for Relief is contrary to the Supreme Court's holding in *Law v. Siegel*. In that case, the bankruptcy court surcharged the debtor's homestead exemption as a sanction for his serious misconduct. *See Law v. Siegel*, 571 U.S. 415, 420-21 (2014). The Supreme Court stated:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. **Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions. We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code**.

*Law*, 571 U.S. at 421 (emphasis added). With this in mind, the Supreme Court concluded that the surcharge was unauthorized because it "contravened a specific provision of the Code." *See id.* at 422.

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

The Court's decision to direct the entry of the Order for Relief as a sanction was unauthorized because it contravened a specific provision of the Code. As discussed above, the Code sets forth the specific requirements that must be satisfied for the entry of an order for relief. There must be the requisite number of petitioning creditors. *See* 11 U.S.C. § 303(b). Moreover, the Code expressly states that where, as here, the involuntary petition is timely controverted, then an order for relief can be entered "after trial" and "*only if* — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount . . . ." *See* 11 U.S.C. § 303(h) (emphasis added). Here, there were no eligible creditors with standing to commence this case as required by § 303(b) and the Court did not find, after a trial, that the Debtor was generally not paying its undisputed debts as they became due as required by § 303(h). Under *Law v. Siegel*, the Court lacked the sanctioning power to override the Code and to enter an order for relief contrary to the Code's to the specific provisions of the Code—§§ 303(b) and (h). Accordingly, the Order for Relief must be vacated.

**(b)**     **The Entry of the Order For Relief Exceeded the Court's Inherent Authority to Issue Sanctions**

The Order for Relief exceeded the scope of the Court's inherent authority to issue sanctions. Federal courts have the inherent power "to levy sanctions in response to abusive litigation tactics." *See Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (internal quotation marks omitted). However, a court's inherent power to sanction has limits. As explained by the Ninth Circuit:

> In this circuit, courts have inherent power to dismiss an action when a party has **willfully deceived the court** and engaged in conduct utterly inconsistent with the orderly administration of justice. Due process limits the imposition of the severe sanctions of dismissal or default to **extreme circumstances** in which the deception related to matters in controversy and prevents their imposition merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.

*Fjelstad*, 762 F.2d at 1338 (9th Cir. 1985) (internal citations and quotation marks omitted) (emphasis added).

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

The Ninth Circuit has also made clear that terminating sanctions in response to the invocation of the Fifth Amendment is improper and constitutes an abuse of discretion. *See Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979) (discussing in the context of terminating sanctions issued related to discovery under Rule 37); *see also Doe ex. rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("[T]he Rules of *Civil* Procedure recognize an appropriate role for the exercise of this privilege, and a refusal to respond to discovery under such invocation cannot justify the imposition of penalties."). In *Campbell*, the plaintiff pled the Fifth Amendment in response to certain interrogatories. *See id.* at 1056. The district court ordered the plaintiff to answer the interrogatories or face dismissal. When the plaintiff did not answer the interrogatories as ordered by the court, the court dismissed the lawsuit. *See id.* The Ninth Circuit, quoting the Supreme Court, made clear that the Fifth Amendment privilege applies regardless of the nature of the proceeding. *See id.* at 1057. The Ninth Circuit held that "[i]mposing the harshest of Rule 37 sanctions on a proper exercise of Fifth Amendment rights is not in accord with Supreme Court decisions." *See id.*

Here, the Court exceeded its inherent authority by directing the entry of the Order for Relief, a terminating sanction. The Court did not find the type of "extreme circumstances" and "willful deception" necessary to support the imposition of a terminating sanction. Nor could it. Neither the Rechnitz Parties nor the Debtor engaged in conduct that would warrant the imposition of sanctions (let alone a terminating sanction). Instead, the Court pre-determined to impose a terminating sanction against the Debtor if the Rechnitz Parties did not to file the joint declaration *for any reason*. This was improper. Thus, the entry of the Order for Relief cannot be justified as a terminating sanction under the Court's inherent power.

The Court's imposition of a terminating sanction due to the Rechnitz Parties' permissible invocation of their Fifth Amendment rights violated Ninth Circuit law. The Ineligible Creditors will certainly argue that the Debtor, an LLC, does not have a Fifth Amendment right. But, this argument misses the point and demonstrates the severity of the sanction. *The June 10 Order did not direct the Debtor to take any action at all*. (*See* Ex. 12 at Bates Stamp 461-462.) Rather, the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Court specifically directed the Rechnitz Parties, non-debtor individuals who have Fifth Amendment rights, to provide testimony under penalty of perjury identifying the Debtor's alleged creditors.  While the June 10 Order was directed towards the Rechnitz Parties, the extraordinary terminating sanction (the entry of the Order for Relief) was levied against the Debtor.  The June 10 Order forced the Rechnitz Parties into a Sophie's choice.  They either could comply with the June 10 Order and potentially waive their Fifth Amendment rights in multiple matters, or, alternatively, exercise their constitutional rights, and, as a result, subject the Debtor to a terminating sanction by entry of the Order for Relief.  (*See* Ex. 15 at Bates Stamp 510, line 6 – Bates Stamp 511, line 3.)  On reconsideration, the Court was not moved by this dilemma, reiterating that it would direct the entry of the Order for Relief notwithstanding the Rechnitz Parties proper invocation of the Fifth Amendment.  (*See* Ex. 16 at Bates Stamp 518, lines 1-9.)  This was contrary to Ninth Circuit law.  *See Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979).

### 3.    The Order Is Void for Violation of Due Process

The Orders are void.  An order "issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment" is void.  *See In re Krueger*, 88 B.R. 238, 241 (9th Cir. 1988).  Here, the June 10 Order directs two persons who are not debtors, who were not present or represented at the hearing on June 9, 2020, to submit a joint declaration under penalty of perjury.  Moreover, the requirement that the Rechnitz Parties submit testimony under penalty of perjury or face the entry of an order for relief against the Debtor was raised *sua sponte* by the Court.  The Rechnitz Parties did not receive any advance notice or an opportunity to brief or otherwise be heard on an order that implicated their constitutional rights.  Accordingly, because the Rechnitz Parties did not receive notice that the Court would compel them to take certain action (*i.e.*, file a joint declaration under penalty of perjury and to do so notwithstanding their Fifth Amendment rights), the June 10 Order is void and the orders that followed, the June 16 Order and the Order for Relief, are premised on a void order.

Based on all of the foregoing, there is a strong likelihood that the entry of the Order for Relief will be reversed on appeal.  For this reason alone, the Panel can grant the Motion and stay

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1   the Order for Relief pending the Appeal.  Because the Order for Relief must be vacated, the

2   question then becomes whether the case should be remanded for further proceedings or dismissed.

3   It should be dismissed.

4        **D.**    **The Court's Denial of the Motion to Dismiss Was In Error**

5           **1.**    **The Court Was Required to Dismiss the Case Because the Ineligible**

6                   **Creditors Lacked Statutory Standing**

7        The Court was required to dismiss the involuntary case.  A "lack of *statutory* standing

8   requires dismissal for failure to state a claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th

9   Cir. 2011) (emphasis in original).  A bona fide dispute as to any portion of a creditor's claim

10  "strips the creditor of standing under § 303(b)(1)." *See Dep't of Revenue v. Blixseth*, 942 F.3d

11  1179, 1185 (9th Cir. 2019).  The Court found that the Ineligible Creditors were ineligible because

12  their claims were subject to bona fide disputes.  Moreover, the Court made that finding within the

13  standard for a Rule 12(b)(6) motion based on the Ineligible Creditors' judicial admissions and the

14  facts subject to judicial notice.  Because the Court concluded that the Ineligible Creditors lacked

15  statutory standing to file the Involuntary Petition in connection with the Motion to Dismiss,

16  dismissal for failure to state a claim was required under binding Ninth Circuit law.  *See Maya v.*

17  *Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

18          **2.**    **The Court Was Required to Enter a Dispositive Order Dismissing the**

19                  **Involuntary Petition Under the Bankruptcy Rules**

20       The Ninth Circuit has emphasized on multiple occasions that "'[t]he court shall determine

21  the issues of a contested [involuntary] petition at the earliest practicable time and forthwith' enter a

22  dispositive order." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002)

23  (quoting Bankruptcy Rule 1013(a)) (alterations in original); *see also In re Bishop, Baldwin,*

24  *Rewald, Dillingham & Wong, Inc.*, 779 F.2d 471, 474 (9th Cir. 1985) (same).  "The 'earliest

25  practicable time' is when the bankruptcy court has 'sufficient information to resolve the conflict'

26  before it." *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d at 474.  "Entry of

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  summary judgment where appropriate is unquestionably a literal compliance with Rule 1013."

2  *See id.* at 475-75.

3          The bankruptcy court is required to "pause before [a] hearing on the merits of an

4  involuntary petition *in only one circumstance*[,]" which does not apply here.  *See In re Vortex*

5  *Fishing Systems, Inc.*, 277 F.3d at 1061. (emphasis added).  The court must assure that creditors

6  have a reasonable opportunity to join the petition when required by Bankruptcy Rule 1003(b), *i.e.,*

7  "when the alleged debtor's answer to the petition *filed by fewer than three petitioners* asserts that

8  the petition fails" because three petitioning creditors are required.  *See id.*  In *Vortex Fishing*, the

9  Ninth Circuit concluded that "[b]ecause more than three petitioners filed the initial involuntary

10  petition, notification of other creditors was not required under the joinder provisions of

11  Bankruptcy Rule § 1003(b)."  *See id.* at 1062 (emphasis added).  Moreover, according to the Ninth

12  Circuit, the discretion of the court to provide an opportunity for non-petitioners to join in three-

13  petitioner cases must be exercised within the "context of the Rule 1013(a) mandate that the court

14  resolve the merits of the involuntary petition 'at the earliest practicable time.'"  *See id.* at 1062.

15  (emphasis added).

16          Where, as here, the case was commenced by three petitioning creditors, Bankruptcy Rule

17  1003(b) does not apply.  In *In re Taub*, the alleged debtor sought dismissal of an involuntary

18  petition commenced by three petitioning creditors on the basis that the creditors' claims were

19  subject to bona fide dispute as to liability and amount.  *See In re Taub*, 439 B.R. 261, 267 (Bankr.

20  E.D.N.Y. 2010).  The petitioning creditors argued that the court "should provide a window of time

21  for non-petitioning creditors holding unsecured claims to join the Petition."  *See id.* at 271.  The

22  court rejected the creditors' request.  *See id.* at 271-72.  The court held that Bankruptcy Rule 1003

23  does not apply "when the alleged debtor seeks dismissal of the petition on the basis that the

24  petitioning creditors are not qualified under § 303(b) because their claims are subject to a bona

25  fide dispute."  *See id.* at 271.  Relying on *Vortex Fishing Systems*, the court concluded that because

26  the case was commenced by three petitioners and because the debtor sought dismissal because all

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

24                        EMERGENCY MOTION

1    three were ineligible, "there is no requirement that non-petitioning creditors be afforded 'a

2    reasonable opportunity' to join the Petition." *See id.*

3           The Court was required to grant the Motion to Dismiss.  The Court found that each of the

4    Ineligible Creditors were ineligible and lacked standing based on the standard governing a Rule

5    12(b)(6) motions to dismiss.  By its own findings, the Court had sufficient information to resolve

6    the dispute before it, and, as such, the "earliest practicable time" set forth in Bankruptcy Rule 1013

7    had arrived.  *See In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d at 474.

8    Granting a meritorious motion to dismiss is "unquestionably a literal compliance with Rule 1013."

9    *See Id.* at 474-75 (discussing entry of summary judgment).  Moreover, Bankruptcy Rule 1003(b) is

10   inapplicable because this case was not commenced by "fewer than three petitioning creditors[.]"

11   Rather, like *Taub*, this case was commenced by three creditors and the Debtor sought dismissal on

12   the basis that all three are ineligible.  Because Bankruptcy Rule 1003(b) did not apply and because

13   the Motion to Dismiss had merit, the Court was required to enter a dispositive order granting the

14   Motion to Dismiss and dismissing the Involuntary Petition.  Delaying the ruling on the Motion to

15   Dismiss to require a declaration and permit an additional 60 days for non-petitioners to join was

16   an abuse of discretion and violated Bankruptcy Rule 1013(a) and Ninth Circuit law.

17          In sum, there can be no question that the Appellants have a substantial case on the merits.

18   The strength of this factor alone supports a stay pending appeal.  There is a strong likelihood that

19   the Order for Relief will be vacated on appeal because the elements required by the Code were not

20   satisfied and, for multiple reasons, the Court exceeded its authority to sanction.  Further, there is a

21   strong likelihood that the Involuntary Petition will be dismissed, as opposed to remanded for

22   further proceedings.  Because the Court found that the Ineligible Creditors lacked standing based

23   on the Debtor's Motion to Dismiss, the Court was required to grant the Motion to Dismiss and

24   dismiss the Involuntary Petition.

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## V.     THE DEBTOR WILL BE IRREPARABLY HARMED ABSENT A STAY

An order for relief constitutes irreparable harm.  "Involuntary bankruptcy is an extreme remedy with dire consequences upon [an alleged debtor]."  *In re Anmuth Holdings LLC*, 600 B.R. 168, 188 (Bankr. E.D.N.Y. 2019) (alternation in original) (internal quotation marks omitted).  In determining that an order for relief is an appealable order, the Ninth Circuit has recognized the significant irreparable harm arising from the entry of an order for relief in an involuntary case.  *See In re Mason*, 709 F.2d 1313, 1316 (9th Cir. 1983) ("[W]e are convinced that orders for relief should be considered final for purposes of appeal because they 'may determine and seriously affect substantive rights' and 'cause irreparable harm to the losing party if he had to wait to appeal to the end of the bankruptcy case.'").  Moreover, the Ninth Circuit itemized the irreparable harm inflicted on alleged debtors as follows:

> An order for relief, being a conclusive determination of the debtor's status as bankrupt, **carries with it a great potential for irreparable injury** if immediate appeal is not allowed. An order for relief effectively divests the debtor of his assets, creating an estate controlled by the bankruptcy court. In a Chapter 7 case the trustee is obligated to gather the assets of the estate, liquidate them, and to the extent possible satisfy creditors' claims. . . .  During the administration of the estate the debtor's rights are limited. On entry of the order for relief he loses control of his assets, which may include a business.  Once property of the estate is liquidated there appears to be no way the debtor can force bona fide purchasers to return the assets. A debtor may possibly attack the propriety of every sale by appeal, but to effectively do so he must seek to stay the sale. Such a procedure, however, is unduly burdensome and it is also unclear whether a debtor, once adjudicated a bankrupt, is a proper party to attack a sale by the estate.

*In re Mason*, 709 F.2d at 1317 (emphasis added).  The Ninth Circuit similarly recognized the severe consequences of an involuntary case in *Vortex Fishing Sys., Inc.  See Higgin v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) 379 F.3d 701, 707 (9th Cir. 2004) ("Filing an involuntary petition should be a measure of last resort because even if the petition is filed in good-faith, it can 'chill[ ] the alleged debtor's credit and sources of supply,' and 'scare away his customers.'" (alterations in original)).

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

The Debtor is irreparably harmed absent a stay pending appeal. *The Debtor is being subjected to a bankruptcy case that should have never been commenced.* An involuntary case is always an extreme remedy with dire consequences. Here, the case is even more extreme as the Debtor is being placed into bankruptcy against its will, without trial, and ***when none of the legal requirements have been satisfied***. In this case, the entry of the Order for Relief in and of itself constitutes irreparable injury. Moreover, staying an order for relief entered in favor of ineligible creditors and contrary to the Code is entirely consistent with the Ninth Circuit's view that improper involuntary bankruptcy filings should be discouraged. *See Vortex Fishing Sys., Inc.*, 379 F.3d at 707 (stating that the presumption in favor of attorney's fees upon dismissal of an involuntary case "helps reinforce the idea that '[t]he filing of an [i]nvoluntary [p]etition should not be lightly undertaken,'. . . and 'will serve to discourage inappropriate and frivolous filings.'" (internal citations omitted) (alterations in original)); *see also Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1184 & 1187 (9th Cir. 2019) (stating the "'bona fide dispute' limitation" is designed to prevent creditors using the involuntary bankruptcy process to leverage the collection of disputed claims).

The immediate legal consequences arising from the entry of the Order for Relief recognized by the Ninth Circuit constitute irreparable harm. The Appellants' litigation adversaries, the Ineligible Creditors, will use the improper bankruptcy case as a means of obtaining information which they would not otherwise be entitled to receive. (*See* Ex. 14 at Bates Stamps at 474-483; Ex. 29, at Bates Stamp 595, lines 6-8, and at Bates Stamp 597, line 1.) A trustee has been appointed who is now tasked with collecting and liquidating assets. (*See* Ex. 21, Trustee's letter, at Bates Stamp 530.) The Debtor is in the process of providing information to the Trustee on a rolling basis in response to the Trustee's request, and the Ineligible Creditors will likely seek to obtain such information. (*See* Ex. 21, Trustee Letter, at Bates Stamp 530-533; *see also* Marticello Decl. at ¶ 6.) The entry of the Order for Relief created an estate comprised of legal and equitable interests in property as of the petition date of the Debtor. *See* 11 U.S.C. § 541. By the creation of the estate, the Debtor is divested of pre-petition claims against the Ineligible Creditors and its ability to defend against the Ineligible Creditors' claims is negatively impacted.

1  As found by the Ninth Circuit, the provisions in the Code are insufficient to protect the debtor

2  from "the potential of irreparable injury once an order for relief is entered."  *See In re Mason*, 709

3  F.2d at 1317-18.  A stay is the only way to protect the Appellants pending the Appeal.

4        Absent a stay, the Debtor will not be in a position to defend adequately itself.  The Debtor's

5  ability to defend itself will be hampered by the argument, which it disputes, that, due to the Order

6  for Relief, it lacks the authority to act without the Trustee's consent.  The Debtor was unable to file

7  the verified list of creditors, schedules and statements required by the Bankruptcy Rules under

8  penalty of perjury.  As a result, the Ineligible Creditors are arguing that the Debtor is disregarding

9  Court orders.  (*See* Ex. 29 at Bates Stamp 592, lines 4-6.)  Thus, the Debtor is being accused of

10  violating orders and deadlines arising in a case that should have not been commenced in the first

11  place.  Disputes regarding the Rechnitz Parties' Fifth Amendment rights will likely continue to

12  arise.  (*See* Schafler Decl. at ¶ 5.)  Moreover, requiring the Appellants to object to various motions

13  that may be filed in the case is "unduly burdensome" and it is unclear whether they will have

14  standing to attack such motions.  *See In re Mason*, 709 F.2d at 1317.  Thus, there is a risk that the

15  case could become so administered as to be practically moot and without the ability of the

16  Appellants to be heard.

17

18  **VI.    THE INELIGIBLE CREDITORS WILL NOT BE SUBSTANTIALLY INJURED BY**

19  **        A STAY**

20        The Ineligible Creditors will not be injured by a stay, substantially or otherwise.  The entry

21  of the Order for Relief was an unwarranted windfall for the Ineligible Creditors.  The Ineligible

22  Creditors were determined to be ineligible and had no standing to commence the case and no right

23  to an order for relief.  Moreover, the Ineligible Creditors have pending lawsuits that provide fora

24  for their disputed claims.  To the extent those lawsuits are stayed, they should be bound by those

25  stays.  One of the Ineligible Creditors' lawsuits is temporarily stayed, and another has a motion for

26  stay under submission.  (*See* Ex. 3, at Bates Stamp 53; *see also* Ex. 5, at Docket No. 56.)  The

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Ineligible Creditors should not be permitted to circumvent their respective pending actions by

2   obtaining free discovery by use of the Trustee or otherwise in the bankruptcy case.

3

4   **VII.    A STAY WILL NOT HARM NON-PARTIES**

5          The stay will not substantially harm any alleged non-parties.  Again, this case should not

6   have been commenced in the first instance as the Ineligible Creditors lacked standing from the

7   beginning.  This case had been pending for over two months prior to the entry of the Order for

8   Relief and the Ineligible Creditors argued to the Court that they knew of other creditors who

9   wanted to join the petition.  (*See* Ex. 34 at Bates Stamp 689, note 3.)  Yet, despite the Ineligible

10  Creditors assertions (and apparent efforts to contact creditors), no other creditors attempted to join

11  the petition or have taken a position in this case.  Moreover, absent a stay, the Trustee will be

12  required to continue to perform his duties and will be required to do so with the appeal over his

13  head and with the risk that the Order for Relief will be vacated.  The Trustee has begun the process

14  of retaining professionals who will incur fees that will not be paid if the Order for Relief is

15  vacated.  (*See* Ex. 10 at Bates Stamp 346, Docket Nos. 96 & 98.)  Thus, a stay pending appeal

16  prevents the risk of a serious waste of time and money by the Trustee if the Order for Relief is

17  vacated.

18

19  **VIII.   THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY**

20          The public interest weighs in favor of a stay.  Here, there can be no question that the party

21  suffering the most harm is the Debtor, and, for that reason, the public interest supports a stay.  *See*

22  *also In re Kenny G. Enterprises. LLC*, 2014 WL 1806891, at *3 (C.D. Cal. 2014) ("[t]he public

23  interest here likely follows the party that would suffer the most harm with or without the stay.").

24  Moreover, as articulated by the Ninth Circuit, an involuntary case is an extreme remedy of last

25  resort that has serious ramifications.  *See Higgins v. Vortex Fishing Systems, Inc.,* 379 F.3d 701,

26  707 (9th Cir. 2004).  Absent a stay, the Ineligible Creditors will continue to reap the benefits of

27  relief to which they are not entitled.  From a policy perspective, allowing this improper case to

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

proceed would encourage ineligible creditors to file frivolous involuntary petitions against putative debtors. The public interest is supported by the stay of the Order for Relief pending the outcome of the Appeal.

The public interest is also supported by preserving the *status quo* when an appeal could affect the administration of the case. In *In re Cont'l Coin Corp.*, the District Court affirmed the bankruptcy court's issuance of a stay pending appeal because it preserved the status quo:

> [T]he bankruptcy court found that a stay was in the public interest because "going forward with the merits of the case while an appeal is pending on the very question of what is actionable . . . would be a serious waste of time, money, and judicial resources. Therefore, granting a stay pending appeal will best preserve the status quo and serve to prevent irremediable harm to the trustee and to the estate [.]"

*In re Cont'l Coin Corp,* 2009 WL 2589635 at *10 (C.D. Cal. Aug. 21, 2009). The appeal does not concern a single particular transaction or motion in a case, *but whether the case should exist at all* and whether the Debtor was properly forced into bankruptcy against its will. Because the pending appeal involves the very question of whether the case is proper, absent a stay, there is a risk of a serious waste of time, money, and judicial resources.

Finally, notwithstanding the Ineligible Creditors' allegations that they know of other creditors, this case is the result of litigation between the Appellants and the Ineligible Creditors. The public simply does not have an interest in these particular private disputes. Accordingly, this factor also weighs in favor of the proposed stay.

## IX.  THE DEBTOR CAN APPEAL WITHOUT THE TRUSTEE'S CONSENT

With no meritorious basis to defend the entry of the Order for Relief on the merits, the Ineligible Creditor's opposition to this Motion will focus on the authority of the Debtor to appeal. First, due to the Rechnitz Parties' standing to appeal, whether the Debtor has the authority to appeal without the Trustee's consent is not determinative. Second, the Debtor has standing to appeal without the consent of the Trustee.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

### A.    The Ninth Circuit has Permitted Debtors to Appeal Orders for Relief

The Ninth Circuit has permitted a putative debtor to appeal an order for relief on at least two occasions in published decisions, including one in which the appeal proceeded after a trustee was appointed in a chapter 7 case. *See Security Bldg. & Loan Ass'n v. Spurlock*, 65 F.2d 768, 770 (9th Cir. 1933); *see also In re Focus Media, Inc.*, 378 F.3d 916, 922 (9th Cir. 2004) (superseded by statute recognized on other grounds).

In *Spurlock*, the putative debtor appealed the order adjudging it a bankrupt (the terminology used under pre-1978 bankruptcy law). The petitioning creditors moved to dismiss the appeal on the grounds that the debtor lacked the authority to be heard on its own behalf because a receiver had been appointed pre-petition. *See Spurlock*, 65 F.2d at 770. The Ninth Circuit found no direct authority for denying the putative debtor of its "elementary right of self-defense. . . ." *See id.* Instead, the Ninth Circuit held that the putative debtor "should have the right to protect itself from an involuntary [bankruptcy] . . . ." *See id.* After denying the motions to dismiss the appeal, the Ninth Circuit reversed the order adjudging the putative debtor a bankrupt. *See id.* at 773.

In *Focus Media*, the Ninth Circuit reached the merits of the appeal by the putative debtor of the order for relief. *See In re Focus Media, Inc.*, 378 F.3d 916, 922 & 924 (9th Cir. 2004) (superseded by statute recognized on other grounds). Moreover, the appeal of the order for relief before the District Court and the Ninth Circuit proceeded *after the trustee was appointed and, apparently, without the trustee's involvement*. (*See In re Focus Media* Case Docket, Ex. 26 at Bates Stamps 561-565, Docket Nos. 18, 831 & 873; *see also* Ex. 27, *In re Focus Media* Order for Relief, at Bates Stamp 568.) *Focus Media* is in line with a long history of Ninth Circuit decisions reaching the merits of appeals by putative debtors. *See, e.g.*, *Bowman v. Loperena*, 311 U.S. 262, 266 (1940) (holding that "that the court below should have entertained the appeal" by debtor of a judgment adjudicating him bankrupt); *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d 471, 475 (9th Cir. 1985) (reaching merits of appeal brought by alleged debtor); *Shamrock Golf Co. v. Richcraft, Inc.*, 680 F.2d 645, 646 (9th Cir. 1982) (same); *In re Crateo, Inc.*,

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

536 F.2d 862, 865 (9th Cir. 1976) (same); *Whitefish Lumber Co. v. Indus. Supply Co.*, 296 F.2d 136, 137 (9th Cir. 1961) (same). Moreover, by reaching the merits of these appeals, the Ninth Circuit implicitly found that the appellants had standing even if standing was not discussed. *See Bd. of Nat. Res. of State of Wash. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993).

### B.  The Panel has Permitted a Debtor to Appeal a Conversion Order Over Trustee Opposition

This Panel reached the merits of an appeal by the out-of-possession debtor of an order converting a case from chapter 11 to chapter 7 *and to do so in the face of opposition by the trustee*. *See In re Kenny G. Enterprises, LLC*, 2014 WL 4100429, *1 (B.A.P. 9th Cir. 2014). While the issue of the debtor's standing or authority to appeal was not expressly discussed in the decision, the Panel has an "independent duty to consider standing." *See In re Aheong*, 276 B.R. 233, 238 (B.A.P. 9th Cir. 2002) ("The parties have not raised Debtor's standing as an issue on this appeal, but we have an independent duty to consider standing.") Thus, the Panel would not have reached the merits of the appeal if it had determined that the debtor lacked standing or the authority to commence the appeal. Moreover, the fact that the chapter 7 trustee was the appellee in that case makes clear that the debtor did not have the trustee's consent or approval to appeal. *See In re Kenny G. Enterprises, LLC*, 2014 WL 4100429, *1 (B.A.P. 9th Cir. 2014).

Similarly, in *YBA Nineteen, LLC*, the District Court for the Southern District of California reached the merits of an appeal by a debtor of an order converting its case from chapter 11 to chapter 7. *In re YBA Nineteen, LLC,* 505 B.R. 289, 297 (S.D. Cal. 2014). Like the trustee in *Kenny G. Enterprises, LLC*, the trustee in *YBA Nineteen* opposed the appeal. *See id.* at 290 & 298. Thus, the Ninth Circuit, the Panel, and a California District Court have all permitted an out-of-possession debtor to appeal an order resulting in the appointment of a trustee and to do so without the trustee's approval.

The Ineligible Creditors' position that cases involving appeals of conversion orders are not applicable to this case is wrong. (*See* Ex. 28 at Bates Stamp 583, lines 16-17.) The legal effect of an order for relief and an order converting a case to chapter 7 is the same as both result in the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  appointment of a chapter 7 trustee that, according to the Ineligible Creditors, ousts the debtor's

2  management and prevents an appeal.  There is no distinction between an order for relief and an

3  order converting a case to chapter 7 with respect whether a corporate debtor may appeal either

4  order as directed by its management and without trustee approval after the trustee has been

5  appointed.  Moreover, as discussed in further detail below, the case upon which the Ineligible

6  Creditors pin their argument, the Tenth Circuit's *In re C.W. Mining Co.*, *is actually a conversion*

7  *case*.

8      **C.**      **The Bankruptcy Code Supports the Debtor's Right to Appeal Without the**

9              **Trustee's Consent**

10         The Bankruptcy Code supports the Debtor's right to appeal.  No provision of the Code

11  expressly or implicitly deprives the Debtor of the right to appeal without the Trustee's consent.

12  Rather, the Bankruptcy Code expressly recognizes a distinction between the estate, the trustee, and

13  the debtor.  The trustee is the representative of the estate, which is comprised of pre-petition

14  interests and claims.  *See, e.g.*, 11 U.S.C. § 323(a) (trustee is the "representative of the estate."); 11

15  U.S.C. § 541.  However, notwithstanding the entry of the order for relief, the debtor continues to

16  exist separate and apart from the estate.  As stated by one court:

17          As of the commencement of a bankruptcy case, a new entity—the
            bankruptcy "estate"—is created.  This estate acquires title to most
18          property interests formerly held by the Debtor. The Debtor and the
            estate, however, are separate and distinct legal entities.
19

20  *In re Dow Corning Corp.*, 270 B.R. 393, 398 (Bankr. E.D. Mich. 2001) (internal citations

21  omitted); *In re Winom Tool & Die, Inc.*, 173 B.R. 613, 623 (Bankr. E.D. Mich. 1994) ("Stating the

22  principle more generally, the very manner in which the bankruptcy estate is defined necessarily

23  implies that the debtor retains a status separate from his or its status as debtor in possession."); *In*

24  *re Keller Fin. Servs. of Fla., Inc.*, 243 B.R. 806, 816 (Bankr. M.D. Fla. 1999) ("The fact that a

25  chapter 11 trustee is appointed and the debtor is no longer a debtor in possession does not mean

26  that the debtor no longer exists or no longer needs representation. . . .  [I]f the debtor is a

27  corporation, the trustee does not replace the shareholders, nor is the corporate entity necessarily

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

dissolved."); *In re McCorhill Pub., Inc.*, 89 B.R. 393, 396 (Bankr. S.D.N.Y. 1988) ("The Chapter 11 trustee's authority to conduct the debtor's business and to manage the estate, primarily for the creditors, does not mean that the Chapter 11 debtor's interests are totally divested.  In addition to having standing to file a reorganization plan, the debtor has a pecuniary interest in the equity of the estate if all the creditors can be paid in full, or if each class of impaired claims accepts the plan in accordance with 11 U.S.C. § 1129(a)(8)(A), so that the debtor may retain an equity interest.").

There is no question that, under the Code, the debtor continues to have rights and obligations that must be exercised, and are exercised, by its existing owners, managers, officers, and/or directors:

- How is a corporate debtor to complete, execute, and direct its counsel to file schedules if not through is existing management and/or owners?

- Section 521 of the Code details the duties of the debtor and distinguishes those duties that apply in all chapters versus only certain chapters and those duties that apply to only individual debtors, as opposed to all debtors (including corporate debtors).

- A debtor must cooperate with the trustee, signifying the expectation under the Code that the debtor must take action as authorized by its existing management or owner. *See* 11 U.S.C. § 521(a)(3).

- A debtor has a right to convert its case from chapter 7 to chapter 11.  *See* 11 U.S.C. § 706(a).

- A debtor can seek to terminate the appointment of a trustee under § 1105.  *See In re Eastern Consolidated Utilities, Inc.*, 3 B.R. 591, 592-93 (Bankr. E.D. Pa. 1980).

- Property that is abandoned by the trustee re-vests in the debtor.  *See* 11 U.S.C. § 554(c).

- A debtor has a right to receive surplus proceeds.  *See* 11 U.S.C. § 726(a)(6).

- A debtor has the ability to regain possession of its property from an interim trustee. *See* 11 U.S.C. 303(g).

Thus, the Code recognizes that a debtor continues to have rights and obligations exercised through its existing owners or management, and not by the trustee.  An alleged debtor's right to contest and defend against an involuntary petition as authorized by management, including by appealing the order for relief, is one of those rights recognized in, and not curtailed by, the Code.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    *See* 11 U.S.C. § 303(d) & (h); *see also* 11 U.S.C. § 103(a) (stating that chapter 3 applies in a case

2    under chapter 7); Fed. R. Bankr. P. 1011(a).

3         The Debtor's right to appeal the Order for Relief is further demonstrated by § 303.  Section

4    303 expressly authorizes a debtor to contest and defend against an involuntary petition.  *See* 11

5    U.S.C. § 303(d) & (h); *see also* Fed. R. Bankr. P. 1011(a).  However, the Code authorizes the

6    court to order, pending the entry of an order for relief, the appointment of an interim trustee.  *See*

7    11 U.S.C. § 303(g).  Importantly, the trustee appointed under § 303(g) is the same interim trustee

8    appointed upon the entry of an order for relief, *i.e.*, a trustee under § 701.  *See id.* (stating that the

9    court may order the appointment of "an interim trustee under section 701[.]"); *see also* 11 U.S.C. §

10   701(a)(1) (providing for the United States Trustee to appoint an interim trustee promptly after the

11   entry of an order for relief).  Moreover, like a post-order-for-relief trustee, the interim trustee takes

12   possession of estate property and can operate the debtor's business.  *See* 11 U.S.C. § 303(g).

13   There is no credible argument that an interim trustee appointed prior to the order for relief

14   deprives a corporate debtor of its statutory right to defend against the involuntary petition without

15   the trustee's consent.  But, under the Ineligible Creditors' position, that is exactly what would

16   happen.  There is no meaningful distinction between a corporate debtor defending against an

17   involuntary petition while an interim trustee is in place or after an order for relief is entered.  The

18   appointment of an interim trustee either before or after the order for relief does not deprive the

19   Debtor of its statutory right to defend against the involuntary petition.

20        The Ineligible Creditors' inconsistent positions further demonstrate the statutory distinction

21   between the estate and the debtor.  The Ineligible Creditors argue that, upon the appointment of

22   the Trustee, "the Debtor's attorneys were divested of any authority to act on the Debtor's behalf

23   absent the express consent of the Trustee." (*See* Ex. 28 at Bates Stamp 578, lines 17-19.)  Yet, the

24   Ineligible Creditors argue that by not filing a creditor list, the Debtor is "continuing to disregard

25   court orders and the Bankruptcy Code . . . ."  (*See* Ex. 29 at Bates Stamp 592, lines 4-5.)  The

26   Ineligible Creditors cannot have it both ways.  The Debtor either has the ability to take action

27   ordered or permitted by the Code through its existing owner or management or it does not.  The

28

reality is that the Ineligible Creditors do not truly believe that the Debtor cannot take any action unless authorized by the Trustee. Instead, it is a self-serving argument raised by the Ineligible Creditors only when it suits their purposes.

The Debtor has the ability to appeal the Order for Relief without the consent of the Trustee and as directed by its member and managing member. No provision of the Code expressly or indirectly limits the right of the Debtor to appeal the Order for Relief. Rather, the right of the Debtor to appeal the Order for Relief is included in its statutory right to contest its entry from the beginning. Moreover, there can be no question that the Debtor continues to have rights and obligations post-order for relief that it can only exercise through its existing owner or manager. Where the Code says "debtor" it means the debtor and as directed by its existing owner or management, as opposed to the trustee as the representative of the estate.

The rights granted to the Trustee do not include the right to direct the Debtor to pursue the Appeal. Yes, the Trustee is the representative of the estate comprised of pre-petition assets and the trustee is the party with the standing to appear in pre-petition litigation. However, the right to appeal the entry of the Order for Relief (and whether the Trustee should have been appointed in the first instance) is simply not a pre-petition right included in the estate. Rather, it arose post-petition and upon the entry of the Order for Relief. *See Matter of Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746, 748–49 (5th Cir. 1995), *opinion withdrawn in part on reh'g,* 74 F.3d 599 (5th Cir. 1996) ("When the trustee was appointed, Cajun lost all the rights it had as a debtor-in-possession, including the right to operate its business. Clearly, it was aggrieved by losing the right to run itself. Accordingly, we hold that Cajun has standing to prosecute this appeal."); *see also Bellevue Place Assocs. v. Caisse Centrale Des Banques Populaires*, 1994 WL 687474, at *6 (N.D. Ill. Dec. 8, 1994) ("While it is true that the trustee is the only one who can pursue causes of action which belong to the estate, the Bank cites no authority, and we have found none, holding that only the trustee can the appeal from an order appointing the trustee."). Nor is appealing the Order for Relief the operation of the Debtor's business.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Against this backdrop, the decisions of the Ninth Circuit and this Panel to reach the merits of appeals by a debtor of the order appointing a trustee make sense.  As discussed below, the Tenth Circuit, in contrast, fails to appreciate the Code-created distinction between the estate (comprised of *pre-petition* assets) and the Debtor and to recognize the fact that the Debtor continues to have rights post-order for relief.  The Ineligible Creditors' position effectively deprives the Debtor of its right to appeal.  A trustee will never pursue an appeal of the order that gives rise to his or her appointment.[5]  There is an inherent conflict.  Moreover, the unique facts of this case demonstrate why it is so important that a debtor be permitted to appeal, as the Debtor was placed into bankruptcy contrary to the express elements of the Code.  Now, under the Ineligible Creditors' position, the Debtor lacks the authority to seek appellate review of their windfall.

### D.  The Cases Cited by the Court are Distinguishable

The Tenth Circuit's decision in *In re C.W. Mining Co.*, is not controlling, is contrary to the years of authority in the Ninth Circuit discussed above, and is materially distinguishable from this case.  In *C.W. Mining Co.*, the bankruptcy court entered an order for relief under chapter 11.  *See In re C.W. Mining Co.*, 636 F.3d 1257, 1259 (10th Cir. 2011).  Thereafter, one of the petitioning creditors moved for the appointment of a chapter 11 trustee.  The putative debtor did not contest the appointment of the trustee and, in fact, stated that it wished to convert its case from chapter 11 to chapter 7.  *See id.*  The Tenth Circuit's decision makes clear that it was premised on the fact that the debtor *did not challenge the appointment of the trustee.  See id.* at 1259 ("The Managers were divested of their authority to appeal by the appointment of a Chapter 7 trustee, which they did not challenge.").  The Tenth Circuit reiterated this important distinguishing factor in discussing the limits of its holding.  *See id.* at 1264 ("But when corporate managers fail to appeal the conversion to Chapter 7, they cannot atone for their mistake by appealing other determinations over a trustee's objection.  Given the Managers' failure to appeal the conversion in in this case, their arguments

---

[5]    The Tenth Circuit BAP in that case found that the putative debtor could appeal the order for relief as authorized by its former management because otherwise its statutory right to contest the involuntary petition as expressly authorized by the Code would be rendered a nullity. *See In re C.W. Min. Co.*, 41 B.R. 307, *3 (B.A.P. 10th Cir. 2009) (unpublished).

regarding equity ring especially hollow."). There is no question that, here, the Debtor challenged the entry of the Order for Relief.

In addition, the *C.W. Mining Co.* decision is based on the false premise that the Code does not provide for the debtor to appear in a chapter 7 through its existing management. *See In re C.W. Mining Co.*, 636 F.3d at 1263 (citing *Log Furniture, Inc. v. Call*, 180 Fed. Appx. 785, 787 (10th Cir. 2006)). This is simply not true as evidenced by the express provisions of the Code discussed above. Moreover, in the quoted *Log Furniture, Inc.*, decision, the Tenth Circuit failed to recognize the Code-mandated distinction between the estate and the debtor. *See Log Furniture, Inc. v. Call*, 180 Fed. Appx. 785, 788, n.5 (10th Cir. 2006) (stating that "the legal entity is now the bankruptcy estate, not a corporation.").[6] Thus, the Tenth Circuit's decisions are contrary to the Code.

The Supreme Court's *Weintraub* decision is not controlling here because that decision involved a very specific and completely different issue. In that *voluntary* bankruptcy case, the Supreme Court addressed the ability of the trustee to waive a corporation's attorney-client privilege related to *pre-petition* communications versus the corporation's directors. *See Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 345 (1985). The Supreme Court's statements that the debtor's directors are "'completely ousted'" must be read within the context of the decision. *See id.* at 352-53 (quoting H.R. Rep. No. 95-595, pp. 220-21 (1977)). The Supreme Court determined that because a trustee represents the estate (comprised of all pre-petition property) and can operate the debtor's business, the duties of the trustee more closely resemble the duties of a company's directors outside of bankruptcy. *See id.* The Supreme Court's holding is entirely consistent with the distinction in the Code discussed above between, on the one hand, the estate administered by the trustee and, on the other hand, the debtor. The Supreme Court did not address the authority of an owner or member of an LLC to direct a debtor to appeal an order for relief without the trustee's consent.

---

[6] The *Log Furniture, Inc.*, decision is also factually distinguishable because it appears that, in that case, the debtor or its owner attempted to pursue *pre-petition* litigation included in the estate. *See Log Furniture, Inc. v. Call*, 180 Fed. Appx. 785, 788 (10th Cir. 2006).

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

The Supreme Court, in reaching its decision, analyzed whether its holding would be inconsistent with "the policies of the bankruptcy laws." *See id.* at 353. Here, the policies of the bankruptcy laws support permitting the Debtor to appeal without the Trustee's consent. The Ninth Circuit has consistently recognized the policy of safeguarding against the extreme nature and serious consequences of involuntary proceedings. An involuntary petition should be a measure of last resort and inappropriate and frivolous filings should be discouraged. *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004). Preventing a debtor from appealing absent a trustee's consent will only encourage frivolous filings. The Ninth Circuit's emphasis on the great irreparable harm that occurs upon the entry of an order for relief supports the position that the Ninth Circuit would find that the debtor has the right to appeal an order for relief as authorized by its existing owners or managers. *See In re Mason*, 709 F.2d 1313, 1317-18 (9th Cir. 1983) ("We find the other protections for debtors under the Bankruptcy Code insufficient to outweigh the potential for irreparable injury once an order for relief is entered."). Moreover, allowing a debtor to appeal without the trustee's consent is consistent with the debtor's "elementary right of self-defense. . . ." *See Security Bldg. & Loan Ass'n v. Spurlock*, 65 F.2d 768, 770 (9th Cir. 1933).

Accordingly, the Panel should find that the Debtor has the authority to appeal without the Trustee's consent.

## X.    CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Panel stay the Order for Relief pending the Appeal.

Respectfully submitted,

DATED: July 8, 2020            ZOLKIN TALERICO LLP


By:  ___/s/ David Zolkin_____
      DAVID ZOLKIN
      Attorneys for Rachel Rechnitz and Jona Rechnitz

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

DATED:  July 8, 2020

SMILEY WANG-EKVALL, LLP

By:      /s/ Robert S. Marticello
          ROBERT S. MARTICELLO
          MICHAEL L. SIMON
          Attorneys for Jadelle Jewelry and Diamonds,
          LLC

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States Bakruptcy
Appellate Panel for the Ninth
Circuit Case Number(s)

CC-20-1153

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Bankruptcy Appellate Panel for the Ninth Circuit by using the appellate CM/ECF system

on (date) _____.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

APPELLANTS' JOINT EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL; AND MEMORANDUM OF POINTS AND AUTHORITIES

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Bankruptcy Appellate Panel for the Ninth Circuit by using the appellate CM/ECF system

on (date) 07/09/2020 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| | | |
|---|---|---|
| Carolyn A. Dye, Esq.<br>Law Office of Carolyn A. Dye<br>3435 Wilshire Blvd<br>Suite 990<br>Los Angeles, CA 90010 | Sam S. Leslie<br>Suite #990<br>3435 Wilshire Blvd.<br>Los Angeles, CA 90010 | Jona and Rachel Rechnitz<br>9533 Sawyer Street<br>Los Angeles, CA 90035 |

Signature (use "s/" format)     /s/ Lynnette Garrett