**ZOLKIN TALERICO LLP**
David B. Zolkin, State Bar No. 155410
*dzolkin@ztlegal.com*
Derrick Talerico, State Bar No. 223763
*dtalerico@ztlegal.com*
12121 Wilshire Blvd., Suite 1120
Los Angeles, California 90025
Telephone:    424 500-8552

Attorneys for Appellants Jona Rechnitz
and Rachel Rechnitz

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds,
LLC

**FILED**
CLERK, U.S. DISTRICT COURT

**7/10/20**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CP _____ DEPUTY

CV20-6183 DOC

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**FOR THE NINTH CIRCUIT COURT OF APPEALS**

In re

JADELLE JEWELRY AND DIAMONDS,
LLC,

                    Debtor.

BAP Case No. CC-20-1153

USBC Case No. 2:20-bk-13530-BR

Chapter 7

**APPENDIX OF EXHIBITS IN SUPPORT
OF JOINT EMERGENCY MOTION
PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 8007 FOR
STAY PENDING APPEAL**

**TO THE UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE NINTH**

**CIRCUIT COURT OF APPEALS AND THE OTHER PARTIES IN INTEREST:**

Jadelle Jewelry and Diamonds, LLC, the appellant and debtor ("Jadelle"), hereby submits the following appendix of exhibits in support of its concurrently filed *Joint Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 For Stay Pending Appeal*.

| Exhibit No. | Title or Description of Document |
|---|---|
| 1 | Involuntary Petition [Docket No. 1] |
| 2 | Verified Complaint filed by Victor Franco Noval in *Noval v. Rechnitz, et al.* (the "Noval Action"); |
| 3 | March 10, 2020 minute order in the Noval Action temporarily staying the Noval Action; |
| 4 | The docket in the Noval Action as of May 26, 2020. |
| 5 | The docket in the action entitled *David Rovinsky v. Peter Voutsas* (the "Marco Action") as of June 15, 2020. |
| 6 | The amended third party complaint (the "Marco Complaint") filed on April 24, 2020 in the Marco Action. |
| 7 | The complaint filed on June 24, 2020 in the action entitled *Anter v. Rechnitz, et al.* |
| 8 | Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages [Docket No. 8] |
| 9 | Declaration of Oved Anter In Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee [Docket No. 15] |
| 10 | Docket in *In re Jadelle Jewelry and Diamonds, LLC*, USBC Case No. 2:20-bk-13530-BR, as of July 8, 2020 |
| 11 | Transcript of June 9, 2020: Status Conference re Involuntary Petition; Hearing Re: Motion of Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Hearing Re: Creditors' Motion for Appointment of Interim Chapter 7 Trustee |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

| Exhibit No. | Title or Description of Document |
|---|---|
| 12 | June 10, 2020 Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference [Docket No. 39] |
| 13 | Supplemental Declaration of Baruch C. Cohen Regarding Third Party Defendants' Motion for Stay of Proceedings, USDC Case No. 2:20-cv-02580-ODW-AS, Docket No. 61; |
| 14 | June 11, 2020 Email from Ronald Richards to Robert Marticello with attached discovery; |
| 15 | Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case [Docket No. 44] |
| 16 | Order Denying "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case [Docket No. 53] |
| 17 | Order Directing Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of This Order [Docket No. 54] |
| 18 | Order for Relief and Order to File Schedules, Statements and List(s) [Docket No. 55] |
| 19 | Statement Re Creditor List [Docket No. 72] |
| 20 | Statement Re Schedules and Statement of Financial Affairs [Docket No. 85] |
| 21 | June 18, 2020 Letter from Sam S. Leslie |
| 22 | Jona Rechnitz Notice of Appeal and Statement of Election [Docket No. 75] |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

| Exhibit No. | Title or Description of Document |
|---|---|
| 23 | Rachel Rechnitz Notice of Appeal and Statement of Election [Docket No. 76] |
| 24 | Order Denying Debtor's "Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal" [Docket No. 84] |
| 25 | Memorandum of Decision On Debtor's "Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal" [Docket No. 83] |
| 26 | Relevant excerpts from the case docket in *In re Focus Media*, Case No. . LA00-38197KM |
| 27 | Order of Relief and Order to File Schedules and Statement of Affairs, *In re Focus Media*, Case No. LA00-38197KM, Docket No. 831-1 |
| 28 | Petitioning Creditors' Preliminary Opposition to Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal [Docket No. 71] |
| 29 | Supplement to Petitioning Creditors' Preliminary Opposition to Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal [Docket No. 73] |
| 30 | Jadelle's Notice of Appeal and Statement of Election [Docket No. 61] |
| 31 | Rachel Rechnitz Amended Notice of Appeal and Statement of Election [Docket No. 88] |
| 32 | Jona Rechnitz Amended Notice of Appeal and Statement of Election [Docket No. 89] |
| 33 | Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal [Docket No. 62] |
| 34 | Relevant Excerpt from Ineligible Creditors Opposition to Motion to Dismiss [Docket No. 19] |

4

Respectfully submitted,

DATED: July 9, 2020

ZOLKIN TALERICO LLP

By: _____/s/ David Zolkin_____
DAVID ZOLKIN
Attorneys for Rachel Rechnitz and Jona Rechnitz

DATED: July 9, 2020

SMILEY WANG-EKVALL, LLP

By: _____/s/ Robert S. Marticello_____
ROBERT S. MARTICELLO
MICHAEL L. SIMON
Attorneys for Jadelle Jewelry and Diamonds, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2829044.1

5

APPENDIX OF EXHIBITS

# EXHIBIT "1"

ORIGINAL

| Fill in this information to identify the case: | |
|---|---|
| United States Bankruptcy Court for the: | |
| Central _____ District of California | |
| (State) | |
| Case number (if known): _____ Chapter ____ | |



FILED

APR - 6 2020

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

☐ Check if this is an amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual
12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

| **Part 1:** | Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed |
|---|---|

**1. Chapter of the Bankruptcy Code**

Check one:

☒ Chapter 7
☐ Chapter 11

| **Part 2:** | Identify the Debtor |
|---|---|

**2. Debtor's name**

JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

Jadelle, Inc.

**4. Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

___ - _____
EIN

**5. Debtor's address**

**Principal place of business**

9621   Brighton Way
Number   Street

Beverly Hills   CA   90210
City   State   ZIP Code

Los Angeles
County

**Mailing address, if different**

9454   Wilshire Blvd., Penthouse 01
Number   Street

P.O. Box

Beverly Hills   CA   90212
City   State   ZIP Code

**Location of principal assets, if different from principal place of business**

Number   Street

City   State   ZIP Code

| Official Form 205 | Involuntary Petition Against a Non-Individual | page 1 |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkFlow.com

| Debtor | Jadelle Jewelry and Diamonds, LLC | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**6. Debtor's website (URL)** _____

**7. Type of debtor**
- ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding LLP)
- ☐ Other type of debtor. Specify: _____

**8. Type of debtor's business**

*Check one:*
- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☒ None of the types of business listed.
- ☐ Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**
- ☒ No
- ☐ Yes. Debtor _____ Relationship _____
  - District _____ Date filed _____ Case number, if known _____
    MM / DD / YYYY

  - Debtor _____ Relationship _____
  - District _____ Date filed _____ Case number, if known _____
    MM / DD / YYYY

**Part 3:   Report About the Case**

**10. Venue**

*Check one:*
- ☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*
- ☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
- ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**
- ☒ No
- ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "1", PAGE 6

Debtor   Jadelle Jewelry and Diamonds, LLC
         Name

Case number (if known) _____

| 13. Each petitioner's claim | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | First International Diamond, Inc. | Trade Debt/Damages | $ 1,976,225.00 |
| | Peter Marco, LLC | Trade Debt/Damages | $ 7,676,744.00 |
| | Victor Franco Noval | Trade Debt/Damages | $ 5,800,000.00 |
| | | Total of petitioners' claims | $ 15,452,969.00 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the , along with the signature of the petitioner's attorney.

**Part 4:   Request for Relief**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

cab 2698544v1

| Petitioners or Petitioners' Representative | Signature of petitioner or representative, including representative's title |
|---|---|
| Name and mailing address of petitioner | |
| First International Diamond, Inc. | |
| Name | |
| P.O. BOX 3765 | |
| Number   Street | |
| Beverly Hills   CA   90212 | |
| City   State   ZIP Code | |
| Name and mailing address of petitioner's representative, if any | |
| Baruch C. Cohen, Esq. | |
| Law Office of Baruch C. Cohen, APLC | |
| Name | |
| 4929   Wilshire Blvd., Suite 940 | |
| Number   Street | |
| Los Angeles   CA   90010 | |
| City   State   ZIP Code | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   4-3-2020
           MM/DD/YYYY

x _____

Official Form 205     Involuntary Petition Against a Non-Individual     page 3

American LegalNet, Inc.
www.FormsWorkFlow.com

| Attorneys | | |
|---|---|---|

Daniel A. Lev
Printed name

SulmeyerKupetz, A Professional Corporation
Firm name, if any

333 South Grand Avenue
Number     Street

Los Angeles                    CA            90071
City                              State        ZIP Code

Contact phone    213.626.2311    Email  dlev@sulmeyerlaw.com

Bar number    129622

State        CA

x _____
Signature of attorney

Date signed    04/06/2020
MM / DD / YYYY

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "1", PAGE 8

| Debtor | Jadelle Jewelry and Diamonds, LLC | | Case number (if known) | |
| | Name | | | |

Signature of petitioner or representative, including representative's title

**Name and mailing address of petitioner**

Peter Marco, LLC
Name

252    N. Rodeo Dr.
Number    Street

Beverly Hills                CA        90210
City                         State     ZIP Code

**Name and mailing address of petitioner's representative, if any**
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC

Name

4929    Wilshire Blvd., Suite 940
Number    Street

Los Angeles                  CA        90010
City                         State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On  4-3-2020
MM / DD / YYYY

x _____
Signature of petitioner or representative including representative's title

**Name and mailing address of petitioner**

Victor Franco Noval
Name

1141    Summit Drive
Number    Street

Beverly Hills                CA
City                         State     ZIP Code

**Name and mailing address of petitioner's representative, if any**
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number    Street

Beverly Hills                CA        90213
City                         State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  _____
MM / DD / YYYY

x _____

Official Form 205                   Involuntary Petition Against a Non-Individual                   page 4

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor    Jadelle Jewelry and Diamonds, LLC _____    Case number (if known) _____
                    Name

**Signature of petitioner or representative, including representative's title**

**Name and mailing address of petitioner**
Peter Marco, LLC
Name

252      N. Rodeo Dr.
Number    Street

Beverly Hills            CA        90210
City                    State      ZIP Code

**Name and mailing address of petitioner's representative, if any**
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
Name

4929      Wilshire Blvd., Suite 940
Number    Street

Los Angeles              CA        90010
City                    State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On _____
            MM / DD / YYYY

✗
Signature of petitioner or representative, including representative's title

**Name and mailing address of petitioner**
Victor Franco Noval
Name

1141      Summit Drive
Number    Street

Beverly Hills            CA        90210
City                    State      ZIP Code

**Name and mailing address of petitioner's representative, if any**
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number    Street

Beverly Hills            CA        90213
City                    State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    04/06/2020
              MM / DD / YYYY

✗ _Ronald Richards_

Official Form 205                    Involuntary Petition Against a Non-Individual                    page 4



American LegalNet, Inc.
www.FormsWorkFlow.com

ORIGINAL

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| DANIEL A. LEV (CA Bar No. 129622)<br>_dlev@sulmeyerlaw.com_<br>**Sulmeyer**Kupetz<br>A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>Telephone: 213.626.2311<br>Facsimile: 213.629.4520<br>☒ _Attorney for Petitioning Creditor(s)_<br>☐ _Petitioning Creditor(s) appearing without attorney_ | **RECEIVED**<br>**APR - 6 2020**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>_____ Clerk |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| In re:<br><br>JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company,<br><br>                                                    Debtor(s). | CASE NO.:<br>CHAPTER: 7<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE IN AN INVOLUNTARY BANKRUPTCY CASE** |

To the above-named debtor(s):

    Pursuant to 11 U.S.C. § 303, an involuntary petition was filed on April    , 2020, in this bankruptcy court praying for the entry of an order for relief against you under chapter 7 of title 11 of the Bankruptcy Code. A copy of the involuntary petition accompanies this summons.

A status conference in the involuntary case commenced by the involuntary petition has been set for:

| **Hearing Date:** | **Place:** |
|---|---|
| **Time:** | ☒ 255 East Temple Street, Los Angeles, CA 90012 |
| **Courtroom:** | ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|  | ☐ 3420 Twelfth Street, Riverside, CA 92501 |
|  | ☐ 411 West Fourth Street, Santa Ana, CA 92701 |
|  | ☐ 1415 State Street, Santa Barbara, CA 93101 |

    If you wish to oppose the entry of an order for relief, you must file with the clerk of this court an answer to the involuntary petition or a motion pursuant to FRBP 1011(c) within 21 days after the date of service of this summons and attached involuntary petition, plus 3 additional days if you were served by mail. At the same time, you must also serve a copy of the answer or motion on the petitioner's attorney (or on the petitioner, if the petitioner does not have an attorney) at the address stated above. If you file a motion under FRPB 1011(c), your time to answer the petition will be governed by that rule.

cab 2698547v1 This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2012_                                    Page 1                        **F 1010-1.SUMMONS.INVOL**

EXHIBIT "1", PAGE 11

**TO THE DEBTOR:**

IF YOU FAIL TO TIMELY FILE A RESPONSE TO THIS SUMMONS, THE BANKRUPTCY COURT MAY ENTER AN ORDER FOR RELIEF IN ACCORDANCE WITH 11 U.S.C. § 303(h).

**TO THE PETITIONING CREDITOR(S):**

IF YOU FAIL TO TIMELY SERVE THE SUMMONS AND INVOLUNTARY PETITION AND/OR TO FILE PROOF OF SERVICE OF DOCUMENT THEREOF WITH THE COURT OR TO APPEAR AT THE STATUS CONFERENCE, THIS INVOLUNTARY CASE MAY BE DISMISSED IN ACCORDANCE WITH LBR 1010-1.

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date: _____          By: _____

Deputy Clerk

cab 2698547v1 This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                Page 2                **F 1010-1.SUMMONS.INVOL**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN AN INVOLUNTARY BANKRUPTCY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Alleged Debtor
Jadelle Jewelry and Diamonds, LLC
c/o Corporate Creations Network, Inc.,
Agent for Service of Process
251 Little Falls Drive
Wilmington, DE 19808

Jadelle Jewelry and Diamonds, LLC
c/o Rachel Rechnitz, Managing Member
9621 Brighton Way
Beverly Hills, CA 90201

Jadelle, Inc.
c/o Rachel Rechnitz, CEO
9621 Brighton Way
Beverly Hills, Ca 90210

Jadelle, Inc.
c/o Levin Prado, Agent for Service of Process
9454 Wilshire Blvd., Penthouse 01
Beverly Hills, CA 90212

Jadelle, Inc.
c/o Rachel Rechnitz, CEO
9454 Wilshire Blvd., Penthouse 01
Beverly Hills, CA 90212

Jadelle, Inc.
c/o Rachel Rechnitz, CEO
5700 Wilshire Blvd., Suite 355
Los Angeles, CA 90036

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

cab 2698547v1 This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
December 2012                                Page 3                        **F 1010-1.SUMMONS.INVOL**

EXHIBIT "1", PAGE 13

_____   _____   _____
*Date*          *Printed Name*          *Signature*

cab 2698547v1 This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                      Page 3                      **F 1010-1.SUMMONS.INVOL**

EXHIBIT "1", PAGE 14

ORIGINAL

RECEIVED

APR - 6 2020

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

B2500E (Form 2500E) (12/15)

## United States Bankruptcy Court
## Central District Of California, Los Angeles Division

In re    JADELLE JEWELRY AND DIAMONDS, LLC,
a Delaware limited liability company    ,    )    Case No. _____
                        )
        Debtor*            )    Chapter 7 _____
                        )
                        )

### SUMMONS TO DEBTOR IN INVOLUNTARY CASE

To the above named debtor:

    A petition under title 11, United States Code was filed against you in this bankruptcy court on
April 6, 2020 _____ (date), requesting an order for relief under chapter 7 _____ of the Bankruptcy
Code (title 11 of the United States Code).

    YOU ARE SUMMONED and required to file with the clerk of the bankruptcy court a motion
or answer to the petition within 21 days after the service of this summons.  A copy of the petition is
attached.

            Address of the clerk:
            255 E. Temple Street
            Los Angeles, CA 90012

At the same time, you must also serve a copy of your motion or answer on petitioner's attorney.

            Name and Address of Petitioner's Attorney:
            Daniel A. Lev
            **Sulmeyer**Kupetz, A Professional Corporation
            333 South Grand Avenue, Suite 3400
            Los Angeles, CA 90071
If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 1011(c).

If you fail to respond to this summons, the order for relief will be entered.

                _____ (Clerk of the Bankruptcy Court)

    Date: _____    By: _____ (Deputy Clerk)

* Set forth all names, including trade names, used by the debtor within the last 8 years. (Fed. R .Bankr. P. 1005).

cab 2698550v1


American LegalNet, Inc.
www.FormsWorkFlow.com

B2500E (Form 2500E) (12/15)

## CERTIFICATE OF SERVICE

I, _____(name), certify that on _____
(date), I served this summons and a copy of the involuntary petition on _____
(name), the debtor in this case, by *[describe the mode of service and the address at which the
debtor was served]*:

If service was made by personal service, by residence service, or pursuant to state law, I
further certify that I am, and at all times during the service of process was, not less than 18
years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____     Signature _____

        Print Name:     _____

        Business Address:     _____

                           _____

cab 2698550v1

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "2"

Electronically FILED by Superior Court of California, County of Los Angeles on 02/10/2020 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal,Deputy Clerk
20SMCV00216

Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Marc Gross

1  Ronald Richards (SBN 176246)
      ron@ronaldrichards.com
2  Morani Stelmach, Esq. (SBN 296670)
      morani@ronaldrichards.com
3  LAW OFFICES OF RONALD RICHARDS &
   ASSOCIATES, A.P.C.
4  Mailing Address:
   P.O. Box 11480
5  Beverly Hills, California 90213
   Telephone: (310) 556-1001
6  Facsimile: (310) 277-3325

7

8  Geoffrey S. Long (SBN 187429)
      glong0607@gmail.com
9  LAW OFFICES OF GEOFFREY LONG, A.P.C.
   1601 N. Sepulveda Blvd., No. 729
10 Manhattan Beach, California 90266
   Telephone: (310) 480-5946
11 Facsimile: (310) 796-5663

12 Attorneys for Plaintiff VICTOR FRANCO NOVAL

13

14            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15         **FOR THE COUNTY OF LOS ANGELES – WEST DISTRICT**

16

17 VICTOR FRANCO NOVAL, an individual,        Case No.

18              Plaintiff,                    **VERIFIED COMPLAINT FOR:**

19        vs.                                   (1) Fraud

20 JONA S. RECHNITZ, an individual;            (2) Civil Theft (*Penal Code,* § 496)
   RACHEL RECHNITZ, an individual;
21 JADELLE INC., a California corporation;     (3) Breach of Contract
   JADELLE JEWELRY AND DIAMONDS,
22 LLC, a Delaware limited liability company;  (4) Conspiracy to Commit Theft, Fraud,
   LEVIN PRADO aka LEVON PRADO, an                 and Fraud by Concealment
23 individual; XIOMARA CORTEZ, an
   individual and DOES 1-20.                   (5) Appointment of Receiver
24
                Defendants.
25

26

27

28

─────────────────────────────────────────
                        COMPLAINT

1    Plaintiff Victor Franco Noval ("Plaintiff" or "Franco") hereby alleges as follows:

2    **PARTIES**

3    1.    Plaintiff Victor Franco Noval ("Franco") is an individual residing in Beverly Hills,

4    California in the County of Los Angeles.

5    2.    Defendant Jona S. Rechnitz ("Jona") is an individual who is residing in the County

6    of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles.

7

8

9

10

11       

12

13

14

15

16

17

18

19

20   3.    Defendant Rachel Rechnitz ("Rachel") is an individual who is residing in the County

21   of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles.

22   She is formerly known as Rachel Kahn.  Both Jona and Rachel advertise political and powerful

23   celebrity connections to create a false sense of credibility about themselves and their business.  They

24   post photos on social media of Kylie Jenner and Kim Kardashian, and Jona is seen with the mayor

25   of New York and holding large amounts of United States Currency.

26

27

28

---

1

COMPLAINT





2

COMPLAINT

4.      Defendant Jadelle Inc. ("Jadelle Inc.") is a California corporation whose principle office is in Beverly Hills and whose board member and President is Rachel.

5.      Defendant Jadelle Jewelry and Diamonds, LLC ("Jadelle LLC," collectively with Jadelle Inc., the "Jadelle Entities") is a Delaware limited liability company qualified to do business in California.  Rachel is the managing member of Jadelle LLC.

6.      Defendant Levin Prado aka Levon Prado ("Prado") is the agent for service of process, controller, and check signer for the Jadelle Entities.  It is alleged on information and belief that Prado has a girlfriend named Xiomara Cortez at the Wells Fargo Bank Beverly Hills branch who assisted him in furthering Rachel and Jona's fraud by stopping payment on checks and allowing numerous improper check transactions to occur on both of the Jadelle Entities' accounts.   Prado is displaying the sign he has indicated with his action towards Plaintiff and others as it relates to their goods and collateral.



EXHIBIT "2", PAGE 20

1    7.    Xiomara Cortez is an individual believed to reside in the County of Los Angeles who

2    is employed at Wells Fargo Bank.  Cortez was instrumental in allowing Jona and Rachel's frauds

3    to continue by keeping the current bank account open and by allowing Prado to continue to open up

4    accounts and issue worthless instruments.



19    8.    The true names and capacities of defendants Does 1 through 20, whether individual,

20    corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues these defendants by

21    such fictitious names.  Plaintiff will amend this complaint to show the true names and capacities of

22    those defendants after they have been ascertained.  Plaintiff is informed and believes, and on that

23    basis alleges, that each of the fictitiously named defendants is responsible in some manner for the

24    occurrences alleged in this complaint and that Plaintiff's damages as alleged in the Complaint were

25    proximately caused by the acts or omissions of such defendant.

26    9.    Plaintiff is informed that, at all times mentioned in this Complaint, Defendants, and

27    each of them, were the partners, joint venturers, agents, employees, alter egos, and representatives

28    of each other in doing the things herein alleged and, in doing so, were acting within the scope of

4

COMPLAINT

their respective authorities as agents, employees and representatives, and are jointly and severally liable to Plaintiff.

10. The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, along with the assistance of Prado, making them personally liable. Without Rachel setting upon the entities to commit the frauds, Jona lying to steal the collateral and loan proceeds, and Prado signing the checks, none of the below referenced offenses could have occurred.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this entire action because it is a civil action wherein the damages sought are in excess of the jurisdictional limits of this Court, and the Defendants are subject to personal jurisdiction in the State of California

12. Defendants have conducted substantial business in the State of California, are registered and qualified to conduct business in the State of California, are California residents, and/or have purposefully directed tortious activities towards a California resident.

13. Venue in this Court is proper pursuant to California *Code of Civil Procedure*, §§ 395 *et seq*. Venue of this action is in this Court and County because the obligations, acts and liabilities claimed in this action arose and the torts alleged herein took place in Los Angeles County and the parties reside in this County.

## GENERAL FACTUAL ALLEGATIONS

14. On or about January 24, 2019, the Jadelle Entities, which are owned by Jona and Rachel, borrowed money from Plaintiff pursuant to a written agreement. The terms of the written agreement were memorialized in a Debt Acknowledgment, Promissory Note and Security Agreement ("Debt Agreement") dated March 2019. A true and correct copy of the Debt Agreement is attached hereto and incorporated herein as Exhibit "A".

15. The original principal amount in the Debt Agreement is $2,850,000 at 9% interest per month, however, the total debt owed by Defendants later increased to $5,800,000. The maturity dates are reflected in the Debt Agreement.

16. Pursuant to the Debt Agreement, the loans were secured by jewelry delivered to

5
COMPLAINT

1 Franco and a 2012 Bugatti. Jona delivered the Bugati and the jewelry to Franco as security/collateral
2 for the loan.

3        17.    After a series of further advance transactions, the debt on the loan grew to
4 $5,800,000.

5        18.    The Bugati was liquidated and the funds were credited against principal for a total
6 credit of $400,000.

7        19.    As background on Jona Rechnitz, a sealed information was filed against him in the
8 Southern District of New York on June 6, 2016 for wire fraud. A copy of the information is attached
9 hereto as Exhibit "B".

10       20.    Jona entered a guilty plea on June 6, 2016.

11       21.    On March 15, 2017, the information against Jona was unsealed. On March 15, 2017,
12 Jona was released on bond pursuant to release conditions imposed by Judge Alvin K. Hellerstein.

13       22.    On December 6, 2019, Jona was sentenced to 10 months of custody. He was granted
14 release pending appeal.

15       23.    The government in its sentencing memorandum indicated that "Rechnitz was in a
16 position to cooperate regarding a broad range of subject matters in part because, for several years
17 beginning when he was 26 years old in 2008, Rechnitz rode a wave of unbridled ambition and a
18 seemingly limitless sense of entitlement through a series of misdeeds. Rechnitz had been a brazen
19 criminal, and the seriousness of his crimes of conviction cannot, and should not, be minimized."

20       24.    Yet, apparently misunderstanding his role as a "one of the single most important and
21 prolific white collar cooperating witnesses in the recent history of the Southern District of New
22 York" according to the government, Jona mistakenly believes that this provides him immunity from
23 committing fraud in California.

24       25.    No sooner than within weeks of being sentenced in the Southern District of New
25 York, Jona swindled Franco in a large scale fraud totaling $5,800,000. On information and belief,
26 Jona and Rachel have defrauded other diamond dealers in Southern California and as those victims
27 authorize the release of their names, the complaint will be amended to recover their stolen goods as
28 well.

26.     At the time of the fraud, Jona Rechnitz was and still is a convicted felon from the Southern District of New York. He is presently out on bond for a wire fraud conviction where he was granted bail pending appeal. He is married to Rachel Rechnitz and they have six children together.

27.     They both now reside in a rental home in the Beverlywood area in the City of Los Angeles.

28.     Jona and Rachel operate a jewelry business through two similarly named entities, defendants Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein the Jadelle Entities, whose marque client is the Kardashian family. Each of their clients will be added to this action as the facts unfold showing the stolen collateral was sold to retail customers of Jona and Rachel.

29.     The Debt Agreement between the parties was simple. Jona tendered over $7,000,000 worth of diamonds to Plaintiff to be held as a collateral against a loan which totaled $5,800,000.

30.     In late December of 2019, AFTER, Jona was sentenced, Jona indicated to Franco that he was going to get a credit line and asked for the release of the diamond collateral in exchange for payment in full. This representation by Jona was false when made. Jona knew the representation was false when made. Jona made this representation with the intention of causing Franco to rely on it. Franco relied on this representation to his detriment.

31.     Jona persuaded Franco and Franco's brother to deliver the collateral to Jona and Rachel's office at 9454 Wilshire Blvd. in Beverly Hills. Jona exchanged two checks payable to Franco in exchange for the diamond collateral dated January 14, 2020 and January 16, 2020 in the amounts of $2,500,000 and $1,300,000, respectively. True and correct copies of said checks are attached hereto as Exhibit "C." At the time Jona issued the checks to Franco he had no intention of honoring the checks. Franco relied on Jona issuing and intending to honor the checks by releasing the diamond collateral.

32.     Plaintiff and Plaintiff's brother complied by exchanging the diamond collateral and Jona tendered two checks attached hereto as Exhibit "C". The checks, however, were NSF at the time of tender. Jona has repeatedly lied, lulled, and attempted to fabricate one excuse after another to delay paying Plaintiff.

EXHIBIT "2", PAGE 24

33.     Based upon information and belief, Prado, acting in concert with Jona and Rachel, and to further their scheme, had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the checks, attached hereto as Exhibit "C", that Franco was going to deposit.

34.     Jona falsely enlisted attorneys to pretend payment on the loan was coming from family members to buy himself more time. A number of these family members had written letters to the Court for Jona's sentencing.

35.     In reality, Jona liquidated Plaintiff's diamond collateral and spent Plaintiff's money, but refuses to tell Plaintiff how he liquidated the collateral or how he spent the loan proceeds.

36.     It is apparent that Jona is continuing his criminal conduct in California after being convicted in New York.

37.     Upon realizing he had been swindled and defrauded, Franco immediately filed a police report with the Beverly Hills Police.

38.     Repeated demands have been made to Jona to return the diamond collateral. Jona, who wants to conceal his criminal conduct from the sentencing judge in New York and the federal prosecutors who vouched for him, as well as U.S. Probation, took numerous steps to lull the victim, Franco, to buy more time.

39.     On January 16, 2020, with the assistance of a local Beverly Hills attorney, Jona drafted more documents and an additional check, attached hereto as Exhibit "D" and Exhibit "E", to further stop Franco from disclosing and revealing that Jona's fraudulent conduct has only grown in scope and size and that he has learned nothing from his life of crime which spanned from 2011 to 2015, which then halted while he was cooperating from 2016 to 2018.

40.     The fact that Jona only received 10 months custody time with 5 months house arrest has only emboldened him to commit more fraud, grand theft, and to issue worthless instruments.

41.     The January 16, 2020 document requested that Franco keep Jona's fraud and breaches confidential until January 23, 2020. Jona, however, did not comply with the January 16, 2020 agreement and no payments have been received. Jona entered into the January 16, 2020 agreement without any intention of performing in order to delay Franco from seeking redress for the fraud and breaches. Franco reasonably and detrimentally relied on the January 16, 2020

8
COMPLAINT

1  agreement.

2      42.    Jona then fired the Beverly Hills attorney and retained a new attorney on January 28,

3  2020, to resolve this matter.

4      43.    Jona's modus operandi in this fraud is to have numerous well-respected attorneys

5  contact Franco's counsel and advance Jona's false promises of repayment or outside funding along

6  with checks that either are NSF or which Jona had no intention of honoring.

7      44.    Jona directly, and through counsel, has been asked to disclose the location of the

8  diamond collateral and to provide a tracing and accounting of the loan proceeds. Jona has refused

9  to do so.

10     45.    On information and belief, Plaintiff alleges that this is because Jona had pledged

11 diamonds to Franco that in fact were loaned to Jona and were not owned by Jona or Rachel. Upon

12 discovering whose diamonds Jona had pledged, this Complaint will be amended to add that party as

13 they have Franco's collateral and hold it in constructive trust for Plaintiff's benefit.

14     46.    On information and belief, defendant Xiomara Cortez aided and abetted the

15 defendants in committing these frauds. Defendant Cortez assisted in issuing checks, stopping

16 payment, and verifying funds, knowingly allowing Prado to issue numerous worthless checks and

17 never closed the accounts due to her romantic relationship with Prado.

18     47.    Jona, assisted by Rachel, have only become more emboldened in their frauds. On

19 information and belief, they have taken goods on memo from various Southern California diamond

20 merchants. Namely, Peter Marco, Moti Klein, and Julius Klein. The video Jona showed at his

21 sentencing in federal court to the federal judge on December 19, 2019, with Kim Kardashian, was

22 most likely depicted stolen and fraudulently obtained goods from Plaintiff and various diamond

23 merchants. The amount of losses to these various parties is alleged to be over $15,000,000. They

24 are number other victims as well involved in various scams perpetrated by Jona. On information

25 and belief, they include Sotheby's, Leon Landver, Sam Gorodistian, Ben Adhoot, and Yehuda

26 Gamzo. All the alleged victims have the same common pattern evidence used by Jona and Rachel

27 which is to have attorneys contact them, telling them they are getting paid according to Jona.

28     48.    On information and belief, Jona made numerous false statements to the federal

9
COMPLAINT

sentencing judge because by December 19 ,2019, Jona's frauds were well under way.  This house of fraudulent cards needs to be exposed as his growing victim list is becoming a community wide problem.  This lawsuit and other reports that have been filed, will hopefully bring this economic terrorist to justice and Plaintiff prays that this Court take appropriate access to find him financially responsible and appoint a receiver to halt what has now turned into outright theft of merchandise in the tens of millions of dollars afflicting Plaintiff and other victims.  As more come forward, Plaintiff will amend and add them to this complaint to turn this into a class if appropriate to stop this man and his wife.  Presently, Plaintiff is aware of other victims including Peter Marco, Julius Klein, and Moti Klein as well as multiple other victims including an active insurance investigation.

49.     Plaintiff immediately reported this matter to the Beverly Hills Police Department in the hope of stopping Mr. Rechnitz from further victimizing local residents and businesses.  The police have notified Plaintiff there are numerous other victims.  The filing of this action is intended to bring to light Rechnitz's frauds and have him exposed so no further innocent people are hurt by this economic terrorist.  At this point, Plaintiff has no realistic belief that Rechnitz will ever pay him back as the list of victims keeps growing.  At this point, Plaintiff only hopes no further persons are swindled by Jona, Rachel, and their team of thieves.



50.     On February 4, 2020, his newly retained criminal defense attorney in Los Angeles

10

COMPLAINT

sent a carefully scripted mass email to BCC'ing Jona's purported victims, attached as Exhibit "F" which reads as follows:

> We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any, equity, the family member has in it.
>
> If you are represented by counsel, please let us know and provide your counsel's contact information.  Our client's desire is to resolve this matter amicably.

This email comes after Jona had three previous reputable attorneys contact Plaintiff all relaying the same bogus and false words of hope.  This type of lulling is widely known under federal law.   The email carefully and correctly discloses that the law firm knows nothing of the veracity of the client directed statements and correctly distances the law firm of any endorsement of Jona's numerous attempts to use reputable attorneys to buy himself time.  It should be noted that each and every time the reputable attorneys Jona retained, correctly made it clear they were not endorsing or underwriting Jona's promises of repayment of the stolen funds or return of the stolen collateral.

51.    Jona and Rachel have directed numerous "lulling letters" in furtherance of their scheme to defraud. A lulling letter is "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make apprehension of the defendants less likely." *United States v. Manarite*, 44 F.3d 1407, 1412 (9th Cir.1995) (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)); *United States v. Shaw* (9th Cir. 1996) 97 F.3d 1463.  The numerous exhibits attached to this complaint are all examples of lulling letters.  They display consciousness of Jona and Rachel's intent to defraud.

52.    On February 7, 2020, Plaintiff's counsel was contacted by two partners at Cohen Williams LLP that notwithstanding the February 4, 2020 email, they unfortunately had no further information to report.   Plaintiff's counsel asked them to stop contacting him regarding this matter as his client cannot psychologically handle further false promises, lies, and false rays of hope that Jona directs his attorneys to provide his various victims.  Plaintiff's counsel informed these fine

EXHIBIT "2", PAGE 28

1   reputable attorneys not to update him further as he has moved on and that his client has zero belief

2   Jona will ever pay him back.

3       53.     Plaintiff is hopeful that the publication of this action will cause more victims to not

4   feel ashamed of being fleeced and to report these matters to the proper authorities.  Absent public

5   awareness of Jona and his conspirator's frauds, he will keep stealing from people and hurting

6   residents and businesses of Southern California.

7       54.     Jona is using his last cooperation in the Southern District of New York as some sort

8   of ill-conceived immunity as part of the scheme. During the fraud, Jona has indicated that he was

9   not concerned with any problems or things he has done because the FBI needs him as an informant

10  so bad in the New York case where there are appeals they would never do anything to him no matter

11  what he did.  This is of course is completely an ignorant and delusional view.  The FBI does not

12  immunize crooks to steal simply because they cooperate in a case.  Jona uses this as a tool to further

13  his scheme to defraud.

14      55.     Numerous victims have been interviewed in this matter.  On information and belief,

15  as to the Sotheby's fraud, Jona falsely represented to Sotheby's he was entitled to diamonds given

16  to Sotheby's for auction, Jona secretly picked them up and has dissipated the assets.   The total loss

17  was $3,000,000.00.  Just adding up all the victims the Plaintiff's law firm has interviewed the losses

18  exceed $15,000,000.  The Plaintiff is encouraging all victims of Jona and Rachel to come forward

19  immediately and to stop believing they are going to get paid.

20                              **FIRST CAUSE OF ACTION**

21                          **FRAUD AGAINST ALL DEFENDANTS**

22      56.     Plaintiff hereby incorporates by reference as though fully set forth in full herein, all

23  preceding Paragraphs of this Complaint.

24      57.     The foregoing representations made by Jona, Rachel, and the other Defendants were

25  false when they were made, and Defendants knew the representations to be false.  Defendants did

26  not intend to comply with the promises and representations when they were made.

27      58.     The foregoing representations were made by Jona, Rachel, and Defendants with the

28  intent to deceive Plaintiff and with knowledge that Plaintiff would rely on them.

                                    12
                                COMPLAINT

59.   Plaintiff detrimentally and reasonably relied on the foregoing representations.

60.   Plaintiff has been damaged by Defendants' false, intentional, and fraudulent representations and concealing of material information, as alleged above, in an amount to be proven at trial, but at least $7,000,000, which represents the collateral Jona lied to steal as well as tendered worthless instruments for.

61.   Plaintiff further requests the imposition of a constructive trust against all Defendants who are in possession of the diamond collateral set forth in the Debt Agreement and for an order and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiff.

62.   In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiff.  Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct

## SECOND CAUSE OF ACTION

### CIVIL THEFT (Cal. *Penal Code,* § 496) AGAINST ALL DEFENDANTS

63.   Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

64.   As a result of Jona and Defendants' conduct as alleged herein, they have violated California *Penal Code,* section 496.

65.   California *Penal Code,* section 496, provides, "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions

EXHIBIT "2", PAGE 30

1  for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of

2  Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.

3        66.    Jona and Defendants have obtained and received property from Plaintiff, the

4  $5,800,000, in a manner constituting "theft," as that term is defined in California *Penal Code,*

5  section 484(a), "[e]very person who shall feloniously steal, take, carry, lead, or drive away the

6  personal property of another, or who shall fraudulently appropriate property which has been

7  entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent

8  representation or pretense, defraud any other person of money, labor or real or personal property, or

9  who causes or procures others to report falsely of his or her wealth or mercantile character and by

10  thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession

11  of money, or property or obtains the labor or service of another, is guilty of theft."

12        67.    As a direct and proximate result of Defendants' civil theft, Plaintiff has been

13  damaged in an amount to be proven at trial, but at least $7,000,000.

14        68.    Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover

15  treble damages from Defendants.

16        69.    Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover

17  attorneys' fees from Defendants.

18        70.    Plaintiff further requests the imposition of a constructive trust against all Defendants

19  who are in possession of the diamond collateral set forth in the Debt Agreement and for an order

20  and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive

21  trustees for the benefit of Plaintiff.

22        71.    In doing the things herein alleged, Defendants acted willfully, maliciously, and with

23  the intent to cause injury and harm to Plaintiff.  Defendants are therefore guilty of malice and/or

24  fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and

25  exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter

26  them and others from engaging in similar misconduct

27

28

EXHIBIT "2", PAGE 31

**THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT AGAINST ALL DEFENDANTS**

72.    Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

73.    Plaintiff has duly performed all of his obligations, terms, and conditions of the Debt Agreement, except to the extent that his performance has been waived, prevented or excused by the acts, conduct and/or omissions of Defendants.

74.    All conditions for Defendants' performance on the Debt Agreement have occurred.

75.    Defendants are in breach of the Debt Agreement by failing and refusing to pay Plaintiff all amounts due thereunder and by failing to provide Plaintiff with the collateral required thereunder.

76.    As a direct and proximate result of the acts, omissions, and breaches of the Debt Agreement by Defendants, as alleged herein, Plaintiff has suffered damages in a specific amount to be determined at trial, but in the amount of at least $7,000,000.

**FOURTH CAUSE OF ACTION**

**CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT AGAINST ALL DEFENDANTS**

77.    Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

78.    Jona, Rachel, and Prado conspired to make an illegal agreement to defraud Franco of his loan proceed and his collateral and to commit civil theft.

79.    Jona, with his wife Rachel, have set up serial bogus companies to solicit loans based upon the false premise they have collateral.  Meanwhile the collateral is already pledged to a third party or Jona and Rachel have concocted lies to get it back, using Prado as their patsy to sign checks on their corporate checking accounts.

80.    Franco is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants, including but not limited to Jona, Rachel, and Prado, formed a civil conspiracy and engaged in the foregoing acts in operation and furtherance of that conspiracy.

15

COMPLAINT

81. Plaintiff is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Plaintiff, as alleged herein.

82. As a result of the civil conspiracy, each and every Defendant is liable and responsible for the acts of the other Defendants in furtherance of the conspiracy and all damages resulting therefrom.

83. As a result of the civil conspiracy, Defendants are jointly and severally liable for $7,000,000.

84. The egregious nature of the Defendants/conspirators' collective conduct is malicious, wanton, and willful. Plaintiff needs to be awarded punitive damages plus a judgment of joint and several liability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Franco seeks a judgment in her favor and an order granting the following relief:

1. That Plaintiff be awarded compensatory damages in the amount of at least $7,000,000;

2. That Plaintiff be awarded treble damages pursuant to California *Penal Code,* section 496(c);

3. That Plaintiff be awarded reasonable attorneys' fees pursuant to California *Penal Code,* section 496(c);

4. For a constructive trust over the diamond collateral and all proceeds therefrom;

5. That Plaintiff be awarded punitive damages in an amount to be proven at trial;

6. For a receiver to be installed into both defendant companies and personal estates to marshal the remaining assets;

7. That Plaintiff be awarded costs of suit; and

8. That Plaintiff be awarded such further relief as the Court deems just and proper.

DATED: February 8, 2020

LAW OFFICES OF RONALD RICHARDS
& ASSOCIATES, A.P.C.

By: ___/s/ Ronald Richards_____
         Ronald Richards
        Attorneys for Plaintiff Victor Franco Noval

LAW OFFICES OF GEOFFREY LONG, A.P.C.

By: ___/s/ Geoffrey Long_____
         Geoffrey Long
        Attorneys for Plaintiff Victor Franco Noval

17

COMPLAINT

**VERIFICATION**

I, Victor Franco Noval, declare:

I have read the foregoing complaint and know the contents thereof.

I am informed and believe based on information provided to me, materials I have reviewed, and my personal knowledge that the matters stated in are true and accurate to the best of my knowledge except where I indicated they are based upon information and belief.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct, and that this verification to this complaint was executed this 9th day of February, 2020, in Beverly Hills, California.

_____

Victor Franco Noval

---

18

COMPLAINT

# EXHIBIT A

## DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT

DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT, is made this ___ day of March, 2019, by and between Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, located at 9454 Wilshire Boulevard, Penthouse #1, Beverly Hills, CA 90210 ("Jadelle") and Victor Franco Noval, an individual with an address of 1141 Summit Drive, Beverly Hills, CA 90210 ("Noval"). Jadelle and Noval are hereinafter referred to collectively as "the Parties".

WHEREAS Noval has made loans in the aggregate amount of $2,850,000.00 to Jadelle;

NOW, THEREFORE, in consideration of the foregoing, the representations, warranties, covenants and agreements hereinafter set forth, the loans previously advanced to Jadelle and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby mutually agree as follows:

### ACKNOWLEDGEMENT

1.      Jadelle does hereby confirm and acknowledge that has received the followed loan amounts from Noval:

      a.  On January 24, 2019, the sum of $1,100,000.00;
      b.  On February 27, 2019, the sum of $750,000.00;
      c.  On March 8, 2019, the sum of $400,000.00; and
      d.  On March 26, 2019, the sum of $600,000.00.

### TERMS OF PAYMENT

2.      Interest: Commencing on the date hereof, Jadelle shall pay to Noval, interest on the full outstanding balance, accruing at a rate of nine percent (9%) per annum, which shall be payable in monthly installments on the first business day of each month, commencing April 1, 2019.

3.      Maturity Date: The full balance of all sum outstanding shall be due on the date that is six (6) months from the date of each advance as set forth in ¶ 1 above.

4.      Extension: The term of this loan may be extended by mutual agreement of the Parties.

### GUARANTEE AND SECURITY

5.      The payment obligations set forth herein are secured by jewelry which Jadelle has provided to Noval and which Noval is holding in its possession as collateral for the amounts due hereunder. In addition thereto, the obligations of Jadelle are further secured by its pledge of

$400,000.00 in value of that certain 2012 Bugatti vehicle presently stored in a garage owned and operated by Noval.

**SEVERABILITY**

6.    In the event any provision of this Agreement is deemed to be void, invalid, or unenforceable, that provision shall be severed from the remainder of this Agreement so as not to cause the invalidity or unenforceability of the remainder of this Agreement. All remaining provisions of this Agreement shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth including, but not limited to, the interest rate set forth herein, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

**MODIFICATION**

7.    Except as otherwise provided in this document, this agreement may be modified, superseded, or voided only upon the written and signed agreement of the Parties. Further, the physical destruction or loss of this document shall not be construed as a modification or termination of the agreement contained herein.

**EXCLUSIVE JURISDICTION FOR SUIT IN CASE OF BREACH**

8.    The Parties, by entering into this agreement, submit to jurisdiction in State of New York for adjudication of any disputes and/or claims between the parties under this agreement. Furthermore, the parties hereby agree that the courts of State of California shall have exclusive jurisdiction over any disputes between the parties relative to this agreement, whether said disputes sounds in contract, tort, or other areas of the law.

9.    This Agreement shall be interpreted under, and governed by, the laws of the state of California.

IN WITNESS WHEREOF, this DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT has been duly executed by or on behalf of the parties hereto as of the date first above written.

**Borrower**
*Jadelle Jewelry and Diamonds, LLC*

By:    Levin Prado
Its:    Authorized Signatory

**Lender**

Victor Franco Noval

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :        SEALED INFORMATION
                                  :
        - v. -                    :        16 Cr.
                                  :
JONA RECHNITZ,                    :        16 CRIM 389
                                  :
              Defendant.          :
                                  :
- - - - - - - - - - - - - - - - x :

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6 6 16
```

### COUNT ONE

The United States Attorney charges:

1. From in or about 2011, up to and including in or about 2015, in the Southern District of New York and elsewhere, JONA RECHNITZ, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

2. It was a part and an object of the conspiracy that JONA RECHNITZ, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to the honest services of law enforcement and other public officials, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation

JUDGE SULLIVAN

of Title 18, United States Code, Sections 1343 and 1346, to wit,

RECHNITZ, and others known and unknown, provided financial and

personal benefits and political contributions to public

officials, including law enforcement officials, in exchange for

official action as requested by RECHNITZ and others, and as

opportunities arose, and in connection therewith and in

furtherance thereof, RECHNITZ, and others known and unknown,

transmitted and caused to be transmitted interstate, e-mails,

telephone calls, and electronic wire transfers of funds.

3.   It was also a part and an object of the conspiracy

that JONA RECHNITZ, the defendant, and others known and unknown,

willfully and knowingly, having devised and intending to devise

a scheme and artifice to defraud, and to deprive the members of

the Corrections Officers' Benevolent Association ("COBA"), the

union which represents the corrections officers of New York City,

of their intangible right to the honest services of a senior COBA

official, who was also a corrections officer (the "COBA

Official"), would and did transmit and cause to be transmitted by

means of wire communication in interstate and foreign commerce,

writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, in violation of Title 18,

United States Code, Sections 1343 and 1346, to wit, RECHNITZ

facilitated the payment of approximately $60,000 to the COBA

EXHIBIT "2", PAGE 41

Official on behalf of a hedge fund operator in exchange for the
COBA Official's direction of an investment of union funds in the
hedge fund, and in connection therewith and in furtherance
thereof, RECHNITZ, and others known and unknown, transmitted and
caused to be transmitted interstate, e-mails, telephone calls, and
electronic wire transfers of funds.

(Title 18, United States Code, Section 1349.)

### FORFEITURE ALLEGATION

4.   As a result of committing the offense alleged in
Count One of this Information, JONA RECHNITZ, the defendant, shall
forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C)
and 28 U.S.C. § 2461, all property, real and personal, which
constitutes or is derived from proceeds traceable to the offense
alleged in Count One of the Information.

### Substitute Asset Provision

5.   If any of the above-described forfeitable
property, as a result of any act or omission of JONA RECHNITZ, the
defendant:

(1) cannot be located upon the exercise of due
diligence;

(2) has been transferred or sold to, or deposited
with, a third person;

3

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853, and
Title 28, United States Code, Section 2461.)

PREET BHARARA
United States Attorney

4

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONA RECHNITZ,

Defendant.

SEALED INFORMATION

16 Cr.

(Title 18, United States Code, Section 1349.)

PREET BHARARA
United States Attorney.

# EXHIBIT C

# WELLS FARGO BANK

8820

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212

11-4288/1210

PAY TO THE ORDER OF   Franco Noval          DATE 1/16/20

$ 1,300,000.00

one million Three hundred

DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

LOAN REPAYMENT

⑈121042882⑈864⑈          ⑈8820

# WELLS FARGO BANK

8817

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212

11-4288/1210

DATE 1/14/20

PAY TO THE ORDER OF   Franco Noval

$ 2,500,000.00

Two million Five hundred Thousand

DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

LOAN REPAYMENT

⑈121042882⑈864          ⑈8817

EXHIBIT "2", PAGE 46

# EXHIBIT D

This document is to memorialize the current relationship between the parties. It is not intended to create a forbearance or an extension of credit of any kind.

On January 16, 2020, Jonah reached out to me to resolve this matter. On the advice of counsel, I disclosed to Jonah that I had filed a police report against Jonah on January 15th, 2020 for fraud and grand theft. I told Jonah that he needs to pay me independently and apart from any reports I filed and that at no time have I used the filing of the report to resolve this matter.    Besides disclosing to Jonah that I did file the report after he reached out to me to resolve this matter, I made no other characterizations or comments about the report but I was advised that Jonah should know that one was in fact filed.

Per my request I have asked Jonah to issue a new replacement check for $4.5m dated January 22, 2020. Jonah has represented he does not have the funds in his account at the time this replacement was issued.  Noval is acknowledging this. Jonah intends on using his best efforts to have the funds by January 22, 2020. I agree not to deposit the new replacement check for 4.5MM until Thursday Jan 23, 2020.

I have agreed and have instructed my associates to refrain from discussing anything with the press or anyone unless the check gets returned or bounces for Stop Payment or NSF on the agreed upon deposit date. I will honor his request assuming he follows through with his above representations.

I agree to keep all matters confidential between the parties involved and will hold on any further reports until January 23, 2020 as long as the terms of this agreement are met.

Sincerely,                                1/15/2020        1/16/20

Victor Franco Noval

I, Jonah Rechnitz, have read the above facts and representations in this document. I agree they are accurate.

_____        ___1/16/20_____

Jonah Rechnitz                          Date

# EXHIBIT E



WELLS FARGO BANK
WILSHIRE CRESCENT  9354 WILSHIRE BLVD  BEVERLY HILLS, CA 90212

8823

11-4288/1210

PAY TO THE ORDER OF  Franco Ubai

DATE  1-22-20

$ 4,500,000.00

Four million five hundred thousand _____ DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

Loan Repayment

⑈1210428812⑈ 288 2⑈8649⑈   ⑈8823

EXHIBIT "2", PAGE 50

# EXHIBIT F

## Ronald Richards

| | |
|---|---|
| **From:** | Reuven Cohen <rcohen@ |
| **Sent:** | Tuesday, February 4, 2020 9:40 PM |
| **To:** | Reuven Cohen; Marc Williams |
| **Subject:** | Jona Rechnitz |

We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any, equity, the family member has in it.

If you are represented by counsel, please let us know and provide your counsel's contact information.

Our client's desire is to resolve this matter amicably.

Sincerely,

Reuven L. Cohen
Cohen Williams LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel:  213-232-5163
Fax:  213-232-5167
rcohen@
www.cohen-williams.com

1

EXHIBIT "3"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Santa Monica Courthouse, Department R

**20SMCV00216**                                                    March 10, 2020
**VICTOR FRANCO NOVAL vs JONA S. RECHNITZ, et al.**                       8:30 AM

Judge: Honorable Marc D. Gross              CSR: None
Judicial Assistant: P. Anyankor             ERM: None
Courtroom Assistant: A. Wiggins             Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Ronald Richards

For Defendant(s): Marc S Williams and Reven L. Cohen

**NATURE OF PROCEEDINGS:** Hearing on Ex Parte Application Advancing Motion for Stay

The matter is called for hearing.

Ex Parte Application Hearing is held.

The Court now rules as follows:

The Ex Parte Application for Order Shortening Time and Advancing Hearing Date on Defendant Motion for Stay of Proceedings filed by Jona S. Rechnitz, Rachel Rechnitz, Jadelle Inc., a California corporation, Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company on 03/09/2020 is Granted in Part.

Pursuant to the request of moving party, the Hearing on Motion for Stay of Proceedings scheduled for 02/25/2021 is advanced to this date and continued to 04/09/2020 at 08:30 AM in Department R at Santa Monica Courthouse.

Moving Papers are filed.

Opposition and Reply are due per code.

The Court orders the case TEMPORARILY STAYED, pending a decision on the above-scheduled hearing.

Defendant(s) may submit a supplemental declaration re: update regarding the status of the criminal investigation with new information that was not available at today's hearing (03/10/2020). The declaration is to be e-filed sixteen (16) court days, plus time for service, prior to the hearing.

EXHIBIT "3", PAGE 53

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department R

**20SMCV00216**                                                    March 10, 2020
**VICTOR FRANCO NOVAL vs JONA S. RECHNITZ, et al.**                 8:30 AM

Judge: Honorable Marc D. Gross          CSR: None
Judicial Assistant: P. Anyankor         ERM: None
Courtroom Assistant: A. Wiggins         Deputy Sheriff: None

Counsel for the Defendant(s) is to give notice.

EXHIBIT "4"

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:**  20SMCV00216
VICTOR FRANCO NOVAL VS JONA S. RECHNITZ, ET AL.

**Filing Courthouse:**  Santa Monica Courthouse

**Filing Date:**  02/10/2020
**Case Type:**  Fraud (no contract) (General Jurisdiction)
**Status:**  Pending

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**08/10/2020** at 08:30 AM in Department R at 1725 Main Street, Santa Monica, CA 90401
Case Management Conference

**11/03/2020** at 08:30 AM in Department R at 1725 Main Street, Santa Monica, CA 90401
Hearing on Motion for Stay of Proceedings

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

CORTEZ XIOMARA - Defendant

JADELLE INC. A CALIFORNIA CORPORATION - Defendant

JADELLE JEWELRY AND DIAMONDS LLC A DELAWARE LIMITED LIABILITY COMPANY - Defendant

LONG GEOFFREY - Attorney for Plaintiff

NOVAL VICTOR FRANCO - Plaintiff

PRADO LEVIN AKA LEVON PRADO - Defendant

RECHNITZ JONA S. - Defendant

RECHNITZ RACHEL - Defendant

RICHARDS RONALD - Attorney for Plaintiff

WILLIAMS MARC S - Attorney for Defendant

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Documents Filed (Filing dates listed in descending order)**

EXHIBIT "4", PAGE 55

**05/07/2020** Notice (AMENDED NOTICE OF CONTINUED HEARING ON DEFENDANTS? MOTION FOR STAY OF PROCEEDINGS AND CASE REASSIGNMENT)
Filed by Victor Franco Noval (Plaintiff)

**05/07/2020** Notice (NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE)
Filed by Victor Franco Noval (Plaintiff)

**04/30/2020** Notice of Continuance Due to COVID-19 State of Emergency Declarations
Filed by Clerk

**04/30/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**04/29/2020** Notice of Case Reassignment and Order for Plaintiff to Give Notice
Filed by Clerk

**03/17/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**03/11/2020** Notice of Ruling
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/10/2020** Minute Order ( (Hearing on Ex Parte Application Advancing Motion for Stay))
Filed by Clerk

**03/09/2020** Opposition (PLAINTIFF?S OPPOSITION TO DEFENDANTS? EX PARTE APPLICATION TO STAY ALL PROCEEDINGS IN ACTION AND FOR AN ORDER SHORTENING TIME AND ADVANCING THE HEARING DATE)
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Proof of Service by Substituted Service
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Ex Parte Application (for Order Shortening Time and Advancing Hearing Date on Defendant Motion for Stay of Proceedings)
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/09/2020** Proof of Personal Service
Filed by Victor Franco Noval (Plaintiff)

**03/06/2020** Motion for Stay of Proceedings
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**02/10/2020** Notice of Case Management Conference
Filed by Clerk

**02/10/2020** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**02/10/2020** Civil Case Cover Sheet
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Summons (on Complaint)
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Complaint
Filed by Victor Franco Noval (Plaintiff)

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

EXHIBIT "4", PAGE 56

5/26/2020                                    LASC - Case Access

**04/09/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Motion for Stay of Proceedings - **Not Held - Continued - Court's Motion**

**03/10/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Ex Parte Application (Advancing Motion for Stay) - **Held**

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Register of Actions (Listed in descending order)

**05/07/2020** Notice (NOTICE OF CONTINUED CASE MANAGEMENT CONFERENCE)
Filed by Victor Franco Noval (Plaintiff)

**05/07/2020** Notice (AMENDED NOTICE OF CONTINUED HEARING ON DEFENDANTS? MOTION FOR STAY OF PROCEEDINGS AND CASE REASSIGNMENT)
Filed by Victor Franco Noval (Plaintiff)

**04/30/2020** Notice of Continuance Due to COVID-19 State of Emergency Declarations
Filed by Clerk

**04/30/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**04/29/2020** Notice of Case Reassignment and Order for Plaintiff to Give Notice
Filed by Clerk

**04/09/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Motion for Stay of Proceedings - **Not Held - Continued - Court's Motion**

**03/17/2020** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**03/11/2020** Notice of Ruling
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/10/2020** at 08:30 AM in Department R, Marc D. Gross, Presiding
Hearing on Ex Parte Application (Advancing Motion for Stay) - **Held**

**03/10/2020** Minute Order ( (Hearing on Ex Parte Application Advancing Motion for Stay))
Filed by Clerk

**03/09/2020** Opposition (PLAINTIFF?S OPPOSITION TO DEFENDANTS? EX PARTE APPLICATION TO STAY ALL PROCEEDINGS IN ACTION AND FOR AN ORDER SHORTENING TIME AND ADVANCING THE HEARING DATE)
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Proof of Personal Service
Filed by Victor Franco Noval (Plaintiff)

**03/09/2020** Ex Parte Application (for Order Shortening Time and Advancing Hearing Date on Defendant Motion for Stay of Proceedings)
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**03/09/2020** Proof of Service by Substituted Service
Filed by Victor Franco Noval (Plaintiff)

**03/06/2020** Motion for Stay of Proceedings
Filed by Jona S. Rechnitz (Defendant); Rachel Rechnitz (Defendant); Jadelle Inc., a California corporation (Defendant) et al.

**02/10/2020** Notice of Case Management Conference
Filed by Clerk

EXHIBIT "4", PAGE 57

LASC - Case Access

**02/10/2020** Civil Case Cover Sheet
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Summons (on Complaint)
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Complaint
Filed by Victor Franco Noval (Plaintiff)

**02/10/2020** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

EXHIBIT "4", PAGE 58

EXHIBIT "5"

6/15/2020                                    CM/ECF - California Central District

ACCO,(ASx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:20-cv-02580-ODW-AS

David Rovinsky LLC v. Peter Marco, LLC et al          Date Filed: 03/18/2020
Assigned to: Judge Otis D. Wright, II                 Jury Demand: Plaintiff
Referred to: Magistrate Judge Alka Sagar              Nature of Suit: 370 Other Fraud
Demand: $75,000                                       Jurisdiction: Diversity
Cause: 28:1332 Diversity-Fraud

**Plaintiff**

**David Rovinsky LLC**                    represented by  **Anthony R Bisconti**
*a Delaware limited liability company*                    Bienert Katzman PC
                                                          601 West 5th Street Suite 720
                                                          Los Angeles, CA 90071
                                                          213-528-3400
                                                          Fax: 949-369-3701
                                                          Email: tbisconti@bienertkatzman.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jason A Levine**
                                                          Hangley Aronchick Segal Pudlin & Schiller
                                                          One Logan Square
                                                          Ste 27th Floor
                                                          Philadelphia, PA 19103
                                                          215-568-6200
                                                          Email: jlevine@hangley.com
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Jay Katzman**
                                                          Bienert Katzman PLC
                                                          601 West 5th Street Suite 720
                                                          Los Angeles, CA 90071
                                                          213-528-3400
                                                          Fax: 949-369-3701
                                                          Email: skatzman@bienertkatzman.com
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Peter Marco, LLC**                      represented by  **Baruch C Cohen**
*a California limited liability company*                  Law Offices of Baruch C Cohen APLC
                                                          4929 Wilshire Boulevard Suite 940
                                                          Los Angeles, CA 90010
                                                          323-937-4501
                                                          Fax: 323-937-4503

EXHIBIT "5", PAGE 59

Email: baruchcohen@baruchcohenesq.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Voutsas**                    represented by **Baruch C Cohen**
*an individual*                                        (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Peter Voutsas**                    represented by **Baruch C Cohen**
*an individual*                                        (See above for address)
*TERMINATED: 04/17/2020*                               *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Peter Marco, LLC**                 represented by **Baruch C Cohen**
*a California limited liability company*               (See above for address)
*TERMINATED: 04/17/2020*                               *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

V.

**ThirdParty Defendant**

**Jona Rechnitz**                    represented by **Brittany L Lane**
*TERMINATED: 04/17/2020*                               Cohen Williams LLP
                                                       724 South Spring Street 9th Floor
                                                       Los Angeles, CA 90014
                                                       213-232-5165
                                                       Fax: 213-232-5167
                                                       Email: blane@cohen-williams.com
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Marc S Williams**
                                                       Cohen Williams LLP
                                                       724 South Spring Street 9th Floor
                                                       Los Angeles, CA 90014
                                                       213-232-5162
                                                       Email: mwilliams@cohen-williams.com
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Reuven L Cohen**
                                                       Cohen Williams LLP
                                                       724 South Spring Street 9th Floor
                                                       Los Angeles, CA 90014
                                                       213-232-5163
                                                       Fax: 213-232-5167
                                                       Email: rcohen@cohen-williams.com
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Youngbin Son**
                                                       Cohen Williams LLP

EXHIBIT "5", PAGE 60

724 South Spring Street 9th Floor
Los Angeles, CA 90014
213-232-5152
Fax: 213-232-5167
Email: yson@cohen-williams.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Defendant**

**Levin Prado**
*TERMINATED: 04/17/2020*

**ThirdParty Plaintiff**

| | | |
|---|---|---|
| **Peter Marco, LLC**<br>*a California limited liability company* | represented by | **Baruch C Cohen**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**ThirdParty Plaintiff**

| | | |
|---|---|---|
| **Peter Voutsas**<br>*an individual*<br>*also known as*<br>Peter Marco<br>*also known as*<br>Peter Marco Extraodinary Jewels of Beverly Hills<br>*doing business as*<br>Peter Marco LLC | represented by | **Baruch C Cohen**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

V.

**ThirdParty Defendant**

| | | |
|---|---|---|
| **Rachel Rechnitz** | represented by | **Brittany L Lane**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Marc S Williams**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Reuven L Cohen**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Youngbin Son**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**ThirdParty Defendant**

**Levin Prado**
*also known as*
Levon Prado

**ThirdParty Defendant**

| | | |
|---|---|---|
| **Jona S Rechnitz** | | represented by | **Brittany L Lane**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Marc S Williams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Reuven L Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Youngbin Son**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/11/2020 | 62 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Stay Case 47 *(See Supplemental Declaration in Opposition to Motion to Stay Case [Docket 61]* filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 06/11/2020) |
| 06/11/2020 | 61 | DECLARATION of Baruch C. Cohen Supplemental Declaration in Support of NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 06/11/2020) |
| 06/09/2020 | 60 | MINUTES (IN CHAMBERS) by Judge Otis D. Wright, II: RE EX PARTE APPLICATION for Leave for In Camera Review filed by Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz 57 . The Court finds the application does not warrantin camera review and DENIES the Rechnitz Defendants application. (lc) (Entered: 06/09/2020) |
| 06/03/2020 | 59 | DECLARATION of Baruch C. Cohen re Response in Opposition to Motion, 58 *Supplemental Declaration of Baruch C. Cohen Regarding Third-Party Plaintiffs Opposition to Third-Party Defendants Ex Parte Application for an Order Permitting Submission for In Camera Review Relating to the Ongoing Criminal Investigation* filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 06/03/2020) |
| 06/02/2020 | 58 | OPPOSITION to EX PARTE APPLICATION for Leave for In Camera Review 57 filed by Defendants Peter Marco, LLC, Peter Voutsas, Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Attachments: # 1 Request for Judicial Notice, # 2 Proposed Order)(Cohen, Baruch) (Entered: 06/02/2020) |
| 06/02/2020 | 57 | EX PARTE APPLICATION for Leave for In Camera Review filed by Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. (Attachments: # 1 Declaration, # 2 Proposed Order)(Williams, Marc) (Entered: 06/02/2020) |
| 06/02/2020 | 56 | The hearing on the MOTION to Stay Case 47 , scheduled for June 15, 2020 at 1:30 P.M., is hereby VACATED and taken off calendar. No appearances are necessary. The matter stands submitted, and will be decided upon without oral argument. An order will issue.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sce) TEXT ONLY ENTRY (Entered: 06/02/2020) |

| 06/01/2020 | 55 | REPLY in Support of NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. (Williams, Marc) (Entered: 06/01/2020) |
| 05/27/2020 | 54 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Lodging 53 . The following error(s) was/were found: Proposed Document was not submitted as separate attachment. Other error(s) with document(s): Refiled Notice of Lodging, however the proposed order was efiled as 1 pdf with the Notice of Lodging, instead of it being submitted as a Separate Attachment as advised previously docket no. 51. Filer bypassed the party for whom filing is made. Docket entry only shows attorney's name.. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 05/27/2020) |
| 05/26/2020 | 53 | NOTICE OF LODGING filed *Amended Notice of Lodging* re Objection/Opposition (Motion related), 48 (Cohen, Baruch) (Entered: 05/26/2020) |
| 05/22/2020 | 52 | OPPOSITION to NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 05/22/2020) |
| 05/21/2020 | 51 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Lodging 50 (no link to filer only shows attorney. The following error(s) was/were found: Incorrect document is attached to the docket entry. Proposed Document was not submitted as separate attachment. Other error(s) with document(s): 1) Filer used G-92 form, which is only applicable re "MANUALLY" filed or lodged documents at Clerk's Office filing window. 2) Filer should have prepared a Notice of Lodging on pleading format, to which the Proposed order should have been submitted as a SEPARATE attachment thereto... instead of 1 all inclusive pdf as in this filing. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 05/21/2020) |
| 05/20/2020 | 50 | NOTICE OF LODGING filed re Objection/Opposition (Motion related), 48 (Cohen, Baruch) (Entered: 05/20/2020) |
| 05/20/2020 | 49 | REQUEST FOR JUDICIAL NOTICE *Third-Party Plaintiffs Request for Judicial Notice in Support of Opposition to Third-Party Defendants Motion for Stay of Proceedings* filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 05/20/2020) |
| 05/20/2020 | 48 | Third-Party Plaintiffs Opposition to Third-Party Defendants Motion for Stay of Proceedings; Memorandum of Points & Authorities; Declaration of Baruch C. Cohen re: NOTICE OF MOTION AND MOTION to Stay Case 47 filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Cohen, Baruch) (Entered: 05/20/2020) |
| 05/18/2020 | 47 | NOTICE OF MOTION AND MOTION to Stay Case filed by Third-Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Motion set for hearing on 6/15/2020 at 01:30 PM before Judge Otis D. Wright II. (Attachments: # 1 Proposed Order) (Williams, Marc) (Entered: 05/18/2020) |
| 05/12/2020 | 46 | ORDER by Judge Otis D. Wright, II: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: NOTICE OF MOTION AND MOTION to Stay Case 44 , for the following reasons: Comply with instructions on discrepancy doc no.45. Refile correctly and for |

EXHIBIT "5", PAGE 63

CM/ECF - California Central District

| | | failure to comply with LR 7-3. The conference shall take place at least seven (7) days prior to the filing of the motion. (lc) (Entered: 05/12/2020) |
|---|---|---|
| 05/12/2020 | 45 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: NOTICE OF MOTION AND MOTION to Stay Case 44 . The following error(s) was/were found: Hearing information is missing, incorrect, or not timely. Other error(s) with document(s): Although filer used correct motion event, it appears filer bypassed CM system prompt re date, time and selection of Judge...as a result the motion is NOT set on Judge's Motion calendar for the date shown on the pdf document as 6/8/20 1:30 PM.In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 05/12/2020) |
| 05/11/2020 | 44 | (STRICKEN PER 5/11/2020 ORDER, DOCKET NO. 46). NOTICE OF MOTION AND MOTION to Stay Case filed by Third-Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. (Attachments: # 1 Proposed Order) (Williams, Marc) Modified on 5/12/2020 (lc). (Entered: 05/11/2020) |
| 05/11/2020 | 43 | Notice of Appearance or Withdrawal of Counsel: for attorney Youngbin Son counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Youngbin Son as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Youngbin Son added to party Jona S Rechnitz(pty:3pd), Attorney Youngbin Son added to party Jona Rechnitz(pty:3pd), Attorney Youngbin Son added to party Rachel Rechnitz(pty:3pd))(Son, Youngbin) (Entered: 05/11/2020) |
| 05/11/2020 | 42 | Notice of Appearance or Withdrawal of Counsel: for attorney Brittany L Lane counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Brittany L. Lane as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Brittany L Lane added to party Jona S Rechnitz(pty:3pd), Attorney Brittany L Lane added to party Jona Rechnitz(pty:3pd), Attorney Brittany L Lane added to party Rachel Rechnitz(pty:3pd))(Lane, Brittany) (Entered: 05/11/2020) |
| 05/11/2020 | 41 | Notice of Appearance or Withdrawal of Counsel: for attorney Reuven L Cohen counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Reuven L. Cohen as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Reuven L Cohen added to party Jona S Rechnitz(pty:3pd), Attorney Reuven L Cohen added to party Jona Rechnitz(pty:3pd), Attorney Reuven L Cohen added to party Rachel Rechnitz(pty:3pd))(Cohen, Reuven) (Entered: 05/11/2020) |
| 05/11/2020 | 40 | Notice of Appearance or Withdrawal of Counsel: for attorney Marc S Williams counsel for Third Party Defendants Jona S Rechnitz, Jona Rechnitz, Rachel Rechnitz. Adding Marc S. Williams as counsel of record for Jona S. Rechnitz and Rachel Rechnitz for the reason indicated in the G-123 Notice. Filed by Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz. (Attorney Marc S Williams added to party Jona S Rechnitz(pty:3pd), Attorney Marc S Williams added to party Jona Rechnitz(pty:3pd), Attorney Marc S Williams added to party Rachel Rechnitz(pty:3pd))(Williams, Marc) (Entered: 05/11/2020) |
| 04/24/2020 | 39 | Amendment to the Third-Party Complaint AMENDED THIRD-PARTY COMPLAINT against Third-Party Defendants Levin Prado, Jona S Rechnitz, Rachel Rechnitz amending Third Party Complaint 27 ; JURY DEMAND, filed by Third-Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual)(Cohen, Baruch) (Entered: 04/24/2020) |

EXHIBIT "5", PAGE 64

CM/ECF - California Central District

| 04/24/2020 | 38 | ORDER by Judge Otis D. Wright, II: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: Errata 36 , for the following reasons: Read the instructions on the discrepancy on docket no. 37 and the rules to file a 3- amend complaint and resubmit correctly. (lc) (Entered: 04/24/2020) |
|---|---|---|
| 04/21/2020 | 37 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Errata 36 re Third Party Complaint. The following error(s) was/were found: Clerk unable to determine the sufficiency of submitting corrected pages 26 and 27 re overlapping images over text and the submitting of ONLY reformulated copies of pages 26 and 27. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 04/21/2020) |
| 04/20/2020 | 36 | (STRICKEN PER 4/24/2020 ORDER, DOCKET NO. 38).NOTICE OF ERRATA filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas. correcting Third Party Complaint 27 (Cohen, Baruch) Modified on 4/24/2020 (lc). (Entered: 04/20/2020) |
| 04/17/2020 | 35 | 21 DAY Summons Issued re Third Party Complaint 27 as to third party defendant Levin Prado aka Leon Prado. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 34 | 21 DAY Summons Issued re Third Party Complaint 27 as to third party defendant Rachel Rechnitz. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 33 | 21 DAY Summons Issued re Third Party Complaint 27 as to third party defendant Jona S Rechnitz. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 32 | Request for Clerk to Issue Summons on Third Party Complaint 27 filed by Third Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). (Attachments: # 1 Summons Request - Rachel Rechnitz, # 2 Summons Request - Levin Prado)(Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 31 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Third Party Complaint Summons Request 28 . The following error(s) was found: Summons is not directed to the defendant(s). The defendants name must appear in the To:section of the summons. CLARIFICATION re third party complaint summons to be issued to multiple defendants: 1) Please do NOT abbreviate defendant's name in the "TO:" area nor erroneously combine 2 defendants as one, which does not reflect the two separate defendants properly. Also "Jona" is incomplete and should to be named exactly as" JONA S. RECHNITZ". The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (lc) (Entered: 04/17/2020) |
| 04/17/2020 | 30 | WAIVER OF SERVICE Returned Executed filed by 3rd Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). upon Rachel Rechnitz waiver sent by Plaintiff on 6/15/2020, answer due 6/15/2020. Waiver of Service signed by Marc S. Williams. (Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 29 | WAIVER OF SERVICE Returned Executed filed by 3rd Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). upon Jona Rechnitz waiver sent by Plaintiff on 4/15/2020, answer due 6/15/2020. Waiver of Service signed by Marc S. Williams. (Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 28 | Request for Clerk to Issue Summons on Third Party Complaint 27 filed by 3rd Party Plaintiff Peter Marco, LLC(a California limited liability company), Peter Voutsas(an individual). (Cohen, Baruch) (Entered: 04/17/2020) |
| 04/17/2020 | 27 | THIRD PARTY COMPLAINT against Third-Party Defendants Levin Prado, Jona |

EXHIBIT "5", PAGE 65

| | | Rechnitz, Rachel Rechnitz, filed by 3rd Party Plaintiff Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) (Entered: 04/17/2020) |
|---|---|---|
| 04/16/2020 | 26 | PROOF OF SERVICE filed by Plaintiff David Rovinsky LLC, re Order,, Set/Reset Hearing, 25 served on April 16, 2020. (Bisconti, Anthony) (Entered: 04/16/2020) |
| 04/15/2020 | 25 | ORDER that the Scheduling Conference is set for 7/27/2020 1:30 PM ; compliance with FRCP 16, and 26(f) and filing of joint report; Counsel for plaintiff shall immediately serve this Order on all parties, including any new parties to the action by Judge Otis D Wright, II (lc) (Entered: 04/15/2020) |
| 04/15/2020 | 24 | ORDER by Judge Otis D. Wright, II: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: Summons Request 20 , Third Party Complaint 19 , for the following reasons: REVIEW LOCAL RULES for these documents and read the instructions on the discrepancies in doc nos. 22 and 23.; (lc) (Entered: 04/15/2020) |
| 04/15/2020 | 23 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Summons Request 20 . The following error(s) was found: The case number and/or judge(s)initials are incorrect. RE Third party complaint summons- No formal Third Party Complaint on file. Docket no. 19 is entitled a "CROSS COMPLAINT"; Case number incomplete, missing assigned Judge and Magistrate's initials. Should read as 2:20-cv-02580-ODW-AS. Note a deficiency notice re pdf entitled a "Cross Complaint" issued docket no. 22. The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (lc) (Entered: 04/15/2020) |
| 04/15/2020 | 22 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Third Party Complaint 19 . The following error(s) was/were found: Case number is incorrect or missing. Pdf document is erroneously Entitled as a "CROSS COMPLAINT" and NOT a Third Party Complaint Other error(s) with document(s): Case number is Incomplete as Missing the assigned Judge and Magistrate's initials: Should read as 2:20-cv-02580-ODW-AS. (note was missing on the answer as well. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 04/15/2020) |
| 04/14/2020 | 21 | CORPORATE DISCLOSURE STATEMENT filed by Third Party Plaintiffs Peter Marco, LLC, Peter Voutsas, Defendants Peter Marco, LLC, Peter Voutsas (Cohen, Baruch) (Entered: 04/14/2020) |
| 04/14/2020 | 20 | (STRICKEN PER 4/15/2020 ORDER, DOCKET NO. 24).Request for Clerk to Issue Summons on Third Party Complaint 19 filed by Defendant, Third-party plaintiff Peter Marco, LLC, Peter Voutsas. (Cohen, Baruch) Modified on 4/15/2020 (lc). (Entered: 04/14/2020) |
| 04/14/2020 | 19 | (STRICKEN PER 4/15/2020 ORDER, DOCKET NO. 24) THIRD PARTY COMPLAINT against Third-Party Defendants Jona Rechnitz, Rachel Rechnitz, Levin Prado ; Jury Demand, filed by Defendant, Third-Party Plaintiff Peter Voutsas, Peter Marco, LLC. (Cohen, Baruch) Modified on 4/15/2020 (lc). (Entered: 04/14/2020) |
| 04/14/2020 | 18 | ANSWER to Complaint (Attorney Civil Case Opening), 1 filed by Defendant Peter Marco, LLC, Peter Voutsas.(Attorney Baruch C Cohen added to party Peter Marco, LLC(pty:dft), Attorney Baruch C Cohen added to party Peter Voutsas(pty:dft))(Cohen, Baruch) (Entered: 04/14/2020) |
| 03/30/2020 | 17 | ORDER GRANTING APPLICATION of Non-Resident Attorney Jason A. Levine to Appear Pro Hac Vice on behalf of Plaintiff David Rovinsky LLC and designating Anthony R Bisconti as local counsel 15 by Judge Otis D. Wright, II (lc) (Entered: 03/30/2020) |

EXHIBIT "5", PAGE 66

| 03/27/2020 | 16 | NOTICE Regarding Response to Notice of Pro Hac Vice Application filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/27/2020) |
|---|---|---|
| 03/27/2020 | 15 | APPLICATION of Non-Resident Attorney Jason A. Levine to Appear Pro Hac Vice on behalf of Plaintiff David Rovinsky LLC (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. CCACDC-25882802) filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/27/2020) |
| 03/23/2020 | 14 | MINUTE ORDER IN CHAMBERS by Judge Otis D Wright, II: This action has been assigned to the calendar of Judge Otis D. Wright II. Counsel are STRONGLY encouraged to review the Central Districts website for additional information.. The parties may consent to proceed before a Magistrate Judge appearing on the voluntary consent list. PLEASE refer to Local Rule 79-5 for the submission of CIVIL ONLY SEALED DOCUMENTS. CRIMINAL SEALED DOCUMENTS will remain the same. Please refer to the Judges procedures and schedules for detailed instructions for submission of sealed documents. (lc) (Entered: 03/23/2020) |
| 03/23/2020 | 13 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to defendants Peter Marco, LLC, Peter Voutsas. (lc) (Entered: 03/23/2020) |
| 03/20/2020 | 12 | STIPULATION Extending Time to Answer the complaint as to All Defendants, filed by Plaintiff David Rovinsky LLC.(Bisconti, Anthony) (Entered: 03/20/2020) |
| 03/20/2020 | 11 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/20/2020) |
| 03/20/2020 | 10 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Andrew E. Erdlen. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (lh) (Entered: 03/20/2020) |
| 03/20/2020 | 9 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Jason A. Levine. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (lh) (Entered: 03/20/2020) |
| 03/20/2020 | 8 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Summons Request 3 . The following error(s) was found: The caption of the summons must match the caption of the complaint verbatim. If the caption is too large to fit in the space provided, enter the name of the first party and then write see attached.Next, attach a face page of the complaint or a second page addendum to the Summons. The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (lh) (Entered: 03/20/2020) |
| 03/20/2020 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (lh) (Entered: |

EXHIBIT "5", PAGE 67

| | | 03/20/2020) |
|---|---|---|
| 03/20/2020 | 6 | NOTICE OF ASSIGNMENT to District Judge Otis D. Wright, II and Magistrate Judge Alka Sagar. (lh) (Entered: 03/20/2020) |
| 03/18/2020 | 5 | CORPORATE DISCLOSURE STATEMENT filed by Plaintiff David Rovinsky LLC identifying David Rovinsky LLC as Corporate Parent. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 4 | CERTIFICATE of Interested Parties filed by Plaintiff David Rovinsky LLC, identifying David Rovinsky LLC; Peter Voutsas; Peter Marco, LLC. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 2 | CIVIL COVER SHEET filed by Plaintiff David Rovinsky LLC. (Bisconti, Anthony) (Entered: 03/18/2020) |
| 03/18/2020 | 1 | COMPLAINT Receipt No: ACACDC-25780085 - Fee: $400, filed by Plaintiff David Rovinsky LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Attorney Anthony R Bisconti added to party David Rovinsky LLC(pty:pla))(Bisconti, Anthony) (Entered: 03/18/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/15/2020 07:54:44 | | | |
| PACER Login: | msimonpacer | Client Code: | JAD01-0001 |
| Description: | Docket Report | Search Criteria: | 2:20-cv-02580-ODW-AS End date: 6/15/2020 |
| Billable Pages: | 10 | Cost: | 1.00 |

EXHIBIT "5", PAGE 68

# EXHIBIT "6"

1   Baruch C. Cohen, Esq. (SBN 159455)
    **LAW OFFICE OF BARUCH C. COHEN**
2      A Professional Law Corporation
    4929 Wilshire Boulevard, Suite 940
3   Los Angeles, California 90010
    (323) 937-4501      Fax (888) 316-6107
4   e-mail: baruchcohen@baruchcohenesq.com

5   Attorney for Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka
    PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba
6   PETER MARCO LLC

7

8                 **IN THE UNITED STATES DISTRICT COURT**

                  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
9

10  DAVID ROVINSKY LLC, a                USDC # 2:20-cv-02580-ODW-AS
    Delaware limited liability company,
11
                                         **AMENDED THIRD-PARTY**
12         Plaintiff,                    **COMPLAINT FOR:**

13  PETER VOUTSAS aka PETER             **1.    INTENTIONAL**
    MARCO aka PETER VOUTSAS, aka               **MISREPRESENTATION &**
14  PETER MARCO                               **FRAUD;**
    EXTRAORDINARY JEWELS OF             **2.    CIVIL THEFT (PENAL CODE,**
15  BEVERLY HILLS, dba PETER                  **§ 496);**
    MARCO LLC,                          **3.    EMBEZZLEMENT;**
16                                       **4.    CIVIL CONSPIRACY TO**
           Defendants/Third-Party Plaintiffs,    **COMMIT THEFT, FRAUD,**
17                                             **AND FRAUD BY**
    vs.                                        **CONCEALMENT;**
18                                       **5.    CONVERSION;**
    JONA S. RECHNITZ, an individual;    **6.    BREACH OF CONTRACT;**
19  RACHEL RECHNITZ, an individual;     **7.    BREACH OF THE IMPLIED**
    LEVIN PRADO aka LEVON                     **COVENANT OF GOOD**
20  PRADO, an individual,                     **FAITH AND FAIR DEALING;**
                                         **8.    ACCOUNT STATED; &**
21         Third-Party Defendants.       **9.    UNETHICAL BUSINESS**
                                               **PRACTICES IN VIOLATION**
22                                             **OF CALIFORNIA BUSINESS**
                                               **& PROFESSIONS CODE §**
23                                             **17200**

24                                       **DEMAND FOR A JURY TRIAL**

25         Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER

26  MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER

27  MARCO LLC. ("Marco") hereby allege the following against Third-Party

28

4/24-1:56pm

1   Defendants JONA S. RECHNITZ, RACHEL RECHNITZ, LEVIN PRADO aka

2   LEVON PRADO, (collectively "Third-Party Defendants") as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

4   1.   Third-Party Plaintiff PETER VOUTSAS aka PETER MARCO ("Marco") is

5        an individual residing in Los Angeles County, State of California.

6   2.   Third-Party Plaintiff PETER MARCO LLC is a limited liability company

7        qualified to do business in California qualified to do business in California.

8        Marco is the managing member of PM-LLC.

9   3.   Third-Party Plaintiff PETER MARCO EXTRAORDINARY JEWELS OF

10       BEVERLY HILLS is a dba of Marco and PETER MARCO LLC.

11   4.   All Third-Party Plaintiffs are collectively herein referred to as ("Marco").

12   5.   Third-Party Defendant JONA S. RECHNITZ ("Jona")  is an individual

13       residing in Los Angeles County, State of California. Jona is also Rachel's

14       husband.

15   6.   Third-Party Defendant RACHEL RECHNITZ ("Rachel")  is an individual

16       residing in Los Angeles County, State of California. Rachel is the managing

17       member of Jadelle LLC and the Chief Executive Officer for Jadelle Inc.

18       Rachel is also Jona's wife.

19   7.   Jona and Rachel Rechnitz operate a jewelry business through two similarly

20       named entities, Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein

21       the Jadelle Entities, whose marque client is the Kardashian family. Both Jona

22       and Rachel Rechnitz advertise political and powerful celebrity connections to

23       create a false sense of credibility about themselves and their business, posting

24       photos on their social media of Kylie Jenner and Kim Kardashian.

25   8.   The alleged frauds committed by Jona were committed with Rachel's

26       knowledge and direction, making her personally liable. Without Rachel

27       setting up the entities to commit the frauds, Jona lying to steal Marco's

EXHIBIT "6", PAGE 70

1  Consigned Jewelry, none of the below referenced offenses could have
2  occurred.

3  9.  On information and belief, on 4-6-2020, an involuntary chapter 7 bankruptcy
4  proceeding was filed against Jadelle Jewelry and Diamonds, LLC, a Delaware
5  limited liability company, Jadelle Jewelry, LLC, and Jadelle Inc., a California
6  corporation, USBC # 2:20-bk-13530-BR. The petitioning creditors are: First
7  International Diamond, Inc., with Trade Debt/Damages of $1,976,225.00,
8  Peter Marco, LLC, with Trade Debt/Damages of $7,676,744.00 (The correct
9  amount is $6,950,444.40) and Victor Franco Noval with Trade Debt/Damages
10  of $5,800,000.00, with total petitioners' claims of $15,452,969.00.[1] See,
11  "***Corrupt de Blasio donor Jona Rechnitz's alleged victims trying to force***
12  ***him into bankruptcy***"
13  (https://nypost.com/2020/04/07/de-blasio-donor-jona-rechnitzs-alleged-victi
14  ms-trying-to-bankrupt-him/), and "***Creditors File Petition to Put Jadelle***
15  ***Jewelry in Bankruptcy***"
16  (https://www.jckonline.com/editorial-article/jadelle-jewelry-bankruptcy/).

17  10.  Presently, Third-Party Plaintiffs are currently stayed from pursuing the
18  Jadelle entities in this Court by virtue of the automatic stay of bankruptcy (11
19  U.S. Code § 362). Marco will be filing claims against the Jadelle entities
20  debtors in the United States Bankruptcy Court.

21  11.  Non-party JADELLE JEWELRY AND DIAMONDS, LLC ("Jadelle LLC,"
22  collectively with Jadelle Inc., the "Jadelle Entities") (now in an involuntary
23  bankruptcy) is a Delaware limited liability company qualified to do business
24  in California. Rachel is the managing member of Jadelle LLC.

25

26  [1]A true and correct copy of the involuntary chapter 7 bankruptcy proceeding *In
27  re Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, Jadelle
Jewelry, LLC, and Jadelle Inc., a California corporation*, USBC # 2:20-bk-13530-BR
28  is attached as Exhibit "1" and is incorporated herein by this reference.

4/24-1:56pm                    -3-

12. Non-party JADELLE JEWELRY, LLC, ("Jadelle LLC," collectively with Jadelle Inc., the "Jadelle Entities") (now in an involuntary bankruptcy) is a California limited liability company qualified to do business in California. Rachel is the managing member of Jadelle LLC.

13. Non-party JADELLE INC. ("Jadelle Inc.") (now in an involuntary bankruptcy) is a California corporation whose principle office is in Beverly Hills and whose CEO, CFO, and Secretary is Rachel.

14. Third-Party Defendant LEVIN PRADO AKA LEVON PRADO ("Prado") is the agent for service of process, controller, and check signer for the Jadelle Entities.

15. The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, along with the assistance of Prado, making them personally liable. Without Rachel setting upon the entities to commit the frauds, Jona's lying to steal Marco's Consigned Jewelry, and Prado signing the check, none of the below referenced offenses could have occurred.

16. Upon information and belief, Third-Party Plaintiffs believe, that at all times relevant hereto Third-Party Defendants, including but not limited to (the Jadelle entities) Jona, Rachel, and Prado, formed a civil conspiracy and engaged in acts in operation and furtherance of that conspiracy.

17. Third-Party Plaintiffs are informed and believe, and so allege, that, at all times mentioned, each of the Third-Party Defendants was the agent, servant, joint venturer, co-conspirator, and/or employee of some or all of the remaining Third-Party Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship and with the full permission and consent of such Third-Party Defendants. Third-Party Plaintiffs are informed and believe, and so allege, that each Third-Party Defendant ratified, approved, and adopted as its own some or all of the acts of

EXHIBIT "6", PAGE 72

1    each of the other Third-Party Defendants. Third-Party Plaintiffs are informed

2    and believe, and thereon allege, that each of the Third-Party Defendants

3    materially aided in some or all of the violations of the other Third-Party

4    Defendants.

5    18.   Third-Party Plaintiffs are informed and believe, and so allege, that the

6          Third-Party Defendants are the alter egos of each other and there exists, and

7          at all relevant times herein there existed, a unity of interest and ownership and

8          control among the Third-Party Defendants, such that any individuality and

9          separateness among them has ceased to exist, and they are alter egos of each

10         other, and thus one or more Third-Party Defendants' business is nothing more

11         than a shell, instrumentality, or conduit through which the remaining

12         Third-Party Defendants carry on certain of their business.

13   19.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)

14         because the amount in controversy exceeds $75,000, exclusive of interest and

15         costs.

16   20.   Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b) because

17         Third-Party Defendants reside in this district and a substantial part of the

18         events giving rise to this action occurred here.

19   21.   On 3-18-2020 2020, David Rovinsky Inc., filed a complaint against Marco,

20         Case # 2:20-cv-02580 for negligence, conversion, fraud, negligent

21         misrepresentation, civil theft (Cal. Penal Code § 496), and aiding and abetting

22         conversion and civil theft seeking damages of $1,130,000.00.

23   22.   Pursuant to FRCP 13(g), Third-Party Plaintiffs cross-claims against

24         Third-Party Defendants, as they are responsible for the Rovinsky claim.

25   23.   Pursuant to FRCP 19, Third-Party Defendants constitute "Required Party' as

26         they are subject to service of process and whose joinder will not deprive the

27         court of subject-matter jurisdiction must be joined as a party if:

28

EXHIBIT "6", PAGE 73

1       a.     (A) in that person's absence, the court cannot accord complete relief
2               among existing parties; or

3       b.     (B) that person claims an interest relating to the subject of the action
4               and is so situated that disposing of the action in the person's absence
5               may:

6           i.     (i) as a practical matter impair or impede the person's ability to
7                    protect the interest; or

8           ii.    (ii) leave an existing party subject to a substantial risk of
9                    incurring double, multiple, or otherwise inconsistent obligations
10                  because of the interest.

11  24.   Pursuant to FRCP 20, Third-Party Defendants may be joined in this action in
12       one action as defendants if:

13       a.     (A) any right to relief is asserted against them jointly, severally, or in
14               the alternative with respect to or arising out of the same transaction,
15               occurrence, or series of transactions or occurrences; and

16       b.     (B) any question of law or fact common to all defendants will arise in
17               the action.

18                      **GENERAL ALLEGATIONS**
19                         **JONA RECHNITZ**

20  25.   On information and belief, Jona is infamously known for his involvement
21       with a federal probe into corruption in the NYPD and the de Blasio mayoral
22       campaign. He reportedly funneled money into the 2013 de Blasio campaign
23       and bribed police commanders. He admitted to directing campaign donations
24       to Mayor de Blasio in exchange for access to City Hall and showering NYPD
25       leaders with prostitutes and other bribes to cultivate them as allies. He
26       pleaded guilty to charges of to providing financial and personal benefits and
27       political contributions to public officials including law enforcement officials

28

EXHIBIT "6", PAGE 74

1    in exchange for official action in March of 2017. Asked about Jona's

2    testimony, the mayor called Jona *"a liar and a felon.*"

3    26.    On 6-6-2016, in the criminal matter entitled: *United States of America vs.*

4    *Jona Rechnitz*, 1:16-cr-00389-AKH, before the United States District Court

5    Southern District of New York, a sealed information was filed against Jona

6    for wire fraud, who then entered a guilty plea. On 3-15-2017, the information

7    against Jona was unsealed, and Jona was released on bond pursuant to release

8    conditions imposed by Judge Alvin K. Hellerstein. On 12-6-2019, Jona was

9    sentenced to 10 months of custody, and was granted release pending appeal.

10   27.    Interestingly, among the Mandatory Conditions of Jona's release was that he

11   not commit another federal, state or local crime.[2]

12   28.    Indeed, in Jona's 10-16-2019 letter to Judge Hellerstein seeking a reduced

13   sentence, Jona wrote the Court (he shared this letter with Marco):

14   *Dear Judge Hellerstein: **I am a felon. I am a criminal**. I am the ONLY
     person to blame for that. **I have caused tremendous pain and**

15   ***embarrassment to my family, my religion, and to myself**. There is no
     way to undo what's been done. It's permanent, and for that I am truly*

16   *sorry to everyone hurt by my crimes and actions. It eats me alive each
     and every day. When I wake up, when I go to sleep, it is always on my*

17   *mind for the past 4 years. **My actions harmed the people of New York,***
     ***The people of Correction Officers Benevolent Association, my***

18   ***friends, my family and my community**. I will forever carry this
     burden, as I deserve to. I have read of your Honor asking at various*

19   *sentencings, why do good people do bad things? In my case, not
     assuming I'm a good person, I can answer this question. **Arrogance,***

20   ***greed, and insecurity. Arrogance**. I felt I was above the law. At this
     young age in my late 20's I was busy accepting honors at dinners and*

21   *board positions at prestigious institutions. **It got to my head. Greed. I***
     ***wanted to gain contacts to grow my business, to make money and***

22   ***gain stature in the long run. Insecurity. I wanted to gain popularity***
     ***by my peers and become a big shot in my community and business***

23   ***circles**. [Emphasis added].*

24   ---

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27   [2]A true and correct copy of Jona's 3-3-2020 *Judgement In a Criminal Case* in
     *United States of America vs. Jona Rechnitz*, 1:16-cr-00389-AKH is attached hereto as

28   Exhibit "2" and is incorporated herein by this reference.

EXHIBIT "6", PAGE 75



1     ***Shame on me.*** *Finally, I couldn't wiggle my way out of this one. It*
*changed my life as I knew it forever.* ***As a supposed religious man, I***
2     ***have been a disgrace to my religion***. ***The only way to fix this is to***
***make serving G-d my main focus for the rest of my life. I try to every***
3     ***day. I have changed as a person religiously, through prayer, my***
***public and private behavior, and I always stop and think before I'm***
4     ***about to do something to see if it is something my parents, my family,***
***and G-d would approve of.*** [Emphasis added].

5

6     ---

    *Your Honor, there are so many examples that I am omitting* ***as I don't***
7     ***want to portray myself as the victim here. I caused a lot of pain and***
***harm to others through my criminal activity and don't want to detract***
8     ***from that***. *JONA RECHNITZ.* [Emphasis added]. [3]

9   29.   On 12-19-19, as reported in the New York Times, ***'Liar,' and Star Witness in***

10       ***City Graft Cases, Gets 10-Month Sentence***"

11       (https://www.nytimes.com/2019/12/19/nyregion/jona-rechnitz-corruption-sen

12       tencing.html) Jona was sentenced to five months in prison and five months of

13       house arrest, followed by three years on parole, apologized to Judge Alvin K.

14       Hellerstein for his criminal and immoral behavior, and asked the judge for

15       leniency.

16     "***I've been a real fraud to God, a fraud to my wife and family, a fraud***
***as an American, a fraud as a businessman***, *and a fraud to the people*
17     *of New York, namely, the hard-working COBA members, and I'm truly*
*sorry for that.* ***My actions have hurt many people, and I'm very sorry***
18     ***for that. I continue to pay for my mistakes on a daily basis***. [Emphasis
added].

19

20     ---

    *"While living in New York City,* ***I wrongly felt pressure to become a***
21     ***bigshot***. *I was working for one of the largest real estate companies in*
*2007, and it got to my head. I was in my late 20's, and big people in the*
22     *real estate industry were dealing with me.* ***My ego was big, and I so***
***badly wanted to impress these people in order to advance my career***
23     ***and profile***. *This is where things started to spiral out of control. This is*
*where I went so off the rails for a number of years.* ***I assure your***
24     ***Honor that these past years and the experience I've gone through has***
***changed me. I will never act that way again***.*"* [Emphasis added].

25

26

27       [3]A true and correct copy of Jona's 10-16-2019 letter to Judge Hellerstein seeking
a reduced sentence is attached hereto as Exhibit "3" and is incorporated herein by this
28     reference.

4/24-1:56pm           -8-

1 | ---

2 | ***"I've been a big hypocrite to my religion. I failed to conduct myself***
3 | ***properly between myself and my fellow man and between myself and
my relationship with God. I have strayed. I did all of these horrible
things without worrying about God or the consequences that come***
4 | ***with this sort of behavior.*** *I cannot express to your Honor how
ashamed I am for desecrating my religion.* ***I have and will continue to***
5 | ***repent to God every single day. I have and continued to make
amends. Part of my efforts to make right included cooperating as a***
6 | ***first step. I have a lot more work to do."*** [Emphasis added].

7 | ---

8 | *"This is one of several jobs that I have in the coming months* ***as I
continue to sort out my life in a lawful path. In fact, I will spend the***
9 | ***rest of my life trying to make amends for my criminal behavior.*** *I will
try to make a better name for my family, for my religion, and for*
10 | *myself.* ***I am on the path to recovery, your Honor. I am a better family
man; I am a better friend; I am a more religious person. I am***
11 | ***working again to make an honest living."*** [Emphasis added].

12 | *"THE COURT: What is the new business? Jadelle?*

13 | *"Jadelle, yes. I really paid a hefty price for cooperating with the
government for my crimes. Most recently, the New York Post put up an*
14 | *article that was mentioned this morning -- your Honor may not be
aware – accusing me of hobnobbing and flirting with the rich and*
15 | *famous at a time when I claim I am a pariah to society. In fact, Jadelle
Jewelery hosted a jewelery show to promote the brand and new jewelry*
16 | *collection. The event was to make sales and increase business. One
attendee was a Kim Kardashian, a client of Jadelle."*

17 | ---

18 |
19 | *"Within my community, within the media, and through
self-introspection. In New York City, I am persona non grata. I am to*
20 | *blame.* ***I burnt a lot of bridges and relationships and had to relocate
to California.*** *I am so truly sorry for my behavior.* ***I am a changed***
21 | ***man***..."

22 | ***"I don't see any way to start over a third time. I'm on my second
chance***..."

23 | ---

24 | *"THE COURT: ... And yet in the life that's been depicted in this court,*
25 | ***he cheapens people. He works on their insecurities and their quest
for material possessions and just does the opposite. He diminishes***
26 | ***people***...."[4]

27 | [4]A true and correct copy of the relevant portions of the transcript of Jona's 12-
28 | 19-2019 Sentencing Hearing is attached hereto as Exhibit "4" and is incorporated

EXHIBIT "6", PAGE 77

30. On information and belief, Jona made numerous false statements to the federal sentencing judge because by 12-19-2019, Jona's frauds (below) were well under way. One of the primary reasons for documenting Jona's criminal activities with specificity and by the attachments to this Complaint is to properly expose his fraud and to preempt the "spin" that he and his family will inevitably spin to the community of his innocence and that he is unfairly being pursued. Jona's house of fraudulent cards needs to be exposed. "*The only thing necessary for the triumph of evil is for good men to do nothing.*" (Edmund Burke, in a letter addressed to Thomas Mercer). Abuse thrives in a culture of silence.

### MARCO & RECHNITZ (JADELLE)

31. From the period  8-26-2018 - 12-23-2019, Marco & Jona enjoyed a successful and trusting relationship with each other whereby they engaged in approximately 32 transactions totaling approximately **$39,369,620** in value, whereby they bought merchandise from each other and/or returned merchandise to each other. Jona introduced Marco to famous celebrities, including NBA stars Shaquille "Shaq" O'Neal, Scottie Pippen, Sam Cassell, boxing champ Floyd Mayweather, pop stars Kim Kardishian & Kris Jenner, and artist Alec Monopoly, to name a few, who Marco parlayed Jona's introductions into clients and/or to advance his social media presence by being connected to them.

32. From the period 10-29-2019 - 1-7-2020 (notwithstanding his then legal troubles in NY), Jona assured Marco that he was back from NY refocused on his business, and acquired **$6,950,444.40** of additional jewelry from Marco on consignment for the purpose of reselling them to his clients (including Plaintiff's Ring and Necklace).

herein by this reference.

4/24-1:56pm                                        -10-

33.     At the time, Marco had no reason to believe that the $6,950,444.40 consignments with Rechnitz would be in jeopardy, primarily because of his successful and trusting relationship with Jona, the 32 prior transactions with him totaling approximately **$39,369,620** in value. Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry to Rechnitz.

| # | Date | Vendor | Item | Cost |
|---|------|--------|------|------|
| 1 | 10-29-2019 | Luna | Yellow & White Choker Necklace / Bracelet - 69.13 ct 10stone 34.9ct 412,500 yellow /wt choker/bracelet | $150,000.00 |
| 2 | 11-11-2019 | Marco LLC | Three Butterfly Rings for Kris Jenner & the Kardashians | $22,000.00 |
| 3 | 11-19-2019 | David Rovinsky | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |
| 4 | 11-26-2019 | Marco LLC | Two Watches for Jona's client Justin Bieber | $89,000.00 |
| 5 | 11-27-2019 | David Rovinsky | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
| 8 | | Marco LLC | Two Diamond fashion rings for Jona's client Kim Kardashian | $5,000.00 |
| 7 | 12-2-2019 | Norman Silverman (Lazar) | BRACELET - Multi-shape 14 stone diamond bracelet, 45.47 carats, white gold. | $500,000.00 |
| 8 | 12-5-2019 | Marco LLC | Watch for Jona's father Robert & <br><br> Mixed gold & diamond pieces, for Jona's client Alec Andon Monopoly | $145,000.00 $44,200.00 $189,200.00 |
| 9 | 12-9-2019 | Marco LLC | Cufflinks for Jona's client Chaz | $7,000.00 |

EXHIBIT "6", PAGE 79

| 10 | 12-12-2019 | Norman Silverman | BY215 - BRACELET - Platinum/18kwg 36.69 carats, 132 stones, 44 radiant 25.52cttw., 66 baguettes 7.57 cttw | $140,000.00 |
| 11 | 12-16-2019 | Norman Silverman | NS10052 - EARRINGS - 18kwg 2stones, 9.02 Round Brilliant, J/Sl2G, GIA# 2165989714, 9.02 Round Brilliant, J/Sl2, GIA# 2205611416 | $335,000.00 |
| 12 | 12-16-2019 | Lazar | LAZ52342 - RING- 20.54 carat Oval diamond ring, H/VVS2, GIA# 6204485119 | $793, 049.40 |
| 13 | 12-16-2019 | First International | EID MT 13.62 D/VVS1, # 11776564 | $1,333, 695.00 |
| 14 | 12-23-2019 | Marco LLC | Watch for Jona's client Kim Kardashian, and Two Diamond fashion rings for Jona's client Kim Kardashian | $141,500.00 |
| 15 | 1-7-2020 | Eli, Inc. | RING - 15.03 Fancy Yellow internally flawless radiant diamond mounted on a WG ring with a diamond halo. | $215,000.00 |
| 16 | | Marco LLC | Saloman (charge back credit card) | $80,000.00 |
| | | | **TOTAL** | **$6,950,444.40** |

34.     Prior to 10-29-2019, and thereafter, Rechnitz repeatedly represented to Marco that he had interested buyers for the pieces of Consigned Jewelry, and that consummation of his sales were imminent.

35.     As stated above, on 11-19-2019 and on 11-27-2019, Marco LLC consigned Rovinsky's Ring & Necklace to Rechnitz based on his representations that he had buyers for them.

| **Date** | **Vendor** | **Item** | **Cost** |
| --- | --- | --- | --- |
| 11-19-2019 | Marco LLC to Rechnitz | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |

EXHIBIT "6", PAGE 80

| 11-27-2019 | Marco LLC to Rechnitz | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
|---|---|---|---|
| | | **TOTAL** | **$2,950,000.00** |

36.   The way consignments work, is that if Rechnitz's sale to his clients did not go though, then Rechnitz would return the pieces of Consigned Jewelry back to Marco, who would in turn, return the Consigned Jewelry back to Marco's vendors.

37.   Prior to 10-29-2019, and thereafter, Jona repeatedly indicated to Marco that he had buyers and sold the pieces of Consigned Jewelry (including Rovinsky's Ring & Necklace), and was awaiting receipt of payment from his clients. These representations by Jona to Marco were false when made, and Jona knew the representations were false when made. Jona made these representation with the intention of causing Marco to rely on them. Marco indeed relied on Jona's representations to Marco's detriment.

38.   Yet, no sooner than within weeks of being sentenced in the Southern District of New York, Jona, a convicted felon, was apparently so "distraught" and repentant about his criminal past, that instead of reselling Marco' Consigned Jewelry  (including Rovinsky's Ring & Necklace) and repaying Marco, Jona swindled Marco in a large scale fraud by absconding with the  pieces of Consigned Jewelry, and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco  the $6,950,444.40. In reality, Jona liquidated Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace). Marco subsequently discovered from colleagues that Jona liquidated all  pieces of Marco LLC's Consigned Jewelry (including Rovinsky's Ring & Necklace).

39.   On information and belief, at this same time, Jona defrauded other diamond dealers and insurance companies in Southern California, including but not

EXHIBIT "6", PAGE 81

1    limited to: Sotheby's, Leon Landver, Ben Adhoot, and Yehuda Gamzo, Oved

2    Anter, Moti Klein, and Julius Klein. The amount of losses to these various

3    parties is alleged to be over $15,000,000.00.

4    40.    But even after Marco discovered Rechnitz's recent frauds from colleagues in

5    the jewelry industry, Rechnitz continued to 'play' Marco and deceive him

6    with further false and misleading stories:

7    On 1-21-20, at 10:22:38AM, Rechnitz texted Marco of a 'major issue' a

8  'legal situation' a 'huge crisis' and a 'disaster' that forced him to not consummate

9  his deals with Marco:

10    *The stone of Oved's is coming back tomorrow with all of the other stones.*
    *Client isn't taking anythinf. **I have a major issue now they didn't know about***
11    ***my legal situation and freaked out** they also want to reverse previous*
    *transactions of mine. He can't be associated with me. A man of his status. **I'm***
12    ***dealing with a huge crisis now and my Dad is at bank trying to sort out***
    ***issue for me in regards to all this. I stopped the wire because they may be***
13    ***sending the necklace and ring back. I need a few hours to deal with them***
    ***with my lawyer. This is a disaster. I am trying to fix this** but won't know for*
14    *a few hours. I also have Moty Klein in town at the same time while this is all*
    *going on which is extra stress as he can't hear any of this. Give me a few*
15    *hours please and I hope to have better news.* [Emphasis Added].

16    41.    On 1-21-20, at 10:23:29AM, Rechnitz texted Marco a vague admission of

17    guilt and liability:

18    ***I understand if you never want to deal with me again or see my fave ever***
    ***again I am so sorry***. [Emphasis Added].
19

20    42.    On 1-21-20, 10:24:09AM, Rechnitz texted Marco that he is trying to fix his

21    'major issue' a 'legal situation' a 'huge crisis' and 'disaster:' :

22    ***You need to let me try and resolve this now***. [Emphasis Added]

23    43.    On 1-21-20, at 10:33:53AM,  Rechnitz texted Marco his shame and

24    depression that his recent frauds are causing Marco:

25    ***You don't even need to type back anything to me I'm depressed. Upset. This***
    ***all happened Yesterday evening**. I'm dealing with it. Standby* [Emphasis
26    Added].

27    44.    In addition, and to make matters worse, on 1-5-2020, Jona issued Marco a

28    worthless check that he had no intention of honoring, # 8630 for

$2,950,000.00 post-dated to 1-5-2020 (for the two Rovinsky pieces he had on consignment from Marco).

| Check # | Date | To | $ |
|---|---|---|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |

45.   Even had Marco tried to deposit Rechnitz's $2,950,000.00 post-dated check, he could not because Rechnitz had instructed him to rip it up earlier based on his promises to Marco that he would wire the funds to Marco.

46.   In addition, and as an aside, on 1-17-2020 Jona issued two worthless checks to another one of his defrauded creditors First International totaling $2,122,760.00 that he had no intention of honoring: (1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00.  Both checks were NSF at the time of tender, in violation of the California Civil Code § 1719 and the California Penal Code §476a.

47.   In addition, and to make matters worse, on 1-14-2020 Jona issued another defrauded creditor Franco Noval a worthless check that he had no intention of honoring, check # 8817 for $2,500,000.00, and then on 1-16-2020 check # 8820 for $1,300,000.00, and then on 1-22-2020 check # 8823 for $4,500,000.00  also in violation of the California Civil Code § 1719 and the California Penal Code §476a.

| Check # | Date | To | $ |
|---|---|---|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |
| 8817 | 1-14-2020 | Franco Noval | $2,500,000.00 |
| 8820 | 1-16-2020 | Franco Noval | $1,300,000.00 |
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| 8823 | 1-22-2020 | Franco Noval | $4,500,000.00 |
| Total NSF Checks issued by Jona | | | **$13,372,760.00** |

EXHIBIT "6", PAGE 83

48.   Based upon information and belief, Third-Party Defendant Prado, acting in concert with Jona, and to further his scheme, signed Marco's post-dated check and had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the check, that Marco was going to deposit.

49.   During this entire time, Jona repeatedly lied to Marco that the deals with his clients were consummated. Jona lulled, and attempted to fabricate one excuse after another to delay paying Marco, and hid the truth from them through stonewalling and lies. Repeated demands have been made to Jona to return Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace). Instead, Jona, took numerous steps to lull Marco into a false sense of security to buy more time, and to keep this matter secret via phone calls and WhatsApp texts.

50.   On 1-22-2020 at 5:12:52, once Jona's most recent frauds in stealing and liquidating Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace) and of other victims, hit the streets, Jona texted Marco begging him to stay quiet and not report him, lulling him to buy time:

"***I'm at my cousin lawyer and cousin*** still getting everything sorted out **so no noise and no issue** I'll see you later still." [Emphasis added].

51.   On 1-27-20 at 3:47:58, Jona repeated his request that Marco not report him for his fraud:

"*Please confirm the following: They will wait until end of day tomorrow **and keep it quiet**. Need to know ASAP*"

and then at 4:03:11:

"*Need to know NOW.*".

52.   On 1-29-20 at 7:55:07, Jona repeated his request that Marco not report him for his fraud:

4/24-1:56pm

-16-

1          *"All I can say is I'm handling things and **don't discuss anything with**
2          **anyone. No updates to people who call you** unless it's oved or lazar."*
       [Emphasis added].

3   53.   On 1-30-2020 at 11:35am, Jona introduced Oved Anter of First International

4        Diamonds to an attorney at Williams & Cohen about the Rechnitz cousin's

5        proposed bailout:

6          *"Oved meet Reuven. Reuven oved is a vendor I owe and used his goods
       for loans. **He has been the single biggest force in helping keep people**
7          **calm.** He needs to hear from you in order to continue please. Thank
       you."* [Emphasis added].

8   54.   On 2-4-2020, 12:30:22, Jona repeated his request that Marco not report him
9        to news outlets for his fraud:

10         *"Pls confirm you didn't hear back **or communicate to the paper**."*
11         [Emphasis added].

12  55.   On 2-4-2020 at 3:36:55, Jona texted Marco of his fear of being reported to the

13       authorities for his fraud:

14         *"Is david dealing through you because **I heard he wants to report me**
       so **confirm that he is holding off** and you'll wait to hear from my
15         lawyers"*

16  and then at 4:49:01 texted Marco:

17         *"**Make sure you ignore the reporter**. Moty is too. **She can't print**
       **without a comment**."* [Emphasis added].
18

19  56.   That night, on 2-4-2020 at 9:40pm, Jona falsely enlisted attorneys to pretend

20       a bailout was coming from family members to buy himself more time.

21       Attorneys from Williams & Cohen wrote Marco about the purported bailout:

22         *"We write with an update on Jona Rechnitz. **A family member of Mr.**
       **Rechnitz has informed our law firm that the family member is**
23         **seeking to refinance certain real property in order to satisfy Mr.**
       **Rechnitz's outstanding liabilities.** We currently have no visibility into
24         the family member's interest in the property, the value of the property,
       or what, if any equity, the family member has in it. If you are
25         represented by counsel, please let us know and provide your counsel's
       contact information. Our client's desire is to resolve this matter
26         amicably."*

27  57.   Meanwhile, on 2-10-2020, as reported in the NY Post: ***"Ex-de Blasio crony***

28       ***used Kardashian ties for fraud scheme, lawsuit claims***,"

1   (https://nypost.com/2020/02/09/ex-de-blasio-crony-used-kardashian-ties-for-f

2   raud-scheme-lawsuit-claims/), and as reported in the 3-6-2020 article in JCK:

3   *"The Troubling Case of Jona Rechnitz"*

4   (https://www.jckonline.com/editorial-article/the-troubling-case-jona-rechnitz/

5   ), and as reported in the 3-10-2020 NY Daily News article "***Corrupt Mayor***

6   ***de Blasio donor Jona Rechnitz faces new FBI probe in L.A.: court papers***"

7   (https://www.nydailynews.com/new-york/ny-rechnitz-los-angeles-probe-2020

8   0310-nrzbb6263nga3hkcyob2lw46wq-story.html), one of Jona's recently

9   defrauded victims filed a lawsuit entitled: *Victor Franco Norval vs Jona S.*

10  *Rechnitz, Rachel Rechnitz, Jadelle Inc., a California Corporation; Jadelle*

11  *Jewelry and Diamonds, LLC, a Delaware Limited Liability Company; Levin*

12  *Prado Aka Levon Prado, an Xiomara Cortez*, LASC # 20SMCV00216, for

13  (1) Fraud (2) Civil Theft (Penal Code, § 496), (3) Breach of Contract, (4)

14  Conspiracy to Commit Theft, Fraud, and Fraud by Concealment, (5)

15  Appointment of Receiver seeking damages of $7,000,000.00.

16  58.  Interestingly, on 2-22-2020, Jona's father Robert Rechnitz reiterated the

17        proposed bailout by Jona's cousin to Marco and represented that Marco

18        would be paid "*first in line*" by Jona's cousin.

19  59.  And then on 2-20-2020, as reported in the NY Post "***De Blasio donor Jona***

20        ***Rechnitz accused of $1M scam in California,***"

21        (https://nypost.com/2020/02/28/de-blasio-donor-jona-rechnitz-accused-of-1m

22        -scam-in-california/) another one of Jona's defrauded victims filed a lawsuit

23        entitled: *Israel Sam Gorodistian vs. Jadelle Jewelry and Diamonds, LLC, a*

24        *Delaware Limited Liability Company; Jadelle Inc., a California Corporation;*

25        *Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz*, LASC # 20STCV07425, for

26        1. Conversion; 2. Civil Theft (Pen. Code § 496); 3. Fraud – False Promise; 4.

27        Negligent Misrepresentation; 5. Civil Conspiracy to Defraud; 6. Breach of

28

EXHIBIT "6", PAGE 86

1    Oral Contract (2 Counts); 7. Breach of Implied-in-fact Contract (2 Counts); 8.

2    Money Lent; 9. Account Stated; and 10. Breach of Written Guaranty seeking

3    damages of $1,659,333.33.

4  60.   Jona is no stranger to fraud. Unbeknownst to Marco, on 6-3-2019, Jona was

5    sued in the United States Bankruptcy Court Southern District of New York

6    (Manhattan), Adv. Case No, # 19-01236-jlg by Kenneth P. Silverman, Esq.,

7    the Chapter 7 Trustee of the Jointly Administered Estates of National Events

8    Holdings, LLC, Chapter 7 Case No.: 17-11556 (JLG) on 35 counts of

9    receiving fraudulent conveyances through an elaborate Ponzi scheme,

10    pursuant to New York Debtor and Creditor Law §276, and (b) pursuant to 11

11    U.S.C. §§550(a) and 551, 11 U.S.C. §548(a)(1)(A), and (b), 11 U.S.C.

12    §548(a)(1)(B), and (b),  totaling $45,000,000.00.

13               **JONA AND ROBERT RECHNITZ**

14  61.   On information and belief, Jona personally ingratiated himself to Marco, as

15    an Orthodox Jewish diamond dealer, leading Marco to believe that Jona was

16    more trustworthy than others because of his Orthodox faith and belief in

17    Jewish law (and common Orthodox Jewish friends in and out of the Diamond

18    industry), which requires honesty and maximum integrity. These types of

19    internal community relationships such as the Orthodox Jewish diamond

20    community create a vulnerability for affinity fraud to be perpetuated. Jona

21    targeted Marco exploiting his standing in, and knowledge of, the customs and

22    practices of this community to further his fraudulent scheme. This type of

23    illegal activity is commonly referred to as "affinity fraud," and refers to

24    scams that prey upon members of identifiable groups, such as religious or

25    ethnic communities, the elderly, or professional groups. The perpetrators of

26    affinity fraud scams, like Jona, frequently are, or pretend to be, members of

27    the group, and they exploit the trust and friendship that exist in groups of

28

EXHIBIT "6", PAGE 87

1   people who have something in common. The conventional thinking is that the

2   religious man doing business with you is unlikely to ruthlessly rip you off.

3   62.   On information and belief, Jona and his father Robert Rechnitz's ("Robert")

4   *modus operandi* is as follows: Robert would meet Marco in Jona's office and

5   at his office, endearing Marco with old school charm warmth & friendship to

6   place him at ease, while Jona would rip him off in broad daylight and steal

7   from him. Then, once Jona's fraud was discovered by his victims (including

8   Marco), Robert was there officially trying to clean up Jona's messes, further

9   lulling the defrauded creditors (including Marco), with promises of bailouts,

10  putting his friendships with Jona's victims on the line so-to-speak, in the

11  unspoken understanding that an action against Jona would be tantamount to

12  an action against Robert. The two acted in tandem like a tag-team to further

13  defraud Marco and other victims.

14  63.   On the one hand, it is laudable for a loving parent to come to the aid of their

15  child in distress, no matter what. On the other hand, in this case, Marco

16  believes that Robert's involvement was too interwoven with Jona's criminal

17  actions to be innocent or laudable. For example, throughout their relationship,

18  Jona constantly brought his father Robert into the conversations and

19  transactions portraying him to Marco as the moral authority and the one

20  overseeing and coaching Jona's affairs, who's presence conferred legitimacy

21  on Jona's wild bragging and transactions, who appeared at the epicenter

22  whenever Jona's frauds were discovered by his victims (including Marco).

23  64.   On 8-19-19, at 15:24:03, Jona texted Anter about Jona's father Robert:

24  ***My Dad is a nice guy doesn't talk when ppl owe him ?? lee. Yossi.
    But keeps getting mad I talk to you too much***.  [Emphasis added]

25  65.   On 10-28-19 at 8:43:40, Jona texted Marco citing his father as a bailout

26  source for him:

27

28

EXHIBIT "6", PAGE 88

1    "*Issue! My account has a charge back from that client! Money was
2    withdrawn from my account not enough funds for your wire this
     morning Bc sent after cutoff Friday. Will resolve next few hours and
3    **get money from my Dad today**. Bear with me until later in the day. I'm
     sorry. Unforseen.*" [Emphasis added].

4    66.   On 11-5-19 at 9:22:25, Jona texted Marco seeking a bailout for his father:

5    "*You know me by now if I would ever need anything from a friend YOU
6    this is a level 10. I committed to something by tonight **that is not
     reversible for my Dad** and said it is done. Please tell me you got me
     and let me breathe here. Thx*"

7    and at 11-5-19 at 10:12:57:
8
9    "*I am sorry to pressure you and now I'm just letting you know for me
     this is super urgent And **you are the only person I am comfortable to
10   discuss this with. Obviously it goes without saying I will go all the
     way for you and I do not need to even say that here but I feel like
11   saying it to remind you I'm always in your corner** either way I hope
     we have good news today because I'm out of options thank you,*"
12   [Emphasis added].

     and at 11-5-19 at 11:44:55 endeared himself to Marco as his 'brother:'
13
14   "**Brother pls help me here**" and finally, at 11-5-19 at 1:58:26: "**My Dad
     is good with 70.**" [Emphasis added].

15   67.   On 1-21-20 at 10:22:38, after Jona's recent frauds to Marco was revealed (by

16   other sources in the community), Jona cited his father as the one trying to

17   solve Jona's frauds, Jona texted Marco:

18   "*The stone of Oved's is coming back tomorrow with all of the other
     stones. Client isn't taking anythinf. I have a major issue now they
19   didn't know about my legal situation and freaked out they also want to
     reverse previous transactions of mine. He can't be associated with me.
20   A man of his status. **I'm dealing with a huge crisis now and my Dad is
     at bank trying to sort out issue for me in regards to all this**. I stopped
21   the wire because they may be sending the necklace and ring back. I
     need a few hours to deal with them with my lawyer. This is a disaster. I
22   am trying to fix this but won't know for a few hours. I also have Moty
     Klein in town at the same time while this is all going on which is extra
23   stress as he can't hear any of this. Give me a few hours please and I
     hope to have better news.*" [Emphasis added].
24
25   68.   On 1-26-20 at 12:18:08 PM, Jona texted Marco a report of his father's

26   attempts to rectify his most recent frauds to his vendors:

27   "*And lazar tried to control things a little too much from my cousins
     money. **My Dad very involved** joe. Just wait...Promise you*" and at 1-
     26-20 at 12:18:15: "**now.**" [Emphasis added].
28

EXHIBIT "6", PAGE 89

69. For now, Robert is not a named party, but Marco reserves the right to name him as a Third-Party defendant once facts become known as to the full extent of his involvement with Jona's most recent frauds. Parenthetically, Robert was recently placed into an involuntary bankruptcy/receivership by his creditor ITOR 116 SF LLC in Israel, Case # 27255-09-18 for debts in excess of $2,600,000.00 shekel ($9,500,000.00 dollars) ("***Receiving order against businessman Robert Rechnitz, who is close to Netanyahu***" http://www.calcalist.co.il//articles/0,7340,L-3803076,00.html) but the Israeli bankruptcy does not stay Marco's claims against him in this country.

70. On 3-9-2020, Marco' litigation counsel Baruch C. Cohen ("Cohen") extended a professional courtesy to Robert to inform him that Cohen had been retained by Marco to sue Jona, inquiring (actually, hoping) that Rechnitz's cousin's bailout was imminent, to avoid the litigation. Further, as Robert personally guaranteed the debts to Oved Anter and First International of up to $12,000,000.00, that Cohen would reluctantly have to sue Robert as well. Cohen told Robert that he personally preferred ***not*** to have to sue Robert, as both pray at the same synagogue in Hancock Park and have known each other for years. Cohen acknowledged that Robert attempted to help Cohen in the past and was gracious in Cohen's time of need, as Cohen was to Robert's. Cohen acknowledged that Jona introduced Cohen to Marco. Cohen made it clear that he took no joy in prosecuting these cases on behalf of Marco and Anter against Jona and Robert, as Cohen agonized over it for over a month ever since Marco was being pursued by Rovinsky because of Jona's actions. But, Cohen explained, that Jona placed his clients in a terrible predicament exposing them to millions of dollars of damages from Rovinsky and others, and the scope of Jona's perfidy and betrayal was so breathtaking, overwhelming and devastating, that Marco and Anter absolutely insisted that

EXHIBIT "6", PAGE 90

1    Cohen protect their interests. While Cohen did not expect Robert to be

2    pleased with this decision, as Marco's attorney, Cohen owed Marco a 100%

3    duty and must represent his client's interests.

4    71.   Further, in the matter of *Oved Anter & First International Diamonds*

5    ("Anter") vs Rechnitz et al, on 6-25-2019 Robert personally guaranteed up to

6    $12,000,000.00 of Jona's debt to Anter. Robert's 6-25-2019 Personal

7    Guaranty to Anter stated that Robert stood behind Jona and all his dealing. It

8    reads as follows:

9    *Dear Oved / First International Diamonds Inc., I very much enjoyed
     speaking to you by phone. Jona has shared some of your conversations
10   with me. Thank you for being a confidant for Jona. He mentioned to me
     about how your Father had a special bond and relationship with you. I
11   was also privileged to have a close relationship with my Father, as did
     Jona. I'm sure you will find much success in your dealings together. I
12   completely understand your desire to know that Jona's family is aware
     of his dealings with you and stands behind him. **I am pleased to**
13   **confirm that I stand behind Jona and all his dealing with you. You
     have indicated that you have extended memos up to the amount of**
14   **$12,000,000.00. If for some reason you need to callback your credit
     line, all merchandise will be returned to you, and any cash**
15   **deficiencies will be repaid by me.** . May your confidence in Jona and
     your extension of credit be profitable for both of you.* BOBBY
16   RECHNITZ / CC: JONA RECHNITZ [Emphasis added]

17   72.   Jona personally handed Robert's 6-25-2019 Personal Guaranty letter to Anter

18   several days after Robert orally promised to personally guaranty Jona's debts

19   to Anter, while all three met at Pat's Kosher Restaurant on Pico Boulevard.

20   73.   On 6-25-19 at 16:22:18, Jona Whatsapp texted Oved - confirming Robert's

21   Personal Guaranty:

22   *"It's good to know **I'm worth 12mm to my Dad** not 10mm lol."*

23   [Emphasis added].

24   74.   On 7-3-19 at 21:58:14 Jona Whatsapp texted Oved again, confirming the

25   UCC Financing Statement and the Personal Guaranties to Anter:

26   *"OK also I filled out the application so Monday let's go through it I am
     away until Monday I will come see you Monday I will take care of that
27   and I will get the application filled out with you. No worries. **In
     meantime you have UCC. My Dad guarantee in writing.** My*

28

EXHIBIT "6", PAGE 91

*guarantee. My wife. Everything and the legal document that's owns me. I want you to feel protected and will make it happen*." [Emphasis added].

75.    On 3-9-2020 Cohen notified Robert that he would have to sue Robert on the personal guarantee to Anter as well.

76.    3-10-2020 was the Jewish holiday of Purim, and Robert approached Cohen in synagogue that night acknowledging the professional courtesy extended to him, and asked to speak to Cohen under the guise and pretext of wanting to talk about "nothing legal, just as friends." Cohen reiterated the above, and Robert repeatedly denied personally guaranteeing the debts to Anter.

77.    Robert's denial that he personally guaranteeing the debts to Anter was indeed curious, as Cohen had a copy of Robert's 6-25-2019 Personal Guaranty in his file. So, what was Cohen to make of Robert's denials? Was he involved with Jona's frauds, or was he not?

78.    If indeed, Robert did not sign the Personal Guaranty to Anter - as he insisted to Cohen orally - and giving Robert the benefit of the doubt - then that would mean that Jona forged his own father's name to Robert's 6-25-2019 Personal Guaranty to Anter, and shamelessly exploited Anter's trust and his father's name, using a doctored document to continue to commit crimes while out on bail.

79.    On 3-10-2020 at approximately 10:00pm that night, Jona resumed and resorted to his criminal behavior and called Marco, livid that Cohen is "going after his family and his father" threatening him and Anter that unless he receives a letter from Marco and Anter that they will be firing Cohen as their attorney, that Jona will engage in an all out war, "destroy" "rip apart" and "mess and fuck Cohen good" with the State Bar (claiming to have texts that Cohen was his lawyer creating a conflict of interest), and report Anter to the IRS for criminal tax evasion. Jona repeated his bogus pledge that his cousin is

EXHIBIT "6", PAGE 92

1  still working on bailing him out to make Marco whole within one week, but

2  that it was conditional on them firing Cohen. Jona brazenly assured Marco

3  that his role as one of the single most important and prolific white collar

4  cooperating witnesses in the recent history of the Southern District of New

5  York, with his working closely with the FBI as an informant, along with the

6  fact that he only received 10 months custody time with 5 months house arrest,

7  that since the FBI needs him as an informant so badly in the New York case

8  that they would never do anything to him no matter what he did, making him

9  immune from any further prosecution (mistakenly believing that this provides

10  him some kind of ill-conceived immunity from committing criminal acts of

11  fraud and extortion in California [ie., Penal Code 518]). Tragically, Jona

12  learned nothing from his life of crime and resorted to his old tricks of

13  extortion and blackmail, and if anything, has become emboldened by it.

14  80.  In said conversation, Jona immediately conferenced-in his father Robert into

15  the late night conversation (who was curiously readily available), under the

16  guise and pretext of wanting to talk about "nothing legal, just as friends."

17  81.  Obviously, whatever good will Cohen was prepared to extend to Robert

18  disintegrated by Jona's extortion call and Robert's convenient joinder late

19  that night.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

EXHIBIT "6", PAGE 93

82.     After Jona finished threatening Marco, Cohen and Anter, Jona texted Marco

at 10:55pm a veiled confirmation of the conversation:



EXHIBIT "6", PAGE 94

83. As to Jona's threats to report Cohen to the State Bar, Jona merely introduced Cohen to Peter Marco and nothing more. Jona was never Cohen's client, and Cohen was never Jona's lawyer, as evidenced by Jona's texts to Cohen.



EXHIBIT "6", PAGE 95

84.  Obviously, by this lawsuit, Cohen is not resigning and will remain counsel of record for both of his clients, and he and Marco will not be scared away or intimidated by Jona's criminal threats of extortion.

85.  As reported in the 2-12-2020 NY Post article "***DeBlasio Donor Jona Rechnitz Used Kardashian Ties to Further His Schemes***" (http://thejewishvoice.com/2020/02/deblasio-donor-jona-rechnitz-used-kardashian-ties-to-further-his-schemes/) Jona Rechnitz's dark dealings is eerily similar of the character Howard Ratner, played by actor Adam Sandler, in the 2019 film "Uncut Gems," of a charismatic debt-ridden gambling addict, a wheeling, dealing, greedy Jewish diamond dealer, scheming, ripping people off, swearing and making bold plays to try and advance his own life, clearly headed toward self-destruction.

### FIRST CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION & FRAUD

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Levin Prado*)

86.  Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

87.  The foregoing representations made by Jona, and the Third-Party Defendants were false when they were made, and Third-Party Defendants knew the representations to be false. Jona and the Third-Party Defendants did not intend to comply with the promises and representations when they were made.

88.  The foregoing representations were made by Jona and the Third-Party Defendants with the intent to deceive Marco and with knowledge that Marco would rely on them.

EXHIBIT "6", PAGE 96

89.  Third-Party Plaintiffs detrimentally and reasonably relied on the foregoing representations.

90.  Third-Party Plaintiffs have been damaged by Third-Party Defendants' false, intentional, and fraudulent representations and concealing of material information, as alleged above, in an amount to be proven at trial, but at least $6,950,444.40, which represents the consigned jewelry Jona lied to steal as well as tendered worthless instruments for.

91.  Third-Party Plaintiffs further request the imposition of a constructive trust against all Third-Party Defendants who are in possession of the Consigned Jewelry set forth in the Consignment Memos and for an order and judgment that they hold the consigned jewelry and/or all proceeds therefrom as constructive trustees for the benefit of Marco.

92.  In doing the things herein alleged, Jona and the Third-Party Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Marco. All Third-Party Defendants are therefore guilty of malice and/or fraud in conscious disregard of Marco' rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Third-Party Defendants, and each of them, and deter them and others from engaging in similar misconduct.

**SECOND CAUSE OF ACTION**

**CIVIL THEFT (Cal. Penal Code § 496)**

(*On behalf of Third-Party Plaintiff as to Jona Rechnitz, Rachel Rechnitz*)

93.  Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

94.  As a result of Jona and Third-Party Defendants' conduct as alleged herein, they have violated California Penal Code, §496 that provides: "[e]very person who buys or receives any property that has been stolen or that has been

EXHIBIT "6", PAGE 97

obtained in any manner constituting theft or extortion, knowing the property
to be so stolen or obtained, or who conceals, sells, withholds, or aids in
concealing, selling, or withholding any property from the owner, knowing the
property to be so stolen or obtained, shall be punished by imprisonment in a
county jail for not more than one year, or imprisonment pursuant to
subdivision (h) of Section 1170. However, if the value of the property does
not exceed nine hundred fifty dollars ($950), the offense shall be a
misdemeanor, punishable only by imprisonment in a county jail not
exceeding one year, if such person has no prior convictions for an offense
specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision
(e) of Section 667 or for an offense requiring registration pursuant to
subdivision (c) of Section 290.

95.  Jona and Third-Party Defendants have obtained and received property from
Marco, the $6,950,444.40 of Consigned Jewelry, in a manner constituting
"theft," as that term is defined in California Penal Code, § 484(a) that
provides: "[e]very person who shall feloniously steal, take, carry, lead, or
drive away the personal property of another, or who shall fraudulently
appropriate property which has been entrusted to him or her, or who shall
knowingly and designedly, by any false or fraudulent representation or
pretense, defraud any other person of money, labor or real or personal
property or who causes or procures others to report falsely of his or her
wealth or mercantile character and by thus imposing upon any person, obtains
credit and thereby fraudulently gets or obtains possession of money, or
property or obtains the labor or service of another, is guilty of theft."

96.  Third-Party Defendants' conduct constitutes theft, as that term is defined in
California Penal Code § 484(a).

EXHIBIT "6", PAGE 98

97. As a direct and proximate result of Third-Party Defendants' civil theft, Marco has been damaged in an amount to be proven at trial, but at least $6,950,444.40.

98. Pursuant to California Penal Code, § 496(c), Marco is also entitled to recover treble damages from Third-Party Defendants.

99. Pursuant to California Penal Code, § 496(c), Marco is also entitled to recover attorneys' fees from Third-Party Defendants.

100. Marco further requests the imposition of a constructive trust against all Third-Party Defendants who are in possession of the consigned jewelry set forth in the Consignment Memos and for an order and judgment that they hold the consigned jewelry and/or all proceeds therefrom as constructive trustees for the benefit of Marco.

101. In doing the things herein alleged, Third-Party Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Marco. Third-Party Defendants are therefore guilty of malice and/or fraud in conscious disregard of Marco's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Third-Party Defendants, and each of them, and deter them and others from engaging in similar misconduct.

### THIRD CAUSE OF ACTION
### EMBEZZLEMENT

*(On behalf of Third-Party Plaintiffs as to Jona Rechnitz)*

102. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

103. Based on the foregoing, Jona, without Marco' knowledge or consent, instead of reselling Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) and repaying Marco, Jona swindled Marco in a large scale fraud by

EXHIBIT "6", PAGE 99

absconding with Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace), and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco the $6,950,444.40. In reality, Jona liquidated Marco' Consigned Jewelry Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) , and refused to tell Marco how he liquidated the Consigned Jewelry or how he spent the proceeds. Marco asked Jona to disclose the location of the Consigned Jewelry and to provide a tracing and accounting of the proceeds, and Jona refused to do so.

104. In engaging in the conduct described above, Jona acted despicably, willfully, wantonly, oppressively, fraudulently, or in conscious disregard of Marco's rights, within the meaning of Civil Code § 3924(c), so as to entitle Marco to punitive damages in an amount sufficient to punish or make an example of Jona.

105. As a result of Jona's actions, Marco have been damaged in an amount according to proof, plus interest, costs, and attorneys' fees as permitted by law.

### FOURTH CAUSE OF ACTION
### CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Levin Prado*)

106. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

107. Jona, Rachel and Prado conspired to make illegal agreements to defraud Marco of the consigned jewelry and to commit civil theft.

108. Jona, with his wife Rachel, have set up companies to solicit consigned jewelry based upon the false premise they have clients to sell them to.

4/24-1:56pm

-32-

Meanwhile they took Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace), swindled Marco in a large scale fraud by absconding with the pieces of jewelry, and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco the **$6,950,444.40**. In reality, Jona liquidated Marco's consigned jewelry, and refused to tell Marco how he liquidated the consigned jewelry or how he spent the proceeds. Marco asked Jona to disclose the location of the consigned jewelry and to provide a tracing and accounting of the proceeds, and Jona refused to do so.

109. Jona deceived Marco to consign them the $6,950,444.40 in jewelry, with false promises of consummated sales and with false promises of repayment.

110. Third-Party Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Third-Party Defendants formed a civil conspiracy and engaged in the foregoing acts in operation and furtherance of that conspiracy.

111. Third-Party Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Third-Party Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Marco, as alleged herein.

112. As a result of the civil conspiracy, each and every Defendant is liable and responsible for the acts of the other Third-Party Defendants in furtherance of the conspiracy and all damages resulting therefrom.

113. As a result of the civil conspiracy, Third-Party Defendants are jointly and severally liable for $6,950,444.40.

114. The egregious nature of the Third-Party Defendants/conspirators' collective conduct is malicious, wanton, and willful. Marco need to be awarded punitive damages plus a judgment of joint and several liability.

EXHIBIT "6", PAGE 101

1  ///

2  ///

3                          **FIFTH CAUSE OF ACTION**

4                                 **CONVERSION**

5        (*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz*)

6  115.   Third-Party Plaintiffs hereby incorporate by reference as though fully set

7         forth in full herein, all preceding Paragraphs of this Complaint.

8  116.   At all times relevant, by virtue of their Consignment Memos, Marco owned,

9         possessed, or had a right to receive and possess their $6,950,444.40 in

10        Consigned Jewelry.

11 117.   Third-Party Plaintiffs recently discovered that the Third-Party Defendants

12        have intentionally and substantially interfered with Marco's property by

13        means of false and fraudulent activity, including, but not limited to,

14        misappropriating Marco' Consigned Jewelry (including Rovinsky's Ring &

15        Necklace)  for their own personal use and other theft according to proof. The

16        Third-Party Defendants engaged in this conduct with the intention of

17        wrongfully benefitting themselves at the expense of Marco.

18 118.   Third-Party Defendants sold, encumbered, or otherwise transferred Marco's

19        Consigned Jewelry (including Rovinsky's Ring & Necklace) to third parties

20        of questionable reputation, subject to Marco's Consignment Memos without

21        the knowledge of Marco. These transferees took possession of Marco'

22        Consigned Jewelry (including Rovinsky's Ring & Necklace). Once Marco

23        discovers the identities of these fraudulent transferees, Marco will amend this

24        Complaint to add them as Third-Party Defendants to a claim and delivery

25        (replevin) cause of action.

26 119.   Third-Party Plaintiffs did not consent to said activities.

27

28

4/24-1:56pm                            -34-

EXHIBIT "6", PAGE 102

120. As a direct and proximate result of the foregoing acts, Third-Party Defendants intended to cause, and have in fact caused, actual harm to Marco, and are liable to Marco for damages in an amount to be proven at trial, but no less than $6,950,444.40.

121. During, and as a further proximate result of, the Third-Party Defendants' wrongful possession and detention of Marco's Consigned Jewelry, Marco has suffered the loss of the deterioration of their property and resulting business losses in an amount to be proven at trial.

122. Furthermore, Marco is informed and believe, and so allege, that the Third-Party Defendants' aforementioned acts were taken with malice, fraud, and oppression and in conscious disregard for Marco's rights, and were done willfully and with the intent to cause injury to Marco. The Third-Party Defendants were aware at all times that Marco was owed either return of the consigned goods or repayment of $6,950,444.40 and intended to surreptitiously misappropriate Marco's consigned goods and funds for their own personal use, seeking only to intentionally and maliciously deceive Marco. Accordingly, Marco is entitled to an award of exemplary and punitive damages against the Third-Party Defendants.

### SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT

(*On behalf of Third-Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz*)

123. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

124. Third-Party Plaintiffs, (the Jadelle Parties), Jona and Rachel are parties to binding contracts, the Consignment Memos.

125. At all times, Marco performed all conditions, covenants, and promises required in accordance with the terms of the Consignment Memos,, except as

they have been prevented or excused from performing by the acts and/or omissions of (the Jadelle Parties), Jona & Rachel.

126. Under the 10-29-2019 Consignment Memo to Luna, (the Jadelle Parties) and Jona & Rachel were to either return the Yellow & White Choker Necklace / Bracelet to Third-Party Plaintiffs or pay them $150,000.00.

127. Under the 12-2-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the BRACELET - Multi-shape 14 stone diamond bracelet, 45.47 carats, white gold to Third-Party Plaintiffs or pay them $500,000.00.

128. Under the 12-12-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the BY215 - BRACELET - Platinum/18kwg 36.69 carats, 132 stones, 44 radiant 25.52cttw., 66 baguettes 7.57 cttw to Third-Party Plaintiffs or pay them $140,000.00.

129. Under the 12-16-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the NS10052 - EARRINGS - 18kwg 2stones, 9.02 Round Brilliant, J/Sl2G, GIA# 2165989714, 9.02 Round Brilliant, J/Sl2, GIA# 2205611416 to Third-Party Plaintiffs or pay them $335,000.00.

130. Under the 12-16-2019 Consignment Memo to Lazar, (the Jadelle Parties) and Jona & Rachel were to either return the LAZ52342 - RING- 20.54 carat Oval diamond ring, H/VVS2, GIA# 6204485119 to Third-Party Plaintiffs or pay them $793, 049.40.

131. Under the 12-16-2019 Consignment Memo to First International, (the Jadelle Parties) and Jona & Rachel were to either return the EID MT 13.62 D/VVS1, # 11776564 to Third-Party Plaintiffs or pay them $1,333, 695.00.

132. Under the 11-19-2019 Consignment Memo, the Jadelle Parties) and Jona & Rachel were to either return the NECKLACE - 18KYG Diamond necklace,

EXHIBIT "6", PAGE 104

1    134.71 Fancy Yellow, internally flawless, VS2 , 49 stones to Third-Party

2    Plaintiffs or pay them $1,300,000.00.

3  133.  Under the 11-27-2019 Consignment Memo to David Rovinsky, (the Jadelle

4    Parties) and Jona & Rachel were to either return the RING - 43.10 Carat

5    Fancy Yellow diamond+ 6.82 carats to Third-Party Plaintiffs or pay them

6    $1,650,000.00.

7  134.  Under the 1-7-2020 Consignment Memo to Eli, Inc., (the Jadelle Parties) and

8    Jona & Rachel were to either return the RING - 15.03 Fancy Yellow

9    internally flawless radiant diamond mounted on a WG ring with a diamond

10    halo to Third-Party Plaintiffs or pay them $215,000.00.

11  135.  (The Jadelle Parties) and Jona & Rachel breached the Consignment Memos

12    by failing to return the consigned jewelry and make full repayment of the

13    $6,950,444.40. As of the date of filing of this complaint, the full amount of

14    Third-Party Plaintiffs' debt in the amount $6,950,444.40 is past due and

15    owing. In addition, accrued and ongoing interest, remains due, owing, and

16    unpaid from (the Jadelle Parties) and Jona & Rachel to Third-Party Plaintiffs.

17  136.  As a direct and proximate result of the foregoing acts, Third-Party Plaintiffs

18    have been damaged in an amount to be proven at trial, together with interest

19    at the maximum legal rate according to proof. (The Jadelle Parties) and Jona

20    & Rachel would receive unjust enrichment if allowed to retain the benefits of

21    Third-Party Plaintiffs' performance under the Consignment Memos without

22    abiding by (the Jadelle Parties) and Jona's & Rachel's own repayment

23    obligations under the  Consignment Memos and/or Third-Party Plaintiffs

24    detrimentally relied on the  Consignment Memos and would suffer an

25    unconscionable injury if the Consignment Memos were not enforced.

26  ///

27  ///

28

4/24-1:56pm                                    -37-

1   ///

2   ///

3           **SEVENTH CAUSE OF ACTION**

4   **BREACH OF THE IMPLIED COVENANT OF**

5           **GOOD FAITH AND FAIR DEALING**

6   (*On behalf of Third-Party Plaintiffs as to Jona S. Rechnitz., Rachel Rechnitz, Levin*

    *Prado*)

7   137.  Third-Party Plaintiffs hereby incorporate by reference as though fully set

8         forth in full herein, all preceding Paragraphs of this Complaint.

9   138.  Based on the foregoing, Third-Party Plaintiffs are informed and believe, and

10        on such information and belief allege, that based on the foregoing,

11        Third-Party Defendants breached the implied covenant of good faith and fair

12        dealing continuously throughout the business relationship with Marco.

13  139.  Third-Party Plaintiffs are informed and believe, and on such information and

14        belief allege, that there may be other facts constituting breach of the implied

15        covenant of good faith and fair dealing which will be presented through

16        discovery or at the time of trial.

17  140.  As a direct and proximate cause of the acts of Third-Party Defendants, Marco

18        suffered damages in an amount according to proof at the time of trial of at

19        least $6,950,444.40.

20  141.  Third-Party Plaintiffs are informed and believe, and on such information and

21        belief allege, that Third-Party Defendants acted despicably, willfully,

22        wantonly, oppressively, fraudulently, or in conscious disregard of Marco's

23        rights. Marco seeks recovery of exemplary damages  in an amount according

24        to proof at the time of trial.

25  142.  As a result of Third-Party Defendants' actions, Marco has been damaged in

26        an amount according to proof, plus interest, costs, and attorneys' fees as

27        permitted by law.

28

EXHIBIT "6", PAGE 106

///

## EIGHTH CAUSE OF ACTION

## ACCOUNT STATED

(*On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz*)

143. Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

144. Based on the foregoing, in Los Angeles County, State of California, an account was stated in writing by and between Marco and (the Jadelle Parties), Jona, Rachel, and on such statement, a balance of $6,950,444.40 was found due to Marco from (the Jadelle Parties), Jona, Rachel, who all agreed to pay to Marco said balances in full.

145. Although demanded by Marco from (the Jadelle Parties), Jona, Rachel, they have failed to fully repay the balance of $6,950,444.40. Repeated demands were made and ignored by Third-Party Defendants. As of the date of filing of this complaint, $6,950,444.40 is the current principal amount past due and owing. In addition, accrued and ongoing interest remains due, owing, and unpaid from (the Jadelle Parties), Jona, Rachel, to Marco.

146. Third-Party Plaintiffs have incurred attorneys' fees in connection with this matter, in an amount to be determined at trial. Because the Consignment Memos are contracts on a book account, Marco are entitled to recover attorneys' fees from (the Jadelle Parties), Jona, Rachel, pursuant to Civil Code section 1717.5.

## NINTH CAUSE OF ACTION

## UNETHICAL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA

## BUSINESS & PROFESSIONS CODE §17200

EXHIBIT "6", PAGE 107

(*On behalf of Third-Party Plaintiffs as to Jona S. Rechnitz, Rachel Rechnitz, Levin Prado*)

147.  Third-Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

148.  Based on the foregoing, Third-Party Plaintiffs are informed, believe, and thereupon allege , that Third-Party Defendants intentionally conspired with each other to restrain competition and deprive Marco of the benefit of their contracts.

149.  As a direct and proximate result of the aforementioned conduct of Third-Party Defendants, and each of them, Marco has been damaged in a sum in excess of the jurisdiction of this Court, to be determined according to proof at the time of trial of at least $6,950,444.40.

150.  In engaging in the conduct described above, Third-Party Defendants, and each of them, acted willfully and intending to deprive Marco of their property or legal rights, thereby committing acts of fraud, within the meaning of Civil Code §3924(c), so as to entitle Marco to punitive damages in an amount sufficient to punish or make an example of Third-Party Defendants, and each of them.

**PRAYER FOR RELIEF**

WHEREFORE, Third-Party Plaintiffs seek a judgment in their favor and an order granting the following relief:

1.  That Marco be awarded compensatory damages in the amount of at least $6,950,444.40;

2.  That Marco be awarded treble damages pursuant to California Penal Code, §496(c);

3.  That Marco be awarded reasonable attorneys' fees pursuant to California Penal Code, §496©;

4/24-1:56pm

-40-

1    4.    That Marco be awarded attorneys' fees pursuant to Civil Code section 1717.5.

2    5.    For a constructive trust over the Consigned Jewelry and all proceeds

3          therefrom;

4    6.    That Marco be awarded punitive damages in an amount to be proven at trial;

5    7.    That Marco be awarded costs of suit; and

6    8.    That Marco be awarded such further relief as the Court deems just and proper.

7

8                          **DEMAND FOR JURY TRIAL**

9          Third-Party Plaintiffs hereby demand a trial by jury to the full extent

10   permitted by law.

11

12   DATED:        April 24, 2020              LAW OFFICE OF BARUCH C. COHEN
                                               A Professional Law Corporation

13                                             By ___/S/ Baruch C. Cohen_____
                                                  Baruch C. Cohen, Esq.
14                                                Attorney for Third-Party Plaintiffs PETER
                                                  VOUTSAS aka PETER MARCO aka
15                                                PETER MARCO EXTRAORDINARY
                                                  JEWELS OF BEVERLY HILLS, dba
16                                                PETER MARCO LLC

17

18

19

20

21

22

23

24

25

26

27

28

4/24-1:56pm                                -41-

EXHIBIT "6", PAGE 109

# EXHIBIT - 1

CM/ECF - U.S. Bankruptcy Court (v5.2.1 - LIVE)                    Page 1 of 2

United States Bankruptcy Court
Central District of California

## Notice of Involuntary Bankruptcy Case Filing

An involuntary bankruptcy case concerning the debtor
(s) listed below was filed under Chapter 7 of the
United States Bankruptcy Code, entered on
04/06/2020 at 3:52 PM and filed on 04/06/2020.



**Jadelle Jewelry And Diamonds LLC a Delaware
limited liability company**
9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212
Tax ID / EIN: 00-0000000
*dba* **Jadelle Inc**

The case was filed by the following petitioning creditor(s):

| | |
|---|---|
| **First International Diamond Inc** | **Baruch C Cohen** |
| | Law Office of Baruch C. Cohen APLC |
| PO Box 3765 | 4929 Wilshire Blvd Ste 940 |
| Beverly Hills, CA 90212 | Los Angeles, CA 90010 |
| | 323-937-4501 |
| **Peter Marco LLC** | **Baruch C Cohen** |
| 252 N Rodeo Dr | Law Office of Baruch C. Cohen APLC |
| Bewverly Hills, CA 90210 | 4929 Wilshire Blvd Ste 940 |
| | Los Angeles, CA 90010 |
| | 323-937-4501 |
| **Victor Franco Noval** | **Ronald N Richards** |
| 1141 Summit Drive | Law Offices of Ronald Richards & Assoc |
| Beverly Hills, CA 90210 | |
| | PO Box 11480 |
| | Beverly Hills, CA 90213 |
| | 310-556-1001 |

The case was assigned case number 2:20-bk-13530-BR to Judge Barry Russell.

If you would like to view the bankruptcy petition and other documents filed by the

https://ecf.cacb.circ9.dcn/cgi-bin/NoticeOfFiling.pl?1896610                    4/6/2020

EXHIBIT "6", PAGE 111

CM/ECF - U.S. Bankruptcy Court (v5.2.1 - LIVE)                    Page 2 of 2

petitioning creditor(s) and the debtor, they are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Kathleen J. Campbell
Clerk, U.S. Bankruptcy
Court**

EXHIBIT "6", PAGE 112

ORIGINAL

Fill in this information to identify the case:

United States Bankruptcy Court for the:

Central _____ District of California
                                    (State)

Case number (if known): _____   Chapter ____

FILED

APR - 6 2020

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

☐ Check if this is an
amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

**Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed**

| 1. Chapter of the Bankruptcy Code | *Check one:* |
|---|---|
| | ☒ Chapter 7 |
| | ☐ Chapter 11 |

**Part 2:   Identify the Debtor**

| 2. Debtor's name | JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company |
|---|---|
| 3. Other names you know the debtor has used in the last 8 years  Include any assumed names, trade names, or *doing business as* names. | Jadelle, Inc. |
| 4. Debtor's federal Employer Identification Number (EIN) | ☒ Unknown   EIN ___ – _____ |

| 5. Debtor's address | **Principal place of business** | **Mailing address, if different** |
|---|---|---|
| | 9621     Brighton Way | 9454     Wilshire Blvd., Penthouse 01 |
| | Number    Street | Number    Street |
| | | P.O. Box |
| | *Beverly Hills* *CA*   90210 | Beverly Hills     CA     90212 |
| | City            State   ZIP Code | City            State   ZIP Code |
| | | **Location of principal assets, if different from principal place of business** |
| | *Los Angeles* | |
| | County | Number    Street |
| | | City            State   ZIP Code |

Official Form 205                     Involuntary Petition Against a Non-Individual                     page 1

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "6", PAGE 113

Debtor    <u>Jadelle Jewelry and Diamonds, LLC</u>       Case number (if known) _____
      Name

| | |
|---|---|
| **6. Debtor's website (URL)** | _____ |

**7. Type of debtor**
- ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding LLP)
- ☐ Other type of debtor. Specify: _____

**8. Type of debtor's business**

*Check one:*
- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☒ None of the types of business listed.
- ☐ Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**
- ☒ No
- ☐ Yes. Debtor _____ Relationship _____

     District _____ Date filed _____ Case number, if known _____
                                    MM / DD / YYYY

     Debtor _____ Relationship _____

     District _____ Date filed _____ Case number, if known _____
                                    MM / DD / YYYY

**Part 3:**   **Report About the Case**

**10. Venue**

*Check one:*
- ☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*
- ☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
- ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**
- ☒ No
- ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

Official Form 205        Involuntary Petition Against a Non-Individual        page 2

American LegalNet, Inc.
www.FormsWorkFlow.com

| Debtor | Jadelle Jewelry and Diamonds, LLC | Case number (if known) | |
| | Name | | |

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| First International Diamond, Inc. | Trade Debt/Damages | $ 1,976,225.00 |
| Peter Marco, LLC | Trade Debt/Damages | $ 7,676,744.00 |
| Victor Franco Noval | Trade Debt/Damages | $ 5,800,000.00 |
| | Total of petitioners' claims | $ 15,452,969.00 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the , along with the signature of the petitioner's attorney.

| **Part 4:** | **Request for Relief** |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

cab 2698544v1

| Petitioners or Petitioners' Representative | Signature of petitioner or representative, including representative's title |
|---|---|
| Name and mailing address of petitioner | |
| First International Diamond, Inc. | |
| Name | |
| P.O. BOX 3765 | |
| Number    Street | |
| Beverly Hills    CA    90212 | |
| City    State    ZIP Code | |
| Name and mailing address of petitioner's representative, if any | |
| Baruch C. Cohen, Esq. | |
| Law Office of Baruch C. Cohen, APLC | |
| Name | |
| 4929    Wilshire Blvd., Suite 940 | |
| Number    Street | |
| Los Angeles    CA    90010 | |
| City    State    ZIP Code | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4-3-2020
MM/DD/YYYY

X _Baruch C.C_

Official Form 2    Involuntary Petition Against a Non-Individual    page 3

American LegalNet, Inc.
www.FormsWorkFlow.com

Attorneys

Daniel A. Lev
Printed name

SulmeyerKupetz, A Professional Corporation
Firm name, if any

333 South Grand Avenue
Number    Street

Los Angeles          CA          90071
City                 State       ZIP Code

Contact phone    213.626.2311    Email    dlev@sulmeyerlaw.com

Bar number    129622

State    CA

X _____
Signature of attorney

Date signed    04/06/2020
MM / DD / YYYY

Official Form 205              Involuntary Petition Against a Non-Individual                     page 3

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "6", PAGE 116

| Debtor | Jadelle Jewelry and Diamonds, LLC | Case number (if known) | |
| | Name | | |

Signature of petitioner or representative, including representative's title

**Name and mailing address of petitioner**

Peter Marco, LLC
_Name_

252   N. Rodeo Dr.
_Number_   _Street_

Beverly Hills           CA       90210
_City_                  _State_   _ZIP Code_

**Name and mailing address of petitioner's representative, if any**
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
_Name_

4929   Wilshire Blvd., Suite 940
_Number_   _Street_

Los Angeles           CA       90010
_City_                 _State_   _ZIP Code_

I declare under penalty of perjury that the foregoing is true and correct.

Executed On   4-3-2020
_MM / DD / YYYY_

X _[signature]_
Signature of petitioner or representative, including representative's title

**Name and mailing address of petitioner**

Victor Franco Noval
_Name_

1141   Summit Drive
_Number_   _Street_

Beverly Hills           CA
_City_                  _State_   _ZIP Code_

**Name and mailing address of petitioner's representative, if any**
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
_Name_

P.O. Box 11480
_Number_   _Street_

Beverly Hills           CA       90213
_City_                  _State_   _ZIP Code_

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
_MM / DD / YYYY_

X

Official Form 205                    Involuntary Petition Against a Non-Individual                    page 4

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "6", PAGE 117

Debtor _Jadelle Jewelry and Diamonds, LLC_____     Case number (if known) _____

_____

Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner

Peter Marco, LLC
Name

252    N. Rodeo Dr.
Number    Street

Beverly Hills            CA        90210
City                     State     ZIP Code

Name and mailing address of petitioner's representative, if any
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
Name

4929    Wilshire Blvd., Suite 940
Number    Street

Los Angeles            CA        90010
City                   State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On _____
            MM / DD / YYYY

X _____
Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner

Victor Franco Noval
Name

1141    Summit Drive
Number    Street

Beverly Hills            CA        90210
City                     State     ZIP Code

Name and mailing address of petitioner's representative, if any
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number    Street

Beverly Hills            CA        90213
City                     State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _04/06/2020_
             MM / DD / YYYY

X _Ronald Richards_____

Official Form 205            Involuntary Petition Against a Non-Individual            page 4


American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "6", PAGE 118

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| BARUCH C. COHEN ESQ.<br>LAW OFFICE OF BARUCH C. COHEN, APLC<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br>(323) 937-4501)<br>DANIEL A LEV, ESQ.<br>333 S GRAND AVE STE 3400<br>LOS ANGELES, CA 90071<br>(213) 626-2311)<br>RONALD N RICHARDS, ESQ.<br>P.O. BOX 11480<br>BEVERLY HILLS, CA 90213  (310) 556-1001) | |
| ☑ *Attorney for Petitioning Creditor(s)*<br>☐ *Petitioning Creditor(s) appearing without attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>JADELLE JEWELRY AND DIAMONDS, LLC.,<br>a Delaware limited liability company<br>dba JADELLE INC,<br><br><br>Debtor(s). | CASE NO.: 20-13530BR<br>CHAPTER: 7<br><br>**SUMMONS AND NOTICE OF<br>STATUS CONFERENCE IN AN<br>INVOLUNTARY BANKRUPTCY CASE** |
|---|---|

To the above-named debtor(s):

Pursuant to 11 U.S.C. § 303, an involuntary petition was filed on ___4/6/2020___ in this bankruptcy court praying for the entry of an order for relief against you under chapter ___7___ of title 11 of the Bankruptcy Code. A copy of the involuntary petition accompanies this summons.

A status conference in the involuntary case commenced by the involuntary petition has been set for:

| Hearing Date: 6/9/2020<br>Time:  *10 am*<br>Courtroom: 1668 | Place:<br>☑ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101 |
|---|---|

If you wish to oppose the entry of an order for relief, you must file with the clerk of this court an answer to the involuntary petition or a motion pursuant to FRBP 1011(c) within 21 days after the date of service of this summons and attached involuntary petition, plus 3 additional days if you were served by mail. At the same time, you must also serve a copy of the answer or motion on the petitioner's attorney (or on the petitioner, if the petitioner does not have an attorney) at the address stated above. If you file a motion under FRPB 1011(c), your time to answer the petition will be governed by that rule.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 1010-1.SUMMONS.INVOL**

**TO THE DEBTOR:**

IF YOU FAIL TO TIMELY FILE A RESPONSE TO THIS SUMMONS, THE BANKRUPTCY COURT MAY ENTER AN ORDER FOR RELIEF IN ACCORDANCE WITH 11 U.S.C. § 303(h).

**TO THE PETITIONING CREDITOR(S):**

IF YOU FAIL TO TIMELY SERVE THE SUMMONS AND INVOLUNTARY PETITION AND/OR TO FILE PROOF OF SERVICE OF DOCUMENT THEREOF WITH THE COURT OR TO APPEAR AT THE STATUS CONFERENCE, THIS INVOLUNTARY CASE MAY BE DISMISSED IN ACCORDANCE WITH LBR 1010-1.

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date: 4/7/2020

By: STACEY FORTIER
Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                        F 1010-1.SUMMONS.INVOL

EXHIBIT "6", PAGE 120

# EXHIBIT - 2

AO 245B (Rev. 09/19)   Judgment in a Criminal Case      (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| Jona Rechnitz | ) Case Number:  1: 16 cr. 00389-01(AKH) |
| | ) USM Number:  77751-054 |
| | ) Alan Levine/ AUSA, Martin Bell |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1349 | Conspiracy to Commit Honest Services Wire Fraud | 6/6/2016 | 1 |

     The defendant is sentenced as provided in pages 2 through    7    of this judgment.  The sentence is imposed pursuant to
the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/19/2019
Date of Imposition of Judgment

_____
Signature of Judge

Hon. Alvin K. Hellerstein, U.S. District Judge
Name and Title of Judge

March 3, 2020
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2020

AO 245B (Rev. 09/19) Judgment in Criminal Case
    Sheet 2 — Imprisonment

| | | | |
|---|---|---|---|
| | Judgment — Page | 2 | of | 7 |

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

# IMPRISONMENT

      The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
5 months. Defendant is notified of his right to appeal.

☑ The court makes the following recommendations to the Bureau of Prisons:
    that the defendant be confined at the Lompac or Taft facility outside of Los Angeles.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

|  | Judgment—Page | 3 | of | 7 |

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years, of which the first 5 months shall be home confinement.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

EXHIBIT "6", PAGE 125

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3D — Supervised Release

|  | Judgment—Page | 5 | of | 7 |

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall provide the probation officer with access to any requested financial information.

2.  The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he/she is in compliance with the installment payment schedule.

3.  The defendant shall continue to cooperate with the U.S. Attorney's Office.

4.  The defendant's duty to pay restitution in the amount of $19,000,000.00 is joint and several with co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467) provided, however, that defendant Rechnitz' payments shall be capped at $10,000,000.00. The defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day of each month.

5.  The defendant shall be supervised by the district of residence.

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

|  |  | Judgment — Page | 6 | of | 7 |

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 19,000,000.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Correction Officers' Benevolent Association | $19,000,000.00 | $19,000,000.00 | |
| 77-10 21st Avenue | | | |
| East Elmhurst, NY 11370 | | | |

| **TOTALS** | $ 19,000,000.00 | $ 19,000,000.00 |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ __100.00__ due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
     term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☑ Special instructions regarding the payment of criminal monetary penalties:
     The defendant shall pay restitution in the amount of $10,000,000.00, joint and several with the $19,000,000.00
     restitution obligation of co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467). The
     defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day
     of each month.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

EXHIBIT "6", PAGE 128

# EXHIBIT - 3

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA 90035
October 16, 2019

Honorable Alvin K Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Hellerstein:

I am a felon. I am a criminal. I am the ONLY person to blame for that.

I have caused tremendous pain and embarrassment to my family, my religion, and to myself.

There is no way to undo what's been done. It's permanent, and for that I am truly sorry to everyone hurt by my crimes and actions. It eats me alive each and every day. When I wake up, when I go to sleep, it is always on my mind for the past 4 years.

My actions harmed the people of New York, The people of Correction Officers Benevolent Association, my friends, my family and my community. I will forever carry this burden, as I deserve to.

I have read of your Honor asking at various sentencings, why do good people do bad things?

In my case, not assuming I'm a good person, I can answer this question. Arrogance, greed, and insecurity.

Arrogance. I felt I was above the law. At this young age in my late 20's I was busy accepting honors at dinners and board positions at prestigious institutions. It got to my head.

Greed. I wanted to gain contacts to grow my business, to make money and gain stature in the long run.

Insecurity. I wanted to gain popularity by my peers and become a big shot in my community and business circles.

Shame on me.

Finally, I couldn't wiggle my way out of this one. It changed my life as I knew it forever.

As a supposed religious man, I have been a disgrace to my religion. The only way to fix this is to make serving G-d my main focus for the rest of my life. I try to every day. I have changed as a person religiously, through prayer, my public and private behavior, and I always stop and think before I'm about to do something to see if it is something my parents, my family, and G-d would approve of.

Making the decision to come forward was the right decision. A very tough decision with tremendous repercussions, but the appropriate decision. It has come with a hefty price. I did not foresee what I was signing up for, and it has been a brutal four years, but I made the right decision. I learned that doing the right thing isn't always the easiest, but it is the only choice. There is right and wrong and nothing in between. It has changed me for the better. It has forced me to change, which I have.

I had to testify in three separate trials. Not an easy task. Outside of the regular pressures a crucial witness deals with, these circumstances were even tougher. There was a lot of press coverage, a lot of community pressure, and a lot of threats and comments made to me. The press put me on trial instead of the defendants. The press called me a snitch and paid more attention to me and my testimony then on the actual trials. They made calls to my friends, my family, and waited outside my home for me to walk outside.

Parts of the community shunned me and my family. Your honor, I can not stress the amount of pain and suffering that we received during this time. Unimaginable pain. Eventually we had to leave town. Leave our lives. Leave immediately.

Then there were the threats and private investigators after me. Threatening voice messages, windows smashed at home, windows smashed in my car several times and my parents cars on the same day at their home, people following me and sitting outside of my home in Los Angeles for periods of time. My wife and I were harassed and video taped at the mall, humiliated in our Synagogue, and embarrassed in public at a local LA high school charity event.

Your Honor, there are so many examples that I am omitting as I don't want to portray myself as the victim here. I caused a lot of pain and harm to others through my criminal activity and don't want to detract from that.

Even at various trials there were intimidation tactics. An attorney representing a defendant yelled at me in the hallway walking in to court and shoved the prosecutor when he confronted him.

The disgusting feeling I had waking up in the morning to go to trial after trial after trial. Sometimes for a week and a half straight.

One of the toughest moments was when a mistrial was declared. I remember feeling like I wanted to tap out. But I could not. I made this decision for me and my beautiful family with the hope of staying together with them at the end of this nightmare. This has been the key factor keeping me going. My family. My amazing, incredible wife and my beautiful 6 children.

The highlight of my week used to be sitting in NYPD Headquarters like a big Macher. Today, my highlight is walking to Synagogue with my children every week, and I let them know it every time we walk. When I ask them what my favorite part of the week is, they say, Daddy! You know the answer, but I still make them repeat it.

Your Honor, I can now tell you proudly I am a hands-on father and husband. I am more of a mentsch. I was not during my criminal years. For that alone, I am grateful to this situation. My wife is an amazing woman. She had a bad feeling about the people I was hanging out with and the people I wanted to impress. She was right. I should have listened to her. I do now.

I had real estate holdings which I had to give up throughout this ordeal. Many investors didn't want to be associated with me, nor do I blame them. In a few cases, some partners viewed my situation as an opportunity forcing me to give up different holdings and assets, taking management decisions and authority from me, ultimately removing me entirely. Starting to make a living again was a struggle for a period of time. Fortunately my wife and I started a new business endeavor, which looks promising. As your Honor can imagine it is hard to find a bank to work with me, so I have secured private loans and financing from family and friends. I finally have a business going that has provided stability and a way to make a living. This case has left me in a big financial hole - I have had to borrow millions of dollars to get this business going and to support my family. I am finally in a position to dedicate myself again to supporting my family. I don't see any way possible to start over a third time. I beg you to allow me to continue on this second journey of life.

This has been a difficult time. I don't feel healthy at all. I am on anti depressant medication, I wake up in the middle of the night in pain and my neck and hands are burning, and I will forever carry this guilt.

Family is everything to me. Cuddling with my children is everything to me. Being a community member and helping others is everything to me. Since this entire ordeal my wife gave birth to two beautiful baby girls. A decision that we made to not put life on hold but to continue with life in the right path and be optimistic that doing the right thing will not hinder our future.

I am a changed man. I suffered a lot. I have been severely punished. My family has suffered a lot. I beg your Honor, please allow me to continue on the path I'm on, together with my family, my wife and 6 young children. They need their Daddy, I need my family together with me, and I promise your Honor, to continue to make

my family proud, my community proud, and your Honor proud.

With humility and sincerity,

Jona

# EXHIBIT - 4

```
JCJYRECS                                                              1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA,

              v.                          16 CR 389 (AKH)

JONA RECHNITZ,

                    Defendant.
                                          Sentence
------------------------------------x

                                          New York, N.Y.
                                          December 20, 2019
                                          10:15 a.m.

Before:

              HON. ALVIN K. HELLERSTEIN,

                                          District Judge

                    APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  MARTIN S. BELL
     JESSICA LONERGAN
     KIMBERLY RAVENER
     LAURA POMERANTZ
     Assistant United States Attorneys

COOLEY LLP
     Attorneys for Defendant
BY:  ALAN LEVINE


Also Present:
Andrew Hamilton, Government Paralegal Specialist
Marc Klausner, NYPD
```

23   Joseph Downs, FBI

24

25

JCJYRECS 64

1 and, Judge, appearing before judges of this court, including

2 yourself, we either gain or lose credibility. My hope is that

3 I personally have kept faith with not just a certain caliber of

4 advocacy but also with the truth and with the way things really

5 are.

6 To the extent that I have amassed that credibility

7 over a period of time, I am laying it entirely on not only the

8 quality of Mr. Rechnitz's cooperation but the value of what

9 that means to the mechanism of justice working with respect to

10 future cooperators.

11 THE COURT: I have your point, Mr. Bell.

12 MR. BELL: Thank you, Judge.

13 THE COURT: Mr. Levine.

14 MR. LEVINE: Your Honor, I think it might be helpful

15 if the Court hears from Mr. Rechnitz first.

16 THE COURT: Sure.

17 Mr. Rechnitz.

18 THE DEFENDANT: Your Honor, I stand before your Honor

19 and this court with respect for the law, tremendous remorse for

20 my actions and behavior, and with great humility.

21 Growing up, my parents raised me in a very loving

22 environment --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23                    THE COURT:  Don't worry about the microphone,

24    Mr. Rechnitz.  Speak to me.  I'll hear you.

25                    THE DEFENDANT:  Growing up, my parents raised me in a

JCJYRECS                                                                    65

1    very loving environment.

2            THE COURT:  That's okay, Mr. Levine.  I can hear him.

3            Go ahead.

4            THE DEFENDANT:  Growing up, my parents raised me in a

5    very loving environment with an emphasis on religion and doing

6    the right thing.  Here I am.  I did not start off this way, and

7    I was raised differently.

8            I have let down my family, my parents, my in-laws, my

9    wife, my children, friends, and my community in a big way.  I

10   made very poor choices, and many people have suffered because

11   of them.  I didn't always appreciate the fact that I had the

12   blessing to have six beautiful children in my home and a

13   beautiful wife.

14           When you get into trouble, you realize the blessings

15   of life and what's important.  I took my blessings for granted.

16   I've been a real fraud to God, a fraud to my wife and family, a

17   fraud as an American, a fraud as a businessman, and a fraud to

18   the people of New York, namely, the hard-working COBA members,

19   and I'm truly sorry for that.  My actions have hurt many

20   people, and I'm very sorry for that.  I continue to pay for my

21   mistakes on a daily basis.

22           While testifying before your Honor during the Norman

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    Seabrook trial, a tape was played for the jury.  It had

24    recorded a conversation where I was going to attend an Mincha

25    prayer service as a Shiva.  Your Honor asked me to explain what

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                        66

1   Shiva and Mincha were for the jury.  In fact, your Honor

2   explained it much better than I did afterwards.

3           At that moment is when it really hit me what a

4   hypocrite I've been.  It was that exact moment.  Here I am

5   going to pray to God and visiting a mourner to comfort them,

6   and then I turn around and commit these crimes and sins.  It is

7   not the way I was raised and not the way I was educated.

8           While living in New York City, I wrongly felt pressure

9   to become a bigshot.  I was working for one of the largest real

10  estate companies in 2007, and it got to my head.

11          I was in my late 20's, and big people in the real

12  estate industry were dealing with me.  My ego was big, and I so

13  badly wanted to impress these people in order to advance my

14  career and profile.  This is where things started to spiral out

15  of control.  This is where I went so off the rails for a number

16  of years.

17          I assure your Honor that these past years and the

18  experience I've gone through has changed me.  I will never act

19  that way again.  My family and I have been through too much.

20          I have been forced to self-reflect, and I have

21  identified many of my flaws in order to grow from my mistakes.

22  I apologize for my criminal and immoral behavior for trying to

EXHIBIT "6", PAGE 141

23   bribe my way through these years of my life.

24        I left the moral way of going about business and my

25   religious beliefs.  I bestowed gifts upon police officers in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                                     67

1    exchange for favors in return.  I raised and contributed large

2    sums of money for the mayor of New York City and his projects

3    in the hope of obtaining benefit in return.

4            I introduced Norman Seabrook and Murray Huberfeld to

5    each other for the purposes of COBA to invest funds into

6    Murrey's fund, Platinum Partners, so that they could both

7    mutually financially benefit from one another and to elevate my

8    status with them.

9            I knowingly delivered a $60,000 kickback payment to

10   Norman Seabrook from Murray Huberfeld.  This corrupt bargain is

11   something that continues to haunt me.  I have struggled with

12   how it is I let my life go astray this way and how I took leave

13   of my adherence of the law and spirituality.

14           I've been a big hypocrite to my religion.  I failed to

15   conduct myself properly between myself and my fellow man and

16   between myself and my relationship with God.  I have strayed.

17           I did all of these horrible things without worrying

18   about God or the consequences that come with this sort of

19   behavior.  I cannot express to your Honor how ashamed I am for

20   desecrating my religion.

21           I have and will continue to repent to God every single

22   day.  I have and continued to make amends.  Part of my efforts

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    to make right included cooperating as a first step.  I have a

24    lot more work to do.

25              I did the best I could for the government and told the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                                              68

1   truth about myself, and I realize that I will have to make

2   financially right those that I hurt.

3           Please allow me just a few more minutes to discuss the

4   cooperation.  I hired Mr. Levine in 2016, May 2016.  When I

5   realized that there was an investigation heating up, I knew I

6   had not told the truth to the New York City police officers and

7   Internal Affairs Bureau a few months earlier.

8           Right away, based on my initial conversations with

9   Mr. Levine and Ms. Laura Birger, I authorized them to meet with

10  the assistant U.S. attorneys and begin the process of making a

11  proffer, agreeing to plead guilty and signing a cooperation

12  agreement.

13          I understood from those initial meetings with both my

14  lawyers and the government, if I was going to cooperate with

15  the government, I needed to be 100 percent truthful.

16          I have been completely forthcoming in all my meetings

17  and on the witness stand throughout three separate trials.

18  There is not any question that I was asked that I did not

19  answer truthfully, and there are many events and conduct that I

20  told the government that they did not know.

21          Included in my early proffer sessions with the

22  government -- this was in the spring of 2016.  I gave the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    government information about two different hard-lending

24    businesses that I was involved in.

25             One turned into a criminal case in which Peralta was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "6", PAGE 146

JCJYRECS                                                                69

1    charged with a Ponzi scheme, and the second one also turned

2    into a criminal case charging Nissen with the same scheme.

3         At the time, I was unaware these were both Ponzi

4    schemes and, as a result, personally lost money for myself and

5    others.  Since then, I am more cautious and conservative in my

6    business dealings.

7         My financial dealings with both were a mess with lots

8    of transactions, paying and receiving, some on my own behalf

9    and some on behalf of third parties, including cash

10   transactions.

11        I was simply unable to sort all those transactions

12   out, and I have yet to file a 2015 tax return.  I told my

13   lawyers and the government about that at the time immediately.

14        After speaking with my accountant during 2016, I

15   realized I cannot file my 2015 tax returns accurately because I

16   did not have a handle on all the transactions, and I can't

17   provide my accountant with complete information.

18        The situation got more complex in 2017 for 2016

19   because criminal charges were filed.  I was scheduled to

20   testify in one of the trials, and there was no way to sort out

21   the transactions.

22        As I testified in all three trials, I have yet to file

23   the returns for these years up through 2018.  I was sued in the

24   Peralta bankruptcy and settled paying over $350,000 to the

25   state.

EXHIBIT "6", PAGE 148

JCJYRECS                                                          70

1          I have been sued in the Nissen bankruptcy, but that

2     has not moved forward yet, and I do not know what my exposure

3     will be at that bankruptcy. I understand my obligation to

4     resolve that bankruptcy and have filed tax returns for those

5     years. And I also understand the additional problems I have

6     created in my inability to file those returns, including the

7     financial consequences they will cause.

8          This is one of several jobs that I have in the coming

9     months as I continue to sort out my life in a lawful path.

10    In fact, I will spend the rest of my life trying to make amends

11    for my criminal behavior.

12         I will try to make a better name for my family, for my

13    religion, and for myself. I am on the path to recovery,

14    your Honor. I am a better family man; I am a better friend; I

15    am a more religious person. I am working again to make an

16    honest living.

17         Please allow me to continuing on this course

18    undisrupted in order to provide for my large family. I really

19    want to do good, please. I failed myself in a number of ways.

20    I am humbly asking your Honor to stop the bleeding, to continue

21    in this new business I've started in order to provide for my

22    family and to enable me to take care of my financial

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23   responsibilities.

24            THE COURT:  What is the new business?  Jadelle?

25            THE DEFENDANT:  Jadelle, yes.  I really paid a hefty

EXHIBIT "6", PAGE 150

JCJYRECS                                                                    71

1   price for cooperating with the government for my crimes.  Most

2   recently, the New York Post put up an article that was

3   mentioned this morning -- your Honor may not be aware --

4   accusing me of hobnobbing and flirting with the rich and famous

5   at a time when I claim I am a pariah to society.

6          In fact, Jadelle Jewelery hosted a jewelery show to

7   promote the brand and new jewelry collection.  The event was to

8   make sales and increase business.  One attendee was a Kim

9   Kardashian, a client of Jadelle.

10         If one were to read the article, I am portrayed as a

11  hobnobber with no concern in the world, no remorse whatsoever,

12  and like a party animal.  I urge your Honor to watch the video

13  that was attached to the article online, and your Honor will

14  see a very different picture.

15         Your Honor will see me dressed in a suit and a tie

16  trying to sell jewelry, no partying, no hobnobbing, just a man

17  trying to make an honest living.

18         I am not here to complain about my suffering in the

19  past few years, but I can promise your Honor I have been

20  punished in so many ways I can't begin to describe.

21         Within my community, within the media, and through

22  self-introspection.  In New York City, I am persona non grata.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    I am to blame.  I burnt a lot of bridges and relationships and

24    had to relocate to California.

25              I am so truly sorry for my behavior.  I am a changed

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                                72

1    man.  I have had years to make this change.  It did not happen

2    overnight, your Honor.  I have had four years, close to four

3    years, since this ordeal started.

4            I beg your Honor, please allow me to remain with my

5    family, my beautiful wife and children, and allow me to

6    continue working so that I can continue to provide for them  and

7    make good on my financial obligations.

8            I don't see any way to start over a third time.  I'm

9    on my second chance.  Please allow me to continue on this path.

10   Thank you.

11           THE COURT:  Mr. Levine.

12           MR. LEVINE:  Your Honor, I was just going to ask.  The

13   hour is late.  If the Court would want to take a recess, I

14   would certainly appreciate that.

15           THE COURT:  It's very tempting.

16           MR. LEVINE:  If the Court wishes to proceed, I'd like

17   to proceed.

18           THE COURT:  Keep going, Mr. Levine.

19           MR. LEVINE:  So, your Honor, we're finally here for

20   the day of Mr. Rechnitz's sentence.  How did he get here.  And

21   I think an important question on the mind of the Court is has

22   he shown remorse.

23              Your Honor, we've submitted a lot of letters, and what

24    comes out from those letters is the personality of an

25    individual wanting and needing to help people.

EXHIBIT "6", PAGE 154

JCJYRECS                                                              73

1          THE COURT:  I've read the letters.  They depict a

2    person who enlarges others by charity, by friendship to others

3    and makes other people feel better.

4          And yet in the life that's been depicted in this

5    court, he cheapens people.  He works on their insecurities and

6    their quest for material possessions and just does the

7    opposite.  He diminishes people.

8          How can you square both?

9          MR. LEVINE:  Your Honor, that's what I was going to

10   say.  So this personality that has done so much good for so

11   many people before these events, during these events, and since

12   these events -- it collided with his desire to be independent,

13   to establish himself in Manhattan, and not to take the

14   comfortable road going back to Los Angeles.

15         It also collided with his desire for immediate success

16   by staying in Manhattan in his late 20's.  It introduced him to

17   a world of Jeremy Reichberg.  And he realized in that world

18   that with his money, he could do good for police officials and

19   others, to have them at his beck and call for his community and

20   for himself.

21         What he perceived, incorrectly, would be a win/win,

22   and it turned into a bad/bad.  He never should have offered

EXHIBIT "6", PAGE 155

1

## CERTIFICATE OF SERVICE

2    I declare that I am a citizen of the United States and I am a resident and employed in
3 Los Angeles, California; that my business address is 4929 Wilshire Boulevard, Suite 940,
  Los Angeles CA 90010; that I am over the age of 18 and not a party to the above-entitled
  action.
4
5    I am employed by a member of the United States District Court for the Central
  District of California, and at whose direction I caused service of the foregoing document
6 entitled **AMENDED THIRD-PARTY COMPLAINT FOR: INTENTIONAL**
  **MISREPRESENTATION & FRAUD; CIVIL THEFT (PENAL CODE, § 496);**
7 **EMBEZZLEMENT; CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND**
  **FRAUD BY CONCEALMENT; CONVERSION; BREACH OF CONTRACT;**
8 **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR**
  **DEALING; ACCOUNT STATED; & UNETHICAL BUSINESS PRACTICES IN**
9 **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200** on
  all interested parties in this action by the method indicated below at the address stated
10 below:

11

| | |
|---|---|
| Anthony R Bisconti, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: tbisconti@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Steven Jay Katzman, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: skatzman@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* |
| Jason A. Levine, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: jlevine@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Andrew E. Erdlen, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: aerdlen@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* |
| Marc S. Williams, Esq.<br>Cohen Williams, LLP<br>724 South Spring Street, 9th Floor<br>Los Angeles, CA 90014<br>Email: mwilliams@cohen-williams.com<br>*Attorney for Jona & Rachel Rechnitz* | |

21

22 **[X]    BY ELECTRONIC TRANSMISSION**: by electronically filing the foregoing with
  the Clerk of the District Court using its CM/ECF System pursuant to the Electronic
23 Case Filing provision of the United States District Court General Order and the E-
  Government Act of 2002, which electronically notifies all parties in this case. A pdf
24 version of this document was also transmitted to counsel via electronic mail at the
  email address indicated above.
25
    I declare under penalty of perjury under the laws of the United States of America
26 that the foregoing is true and correct. Executed on April 24, 2020 at Los Angeles,
  California.
27 By: _/s/  Baruch C. Cohen_
      Baruch C. Cohen
28

4/24-1:56pm                                          -42-

# EXHIBIT "7"

Electronically FILED by Superior Court of California, County of Los Angeles on 06/24/2020 02:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
20STCV23877

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Mark Mooney

1    Baruch C. Cohen, Esq. (SBN 159455)
     **LAW OFFICE OF BARUCH C. COHEN**
2         A Professional Law Corporation
     4929 Wilshire Boulevard, Suite 940
3    Los Angeles, California 90010
     (323) 937-4501        Fax (888) 316-6107
4    e-mail: baruchcohen@baruchcohenesq.com

5    *Attorney for Plaintiffs Oved Anter & First International Diamond, Inc.*

6

7                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                            **COUNTY OF LOS ANGELES**
8

9    OVED ANTER, an individual; & FIRST         LASC # ____ 20STCV23877
     INTERNATIONAL DIAMOND, INC., a
10   California corporation,                     **COMPLAINT FOR:**

11                      Plaintiffs,              1.    **INTENTIONAL**
                                                       **MISREPRESENTATION & FRAUD;**
12   vs.                                         2.    **CIVIL THEFT (PENAL CODE, § 496);**
                                                 3.    **CIVIL CONSPIRACY TO COMMIT**
13   JONA S. RECHNITZ, an individual;                  **THEFT, FRAUD, AND FRAUD BY**
     RACHEL RECHNITZ, an individual;                   **CONCEALMENT;**
14   ROBERT RECHNITZ, an individual;            4.    **CONVERSION;**
     LEVIN PRADO aka LEVON PRADO,               5.    **BREACH OF CONTRACT;**
15   an individual and DOES 1-20                 6.    **BREACH OF WRITTEN GUARANTY**
                                                 7.    **BREACH OF THE IMPLIED**
16                      Defendants.                     **COVENANT OF GOOD FAITH AND**
                                                       **FAIR DEALING;**
17                                               8.    **ACCOUNT STATED;**
                                                 9.    **UNETHICAL BUSINESS PRACTICES**
18                                                     **IN VIOLATION OF CALIFORNIA**
                                                       **BUSINESS & PROFESSIONS CODE**
19                                                     **§17200**
                                                 10.   **ISSUANCE OF BAD CHECKS (CIVIL**
20                                                     **CODE § 1719)**
                                                 11.   **PROMISSORY FRAUD**
21

22                                              **DEMAND FOR A JURY TRIAL**

23           Plaintiffs OVED ANTER, & FIRST INTERNATIONAL DIAMOND, INC., ("Plaintiffs")

24   hereby allege the following against defendants JONA S. RECHNITZ, RACHEL RECHNITZ,

25   ROBERT RECHNITZ,  LEVIN PRADO aka LEVON PRADO, and DOES 1-20 (collectively

26   "Defendants") as follows:

27

28

     D:\DATA\DOCS\RECHNITZ\FIRST INTERNATIONAL\COMPLAINT.wpd
     6/24-11:32am

## THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff OVED ANTER ("Anter") is an individual residing in Los Angeles County, State of California.

2. Plaintiff FIRST INTERNATIONAL DIAMOND, INC ("First International") is, and at all times mentioned was, a California corporation authorized to do business in the state of California, and maintains its principal place of business in the County of Los Angeles, State of California.

3. Defendant JONA S. RECHNITZ ("Jona") is an individual residing in Los Angeles County, State of California. Jona is also Rachel's husband and Robert's son.

4. Defendant RACHEL RECHNITZ ("Rachel") is an individual residing in Los Angeles County, State of California. Rachel is the managing member and promoter of Jadelle LLC and the Chief Executive Officer for Jadelle Inc. Rachel is also Jona's wife.

5. Defendant ROBERT RECHNITZ ("Robert") is an individual residing in Los Angeles County, State of California. Robert is Jona's father, and Jona, Rachel, and Robert are collectively referred to as the "Rechnitzes."

6. Jona and Rachel Rechnitz operate a jewelry business through two similarly named entities, Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein the Jadelle Entities, whose marquee client is the Kardashian family. Both Jona and Rachel Rechnitz promote and advertise political and powerful celebrity connections to create a false sense of credibility about themselves and their business, posting photos on their social media of Kylie Jenner and Kim Kardashian.

7. On information and belief, the frauds committed by Jona were committed with Rachel's knowledge and ratification, making her personally liable. Without Rachel setting up the entities for Jona to commit the frauds, and Jona's lying to steal Anter's Consigned Jewelry, none of the below referenced offenses could have occurred.

8. On 6-16-2020, the United State Bankruptcy Court for the Central District of California entered an order for relief under Chapter 7 of the Bankruptcy Code approving the involuntary chapter 7 bankruptcy proceeding of the Rechnitz's company Jadelle Jewelry

EXHIBIT "7", PAGE 158

1    and Diamonds, LLC, a Delaware limited liability company, Jadelle Jewelry, LLC, and

2    Jadelle Inc., a California corporation, USBC # 2:20-bk-13530-BR. See, "*Corrupt de Blasio*

3    *donor Jona Rechnitz's alleged victims trying to force him into bankruptcy*"

4    (https://nypost.com/2020/04/07/de-blasio-donor-jona-rechnitzs-alleged-victims-trying-to-b

5    ankrupt-him/), and "*Creditors File Petition to Put Jadelle Jewelry in Bankruptcy*"

6    (https://www.jckonline.com/editorial-article/jadelle-jewelry-bankruptcy/).  Presently,

7    Plaintiffs are currently stayed from pursuing the Jadelle entities in this Court by virtue of

8    the automatic stay of bankruptcy (11 U.S. Code § 362). Anter will be filing claims against

9    the Jadelle entities debtors in the United States Bankruptcy Court.

10   9.    Non-party JADELLE JEWELRY AND DIAMONDS, LLC ("Jadelle LLC," collectively

11         with Jadelle Inc., the "Jadelle Entities") is a Delaware limited liability company qualified

12         to do business in California. Rachel is the managing member of Jadelle LLC.

13   10.   Non-party JADELLE JEWELRY, LLC,  ("Jadelle LLC," collectively with Jadelle Inc., the

14         "Jadelle Entities") is a California limited liability company qualified to do business in

15         California. Rachel is the managing member of Jadelle LLC.

16   11.   Non-party JADELLE INC. ("Jadelle Inc.") is a California corporation whose principle

17         office is in Beverly Hills and whose CEO, CFO, and Secretary is Rachel.

18   12.   Defendant LEVIN PRADO AKA LEVON PRADO ("Prado") is the agent for service of

19         process, controller, and check signer for the Jadelle Entities. It is alleged on information

20         and belief that Prado has a girlfriend named Xiomara Cortez at the Wells Fargo Bank

21         Beverly Hills branch who assisted him in furthering Jona's fraud by stopping payment on

22         checks and allowing numerous improper check transactions to occur on both of the Jadelle

23         Entities' accounts.

24   13.   Defendants DOES 1 through 20, inclusive, are persons or entities whose acts, activities,

25         misconduct, or omissions at all times material hereto make them jointly and severally

26         liable under the causes of action set forth herein. The true names and capacities of the Doe

27         defendants are presently unknown, but when ascertained, Plaintiffs will request leave of

28         the Court to amend the operative pleading to substitute their true names and capacities.

14. Plaintiffs are informed and believe, and so allege, that, at all times mentioned, each of the Defendants was the agent, servant, joint venturer, co-conspirator, and/or employee of some or all of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship and with the full permission and consent of such Defendants. Plaintiffs are informed and believe, and so allege, that each Defendant ratified, approved, and adopted as its own some or all of the acts of each of the other Defendants. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants materially aided in some or all of the violations of the other Defendants.

15. Plaintiffs are informed and believe, and so allege, that the Defendants are the alter egos of each other and there exists, and at all relevant times herein there existed, a unity of interest and ownership and control among the Defendants, such that any individuality and separateness among them has ceased to exist, and they are alter egos of each other, and thus one or more Defendants' business is nothing more than a shell, instrumentality, or conduit through which the remaining Defendants carry on certain of their business.

16. Venue is proper in this Court pursuant to California Code of Civil Procedure, §§ 395 et seq., because all events described in this Complaint took place within the jurisdictional boundaries of the Court. This Court has personal jurisdiction over Defendants because all have done and currently are doing business in the County of Los Angeles, State of California, and/or some or all of the Defendants reside within the County of Los Angeles.

**GENERAL ALLEGATIONS**

**JONA RECHNITZ'S BLAZING TRAIL OF PONZI SCHEME FRAUDS**

17. Jona is no stranger to fraud and Ponzi schemes defrauding and bilking innocent victims of millions of dollars. In fact, he is a criminal mastermind at it.

18. **$45,000,000.00 Ponzi Scheme**: Unbeknownst to Plaintiff, on 6-3-2019, Jona Rechnitz was sued in the United States Bankruptcy Court Southern District of New York (Manhattan), Adv. Case No, # 19-01236-jlg by Kenneth P. Silverman, Esq., the Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC, Chapter 7 Case No.: 17-11556 (JLG) on 35 counts of receiving fraudulent conveyances through an

EXHIBIT "7", PAGE 160

1     elaborate Ponzi scheme, pursuant to New York Debtor and Creditor Law §276, and (b)

2     pursuant to 11 U.S.C. §§550(a) and 551, 11 U.S.C. §548(a)(1)(A), and (b), 11 U.S.C.

3     §548(a)(1)(B), and (b),  totaling $45,000,000.00.

4     19.    **$12,000,000.00 Peralta Ponzi Scheme**: Unbeknownst to Plaintiff, Jona was the criminal

5            mastermind behind the "$12,000,000.00 Peralta Ponzi Scheme" charging rates of 125% per

6            annum and then claiming he thought it was legitimate business. *USA V. Hamlet Peralta*,

7            1:16-cr-00354-KBF-1. See, New York Times 9-8-2017 article, *Harlem Restaurateur Is*

8            *Sentenced to 5 Years for $12 Million Ponzi Scheme*, by Vivian Wang,

9            https://www.nytimes.com/2017/09/08/nyregion/hamlet-peralta-ponzi-police.html.

10    20.    **$80,000,000.00 Jason Nissen Ticket Ponzi Scheme**: Also unbeknownst to Plaintiff,

11           Plaintiff subsequently discovered that Jona was the criminal mastermind behind the

12           "$80,000,000.00 Jason Nissen Ticket Ponzi Scheme" where Nissen himself gave direct

13           evidence to the government that Jona Rechnitz was part of the Ponzi scheme which

14           defrauded investors of over $80 million with Rechnitz himself receiving over $10 million

15           in commissions including receiving over one million dollars post his cooperation

16           agreement paid directly to his AmEx account June 2016- Dec 2016. See, the 6-8-2017

17           NYT article, "*Star Witness in Corruption Cases Is Entangled in Unrelated Prosecution*"

18           by Alan Feuer,

19           https://www.nytimes.com/2017/06/08/nyregion/jona-rechnitz-witness-nypd-corruption-sca

20           ndal.html. The criminal case is *USA vs Jason Nissen*, 1:17-cr-00477-PAE-1; Nissen's

21           company National Events Holdings filed bankruptcy, In re: *National Events Holdings LLC*,

22           case number 11:17-bk-11556, in the U.S. Bankruptcy Court for the Southern District of

23           New York; One of the creditors Taly USA Holdings Inc, filed a parallel case against

24           Nissen in New York Supreme Court, claiming that Taly invested roughly $32 million with

25           Nissen and is still owed more than $16 million. The NY Supreme Court case is *Taly USA*

26           *Holdings Inc., et al. v. Jason Nissen*, et al., case number 652865/2017, in the Supreme

27           Court of the State of New York. Taly's complaint against Nissen also contains a major

28           bombshell that Jona Rechnitz is identified as a longtime recruiter for Nissen in a secretly

1    taped conversation between Nissen and several Taly executives, in which he confessed to

2    running National Events as a Ponzi scheme. Rechnitz is referred to as "John," "Joan" and

3    "Jonah" in the transcript, and that Nisen is talking about Jona Rechnitz.

4  21.    **USA vs. Jona Rechnitz, 1:16-cr-00389-AKH**: As detailed in his criminal case in NY,

5    entitled: *United States of America vs. Jona Rechnitz*, 1:16-cr-00389-AKH, before the

6    United States District Court Southern District of New York, Jona Rechnitz has an

7    extensive history of fraudulent conduct, a history highlighted at trial by both the

8    prosecution and defense. On direct examination, for example, the government elicited

9    testimony from Jona Rechnitz describing instances in which he had lied to law

10    enforcement officials, failed to report certain income, fostered illegal relationships with

11    members of the New York City Police Department, bribed New York police officers in

12    exchange for various illegal privileges, bribed New York politicians in order to secure

13    access and the promise of future benefits from said politicians and their staffs, violated

14    election laws by fundraising by way of "straw donors," procured a police chaplaincy

15    despite not having religious credentials, and solely for purposes of obtaining the prestige

16    and privileges associated with that title, and lied about owning certain properties in order

17    to impress others. Likewise, on cross examination, the defense elicited testimony from

18    Jona Rechnitz detailing instances in which Jona Rechnitz reported a $59,000 watch lost,

19    received proceeds from his insurance to cover the loss, found the watch, and did not notify

20    his insurance company, fraudulently obtained an insurance policy for his family, submitted

21    false documents in a firearm application, pretended to hold no interest in a real estate

22    property (when in fact he did hold an interest) to deceive the property's tenant in a

23    purchase negotiation, gave Christmas presents and jewelry to the family of a police officer

24    in exchange for a private police escort to the airport and a dedicated private lane in a

25    crowded tunnel, and had even invoked the fact that his grandparents were Holocaust

26    survivors to mislead FBI investigators in their investigation of his illegal relationships with

27    police officers. According to the Court's papers, Jona Rechnitz is "somebody who looked

28    out for himself above all costs, that Jona Rechnitz was always in it for Jona. That Jona

1    Rechnitz[, in] other words, was a creature of incentive."

2    22.    Jona's criminal biography begins back in 2013, when he was caught up in a federal probe

3           into corruption in the NYPD and the Bill de Blasio mayoral campaign. Not only did Jona

4           funnel money into the 2013 campaign and bribe police commanders, but he also admitted

5           to directing campaign donations to Mayor de Blasio in exchange for access to City Hall

6           and showering NYPD leaders with prostitutes and other bribes to cultivate them as allies.

7           Eventually, Jona pleaded guilty to charges of providing financial and personal benefits and

8           political contributions to public officials including law enforcement officials in exchange

9           for official action in March of 2017. On 6-6-2016, a sealed information was filed against

10          Jona for wire fraud, who then entered a guilty plea. On 3-15-2017, the information against

11          Jona was unsealed, and Jona was released on bond pursuant to release conditions imposed

12          by Judge Alvin K. Hellerstein. On 12-6-2019, Jona was sentenced to 10 months of custody,

13          and was granted release pending appeal. When asked about Jona, Mayor de Blasio called

14          him "*a liar and a felon*." Those words proved to be most accurate.

15   23.    Tellingly, among the mandatory conditions of Jona's release was that he not commit

16          another federal, state, or local crime.[1] Jona subsequently breached the court's condition

17          many times over.

18   24.    Indeed, Jona Rechnitz'z 10-21-2019 *Sentencing Memorandum* in his criminal case [Doc-

19          71] describes how Jona "***ultimately veered off a path of integrity and into a world where***

20          ***he was unable to distinguish between right and wrong.***"

21   25.    Jona Rechnitz'z 10-21-2019 *Sentencing Memorandum* contains Jona's 10-16-2019 letter to

22          Judge Hellerstein seeking a reduced sentence, Jona wrote the Court:

23          *Dear Judge Hellerstein:* **I am a felon. I am a criminal**. *I am the ONLY person to*
            *blame for that.* **I have caused tremendous pain and embarrassment to my family,**
24          **my religion, and to myself**. *There is no way to undo what's been done. It's*
            *permanent, and for that I am truly sorry to everyone hurt by my crimes and actions.*
25          *It eats me alive each and every day. When I wake up, when I go to sleep, it is*
            *always on my mind for the past 4 years.* **My actions harmed the people of New**

26

27          [1]A true and correct copy of Jona's 3-3-2020 *Judgement In a Criminal Case* in *United States*
     *of America vs. Jona Rechnitz*, 1:16-cr-00389-AKH is attached hereto as Exhibit "1" and is
28   incorporated herein by this reference.

D:\DATA\DOCS\RECHNITZ\FIRST INTERNATIONAL\COMPLAINT.wpd   -7-
6/24-11:32am

1      *York, The people of Correction Officers Benevolent Association, my friends, my
       family and my community. I will forever carry this burden, as I deserve to. I have
2      read of your Honor asking at various sentencings, why do good people do bad
       things? In my case, not assuming I'm a good person, I can answer this question.
3      Arrogance, greed, and insecurity. Arrogance. I felt I was above the law.* At this
       young age in my late 20's I was busy accepting honors at dinners and board
4      positions at prestigious institutions. **It got to my head**. *Greed. I wanted to gain
       contacts to grow my business, to make money and gain stature in the long run.*
5      *Insecurity. I wanted to gain popularity by my peers and become a big shot in my
       community and business circles.* [Emphasis added].

6
       ***Shame on me.*** *Finally, I couldn't wiggle my way out of this one. It changed my life
7      as I knew it forever. **As a supposed religious man, I have been a disgrace to my
       religion**. The only way to fix this is to make serving G-d my main focus for the
8      rest of my life. I try to every day. I have changed as a person religiously, through
       prayer, my public and private behavior, and I always stop and think before I'm
9      about to do something to see if it is something my parents, my family, and G-d
       would approve of.* [Emphasis added].

10
       *Your Honor, there are so many examples that I am omitting **as I don't want to
11     portray myself as the victim here. I caused a lot of pain and harm to others
       through my criminal activity and don't want to detract from that**. JONA*
12     *RECHNITZ.* [Emphasis added].[2]

13  26.    Jona Rechnitz'z 10-21-2019 *Sentencing Memorandum* contains his own father Robert's

14         10-21-2019 letter to Judge Hellerstein acknowledging his son Jona's sordid and fraudulent

15         past:

16         "I'm sorry to say that ***Jona by his acts, lost his integrity and acted hypocritically to
           his faith***. Notwithstanding his goodness and affinity for helping others, ***he crossed
17         the line that could never be reversed for the rest of his life***."

18         "***He continues to apologize to us and express his regret to this date. He carries
           the burden of shame for what he caused our family***."
19
20         "***It was unfair of me to allow Jona to take so many responsibilities upon himself
           without my guidance and involvement***."

21         "I believe that is another good lesson for Jona to learn. ***You don't wear religion on
           your sleeve you wear it in your heart. How you act from one person to another
22         reflects who you are***."

23         "***The move*** (back to Los Angeles) ***has done them well and Jona is building a new
           business. He lives with the shame and the pain of what he did and what he
24         caused to others***."[3]

25
       _____

26         [2]A true and correct copy of Jona's 10-16-2019 letter to Judge Hellerstein seeking a reduced
       sentence [Doc-71-1, filed 10-21-12019, Pages 64-67 of 92] is attached hereto as Exhibit "2" and is
27     incorporated herein by this reference.

28         [3]A true and correct copy of Robert Rechnitz's 10-21-2019 letter to Judge Hellerstein seeking
       a reduced sentence is attached hereto as Exhibit "3" and is incorporated herein by this reference.

27. Jona Rechnitz'z 10-21-2019 *Sentencing Memorandum* claims that he recognized the shamefulness of his conduct:

> "*[T]his [the conduct] is something that of course disgusts me looking back on it now*."

> "*Jona writes that he feels shame for his crimes, that it "eats me alive each and every day," and is "always on my mind for the past 4 years*." App. Ex. 19, Jona Rechnitz Letter at 1. He goes on to write that "*[a]s a supposed religious man, I have been a disgrace to my religion*." Id. at 2. He has learned that "*doing the right thing isn't always the easiest, but it is the only choice," and is resolved to continue doing the right thing for his family and his community*. Id. at 2, 4. *He now reflects before acting, "to see if it is something my parents, my family, and G-d would approve of*." Id. at 2. Rachel, who has been at his side throughout, writes that "I can see that my husband has become a much better, humble, more open and truthful person," who is "much more involved as a father and as a husband," has "*revamped his priorities*," and has exhibited "*dramatic changes*" for the better since resolving to cooperate with the Government. App. Ex. 21, Rachel Rechnitz Ltr. at 1. The Government also has witnessed Jona's shame and remorse: "*Rechnitz's expressions of regret and embarrassment that he lost his footing on a moral level square with sentiments that he has expressed to us during his prep sessions, and in a fashion that we credit*." 5K1.1 Motion at 47.

> Footnote: "*Jona's repentance is also demonstrated by his renewed dedication to his family*. Jona writes that the highlight of his week "used to be sitting in the NYPD Headquarters like a big Macher," but today, "my highlight is walking to Synagogue with my children every week, and I let them know it every time we walk." App. Ex 19, Jona Rechnitz Ltr. at 3. Rachel also attests to Jona's renewed focus on the family, writing that *Jona "has become a much better, humble, more open and truthful person*," and is now "much more involved as a father and as a husband." App. Ex. 21, Rachel Rechnitz Ltr. at 1."

> "*Jona writes of the "disgusting feeling" he had waking up each morning during his testimony in the trials, sometimes for a week and a half straight*. App. Ex. 19, Jona Rechnitz Ltr. at 2. Moreover, the decision to cooperate fundamentally altered the story of his life in a way that a private and quiet plea of guilty never would have. Formerly a fixture of the Upper West Side Jewish community, with leadership roles in his children's school and his synagogue, *he has now been forced to retreat to his hometown, living close to his parents in Los Angeles, in fear of being accosted on the street by friends of the men he cooperated against*. And formerly unknown to the public, *he is now known in New York as a "rat" and a "snitch," whose every embarrassing episode has been reported in the tabloid press, no matter how insignificant*."

28. Jona Rechnitz'z 10-21-2019 *Sentencing Memorandum* further claims that he endured a "*torrent of scorn, abuse and public shame, and downright intimidation*" from the Westside Jewish Community of NY, because he was branded a "rat" a "snitch" and a "*Moser*" (Hebrew for someone who informs on a fellow Jew resulting in criminal prosecution).

"*To escape shunning and harassment that he received in New York as a result of his outing as a cooperating witness, Jona moved to Los Angeles in June 2017.*"

"*Jona was forbidden from being called up to the Torah and was asked to step down from organizations he had helped build and support. He went from being the most sought after guest to being literally shunned and even yelled at by acquaintances.*"

"*If he dared enter a restaurant to order dinner, pictures quickly circulated of him, demeaning him as if he had no right to live.*"

"*Jona could not go anywhere without receiving a dirty look or a malicious comment.*"

29. On 12-19-19, as reported in the New York Times, *'Liar,' and Star Witness in City Graft Cases, Gets 10-Month Sentence*"

(https://www.nytimes.com/2019/12/19/nyregion/jona-rechnitz-corruption-sentencing.html)

Jona was sentenced to five months in prison and five months of house arrest, followed by three years on parole, apologized to Judge Alvin K. Hellerstein for his criminal and immoral behavior, and asked the judge for leniency at his sentencing hearing.

"*I've been a real fraud to God, a fraud to my wife and family, a fraud as an American, a fraud as a businessman, and a fraud to the people of New York, namely, the hard-working COBA members, and I'm truly sorry for that. My actions have hurt many people, and I'm very sorry for that. I continue to pay for my mistakes on a daily basis.* [Emphasis added].

"*While living in New York City, I wrongly felt pressure to become a bigshot. I was working for one of the largest real restate companies in 2007, and it got to my head. I was in my late 20's, and big people in the real estate industry were dealing with me. My ego was big, and I so badly wanted to impress these people in order to advance my career and profile. This is where things started to spiral out of control. This is where I went so off the rails for a number of years. I assure your Honor that these past years and the experience I've gone through has changed me. I will never act that way again.*" [Emphasis added].

"*I've been a big hypocrite to my religion. I failed to conduct myself properly between myself and my fellow man and between myself and my relationship with God. I have strayed. I did all of these horrible things without worrying about God or the consequences that come with this sort of behavior. I cannot express to your Honor how ashamed I am for desecrating my religion. I have and will continue to repent to God every single day. I have and continued to make amends. Part of my efforts to make right included cooperating as a first step. I have a lot more work to do.*" [Emphasis added].

"*This is one of several jobs that I have in the coming months as I continue to sort out my life in a lawful path. In fact, I will spend the rest of my life trying to make amends for my criminal behavior. I will try to make a better name for my family, for my religion, and for myself. I am on the path to recovery, your Honor. I am a*

EXHIBIT "7", PAGE 166

*better family man; I am a better friend; I am a more religious person. I am working again to make an honest living."* [Emphasis added].

"THE COURT: What is the new business? Jadelle?

"Jadelle, yes. I really paid a hefty price for cooperating with the government for my crimes. Most recently, the New York Post put up an article that was mentioned this morning -- your Honor may not be aware – accusing me of hobnobbing and flirting with the rich and famous at a time when I claim I am a pariah to society. In fact, Jadelle Jewelery hosted a jewelery show to promote the brand and new jewelry collection. The event was to make sales and increase business. One attendee was a Kim Kardashian, a client of Jadelle."

"Within my community, within the media, and through self-introspection. In New York City, I am persona non grata. I am to blame. *I burnt a lot of bridges and relationships and had to relocate to California. I am so truly sorry for my behavior. I am a changed man...*"

*"I don't see any way to start over a third time. I'm on my second chance...*"

"THE COURT: ... And yet in the life that's been depicted in this court, *he cheapens people. He works on their insecurities and their quest for material possessions and just does the opposite. He diminishes people...*"[4]

30. Jona made numerous false statements to the federal sentencing judge because by 12-19-2019, Jona's frauds against Plaintiffs (below) were well under way. Jona Rechnitz perjured himself by testifying to his compliance with the cooperation agreement's bar against further criminality, while concurrently "intending, planning, and/or perpetrating new frauds," as evidenced by his frauds committed against Plaintiffs and other defrauded creditors. In fact, while Jona was telling Judge Hellerstein how he was a changed man, he was fleecing Plaintiffs and other innocent parties. Jona simply had no compunction about lying to a federal judge or his handlers at the United States Attorney's Office. The only reason Jona is not behind bars (yet) is that he has no formal pre-trial officer as his supervision is in the hands of New York prosecutors. Thus, Jona has been allowed to run free to ravage Plaintiffs with impunity and without consequences to himself.

31. On information and belief, rather than atone for his past crimes, Jona (along with his wife Rachel through Jadelle), have continued to further defraud innocent parties, such as Plaintiffs. They also have employed a legion of lawyers as part of their collective effort to

---

[4] A true and correct copy of the relevant portions of the transcript of Jona's 12-19-2019 Sentencing Hearing is attached hereto as Exhibit "4" and is incorporated herein by this reference.

1  illegally "lull" victims into sitting on their rights, hoping to gain tactical advantages in

2  litigation and allowing more time for the Rechnitz's to further transfer and conceal assets.

3  32.  One of the primary reasons for documenting Jona's criminal and fraudulent activities with

4  specificity and by the attachments to this Complaint is  to properly expose his fraud and to

5  preempt the "spin" that he and his family will inevitably spin to the community of his

6  innocence and that he is unfairly being pursued. Jona's house of fraudulent cards needs to

7  be exposed. "*The only thing necessary for the triumph of evil is for good men to do*

8  *nothing*." (Edmund Burke, in a letter addressed to Thomas Mercer). Abuse thrives in a

9  culture of silence. Additionally, the backdrop of Jona's crimes and fraudulent history is

10  relevant to the Rechnitz's fraudulent personal guaranties of $12,000,000.00 to Plaintiffs at

11  a time that they were hopelessly in debt and had no financial wherewithal to pay it.

**PLAINTIFF AND JONA RECHNITZ/JADELLE**

13  33.  During this time, Plaintiffs consigned large amounts of diamonds and jewelry to Jadelle

14  and Jona Rechnitz, not aware of his sordid fraudulent past.

15  34.  In 3-6-2019, Plaintiffs recorded and perfected a UCC Financing Statement, Document

16  Number: 77246760002, Filing Number: 19-7700745484, to secure:

17  "All property, Goods and merchandise which have been, are now, or may at any
   time be delivered on consignment consigned or entrusted by First International to
18  Jadelle Jewelry and Diamonds LLC, including without limitation, diamonds,
   gemstones and other precious and semi-precious jewelery, rings, bracelets and all
19  other property, goods and merchandise in which diamonds, gemstones, precious or
   semi-precious metals or stones are processed, mounted, included or converted and
20  any accessory items, and the proceeds (including without limitation, insurance
   proceeds and proceeds from sale or other disposition)and receivables arising there
21  from, wheresoever located, future consignment and deliveries are covered. As
   related to or connected with the property described above, all accounts, accounts
22  receivables, other receivables, contract rights, chattel paper, general intangibles,
   whether now owned or hereafter acquired by the debtor or in which the debtor may
23  now or hereafter acquire an interest and proceeds from all the foregoing. This
   financing statement covers consignments made by secured party to any of the
24  debtor's affiliated companies, stores or DBAs wherever located."[5]  [Emphasis
   added]

25

26  35.  This UCC Financing Statement confirmed the consignment relationship and created for

27       [5]A true and correct copy of First International's 3-6-2019, *UCC Financing Statement*,
   Document Number: 77246760002, Filing Number: 19-7700745484 to Jadelle  is attached hereto as
28  Exhibit "5" and is incorporated herein by this reference.

1   Plaintiffs an enforceable security interest in the consigned jewelry that are still in Jadelle's

2   possession, and created a "purchase-money security interest" in the consigned goods. That

3   means that Jadelle's debts owed to Plaintiffs has higher priority for payment than Jadelle's

4   other debts, and puts Plaintiffs ahead of any other secured creditors in relation to the

5   consigned jewelry. Plaintiffs' perfected security interest entails "putting the world on

6   notice" of its security interest, informing prospective lenders, and existing lenders, that the

7   consigned jewelry is collateral for Jadelle's debt to Plaintiffs.

8   36.   On 6-25-2019, Jona & Robert Rechnitz personally guaranteed up to $12,000,000.00 debt to

9   Plaintiffs. Their 6-25-2019 Personal Guaranty reads as follows:

10  *Dear Oved / First International Diamonds Inc., I very much enjoyed speaking to you by phone. Jona has shared some of your conversations with me. Thank you for being a confidant for Jona. He mentioned to me about how your Father had a special bond and relationship with you. I was also privileged to have a close relationship with my Father, as did Jona. I'm sure you will find much success in your dealings together. I completely understand your desire to know that Jona's family is aware of his dealings with you and stands behind him. **I am pleased to**

11

12

13  **confirm that I stand behind Jona and all his dealing with you**. *You have indicated that you have extended memos up to the amount of $12,000,000.00. If for some reason you need to callback your credit line, all merchandise will be returned to you, *__and any cash deficiencies will be repaid by me.__*. May your confidence in Jona and your extension of credit be profitable for both of you.*

14

15

16  BOBBY RECHNITZ / CC: JONA RECHNITZ [Emphasis added] [6]

17  37.   Jona personally handed this Personal Guaranty letter to Anter several days after Robert

18  orally promised to personally guaranty Jona's debts to Plaintiffs, while all three were

19  meeting at Pat's Kosher Restaurant on Pico Boulevard.

20  38.   What is absolutely fascinating is the pathology here: on the one hand, on 6-25-2019,

21  Robert lulled Anter into the $12,000,00.00 Personal Guaranty, ***"pleased to stand behind***

22  ***Jona and all of his dealings***," while 90 days later, on 10-21-2019, Robert described his

23  son Jona as a man who ***"lost his integrity and acted hypocritically to his faith***."

24  39.   On 6-25-19 at 16:22:18, Jona Whatsapp texted Plaintiff Oved Anter - confirming Robert's

25  Personal Guaranty:

26

27  _____

    [6]A true and correct copy of Jona & Robert Rechnitz's 6-25-2019 Personal Guaranty of up to

28  $12,000,000.00 in debt to Plaintiffs is attached hereto as Exhibit "6" and is incorporated herein by this reference.

D:\DATA\DOCS\RECHNITZ\FIRST INTERNATIONAL\COMPLAINT.wpd  -13-
6/24-11:32am

*"It's good to know **I'm worth 12mm to my Dad** not 10mm lol.*" [Emphasis added].

40.     On 6-27-2019, Jona & Rachel Rechnitz jointly and severally personally guaranteed up to $12,000,000.00 to Plaintiffs and specifically represented that their personal guaranty was to **induce** Plaintiffs to enter into the Consignment Memos below as follows.

> Guarantor is financially interested in Consignee and **in order to induce Consigner to enter into those certain jewelry memos for diamonds and jewelry, on consignment**, in the approximate amount of Twelve Million Dollars ($12,000,000), at wholesale, between Consigner and Consignee (the "Jewelry Memos"), and Guarantor is willing to enter into this Guaranty.

> 1. Guaranty. **In order to induce Consigner to enter into the Jewelry Memos**, Guarantor unconditionally, absolutely. and irrevocably guarantees and promises to Consigner full and complete payment and/or performance by Consignee in the event that: (I) Consigner calls back the consigned goods. (2) there is a theft of goods, (3) the goods arc lost in shipment or transit (4) the goods arc damaged, or (5) in the event that Consignee has filed a p1mding insurance claim for the consigned goods and there is a shortage owing to Consigner from any insurance settlement proceeds. Consigner shall notify in writing to Consignee that it requires Consignee's payment and/or performance and within 60 (sixty) business days from notice, Consignee is required to make such payment and/or performance. If the goods are damaged, Consignee agrees to repair the consigned goods to the original condition in which it was received by Consignee. If Consignee is awaiting insurance settlement proceeds for any loss/damage to the consigned goods, then payment is due from Consignee to Consigner within 60 (sixty) business days from Cons.igner's notice of any shortage between the wholesale amount listed in the Jewdry Memo and the insurance proceeds received by Consignee. Items (1)-(5) above shall hereinafter be referred as the "Guaranteed Items."[7]

41.     On 7-3-19 at 21:58:14 Jona Whatsapp texted Anter again, confirming the UCC Financing Statement and the Personal Guaranties:

> "*OK also I filled out the application so Monday let's go through it I am away until Monday I will come see you Monday I will take care of that and I will get the application filled out with you. No worries.* **In meantime you have UCC. My Dad guarantee in writing. My guarantee. My wife. Everything and the legal document that's owns me. I want you to feel protected and will make it happen.**" [Emphasis added].

42.     On 12-13-2019 and on 12-31-2019, and relying on the Personal Guarantees of Jona, Rachel and Robert, Plaintiff First International consigned to Jadelle & Jona $2,826,890,00 worth of the following seven pieces of jewelry (the "Consigned Jewelry"):

---

[7]A true and correct copy of Jona & Rachel Rechnitz's 6-27-2019 Personal Guaranty of up to $12,000,000.00 in debt to Plaintiffs is attached hereto as Exhibit "7" and is incorporated herein by this reference.

| Date | Memo # | Item | Cost |
|------|--------|------|------|
| 12-13-2019 | Memo #8415 | 5 rows PR 27.48 ct, 370 diamonds | $36,225.00 [8] |
| 12-30-2019 | Memo #8431 | 13. 62 PS D-VVSl GIA, Harry Winston Mt/tr | $1,200,000.00 |
| 12-30-2019 | Memo #8431 | RD E IF 11923922166 | $907,715.00 [9] |
| 12-31-2019 | | 8.05 j vs2 emerald cut ring with 2 side stones | $163,565.00 |
| 12-31-2019 | | 7.01 g vs1 square emerald cut ring with 2 side stones | $193,970.00 |
| 12-31-2019 | | 6.86 I vs1 emerald cut ring with 2 side stones | $138,915.00 |
| 12-31-2019 | | 31.86 ct ascher cut bracelet | $186,500.00 |
| TOTAL | | | $2,826,890,00 |

43.     Prior to 12-13-2019 and on 12-31-2019, and thereafter, Jona repeatedly represented to

Anter that he had a buyer and sold the two pieces of Consigned Jewelry: (1) the 13 62 PS

D-VVSl GIA, Harry Winston Mt/tr ($1,200,000.00); and (2) DIAM RD E IF 11923922166

($907,715.00) and was awaiting receipt of payment from his "client"and the rest remained

in his possession on consignment.

44.     On 1-2-2020 at 11:52:42am, Jona texted Anter confirming that he would not release

Anter's merchandise to Jona's buyer until Anter would get paid.

**Jona Rechnitz**: Please confirm the following agreement: 1) you're my lunch date
every Friday. That's the day we review the goods on hand every week and settle up
bills. 2) *I am authorized to ship the 3 emerald cut rings and Ascher bracelet to
Loren ridinger my client in miami*. Anything she buys will be paid next Friday
anything she doesn't buy is back in my office next week. 3) the Harry Winston 13ct
and 10ct eif *are both in my possession* and I'm busy with the stones through next
Wednesday. Next Wednesday *they will be returned wherever you instruct me. If
they are sold I will collect payment before releasing them and pay you first*.  4) I
will see your stupid movie next week with YOU.  5) this is our understanding that
we will both stick to and I look forward to doing good healthy business together

---

[8]A true and correct copy of the 12-13-2019 Consignment Memorandum # 8415,  for
$36,225.00 to Jadelle is attached hereto as Exhibit "8" and is incorporated herein by this reference.

[9]A true and correct copy of the 12-30-2019 Consignment Memorandum # 8431, for
$2,107,715.00 ($1,200,000.00 + $907,715.00) to Jadelle is attached hereto as Exhibit "9" and is
incorporated herein by this reference.

1    this year. [Emphasis added].

2    **Oved Anter**: Deal

3    **Jona Rechnitz**: Deal and we are never discussing this type of stuff ever again won't need to and won't.

4

5    45.    Notwithstanding Jona Rechnitz's promise of 1-2-2020, not to release Plaintiffs'

merchandise to Jadelle/Jona's buyer until Plaintiffs would get paid, on 1-15-2020 - 1-24-

6

2020, Jona Rechnitz on behalf of Jadelle, texted Anter, admitting that he gave Plaintiffs'

7

merchandise away, and then lulled Anter with stories back and forth about his mother

8

being ill, and how he will still pay Anter (while lengthy, the text transcript provides insight

9

into Jona's pathological lying, his mind-games and manipulation of Plaintiff):

10

| | |
|---|---|
| [1/15/20, 02:53:03] Oved Anter: | All good , you ? |
| [1/15/20, 08:11:47] Jona Rechnitz: | 70%. Hoping wire hits today of it was sent Sunday afternoon should arrive this afternoon I think. Bank said can take up to 3-5 days |
| [1/15/20, 08:16:33]   Oved Anter: | Never heard 3 to 5 days for a wire from Absolutely nonsense |
| [1/15/20, 08:16:43] Oved Anter: | Wire is a press of a button |
| [1/15/20, 08:17:22] Oved Anter: | Please call me when you're able to, hope you're feeling better |
| [1/15/20, 08:17:37] Jona Rechnitz: | ***It should hit today I think let's see*** |
| [1/15/20, 08:21:22] Oved Anter: | Please call Biton if you don't mind |
| [1/15/20, 08:21:29] Oved Anter: | By 10 |
| [1/15/20, 08:21:36] Oved Anter: | How do you feel |
| [1/15/20, 08:22:54] Jona Rechnitz: | Not great will call now |
| [1/15/20, 08:40:03] Oved Anter: | Gm, I need huge favor my daughter SHIRA needs  a live in, Hers is leaving in a few days going back to her country, please help if you know any |
| [1/15/20, 08:41:42] Jona Rechnitz: | Ok |
| [1/15/20, 12:34:39] Oved Anter: | FYI spoke to Helen Dayan to double Check myself, why from Israel comes in the next day, please let me know what's going on |
| [1/15/20, 12:59:08] Jona Rechnitz: | ***I am sure it will hit tomorrow*** |
| [1/15/20, 15:47:55] Oved Anter: | ***Did you ship the Emeralds back*** |
| [1/15/20, 15:49:29] Jona Rechnitz: | Yes |
| [1/15/20, 15:50:03] Oved Anter: | Thanks, did she keep anything |
| [1/15/20, 18:49:03] Oved Anter: | Call me |
| [1/15/20, 19:07:31] Jona Rechnitz: | Missed voice call |
| [1/15/20, 19:07:50] Jona Rechnitz: | Missed voice call |
| [1/15/20, 19:07:58] Jona Rechnitz: | Tried you back. |
| [1/15/20, 19:08:02] Jona Rechnitz: | School event |
| [1/15/20, 19:08:07] Jona Rechnitz: | Talk tomorrow am |
| [1/15/20, 19:14:34] Oved Anter: | Ok |
| [1/15/20, 19:17:38] Jona Rechnitz: | Around 10 or earlier |
| [1/15/20, 19:21:53] Oved Anter: | Sorry was on the other line , wil speak am , I really need to have you wire am so I can take care of certain obligations |

| | | |
|---|---|---|
| 1 | [1/15/20, 19:23:39] Jona Rechnitz: | *If wire hits as it should you'll get it* |
| | [1/15/20, 19:24:19] Jona Rechnitz: | *If it doesn't we will call them and see what's going* |
| 2 | | *on but I believe it will hit - ever since my sentencing my bank has been very slow ok international wires* |
| 3 | [1/15/20, 19:24:24] Jona Rechnitz: | Happened last week too |
| | [1/15/20, 19:25:02] Oved Anter: | *There is no if you were not supposed to let go of* |
| 4 | | *merchandise until we get paid* |
| | [1/15/20, 19:25:52] Jona Rechnitz: | What |
| 5 | [1/15/20, 19:26:19] Jona Rechnitz: | *I closed deal told you Mazal asked for invoices and finalized deal with you* |
| 6 | [1/15/20, 19:26:29] Jona Rechnitz: | *I gave them the stones* |
| | [1/15/20, 19:26:36] Jona Rechnitz: | These are people I know very well |
| 7 | [1/15/20, 19:26:39] Jona Rechnitz: | *I guarantee it* |
| | [1/15/20, 19:26:58] Oved Anter: | *Yeah but we have an agreement that you don't* |
| 8 | | *release Merch until we get Paid* |
| | [1/15/20, 19:27:08] Oved Anter: | I appreciate it guarantees will you be able to cough |
| 9 | | up the money |
| | [1/15/20, 19:27:13] Jona Rechnitz: | Yes |
| 10 | [1/15/20, 19:28:09] Oved Anter: | Ok because I really need to get paid tomorrow |
| | [1/15/20, 19:28:36] Jona Rechnitz: | *1) wire comes in you get paid 2) I get the stones* |
| 11 | | *back if issue 3) I pay you don't get stiffed. Only 3 options. I don't foresee any issue. I have sold them* |
| 12 | | *before. Never had any problem whatsoever. And after they pay they need the certificates and I also* |
| 13 | | *need invoices reflective of our prices we agreed upon.* |
| 14 | [1/15/20, 19:28:58] Jona Rechnitz: | *If they pay me tomorrow it is not able to wire until next day you know that. Pending and not useable* |
| 15 | | *until overnight* |
| 16 | [1/15/20, 19:29:03] Jona Rechnitz: | I want to be very clear |
| | [1/15/20, 19:29:13] Jona Rechnitz: | I can give a check if their Wire arrives |
| 17 | [1/15/20, 19:30:18] Oved Anter: | What happens if the wire does not arrive |
| | [1/15/20, 19:30:45] Oved Anter: | If it's not in your account tomorrow that means it was not sent |
| 18 | [1/15/20, 19:31:00] Oved Anter: | It was sent on Sunday as you said the latest would have been in your account on Tuesday |
| 19 | [1/15/20, 19:31:06] Jona Rechnitz: | Anyway we will talk tomorrow |
| | [1/15/20, 19:31:46] Jona Rechnitz: | Ok done guessing. It's eating me alive. *They told me* |
| 20 | | *they sent it.* International wired take few days always for me. Sometimes 5 days. Check it out yourself. |
| 21 | | Wells Fargo |
| | [1/15/20, 19:32:03] Oved Anter: | Does not |
| 22 | [1/15/20, 19:32:30] Jona Rechnitz: | I'm not arguing |
| | [1/15/20, 19:32:57] Jona Rechnitz: | It's been 3 days |
| 23 | [1/15/20, 19:33:08] Jona Rechnitz: | I expect and hope it comes tomorrow |
| | [1/15/20, 19:33:11] Jona Rechnitz: | That's all |
| 24 | [1/15/20, 19:34:08] Jona Rechnitz: | If you need me to undo this deal tell me I can't deal with the pressure every time I sell something. Or |
| 25 | | Let's just see what happens tomorrow |
| | [1/16/20, 09:28:57] Jona Rechnitz: | *Sent bank the swift* they see it coming in today you |
| 26 | | were right will be in touch once it hits |
| | [1/16/20, 09:29:04] Jona Rechnitz: | Going to shul |
| 27 | [1/16/20, 09:32:50] Oved Anter: | So I don't understand what you're saying *they are saying that it coming in* |
| 28 | [1/16/20, 09:34:43] Jona Rechnitz: | *Yes* |

| | | |
|---|---|---|
| [1/16/20, 09:34:48] Jona Rechnitz: | ***They tracked it*** |
| [1/16/20, 09:35:15] Oved Anter: | Good , so can you send me a check before noon please |
| [1/16/20, 09:35:56] Jona Rechnitz: | No |
| [1/16/20, 09:36:13] Jona Rechnitz: | When funds hit my account I will let you know then wire you |
| [1/16/20, 09:36:21] Jona Rechnitz: | ***I'm not writing a check for money I don't have yet*** |
| [1/16/20, 09:36:40] Jona Rechnitz: | And not writing a check and being pressured like this. Money will hit then I will wire |
| [1/16/20, 09:37:05] Oved Anter: | OK let me know when it hits II'd rather have a wire anyway |
| [1/16/20, 09:37:13] Jona Rechnitz: | Ok |
| [1/16/20, 10:53:48] Jona Rechnitz: | I keep checking account. Will update you |
| [1/16/20, 14:10:22] Oved Anter: | I just want to confirm you received the money and I will have it tomorrow for sure by 10 AM a wire to me |
| [1/16/20, 14:17:09] Jona Rechnitz: | ***I told you you'll have it wired tomorrow morning already*** |
| [1/16/20, 14:19:23] Oved Anter: | OK and don't be a bitch please to me |
| [1/17/20, 00:13:33] Jona Rechnitz: | Please send me total amounts in The morning for both payments and I need invoices as well thx Shirin can send the invoices anytime  but please make sure I have them for my records |
| [1/17/20, 07:49:37] Oved Anter: | Call me please |
| [1/17/20, 08:53:35] Oved Anter: | ? |
| [1/17/20, 09:14:36] Jona Rechnitz: | Missed voice call |
| [1/17/20, 09:15:21] Jona Rechnitz: | Missed voice call |
| [1/17/20, 09:30:44] Oved Anter: | Can shirin pick up the check from your office at 10:30 so she can take it downtown |
| [1/17/20, 09:32:00] Oved Anter: | Or f he can bring to my office by 10:30 |
| [1/17/20, 09:34:13] Jona Rechnitz: | ***It will be done on next hour or so*** |
| [1/17/20, 09:59:33] Oved Anter: | ShirahS maid just quit I need help urgent if you know anyone or can ask around |
| [1/17/20, 10:17:28] Oved Anter: | Are the ec back |
| [1/17/20, 10:19:15] Jona Rechnitz: | I'll ask |
| [1/17/20, 10:19:33] Jona Rechnitz: | She's choosing over weekend and sending for Monday |
| [1/17/20, 10:19:36] Jona Rechnitz: | She's taking 1 |
| [1/17/20, 10:20:07] Oved Anter: | I thought you said she Past I need the one that she doesn't want for sure right away please |
| [1/17/20, 10:20:33] Oved Anter: | That's ridiculous |
| [1/17/20, 10:24:22] Jona Rechnitz: | I can never please you. It's not ever enough. I can't deal this way. I didn't tell you in with my. Other don't say a word paramedics were here. So I'm not in the mood. My siblings don't know. She had blood clot. Please. |
| [1/17/20, 10:24:36] Jona Rechnitz: | This message was deleted. |
| [1/17/20, 10:25:20] Oved Anter: | I explained to the urgency to why I need the money in my account today and you said you were in the morning, you're not doing it, I need check immediately so I can send somebody downtown so they can clear it for me as soon as possible, I'm sorry about this but that does not stop you guys from signing a check |
| [1/17/20, 10:25:50] Jona Rechnitz: | What are you talking about!!!!!!! |

| | | |
|---|---|---|
| 1 | [1/17/20, 10:25:53] Oved Anter: | You told me you gave him instructions yesterday |
| | [1/17/20, 10:25:54] Jona Rechnitz: | *I said it's on way to you* |
| 2 | [1/17/20, 10:25:58] Jona Rechnitz: | Stop it oved |
| | [1/17/20, 10:26:04] Jona Rechnitz: | This is ridiculous!!!!!! |
| 3 | [1/17/20, 10:37:41] Jona Rechnitz: | Watch the video of my mother! Don't tell anyone. |
| | | *Checks are on the way to you*. We will talk before |
| 4 | | shabbos if everything is ok on my end - Oved if you |
| | | really love me like I think you Then read our texts |
| 5 | | again and you will understand how I feel |
| | [1/17/20, 10:38:11] Oved Anter: | What video |
| 6 | [1/17/20, 10:38:27] Jona Rechnitz: | My mother I sent you !! |
| | [1/17/20, 10:38:40] Oved Anter: | I didn't realize it's your mom |
| 7 | [1/17/20, 10:38:40] Jona Rechnitz: | I texted you dealing with emergency with paramedics |
| | | and my mother blood clot |
| 8 | [1/17/20, 10:38:58] Oved Anter: | You already use that excuse a few days ago with |
| | | somebody else |
| 9 | [1/17/20, 10:39:03] Jona Rechnitz: | Yes yesterday |
| | [1/17/20, 10:39:09] Jona Rechnitz: | It happened |
| 10 | [1/17/20, 10:39:12] Jona Rechnitz: | I'm woth her |
| | [1/17/20, 10:39:17] Jona Rechnitz: | R u serious?????? |
| 11 | [1/17/20, 10:39:55] Jona Rechnitz: | You're not embarrassed right now. I'm with her now |
| | | I can't believe you |
| 12 | [1/17/20, 10:40:02] Jona Rechnitz: | I don't need any excuses! |
| | [1/17/20, 10:40:07] Jona Rechnitz: | *I sent your checks!!!!!* |
| 13 | [1/17/20, 10:40:18] Jona Rechnitz: | Why are you pressuring me like this it's ridiculous |
| | [1/17/20, 10:42:18] Oved Anter: | I explained it to you last night and you're putting me |
| 14 | | in an extremely bad predicament if the monies not |
| | | there on Monday |
| 15 | [1/17/20, 10:42:18] Oved Anter: | And I thought you understood that's why I was happy |
| | | you wiring me before 10 o'clock today as you said |
| 16 | | before |
| | [1/17/20, 10:42:18] Oved Anter: | And now I'm not sure it's going to be cleared on time |
| 17 | [1/17/20, 10:44:10] Jona Rechnitz: | *I told you that checks on way to you momentarily*. |
| | | This is extremely unpleasant. I'm don't texting you |
| 18 | | now. Everything is my fault. Shabbat Shalom |
| | [1/20/20, 05:48:53] Oved Anter: | Gm , please make sure I will get the ec rings latest |
| 19 | | tomorrow |
| | [1/20/20, 09:28:39] Oved Anter: | Let me know if you got the message, and call meet |
| 20 | | and talk today please |
| | [1/20/20, 10:10:22] Jona Rechnitz: | Message Received. Not working today with family |
| 21 | | kids off from school |
| | [1/20/20, 10:11:58] Oved Anter: | Ok thank you |
| 22 | [1/20/20, 10:17:50] Oved Anter: | *Please make sure the ec are here tomorrow please* |
| | [1/20/20, 10:21:42] Jona Rechnitz: | *Ok* |
| 23 | [1/20/20, 22:13:30] Jona Rechnitz: | Good night. Sorry for my sensitivity and attitude |
| | | lately. I've been going through a lot personally and in |
| 24 | | my family. You know I feel very close to you. Good |
| | | night. |
| 25 | [1/21/20, 13:39:07] Oved Anter: | Call me |
| | [1/21/20, 14:49:23] Oved Anter: | I need the ec |
| 26 | [1/21/20, 14:51:08] Jona Rechnitz: | *Tomorrow you'll have it. So sorry*. |
| | [1/21/20, 14:55:16] Oved Anter: | Ok thank you |
| 27 | [1/22/20, 11:28:32] Oved Anter: | Before I go nuts please send me now whatever |
| | | leftovers you have with you, but now |
| 28 | [1/22/20, 11:28:52] Oved Anter: | Whatever amount it is |

| | | |
|---|---|---|
| [1/22/20, 11:31:46] Jona Rechnitz: | *Ok* |
| [1/22/20, 11:37:17] Jona Rechnitz: | *Oved please give me until tomorrow to get your items back and returned safely. Please I beg you keep this between us and give me until tomorrow.* |
| [1/22/20, 11:37:56] Jona Rechnitz: | *I'm working with my family now to get it please bottom of my heart* |
| [1/22/20, 11:38:15] Oved Anter: | *Send what you have now , I will hold off till tomorrow and will talk about rest* |
| [1/22/20, 11:38:18] Jona Rechnitz: | I'm not well but have big heart for you and helped your family when o could please help me |
| [1/22/20, 11:38:20] Jona Rechnitz: | Thx |
| [1/22/20, 11:38:21] Jona Rechnitz: | Ok |
| [1/22/20, 13:01:06] Oved Anter: | You also have 5 rows bracelet with princess cut |
| [1/22/20, 13:32:29] Oved Anter: | Do you have the 18 ct fy |
| [1/22/20, 13:34:41] Jona Rechnitz: | The yellow I returned to you? |
| [1/22/20, 13:35:03] Jona Rechnitz: | I never took it back |
| [1/22/20, 13:42:44] Oved Anter: | Sorry you're right |
| [1/22/20, 14:57:09] Jona Rechnitz: | *You know I really do love you and that's why I helped you from my heart with Andrew and other things. I feel so close to you and I'm trying to get this all resolved now. Just know you mean a lot to me.* |
| [1/22/20, 14:59:26] Oved Anter: | Thank you Jona and it's same here , stay strong for your kids and parents, try to resolve this with help of your cousin, when the fog goes away let's sit down and figure out..... |
| [1/22/20, 15:00:16] Jona Rechnitz: | Ok thx |
| [1/22/20, 15:04:02] Oved Anter: | Are you still there |
| [1/22/20, 15:07:16] Jona Rechnitz: | Ya |
| [1/22/20, 15:07:44] Oved Anter: | Ok let me know when done and update please |
| [1/22/20, 15:08:05] Jona Rechnitz: | Ok |
| [1/22/20, 16:57:45] Jona Rechnitz: | In a meeting |
| [1/22/20, 16:58:06] Oved Anter: | Ok call me when done |
| [1/22/20, 21:19:59] Oved Anter: | Hi , what's new |
| [1/22/20, 21:39:52] Jona Rechnitz: | *Will have good news hopefully tomorrow just finished meeting* |
| [1/22/20, 21:41:23] Oved Anter: | Ok good , really wishing you good |
| [1/22/20, 21:43:14] Jona Rechnitz: | I know thx |
| [1/23/20, 08:56:56] Oved Anter: | Gm,Give me a call when you have a chance please |
| [1/23/20, 09:09:11] Jona Rechnitz: | *Please give me a few hours everything is safe and being resolved* |
| [1/23/20, 09:09:27] Jona Rechnitz: | *I really wish you kept this to yourself. Please continue.* |
| [1/23/20, 09:09:46] Oved Anter: | Ok np But call me because I want to ask you a couple of questions |
| [1/23/20, 10:15:36] Oved Anter: | Come give me a hug and I have to run to the doctors I'm downstairs |
| [1/23/20, 19:29:51] Oved Anter: | Sorry Forgot your charger in my pocket |
| [1/23/20, 19:31:01] Jona Rechnitz: | Missed voice call |
| [1/23/20, 19:33:05] Jona Rechnitz: | Enjoy it. It's the best |
| [1/24/20, 08:37:24] Oved Anter: | Call me please |
| [1/24/20, 08:37:34] Jona Rechnitz: | 30 min ok? |
| [1/24/20, 08:37:41] Oved Anter: | Yes |
| [1/24/20, 08:57:26] Jona Rechnitz: | imma.pdf • 1 page document omitted |
| [1/24/20, 08:57:49] Jona Rechnitz: | IMMA INTERNATIONAL INVOICE.pdf • 1 page |

|   | document omitted |
| --- | --- |
| [1/24/20, 15:17:03] Jona Rechnitz: | Shabbat Shalom thank you |
| [1/24/20, 15:17:12] Jona Rechnitz: | You're a true friend and great person |
| [1/24/20, 15:17:43] Oved Anter: | Shabbat shalom , I think it was on the text to text that to you |
| [1/24/20, 15:17:58] Oved Anter: | Relax and enjoy Shabbat |
| [1/24/20, 15:18:10] Oved Anter: | My finger was on the text |
| [1/24/20, 15:39:24] Jona Rechnitz: | You're more than a friend and mentsch |
| [1/24/20, 15:39:35] Jona Rechnitz: | You may have saved my life |
| [1/24/20, 15:57:42] Oved Anter: | Thank you |
| [1/24/20, 15:58:12] Oved Anter: | Now shut the phone   Shabbat shalom [Emphasis added]. |

46.  On 1-17-2020 Jona issued two checks to First International totaling $2,122,760.00: (1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00.  Both checks were NSF at the time of tender. Both checks were NSF at the time of tender, in violation of the California Civil Code § 1719 and the California Penal Code §476a.[10]

47.  On information and belief, Jona's representations to Anter were false, in that he had no intention or financial wherewithal to honor his $12,000,000.00 personal guaranty, he had no intention of honoring the terms of the Consignment Memos, he did not have a buyer and did not sell Plaintiffs' Consigned Jewelry, and instead of reselling First International's two pieces of Consigned Jewelry and repaying Plaintiffs, and returning the rest that he held on consignment, Jona absconded with all pieces of Plaintiffs' Consigned Jewelry, and either pawned them off, or used them as collateral for loans to various lenders, and has not repaid Plaintiffs the $2,826,890,00. On information and belief, Jona liquidated Plaintiffs' Consigned Jewelry.

48.  On information and belief, at this same time, Jona Rechnitz on behalf of Jadelle defrauded other diamond dealers and insurance companies in Southern California, including but not limited to: Sotheby's, Leon Landver, Ben Adhoot, and Yehuda Gamzo, Oved Anter, Moti Klein, and Julius Klein. The amount of losses to these various parties is alleged to be over $30,000,000.00.  See, the NY Post: *"Ex-de Blasio crony used Kardashian ties for fraud*

---

[10]A true and correct copy of First International's 1-22-2020 Notice of Returned Item for: (1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00, totaling $2,122,760.00 is attached hereto as Exhibit "10" and is incorporated herein by this reference.

1    *scheme, lawsuit claims*,"

2    (https://nypost.com/2020/02/09/ex-de-blasio-crony-used-kardashian-ties-for-fraud-scheme-

3    lawsuit-claims/), and as reported in the 3-6-2020 article in JCK: *"The Troubling Case of*

4    *Jona Rechnitz"*

5    (https://www.jckonline.com/editorial-article/the-troubling-case-jona-rechnitz/), and as

6    reported in the 3-10-2020 NY Daily News article "*Corrupt Mayor de Blasio donor Jona*

7    *Rechnitz faces new FBI probe in L.A.: court papers*"

8    (https://www.nydailynews.com/new-york/ny-rechnitz-los-angeles-probe-20200310-nrzbb6

9    263nga3hkcyob2lw46wq-story.html).

10   49.    Since then, on 2-3-2020, Plaintiffs caused buyback payments to be made to Jona's lender

11          in order to mitigate their losses, and paid $440,000.00 to recover a package of the

12          following four pieces of jewelry (including Anter's 10.03 EIF Stone GIA #11923922166

13          (($907,715.00))(Jona's lender refused to sell Plaintiffs just the 10.03 EIF Stone GIA

14          #11923922166 and insisted that Plaintiffs buy the complete package of jewelry):

| Item | Unit Price |
|---|---|
| Diamond Bracelet 38.87ct TW | $125,000.00 |
| Eternity Band - Old Miners Cut 11. 70ct TW | $30,000.00 |
| Reverse Diamond Earrings 1.20ct0512 + 1. 08ct FDBGY + 1.22 ctES12 + 1.24 ctFDBGY (the DIAM RD E IF 11923922166) | $35,000.00 |
| 10.03 EIF Stone GIA #11923922166 | $250,000.00 |
| TOTAL | **$440,000.00** |

22   50.    In addition, on 2-3-2020, Plaintiffs caused buyback payments to be made to Jona's lender

23          in order to further mitigate their losses, and paid **$300,000.00** for:

| Item | Unit Price |
|---|---|
| 8.05 j vs2 emerald cut ring with 2 side stones | $163,565.00 |
| 7.01 g vs1 square emerald cut ring with 2 side stones | $193,970.00 |
| 6.86 I vs1 emerald cut ring with 2 side stones | $138,915.00 |

| | |
|---|---|
| 31.86 ct ascher cut bracelet | $186,500.00 |
| TOTAL | $682,950.00 |
| Plaintiffs' paid: | **$300,000.00** |

51.     Therefore, Jona's adjusted balance to Plaintiffs is as follows:

| Date | Memo # | Item | Cost |
|---|---|---|---|
| 12-13-2019 | Memo #8415 | 5 rows PR 27.48 ct, 370 diamonds | $36,225.00 |
| 12-30-2019 | Memo #8431 | 13. 62 PS D-VVSl GIA, Harry Winston Mt/tr | $1,200,000.00 |
| 12-30-2019 | Memo #8431 | *DIAM RD E IF 11923922166* | **$440,000.00** |
| | | *Diamond Bracelet 38.87ct TW* | |
| | | *Eternity Band - Old Miners Cut 11. 70ct TW* | |
| | | *10.03 EIF Stone GIA #11923922166* | |
| 12-31-2019 | | *8.05 j vs2 emerald cut ring with 2 side stones* | **$300,000.00** |
| 12-31-2019 | | *7.01 g vs1 square emerald cut ring with 2 side stones* | |
| 12-31-2019 | | *6.86 I vs1 emerald cut ring with 2 side stones* | |
| 12-31-2019 | | *31.86 ct ascher cut bracelet* | |
| TOTAL | | | **$1,976,225.00** |

52.     As Jona, Rachel & Robert all personally guaranteed Jadelle/Jona's debts up to

$12,000,000.00, they are all personally liable to Plaintiffs in the amount of $1,976,225.00.

53.     Further, and true to form, in a 17-day period, from 1-5-2020 - 1-22-2020, Jona (and Jadelle

and Prado) issued $13,372,760.00 of worthless checks to his defrauded creditors from

Jadelle's Wells Fargo Bank # 8649261313.

| Check # | Date | To | $ |
|---|---|---|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |

| 8817 | 1-14-2020 | Franco Noval | $2,500,000.00 |
| 8820 | 1-16-2020 | Franco Noval | $1,300,000.00 |
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| 8823 | 1-22-2020 | Franco Noval | $4,500,000.00 |
| Total NSF Checks issued by Jadelle/Jona to Plaintiffs, Marco & Noval | | | **$13,372,760.00** |

54.     On 1-17-2020 Jona Rechnitz (and Jadelle and Prado) issued two checks to First International totaling $2,122,760.00: (1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00. Both checks were NSF at the time of tender. Both checks were NSF at the time of tender, in violation of the California Civil Code § 1719 and the California Penal Code §476a.

| Check # | Date | To | $ |
| --- | --- | --- | --- |
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| Total NSF Checks issued by Jadelle/Jona to First International | | | **$2,122,760.00** |

55.     Based upon information and belief, defendant Prado, acting in concert with Jona, and to further his scheme, had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the checks, that Plaintiffs were going to deposit.

56.     During this entire time, Jona repeatedly lied to Plaintiffs about his intentions and abilities to honor the $12,000,000.00 Personal Guaranty, lied to Plaintiffs about honoring the terms of the Consignment Memos, lied to Plaintiffs that the deals with his clients were consummated, lulled, and attempted to fabricate one excuse after another to delay paying Plaintiffs, and hid the truth from Plaintiffs through stonewalling and lies. Repeated demands have been made to Jona to return the Consigned Jewelry and/or to pay the balance. Instead, Jona, took numerous steps to lull Plaintiffs into a false sense of security to buy more time, and to keep this matter secret via phone calls and WhatsApp texts.

57.     On 1-30-2020 at 11:35am, Jona introduced Anter to an attorney at Williams & Cohen

1      about the Rechnitz family's proposed bailout to pay Plaintiffs in full:

2        *"Oved meet Reuven. Reuven oved is a vendor I owe and used his goods for loans.*
3        **He has been the single biggest force in helping keep people calm.** *He needs to hear from you in order to continue please. Thank you."* [Emphasis added].

4   58.   On 2-4-2020 at 2:06:00, Jona wrote Anter about how his family is trying to bail him out:

5        *"I gave your email address. Late tonight you will get an email from the lawyer in charge of this for me. So you have someone communicating besides me to get this situation resolved that you can be in touch with. Please confirm receipt of this message.*

7   59.   That night, on 2-4-2020 at 9:40pm, attorneys from Williams & Cohen wrote Plaintiffs
8      about the purported bailout:

9
10        *"We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it. If you are represented by counsel, please let us know and provide your counsel's contact information. Our client's desire is to resolve this matter amicably."*[11]

13   60.   Meanwhile, on 2-10-2020, as reported in the NY Post: *"Ex-de Blasio crony used*
14      *Kardashian ties for fraud scheme, lawsuit claims*,"
15
16      (https://nypost.com/2020/02/09/ex-de-blasio-crony-used-kardashian-ties-for-fraud-scheme-
17      lawsuit-claims/), and as reported in the 3-6-2020 article in JCK: *"The Troubling Case of*
18      *Jona Rechnitz*"
19      (https://www.jckonline.com/editorial-article/the-troubling-case-jona-rechnitz/), and as
20      reported in the 3-10-2020 NY Daily News article "*Corrupt Mayor de Blasio donor Jona*
21      *Rechnitz faces new FBI probe in L.A.: court papers*"
22      (https://www.nydailynews.com/new-york/ny-rechnitz-los-angeles-probe-20200310-nrzbb6
23      263nga3hkcyob2lw46wq-story.html), one of Jona's recently defrauded victims filed a
24      lawsuit entitled: *Victor Franco Norval vs Jona S. Rechnitz, Rachel Rechnitz, Jadelle Inc., a*
25      *California Corporation; Jadelle Jewelry and Diamonds, LLC, a Delaware Limited*
26      *Liability Company; Levin Prado Aka Levon Prado, an Xiomara Cortez*, LASC #

---

27
28      [11]A true and correct copy of the 2-4-2020 lulling letter from Williams & Cohen is attached hereto as Exhibit "11" and is incorporated herein by this reference.

1    20SMCV00216, for (1) Fraud (2) Civil Theft (Penal Code, § 496), (3) Breach of Contract,

2    (4) Conspiracy to Commit Theft, Fraud, and Fraud by Concealment, (5) Appointment of

3    Receiver seeking damages of $7,000,000.00.

4    61.   And then on 2-20-2020, as reported in the NY Post "*De Blasio donor Jona Rechnitz*

5    *accused of $1M scam in California*,"

6    (https://nypost.com/2020/02/28/de-blasio-donor-jona-rechnitz-accused-of-1m-scam-in-cali

7    fornia/) another one of Jona's defrauded victims filed a lawsuit entitled: *Israel Sam*

8    *Gorodistian vs. Jadelle Jewelry and Diamonds, LLC, a Delaware Limited Liability*

9    *Company; Jadelle Inc., a California Corporation; Jona Rechnitz, Rachel Rechnitz, Robert*

10   *Rechnitz*, LASC # 20STCV07425, for 1. Conversion; 2. Civil Theft (Pen. Code § 496); 3.

11   Fraud – False Promise; 4. Negligent Misrepresentation; 5. Civil Conspiracy to Defraud; 6.

12   Breach of Oral Contract (2 Counts); 7. Breach of Implied-in-fact Contract (2 Counts); 8.

13   Money Lent; 9. Account Stated; and 10. Breach of Written Guaranty seeking damages of

14   $1,659,333.33.

15   62.   On 3-9-2020, and unaware of the extent of Robert's involvement, Plaintiffs' counsel

16   Baruch Cohen ("Cohen") reached out to the Cohen-Williams firm purportedly representing

17   Jona's cousin, in the interests of avoiding this litigation, inquiring as to the status of the

18   proposed bailout of Jona. Was it happening or not, and if so, when? Cohen's clients needed

19   to know whether they will be suing Jona and Robert or not (hopefully not).

20                          **RACHEL RECHNITZ'S CULPABILITY**

21   63.   On information and belief, it cannot be said that Rachel is an "innocent" spouse. Rachel

22   knew of, participated in some level, and endorsed Jona's frauds. She is the managing

23   member of Jadelle LLC, the Chief Executive Officer for Jadelle Inc., and the sole

24   officer/member of both. She knowingly ceded complete control over Jadelle's finances to

25   her felon partner husband Jona (and Prado) who were not corporate officers, and who had

26   no corporate authority, on her/Jadelle's behalf, stealing millions of dollars from Plaintiffs

27   (and others), and issued millions of dollars in knowingly bad checks. She promoted Jadelle

28   at trade shows and on her website for Jadelle. She has been paying off Jona's defrauded

1    creditors through her Paypal and personal bank accounts. Simply stated, Jona and Rachel

2    (and Jadelle) are one and the same, Jadelle is nothing more than a conduit through which

3    Jona and Rachel continue to operate their criminal enterprise.

4    64.   On information and belief, what appeared, at first glance, to be a successful jewelry

5          company was, as it tuns out, a complete sham. In truth, Jadelle was a mere front for Jona

6          and Rachel to run their fraudulent enterprise and for Jona to continue his trail of fraud that

7          has followed him from New York to California. By incorporating Jadelle back in

8          December 2017, Rachel (and Jona) Rechnitz created through Jadelle the perfect vehicle for

9          theft for themselves and those fortunate enough to benefit from their transgressions. Even

10         after Jona pled guilty to fraud charges in New York, Jona traveled back to Los Angeles

11         where he engaged in a massive $30,000,000.00 fraud to enrich themselves and others at the

12         expense of reputable local businessman like Plaintiffs who trusted them, thinking Jona was

13         immune from prosecution due to the plea deal he struck with New York prosecutors.

14   65.   On information and belief, Jona and Rachel Rechnitz, Jadelle's insiders have sacrificed

15         whatever assets the company may have once had leading to it's collapse, in a quest to not

16         only enrich themselves, but the numerous other insiders and parties who have received

17         illicit and improper transfers.

18   66.   On information and belief, rather than atone for his past crimes, Jona (along with Rachel),

19         have continued to use Jadelle as a front to further defraud innocent parties, such as

20         Plaintiffs, and employed a legion of lawyers as part of their collective effort to illegally

21         "lull" victims into sitting on their rights, hoping to gain tactical advantages in litigation and

22         allowing more time for the Rechnitz's and Jadelle to further transfer and conceal assets.

23   67.   Rachel and Jona Rechnitz (and Jadelle) have directed numerous "lulling letters" in

24         furtherance of their scheme to defraud Plaintiffs and other creditors. A lulling letter is

25         "designed to lull the victims into a false sense of security, postpone their ultimate

26         complaint to the authorities, and therefore make apprehension of the defendants less

27         likely." *United States v. Manarite*, 44 F.3d 1407, 1412 (9th Cir. 1995) (quoting *United*

28         *States v. Shaw*, 97 F.3d 1463 (9th Cir. 1996). Most specifically, these lulling letters display

1     the collective intent of the Rechnitz's and Jadelle to defraud Plaintiffs and other creditors.

2  68.  On information and belief, Rachel had knowledge of Jona's fraudulent and malicious acts,

3     ratified, adopted, and/or approved them, assented and acquiesced to them (respondeat

4     superior), and failed to disavow them in a reasonable time. She retained the benefits of her

5     felon partner husband Jona's fraudulent acts by living an exorbitant lifestyle Rachel

6     certainly benefitted from Jona's frauds as she was living off her exorbitant and lavish life-

7     style from stolen funds and was living off the fat of the land at the expense of defrauded

8     creditors and Plaintiffs. In Rechnitz's criminal matter the Court observed that the

9     Rechnitz's living expenses were exorbitant, they had no salary, and were using $35,000 to

10    $50,000 a month (or more) in personal loans from Jadelle to cover their living expenses,

11    which: "***show[ed] a degree of lavishness that is hard to understand in relationship to***

12    ***[Rechnitz's] debts," including, $17,000 per month in rent and $5,000 in groceries and***

13    ***supplies***. Further, in the Gorodistian matter, it was reported that Rechnitz was able to

14    provide a ***$400,000 2012 Bugatti sports car and $7,000,000 in diamonds*** as collateral for

15    loans from Victor Norval totaling $5,800,000." [Emphasis added].

16 69.  On information and belief, Rachel certainly knew of her partner husband's frauds. She

17    certainly knew of Jona's: **$45,000,000.00** Ponzi Scheme Debt; **$12,000,000.00** Peralta

18    Ponzi Scheme; **$80,000,000.00** Jason Nissen Ticket Ponzi Scheme; **$19,000,000.00**

19    criminal restitution order - totaling **$156,000,000.00** of financial devastation and fraud to

20    innocent victims, knew of Jona's criminal past that he pled guilty, etc. She certainly knew

21    of Jona's other debt of $307,481.28 in the matter of *American Express National Bank vs*

22    *Jona S Rechnitz*, LASC # 19STCV29830, that he stipulated to a judgment for $295,058.15,

23    for a total of **$156,295,058.15** in debt.

24 70.  While marriage to Jona or merely owning Jadelle is an inappropriate basis in and of itself

25    for imputing Rachel's fraud, her knowledge of his massive frauds concurrent with her

26    participation in the use or enjoyment of the misappropriated stolen property and funds

27    confers liability on her for fraud.

28

**JONA AND ROBERT RECHNITZ's $12,000,000.00 PERSONAL GUARANTY**

71.    On information and belief, Jona personally ingratiated himself to Anter, as an Orthodox Jewish diamond dealer, leading Anter to believe that Jona was more trustworthy than others because of his Orthodox faith and belief in Jewish law (and common Orthodox Jewish friends in and out of the Diamond industry), which requires honesty and maximum integrity. These types of internal community relationships such as the Orthodox Jewish diamond community create a vulnerability for affinity fraud to be perpetuated. Jona targeted Anter exploiting his standing in, and knowledge of, the customs and practices of this community to further his fraudulent scheme. This type of illegal activity is commonly referred to as "affinity fraud," and refers to scams that prey upon members of identifiable groups, such as religious or ethnic communities, the elderly, or professional groups. The perpetrators of affinity fraud scams, like Jona, frequently are, or pretend to be, members of the group, and they exploit the trust and friendship that exist in groups of people who have something in common. The conventional thinking is that the religious man doing business with you is unlikely to ruthlessly rip you off.

72.    On information and belief, Jona and his father Robert Rechnitz's ("Robert") *modus operandi* is as follows: Robert would meet Anter at Pat's Kosher Restaurant on Pico, endearing Anter with old school charm warmth & friendship to place him at ease, while Jona would defraud and steal from him. Then, once Jona's fraud was discovered by his victims (including Anter), Robert was there officially trying to clean up Jona's messes, further lulling the defrauded creditors (including Anter), with promises of bailouts, putting his friendships with Jona's victims on the line so-to-speak, in the unspoken understanding that an action against Jona would be tantamount to an action against Robert. The two acted in tandem like a tag-team to further defraud Anter and other victims.

73.    On the one hand, it is laudable for a loving parent to come to the aid of their child in distress, no matter what. On the other hand, in this case, Anter believes that Robert's involvement was too interwoven with Jona's criminal actions to be innocent or laudable. For example, throughout their relationship, Jona constantly brought his father Robert into

the conversations and transactions portraying him to Anter as the moral authority and the one overseeing and coaching Jona's affairs, who's presence conferred legitimacy on Jona's wild bragging and transactions, who appeared at the epicenter whenever Jona's frauds were discovered by his victims (including Anter).

74. On 3-6-19 at 13:11:48, Jona texted Plaintiffs, dropping Robert's family connection to Anter to induce him to do business with him:

"*That's my wife. **By the way my father knows you he used to give free space on La Brea to RABBI Dweck. Bobby.***" [Emphasis added].

75. On 4-3-19 at 18:00:56 Jona texted Anter an invitation to come to a lavish party citing Robert as one of the inducements for Anter to come, creating a false sense of credibility about himself and his business:

"*I need you and your wife to come to dinner tomorrow night at the Waldorf Astoria one of my biggest clients gave $10 million to the aids foundation I had to buy a table very expensive one I want to fill the seats **my dad will be there too**.*" [Emphasis added].

76. On 6-25-2019, Robert signed a personal Guaranty to Plaintiffs assuring them that Robert "***stand(s) behind Jona and all his dealings***..." [Emphasis added] (a strange and bizarre comment for Robert to make at a time when Jona was being criminally prosecuted in New York).

77. On 7-8-19 at 11:50:24, Jona texted Anter asking him to come to a meeting to partner with his father:

"*Also **can my father join us for lunch** I wanted to get to know you a little bit and **I think we have a good real estate deal to do together**" and then at 15:21:12, Jona texted Anter: "**My dad** has a meeting **I asked him to include you** he said let's go see it tomorrow and talk tomorrow.*" [Emphasis added].

78. On 8-8-19 at 15:24:03 and at 15:24:12, Jona texted Anter of his father's coaching:

"***My Dad is a nice guy** doesn't talk when ppl owe him ?? lee. Yossi. **But keeps getting mad I talk to you too much**.*" [Emphasis added].

79. On 9-20-19 at 10:32:16, Jona texted Plaintiffs about his father's religious practices:

"*And my family **just my father** does the blessing and then after he does a blessing of course they go up to the mother as well just to give her a hug and say Shabbat shalom.*" [Emphasis added].

80. Indeed, and as stated above, Robert Rechnitz's 10-21-2019 letter to Judge Hellerstein

reveals the true nature of his son's frauds - and of his oversight:

"*It was unfair of me to allow Jona to take so many responsibilities upon himself without my guidance and involvement*."

The upshot of his letter is, that now that Jona Rechnitz has returned to Los Angeles, his father Robert is now involved and guided him in his actions.

81.     On information and belief, and parenthetically, Robert was recently placed into an involuntary bankruptcy/receivership by his creditor ITOR 116 SF LLC in Israel, Case # 27255-09-18 for debts in excess of approximately 9,500,000.00 shekel ($2,600,000.00 dollars) ("*Receiving order against businessman Robert Rechnitz, who is close to Netanyahu*" http://www.calcalist.co.il//articles/0,7340,L-3803076,00.html) but the Israeli bankruptcy does not stay Plaintiffs' claims against him in this country.

## ROBERT & RACHEL'S RECHNITZ'S $12,000,000.00 PERSONAL GUARANTY

82.     Again, on 6-25-2019, Jona & Robert Rechnitz personally guaranteed up to $12,000,000.00 debt to Plaintffs, and on 6-27-2019, Jona & Rachel Rechnitz personally guaranteed up to $12,000,000.00 to Plaintiffs..

83.     Robert's 6-25-2019 Personal Guaranty reads as follows:

*Dear Oved / First International Diamonds Inc., I very much enjoyed speaking to you by phone. Jona has shared some of your conversations with me. Thank you for being a confidant for Jona. He mentioned to me about how your Father had a special bond and relationship with you. I was also privileged to have a close relationship with my Father, as did Jona. I'm sure you will find much success in your dealings together. I completely understand your desire to know that Jona's family is aware of his dealings with you and stands behind him. **I am pleased to confirm that I stand behind Jona and all his dealing with you**. **You have indicated that you have extended memos up to the amount of $12,000,000.00. If for some reason you need to callback your credit line, all merchandise will be returned to you, <u>and any cash deficiencies will be repaid by me.</u>** . May your confidence in Jona and your extension of credit be profitable for both of you.*
BOBBY RECHNITZ / CC: JONA RECHNITZ [Emphasis added]

84.     Jona personally handed Robert's Personal Guaranty letter to Anter several days after Robert orally promised to personally guaranty Jona's debts to Plaintiffs, while all three were meeting at Pat's Kosher Restaurant on Pico Boulevard.

85.     In hindsight, the question that now vexes Plaintiffs is how (or why) on 6-25-2019 did Robert and Jona, and on 6-27-2019 did Robert and Rachel personally guaranty Plaintiffs'

EXHIBIT "7", PAGE 187

1    $12,000,000.00 debts when they already knew of Jona's: **$45,000,000.00** Ponzi Scheme

2    Debt; **$12,000,000.00** Peralta Ponzi Scheme; **$80,000,000.00** Jason Nissen Ticket Ponzi

3    Scheme; **$19,000,000.00** criminal restitution order - totaling **$156,000,000.00** of financial

4    devastation and fraud to innocent victims, knew of Jona's criminal past that he pled guilty,

5    etc. Certainly Robert & Rachel knew of Jona's other debt of $307,481.28 in the matter of

6    *American Express National Bank vs Jona S Rechnitz*, LASC # 19STCV29830, that he

7    stipulated to a judgment for $295,058.15, for a total of **$156,295,058.15** in debt. With

8    hindsight being 20/20, it appears that Robert and Rachel were standing behind all of Jona's

9    frauds, and ratifying them.

10   86.   In further hindsight, the question that further vexes Plaintiffs is how (or why) on 6-25-2019

11         did Robert personally guaranty up to $12,000,000.00 of Jona's debts to Plaintiffs, when

12         Robert was already deeply in debt as of that date? On information and belief, Robert did

13         not have the financial wherewithal on 6-25-2019 to personally guaranty $12,000,000.00 to

14         Plaintiffs in case Jona defaulted. Based on the recent Israeli involuntary bankruptcy that

15         was filed against Robert, the petitioning creditor ITOR 116 SF LLC sued Robert on 9-13-

16         2013 for fraud and breach of contract, LASC # BC521311, and obtained a $2,655,280.40

17         judgment against him on 12-30-2015, which was unpaid, forcing ITOR 116 SF LLC to

18         recently apply to the Israeli courts to seize Robert's home in Jerusalem through the Israeli

19         bankruptcy proceeding.

20   87.   Thus, it appears that Robert and Rachel (and Jona) had absolutely no legitimate basis to

21         personally guarantee Jona's $12,000,000.00 debts to Plaintiffs and lacked the financial

22         wherewithal to personally guaranty them. Hence, Robert and Rachel are liable to Plaintiffs

23         for not only breach of the Personal Guaranty, but also for fraud, promissory fraud, and

24         conspiracy to defraud.

25   88.   On 3-9-2020, and yet still unaware of the extent of Robert's involvement in Jona's

26         criminal affairs, Cohen extended a professional courtesy to Robert to inform him that

27         Cohen had been retained by (Peter Marco, who was introduced to Cohen by Robert's son

28         Jona) and by Plaintiffs to sue Jona and Robert, inquiring (hoping) that the bailout was

imminent, to avoid the litigation. Cohen told Robert that he personally preferred ***not*** to have to sue Robert, as both pray at the same synagogue in Hancock Park and have known each other for years. Cohen acknowledged that Robert attempted to help Cohen in the past and was gracious in Cohen's time of need, as Cohen was to Robert's. Cohen made it clear that he took no joy in prosecuting this case, as Cohen personally agonized over it for over a month ever since his clients were being pursued by their vendors because of Jona's fraudulent actions. But, Cohen explained, that Jona placed Cohen's clients in a terrible predicament exposing them to millions of dollars of damages from their vendors, and the scope of Jona's perfidy and betrayal was so breathtaking, overwhelming and devastating, that Cohen's clients absolutely insisted that Cohen protect their interests. While Cohen did not expect Robert to be pleased with this decision, as their attorney, Cohen owed them a 100% duty and must represent their interests.

89. Cohen initially explained to Robert the basis of the cause of action for Breach of Written Guaranty against him is the 6-25-2019 letter that appears to be written by Robert, and signed by Robert and Jona, personally guarantying up to $12,000,000.00 to Plaintiffs. Surprisingly, Robert emphatically denied to Cohen that he ever signed a personal guaranty to Plaintiffs. Cohen told Robert that he has the signed personal guaranty in his file and Robert repeatedly denied it.

90. 3-10-2020 was the Jewish holiday of Purim, and Robert approached Cohen in synagogue that night acknowledging the professional courtesy extended to him, and asked to speak to Cohen under the guise and pretext of wanting to talk about "nothing legal, just as friends." Cohen reiterated the above, and Robert repeatedly denied personally guaranteeing the debts to Plaintiffs.

91. Robert's denial that he personally guaranteeing the debts to Anter was indeed curious, as Cohen had a copy of Robert's 6-25-2019 Personal Guaranty in his file. So, what was Cohen to make of Robert's denials? Was he involved with Jona's frauds, or was he not? If indeed, Robert did not sign the Personal Guaranty to Anter (as he previously confirmed to Anter) then that would mean that Jona forged his own father's name to Robert's 6-25-2019

1    Personal Guaranty to Anter, and shamelessly exploited Anter's trust and his father's name,

2    using a doctored document to continue to commit crimes while out on bail.

3    92.   On 3-10-2020 at approximately 10:00pm that night, Jona resumed and resorted to his

4          criminal behavior and called Marco, livid that Cohen is "going after his family and his

5          father" threatening him and Anter that unless he receives a letter from Marco and Anter

6          that they will be firing Cohen as their attorney, that Jona will engage in an all out war,

7          "destroy" "rip apart" and "mess and fuck Cohen good" with the State Bar (claiming to

8          have texts that Cohen was his lawyer creating a conflict of interest), and report Anter

9          criminally. Jona repeated his bogus pledge that his cousin is still working on bailing him

10         out to make Marco whole within one week, but that it was conditional on them firing

11         Cohen. Jona brazenly assured Marco that his role as one of the single most important and

12         prolific white collar cooperating witnesses in the recent history of the Southern District of

13         New York, with his working closely with the FBI as an informant, along with the fact that

14         he only received 10 months custody time with 5 months house arrest, that since the FBI

15         needs him as an informant so badly in the New York case that they would never do

16         anything to him no matter what he did, making him immune from any further prosecution

17         (mistakenly believing that this provides him some kind of ill-conceived immunity from

18         committing criminal acts of fraud and extortion in California [ie., Penal Code 518]). [See,

19         the NY Daily News 4-15-2020 article "*Mayor de Blasio donor Jona Rechnitz boasted of*

20         *FBI ties to scammed diamond dealer: suit*"

21         (https://www.nydailynews.com/new-york/ny-rechnitz-diamond-dealer-suit-20200415-olvc

22         wcmkzfeuljb7olc4xwmtwy-story.html)]. Tragically, Jona learned nothing from his life of

23         crime and resorted to his old tricks of extortion and blackmail, and if anything, has become

24         emboldened by it.

25    93.   In said late night conversation, Jona immediately conferenced-in his father Robert into the

26         late night conversation under the guise and pretext of wanting to talk about "nothing legal,

27         just as friends" (the same ploy as with Cohen).

28    94.   Obviously, whatever good will Cohen was prepared to extend to Robert disintegrated by

1        Jona's extortion call and Robert's convenient joinder late that night.

2   95.    After Jona finished threatening Marco, Cohen and Anter, Jona texted Marco at 10:55pm a

3        veiled confirmation of the conversation:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



96. As to Jona's threats to report Cohen to the State Bar, Jona merely introduced Cohen to Peter Marco and nothing more. Jona was never Cohen's client, and Cohen was never Jona's lawyer, as evidenced by Jona's texts to Cohen.





EXHIBIT "7", PAGE 193

97.  Obviously, by this lawsuit, Cohen is not resigning and will remain counsel of record for plaintiffs, and he and Plaintiffs will not be scared away or intimidated by Jona's criminal threats of extortion.

98.  As reported in the 2-12-2020 NY Post article "*DeBlasio Donor Jona Rechnitz Used Kardashian Ties to Further His Schemes*" (http://thejewishvoice.com/2020/02/deblasio-donor-jona-rechnitz-used-kardashian-ties-to-further-his-schemes/) and in the 4-15-2020 NY Post article "*Jona Rechnitz headed for self destruction like Adam Sandler in 'Uncut Gems': suit*" (https://nypost.com/2020/04/15/jona-rechnitz-headed-for-self-destruction-like-adam-sandler-in-uncut-gems-suit/) Jona Rechnitz's dark dealings is eerily similar of the character Howard Ratner, played by actor Adam Sandler, in the 2019 film "Uncut Gems," of a charismatic debt-ridden gambling addict, a wheeling, dealing, greedy Jewish diamond dealer, scheming, ripping people off, swearing and making bold plays to try and advance his own life, clearly headed toward self-destruction.

## FIRST CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION & FRAUD

(*On behalf of Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz*)

99.  Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

100.  The foregoing representations made by Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz, and Levin Prado were false when they were made, and Defendants knew the representations to be false. Defendants did not intend to comply with the promises and representations when they were made.

101.  Specifically, Jona made the following misrepresentations to Plaintiffs:

    a.    On 6-25-2019, Jona (and Robert Rechnitz)) personally guaranteed Plaintiff's $12,000,000.00 in debt, at a time when Jona was in at least **$156,295,058.15** in debt and had no possible way of honoring that promise.

    b.    On 6-27-2019, Jona (and Rachel Rechnitz) personally guaranteed Plaintiff's

1 $12,000,000.00 in debt, at a time when Jona was in at least **$156,295,058.15** in

2 debt and had no possible way of honoring that promise. Their 6-27-2019 Personal

3 Guaranty included the following representations:

4   i.  That Jona (and Jadelle) accepted Plaintiffs' Consigned Jewelry for

5     inspection purposes only,

6   ii.  That Plaintiffs' Consigned Jewelry shall remain in the name of Plaintiffs

7     (and not in Jona & Jadelle's names),

8   iii.  That Jona  (and Jadelle) would return Plaintiffs' Consigned Jewelry upon

9     Plaintiff's demand,

10   iv.  That Jona  (and Jadelle) would return Plaintiffs' Consigned Jewelry to

11     Plaintiff in good condition,

12   v.  That if Jona  (and Jadelle) failed to return Plaintiffs' Consigned Jewelry

13     upon demand, then Jona (and Jadelle, Rachel & Robert) would pay

14     Plaintiffs $2,107,715.00 and $36,225.00.

15   vi.  That Jona (and Jadelle, Rachel & Robert) would liable to Plaintiffs for any

16     loss or damage to Plaintiffs' Consigned Jewelry resulting from fire, theft,

17     breakage, or any other cause whatsoever,

18   vii.  That Jona (and Jadelle, Rachel & Robert) immediately named Plaintiffs as

19     an additional insured on any and all applicable insurance policies with

20     respect to Plaintiffs' Consigned Jewelry.

21  c. On 7-3-19 at 21:58:14 Jona Whatsapp texted Plaintiffs confirming the

22  representations made in the UCC Financing Statement and the Personal Guaranties

23  were valid and that Plaintiffs were 'protected.'

24  d. Prior to 12-13-2019 and on 12-30-2019, and thereafter, Jona Rechnitz repeatedly

25  represented to Plaintiffs: (1) that he had a buyer, (2) that he sold the two pieces of

26  Plaintiffs' Consigned Jewelry to said buyer, (3) that he was awaiting receipt of

27  payment from said buyer, & (4) that the rest of Plaintiffs' Consigned Jewelry

28  remained in his possession on consignment.

e.   On 12-13-2019 and on 12-30-2019, Jona represented to Plaintiffs that he would pay Plaintiffs $2,107,715.00 and $36,225.00.

f.   On 1-2-2020 at 11:52:42am, Jona texted Anter confirming that he would not release Anter's merchandise to Jona's buyer until Anter.

g.   On 1-15-2020 at 19:28:36, Jona texted Anter confirming:

*1) wire comes in you get paid 2) I get the stones back if issue 3) I pay you don't get stiffed. Only 3 options. I don't foresee any issue. I have sold them before. Never had any problem whatsoever. And after they pay they need the certificates and I also need invoices reflective of our prices we agreed upon*.

h.   On 1-15-2020 at 19:28:58, Jona Rechnitz Jona texted Anter confirming:

*If they pay me tomorrow it is not able to wire until next day you know that. Pending and not useable until overnight*.

i.   On 2-4-2020 at 9:40pm, Jona's attorneys' lulling letter from Williams & Cohen to Plaintiffs about the purported bailout.

102.   The foregoing representations were made by Jona with the intent to deceive Plaintiffs and with knowledge that Plaintiffs would rely on them.

a.   Jona's (and Robert's) 6-25-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs was false because at that time, Jona was in at least **$156,295,058.15** in debt and had no possible way of paying Plaintiffs $12,000,000.00.

b.   Jona's (and Rachel's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs was false because at that time, Jona was in at least **$156,295,058.15** in debt and had no possible way of paying Plaintiffs $12,000,000.00.

c.   Jona's (and Rachel's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs was false because Jona (and Jadelle) did not keep to their promise of accepting Plaintiffs' Consigned Jewelry for inspection purposes only, and instead, stole Plaintiffs' Consigned Jewelry by giving it away to a 3rd party as collateral and borrowed money from that third party.

d.   Jona's (and Rachel's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs was false because Jona (and Jadelle) did not keep to their promise of keeping Plaintiffs' Consigned Jewelry in the name of Plaintiffs (and not in Jona & Jadelle's

-40-

names), and instead  stole Plaintiffs' Consigned Jewelry by giving it away to a 3rd
party as collateral and borrowed money from that third party.

e.      Jona's (and Rachel's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs
was false because Jona (and Jadelle) did not return Plaintiffs' Consigned Jewelry
upon Plaintiff's demand,

f.      Jona's (and Rachel's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs
was false because Jona (and Jadelle) did not return Plaintiffs' Consigned Jewelry to
Plaintiff in good condition,

g.      Jona's (and Rachel's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs
was false because Jona (and Jadelle) did not pay Plaintiffs $2,107,715.00 and
$36,225.00.

h.      Jona's (and Rachel's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs
was false because Jona (and Jadelle) did not immediately named Plaintiffs as an
additional insured on any and all applicable insurance policies with respect to
Plaintiffs' Consigned Jewelry.

i.      Jona's 7-3-19 at 21:58:14 Whatsapp text to Plaintiffs confirming the
representations made in the UCC Financing Statement and the Personal Guaranties
were valid and that Plaintiffs were 'protected' was false because Jona did not have
a buyer for the Consigned Jewelry, did not sell to them before, was not awaiting a
wire payment from this non-existent client, had no intention of returning the
Consigned Jewelry to Plaintiffs, and instead, stole Plaintiffs' Consigned Jewelry by
giving it away to a 3rd party as collateral and borrowed money from that third party.

j.      Jona's 1-2-2020 at 11:52:42am, text to Anter confirming that he would not release
Anter's merchandise to Jona's buyer until Anter would get paid, was false because
Jona did not have a buyer for the Consigned Jewelry, did not sell to them before,
was not awaiting a wire payment from this non-existent client, had no intention of
returning the Consigned Jewelry to Plaintiffs, and instead, stole Plaintiffs'
Consigned Jewelry by giving it away to a 3rd party as collateral and borrowed

money from that third party.

k. Jona's 1-15-2020 at 19:28:36, text to Plaintiffs was false because Jona did not have a buyer for the Consigned Jewelry, did not sell to them before, was not awaiting a wire payment from this non-existent client, had no intention of returning the Consigned Jewelry to Plaintiffs, and instead, stole Plaintiffs' Consigned Jewelry by giving it away to a 3rd party as collateral and borrowed money from that third party.

l. Jona's attorneys' 2-4-2020 at 9:40pm, lulling letter from Williams & Cohen to Plaintiffs about the purported bailout, was false, as the Rechnitz family member never offered Plaintiffs the promised bailout.

103. Plaintiffs detrimentally and reasonably relied on the foregoing representations by Jona.

104. Plaintiffs have been damaged by Jona's false, intentional, and fraudulent representations and concealing of material information, as alleged above, in an amount to be proven at trial, but at least $1,976,225.00, which represents the consigned jewelry Jona lied to steal as well as tendered worthless instruments for.

105. Specifically, Rachel made the following misrepresentations to Plaintiffs:

a. On 6-27-2019, Rachel (and Jona Rechnitz) personally guaranteed Plaintiff's $12,000,000.00 in debt, at a time when Jona & Rachel were in at least **$156,295,058.15** in debt and had no possible way of honoring that promise. Their 6-27-2019 Personal Guaranty included the following representations:

i. That Rachel (Jona and Jadelle) accepted Plaintiffs' Consigned Jewelry for inspection purposes only,

ii. That Plaintiffs' Consigned Jewelry shall remain in the name of Plaintiffs (and not in Jona, Rachel & Jadelle's names),

iii. That Rachel (Jona and Jadelle) would return Plaintiffs' Consigned Jewelry upon Plaintiff's demand,

iv. That Rachel (Jona and Jadelle) would return Plaintiffs' Consigned Jewelry to Plaintiff in good condition,

v. That if Rachel (Jona and Jadelle) failed to return Plaintiffs' Consigned

1             Jewelry upon demand, then Rachel (Jona and Jadelle would pay Plaintiffs

2             $2,107,715.00 and $36,225.00.

3        vi.      That Rachel (Jona and Jadelle) would liable to Plaintiffs for any loss or

4             damage to Plaintiffs' Consigned Jewelry resulting from fire, theft, breakage,

5             or any other cause whatsoever,

6        vii.     That Rachel (Jona and Jadelle) immediately named Plaintiffs as an

7             additional insured on any and all applicable insurance policies with respect

8             to Plaintiffs' Consigned Jewelry.

9   106.    The foregoing representations were made by Rachel with the intent to deceive Plaintiffs

10       and with knowledge that Plaintiffs would rely on them.

11       a.      Rachel's (and Jona's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs

12             was false because at that time, Jona and Rachel were in at least **$156,295,058.15** in

13             debt and had no possible way of paying Plaintiffs $12,000,000.00.

14       b.      Rachel's (and Jona's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs

15             was false because Rachel (Jona and Jadelle) did not keep to their promise of

16             accepting Plaintiffs' Consigned Jewelry for inspection purposes only, and instead,

17             Jona stole Plaintiffs' Consigned Jewelry by giving it away to a 3rd party as collateral

18             and borrowed money from that third party.

19       c.      Rachel's (and Jona's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs

20             was false because Rachel (Jona and Jadelle) did not keep to their promise of

21             keeping Plaintiffs' Consigned Jewelry in the name of Plaintiffs (and not in Jona &

22             Jadelle's names), and instead stole Plaintiffs' Consigned Jewelry by giving it away

23             to a 3rd party as collateral and borrowed money from that third party.

24       d.      Rachel's (and Jona's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs

25             was false because Rachel (Jona and Jadelle) did not return Plaintiffs' Consigned

26             Jewelry upon Plaintiff's demand,

27       e.      Rachel's (and Jona's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs

28             was false because Rachel (Jona and Jadelle) did not return Plaintiffs' Consigned

1          Jewelry to Plaintiff in good condition,

2      f.     Rachel's (and Jona's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs

3          was false because Rachel (Jona and Jadelle) did not pay Plaintiffs $2,107,715.00

4          and $36,225.00.

5      g.     Rachel's (and Jona's) 6-27-2019 Personal Guaranty of $12,000,000.00 to Plaintiffs

6          was false because Rachel (Jona and Jadelle) did not immediately named Plaintiffs

7          as an additional insured on any and all applicable insurance policies with respect to

8          Plaintiffs' Consigned Jewelry.

9  107.   Plaintiffs detrimentally and reasonably relied on the foregoing representations by Jona.

10  108.   Plaintiffs have been damaged by Jona's false, intentional, and fraudulent representations

11      and concealing of material information, as alleged above, in an amount to be proven at

12      trial, but at least $1,976,225.00, which represents the consigned jewelry Jona lied to steal

13      as well as tendered worthless instruments for.

14  109.   Specifically, Robert made the following misrepresentations to Plaintiffs:

15      a.     On 6-25-2019, Robert (and Jona Rechnitz) personally guaranteed Plaintiff's

16          $12,000,000.00 in debt, at a time when Jona was in at least **$156,295,058.15** in

17          debt and had no possible way of honoring that promise, and at the time that Robert

18          was placed into an involuntary bankruptcy/receivership by his creditor ITOR 116

19          SF LLC in Israel, Case # 27255-09-18 for debts in excess of $2,600,000.00 shekel

20          ($9,500,000.00 dollars), and had no possible way of honoring that promise.

21  110.   The foregoing representations was made by Robert  with the intent to deceive Plaintiffs

22      and with knowledge that Plaintiffs would rely on them.

23  111.   Plaintiffs detrimentally and reasonably relied on the foregoing representations.

24  112.   Plaintiffs have been damaged by Defendants' false, intentional, and fraudulent

25      representations and concealing of material information, as alleged above, in an amount to

26      be proven at trial, but at least $1,976,225.00, which represents the consigned jewelry Jona

27      lied to steal as well as tendered worthless instruments for.

28  113.   Plaintiffs further request the imposition of a constructive trust against all Defendants who

1    are in possession of the Consigned Jewelry set forth in the Consignment Memos and for an

2    order and judgment that they hold the consigned jewelry and/or all proceeds therefrom as

3    constructive trustees for the benefit of Plaintiffs.

4    114.    In doing the things herein alleged, Defendants acted willfully, maliciously, and with the

5    intent to cause injury and harm to Plaintiffs. Defendants are therefore guilty of malice

6    and/or fraud in conscious disregard of Plaintiffs' rights, thereby warranting an assessment

7    of punitive and exemplary damages in an amount appropriate to punish Defendants, and

8    each of them, and deter them and others from engaging in similar misconduct.

9    **SECOND CAUSE OF ACTION**

10    **CIVIL THEFT (Cal. Penal Code, § 496)**

11    (*On behalf of Plaintiff as to Jona Rechnitz*)

12    115.    Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all

13    preceding Paragraphs of this Complaint.

14    116.    As a result of Jona conduct as alleged herein, they have violated California Penal Code,

15    §496 that provides: "[e]very person who buys or receives any property that has been stolen

16    or that has been obtained in any manner constituting theft or extortion, knowing the

17    property to be so stolen or obtained, or who conceals, sells, withholds, or aids in

18    concealing, selling, or withholding any property from the owner, knowing the property to

19    be so stolen or obtained, shall be punished by imprisonment in a county jail for not more

20    than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if

21    the value of the property does not exceed nine hundred fifty dollars ($950), the offense

22    shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding

23    one year, if such person has no prior convictions for an offense specified in clause (iv) of

24    subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense

25    requiring registration pursuant to subdivision (c) of Section 290.

26    117.    Jona obtained and received property from Plaintiffs, the $1,976,225.00 of Consigned

27    Jewelry, in a manner constituting "theft," as that term is defined in California Penal Code,

28    § 484(a) that provides: "[e]very person who shall feloniously steal, take, carry, lead, or

drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

118. As a direct and proximate result of Defendants' civil theft, Plaintiffs have been damaged in an amount to be proven at trial, but at least $1,976,225.00.

119. Pursuant to California Penal Code, §496(c), Plaintiffs are also entitled to recover treble damages from Defendants.

120. Pursuant to California Penal Code, §496(c), Plaintiffs are also entitled to recover attorneys' fees from Defendants.

121. Plaintiffs further request the imposition of a constructive trust against all Defendants who are in possession of the consigned jewelry set forth in the Consignment Memos and for an order and judgment that they hold the consigned jewelry and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiffs.

122. In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiffs. Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiffs' rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct.

### THIRD CAUSE OF ACTION

### CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT

(*On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz. Robert Rechnitz, Levin Prado*)

123. Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

124.   The frauds committed by Jona were committed with Rachel's & Robert's knowledge and direction, along with the assistance of Prado, making them personally liable. Without Rachel setting upon the entities to commit the frauds, Jona lying to steal the Consigned Jewelry, and Prado signing the checks, and Robert conning Plaintiffs into the Personal Guaranty, none of the below referenced offenses could have occurred.

125.   Upon information and belief, Plaintiffs believe, that at all times relevant hereto Defendants, including but not limited to Jona, Rachel, Robert and Prado, formed a civil conspiracy and engaged in acts in operation and furtherance of that conspiracy

126.   Jona and Prado conspired to make an illegal agreement to defraud Plaintiffs of the consigned jewelry and to commit civil theft.

127.   Jona, with his wife Rachel, have set up companies to solicit consigned jewelry based upon the false premise they have clients to sell them to. Meanwhile they took Plaintiffs' consigned jewelry, swindled Plaintiffs in a large scale fraud by absconding with the three pieces of jewelry, and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Plaintiffs the $1,976,225.00. In reality, Jona liquidated Plaintiffs' consigned jewelry, and refused to tell Plaintiffs how he spent the proceeds. Plaintiffs asked Jona to provide an accounting of the proceeds, and Jona refused to do so.

128.   Jona deceived Plaintiffs to consign them the $1,976,225.00 in jewelry, with false promises of personal guaranties, that Robert denied ever making.

129.   Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Defendants formed a civil conspiracy and engaged in the foregoing acts in operation and furtherance of that conspiracy.

130.   Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Plaintiffs, as alleged herein.

131.   As a result of the civil conspiracy, each and every Defendant is liable and responsible for

-47-

the acts of the other Defendants in furtherance of the conspiracy and all damages resulting therefrom.

132. As a result of the civil conspiracy, Defendants are jointly and severally liable for $1,976,225.00.

133. The egregious nature of the Defendants/conspirators' collective conduct is malicious, wanton, and willful. Plaintiffs need to be awarded punitive damages plus a judgment of joint and several liability.

## FOURTH CAUSE OF ACTION

## CONVERSION

### (On behalf of Plaintiff as to Jona Rechnitz)

134. Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

135. At all times relevant, by virtue of their Consignment Memos and UCC-1 Financing Statement, Plaintiffs owned, possessed, or had a right to receive and possess their $1,976,225.00 in consigned jewelry.

136. Plaintiffs recently discovered that the Defendants have intentionally and substantially interfered with Plaintiffs' property by means of false and fraudulent activity, including, but not limited to, misappropriating Plaintiffs' Consigned Jewelry for their own personal use and other theft according to proof. The Defendants engaged in this conduct with the intention of wrongfully benefitting themselves at the expense of Plaintiffs.

137. Defendants sold, encumbered, or otherwise transferred Plaintiffs' Consigned Jewelry to third parties, subject to Plaintiffs' security interest without the knowledge of Plaintiffs. These transferees took possession of Plaintiffs' Consigned Jewelry subject to Plaintiffs' security interest. Once Plaintiffs discover the identities of these fraudulent transferees, Plaintiffs will amend this Complaint to add them as defendants to a claim and delivery (replevin) cause of action.

138. Plaintiffs did not consent to said activities.

139. As a direct and proximate result of the foregoing acts, Defendants intended to cause, and

1  have in fact caused, actual harm to Plaintiffs, and are liable to Plaintiffs for damages in an

2  amount to be proven at trial, but no less than $1,976,225.00.

3  140.  During, and as a further proximate result of, the Defendants' wrongful possession and

4  detention of Plaintiffs' property, Plaintiffs have suffered the loss of the deterioration of

5  their property and resulting business losses in an amount to be proven at trial.

6  141.  Furthermore, Plaintiffs are informed and believe, and so allege, that the Defendants'

7  aforementioned acts were taken with malice, fraud, and oppression and in conscious

8  disregard for Plaintiffs' rights, and were done willfully and with the intent to cause injury

9  to Plaintiffs. The Defendants were aware at all times that Plaintiffs were owed either return

10  of the consigned goods or repayment of $1,976,225.00 and intended to surreptitiously

11  misappropriate Plaintiffs' consigned goods and funds for their own personal use, seeking

12  only to intentionally and maliciously deceive Plaintiffs. Accordingly, Plaintiffs are entitled

13  to an award of exemplary and punitive damages against the Defendants.

14  **FIFTH CAUSE OF ACTION**

15  **BREACH OF CONTRACT**

16  (*On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz*)

17  142.  Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all

18  preceding Paragraphs of this Complaint.

19  143.  Plaintiffs, the Jadelle Parties, Jona, Rachel and Robert are parties to binding contracts, the

20  Consignment Memos, the UCC Financing Statement and Personal Guaranties.

21  144.  At all times, Plaintiffs have performed all conditions, covenants, and promises required by

22  them in accordance with the terms of the Consignment Memos, UCC Financing Statement

23  and Personal Guaranties, except as they have prevented or excused from performing by the

24  acts and/or omissions of the Jadelle Parties, Jona, Rachel and Robert.

25  145.  Under the 12-13-2019 Consignment Memo #8415, Jadelle and Jona were to either return

26  the 5 rows PR 27.48 ct, 370 diamonds to Plaintiffs or pay them $36,225.00.

27  146.  Under the 12-30-2019 Consignment Memo #8431,  Jadelle and Jona were to either return

28  the 13. 62 PS D-VVSl GIA, Harry Winston Mt/tr to Plaintiffs or pay them $1,200,000.00.

147. Under the 12-30-2019 Consignment Memo #8431, Jadelle and Jona were to either return the DIAM RD E IF 11923922166 to Plaintiffs or pay them $740,000.00.

148. Under the 6-25-2019 Personal Guaranty, Jona and Robert personally guaranteed Jadelle's $1,976,225.00 debt to Plaintiffs (up to $12,000,000.00).

149. Under the 6-27-2019, Personal Guaranty, Jona & Rachel Rechnitz personally guaranteed Jadelle's $1,976,225.00 debt to Plaintiffs (up to $12,000,000.00).

150. (The Jadelle Parties) Jona, Rachel and Robert breached the Consignment Memos, the UCC Financing Statement and Personal Guaranties by failing to return the consigned jewelry and make full repayment of the $1,976,225.00. As of the date of filing of this complaint, the full amount of Plaintiffs' debt in the amount $1,976,225.00 is past due and owing. In addition, accrued and ongoing interest, remains due, owing, and unpaid from (the Jadelle Parties), Jona, Rachel and Robert to Plaintiffs.

151. As a direct and proximate result of the foregoing acts, Plaintiffs have been damaged in an amount to be proven at trial, together with interest at the maximum legal rate according to proof. (The Jadelle Parties), Jona, Rachel and Robert would receive unjust enrichment if allowed to retain the benefits of Plaintiffs' performance under the Consignment Memos, the UCC Financing Statement and Personal Guaranties without abiding by (the Jadelle Parties), Jona's, Rachel's and Robert's own repayment obligations under the Consignment Memos, the UCC Financing Statement and Personal Guaranties, and/or Plaintiffs detrimentally relied on the Consignment Memos, the UCC Financing Statement and Personal Guaranties and would suffer an unconscionable injury if the Consignment Memos, the UCC Financing Statement and Personal Guaranties were not enforced.

## SIXTH CAUSE OF ACTION

### BREACH OF WRITTEN GUARANTIES

*(On behalf of Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz)*

152. Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

153. On or about 6-25-2019 Jona and Robert unconditionally agreed to guaranty in writing all

1    the obligations and duties owed by the Jadelle Parties under the Consignment Memos, the

2    UCC Financing Statement and Personal Guaranties up to $12,000,000.00.

3    154.   On or about 6-27-2019 Jona and Rachel unconditionally agreed to guaranty in writing all

4    the obligations and duties owed by the Jadelle Parties under the Consignment Memos, the

5    UCC Financing Statement and Personal Guaranties up to $12,000,000.00.

6    155.   The Jadelle Parties have defaulted on the Consignment Memos, the UCC Financing

7    Statement and Personal Guaranties, by failing to either return the consigned jewelry or to

8    re-pay the outstanding balance of $1,976,225.00. As of the date of filing of this complaint,

9    $1,976,225.00 is the current principal amount past due and owing. In addition, accrued and

10   ongoing interest remains due, owing, and unpaid to First International.

11   156.   Plaintiffs have performed all conditions and promises required on their part to be

12   performed under the Consignment Memos, the UCC Financing Statement and Personal

13   Guaranties. Plaintiffs relied on  the Consignment Memos, the UCC Financing Statement

14   and Personal Guaranties in order for them to consign the jewelry to Jadelle and Jona.

15                            **SEVENTH CAUSE OF ACTION**

16   **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

17   (*On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz, Levin Prado*)

18   157.   Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all

19   preceding Paragraphs of this Complaint.

20   158.   Based on the foregoing, Plaintiffs are informed and believe, and on such information and

21   belief allege,  Defendants breached the implied covenant of good faith and fair dealing

22   continuously throughout the business relationship with Plaintiffs.

23   159.   Plaintiffs are informed and believe, and on such information and belief allege, that there

24   may be other facts constituting breach of the implied covenant of good faith and fair

25   dealing which will be presented through discovery or at the time of trial.

26   160.   As a direct and proximate cause of the acts of Defendants, Plaintiffs have suffered damage

27   in an amount according to proof at the time of trial of at least $1,976,225.00.

28   161.   Plaintiffs are informed and believe, and on such information and belief allege, that

1     Defendants acted despicably, willfully, wantonly, oppressively, fraudulently, or in

2     conscious disregard of Plaintiffs' rights. Plaintiffs seek recovery of exemplary damages in

3     an amount according to proof at the time of trial.

4   162.  As a result of Defendants' actions, Plaintiffs have been damaged in an amount according to

5     proof, plus interest, costs, and attorneys' fees as permitted by law.

6                  **EIGHTH CAUSE OF ACTION**

7                     **ACCOUNT STATED**

8     (*On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz*)

9   163.  Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all

10     preceding Paragraphs of this Complaint.

11   164.  Based on the foregoing, in Los Angeles County, State of California, an account was stated

12     in writing by and between Plaintiffs and (the Jadelle Parties), Jona, Rachel, and Robert

13     Rechnitz and on such statement, a balance of $1,976,225.00 was found due to Plaintiffs

14     from (the Jadelle Parties), Jona, Rachel, Robert Rechnitz, who all agreed to pay to

15     Plaintiffs said balance in full.

16   165.  Although demanded by Plaintiffs from (the Jadelle Parties), Jona, Rachel, Robert Rechnitz,

17     they have failed to fully repay the balance of $1,976,225.00. Repeated demands were made

18     and ignored by Defendants. As of the date of filing of this complaint, $1,976,225.00 is the

19     current principal amount past due and owing. In addition, accrued and ongoing interest

20     remains due, owing, and unpaid from (the Jadelle Parties), Jona, Rachel, Robert Rechnitz

21     to Plaintiffs.

22   166.  Plaintiffs have incurred attorneys' fees in connection with this matter, in an amount to be

23     determined at trial. Because the Consignment Memos, the UCC Financing Statement and

24     Personal Guaranties are contracts on a book account, Plaintiffs are entitled to recover

25     attorneys' fees from the Jadelle Parties, Jona, Rachel, Robert Rechnitz pursuant to Civil

26     Code section 1717.5.

27

28

## NINTH CAUSE OF ACTION

## UNETHICAL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200

*(On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz, Levin Prado)*

167. Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

168. Based on the foregoing, Plaintiffs are informed, believe, and thereupon allege , that Defendants intentionally conspired with each other to restrain competition and deprive Plaintiffs of the benefit of their contracts.

169. As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiffs have been damaged in a sum in excess of the jurisdiction of this Court, to be determined according to proof at the time of trial of at least $1,976,225.00.

170. In engaging in the conduct described above, Defendants, and each of them, acted willfully and intending to deprive Plaintiffs of their property or legal rights, thereby committing acts of fraud, within the meaning of Civil Code §3924(c), so as to entitle Plaintiffs to punitive damages in an amount sufficient to punish or make an example of Defendants, and each of them.

## TENTH CAUSE OF ACTION

### ISSUANCE OF BAD CHECKS (CIVIL CODE § 1719)

*(On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz, Levin Prado)*

171. Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

172. Based on the foregoing, Plaintiffs are informed, believe, and thereupon allege, that on 1-17-2020 Jona, with Rachel and Prado's involvement, issued two worthless checks to First International totaling $2,122,760.00 that he had no intention of honoring: (1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00.  Both checks were NSF at the time of tender, in violation of the California Civil Code § 1719 and the California Penal Code §476a

EXHIBIT "7", PAGE 209

| Check # | Date | To | $ |
|---------|------|-----|---|
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| Total NSF Checks issued by Jona to Plaintiffs | | | **$2,122,760.00** |

173. Pursuant to California Civil Code § 1719(a)(6)(A), to "pass a check on insufficient funds" means to make, utter, draw, or deliver any check, draft, or order for the payment of money upon any bank, depository, person, firm, or corporation that refuses to honor the check, draft, or order for lack of funds or credit in the account to pay the check.

174. Pursuant to California Civil Code § 1719(a) Defendants are liable for full amount of the $2,122,760.00 checks plus a service charge of $25.00.00 for the first bounced check and $35.00 for each subsequent bounced check. Defendants shall also be liable for damages equal to 3x the amount of each check, if they fail to pay within thirty (30) days from the date the notice is mailed the amount of the checks in cash, plus the amount of the service charge ($25.00 for the first bounced check and $35.00 for the second bounced check), together with the cost of mailing this notice.

175. On 3-17-2020, Plaintiffs mailed via certified letters to Defendants demanding payment.[12] Jona's checks to Plaintiffs were dishonored not due to a good faith dispute.

176. The statutory 30-days have passed and Defendants failed to respond.

### ELEVENTH CAUSE OF ACTION

### PROMISSORY FRAUD

(*On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz, & Robert Rechnitz*)

177. Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

178. On or about 6-25-2019 Jona and Robert unconditionally agreed to guaranty in writing all the obligations and duties owed by the Jadelle Parties to Plaintiffs under the Consignment

---

[12] A true and correct copy of Plaintiffs' Notice Pursuant to California Civil Code § 1719 of $2,122,760.00 Bad Checks is attached hereto as Exhibit "12" and is incorporated herein by this reference.

1   Memos, the UCC Financing Statement and Personal Guaranties up to $12,000,000.00.

2   179.   On or about 6-27-2019 Jona and Rachel unconditionally agreed to guaranty in writing all

3   the obligations and duties owed by the Jadelle Parties to Plaintiffs under the Consignment

4   Memos, the UCC Financing Statement and Personal Guaranties up to $12,000,000.00.

5   180.   Jona and Robert did not intend to honor and/or perform the 6-25-2019 Personal Guaranty

6   to Plaintiffs when they signed it.

7   181.   Jona and Rachel did not intend to honor and/or perform the 6-27-2019 Personal Guaranty

8   to Plaintiffs when they signed it.

9   182.   Jona and Robert signed the 6-25-2019 Personal Guaranty with the intent to deceive

10   Plaintiffs and with knowledge that Plaintiffs would rely on them.

11   183.   Jona and Rachel signed the 6-27-2019 Personal Guaranty with the intent to deceive

12   Plaintiffs and with knowledge that Plaintiffs would rely on them.

13   184.   Plaintiffs detrimentally and reasonably relied on the 6-25-2019 Personal Guaranty and on

14   the 6-27-2019 Personal Guaranty.

15   185.   Jona and Robert have defaulted on the 6-25-2019 Personal Guaranty to Plaintiffs by failing

16   to pay the outstanding balance of $1,976,225.00 to Plaintiffs.

17   186.   Jona and Rachel have defaulted on the 6-27-2019 Personal Guaranty to Plaintiffs by

18   failing to pay the outstanding balance of $1,976,225.00 to Plaintiffs.

19   187.   Plaintiffs have been damaged by Defendants' false, intentional, and fraudulent

20   representations and concealing of material information, as alleged above, in an amount to

21   be proven at trial, but at least $1,976,225.00, which represents the consigned jewelry Jona

22   lied to steal as well as tendered worthless instruments for.

23   188.   (The Jadelle Parties), Jona, Rachel and Robert have defaulted on the Consignment Memos,

24   the UCC Financing Statement and Personal Guaranties, by failing to either return the

25   consigned jewelry or to re-pay the outstanding balance of $1,976,225.00. As of the date of

26   filing of this complaint, $1,976,225.00 is the current principal amount past due and owing.

27   In addition, accrued and ongoing interest remains due, owing, and unpaid to First

28   International.

189.  In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiffs. Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiffs' rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek a judgment in their favor and an order granting the following relief:

1.  That Plaintiffs be awarded compensatory damages in the amount of at least $1,976,225.00;

2.  That Plaintiffs be awarded $2,122,760.00 for their NSF checks pursuant to California Civil Code § 1719;

3.  That Plaintiffs be awarded treble damages pursuant to California Penal Code, §496(c);

4.  That Plaintiffs be awarded reasonable attorneys' fees pursuant to California Penal Code, §496©;

5.  That Plaintiffs be awarded attorneys' fees pursuant to Civil Code section 1717.5.

6.  For a constructive trust over the Consigned Jewelry and all proceeds therefrom;

7.  That Plaintiffs be awarded punitive damages in an amount to be proven at trial;

8.  That Plaintiffs be awarded costs of suit; and

9.  That Plaintiffs be awarded such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

DATED:        June 24, 2020                LAW OFFICE OF BARUCH C. COHEN
                                           A Professional Law Corporation

                                           By ___/S/ *Baruch C. Cohen*___
                                           Baruch C. Cohen, Esq.
                                           *Attorneys for Plaintiffs Plaintiffs Oved Anter & First*
                                           *International Diamond, Inc.*

# EXHIBIT - 1

Case 1:16-cr-00389-AKH   Document 84   Filed 03/03/20   Page 1 of 7

AO 245B (Rev. 09/19)   Judgment in a Criminal Case   (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| Jona Rechnitz | ) Case Number: 1: 16 cr. 00389-01(AKH) |
| | ) USM Number: 77751-054 |
| | ) Alan Levine/ AUSA, Martin Bell |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1349 | Conspiracy to Commit Honest Services Wire Fraud | 6/6/2016 | 1 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/19/2019
Date of Imposition of Judgment

Signature of Judge

Hon. Alvin K. Hellerstein, U.S. District Judge
Name and Title of Judge

March 3, 2020
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2020

AO 245B  (Rev. 09/19) Judgment in Criminal Case
   Sheet 2 — Imprisonment

Judgment — Page    2    of    7

DEFENDANT:   Jona Rechnitz
CASE NUMBER:   1: 16 cr. 00389-01(AKH)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
5 months.  Defendant is notified of his right to appeal.

☑  The court makes the following recommendations to the Bureau of Prisons:
   that the defendant be confined at the Lompac or Taft facility outside of Los Angeles.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m.  ☐ p.m.  on _____ .

   ☐ as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page   3   of   7

DEFENDANT:   Jona Rechnitz
CASE NUMBER:   1: 16 cr. 00389-01(AKH)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years, of which the first 5 months shall be home confinement.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
       ☑ The above drug testing condition is suspended, based on the court's determination that you
          pose a low risk of future substance abuse. *(check if applicable)*
4.   ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
       restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
       directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
       reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

EXHIBIT "7", PAGE 216

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

|  | Judgment—Page | 4 | of | 7 |
|---|---|---|---|---|

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

### U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall provide the probation officer with access to any requested financial information.

2. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he/she is in compliance with the installment payment schedule.

3. The defendant shall continue to cooperate with the U.S. Attorney's Office.

4. The defendant's duty to pay restitution in the amount of $19,000,000.00 is joint and several with co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467) provided, however, that defendant Rechnitz' payments shall be capped at $10,000,000.00. The defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day of each month.

5. The defendant shall be supervised by the district of residence.

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 6 | of | 7 |
|---|---|---|---|---|

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ 19,000,000.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Correction Officers' Benevolent Association | $19,000,000.00 | $19,000,000.00 | |
| 77-10 21st Avenue | | | |
| East Elmhurst, NY 11370 | | | |

| TOTALS | $ 19,000,000.00 | $ 19,000,000.00 |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine  ☐ restitution.

    ☐ the interest requirement for the   ☐ fine  ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  Jona Rechnitz
CASE NUMBER:  1: 16 cr. 00389-01(AKH)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ ___100.00___  due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:
    The defendant shall pay restitution in the amount of $10,000,000.00, joint and several with the $19,000,000.00 restitution obligation of co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467).  The defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day of each month.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

EXHIBIT "7", PAGE 220

# EXHIBIT - 2

Jona Rechnitz

Los Angeles, CA
October 16, 2019

Honorable Alvin K Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Hellerstein:

I am a felon. I am a criminal. I am the ONLY person to blame for that.

I have caused tremendous pain and embarrassment to my family, my religion, and to myself.

There is no way to undo what's been done. It's permanent, and for that I am truly sorry to everyone hurt by my crimes and actions. It eats me alive each and every day. When I wake up, when I go to sleep, it is always on my mind for the past 4 years.

My actions harmed the people of New York, The people of Correction Officers Benevolent Association, my friends, my family and my community. I will forever carry this burden, as I deserve to.

I have read of your Honor asking at various sentencings, why do good people do bad things?

In my case, not assuming I'm a good person, I can answer this question. Arrogance, greed, and insecurity.

Arrogance. I felt I was above the law. At this young age in my late 20's I was busy accepting honors at dinners and board positions at prestigious institutions. It got to my head.

Greed. I wanted to gain contacts to grow my business, to make money and gain stature in the long run.

Insecurity. I wanted to gain popularity by my peers and become a big shot in my community and business circles.

Shame on me.

Finally, I couldn't wiggle my way out of this one. It changed my life as I knew it forever.

As a supposed religious man, I have been a disgrace to my religion. The only way to fix this is to make serving G-d my main focus for the rest of my life. I try to every day. I have changed as a person religiously, through prayer, my public and private behavior, and I always stop and think before I'm about to do something to see if it is something my parents, my family, and G-d would approve of.

Making the decision to come forward was the right decision. A very tough decision with tremendous repercussions, but the appropriate decision. It has come with a hefty price. I did not foresee what I was signing up for, and it has been a brutal four years, but I made the right decision. I learned that doing the right thing isn't always the easiest, but it is the only choice. There is right and wrong and nothing in between. It has changed me for the better. It has forced me to change, which I have.

I had to testify in three separate trials. Not an easy task. Outside of the regular pressures a crucial witness deals with, these circumstances were even tougher. There was a lot of press coverage, a lot of community pressure, and a lot of threats and comments made to me. The press put me on trial instead of the defendants. The press called me a snitch and paid more attention to me and my testimony then on the actual trials. They made calls to my friends, my family, and waited outside my home for me to walk outside.

Parts of the community shunned me and my family. Your honor, I can not stress the amount of pain and suffering that we received during this time. Unimaginable pain. Eventually we had to leave town. Leave our lives. Leave immediately.

Then there were the threats and private investigators after me. Threatening voice messages, windows smashed at home, windows smashed in my car several times and my parents cars on the same day at their home, people following me and sitting outside of my home in Los Angeles for periods of time. My wife and I were harassed and video taped at the mall, humiliated in our Synagogue, and embarrassed in public at a local LA high school charity event.

Your Honor, there are so many examples that I am omitting as I don't want to portray myself as the victim here. I caused a lot of pain and harm to others through my criminal activity and don't want to detract from that.

Even at various trials there were intimidation tactics. An attorney representing a defendant yelled at me in the hallway walking in to court and shoved the prosecutor when he confronted him.

The disgusting feeling I had waking up in the morning to go to trial after trial after trial. Sometimes for a week and a half straight.

One of the toughest moments was when a mistrial was declared. I remember feeling like I wanted to tap out. But I could not. I made this decision for me and my beautiful family with the hope of staying together with them at the end of this nightmare. This has been the key factor keeping me going. My family. My amazing, incredible wife and my beautiful 6 children.

The highlight of my week used to be sitting in NYPD Headquarters like a big Macher. Today, my highlight is walking to Synagogue with my children every week, and I let them know it every time we walk. When I ask them what my favorite part of the week is, they say, Daddy! You know the answer, but I still make them repeat it.

Your Honor, I can now tell you proudly I am a hands-on father and husband. I am more of a mentsch. I was not during my criminal years. For that alone, I am grateful to this situation. My wife is an amazing woman. She had a bad feeling about the people I was hanging out with and the people I wanted to impress. She was right. I should have listened to her. I do now.

I had real estate holdings which I had to give up throughout this ordeal. Many investors didn't want to be associated with me, nor do I blame them. In a few cases, some partners viewed my situation as an opportunity forcing me to give up different holdings and assets, taking management decisions and authority from me, ultimately removing me entirely. Starting to make a living again was a struggle for a period of time. Fortunately my wife and I started a new business endeavor, which looks promising. As your Honor can imagine it is hard to find a bank to work with me, so I have secured private loans and financing from family and friends. I finally have a business going that has provided stability and a way to make a living. This case has left me in a big financial hole - I have had to borrow millions of dollars to get this business going and to support my family. I am finally in a position to dedicate myself again to supporting my family. I don't see any way possible to start over a third time. I beg you to allow me to continue on this second journey of life.

This has been a difficult time. I don't feel healthy at all. I am on anti depressant medication, I wake up in the middle of the night in pain and my neck and hands are burning, and I will forever carry this guilt.

Family is everything to me. Cuddling with my children is everything to me. Being a community member and helping others is everything to me. Since this entire ordeal my wife gave birth to two beautiful baby girls. A decision that we made to not put life on hold but to continue with life in the right path and be optimistic that doing the right thing will not hinder our future.

I am a changed man. I suffered a lot. I have been severely punished. My family has suffered a lot. I beg your Honor, please allow me to continue on the path I'm on, together with my family, my wife and 6 young children. They need their Daddy, I need my family together with me, and I promise your Honor, to continue to make

my family proud, my community proud, and your Honor proud.

With humility and sincerity,

Jona

# EXHIBIT - 3

Robert Rechnitz
████████████
Beverly Hills, CA ████

Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

Dear Judge Hellerstein

I am sorry to say that Jona by his acts, lost his integrity and acted hypocritically to his faith. Notwithstanding his goodness and his affinity for helping others, he crossed the line that could never be reversed for the rest of his life. Regardless of his state of maturity at the time, his decision impacted him and his entire family as it has consumed us for the past nearly four years.

When Jona decided to come forward and notify the government, he immediately called a family meeting and apologized to my wife, myself, and each sibling for his transgressions. He continues to apologize to us and express regret until this date. He carries the burden of shame for what he caused our family.

Growing up, Jona was always a great source of pride for us. My wife and I constantly enjoyed compliments from parents of friends, elderly people, the New York community on the West Side once they moved there, and business associates. Never would I have believed that Jona could be involved in the crimes that took place.
I offer no excuses for his actions which were contrary to the way that he was brought up and to the examples in our family.
I do, however, understand that with his business success at a young age, came a lot of immaturity and impulsive decisions. I too, share in the responsibility for so many of Jona's actions. It was unfair of me to allow Jona to take so many responsibilities upon himself without my guidance and involvement. In a quest to prove himself independent and become a mover and shaker in the New York community, we saw his personality take a different course  I should have seen the warning signs and intervened early on. Everything happens for a reason and no doubt G-d sent him a message that will serve him well for the rest of his life. Jona is a bit codependent and is happy to always come through for people and organizations. Sadly he had a dose of reality by watching those organizations turn their back on him because you are only as good as the last favor you did for them. This too was a very good lesson for him going forward.
Your Honor, with all the pain this experience has brought, I have seen Jona repent on every level. He suffered tremendous financial losses in real estate as a result of partners taking advantage of his position as a felon to take away his promoted equity on investments. The group that took this away from him are supposedly Jewish community leaders. I believe that is another good lesson for Jona to learn. You don't wear religion on your sleeve you wear it in your heart. How you act from one person to another reflects who you are. There is no concept of " Between man and G-d, "If there is no respect "Between man and fellow man."

Jona lost his direction but he is now solidly back on track practicing and appreciating the most important elements of being a self-respecting person.

He together with Rachel and their six children have relocated to LA. They have established a much more humble life for themselves. He is back to the basics of living and maintaining a family. He still participates together with Rachel in all their acts of kindness to others. He is still a friend that anyone can lean on. The quality time that he spends with Rachel and the children, by far exceeds the time that he spent with them when he was moving at a fast pace in New York.

The move has done them well and Jona is building a new business. He lives with the shame and the pain of what he did and what he caused to others. On the other hand he did not wait for any further action on behalf of the government but he immediately took ownership of his crimes and offered his full support and cooperation with the government. Out of concern for Halacha, he sought guidance from his friend and Rabbi, Shlomo Einhorn who sought guidance from Rabbi Herschel Shachter.
Jona is a very sensitive individual and is always concerned about doing the right thing. Your Honor, I must say that the way that he is repenting and has changed his life and learned from his mistakes, is doing the right thing. Jona has a wife and six children and they need him to be home and a constant part of their life after these last turbulent four years.

Your Honor, I plead for leniency for my dear son, so that he can continue to maintain the stable family and not lose the improvements that he has made. Six children need two parents care.

Humbly,

Robert Rechnitz

# EXHIBIT - 4

```
                                                                    1
     JCJYRECS

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ...............................................x

 3   UNITED STATES OF AMERICA,

 4               v.                          16 CR 389 (AKH)

 5   JONA RECHNITZ,

 6               Defendant.
                                             Sentence
 7   ...............................................x

 8                                           New York, N.Y.
                                             December 20, 2019
 9                                           10:15 a.m.

10   Before:

11
                     HON. ALVIN K. HELLERSTEIN,
12
                                        District Judge
13
                          APPEARANCES
14
     GEOFFREY S. BERMAN
15        United States Attorney for the
          Southern District of New York
16   BY:  MARTIN S. BELL
          JESSICA LONERGAN
17        KIMBERLY RAVENER
          LAURA POMERANTZ
18        Assistant United States Attorneys

19   COOLEY LLP
          Attorneys for Defendant
20   BY:  ALAN LEVINE

21
     Also Present:
22   Andrew Hamilton, Government Paralegal Specialist
     Marc Klausner, NYPD
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    Joseph Downs, FBI

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                                    64

1   and, Judge, appearing before judges of this court, including

2   yourself, we either gain or lose credibility.  My hope is that

3   I personally have kept faith with not just a certain caliber of

4   advocacy but also with the truth and with the way things really

5   are.

6           To the extent that I have amassed that credibility

7   over a period of time, I am laying it entirely on not only the

8   quality of Mr. Rechnitz's cooperation but the value of what

9   that means to the mechanism of justice working with respect to

10  future cooperators.

11          THE COURT:  I have your point, Mr. Bell.

12          MR. BELL:  Thank you, Judge.

13          THE COURT:  Mr. Levine.

14          MR. LEVINE:  Your Honor, I think it might be helpful

15  if the Court hears from Mr. Rechnitz first.

16          THE COURT:  Sure.

17          Mr. Rechnitz.

18          THE DEFENDANT:  Your Honor, I stand before your Honor

19  and this court with respect for the law, tremendous remorse for

20  my actions and behavior, and with great humility.

21          Growing up, my parents raised me in a very loving

22  environment --

EXHIBIT "7", PAGE 232

23          THE COURT:  Don't worry about the microphone,

24   Mr. Rechnitz.  Speak to me.  I'll hear you.

25          THE DEFENDANT:  Growing up, my parents raised me in a

EXHIBIT "7", PAGE 233

JCJYRECS                                                                 65

1    very loving environment.

2          THE COURT:  That's okay, Mr. Levine.  I can hear him.

3          Go ahead.

4          THE DEFENDANT:  Growing up, my parents raised me in a

5    very loving environment with an emphasis on religion and doing

6    the right thing.  Here I am.  I did not start off this way, and

7    I was raised differently.

8          I have let down my family, my parents, my in-laws, my

9    wife, my children, friends, and my community in a big way.  I

10   made very poor choices, and many people have suffered because

11   of them.  I didn't always appreciate the fact that I had the

12   blessing to have six beautiful children in my home and a

13   beautiful wife.

14         When you get into trouble, you realize the blessings

15   of life and what's important.  I took my blessings for granted.

16   I've been a real fraud to God, a fraud to my wife and family, a

17   fraud as an American, a fraud as a businessman, and a fraud to

18   the people of New York, namely, the hard-working COBA members,

19   and I'm truly sorry for that.  My actions have hurt many

20   people, and I'm very sorry for that.  I continue to pay for my

21   mistakes on a daily basis.

22         While testifying before your Honor during the Norman

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    Seabrook trial, a tape was played for the jury.  It had

24    recorded a conversation where I was going to attend an Mincha

25    prayer service as a Shiva.  Your Honor asked me to explain what

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                                    66

1    Shiva and Mincha were for the jury.  In fact, your Honor

2    explained it much better than I did afterwards.

3            At that moment is when it really hit me what a

4    hypocrite I've been.  It was that exact moment.  Here I am

5    going to pray to God and visiting a mourner to comfort them,

6    and then I turn around and commit these crimes and sins.  It is

7    not the way I was raised and not the way I was educated.

8            While living in New York City, I wrongly felt pressure

9    to become a bigshot.  I was working for one of the largest real

10   estate companies in 2007, and it got to my head.

11           I was in my late 20's, and big people in the real

12   estate industry were dealing with me.  My ego was big, and I so

13   badly wanted to impress these people in order to advance my

14   career and profile.  This is where things started to spiral out

15   of control.  This is where I went so off the rails for a number

16   of years.

17           I assure your Honor that these past years and the

18   experience I've gone through has changed me.  I will never act

19   that way again.  My family and I have been through too much.

20           I have been forced to self-reflect, and I have

21   identified many of my flaws in order to grow from my mistakes.

22   I apologize for my criminal and immoral behavior for trying to

```
23   bribe my way through these years of my life.

24          I left the moral way of going about business and my

25   religious beliefs.  I bestowed gifts upon police officers in
```

JCJYRECS                                                                    67

1   exchange for favors in return.   I raised and contributed large

2   sums of money for the mayor of New York City and his projects

3   in the hope of obtaining benefit in return.

4         I introduced Norman Seabrook and Murray Huberfeld to

5   each other for the purposes of COBA to invest funds into

6   Murrey's fund, Platinum Partners, so that they could both

7   mutually financially benefit from one another and to elevate my

8   status with them.

9         I knowingly delivered a $60,000 kickback payment to

10  Norman Seabrook from Murray Huberfeld.   This corrupt bargain is

11  something that continues to haunt me.   I have struggled with

12  how it is I let my life go astray this way and how I took leave

13  of my adherence of the law and spirituality.

14        I've been a big hypocrite to my religion.   I failed to

15  conduct myself properly between myself and my fellow man and

16  between myself and my relationship with God.   I have strayed.

17        I did all of these horrible things without worrying

18  about God or the consequences that come with this sort of

19  behavior.   I cannot express to your Honor how ashamed I am for

20  desecrating my religion.

21        I have and will continue to repent to God every single

22  day.   I have and continued to make amends.   Part of my efforts

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    to make right included cooperating as a first step.  I have a

24    lot more work to do.

25            I did the best I could for the government and told the

EXHIBIT "7", PAGE 239

JCJYRECS                                                              68

1   truth about myself, and I realize that I will have to make

2   financially right those that I hurt.

3            Please allow me just a few more minutes to discuss the

4   cooperation.  I hired Mr. Levine in 2016, May 2016.  When I

5   realized that there was an investigation heating up, I knew I

6   had not told the truth to the New York City police officers and

7   Internal Affairs Bureau a few months earlier.

8            Right away, based on my initial conversations with

9   Mr. Levine and Ms. Laura Birger, I authorized them to meet with

10  the assistant U.S. attorneys and begin the process of making a

11  proffer, agreeing to plead guilty and signing a cooperation

12  agreement.

13           I understood from those initial meetings with both my

14  lawyers and the government, if I was going to cooperate with

15  the government, I needed to be 100 percent truthful.

16           I have been completely forthcoming in all my meetings

17  and on the witness stand throughout three separate trials.

18  There is not any question that I was asked that I did not

19  answer truthfully, and there are many events and conduct that I

20  told the government that they did not know.

21           Included in my early proffer sessions with the

22  government -- this was in the spring of 2016.  I gave the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "7", PAGE 240

23    government information about two different hard-lending

24    businesses that I was involved in.

25              One turned into a criminal case in which Peralta was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                                    69

1   charged with a Ponzi scheme, and the second one also turned

2   into a criminal case charging Nissen with the same scheme.

3        At the time, I was unaware these were both Ponzi

4   schemes and, as a result, personally lost money for myself and

5   others.  Since then, I am more cautious and conservative in my

6   business dealings.

7        My financial dealings with both were a mess with lots

8   of transactions, paying and receiving, some on my own behalf

9   and some on behalf of third parties, including cash

10  transactions.

11       I was simply unable to sort all those transactions

12  out, and I have yet to file a 2015 tax return.  I told my

13  lawyers and the government about that at the time immediately.

14       After speaking with my accountant during 2016, I

15  realized I cannot file my 2015 tax returns accurately because I

16  did not have a handle on all the transactions, and I can't

17  provide my accountant with complete information.

18       The situation got more complex in 2017 for 2016

19  because criminal charges were filed.  I was scheduled to

20  testify in one of the trials, and there was no way to sort out

21  the transactions.

22       As I testified in all three trials, I have yet to file

EXHIBIT "7", PAGE 242

23    the returns for these years up through 2018.  I was sued in the

24    Peralta bankruptcy and settled paying over $350,000 to the

25    state.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCJYRECS                                                                    70

1          I have been sued in the Nissen bankruptcy, but that

2     has not moved forward yet, and I do not know what my exposure

3     will be at that bankruptcy.  I understand my obligation to

4     resolve that bankruptcy and have filed tax returns for those

5     years.  And I also understand the additional problems I have

6     created in my inability to file those returns, including the

7     financial consequences they will cause.

8          This is one of several jobs that I have in the coming

9     months as I continue to sort out my life in a lawful path.

10    In fact, I will spend the rest of my life trying to make amends

11    for my criminal behavior.

12         I will try to make a better name for my family, for my

13    religion, and for myself.  I am on the path to recovery,

14    your Honor.  I am a better family man; I am a better friend; I

15    am a more religious person.  I am working again to make an

16    honest living.

17         Please allow me to continuing on this course

18    undisrupted in order to provide for my large family.  I really

19    want to do good, please.  I failed myself in a number of ways.

20    I am humbly asking your Honor to stop the bleeding, to continue

21    in this new business I've started in order to provide for my

22    family and to enable me to take care of my financial

23   responsibilities.

24          THE COURT:  What is the new business?  Jadelle?

25          THE DEFENDANT:  Jadelle, yes.  I really paid a hefty

JCJYRECS                                                                    71

1  price for cooperating with the government for my crimes.  Most

2  recently, the New York Post put up an article that was

3  mentioned this morning -- your Honor may not be aware --

4  accusing me of hobnobbing and flirting with the rich and  famous

5  at a time when I claim I am a pariah to society.

6          In fact, Jadelle Jewelery hosted a jewelery show  to

7  promote the brand and new jewelry collection.  The event was to

8  make sales and increase business.  One attendee was a Kim

9  Kardashian, a client of Jadelle.

10          If one were to read the article, I am portrayed as  a

11  hobnobber with no concern in the world, no remorse  whatsoever,

12  and like a party animal.  I urge your Honor to watch the  video

13  that was attached to the article online, and your Honor  will

14  see a very different picture.

15          Your Honor will see me dressed in a suit and a tie

16  trying to sell jewelry, no partying, no hobnobbing, just a  man

17  trying to make an honest living.

18          I am not here to complain about my suffering in the

19  past few years, but I can promise your Honor I have been

20  punished in so many ways I can't begin to describe.

21          Within my community, within the media, and through

22  self-introspection.  In New York City, I am persona non  grata.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EXHIBIT "7", PAGE 246

23    I am to blame.  I burnt a lot of bridges and relationships and

24    had to relocate to California.

25              I am so truly sorry for my behavior.  I am a changed

EXHIBIT "7", PAGE 247

JCJYRECS                                                                72

1    man.  I have had years to make this change.  It did not happen

2    overnight, your Honor.  I have had four years, close to four

3    years, since this ordeal started.

4           I beg your Honor, please allow me to remain with my

5    family, my beautiful wife and children, and allow me to

6    continue working so that I can continue to provide for them and

7    make good on my financial obligations.

8           I don't see any way to start over a third time.  I'm

9    on my second chance.  Please allow me to continue on this path.

10   Thank you.

11          THE COURT:  Mr. Levine.

12          MR. LEVINE:  Your Honor, I was just going to ask.  The

13   hour is late.  If the Court would want to take a recess, I

14   would certainly appreciate that.

15          THE COURT:  It's very tempting.

16          MR. LEVINE:  If the Court wishes to proceed, I'd like

17   to proceed.

18          THE COURT:  Keep going, Mr. Levine.

19          MR. LEVINE:  So, your Honor, we're finally here for

20   the day of Mr. Rechnitz's sentence.  How did he get here.  And

21   I think an important question on the mind of the Court is has

22   he shown remorse.

EXHIBIT "7", PAGE 248

23          Your Honor, we've submitted a lot of letters, and  what

24   comes out from those letters is the personality of an

25   individual wanting and needing to help people.

EXHIBIT "7", PAGE 249

JCJYRECS                                                                    73

1              THE COURT:  I've read the letters.  They depict a

2    person who enlarges others by charity, by friendship to others

3    and makes other people feel better.

4              And yet in the life that's been depicted in this

5    court, he cheapens people.  He works on their insecurities and

6    their quest for material possessions and just does the

7    opposite.  He diminishes people.

8              How can you square both?

9              MR. LEVINE:  Your Honor, that's what I was going to

10   say.  So this personality that has done so much good for so

11   many people before these events, during these events, and  since

12   these events -- it collided with his desire to be  independent,

13   to establish himself in Manhattan, and not to take the

14   comfortable road going back to Los Angeles.

15             It also collided with his desire for immediate  success

16   by staying in Manhattan in his late 20's.  It introduced him to

17   a world of Jeremy Reichberg.  And he realized in that world

18   that with his money, he could do good for police officials  and

19   others, to have them at his beck and call for his community  and

20   for himself.

21             What he perceived, incorrectly, would be a  win/win,

22   and it turned into a bad/bad.  He never should have offered

# EXHIBIT - 5



**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

## UCC Filing Acknowledgement

03/06/2019

Page 1 of 2

FIRST INTERNATIONAL DIAMOND INC
P.O. BOX 3765
BEVERLY HILLS CA 90212

| | |
|---|---|
| Filing Fee: | $5.00 |
| Total Fee: | **$5.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**       File Date: **03/06/2019**       File Time: **13:44**

Filing Number: **19-7700745484**       Lapse Date: **03/06/2024**

Debtor(s):
ORGANIZATION       **JADELLE JEWELRY AND DIAMONDS LLC**

**9621 BRIGHTON WAY BEVERLY HILLS CA USA 90210**

ORGANIZATION       **JADELLE JEWELRY AND DIAMONDS LLC**

**9454 WILSHIRE BLVD #PHG01 BEVERLY HILLS CA USA 90210**

ORGANIZATION       **JADELLE JEWELRY AND DIAMONDS LLC**

**5700 WILSHIRE BLVD #355 LOS ANGELES CA USA 90036-3659**

Secured Party(ies):
ORGANIZATION       **FIRST INTERNATIONAL DIAMOND INC**

**P.O. BOX 3765 BEVERLY HILLS CA USA 90212**

Filing by  the Secretary of State is not conclusive proof  that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information  on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814  · PO BOX 942835  · SACRAMENTO, CA 94235-0001  · (916) 653-3516  · HTTPS://UCCCONNECT.SOS.CA.GOV

**PROGRAMS**   ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

3102751200

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

FIRST INTERNATIONAL DIAMOND INC
P.O. BOX 3765
BEVERLY HILLS, CA 90212
USA

DOCUMENT NUMBER: 77246760002
FILING NUMBER: 19-7700745484
FILING DATE: 03/06/2019 13:44

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| JADELLE JEWELRY AND DIAMONDS LLC | | | | | |
| 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 9621 BRIGHTON WAY | BEVERLY HILLS | | CA | 90210 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| JADELLE JEWELRY AND DIAMONDS LLC | | | | | |
| 2b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 9454 WILSHIRE BLVD #PHG01 | BEVERLY HILLS | | CA | 90210 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| FIRST INTERNATIONAL DIAMOND INC | | | | | |
| 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| P.O. BOX 3765 | BEVERLY HILLS | | CA | 90212 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

This Financing statement covers the following collateral:
All property, Goods and merchandise which have been, are now, or may at any time be delivered on consignment consigned or entrusted by
First International Diamond Inc to JADELLE JEWELRY AND DIAMONDS LLC, including without limitation,diamonds,gemstones and other
precious and semi-precious jewelery,rings,bracelets and all other property, goods and merchandise in which diamonds,gemstones,precious
or semi-precious metals or stones are processed,mounted,included or converted and any accessory items, and the proceeds (including
without limitation, insurance proceeds and proceeds from sale or other disposition)and receivables arising there from, wheresoever
located, future consignment and deliveries are covered.
As related to or connected with the property described above, all accounts, accounts receivables, other receivables, contract rights,
chattel paper, general intangibles, whether now owned or hereafter acquired by the debtor or in which the debtor may now or hereafter

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

EXHIBIT "7", PAGE 254

Page 2

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
JADELLE JEWELRY AND DIAMONDS LLC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)      SUFFIX

**DOCUMENT NUMBER: 77246760002**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME
JADELLE JEWELRY AND DIAMONDS LLC

10b. INDIVIDUAL'S SURNAME

OR

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)      SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5700 WILSHIRE BLVD #355 | LOS ANGELES | CA | 90036-3659 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (collateral):
acquire an interest and proceeds from all the foregoing.
This financing statement covers consignments made by secured party to any of the debtor's affiliated companies, stores or DBAs wherever located.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY

# EXHIBIT - 6

*302*

6/25/19

Dear Oved / First International Diamonds Inc.,

I very much enjoyed speaking to you by phone. Jona has shared some of your conversations with me. Thank you for being a confidant for Jona. He mentioned to me about how your Father had a special bond and relationship with you. I was also privileged to have a close relationship with my Father, as did Jona. I'm sure you will find much success in your dealings together.

I completely understand your desire to know that Jona's family is aware of his dealings with you and stands behind him. I am pleased to confirm that I stand behind Jona and all his dealing with you.

You have indicated that you have extended memos up to the amount of $12,000,000.00. If for some reason you need to callback your credit line, all merchandise will be returned to you, and any cash deficiencies will be repaid by me.

May your confidence in Jona and your extension of credit be profitable for both of you.

6-25-19

BOBBY RECHNITZ

CC: JONA RECHNITZ

# EXHIBIT - 7

## GUARANTY

This Guaranty ("Guaranty") is entered into this **27** day of **June**, 2019, by JONA RECHNITZ, an individual and RACHEL RECHNITZ, an individual (collectively, "Guarantor") in favor of FIRST INTERNATIONAL DIAMOND INC, a California corporation, and OVED ANTER, an individual (collectively, the "Consigner") with respect to certain obligations of JADELLE JEWELRY & DIAMOND, LLC, a Delaware limited liability company ("Consignee"). Guarantor is financially interested in Consignee and in order to induce Consigner to enter into those certain jewelry memos for diamonds and jewelry, on consignment, in the approximate amount of Twelve Million Dollars ($12,000,000), at wholesale, between Consigner and Consignee (the "Jewelry Memos"), and Guarantor is willing to enter into this Guaranty.

1. Guaranty. In order to induce Consigner to enter into the Jewelry Memos, Guarantor unconditionally, absolutely, and irrevocably guarantees and promises to Consigner full and complete payment and/or performance by Consignee in the event that: (1) Consigner calls back the consigned goods, (2) there is a theft of goods, (3) the goods are lost in shipment or transit, (4) the goods are damaged, or (5) in the event that Consignee has filed a pending insurance claim for the consigned goods and there is a shortage owing to Consigner from any insurance settlement proceeds. Consigner shall notify in writing to Consignee that it requires Consignee's payment and/or performance and within 60 (sixty) business days from notice, Consignee is required to make such payment and/or performance. If the goods are damaged, Consignee agrees to repair the consigned goods to the original condition in which it was received by Consignee. If Consignee is awaiting insurance settlement proceeds for any loss/damage to the consigned goods, then payment is due from Consignee to Consigner within 60 (sixty) business days from Consigner's notice of any shortage between the wholesale amount listed in the Jewelry Memo and the insurance proceeds received by Consignee. Items (1)-(5) above shall hereinafter be referred as the "Guaranteed Items".

2. This is a continuing guaranty of payment and/or performance of the Guaranteed Items and not of collectability, which shall remain in full force and effect during the term of the Jewelry Memos, as renewed or extended, and thereafter until Consignee's obligations are fully satisfied, and Guarantor waives any right under California Civil Code §2815 to revoke this Guaranty based upon a failure of continuing consideration or otherwise. If all or any portion of the obligations guaranteed are paid or performed, this Guaranty shall continue in full force and effect in the event that all or any part of such payment or performance of the Guaranteed Items is avoided or recovered directly or indirectly from Consigner as a preference, fraudulent transfer or otherwise.

3. Changes Do Not Affect Liability. Guarantor consents and agrees that Consigner may, without affecting Guarantor's liability under this Guaranty, from time to time (a) renew, compromise or extend, accelerate, grant extensions of time or otherwise change or amend the Jewelry Memos or any of Consignee's obligations under the Jewelry Memos; (b) take, hold, release, waive, exchange, modify or enforce any security for the payment and performance of the Guaranteed Items and make elections under the federal bankruptcy laws concerning any such security (c) apply such security and direct the order or manner of sale thereof as Consigner in its discretion may determine; (d) release or substitute any one or more of the persons liable for Consignee's obligations under the Jewelry Memos or guarantors of the Guaranteed Items, including but not limited to any other person signing this Guaranty; (e) accept or make compositions or other arrangements or file or refrain from filing a claim in any bankruptcy proceeding of Consignee or any other guarantor or pledgor; and (f) otherwise deal with Consignee or any other guarantor or pledgor or party related to the Jewelry Memos or any security or collateral in such manner as Consigner may determine in its sole and absolute discretion.

4. Independent Liability; Joint and Several Liability. Guarantor agrees that one or more successive or concurrent actions may be brought on this Guaranty against Guarantor, in the same action in which Consignee may be sued or in separate actions, as often as deemed advisable by Consigner. The obligations under this Guaranty are joint and several, and independent of the

EXHIBIT "7", PAGE 259

obligations of Consignee.

**5. Remedies Cumulative; No Waiver.** Consigner agrees they first need to seek payment or performance from Consignee of the Guaranteed Items. If the obligation under the Guaranteed Item is not paid or performed when due, then Guarantor will pay or perform it according to its tenor. Consigner shall have the right to seek recourse against Guarantor to the full extent provided for in this Guaranty and in any other instrument or agreement evidencing obligations of Guarantor to Consigner, and against Consignee to the full extent of the obligations guaranteed hereby. No election in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of Consigner's right to proceed in any other form of action or proceeding or against any other party. All remedies under this Guaranty shall be cumulative and shall be in addition to all rights, powers and remedies given to Consigner by law or under any other instrument or agreement.

**6. Bankruptcy of Consignee.** Guarantor shall not commence or join with any other person in commencing any bankruptcy, reorganization or insolvency proceedings against Consignee or any person liable for Consignee's obligations under the Jewelry Memos. Guarantor shall file in any bankruptcy or other proceeding in which the filing of claims is required or permitted by law all claims which Guarantor may have against Consignee relating to any indebtedness of Consignee to Guarantor and will assign to Consigner all rights of Guarantor thereunder. Consigner shall have the sole right to accept or reject any plan proposed in such proceedings and to take any other action which a party filing a claim is entitled to do. In all such cases, whether in administration, bankruptcy, or otherwise, the person or persons authorized to pay such claim shall pay to Consigner the amount payable on such claim and, to the full extent necessary for that purpose, Guarantor hereby assigns to Consigner all of Guarantor's right to any such payments or distributions to which Guarantor would otherwise be entitled; provided, however, that Guarantor's obligations hereunder shall not be satisfied except to the extent that Consigner receives cash and anything hereunder other than cash by reason of any such payments or distribution.

**7. Successors and Assigns; Amendment.** All rights, benefits and privileges under this Guaranty shall inure to the benefit of and be enforceable by Consigner and its successors and assigns and shall be binding upon Guarantor and his heirs, representatives, successors and assigns. Neither the death of Guarantor nor notice thereof to Consigner shall terminate this Guaranty as to his estate, and, notwithstanding the death of Guarantor or notice thereof to Consigner, this Guaranty shall continue in full force and effect. The provisions of this Guaranty may not be waived or amended except in a writing executed by Guarantor and a duly authorized representative of Consigner.

**8. Construction; Severability; Integration.** When this Guaranty is executed by more than one Guarantor, the word "Guarantor" shall mean all and any one or more of them. Words used in this Guaranty in the masculine or neuter gender shall include the masculine, neuter and feminine gender, and words used in this Guaranty in the singular shall include the plural and vice versa, wherever the context so reasonably requires. If any provision of this Guaranty or the application thereof to any party or circumstance is held invalid, void, inoperative, or unenforceable, the remainder of this Guaranty and the application of such provision to other parties or circumstances shall not be affected thereby, the provisions of this Guaranty being severable in any such instance. This Guaranty is the entire and only agreement between Guarantor and Consigner respecting the guaranty of the Guaranteed Items, and all representations, warranties, agreements, or undertakings heretofore or contemporaneously made.

**9. Governing Law; Jurisdiction.** This Guaranty is governed by and construed according to the laws of the State of California applicable to contracts made and to be performed in such state. In order to induce Consigner to accept this Guaranty, and as a material part of the consideration therefor, Guarantor (i) agrees that all actions or proceedings relating directly or indirectly to this Guaranty shall, at the option of Consigner, be litigated in courts located within the State of California, and (ii) consents to the jurisdiction of any such court and consents to the service of process in any such action or proceeding by personal delivery or any other method permitted by law.

**10. Paragraph Headings.** Paragraph headings are used in this Guaranty for convenience only and shall not be used in any manner to construe, limit, define or interpret any provision of this Guaranty.

**11. Time of Essence.** Time is of the essence in the performance by Guarantor of each and every obligation under this Guaranty.

**12. Notices.** Any notice which a party shall be requested or shall desire to give to the other under this Guaranty shall be given by personal delivery or by depositing the same in the United States mail, first class postage pre-paid, addressed to Consigner at its address set forth in the Lease and to Guarantor at its address set forth below, and such notices shall be deemed duly given on the date of personal delivery or three (3) days after the date of mailing as aforesaid. Consigner and Guarantor may change their address for purposes of receiving notices under this Guaranty by giving written notice thereof to the other party in accordance with this Section. Guarantor shall give Consigner immediate written notice of any change in its address.

**13. Advice of Counsel.** Guarantor has had the opportunity to review this Guaranty with its counsel, and such counsel has explained to it the meaning and significance of the provisions of this Guaranty, including but not limited to the waivers and consents contained in this Guaranty, and answered any questions that it had regarding the meaning, significance and effect of the provisions of this Guaranty.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty the day and year first above written.

GUARANTOR:

JONA RECHNITZ, an individual

Address:

Cell Phone: 4628332 83

GUARANTOR:

RACHEL RECHNITZ, an individual

Address: 9533 Sawyer Street
LA. CA, 90035

Cell Phone 551 4860869

2

*NOTE: THE TERMS & CONDITIONS, AND GUARANTY, ON THIS SIDE ARE
INCORPORATED BY REFERENCE INTO THE REVERSE SIDE.
READ ALL TERMS CAREFULLY BEFORE SIGNING ON THE REVERSE*

**TERMS AND CONDITIONS**

This consignment creates a contract of bailment between First International Diamond, Inc., ("FID" or Bailor") and Customer ("Bailee"). FID agrees to deliver, and bailee agrees to accept, for inspection only the merchandise described on the reverse of this document. For purposes of this agreement the place of the making of the contract, and the place of delivery of the merchandise, shall be the offices of FID located in Los Angeles County. Bailee hereby grants to FID a security interest in the merchandise being delivered and consents to the filing of a Form UCC-1, or similar form, in all appropriate jurisdictions. The Merchandise shall be returned to FID upon demand and, if not so promptly returned, the amounts referred to on the reverse of this document shall become immediately due and owing. Title to merchandise delivered pursuant to this consignment shall remain in the name of FID until FID has delivered to Bailee a written bill of sale. Bailee agrees to return the merchandise in good condition. Bailee shall be liable to FID and to FID's successors in interest for any loss or damage to the merchandise resulting from fire, theft, breakage, or any other cause whatsoever. Bailee shall immediately name FID as an additional insured on any and all applicable insurance policies with respect to the merchandise. Delinquent accounts shall be charged the highest legal rate permissible under California law, or 1.5% per month, whichever is lower. In case legal action is required to enforce the terms of this consignment the prevailing party shall be entitled to recover costs and reasonable attorney's fees. All amounts due and owing to, or for the benefit of, FID by Bailee shall be referred to as the "indebtedness". California law shall govern this agreement; and the exclusive venue for suit shall be in the courts located in Los Angeles County, California. Bailee hereby consents to the jurisdiction of the courts located in Los Angeles County, California.

**GUARANTY**

By my signature on the reverse, I also agree in my individual capacity (even though I may place a title or other designation next to my signature) to jointly and severally pay to FID all indebtedness of the Customer at any time arising under, or relating to, any purchases or merchandise delivered hereunder, whether by bailment, purchase, or consignment, including but not limited to, attorney's fees, costs, loss or damage. As guarantor I consent to FID's release or substitution of any other guarantor, or the Customer, or any extension, modification, accelerate, renewal or increase of the Customer's duty to make payment or return the merchandise. As guarantor I waive: (a) presentment, demand, notice, protest, notice of protest, and notice of non-payment, (b) any rights that I might have had under California common law; or (c) the right to insist that FID to first proceed against the Bailee, or any security posted by the Bailee. In case legal action is required to enforce the terms of this guaranty the prevailing party shall be entitled to recover costs and reasonable attorney's fees. California law shall govern this agreement; and the exclusive venue for suit shall be in the courts located in Los Angeles County, California. Guarantor hereby consents to the jurisdiction of the courts located in Los Angeles County, California.

THE DIAMONDS HEREIN MEMOED OR INVOICED HAVE BEEN PURCHASED FROM A LEGITIMATE SOURCE not involved in funding conflict and with the united nations resolutions. The seller hereby guarantees that these diamonds are CONFLICT FREE, based on personal knowledge and/or written guarantee provided by the supplier of these diamonds.

*NOTE: THE TERMS & CONDITIONS, AND GUARANTY, ON THIS SIDE ARE
INCORPORATED BY REFERENCE INTO THE REVERSE SIDE.
READ ALL TERMS CAREFULLY BEFORE SIGNING ON THE REVERSE*

**TERMS AND CONDITIONS**

This consignment creates a contract of bailment between First International Diamond, Inc., ("FID" or Bailor") and Customer ("Bailee"). FID agrees to deliver, and bailee agrees to accept, for inspection only the merchandise described on the reverse of this document. For purposes of this agreement the place of the making of the contract, and the place of delivery of the merchandise, shall be the offices of FID located in Los Angeles County. Bailee hereby grants to FID a security interest in the merchandise being delivered and consents to the filing of a Form UCC-1, or similar form, in all appropriate jurisdictions. The Merchandise shall be returned to FID upon demand and, if not so promptly returned, the amounts referred to on the reverse of this document shall become immediately due and owing. Title to merchandise delivered pursuant to this consignment shall remain in the name of FID until FID has delivered to Bailee a written bill of sale. Bailee agrees to return the merchandise in good condition. Bailee shall be liable to FID and to FID's successors in interest for any loss or damage to the merchandise resulting from fire, theft, breakage, or any other cause whatsoever. Bailee shall immediately name FID as an additional insured on any and all applicable insurance policies with respect to the merchandise. Delinquent accounts shall be charged the highest legal rate permissible under California law, or 1.5% per month, whichever is lower. In case legal action is required to enforce the terms of this consignment the prevailing party shall be entitled to recover costs and reasonable attorney's fees. All amounts due and owing to, or for the benefit of, FID by Bailee shall be referred to as the "indebtedness". California law shall govern this agreement; and the exclusive venue for suit shall be in the courts located in Los Angeles County, California. Bailee hereby consents to the jurisdiction of the courts located in Los Angeles County, California.

**GUARANTY**

By my signature on the reverse, I also agree in my individual capacity (even though I may place a title or other designation next to my signature) to jointly and severally pay to FID all indebtedness of the Customer at any time arising under, or relating to, any purchases or merchandise delivered hereunder, whether by bailment, purchase, or consignment, including but not limited to, attorney's fees, costs, loss or damage. As guarantor I consent to FID's release or substitution of any other guarantor, or the Customer, or any extension, modification, accelerate, renewal or increase of the Customer's duty to make payment or return the merchandise. As guarantor I waive: (a) presentment, demand, notice, protest, notice of protest, and notice of non-payment, (b) any rights that I might have had under California common law; or (c) the right to insist that FID to first proceed against the Bailee, or any security posted by the Bailee. In case legal action is required to enforce the terms of this guaranty the prevailing party shall be entitled to recover costs and reasonable attorney's fees. California law shall govern this agreement; and the exclusive venue for suit shall be in the courts located in Los Angeles County, California. Guarantor hereby consents to the jurisdiction of the courts located in Los Angeles County, California.

THE DIAMONDS HEREIN MEMOED OR INVOICED HAVE BEEN PURCHASED FROM A LEGITIMATE SOURCE not involved in funding conflict and with the united nations resolutions. The seller hereby guarantees that these diamonds are CONFLICT FREE, based on personal knowledge and/or written guarantee provided by the supplier of these diamonds.

# EXHIBIT - 8

**First International Diamond Inc.**
2220 Avenue Of The Stars, Suite 1005
Los Angeles, CA 90067
Tel: (310) 275-1200  Fax: (310) 276-3700

**MEMORANDUM**
**8415**

Date:  12/13/2019

MEMO IS GIVEN OUT
FOR 5 DAYS.

| ACCOUNT NO. | 2119 | PHONE NO. | 310-721-5151 | SHIP VIA | | SP | OV |
|---|---|---|---|---|---|---|---|

| MEMO TO: | SHIP TO: |
|---|---|
| **Jadelle Jewelry LLC**<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 | **Jadelle Jewelry LLC**<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 |

| NO | LOT NUMBER | CARAT | UNITS | DESCRIPTION | % | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | REBBR0001 | | 1 | 5 rows PR 27.48 ct, 370 diamonds | | $36,225.00 | $36,225.00 |
| | | 0.00 | 1 | | | | |

| | | |
|---|---|---|
| SUB TOTAL | | $36,225.00 |
| SHIPPING | | $0.00 |
| MEMO TOTAL | | $36,225.00 |

See Back Side For Full Terms & Conditions    SIGNATURE: _____ .

Page 1 of 1

# EXHIBIT - 9

# First International Diamond Inc.

2220 Avenue Of The Stars, Suite 1005
Los Angeles, CA 90067
Tel: (310) 275-1200  Fax: (310) 276-3700

**MEMORANDUM**

**8431**

Date:  12/30/2019

MEMO IS GIVEN OUT
FOR 5 DAYS.

| ACCOUNT NO. | 2119 | PHONE NO. | 310-721-5151 | SHIP VIA | | | SP | OV |
|---|---|---|---|---|---|---|---|---|

| MEMO TO: | SHIP TO: |
|---|---|
| Jadelle Jewelry LLC<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 | Jadelle Jewelry LLC<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 |

| NO | LOT NUMBER | CARAT | UNITS | DESCRIPTION | % | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | MT-5072 | | 1 | 13.62 PS D-VVS1 GIA, Harry Winston Mt/tr | | ,200,000.00 | $1,200,000.00 |
| 2 | OVEL101 | 10.03 | 1 | DIAM RD E IF 11923922166 | | $90,500.00 | $907,715.00 |
| | | 10.03 | 2 | | | SUB TOTAL | $2,107,715.00 |
| | | | | | | SHIPPING | $0.00 |
| | | | | | | MEMO TOTAL | $2,107,715.00 |

See Back Side For Full Terms & Conditions   SIGNATURE: _____ .

Page 1 of 1

EXHIBIT "7", PAGE 266

# EXHIBIT - 10



**BANK LEUMI USA**
MEMBER FDIC
**350 Madison Avenue ~ 4th Flr**
**New York, NY 10017**

Date: 01/22/20
Account: 8300418101
Page: 1 of 1

## Notice Of Returned Item
## CHARGEBACK

**FIRST INTERNATIONAL DIAMOND INC**
**PO BOX 3765**
**BEVERLY HILLS CA 90212**

The deposited item(s) listed below were returned unpaid and the Transaction Clearing Account noted above was debited for the amount of the item(s) returned.

| Date | Amount | Deposit Amt | Reason |
|------|--------|-------------|--------|
| 01/17/2020 | 922,760.00 | 2,122,760.00 | NSF - Not Sufficient Funds |
| 01/17/2020 | 1,200,000.00 | 2,122,760.00 | NSF - Not Sufficient Funds |

Please call Bank Leumi Customer Service (800-892-5430) with any questions regarding this notice.

---

**WELLS FARGO BANK**   2200
WILSHIRE CRESCENT  9354 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020        11-4288/1210
PAY TO THE ORDER OF First International Diamond Inc  $ 922,760.00
Nine hundred twenty two thousand seven hundred sixty   DOLLARS
JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931
⑇ 1 2 1 0 4 2 8 8 2⑇ 8 6 4 9 2 6 1 3 1 3 ⑇ 2 2 0 0

Item# 5250005545274  01/22/2020 $922,760.00
Reason: NSF - Not Sufficient Funds

**WELLS FARGO BANK**   2201
WILSHIRE CRESCENT  9354 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020        11-4288/1210
PAY TO THE ORDER OF First International Diamond Inc  $ 1,200,000.00
One Million two hundred thousand dollars   DOLLARS
JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931
⑇ 1 2 1 0 4 2 8 8 2⑇ 8 6 4 9 2 6 1 3 1 3 ⑇ 2 2 0 1

Item# 5250005545276  01/22/2020 $1,200,000.00
Reason: NSF - Not Sufficient Funds

NSF

*026002794*
01/22/2020
5250005545274

This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

**Bank Leumi**

### WELLS FARGO BANK          2200

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212          11-4268/1210

DATE 1/17/2020

PAY TO THE ORDER OF  First International Diamond Inc   $ 922,760.00

Nine hundred twenty two thousand  seven hundred sixty  DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

⑈121042882⑈ 8649261313⑈ 2200

4⑈121042882⑈ 8649261313⑈2200   ⑈0092276000⑈

---

NSF

*026002794*
01/22/2020
5250005545276

This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

**Bank Leumi**

### WELLS FARGO BANK          2201

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212          11-4268/1210

DATE 1/17/2020

PAY TO THE ORDER OF  First International Diamond Inc   $ 1,200,000.00

One Million two hundred thousand dollars  DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

⑈121042882⑈ 8649261313⑈ 2201

4⑈121042882⑈ 8649261313⑈2201   ⑈0120000000⑈

EXHIBIT "7", PAGE 269





# EXHIBIT - 11

## Ronald Richards

| | |
|---|---|
| **From:** | Reuven Cohen <rcohen@cohen-williams.com> |
| **Sent:** | Tuesday, February 4, 2020 9:40 PM |
| **To:** | Reuven Cohen; Marc Williams |
| **Subject:** | Jona Rechnitz |

We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it.

If you are represented by counsel, please let us know and provide your counsel's contact information.

Our client's desire is to resolve this matter amicably.

Sincerely,

Reuven L. Cohen
Cohen Williams LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel: 213-232-5163
Fax: 213-232-5167
rcohen@cohen-williams.com
www.cohen-williams.com

1

# EXHIBIT - 12

Law Office of

# Baruch C. Cohen, Esq.

A Professional Law Corporation

---

4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010-3823

Telephone: (323) 937-4501
Facsimile: (323) 937-4503

March 17, 2020

### *Sent via Certified Mail Return Receipt Requested*

Jadelle Jewelry and Diamonds LLC, a
Delaware Limited Liability Company
9621 Brighton Way
Beverly Hills CA 90210

Jadelle Jewelry and Diamonds LLC, a
Delaware Limited Liability Company
c/o Corporate Creations California Inc.
11380 Prosperity Farms Road, Suite 221e
Palm Beach Gardens FL 33410

Jadelle Jewelry, LLC
9621 Brighton Way
Beverly Hills CA 90210

Jadelle Jewelry, LLC
c/o Corporate Creations California Inc.
11380 Prosperity Farms Road, Suite 221e
Palm Beach Gardens FL 33410

Jona & Rachel Rechnitz
9533 Sawyer St.
Beverlywood, CA 90035

Jadelle, Inc., c/o Levin Prado
9454 Wilshire Boulevard, Penthouse 1
Beverly Hills, CA 90212

Re:    **Notice Pursuant to California Civil Code § 1719 of $2,122,760.00 Bad Checks**

Dear Jona & Rachel Rechnitz, Jadelle Jewelry and Diamonds LLC, Jadelle Jewelry, LLC, and
Jadelle, Inc.:

This office is litigation counsel for First International Diamond, Inc ("First International"). This
letter is being sent to you pursuant to California Civil Code § 1719. Please direct any and all
future inquiries, responses, or other communications to my attention.

On 1-17-2020 Jona Rechnitz on behalf of Jadelle Jewelry and Diamonds LLC, Jadelle Jewelry,
LLC, and Jadelle, Inc., issued the following two checks to First International totaling
$2,122,760.00:

| Check # | Date | To | $ |
|---|---|---|---|
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| Total NSF Checks issued by Jona to Plaintiffs | | | **$2,122,760.00** [1] |

---

[1] A true and correct copy of First International's 1-22-2020 Notice of Returned Item for:
(1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00, totaling
$2,122,760.00 is attached hereto as Exhibit "1" and is incorporated herein by this reference.

The two checks were not paid because of insufficient funds ("NSF") in your account with Wells Fargo # 8649261313, and First International demands payment.

Pursuant to California Civil Code § 1719(a)(6)(A), to "pass a check on insufficient funds" means to make, utter, draw, or deliver any check, draft, or order for the payment of money upon any bank, depository, person, firm, or corporation that refuses to honor the check, draft, or order for lack of funds or credit in the account to pay the check.

Pursuant to California Civil Code § 1719(a) you are liable for full amount of the $2,122,760.00 checks plus a service charge of $25.00 for the first bounced check and $35.00 for each subsequent bounced check. You shall also be liable for damages equal to 3x the amount of each check, (totaling $6,368,280.00), if you fail to pay within thirty (30) days from the date this notice is mailed the amount of the checks ($2,122,760.00) in cash, plus the amount of the service charge ($25.00 for the first bounced check and $35.00 for the second bounced check), together with the cost of mailing this notice.

If you have any questions or comments regarding the above, please do not hesitate to call.

Respectfully,

*Baruch Cohen*

BARUCH C. COHEN
cc:    First International
Enclosure

D:\DATA\DOCS\FIRST INTERNATIONAL.JONA - BAD CHECK DEMAND California Civil Code § 1719.wpd
3:17-3:42pm



**BANK LEUMI USA**
MEMBER FDIC
**350 Madison Avenue - 4th Flr**
**New York, NY 10017**

Date: 01/22/20
Account: 8300418101
Page: 1 of 1

**Notice Of Returned Item**
**CHARGEBACK**

**FIRST INTERNATIONAL DIAMOND INC**
**PO BOX 3765**
**BEVERLY HILLS CA 90212**

The deposited item(s) listed below were returned unpaid and the Transaction Clearing Account noted above was debited for the amount of the item(s) returned.

| Date | Amount | Deposit Amt | Reason |
|------|--------|-------------|--------|
| 01/17/2020 | 922,760.00 | 2,122,760.00 | NSF - Not Sufficient Funds |
| 01/17/2020 | 1,200,000.00 | 2,122,760.00 | NSF - Not Sufficient Funds |

Please call Bank Leumi Customer Service (800-892-5430) with any questions regarding this notice.

---

**WELLS FARGO BANK**   2200
WILSHIRE CRESCENT  9334 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020                     11-4284/7210

PAY TO THE ORDER OF First International Diamond Inc  $ 922,760.00
Nine hundred twenty two thousand seven hundred sixty  DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931

⑆121042882⑈864926 1313⑈ 2200

Item# 5250005545274  01/22/2020  $922,760.00
Reason: NSF - Not Sufficient Funds

---

**WELLS FARGO BANK**   2201
WILSHIRE CRESCENT  9334 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020                     11-4284/1210

PAY TO THE ORDER OF First International Diamond Inc  $ 1,200,000.00
One Million two hundred thousand dollars  DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931

⑆121042882⑈864926 1313⑈ 2201

Item# 5250005545276  01/22/2020  $1,200,000.00
Reason: NSF - Not Sufficient Funds

EXHIBIT "7", PAGE 276

NSF

**026002794**
01/22/2020
5250005545274

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

**Bank Leumi**

## WELLS FARGO BANK

2200

WILSHIRE CRESCENT  9454 WILSHIRE BLVD  BEVERLY HILLS, CA 90212

DATE 1/17/2020

11-4288/1210

PAY TO THE ORDER OF First International Diamond Inc          $ 922,760.00

Nine hundred twenty two thousand seven hundred sixty          DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931

⑆121042882⑆8649261313⑈2200

⑆121042882⑆ 8649261313⑈2200          ⑈0092276000⑈

---

NSF

**026002794**
01/22/2020
5250005545276

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

**Bank Leumi**

## WELLS FARGO BANK

2201

WILSHIRE CRESCENT  9454 WILSHIRE BLVD  BEVERLY HILLS, CA 90212

DATE 1/17/2020

11-4288/1210

PAY TO THE ORDER OF First International Diamond Inc          $ 1,200,000.00

One Million tun hundred thousand dollars          DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931

⑆121042882⑆8649261313⑈2201

⑆121042882⑆ 8649261313⑈2201          ⑈0120000000⑈



