

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com.

**OFFICIAL USE**

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees

Sent To  Jonaz Rachel
Street and Apt. No., or PO Box No.
City, State, ZIP+4  Beverlywood CA

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7015 0640 0000 9428 2057

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jona + Rachel Rechnitz
9533 Sawyer St.
Beverlywood CA 90035

9590 9402 5465 9249 9711 53

2. Article Number (Transfer from service label)

7015 0640 0000 9428 2057

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery
                                     3/21/20
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:       ☐ No

T 19

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053              Domestic Return Receipt

Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, CA 90010

CERTIFIED MAIL

7015 0640 0000 9428 2064

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $          Postmark
☐ Certified Mail Restricted Delivery $           Here
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postage

Total Postage and Fees

Sent To  _Jadelle Jewelry_
Street and Apt. No., or PO Box No.
City, State, ZIP+4®  _Beverly Hills, CA_

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7015 0640 0000 9428 2064

$7.40
US POSTAGE
FIRST-CLASS
FROM 90036
MAR 17 2020

LOS ANGELES
CA 900
17 MAR 20
PM 1

BARUCH C. COHEN, ESQ.
LAW OFFICE OF BARUCH C. COHEN, APLC
4929 WILSHIRE BLVD STE 940
LOS ANGELES CA 90010

JADELLE JEWELRY AND DIAMONDS LLC A DELAWARE LLC
9621 PENINSULA WAY
BEVE

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC:  90010685940

NIXIE   910   DE 1   0040   0003/22/20

*1562-02155-18-33

EXHIBIT "8"

1  **SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
2  *rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
3  *msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
4  Costa Mesa, California 92626
Telephone:    714 445-1000
5  Facsimile:    714 445-1002

6  Attorneys for Jadelle Jewelry and Diamonds,
LLC
7

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **LOS ANGELES DIVISION**

12  In re                          Case No. 2:20-bk-13530-BR

13  JADELLE JEWELRY AND DIAMONDS,   Chapter 7
    LLC,
14                                  **PUTATIVE DEBTOR'S MOTION TO**
                    Putative Debtor.   **DISMISS INVOLUNTARY PETITION**
15                                  **AND REQUEST FOR ATTORNEY'S**
                                    **FEES, COSTS, AND DAMAGES; AND**
16                                  **MEMORANDUM OF POINTS AND**
                                    **AUTHORITIES IN SUPPORT**
17
                                    **[Request for Judicial Notice Filed**
18                                  **Concurrently Herewith]**

19                                  **DATE:    June 9, 2020**
                                    **TIME:    10:00 a.m.**
20                                  **CTRM:    1668**
                                            **255 E. Temple Street**
21                                          **Los Angeles, CA 90012**

22

23

24

25

26

27

28

2822821.1

                                            MOTION TO DISMISS
                                            INVOLUNTARY PETITION

EXHIBIT "8", PAGE 281

*(left margin, vertical text)* SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

### *TABLE OF CONTENTS*

*Page*

2

3   I.      INTRODUCTION.................................................................................................1

4   II.     BACKGROUND.................................................................................................3

5           A.      General Background.........................................................................3

6           B.      Victor Franco Noval.........................................................................3

7                   1.      The Noval Action .................................................................3

8                   2.      The Al-Sabah Action Against Noval ....................................5

9                   3.      The Disputes Regarding Noval's Claim ...............................6

10          C.      Peter Marco, LLC.............................................................................7

11                  1.      The Marco Action ................................................................7

12                  2.      The Disputes Regarding Marco's Claim...............................8

13                  3.      First International Diamond, Inc. .........................................9

14                  4.      The Disputes Regarding First International's Claim ...................10

15  III.    A Putative Debtor May Contest an Involuntary Petition with a Motion to Dismiss............10

16  IV.     The Involuntary Petition Must Be Dismissed Because the Petitioning Creditors'
            Alleged Claims are Subject to Bona Fide Disputes .........................................12

17
18          A.      Whether a Bona Fide Dispute Exists is Determined by an Objective
                    Standard.........................................................................................12

19          B.      Ninth Circuit Law—A Dispute as to Any Portion of a Claim Disqualifies
                    the Petitioning Creditor .................................................................13

20  V.      Noval's Alleged Claim is Subject to Bona Fide Disputes ....................................14

21
22  VI.     Marco's Alleged Claim is Subject to Bona Fide Disputes ..................................16

23  VII.    First International's Alleged Claim is Subject to a Bona Fide Dispute................18

24  VIII.   THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE
            PETITIONING CREDITORS FILED THE PETITION IN BAD FAITH .......................19

25  IX.     JADELLE IS ENTITLED TO ATTORNEY'S FEES AND COSTS, AND
            DAMAGES ....................................................................................................22

26
27  X.      CONCLUSION................................................................................................24

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

i

MOTION TO DISMISS
INVOLUNTARY PETITION

1

## TABLE OF AUTHORITIES

2
**Page**

3

### CASES

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................. 10

5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007) ................................... 10

6

*Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019) .................................. 12, 13, 15

7

*Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016) ...................................... 13

8

*Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) ...................... 19, 21, 22

9

*In re BDC*, 56 LLC,  330 F.3d 111 (2d Cir. 2003) ........................................................... 12

10

*In re Bimini Island Air, Inc., 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007)* ........................................ 12

11

*In re Green Hills Dev. Co.*, 741 F.3d 651, 659, 660 (5th Cir. 2014) ..................................... 12, 13

12

*In re John Richards Homes Bldg. Co.*, 439 F.3d 248 (6th Cir. 2006) ................................................. 19

13

*In re Mi La Sul*, 380 B.R. 546 (Bankr. C.D. 2007) ......................................................... 19

14

*In re Mountain Diaries, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) ............................................ 19

15

*In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985) ................................................................ 19

16

*In re Seko Inv., Inc.*, 156 F.3d 1005, 1007-08 (9th Cir. 1998) ......................................................... 13

17

*In re Spade*, 269 B.R. 225 (D. Colo. 2001) ..................................................................... 19

18

*In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013) ........................................ 12

19

*In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057 (9th Cir. 2001) ................................................ 12

20

*In re Wavelength, Inc.*, 61 B.R. 614 (B.A.P. 9th Cir. 1986) ..................................................... 19

21

*In re WLB-RSK Venture*, 296 B.R. 509 (Bankr. C.D.Cal. 2003) .............................................. 18, 19

22

*In the Matter of Smith*, 243 B.R. 169 (Bankr. N.D. Ga. 1999) ................................................ 19, 20

23

*Martinez v. Bally's Louisiana, Inc.*,244 F.3d 474 (5th Cir. 2001) .................................................. 11

24

*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001) ................................................................ 10

25

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ......................................................... 11

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

ii                              MOTION TO DISMISS
                                                                                        INVOLUNTARY PETITION

EXHIBIT "8", PAGE 283

**STATUTES**

11 U.S.C. § 105 .................................................................................................... 18

11 U.S.C. § 105(a) ............................................................................................... 18

11 U.S.C. § 303 ........................................................................................ 12, 13, 21

11 U.S.C. § 303(i)(2) ........................................................................................... 18

11 U.S.C. § 305(a)(1) ........................................................................................... 21

11 U.S.C. § 303(b) ............................................................................................... 11

11 U.S.C. § 303(b)(1) .................................................................................... 13, 18

California Business & Professions Code § 17200 ................................................ 7

**OTHER AUTHORITIES**

*Bankruptcy Evidence Manual* § 801.22 (2009-2010 ed., vol. 2). ...................... 11

Miller and Star, Cal. Real Estate § 37.42 (4th ed.) ............................................ 15

**RULES**

Fed. R. Bankr. P. 1011 ........................................................................................... 3

Fed. R. Bankr. P. 1011(b) ..................................................................................... 10

Fed. R. Bankr. P. 9006(f) ........................................................................................3

Federal Rule of Civil Procedure ("Rule") 12 ................................................ 10, 15, 17

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 10

Fed. R. Civ. P. 8 ................................................................................................... 10

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

iii

MOTION TO DISMISS
INVOLUNTARY PETITION

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), hereby submits this *Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages* (the "Motion") in response to the involuntary petition filed by First International Diamond, Inc., Peter Marco, LLC, and Victor Franco Noval (collectively, the "Petitioning Creditors").  In support of the Motion, Jadelle submits the following memorandum of points and authorities and the concurrently filed Request for Judicial Notice ("RJN").

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

This case should be dismissed because, under binding Ninth Circuit law, the Petitioning Creditors are not eligible to commence it.

**A creditor whose claim is the subject of a bona fide dispute as to amount lacks standing to serve as a petitioning creditor under § 303(b)(1) even if a portion of the claim amount is undisputed.**

*Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019).  A petitioning creditor is ineligible if *any portion* of its claim is subject to a bona fide dispute, even if some amount of the claim is undisputed.  As detailed herein, each Petitioning Creditor's claim is subject to multiple disputes, any single one of which disqualifies the Petitioning Creditor.

The Petitioning Creditors' claims are the subject of pending litigation in other forums. Courts hold that the existence of pending, contested litigation is, on its own, evidence that bona fide disputes exist.  Two of the Petitioning Creditors recently commenced suits against Jadelle and it is clear on the face of their complaints that the alleged claims of all three Petitioning Creditors are subject to bona fide disputes as to both amount and liability.  Among other disputes, the Petitioning Creditors take inconsistent positions regarding the amounts of their alleged claims, fail to account for payments received, seek amounts that Jadelle simply does not owe as a matter of law, and allege unspecified damages "*to be proven at trial*" that have yet to be quantified or adjudicated.  Moreover, two Petitioning Creditors are seeking to collect, in part, the *very same*

1

MOTION TO DISMISS
INVOLUNTARY PETITION

EXHIBIT "8", PAGE 285

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   *claim*.  In short, numerous disputes exist and no amount of mud that the Petitioning Creditors will

2   inevitably sling at Jadelle will change this fact.

3          The Petitioning Creditors carry the heavy burden of demonstrating the absence of a bona

4   fide dispute.  This Court's role is not to resolve the underlying disputes between the parties or to

5   determine the amounts of the alleged claims.  Rather, the Court is to confirm only that "legitimate

6   disputes" exist.  The Petitioning Creditors simply cannot satisfy their high burden of

7   demonstrating that their claims are not subject to any bona fide disputes of law or fact and as to

8   either liability or amount.

9          The involuntary petition should also be dismissed because it was filed in bad faith and for

10  an improper purpose.  Involuntary cases are to be measures "of last resort" and pursued *after*

11  parties exhaust their state law remedies.  The parties are involved in complex, multi-party

12  litigation currently pending in different forums that is in its earliest stages.  The parties' disputes

13  must first be adjudicated elsewhere, not here.  The Petitioning Creditors, apparently unhappy with

14  the progress in their chosen forums, seek to avoid an adjudication on the merits and leverage the

15  payment of their disputed claims.  This is bad faith.

16         Bad faith warranting dismissal exists for multiple reasons.  The Petitioning Creditors

17  commenced this case with claims that are clearly in dispute, which renders them ineligible.  The

18  Petitioning Creditors are using the bankruptcy process as a litigation and collection tactic to

19  leverage the payment of amounts that Jadelle does not owe.  The pending lawsuits demonstrate

20  that state law remedies exist and have not been exhausted.  The Petitioning Creditors are forum

21  shopping; filing this case shortly after one lawsuit was temporarily stayed pending a hearing on

22  the defendants' motion for a stay on 5th Amendment grounds.  The Petitioning Creditors are

23  attempting to circumvent pending court proceedings and Jadelle's constitutional rights.  This

24  involuntary case is the exact type of filing that the safeguards in the Bankruptcy Code are designed

25  to prevent—creditors with disputed claims are not eligible for the extraordinary relief of pushing a

26  business into bankruptcy against its will.  Bankruptcy courts routinely dismiss involuntary cases

27  under these types of circumstances, and this Court should do so here.

28

2822821.1                                    2                         MOTION TO DISMISS
                                                                 INVOLUNTARY PETITION

EXHIBIT "8", PAGE 286

1    For these reasons and as further detailed below, Jadelle respectfully requests that the Court

2    immediately dismiss the involuntary petition and award Jadelle attorney's fees, costs and

3    compensatory and punitive damages.

4

5    **II.    BACKGROUND**

6        **A.    General Background**

7        Jadelle is a Delaware limited liability company.  Rachel Rechnitz is Jadelle's managing

8    member.  Jona Rechnitz is Rachel's husband.

9        On April 6, 2020, the Petitioning Creditors filed an involuntary chapter 7 petition against

10   Jadelle [Docket No. 1] (the "Involuntary Petition").  Through the Involuntary Petition, the

11   Petitioning Creditors alleged claims against Jadelle under penalty of perjury in the following

12   amounts:

| Name of Petitioner | Claim Amount |
|---|---|
| Victor Franco Noval | $5,800,000 |
| Peter Marco, LLC | $7,676,744 |
| First International Diamond, Inc. | $1,976,225 |

18   (*See* RJN, Ex. 1 at Bates Stamp 7.)

19   A response to the Involuntary Petition is due within 21 days of service, plus three

20   additional days if service was by mail.  *See* Fed. R. Bankr. P. 1011 & 9006(f).  Here, the

21   Petitioning Creditors served the Involuntary Petition via mail, and, as a result, Jadelle's response is

22   due on May 1, 2020.

23       **B.    Victor Franco Noval**

24           **1.    The Noval Action**

25   On February 10, 2020, Victor Franco Noval ("Noval") filed a complaint in the Superior

26   Court of the State of California against Jadelle and five other defendants (the "Noval Action").  A

27   true and correct copy of the complaint filed in the Noval Action is attached to the RJN as Exhibit

28   "2" (the "Noval Complaint").  Noval asserts the following causes of action against the defendants:

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    (1) fraud; (2) civil theft; (3) breach of contract; and (4) conspiracy to commit theft, fraud, and

2    fraud by concealment.  (*See* RJN, Ex. 2 at Bates Stamps 29-32.)  Despite listing his claim in the

3    amount of $5.8 million in the Involuntary Petition, in the Noval Complaint, Noval requests

4    damages "in an amount to be proven at trial, but at least $7,000,000," including compensatory

5    damages, treble damages, attorneys' fees, costs of suit, and punitive damages.  (*See id.* at Bates

6    Stamp 30, ¶ 69, and Bates Stamp 33.)  Noval also seeks a constructive trust concerning certain

7    property and the appointment of a receiver.  (*See id.*)

8            In the Noval Complaint, Noval alleges that Jadelle owes him a debt pursuant to a Debt

9    Acknowledgment, Promissory Note and Security Agreement, which is attached to the Noval

10   Complaint as Exhibit "A" (the "Noval Agreement").  (*See* RJN, Ex. 2 at Bates Stamp 32, ¶ 76.)

11   According to the Noval Agreement, Noval loaned Jadelle $2.85 million at 9% interest *per annum*.

12   (*See id.* at Bates Stamp 37.)  The Noval Agreement provides that the monthly interest-only

13   payments were to begin on April 1, 2019 and the maturity date for each installment was six

14   months after such installment was advanced.  (*See id.*)  The Noval Agreement states that the $2.85

15   million loan is secured by unspecified jewelry and a pledge of a 2012 Bugatti vehicle valued at

16   $400,000.  (*See id.* at Bates Stamps 37-38.)  According to the Noval Complaint, the $7,000,000 in

17   purported damages constitutes the value of collateral given to Noval for the loans in the Noval

18   Agreement.  (*See id.* at Bates Stamp 24, ¶ 29.)

19           Noval alleges that "[t]he original principal amount in the Debt Agreement is $2,850,000 at

20   9% interest per month, however, the total debt owed by Defendants later increased to $5,800,000."

21   (*See* RJN, Ex. 2 at Bates Stamp 22, ¶ 15.)  However, nowhere in the Noval Complaint does Noval

22   specify how he calculated the alleged debt of $5.8 million.  (*See generally, id.* at Bates Stamps 18-

23   33.)  Noval does not explain the nature or terms of the amounts in excess of the loans set forth in

24   the Noval Agreement other than to say that the debt grew after a series of further advance

25   transactions.  (*See id.* at Bates Stamps 22, ¶ 15 & 23, ¶ 17.)  In the Noval Complaint, Noval

26   concedes that the Bugatti vehicle was liquidated and alleges that the proceeds were credited

27   against the principal debt in the amount of $400,000.  (*See id.* at ¶ 18.)

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822821.1

4

MOTION TO DISMISS
INVOLUNTARY PETITION

1    Noval asserts that he filed the Noval Complaint not because he expects to recover

2    anything, but because he wants to encourage criminal proceedings against the defendants. (*See,*

3    *e.g.*, RJN, Ex. 2 at Bates Stamp 27, ¶ 49, "At this point, Plaintiff has no realistic belief that

4    Rechnitz will ever pay him back . . . ."; *see also id.* at Bates Stamp 29, ¶ 53, "Plaintiff is hopeful

5    that the publication of this action will cause more victims . . . to report these matters to proper

6    authorities.")

7    **2.    The Temporary Stay of the Noval Action**

8    On March 10, 2020, the court in the Noval Action entered an order temporarily staying the

9    case pending the hearing on the defendants' motion for a stay of proceedings. (*See* RJN Ex. 4,

10    Minute Order, at Bates Stamp 56.)  The Defendants sought a stay to protect their constitutional

11    rights because, as set forth in the Noval Complaint, Noval seeks to encourage criminal

12    proceedings and there is now an ongoing criminal investigation.  The hearing on the motion for

13    stay of proceedings is currently set for November 3, 2020. (*See* RJN Ex. 3, Noval Action Docket,

14    at Bates Stamp 53.)  The time to respond to the Noval Complaint has not yet passed as of the date

15    of this filing.

16    **3.    The Al-Sabah Action Against Noval**

17    On November 25, 2019, Khaled J. Al-Sabah and Jarrah Khaled Al-Sabah (the "Al-

18    Sabahs") commenced an action in the Superior Court of the State of California against Noval and

19    other defendants (the "Al-Sabah Action").  On April 6, 2020, the Al-Sabah Plaintiffs filed a

20    motion for leave to file a first amended complaint (the "Proposed Al-Sabah First Amended

21    Complaint").   A true and correct copy of relevant excerpts of the Proposed Al-Sabah First

22    Amended Complaint is attached to the RJN as Exhibit "5."

23    Through the Proposed Al-Sabah First Amended Complaint, the Al-Sabahs seek leave to

24    add Jadelle and others as defendants to the Al-Sabah Action. (*See* RJN, Ex. 5 at Bates Stamp 66.)

25    The primary thrust of the Al-Sabah Action is that Noval's father, Victorino Noval ("Victorino"),

26    and Noval defrauded the Al-Sabahs out of $163 million. (*See id.* at Bates Stamp 69, ¶ 346.)  In

27    the proposed twenty-eighth cause of action, the Al-Sabahs allege that the monies loaned by Noval

28    to Jadelle and referenced in the Noval Agreement were the monies wrongfully obtained by

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "8", PAGE 289

1   Victorino and Noval from the Al-Sabahs. (*See id.* at Bates Stamp 68, ¶ 339.) Moreover, the Al-

2   Sabahs argue that monies loaned by Noval to Jadelle are property of the Al-Sabahs, and not

3   Noval. (*See id.* at Bates Stamps 69-70, ¶ 347.) A few of the relevant allegations are as follows:

4   • "Khaled . . . alleges, that each and every dollar that the Jadelle Entities borrowed

5      from Victorino and Franco pursuant to the written agreement was funded by the

6      above referenced monies belonging to Khaled which have been wrongly and

7      illegally obtained by Victorino, Franco and the other conspiring Defendants. . . ."

8      (*Id*. at Bates Stamp 68, ¶ 339.)

9   • "Khaled is further informed and believes that the original principal amount

10     borrowed by the Jadelle Entities was $2,850,000, that the loan was secured by

11     $7,000,000 worth of diamonds delivered to Franco and Victorino, as well as a 2012

12     Bugatti, and that after a series of transactions, the debt on the loan grew to

13     $5,800,000." (*Id.* at Bates Stamp 68, ¶ 340.)

14  • "Khaled disputes Franco's and Victorino's claim for damages in the Rechnitz

15     Lawsuit, while any damages Franco and Victorino attempt to recover from the

16     Rechnitz Defendants in the Rechnitz Lawsuit . . . are the legal possession of

17     Khaled." (*Id.* at Bates Stamp 69-70, ¶ 347.)

18      **4.      The Disputes Regarding Noval's Claim**

19      As further detailed and analyzed below, the disputes concerning Noval's claim include the

20  following:

21      1.      Noval seeks damages that are disputed and have yet to be quantified or proven (*e.g.*

22              according to Noval, at least $7 million to be proven at trial plus additional

23              amounts);

24      2.      Jadelle made re-payments to Noval that are not reflected in his claim;

25      3.      Noval's claim has not been reduced by the $400,000 he received on account of the

26              Bugatti;

27      4.      Noval has not explained how he calculated the alleged amount of $5,800,000;

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

5.     Noval has not demonstrated the terms of amounts in excess of the Noval

Agreement and that such amounts are now due;

6.     Noval is charging usurious interest; and

7.     The Al-Sabahs assert that any amounts allegedly owed by Jadelle to Noval is their

property.

**C.    Peter Marco, LLC**

       **1.    The Marco Action**

On March 18, 2020, David Rovinsky Inc. ("Rovinsky") filed a complaint against Peter

Marco LLC ("Marco") and Peter Voutsas in the United States District Court for the Central

District of California asserting the following causes of action: (1) negligence; (2) conversion; (3)

fraud; (4) negligent misrepresentation; (5) civil theft; and (6) aiding and abetting conversion and

civil theft (the "Marco Action").  Rovinsky seeks damages of $1.13 million.  (*See* RJN, Ex. 7 at

Bates Stamp 93, ¶ 21.)

On April 24, 2020, *seven days after the Involuntary Petition was filed*, Marco filed an

amended third party complaint (the "Marco Complaint") against Jona Rechnitz, Rachel Rechnitz,

and Levin Prado (collectively, the "Marco Complaint Defendants").  A true copy of the Marco

Complaint is attached to the RJN as Exhibit "7."  Marco asserts the following causes of action: (1)

fraud; (2) civil theft; (3) embezzlement; (4) civil conspiracy to commit theft, fraud, and fraud by

concealment; (5) conversion; (6) breach of contract; (7) breach of the implied covenant of good

faith and fair dealing; (8) account stated; and (9) unethical business practices in violation of

California Business & Professions Code § 17200.  (*See* RJN, Ex. 7 at Bates Stamps 117-128.)

Despite listing his claim in the amount of $7,676,744 in the Involuntary Petition, in the Marco

Complaint, Marco requests damages of $6,950,444.40 but subject to proof at trial, including

compensatory damages, treble damages, attorneys' fees, costs of suit, and punitive damages.  (*See*

*id.* at Bates Stamp 117, ¶ 90.)

Marco did not name Jadelle as a defendant in the Marco Complaint.  (*See id.* at Bates

Stamp 89.)  Marco alleges that he excluded Jadelle due to the automatic stay and that he intends to

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   pursue his disputed litigation claims against Jadelle before this Court  (*See id.* at Bates Stamp 91, ¶

2   10.)

3           Marco alleges that he consigned jewelry to Jona Rechnitz and that Mr. Rechnitz absconded

4   with the consigned jewelry.  (*See generally, id.* at Bates Stamps 119-120, ¶ 103, alleging that

5   "Jona swindled Marco . . . by absconding with Marco's Consigned Jewelry. . . .")  Specifically,

6   Marco alleges that he consigned sixteen pieces of jewelry *to Mr. Rechnitz*, **not Jadelle**, and he

7   includes a table listing the stated values in the total amount of $6,950,444.40.  (*See id.* at Bates

8   Stamp 99, ¶ 33, "Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry

9   **to Rechnitz**." (emphasis added); *see also id.* at Bates Stamp 100, ¶ 35, "Marco LLC consigned

10  Rovinsky's Ring & Necklace **to Rechnitz**." (emphasis added); *id.* at Bates Stamp 118, ¶ 95, "***Jona***

11  ***and Third-Party Defendants*** have obtained and received property from Marco, the $6,950,444.40

12  of Consigned Jewelry. . . ." (emphasis added).)  Marco also admits that Marco asserted the wrong

13  claim amount in the Involuntary Petition:  "The petitioning creditors are . . . Peter Marco, LLC,

14  with Trade Debt/Damages of $7,676,744.00 (**The correct amount is $6,950,444.40**)."  (*See id.* at

15  Bates Stamp 91, ¶ 9.)

16          The time to respond to the Marco Complaint has not yet passed as of the date of this filing.

17  A true copy of the docket in the Marco Action is attached to the RJN as Exhibit "8."

18                  **2.      The Disputes Regarding Marco's Claim**

19          As further detailed and analyzed below, the disputes concerning Marco's claim include the

20  following:

21          1.      According to Marco, Marco consigned jewelry to Mr. Rechnitz, as opposed to

22                  Jadelle;

23          2.      Marco seeks damages that that are disputed and have yet to be quantified or proven

24                  (*e.g.* according to Marco, an amount to be proven at trial, but at least

25                  $6,950,444.40, plus additional amounts, such as punitive damages, interest and

26                  attorney's fees);

27          3.      Marco and the third petitioning creditor, First International Diamond, Inc. ("First

28                  International") are pursuing Jadelle, in part, for the same exact claim;

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

4.     Marco's list of items allegedly consigned are subject to multiple disputes, including, without limitation, on the basis that certain items were never consigned or received and memos to the contrary appear to have been fabricated, certain items were provided to customers with Marco's knowledge and permission and are still with those customers, and the stated values asserted by Marco for certain consigned items are incorrect;

5.     Marco was previously paid by Jadelle for one particular item; and

6.     For the items owned by Rovinsky, Marco seeks to collect amounts in excess of the damages sought by Rovinsky.

### 3.     First International Diamond, Inc.

First International alleged a claim for $1,976,225.  First International has not commenced any litigation against Jadelle for this claim and it is not entirely clear how First International calculated its claim.  However, Jadelle disputes that First International is owed the amount in the Involuntary Petition.  It is Jadelle's understanding that First International's claim arises from three different consigned sets of jewelry:

First, Marco's alleged claim includes a stone owned by First International at the stated value of $1,333,695.00.  (*See* RJN, Ex. 7 at Bates Stamp 100, lines 9-10.)  However, Jadelle understands that First International's claim is primarily based on the consignment of this same stone with a stated value of $1,200,000.  Marco and First International are attempting to collect, in part, on the same claim and this claim is already the subject of the pending Marco Action.  This is a fact that both Petitioning Creditors must recognize.

Second, First International consigned three rings and a bracelet with a stated collective value of approximately $1,000,000.  Jadelle understands that First International later reacquired the items from a third party for $300,000.

Third, First International consigned a stone with a stated value of $950,000.  Jadelle understands that First International later paid $440,000 to reacquire the stone, *plus* purchase other jewelry, which was owned by another party and not First International.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**4.     The Disputes Regarding First International's Claim**

As further detailed and analyzed below, the disputes concerning First International's claim include the following:

1.     It is not entirely clear how First International calculated its claim based on the items discussed above;

2.     First International and Marco are pursuing Jadelle, in part, for the same exact claim and any alleged damage arising from that claim is subject to proof and in dispute;

3.     First International seems to assert a claim based on the stated value for certain items, as opposed to the actual cost that First International paid to reacquire those items; and

4.     First International's claim should not include amounts that it paid to acquire jewelry that did not belong to it, and Jadelle should be credited for the value of those items.

**III.    A PUTATIVE DEBTOR MAY CONTEST AN INVOLUNTARY PETITION WITH A RULE 12 MOTION TO DISMISS**

Pursuant to the Federal Rules of Bankruptcy Procedure, an alleged debtor may answer and contest an involuntary petition in the manner prescribed by Federal Rule of Civil Procedure ("Rule") 12.  *See* Fed. R. Bank. P. 1011(b).  Rule 12 provides for the service of an answer or the filing of several dispositive motions, including motions to dismiss pursuant to Rule 12(b).

Rule 12(b)(6) tests the legal sufficiency of the averments in the complaint—here, the involuntary petition.  A complaint shall be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  This occurs when a plaintiff's complaint fails to provide grounds for his or her entitlement to relief.  *See* Fed. R. Civ. P. 8; *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007).  A plaintiff must allege sufficient facts to support a cognizable legal theory.  *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).

In evaluating the sufficiency of a complaint, the United States Supreme Court employs a two-pronged approach.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, the Supreme Court identifies and then disregards any legal conclusions as they are not entitled to an assumption of

EXHIBIT "8", PAGE 294

1  truth. *See id.* at 678 & 680-81.  Mere "labels and conclusions" and/or "formulaic recitation[s] of

2  the elements of a cause of action" will not suffice to overcome a motion to dismiss.  *See Twombly*,

3  550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of

4  action, supported by mere conclusory statements, do not suffice.").  Second, the Supreme Court

5  evaluates whether the non-conclusory factual allegations support a plausible entitlement to relief.

6  *See Iqbal* at 681.  "A claim has facial plausibility when the plaintiff pleads factual content that

7  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8  alleged." *Id.* at 678 (internal citations omitted). "Factual allegations must be enough to raise a

9  right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555.

10         In deciding a motion to dismiss, a court may consider certain documents as part of the

11  complaint.  A court may consider "documents attached to the complaint, documents incorporated

12  by reference in the complaint, or matters of judicial notice. . . ."  *See United States v. Ritchie*, 342

13  F.3d 903, 908 (9th Cir. 2003).  "Even if a document is not attached to a complaint, it may be

14  incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

15  document forms the basis of the plaintiff's claim." *Id.*

16         Factual assertions in pleadings are "judicial admissions binding on the party who made

17  them." *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Judicial

18  admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need

19  for proof of the fact." *Id.*  Also, unlike ordinary evidentiary admissions, judicial admissions

20  cannot be refuted with evidence or otherwise.  In sum, a judicial admission is conclusive, binding,

21  and may not be controverted or explained by the party who made it.  *See Lacelaw Corp.*, 861 F.2d

22  at 226; *see also Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001); Hon.

23  Barry Russell, *Bankruptcy Evidence Manual* § 801.22 (2009-2010 ed., vol. 2).

24

25

26

27

28

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**IV.    THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE**

**PETITIONING CREDITORS' ALLEGED CLAIMS ARE SUBJECT TO BONA**

**FIDE DISPUTES**

Here, the case must be dismissed for multiples reasons, including, but not limited to, the

fact that the Petitioning Creditors are not eligible to commence this case as required by 11 U.S.C.

§ 303(b).[1]

Section 303(b) of the Bankruptcy Code provides that:

> An involuntary case against a person is commenced by the filing with
> the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, *each of which is either a holder of a claim*
> *against such person that is not contingent as to liability or the subject*
> *of a bona fide dispute as to liability or amount,* or an indenture trustee
> representing such a holder, if such noncontingent, undisputed claims
> aggregate at least $16,750 more than the value of any lien on property
> of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or
> insider of such person and any transferee of a transfer that is voidable
> under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or
> more of such holders that hold in the aggregate at least $16,750 of such
> claims.

11 U.S.C. § 303(b) (emphasis added).

**A.    Whether a Bona Fide Dispute Exists is Determined by an Objective Standard**

A claim is subject to a bona fide dispute if "there is an objective basis for either a factual or

legal dispute as to the validity of the debt." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057,

1064 (9th Cir. 2001).  Importantly, in the Ninth Circuit, "[a] bankruptcy court is not asked to

evaluate the potential outcome of a dispute, but merely to determine whether there are facts that

give rise to a *legitimate disagreement* over whether money is owed, or, in certain cases, how

much."  *See id.* (emphasis added); *see also In re BDC*, 56 LLC  330 F.3d 111, 117-18 (2d Cir.

2003) ("The legislative history makes it clear that Congress intended to disqualify a creditor

whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is

---

[1]    For purposes of this Motion, Jadelle has focused on certain disputes concerning the claims of the Petitioning
Creditors.  However, Jadelle also disputes other elements the Petitioning Creditors must prove for the entry of an
order for relief.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

MOTION TO DISMISS
INVOLUNTARY PETITION

1  factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed

2  debt simply to avoid the stigma of bankruptcy.")  "[T]he burden is on the petitioning creditors to

3  show that no bona fide dispute exists." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d at 1064;

4  *In re Bimini Island Air, Inc.*, 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007).

5       **"Bankruptcy courts routinely consider the existence and character of pending but**

6  **unresolved litigation as evidence of a bona fide dispute."**  *In re Green Hills Dev. Co.*, *L.L.C.*,

7  741 F.3d 651, 659 (5th Cir. 2014); *see also In re TPG Troy, LLC*, 492 B.R. 150, 159-60 (Bankr.

8  S.D.N.Y. 2013), *subsequently aff'd*, 793 F.3d 228 (2d Cir. 2015) (stating that courts have held that

9  the existence of pending litigation strongly suggests the existence of a bona fide dispute).

10      **B.**    <u>**Ninth Circuit Law—A Dispute as to Any Portion of a Claim Disqualifies the**</u>

11          <u>**Petitioning Creditor**</u>

12       The Ninth Circuit made clear that a dispute as to any portion of a claim disqualifies the

13  petitioning creditor.  In *Blixseth,* the Ninth Circuit held unequivocally as follows:

14          A creditor whose claim is the subject of a bona fide dispute as to
        amount lacks standing to serve as a petitioning creditor under

15          § 303(b)(1) *even if a portion of the claim amount is undisputed*."

16  *Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019) (emphasis added); *see also*

17  *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 10 (1st Cir. 2016); *In re Green Hills Dev.*

18  *Co.*, 741 F.3d 651, 660 (5th Cir. 2014).

19       The Ninth Circuit specifically rejected the argument that a creditor with a partially

20  undisputed claim should not be disqualified as a petitioning creditor.  *See Blixseth*, 942 F.3d at

21  1186-87.  The Ninth Circuit emphasized that creditors should not be permitted to use any

22  concession or undisputed portion to leverage the collection of the disputed amount.  *See id.* at

23  1186-87; *see also In re Seko Inv., Inc.*, 156 F.3d 1005, 1007-08 (9th Cir. 1998) (Section 303(b)(1)

24  "aim[s] to prevent creditors from using the threat of an involuntary petition to bully an alleged

25  debtor into settling a speculative or validly disputed debt.").

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

13

## V. THE PETITIONING CREDITORS' CLAIMS ARE SUBJECT TO MULTIPLE DISPUTES

The Petitioning Creditors have not and cannot satisfy their high burden of demonstrating that their claims are not subject to bona fide disputes as to fact or law and as to either liability or amount. While many disputes exist, the disputes demonstrated by pleadings subject to judicial notice are sufficient to disqualify each of the Petitioning Creditors. Moreover, as discussed above, the existence of pending litigation, in and of itself, is evidence of bona fide disputes.

### A. Noval's Alleged Claim is Subject to Bona Fide Disputes

Noval's alleged $5.8 million claim is subject to several bona fide disputes. Each dispute on its own disqualifies Noval as a petitioning creditor.

First, Noval has not yet quantified or proven his alleged damages. The Noval Complaint is a judicial admission that the amount of Noval's alleged claim is subject to a bona fide dispute. According to Noval, his claim is uncertain and has yet to be stated, liquidated and quantified. Noval seeks damages to "be proven at trial. . . ." (*See, e.g.*, RJN, Ex. 2 at Bates Stamp 30, ¶ 60.) In addition, Noval seeks other types of unquantified damages, such as treble damages, attorney's fees, costs of suit, and punitive damages. (*See id.* at Bates Stamp 33.) By Noval's own admission, Noval's entitlement to damages and the amounts he ultimately seeks *have yet to be proven* (and over Jadelle's defense).

Second, as a matter of law, Noval is not entitled to $7 million. Under no circumstances would Noval be paid this sum. As set forth in the Noval Complaint, the unspecified jewelry was *collateral*. (*See id.* at Bates Stamp 24, ¶ 60.) Like any other lender, at most, Noval is owed the amounts loaned, plus the agreed to interest (subject to the other disputes herein). A lender is not entitled to the surplus from any collateral in excess of the amounts needed to pay the loan. Rather, any surplus is returned to the borrower. Thus, for this reason, Noval's asserted claim of $7 million is subject to bona fide dispute.

Third, Noval has filed conflicting statements under penalty of perjury regarding the amount of his claim. According to the (verified) Noval Complaint, Noval asserts that his claim is *at least* $7 million. (*See, e.g.*, RJN, Ex. 2 at Bates Stamp 30, ¶ 60; *see also id.* at Bates Stamp 35.)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    However, the Involuntary Petition, which is signed under penalty of perjury, states he is owed

2    only $5.8 million.  These conflicting admissions prove that that amount of Noval's claim is in bona

3    fide dispute.

4         Noval's apparent attempt to sidestep disputes concerning his claim by listing a different,

5    lower amount in the Involuntary Petition does not render him eligible.  Noval is taking

6    inconsistent positions in two different forums.  Noval's complaint proves that, on the one hand, he

7    is trying to recover at least $7 million, plus more in the Noval Action, while, on the other hand, he

8    attempts to force Jadelle into bankruptcy by representing he has a much lower claim.  However,

9    Noval cannot avoid Ninth Circuit precedent.  The Ninth Circuit's decision in *Blixseth* prevents this

10   type of maneuver.  The fact remains that Noval's claim is in bona fide dispute.  Contrary to the

11   Involuntary Petition, Noval is not asserting a claim of only $5.8 million, but of millions more.

12   Besides, as explained herein, Jadelle disputes that Noval is owed even $5.8 million.

13        Fourth, Noval's claim is disputed because it does not account for payments made by

14   Jadelle.  In the Noval Complaint, Noval claims that he liquidated the Bugatti vehicle, received

15   proceeds of $400,000, and applied the proceeds against the debt allegedly owed.  (*See* RJN, Ex. 2

16   at Bates Stamp 23, ¶ 18.)  Yet, it appears that neither the Involuntary Petition nor the Noval

17   Complaint actually reflect a $400,000 reduction to Noval's claim.  This is in addition to payments

18   made by Jadelle.  Thus, from the Noval Complaint alone, there are legitimate, bona fide disputes

19   over the amount of Noval's claim against Jadelle.

20        Fifth, Noval has not substantiated the amount and terms of his claim.  To the extent Noval

21   asserts that he is owed $5.8 million, he has not explained how he calculated that sum.  The Noval

22   Agreement reflects loans totaling only $2.85 million and the terms of repayment for *those loans*.

23   (*See* RJN, Ex. 2 at Bates Stamp 37.)  Noval's assertion that the maturity dates for advances in

24   excess of the amounts set forth in the Noval Agreement are reflected in the Noval Agreement is

25   directly contradicted by the terms of that agreement.  (*Compare id.* at Bates Stamp 22, ¶ 15 & 23,

26   ¶ 17; *with id.* at Bates Stamp 37, § 3, stating the maturity date is based on the date of each advance

27   set forth in § 1.)  Noval has not demonstrated the terms of amounts in excess of the Noval

28   Agreement or demonstrated that such amounts are currently due.  In addition to disputes

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "8", PAGE 299

1   concerning the amounts subject to the Noval Agreement, Jadelle disputes that any amounts in

2   excess of the Noval Agreement are due.

3         Sixth, Noval is charging usurious interest.  Noval claims to be charging "9% interest **per**

4   **month**[.]"  (*See* RJN, Ex. 2 at Bates Stamp 22, ¶ 15 (emphasis added).)  However, the Noval

5   Agreement specifies that the interest on the loans reflected in the agreement are to accrue interest

6   at 9% **per annum** (paid monthly).  (*See id.* at Bates Stamp 37, § 2.)  Noval's usurious interest

7   creates a host of remedies and disputes.  A borrower charged usurious rates can bring an action for

8   money paid, can recover penalty damages, can cancel future interest, and can have payments

9   applied to principal.  *See, e.g.*, Miller and Star, Cal. Real Estate § 37.42 (4th ed.) (detailing various

10  remedies).

11        Seventh, the Al-Sabah Action complicates matters further and casts Noval's claim into

12  further dispute.  As demonstrated by their complaint, the Al-Sabahs allege that amounts loaned to

13  Jadelle by Noval belong to them.  (*See* RJN, Ex. 5 at Bates Stamp 69-70, ¶ 347.)  Thus, according

14  to the Al-Sabahs, they should be paid and not Noval, and Noval has no claim against Jadelle at all.

15  (*See id.* at Bates Stamp 69-70 ¶ 347, "Khaled disputes Franco's and Victorino's claim for damages

16  in the Rechnitz Lawsuit. . . .")

17        For all of these reasons, Noval's claim is subject to multiple bona fide disputes.  The

18  majority of these disputes are demonstrated by Noval's own words in his complaint, which is

19  subject to judicial notice and is appropriate to consider on a Rule 12 motion to dismiss.

20  Accordingly, Noval is not eligible to commence the petition.

21        **B.**    **Marco's Alleged Claim is Subject to Bona Fide Disputes**

22        Marco's alleged claim for $7,676,744 against Jadelle is subject to bona fide disputes as to

23  both liability and amount.  Each dispute on its own disqualifies Marco as a petitioning creditor.

24        First, the Marco Complaint is a judicial admission that the amount of Marco's claim in the

25  Involuntary Petition is incorrect and, as such, is subject to a bona fide dispute.  Marco admits that

26  the amount of the $7,676,744 claim that Marco alleges in the Involuntary Petition is incorrect.

27  (*See* RJN, Ex. 7 at Bates Stamp 91,  ¶ 9, "The petitioning creditors are . . . Peter Marco, LLC, with

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

16

1    Trade Debt/Damages of $7,676,744.00 (**The correct amount is $6,950,444.40**).)"  Despite

2    knowledge of this material error, Marco has not attempted to correct it.

3         Second, Marco is taking inconsistent positions across different forums with respect to *who*

4    he consigned jewelry to.  Marco cannot have it both ways.  Marco cannot allege that he consigned

5    items to Mr. Rechnitz to bolster his action against Mr. Rechnitz in district court, then

6    simultaneously assert the same claim against Jadelle to pursue the Involuntary Petition.  In the

7    Marco Action, Marco is separately trying to collect the same debt from Mr. Rechnitz (not Jadelle)

8    based on goods that Marco alleges were consigned to Mr. Rechnitz (not Jadelle).  In the Marco

9    Complaint, Marco repeatedly states that he consigned jewelry to Mr. Rechnitz:

10        •      "Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry *to*

11               *Rechnitz*." (RJN, Ex. 7 at Bates Stamp 99, ¶ 33, (emphasis added).)

12        •      "Marco LLC consigned Rovinsky's Ring & Necklace *to Rechnitz*."  (*Id.* at Bates

13               Stamp 100, ¶ 35 (emphasis added).)

14        •      "***Jona and Third-Party Defendants*** have obtained and received property from

15               Marco, the $6,950,444.40 of Consigned Jewelry . . . ." (*Id.* at Bates Stamp 118, ¶ 95

16               (emphasis added).)

17        Third, Marco is taking inconsistent positions with respect to the amount of his claim.  Like

18   Noval, it appears that Marco is attempting to understate the amount he is seeking to recover.  In

19   the Marco Action, Marco is seeking damages to be proven at trial, but *at least* $6,950,444.40.

20   (*See id.* at Bates Stamp 117, ¶ 90.)  Marco also seeks treble damages, punitive damages, interest,

21   and attorney's fees.  (*See id.* at Bates Stamps 119-120, ¶¶ 98, 104, and 105.)  Therefore, by

22   Marco's own admission, his total claim has yet to be liquidated and quantified, and is subject to

23   proof.  Moreover, to the extent that Marco seeks to recover damages based on the alleged value of

24   consigned items, the amount of damages must be proven at trial.  Like Noval, the nature of

25   Marco's allegations alone also create a number of factual disputes and legal issues to be

26   adjudicated.

27        Fourth, and incredibly, Marco and First International are double-counting the same claim.

28   As reflected in the Marco Complaint, one item was owned by First International and the stated

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

17

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  value, according to Marco, is $1,333,695.00.  (*See id.* at Bates Stamp 100, lines 9-10.)  However,

2  Jadelle understands that First International is pursuing that same claim (albeit in the amount of

3  $1,200,000).  Marco and First International cannot dispute that they both are attempting to

4  recover, in part, the same claim, and Jadelle cannot be obligated to pay both.  This fact alone puts

5  the claims of both Marco and First International into bona fide dispute.

6          Fifth, numerous disputes exist with respect to the items allegedly consigned by Marco.

7  Disputes exist as to the terms of consigned items and whether any amount is due on certain items.

8  Disputes exist as to whether particular items included in Marco's claim were consigned and

9  whether memos were fabricated.  Disputes exist as to the stated value of items that were

10  consigned, whether Marco is entitled to be paid the stated value (or some lesser amount), and

11  whether Marco was previously paid on account of other items.  For example, with respect to the

12  items owned by Rovinsky, Marco seeks to recover damages from Jadelle in excess of the amounts

13  asserted by Rovinsky.  (*Compare* RJN, Ex. 7 at Bates 93, ¶ 21; *with id.* at Bates Stamp 99, lines

14  12-13 and 16.)  While a determination regarding the existence of certain of these disputes may not

15  be appropriate in connection with the Motion, Jadelle wants the Court to be aware of the full scope

16  of the disputes with Marco's claim.

17          For all of these reasons, Marco's claim is subject to multiple bona fide dispute.  The

18  majority of these disputes are demonstrated by Marco's own words in his complaint, which is

19  subject to judicial notice and is appropriate to consider on a Rule 12 motion to dismiss.

20  Accordingly, Marco is not eligible to commence the petition.

21          **C.      <u>First International's Alleged Claim is Subject to a Bona Fide Dispute</u>**

22          Jadelle disputes that First International is owed $1,976,225.  It appears that the majority of

23  First International's claim is premised on the same item included in Marco's claim.  (*See* RJN, Ex.

24  7 at Bates Stamp 100, lines 9-10.)  The fact that two Petitioning Creditors (Marco and First

25  International) are knowingly overstating their claims by seeking to collect the same sum, standing

26  alone, creates a bona fide dispute.  Moreover, to the extent that First International is seeking to

27  recover the alleged stated value of consigned items and amounts it paid to purchase jewelry

28  belonging to third parties, First International's claim is subject to bona fide disputes.  First

2822821.1                                  18                          MOTION TO DISMISS
                                                                    INVOLUNTARY PETITION

1  International's claim should not include amounts that it paid to acquire jewelry that did not belong

2  to it and Jadelle should be credited for the value of those items.  Accordingly, First International's

3  claim is subject to bona fide disputes and First International is not eligible to commence the

4  petition.

5       First International (as well as the other Petitioning Creditors) bear the burden of

6  demonstrating that their claims are not the subject of bona fide disputes.  First International has yet

7  to even itemize its claim and it is not entirely clear how First International calculated its claim.

8  Under the Supreme Court decisions in *Twombly* and *Iqbal*, the Petitioning Creditors cannot rely on

9  conclusory statements regarding the amount of their respective claims or that their claims are not

10 subject to bona fide disputes to overcome the Motion.

11      In sum, each Petitioning Creditor's claim is subject to multiple bona fide disputes.

12 Moreover, the disqualification of any one of the Petitioning Creditors requires dismissal of the

13 Involuntary Petition.  Because the Petitioning Creditors are pursuing the Involuntary Petition on

14 the theory that Jadelle had at least twelve creditors as of the petition date, pursuant to § 303(b)(1),

15 the Involuntary Petition requires three eligible petitioning creditors.  *See* 11 U.S.C. § 303(b)(1).

16 Accordingly, each of the foregoing disputes requires the case to be dismissed.

17

18 **VI.    THE INVOLUNTARY PETITION MUST BE DISMISSED BECAUSE THE**

19 **PETITIONING CREDITORS FILED THE PETITION IN BAD FAITH**

20      Bankruptcy courts uniformly recognize the authority to dismiss an involuntary case

21 commenced in bad faith.  The fact that an involuntary petition can be dismissed is implicit in

22 § 303(i)(2), which authorizes damages against any petitioner that commences a case in bad faith.

23 The bankruptcy courts also have the inherent authority embodied in § 105 to dismiss bad-faith

24 filings.  *See In re WLB-RSK Venture*, 296 B.R. 509, 513 (Bankr. C.D. Cal. 2003) ("Since

25 § 303(i)(2) seems to imply that an involuntary petition can be dismissed for bad faith, and

26 numerous cases support the proposition that bankruptcy petitions of any kind should not be

27 employed for improper purposes, § 105(a) would seem to authorize the court to dismiss an

28 involuntary based on a finding of bad faith.").

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "8", PAGE 303

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    In the Ninth Circuit, the existence of bad faith is a question of fact measured by an

2   objective test.  *See In re Wavelength, Inc.*, 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986).  That is, if a

3   reasonable person would believe that the subject conduct constitutes bad faith, then a finding of

4   bad faith is appropriate.  *See id.*; *see also In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal.

5   2007).

6    Bad faith typically exists where, as here, the petitioners file the involuntary petition for an

7   improper purpose.  Courts have found that an involuntary petition was filed in bad faith when the

8   petitioning creditor actually knows that it's claim is subject to a bona fide dispute as to liability or

9   amount.  *See In re John Richards Homes Bldg. Co.*, 439 F.3d 248 (6th Cir. 2006) (holding that a

10   petition was filed in bad faith given the overwhelming evidence of a bona fide dispute); *see also In*

11   *re Mountain Diaries, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) (finding that it was untenable

12   that a single petitioning creditor could have filed its claim in good faith when a substantial portion

13   of its claim was subject to legitimate dispute); *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d

14   701, 707 (9th Cir. 2004) ("Filing an involuntary petition should be a measure of last resort because

15   even if the petition is filed in good-faith, it can chill the alleged debtor's credit and sources of

16   supply, and scare away his customers."); *In re Reid,* 773 F.2d 945, 946 (7th Cir. 1985) ("[T]he

17   filing of an involuntary petition is an extreme remedy with serious consequences to the alleged

18   debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and

19   public embarrassment.").

20    Similarly, courts have found bad faith where the petitioners used the involuntary process as

21   a customary collection action prior to exhausting available state law remedies.  *See In re Smith*,

22   243 B.R. 169, 197-98 (Bankr. N.D. Ga. 1999) (dismissing a case commenced by the petitioner

23   after an unfavorable ruling in state court and without exhausting state law remedies).  Bankruptcy

24   courts also routinely dismiss involuntary cases commenced as a litigation tactic to gain an

25   advantage in ongoing litigation or to control the forum of the dispute.  *See, e.g.*, *In re WLB-RSK*

26   *Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003) (dismissing an involuntary petition filed "as

27   part of a forum shopping litigation tactic. . . ."); *In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001)

28   (dismissing an involuntary petition filed as "a self-serving litigation tactic to control the forum and

1  enlist a trustee to conduct and pay for discovery into the Debtor's affairs.").  According to the

2  Ninth Circuit, an involuntary case "should be a measure of last resort. . . ."  *See Higgins*, 379 F.3d

3  at  707.

4          The Petitioning Creditors commenced this case in bad faith as follows:

5          The Petitioning Creditors commenced this case despite the fact that their claims are subject

6  to multiple bona fide disputes.  The disputes are self-evident from the Petitioning Creditors' own

7  pleadings, conflicting statements, and the positions they have chosen to take.  The fact that

8  litigation is pending is evidence of bona fide disputes.  Moreover, the Petitioning Creditors seek

9  amounts that, by their own admissions, have yet to be quantified, proven at trial, and adjudicated.

10  The Petitioning Creditors knew or reasonably should have known they were not eligible to

11  commence this case under binding Ninth Circuit law.

12          The Petitioning Creditors are not using the bankruptcy process as a measure of last resort.

13  The Petitioning Creditors have clearly not exhausted available state law remedies.  Rather, as the

14  pending lawsuits unequivocally demonstrate, state law remedies exist and have just begun.

15  Moreover, the Petitioning Creditors who have commenced suits are seeking remedies at odds with

16  bankruptcy, such as constructive trusts on certain property and proceeds for their individual

17  benefits.  The Petitioning Creditors must first exhaust their non-bankruptcy remedies to liquidate

18  their disputed claims.

19          As evidenced by the timing of the filing, the Petitioning Creditors are forum shopping.

20  Two of the Petitioning Creditors initially chose to pursue their respective claims in other, non-

21  bankruptcy forums.  The Involuntary Petition was filed less than one month after the court in the

22  Noval Action, where Noval is seeking the appointment of a receiver over Jadelle, temporarily

23  stayed that case.  *See In the Matter of Smith*, 243 B.R. 169, 197-98 (Bankr. N.D. Ga. 1999)

24  (dismissing a case commenced by the petitioner after an unfavorable ruling in state court and

25  without exhausting state law remedies).  Having received an unfavorable decision in his chosen

26  forum, Noval has tried to avoid that decision by pursuing his claim in this Court.

27          The Petitioning Creditors are seeking to circumvent Jadelle's due process and

28  constitutional rights.  Jadelle has not even answered the complaints.  Moreover, Noval's suit has

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ● Fax 714 445-1002

1   been temporarily stayed on 5th Amendment grounds. Jadelle expects that the Petitioning Creditors

2   may attempt to use the bankruptcy process to seek discovery that would not otherwise be

3   permitted pending the stay ordered in the Noval Action. The Petitioning Creditors are using

4   bankruptcy as a shortcut to avoid an adjudication on the merits and to leverage the payment of

5   their disputed claims.

6          The Petitioning Creditors' inconsistent positions are further examples of bad faith. Both

7   Noval and Marco have asserted claims in different amounts in their respective suits than listed in

8   the Involuntary Petition. Marco and First International are both knowingly seeking to recover, in

9   part, on the same claim. Marco has taken inconsistent positions regarding who he consigned

10  jewelry to in attempt to collect the same claim from two different people in different forums.

11  Moreover, the Petitioning Creditors have taken these inconsistent positions to gain strategic

12  advantages in the various pending suits.

13         In sum, this is not a matter that belongs in bankruptcy court. It is a litigation matter, in its

14  early stages and pending in multiple forums amongst many parties (the Petitioning Creditors,

15  Jadelle, and others). Moreover, the Petitioning Creditors hold disputed claims and thus, are not

16  eligible to commence this case. This complicated web of disputed claims belongs in civil court

17  (where they are already pending). Accordingly, the case should be dismissed.

18

19  **VII.    JADELLE IS ENTITLED TO ATTORNEY'S FEES AND COSTS, AND DAMAGES**

20         Pursuant to § 303(i):

21         (i) If the court dismisses a petition under this section other than on
       consent of all petitioners and the debtor, and if the debtor does not

22     waive the right to judgment under this subsection, the court may grant
       judgment—

23
       (1) against the petitioners and in favor of the debtor for—

24     (A) costs; or
       (B) a reasonable attorney's fee; or

25     (2) against any petitioners that filed the petition in bad faith, for—
       (A) any damages proximately caused by such filing; or

26     (B) punitive damages.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "8", PAGE 306

1  11 U.S.C. § 303(i).  Bankruptcy courts may award the fees authorized under § 303(i) whether the

2  petition is dismissed under § 303 or via § 305(a)(1).  *See In re Macke Int'l Trade, Inc.*, 370 B.R.

3  236, 248 (B.A.P. 9th Cir. 2012).

4        Whether to award fees pursuant to § 303(i)(1) is determined using a totality of the

5  circumstances test.  *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir.

6  2004).  However, the Ninth Circuit has made clear that, if an involuntary petition is dismissed, the

7  petitioners *should routinely expect* to pay the putative debtor's attorney's fees and costs.  *See id.*;

8  *see also In re Macke Int'l Trade, Inc.*, 370 B.R. at 249 ("[U]nsuccessful involuntary petitioners

9  should routinely expect to pay the debtor's legal expenses arising from the involuntary filing.").

10  "Thus, when an involuntary petition is dismissed on some ground other than consent of the parties

11  and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's

12  fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are

13  authorized."  *Higgins*, 379 F.3d at 707.  The presumption is intended to remind petitioners that an

14  involuntary case is a "measure of last resort" and to "reinforce the idea that the filing of an

15  involuntary petition should not be undertaken lightly, and will serve to discourage inappropriate

16  and frivolous filings."  *See Higgins*, 379 F.3d at 707 (internal citations and quotation marks

17  omitted).

18        Here, Jadelle is entitled to an award of attorney's fees, costs, and damages.  Dismissal of

19  the case, without more, entitles Jadelle to attorney's fees and costs.  No reason exists to exclude

20  the Petitioning Creditors from the general rule—they did not use bankruptcy as a last resort and

21  should have expected to pay Jadelle's fees.  Moreover, for the reasons discussed above, this case

22  was commenced in bad faith and for an improper purpose when it was clear that the Petitioning

23  Creditors were ineligible to commence the case under binding Ninth Circuit law.  This is the type

24  of bad faith involuntary filing that § 303(i) was designed to prevent.  Accordingly, Jadelle

25  respectfully requests that the Court award it attorney's fees, costs, and damages, subject to proof

26  upon dismissal of the case.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "8", PAGE 307

1  **VIII.  <u>CONCLUSION</u>**

2         Based on the foregoing, Jadelle respectfully requests that the Court immediately dismiss

3  the involuntary petition, and award Jadelle attorney's fees, costs, and damages, including punitive

4  damages, subject to proof.

5

6                                          Respectfully submitted,

7  DATED:  May 1, 2020                     SMILEY WANG-EKVALL, LLP

8

9                                   By:       */s/ Robert S. Marticello*
                                          _____
10                                        ROBERT S. MARTICELLO
                                          MICHAEL L. SIMON
11                                        Attorneys for Jadelle Jewelry and Diamonds,
                                          LLC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "8", PAGE 308

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**


A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **05/01/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **05/01/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 05/01/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT "8", PAGE 309

EXHIBIT "9"

1  Daniel A. Lev (CA Bar No. 129622)
     dlev@sulmeyerlaw.com
2  **Sulmeyer**Kupetz
   A Professional Corporation
3  333 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-1406
4  Telephone: 213.626.2311
   Facsimile: 213.629.4520
5
   Attorneys for Petitioning Creditors
6
   Ronald Richards (CA Bar No. 176246)
7    ron@ronaldrichards.com
   Law Offices of Ronald Richards & Associates, APC
8  P.O. Box 11480
   Beverly Hills, California 90213
9  Telephone:  310.556.1001
   Facsimile:  310.277.3325
10
   Attorneys for Victor Franco Noval
11
   Baruch C. Cohen (CA Bar No. 159455)
12   baruchcohen@baruchcohenesq.com
   Law Office of Baruch C. Cohen, APLC
13 4929 Wilshire Boulevard, Suite 940
   Los Angeles, California 90010
14 Telephone:  323.937.4501
   Facsimile: 888.316.6107
15
   Attorneys for Peter Marco, LLC and First International Diamond, Inc.
16
17              **UNITED STATES BANKRUPTCY COURT**

18        **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

19 In re                              Case No. 2:20-bk-13530-BR

20 JADELLE JEWELRY AND DIAMONDS,      Chapter 7
   LLC,
21                                    **DECLARATION OF OVED ANTER IN
                                      SUPPORT OF PETITIONING
22                                    CREDITORS' MOTION FOR
                                      APPOINTMENT OF INTERIM CHAPTER
23              Alleged Debtor.       7 TRUSTEE**

24                                    DATE:      June 9, 2020
                                      TIME:      10:00 a.m.
25                                    PLACE:     Courtroom "1668"
26
27
28

DAL 2701428v1

*Sulmeyer*Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

VICTOR FRANCO NOVAL; PETER MARCO, LLC; and FIRST INTERNATIONAL DIAMOND, INC.,

Petitioning Creditors,

vs.

JADELLE JEWELRY AND DIAMONDS, LLC,

Alleged Debtor.

I, Oved Anter, declare and state as follows:

1.      I am an individual over the age of eighteen and am the principal owner and President of First International Diamond, Inc. ("First International"), which is a creditor of Jadelle Jewelry and Diamonds, LLC (the "Debtor" or "Jadelle").  Except as otherwise indicated, all statements contained in this Declaration are based upon my personal knowledge and my review of relevant financial documents.  If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge or review of documents.

2.      I make this Declaration in support of the "Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof" (the "Motion"), filed concurrently herewith.

3.      In the past, First International consigned large amounts of jewelry and diamonds to Jadelle and its controlling principal and insider Jona Rechnitz ("Jona" and together with his wife Rachel Rechnitz ("Rachel"), the "Rechnitz's").  In an attempt to protect First International's right to the consigned jewelry, on March 6, 2019, First International recorded a UCC-1 Financing Statement (the "UCC-1") against Jadelle, by recording the UCC-1 with the California Secretary of State.  The UCC-1 was recorded as Instrument No. 77246760002, Filing No. 19-7700745484.  The UCC-1 was expressly

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   between Jadelle and First International.  A true and correct copy of the March 6, 2019,

2   UCC-1 is attached hereto as Exhibit "A" and incorporated herein by reference.

3          4.     On December 13, 2019, and again on December 30, 2019, after

4   Jona was sentenced in New York in his criminal action, First International consigned 7

5   pieces of jewelry worth $2,826,890 to Jadelle for resale to Jadelle's clients.  At the time, I

6   had no reason to believe that the $2,826,890 consignments with Jadelle would be in

7   jeopardy, primarily because of our prior relationship and our prior transactions.  True and

8   correct copies of the Consignment Memos documenting the separate consignment

9   transactions between First International and Jadelle totaling $2,826,890 are attached

10  hereto as Exhibit "B" and incorporated herein by reference.

11         5.     Prior to December 13, 2019, and December 30, 2019, and

12  continuing thereafter, Jona, on behalf of Jadelle, repeatedly indicated to me that he had a

13  buyer and sold two pieces of First International's consigned Jewelry, specifically, the 13

14  62 PS D-VVS1 GIA, Harry Winston Mt/tr (with a cost value of $1,200,000), and the

15  Reverse Diamond Earrings 1.20 ct (the DIAM RD E IF 11923922166) (with a cost value

16  of $907,715), and was awaiting receipt of payment from Jadelle's "client," and the rest of

17  the jewelry remained in Jadelle's possession on consignment.

18         6.     On January 2, 2020, at 11:52:42, Jona, on behalf of Jadelle, texted

19  me, confirming that he would not release First International's merchandise to Jadelle's

20  buyer until First International was first paid.  The text exchange between me and Jona

21  read as follows:

22         Jona Rechnitz:  Please confirm the following agreement: 1)

23         you're my lunch date every Friday.  That's the day we review

24         the goods on hand every week and settle up bills.  2) I am

25         authorized to ship the 3 emerald cut rings and Ascher

26         bracelet to Loren ridinger my client in miami.  *Anything she*

27         *buys will be paid next Friday anything she doesn't buy is*

28         *back in my office next week.*  3) the Harry Winston 13ct and

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311  •  FAX 213.629.4520

DAL 2701428v1                              3

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311  •  FAX 213.629.4520

1    1 Oct eif *are both in my possession and I'm busy with the*

2    *stones through next Wednesday.  Next Wednesday they will*

3    *be returned wherever you instruct me.  If they are sold I will*

4    *collect payment before releasing them and pay you first.*  4) I

5    will see your stupid movie next week with YOU.  5) this is our

6    understanding that we will both stick to and I look forward to

7    doing good healthy business together this year.

8    Oved Anter:  Deal.

9    Jona Rechnitz:  Deal and we are never discussing this type

10    of stuff ever again won't need to and won't.  [Emphasis

11    Added].

12    7.    Notwithstanding Jona's January 2, 2020, promise, on behalf of

13   Jadelle, not to release First International's merchandise to Jadelle's buyer until First

14   International was first paid, from January 15 through January 24, 2020, Jona, on behalf of

15   Jadelle, texted me that he gave the consigned merchandise away.  He then proceeded to

16   lull me with stories about his mother's illness and how Jadelle still intended to pay me.

17   The following text exchanges between me and Jona reveal how Jona was stalling in

18   order to buy time to continue his and Jadelle's illicit and fraudulent activities:

19    [1/15/20, 02:53:03] Oved Anter:  All good, you ?

20    [1/15/20, 08:11:47] Jona Rechnitz:  70%. Hoping wire hits

21    today of it was sent Sunday afternoon should arrive this

22    afternoon I think.  Bank said can take up to 3-5 days.

23    [1/15/20, 08:16:33] Oved Anter:  Never heard 3 to 5 days for

24    a wire from Absolutely nonsense.

25    [1/15/20, 08:16:43] Oved Anter:  Wire is a press of a button.

26    [1/15/20,08:17:22] Oved Anter:  Please call me when you're

27    able to, hope you're feeling better.

28

EXHIBIT "9", PAGE 313

1    [1/15/20, 08:17:37] Jona Rechnitz: *It should hit today I think*

2    *let's see.*

3    [1/15/20, 08:21:22] Oved Anter:  Please call Biton if you don't

4    mind.

5    [1/15/20, 08:21:29] Oved Anter:  By 10.

6    [1/15/20, 08:21:36] Oved Anter:  How do you feel

7    [1/15/20,08:22:54] Jona Rechnitz:  Not great will call now.

8    [1/15/20,08:40:03] Oved Anter:  Gm, I need huge favor my

9    daughter SHIRA needs a live in, Hers is leaving in a few

10   days going back to her country, please help if you know any.

11   [1/15/20, 08:41:42] Jona Rechnitz:  Ok.

12   [1/15/20, 12:34:39] Oved Anter:  FYI spoke to Helen Dayan

13   to double Check myself, wire from Israel comes in the next

14   day, please let me know what's going on.

15   [1/15/20, 12:59:08] Jona Rechnitz: *I am sure it will hit*

16   *tomorrow.*

17   [1/15/20, 15:47:55] Oved Anter: *Did you ship the Emeralds*

18   *back.*

19   [1/15/20,15:49:29] Jona Rechnitz:  Yes.

20   [1/15/20,15:50:03] Oved Anter:  Thanks, did she keep

21   everything.

22   [1/15/20, 18:49:03] Oved Anter:  Call me.

23   [1/15/20, 19:07:31] Jona Rechnitz:  Missed voice call.

24   [1/15/20, 19:07:50] Jona Rechnitz:  Missed voice call.

25   [1/15/20, 19:07:58] Jona Rechnitz:  Tried you back.

26   [1/15/20, 19:08:02] Jona Rechnitz:  School event.

27   [1/15/20,19:08:07] Jona Rechnitz:  Talk tomorrow am.

28   [1/15/20, 19:14:34] Oved Anter:  Ok.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "9", PAGE 314

1    [1/15/20, 19:17:38] Jona Rechnitz: Around 10 or earlier.

2    [1/15/20, 19:21:53] Oved Anter: Sorry was on the other line,

3    will speak am, I really need to have you wire am so I can

4    take care of certain obligations.

5    [1/15/20, 19:23:39] Jona Rechnitz: *If wire hits as it should*

6    *you'll get it.*

7    [1/15/20, 19:24:19] Jona Rechnitz: *If it doesn't we will call*

8    *them and see what' s going on but I believe it will hit - ever*

9    *since my sentencing my bank has been very slow ok*

10    *international wires.*

11    [1/15/20, 19:24:24] Jona Rechnitz: Happened last week too.

12    [1/15/20, 19:25:02] Oved Anter: *There is no if you were not*

13    *supposed to let go of merchandise until we get paid.*

14    [1/15/20, 19:25:52] Jona Rechnitz: What.

15    [1/15/20, 19:26:19] Jona Rechnitz: *I closed deal told you*

16    *Mazal asked for invoices and finalized deal with you.*

17    [1/15/20, 19:26:29] Jona Rechnitz: *I gave them the stones.*

18    [1/15/20, 19:26:36] Jona Rechnitz: These are people I know

19    very well.

20    [1/15/20, 19:26:39] Jona Rechnitz: *I guarantee it.*

21    [1/15/20, 19:26:58] Oved Anter: *Yeah but we have an*

22    *agreement that you don't release Merch until we get Paid.*

23    [1/15/20,19:27:08] Oved Anter: I appreciate it guarantees

24    will you be able to cough up the money.

25    [1/15/20,19:27:13] Jona Rechnitz: Yes.

26    [1/15/20, 19:28:09] Oved Anter: Ok because I really need to

27    get paid tomorrow.

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "9", PAGE 315

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   [1/15/20,19:28:36] Jona Rechnitz:  *1) wire comes in you get*

2   *paid 2) I get the stones back if issue 3) I pay you don't get*

3   *stiffed.  Only 3 options, I don't foresee any issue.  I have sold*

4   *them before.  Never had any problem whatsoever.  And after*

5   *they pay they need the certificates and I also need invoices*

6   *reflective of our prices we agreed upon.*

7   [1/15/20, 19:28:58] Jona Rechnitz:  *If they pay me tomorrow*

8   *it is not able to wire until next day you know that.  Pending*

9   *and not useable until overnight.*

10  [1/15/20, 19:29:03] Jona Rechnitz:  I want to be very clear.

11  [1/15/20, 19:29:13] Jona Rechnitz:  I can give a check if their

12  Wire arrives.

13  [1/15/20, 19:30:18] Oved Anter:  What happens if the wire

14  does not arrive.

15  [1/15/20, 19:30:45] Oved Anter:  If it's not in your account

16  tomorrow that means it was not sent.

17  [1/15/20, 19:31:00] Oved Anter:  It was sent on Sunday as

18  you said the latest would have been in your account on

19  Tuesday.

20  [1/15/20, 19:31:06] Oved Anter:  Anyway we will talk

21  tomorrow.

22  [1/15/20, 19:31:46] Jona Rechnitz:  Ok done guessing.  It's

23  eating me alive.  *They told me they sent it.*  International

24  wired take few days always for me.  Sometimes 5 days.

25  Check it out yourself.  Wells Fargo.

26  [1/15/20, 19:32:03] Oved Anter:  Does not.

27  [1/15/20, 19:32:30] Jona Rechnitz:  I'm not arguing.

28  [1/15/20, 19:32:57] Jona Rechnitz:  It's been 3 days.

EXHIBIT "9", PAGE 316

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  [1/15/20, 19:33:08] Jona Rechnitz:  I expect and hope it

2  comes tomorrow.

3  [1/15/20, 19:33:11] Jona Rechnitz:  That's all.

4  [1/15/20, 19:34:08] Jona Rechnitz:  If you need me to undo

5  this deal tell me I can't deal with the pressure every time I

6  sell something.  Or Let's just see what happens tomorrow.

7  [1/16/20, 09:28:57] Jona Rechnitz:  *Sent bank the swift they*

8  *see it coming in today you were right will be in touch once it*

9  *hits.*

10  [1/16/20, 09:29:04] Jona Rechnitz:  Going to shul.

11  [1/16/20, 09:32:50] Oved Anter:  *So I don't understand what*

12  *you're saying they are saying that it coming in.*

13  [1/16/20, 09:34:43] Jona Rechnitz:  Yes.

14  [1/16/20, 09:34:48] Jona Rechnitz:  *They tracked it.*

15  [1/16/20, 09:35:15] Oved Anter:  Good, so you can send me

16  a check before noon please.

17  [1/16/20, 09:35:56] Jona Rechnitz:  No.

18  [1/16/20, 09:36:13] Jona Rechnitz:  When funds hit my

19  account I will let you know then wire you.

20  [1/16/20, 09:36:21] Jona Rechnitz:  *I'm not writing a check*

21  *for money I don't have yet.*

22  [1/16/20, 09:36:40] Jona Rechnitz:  And not writing a check

23  and being pressured like this.  Money will hit then I will wire.

24  [1/16/20, 09:37:05] Oved Anter:  OK let me know when it hits

25  I'd rather have a wire anyway.

26  [1/16/20,09:37:13] Jona Rechnitz:  Ok.

27  [1/16/20, 10:53:48] Jona Rechnitz:  I keep checking account.

28  Will update you.

EXHIBIT "9", PAGE 317

1   [1/16/20, 14:10:22] Oved Anter:  I just want to confirm you

2   received the money and I will have it tomorrow for sure by 10

3   a wire to me.

4   [1/16/20, 14:17:09] Jona Rechnitz:  *I told you you'll have it*

5   *wired tomorrow morning already.*

6   [1/16/20, 14:19:23] Oved Anter:  Ok and don't be a bitch

7   please to me.

8   [1/17/20, 00:13:33] Jona Rechnitz:  Please send me total

9   amounts in The morning for both payments and I need

10  invoices as well thx Shirin can send the invoices anytime but

11  please make sure I have them for my records.

12  [1/17/20, 07:49:37] Oved Anter:  Call me please.

13  [1/17/20, 08:53:35] Oved Anter:  ?

14  [1/17/20, 09:14:36] Jona Rechnitz:  Missed voice call.

15  [1/17/20, 09:15:21] Jona Rechnitz:  Missed voice call.

16  [1/17/20, 09:30:44] Oved Anter:  Can shirin pick up the

17  check from your office at 10:30 so she can take it downtown.

18  [1/17/20, 09:32:00] Oved Anter:  Or f he can bring to my

19  office by 10:30.

20  [1/17/20, 09:34:13] Jona Rechnitz:  *It will be done on next*

21  *hour or so.*

22  [1/17/20,09:59:33] Oved Anter:  ShirahS maid just quit I

23  need help urgent if you know anyone or can ask around.

24  [1/17/20, 10:17:28] Oved Anter:  Are the ec back.

25  [1/17/20, 10:19:15] Jona Rechnitz:  I'll ask.

26  [1/17/20, 10:19:33] Jona Rechnitz:  She's choosing over the

27  weekend and sending for Monday.

28  [1/17/20,10:19:36] Jona Rechnitz:  She's taking 1.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    [1/17/20, 10:20:07] Oved Anter:  I thought you said she Past

2    I need the one that she doesn't want for sure right away

3    please.

4    [1/17/20, 10:20:33] Oved Anter:  That's ridiculous.

5    [1/17/20, 10:24:22] Jona Rechnitz:  I can never please you.

6    It's not ever enough. I can't deal this way.  I didn't tell you in

7    with my.  Other don't say a word paramedics were here.  So

8    I'm not in the mood.  My siblings don't know.  She had blood

9    clot.  Please.

10   [1/17/20, 10:24:36] Jona Rechnitz:  This message was

11   deleted.

12   [1/17/20, 10:25:20] Oved Anter:  I explained to the urgency

13   why I need the money in my account today and you said you

14   were in the morning, you're not doing it, I need check

15   immediately so I can send somebody downtown so they can

16   clear it for me as soon as possible, I'm sorry about this but

17   that does not stop you guys from signing a check.

18   [1/17/20, 10:25:50] Jona Rechnitz:  What are you talking

19   about!!!!!!!

20   [1/17/20, 10:25:53] Oved Anter:  You told me you gave him

21   instructions yesterday.

22   [1/17/20, 10:25:54] Jona Rechnitz:  *I said it's on way to you.*

23   [1/17/20, 10:25:58] Jona Rechnitz:  Stop it oved.

24   [1/17/20, 10:26:04] Jona Rechnitz:  This is ridiculous!!!!!!

25   [1/17/20, 10:37:41] Jona Rechnitz:  Watch the video of my

26   mother!  Don't tell anyone.  Checks are on the way to you.

27   We will talk before shabbos if everything is ok on my end -

28

1    Oved if you really love me like I think you Then read our

2    texts again and you will understand how I feel.

3    [1/17/20, 10:38:11] Oved Anter:  What video.

4    [1/17/20, 10:38:27] Jona Rechnitz:  My mother I sent you !!

5    [1/17/20, 10:38:40] Oved Anter:  I didn't realize it's your

6    mom.

7    [1/17/20, 10:38:40] Jona Rechnitz:  I texted you dealing with

8    emergency with paramedics and my mother blood clot.

9    [1/17/20, 10:38:58] Oved Anter:  You already use that

10    excuse a few days ago with somebody else.

11    [1/17/20, 10:39:03] Jona Rechnitz:  Yes yesterday.

12    [1/17/20, 10:39:09] Jona Rechnitz:  It happened.

13    [1/17/20, 10:39:12] Jona Rechnitz:  I'm woth her.

14    [1/17/20,10:39:17] Jona Rechnitz:  R u serious??????

15    [1/17/20,10:39:55] Jona Rechnitz:  You're not embarrassed

16    right now.  I'm with her now I can't believe you.

17    [1/17/20, 10:40:02] Jona Rechnitz:  I don't need any

18    excuses.

19    [1/17/20, 10:40:07] Jona Rechnitz:  *I sent your checks!!!!!*

20    [1/17/20,10:40:18] Jona Rechnitz:  Why are you pressuring

21    me like this it's ridiculous.

22    [1/17/20, 10:42:18] Oved Anter:  I explained it to you last

23    night and you're putting me in an extremely bad predicament

24    if the monies not there on Monday.

25    [1/17/20, 10:42:18] Oved Anter:  And I thought you

26    understood that's why I was happy you wiring me before 10

27    o'clock today as you said before.

28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "9", PAGE 320

1    [1/17/20, 10:42:18] Oved Anter:  And now I'm not sure it's

2    going to be cleared on time.

3    [1/17/20, 10:44:10] Jona Rechnitz:  *I told you that checks on*

4    *way to you momentarily.*  This is extremely unpleasant.  I'm

5    don't texting you now.  Everything is my fault.  Shabbat

6    Shalom.

7    [1/20/20, 05:48:53] Oved Anter:  Gm , please make sure I

8    will get the ec rings latest tomorrow.

9    [1/20/20, 09:28:39] Oved Anter:  Let me know if you got the

10    message, and call meet and talk today please.

11    [1/20/20, 10:10:22] Jona Rechnitz:  Message Received.  Not

12    working today with family kids off from school.

13    [1/20/20, 10:11:58] Oved Anter:  Ok thank you.

14    [1/20/20, 10:17:50] Oved Anter:  *Please make sure the ec*

15    *are here tomorrow please.*

16    [1/20/20, 10:21:42] Jona Rechnitz:  *Ok.*

17    [1/20/20, 22:13:30] Jona Rechnitz:  Good night. Sorry for my

18    sensitivity and attitude lately.  I've been going through a lot

19    personally and in my family.  You know I feel very close to

20    you.  Good night.

21    [1/21/20, 13:39:07] Oved Anter:  Call me.

22    [1/21/20, 14:49:23] Oved Anter:  I need the ec.

23    [1/21/20, 14:51:08] Jona Rechnitz:  *Tomorrow you'll have it.*

24    *So sorry.*

25    [1/21/20, 14:55:16] Oved Anter:  Ok thank you.

26    [1/22/20, 11:28:32] Oved Anter:  Before I go nuts please

27    send me now whatever leftovers you have with you, but now.

28    [1/22/20, 11:28:52] Oved Anter:  Whatever amount it is.

EXHIBIT "9", PAGE 321

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    [1/22/20,11:31:46] Jona Rechnitz:  *Ok.*

2    [1/22/20, 11:37:17] Jona Rechnitz:  *Oved please give me*

3    *until tomorrow to get your items back and returned safely.*

4    *Please I beg you keep this between us and give me until*

5    *tomorrow.*

6    [1/22/20, 11:37:56] Jona Rechnitz:  I'm working with my

7    family now to get it please bottom of my heart.

8    [1/22/20, 11:38:15] Oved Anter:  Send what you have now, I

9    will hold off till tomorrow and will talk about rest.

10    [1/22/20, 11:38:18] Jona Rechnitz:  I'm not well but have big

11    heart for you and helped your family when o could please

12    help me.

13    [1/22/20, 11:38:20] Jona Rechnitz:  Thx.

14    [1/22/20, 11:38:21] Jona Rechnitz:  Ok.

15    [1/22/20, 13:01:06] Oved Anter:  You also have 5 rows

16    bracelet with princess cut.

17    [1/22/20, 13:32:29] Oved Anter:  Do you have the 18 ct fy.

18    [1/22/20,13:34:41] Jona Rechnitz:  The yellow I returned to

19    you?

20    [1/22/20, 13:35:03] Jona Rechnitz:  I never took it back.

21    [1/22/20, 13:42:44] Oved Anter:  Sorry you're right.

22    [1/22/20, 14:57:09] Jona Rechnitz:  You know I really do love

23    you and that's why I helped you from my heart with Andrew

24    and other things.  I feel so close to you and I'm trying to get

25    this all resolved now.  Just know you mean a lot to me.

26    [1/22/20, 14:59:26] Oved Anter:  Thank you Jona and it's

27    same here, stay strong for your kids and parents, try to

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "9", PAGE 322

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  resolve this with help of your cousin, when the fog goes

2  away let's sit down and figure out…..

3  [1/22/20, 15:00:16] Jona Rechnitz:  Ok thx.

4  [1/22/20,15:04:02] Oved Anter:  Are you still there.

5  [1/22/20, 15:07:16] Jona Rechnitz:  Ya.

6  [1/22/20, 15:07:44] Oved Anter:  Ok let me know when done

7  and update please.

8  [1/22/20, 15:08:05] Jona Rechnitz:  Ok.

9  [1/22/20, 16:57:45] Jona Rechnitz:  In a meeting.

10  [1/22/20, 16:58:06] Oved Anter:  Ok call me when done.

11  [1/22/20, 21:19:59] Oved Anter:  Hi, what's new.

12  [1/22/20, 21:39:52] Jona Rechnitz:  *Will have good news*

13  *hopefully tomorrow just finished meeting.*

14  [1/22/20,21:41:23] Oved Anter:  Ok good, really wishing you

15  good.

16  [1/22/20, 21:43:14] Jona Rechnitz:  I know thx.

17  [1/23/20, 08:56:56] Oved Anter:  Gm, give me a call when

18  you have a chance please.

19  [1/23/20, 09:09:11] Jona Rechnitz:  *Please give me a few*

20  *hours everything is safe and being resolved.*

21  [1/23/20, 09:09:27] Jona Rechnitz:  *I really wish you kept this*

22  *to yourself.  Please continue.*

23  [1/23/20, 09:09:46] Oved Anter:  Ok np But call me because

24  I want to ask you a couple of questions.

25  [1/23/20, 10:15:36] Oved Anter:  Come give me a hug and I

26  have to run to the doctors I'm downstairs.

27  [1/23/20, 19:29:51] Oved Anter:  Sorry Forgot your charger

28  in my pocket.

EXHIBIT "9", PAGE 323

1   [1/23/20, 19:31:01] Jona Rechnitz: Missed voice call.

2   [1/23/20, 19:33:05] Jona Rechnitz: Enjoy it. It's the best.

3   [1/24/20, 08:37:24] Oved Anter: Call me please.

4   [1/24/20, 08:37:34] Jona Rechnitz: 30 min ok?

5   [1/24/20, 08:37:41] Oved Anter: Yes.

6   [1/24/20, 08:57:36] Jona Rechnitz: imma.pdf * 1 page

7   document omitted.

8   [1/24/20, 08:57:49] Jona Rechnitz: IMMA INTERNATIONAL

9   INVOICE.pdf * 1 page document omitted.

10   [1/24/20, 15:17:03] Jona Rechnitz: Shabbat Shalom thank

11   you.

12   [1/24/20, 15:17:12] Jona Rechnitz: You're a true friend and

13   a great person.

14   [1/24/20, 15:17:43] Oved Anter: Shabbat shalom, I think it

15   was on the text to text that to you.

16   [1/24/20, 15:17:58] Oved Anter: Relax and enjoy Shabbat.

17   [1/24/20, 15:18:10] Oved Anter: My finger was on the text.

18   [1/24/20, 15:39:24] Jona Rechnitz: You're more than a

19   friend and mentsch.

20   [1/24/20, 15:39:35] Jona Rechnitz: You may have saved my

21   life.

22   [1/24/20, 15:57:42] Oved Anter: Thank you.

23   [1/24/20, 15:58:12] Oved Anter: Now shut the phone.

24   Shabbat shalom. [Emphasis Added].

25       8.      In addition to the foregoing, on January 17, 2020, First International

26   received two checks drawn on Jadelle's Wells Fargo Bank account in the total aggregate

27   amount of $2,122,760, specifically, (i) check no. 2200 in the amount of $922,760, and (ii)

28   check no. 2201 in the amount of $1,200,000. Both of these checks were NSF at the time

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    of tender.  True and correct copies of the January 17, 2020, checks are attached hereto

2    as Exhibit "C" and incorporated herein by reference.

3        9.    There can be no dispute that Jona's representations to me and First

4    International were false, in that, instead of reselling First International's two pieces of

5    consigned jewelry and repaying First International, and returning the balance of the

6    consigned jewelry held by Jadelle, Jona and Jadelle absconded with all of First

7    International's consigned jewelry, either pawning them off, retaining the proceeds of

8    sales, or using the jewelry as collateral for business or personal loans to various

9    questionable sources.  Simply stated, First International has not received a single dollar

10   of the $2,826,890 in consigned jewelry.  Nor has First International received the

11   consigned jewelry back from Jadelle.  Jona and Jadelle either liquidated or fraudulently

12   transferred First International's consigned jewelry for their own benefit.

13       10.   I have since learned that, during the time Jona and Jadelle were

14   defrauding me and First International, Jona and Jadelle were defrauding other diamond

15   dealers and insurance companies in Southern California, including, but not limited to,

16   Sotheby's, Peter Marco, Leon Landver, Ben Adhoot, Yehuda Gamzo, Moti Klein, and

17   Julius Klein.  I have been advised that the amount of losses to these various parties is

18   alleged to be over $15,000,000.

19       11.   During this entire time, Jona, on behalf of Jadelle, repeatedly lied to

20   me that the deals with his clients were consummated.  Jona and Jadelle lulled me into a

21   false sense of security, and attempted to fabricate one excuse after another to delay

22   paying First International or returning the consigned jewelry as part of their effort to hide

23   the truth from me through stonewalling and lies.  Repeated demands have been made to

24   Jona and Jadelle to return First International's consigned jewelry, but to no avail.

25   Instead, Jona and Jadelle took numerous steps to pacify me in order to buy more time,

26   and to keep this matter secret via phone calls and WhatsApp texts.

27       12.   Emblematic of Jona's deceit, on February 4, 2020, at 9:40, Jona,

28   again on behalf of Jadelle, falsely enlisted attorneys to pretend a bailout was coming from

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   family members to buy himself and Jadelle more time.  Attorneys from Cohen Williams

2   LLP wrote me an email about the purported bailout:

3            We write with an update on Jona Rechnitz.  A family

4            member of Mr. Rechnitz has informed our law firm that the

5            family member is seeking to refinance certain real property

6            in order to satisfy Mr. Rechnitz's outstanding liabilities.  We

7            currently have no visibility into the family member's interest

8            in the property, the value of the property, or what, if any,

9            equity, the family member has in it.  If you are represented

10           by counsel, please let us know and provide your counsel's

11           contact information.  Our client's desire is to resolve this

12           matter amicably.

13  A true and correct copy of the February 4, 2020, email is attached hereto as Exhibit "D"

14  and incorporated herein by reference.

15           13.    I understood the Cohen Williams LLP email to mean exactly what it

16  stated, in other words, that Jona and Jadelle wanted to know what was owed to First

17  International so that its undisputed debt could be paid in full.  Importantly, at no time have

18  Jadelle or the Rechnitz's, or anyone acting or purporting to act on their behalf, ever

19  disputed the bona fide status of First International's claim, either as to its nature, validity,

20  or amount.

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "9", PAGE 326

1       14.   In my opinion, as one of the three petitioning creditors in Jadelle's

2    involuntary petition, the appointment of an interim trustee during the period between now

3    and when an order for relief is entered is crucial to protect and preserve the assets of

4    Jadelle and to prevent any further irreparable harm to me, First International, and other

5    similarly situated creditors.

6       I declare under penalty of perjury under the laws of the United States of

7    America that the foregoing is true and correct.

8       Executed this 19th day of May, 2020, at Los Angeles, California.

9

10      Oved Anter

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

DAL 2701428v1                    18

EXHIBIT "9", PAGE 327

# EXHIBIT A

EXHIBIT A   019

EXHIBIT "9", PAGE 328

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

3102751200

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

FIRST INTERNATIONAL DIAMOND INC
P.O. BOX 3765
BEVERLY HILLS, CA 90212
USA

DOCUMENT NUMBER: 77246760002
FILING NUMBER: 19-7700745484
FILING DATE: 03/06/2019 13:44

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | JADELLE JEWELRY AND DIAMONDS LLC | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9621 BRIGHTON WAY | BEVERLY HILLS | CA | 90210 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | JADELLE JEWELRY AND DIAMONDS LLC | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9454 WILSHIRE BLVD #PHG01 | BEVERLY HILLS | CA | 90210 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) Provide only one Secured Party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | FIRST INTERNATIONAL DIAMOND INC | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 3765 | BEVERLY HILLS | CA | 90212 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
This Financing statement covers the following collateral:
All property, Goods and merchandise which have been, are now, or may at any time be delivered on consignment consigned or entrusted by
First International Diamond Inc to JADELLE JEWELRY AND DIAMONDS LLC, including without limitation, diamonds, gemstones and other
precious and semi-precious jewelery, rings, bracelets and all other property, goods and merchandise in which diamonds, gemstones, precious
or semi-precious metals or stones are processed, mounted, included or converted and any accessory items, and the proceeds (including without limitation, insurance proceeds and proceeds from sale or other disposition) and receivables arising there from, wheresoever located, future consignment and deliveries are covered.
As related to or connected with the property described above, all accounts, accounts receivables, other receivables, contract rights, chattel paper, general intangibles, whether now owned or hereafter acquired by the debtor or in which the debtor may now or hereafter

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

EXHIBIT A   020

Page 2

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9 NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual
Debtor name did not fit, check here ☐

| | |
|---|---|
| | 9a ORGANIZATION'S NAME<br>JADELLE JEWELRY AND DIAMONDS LLC |
| OR | 9b INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX |

DOCUMENT NUMBER: 77246760002

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| | 10a. ORGANIZATION'S NAME<br>JADELLE JEWELRY AND DIAMONDS LLC | | | |
| OR | 10b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 10c. MAILING ADDRESS<br>5700 WILSHIRE BLVD #355 | CITY<br>LOS ANGELES | STATE<br>CA | POSTAL CODE<br>90036-3659 | COUNTRY<br>USA |
|---|---|---|---|---|

11 ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| | | | | |
|---|---|---|---|---|
| OR | 11a ORGANIZATION'S NAME | | | |
| | 11b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c MAILING ADDRESS | CITY | | STATE   POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (collateral):
acquire an interest and proceeds from all the foregoing.
This financing statement covers consignments made by secured party to any of the debtor's affiliated companies, stores or DBAs
wherever located.

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT:<br>☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY

EXHIBIT A   021

EXHIBIT "9", PAGE 330



**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

**UCC Filing Acknowledgement**

03/06/2019

Page 1 of 2

FIRST INTERNATIONAL DIAMOND INC
P.O. BOX 3765
BEVERLY HILLS CA 90212

| | |
|---|---|
| Filing Fee: | $5.00 |
| Total Fee: | **$5.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**          File Date: **03/06/2019**          File Time: **13:44**
Filing Number: **19-7700745484**            Lapse Date: **03/06/2024**

Debtor(s):
ORGANIZATION          **JADELLE JEWELRY AND DIAMONDS LLC**


                      **9621 BRIGHTON WAY BEVERLY HILLS CA USA 90210**

ORGANIZATION          **JADELLE JEWELRY AND DIAMONDS LLC**


                      **9454 WILSHIRE BLVD #PHG01 BEVERLY HILLS CA USA
                      90210**
ORGANIZATION          **JADELLE JEWELRY AND DIAMONDS LLC**


                      **5700 WILSHIRE BLVD #355 LOS ANGELES CA USA
                      90036-3659**
Secured Party(ies):
ORGANIZATION          **FIRST INTERNATIONAL DIAMOND INC**


                      **P.O. BOX 3765 BEVERLY HILLS CA USA 90212**

Filing by  the Secretary of State is not conclusive proof  that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information   on the filed document.

Page 2 of 2

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL • SACRAMENTO, CA 95814 • PO BOX 942835 • SACRAMENTO, CA 94235-0001 • (916) 653-3516 • HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS  ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

# EXHIBIT B

# First International Diamond Inc.

2220 Avenue Of The Stars, Suite 1005
Los Angeles, CA 90067
Tel: (310) 275-1200  Fax: (310) 276-3700

## MEMORANDUM
### 8415

Date:  12/13/2019

MEMO IS GIVEN OUT
FOR 5 DAYS.

| ACCOUNT NO. | 2119 | PHONE NO. | 310-721-5151 | SHIP VIA | | SP | OV |
|---|---|---|---|---|---|---|---|

| MEMO TO: | SHIP TO: |
|---|---|
| Jadelle Jewelry LLC<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 | Jadelle Jewelry LLC<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 |

| NO | LOT NUMBER | CARAT | UNITS | DESCRIPTION | % | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | REBBR0001 | | 1 | 5 rows PR 27.48 ct, 370 diamonds | | $36,225.00 | $36,225.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | 0.00 | 1 | | SUB TOTAL | | $36,225.00 |
| | | | | | SHIPPING | | $0.00 |
| | | | | | MEMO TOTAL | | $36,225.00 |

See Back Side For Full Terms & Conditions   SIGNATURE: _____.

Page 1 of 1

EXHIBIT B   025

EXHIBIT "9", PAGE 334

## First International Diamond Inc.

2220 Avenue Of The Stars, Suite 1005
Los Angeles, CA 90067
Tel: (310) 275-1200 Fax: (310) 276-3700

**MEMORANDUM**

**8431**

Date: 12/30/2019

MEMO IS GIVEN OUT
FOR 5 DAYS.

| ACCOUNT NO. | 2119 | PHONE NO. | 310-721-5151 | SHIP VIA | | SP | OV |
|---|---|---|---|---|---|---|---|

| MEMO TO: | SHIP TO: |
|---|---|
| Jadelle Jewelry LLC<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 | Jadelle Jewelry LLC<br>9454 Wilshire Blvd<br>PH1<br>Beverly Hills, CA 90212 |

| NO | LOT NUMBER | CARAT | UNITS | DESCRIPTION | % | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | MT-5072 | | 1 | 13.62 PS D-VVS1 GIA, Harry Winston Mt/tr | | ,200,000.00 | $1,200,000.00 |
| 2 | OVEL101 | 10.03 | 1 | DIAM RD E IF 11923922166 | | $90,500.00 | $907,715.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | 10.03 | 2 | | | | |

| | |
|---|---|
| SUB TOTAL | $2,107,715.00 |
| SHIPPING | $0.00 |
| MEMO TOTAL | $2,107,715.00 |

See Back Side For Full Terms & Conditions   SIGNATURE:_____.

Page 1 of 1

EXHIBIT B   026

EXHIBIT "9", PAGE 335

# EXHIBIT C

EXHIBIT C   027

EXHIBIT "9", PAGE 336

בנק
leumi

**BANK LEUMI USA**
MEMBER FDIC
**350 Madison Avenue – 4th Flr**
**New York, NY 10017**

Date:  01/22/20
Account:  8300418101
Page:  1 of 1

## Notice Of Returned Item
## CHARGEBACK

**FIRST INTERNATIONAL DIAMOND INC**
**PO BOX 3765**
**BEVERLY HILLS CA 90212**

The deposited item(s) listed below were returned unpaid and the Transaction Clearing Account noted above was debited for the amount of the item(s) returned.

| Date | Amount | Deposit Amt | Reason |
|---|---|---|---|
| 01/17/2020 | 922,760.00 | 2,122,760.00 | NSF - Not Sufficient Funds |
| 01/17/2020 | 1,200,000.00 | 2,122,760.00 | NSF - Not Sufficient Funds |

Please call Bank Leumi Customer Service (800-892-5430) with any questions regarding this notice.

---

**WELLS FARGO BANK**     2200
WILSHIRE CRESCENT  9254 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020          11-4238/1210

PAY TO THE ORDER OF  First International Diamond Inc   $ 922,760.00
Nine hundred twenty two thousand seven hundred sixty   DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH C01
BEVERLY HILLS  CA 90212-2931

⑆121042882⑆864926133⑆2200

Item# 5250005545274  01/22/2020  $922,760.00
Reason: NSF - Not Sufficient Funds

---

**WELLS FARGO BANK**     2201
WILSHIRE CRESCENT  9254 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020          11-4238/1210

PAY TO THE ORDER OF  First International Diamond Inc   $ 1,200,000.00
One Million two hundred thousand dollars————   DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH C01
BEVERLY HILLS  CA 90212-2931

⑆121042882⑆864926133⑆2201

Item# 5250005545276  01/22/2020  $1,200,000.00
Reason: NSF - Not Sufficient Funds

EXHIBIT C    028

*026002794*
01/22/2020
5250005545274
This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

· RETURN REASON (A)
NOT SUFFICIENT FUNDS

**Bank Leumi**

NSF

**WELLS FARGO BANK**          2200
WILSHIRE CRESCENT  9354 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020          11-4288/1210

PAY TO THE ORDER OF  First International Diamond Inc    $ 922,760.00
Nine hundred twenty two thousand  seven hundred sixty   DOLLARS
JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931

⑈121042882⑈:8649261313⑈ 2200

⑆:121042882⑈ 8649261313⑈ 2200     ⑈0092276000⑈

---

*026002794*
01/22/2020
5250005545276
This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

· RETURN REASON (A)
NOT SUFFICIENT FUNDS

**Bank Leumi**

NSF

**WELLS FARGO BANK**          2201
WILSHIRE CRESCENT  9354 WILSHIRE BLVD  BEVERLY HILLS, CA 90212
DATE 1/17/2020          11-4288/1210

PAY TO THE ORDER OF  First International Diamond Inc    $ 1,200,000.00
One Million two hundred thousand dollars——   DOLLARS
JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS  CA 90212-2931

⑈121042882⑈:8649261313⑈ 2201

⑆:121042882⑈ 8649261313⑈ 2201     ⑈0120000000⑈

EXHIBIT C   029





EXHIBIT C    030

EXHIBIT "9", PAGE 339

From: donotreply@leumiusa.com
Sent: Wednesday, January 29, 2020 12:32 PM
To: Shirin Husnani
Subject: OUTGOING TRANSACTION ADVICE

## BANK LEUMI ADVICE OF DEBIT

ON JANUARY 29, 2020, WE DEBITED YOUR ACCOUNT D/XXXXXX8101 FOR USD
300,000.00

## DETAILS OF PAYMENT

| | |
|---|---|
| PAYMENT DATE AND TIME: | 29-JAN-2020 15:30:15 EST |
| PAID AMOUNT: | USD 300,000.00 |
| METHOD OF PAYMENT: | FED Payment |
| TRANSACTION NUMBER: | 202001290003947 |
| IMAD(CYCLE DATE/LTERM/IMSN) | 20200129/B1Q8031C/000231/ |
| OMAD(CYCLE DATE/LTERM/OMSN) | 20200129/I1B7033R/018732/ |
| REFERENCE: | 202001290003947 |
| PAID TO: | F/121000248 |
| | WELLS FARGO BANK, NA |
| | SAN FRANCISCO |
| | CA |
| BENEFICIARY: | X/XXXXXX5544 |
| | LIPAZ SCHWARTZ |
| DEBITED TO: | D/XXXXXX8101 |
| | FIRST INTERNATIONAL DIAMOND INC |
| | PO BOX 3765 |
| | BEVERLY HILLS CA 90212 |
| ORIGINATOR TO BENEFICIARY INFO: | |

This e-mail contains confidential and privileged information. If you are not the intended recipient (or
have received this e-mail in error), please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this e-mail is strictly prohibited. When
contacting this institution, please use reference number: 202001290003947.

NOTE: The information in this message and any attached files contain information intended for the
exclusive use of the individual or entity to whom it is addressed and may contain information that is

EXHIBIT C   031

EXHIBIT "9", PAGE 340

# EXHIBIT D

## Ronald Richards

| | |
|---|---|
| **From:** | Reuven Cohen <rcohen@cohen-williams.com> |
| **Sent:** | Tuesday, February 4, 2020 9:40 PM |
| **To:** | Reuven Cohen; Marc Williams |
| **Subject:** | Jona Rechnitz |

We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any, equity, the family member has in it.

If you are represented by counsel, please let us know and provide your counsel's contact information.

Our client's desire is to resolve this matter amicably.

Sincerely,

Reuven L. Cohen
Cohen Williams LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel: 213-232-5163
Fax: 213-232-5167
rcohen@cohen-williams.com
www.cohen-williams.com

1

EXHIBIT D   033

EXHIBIT "9", PAGE 342

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): <u>DECLARATION OF OVED ANTER IN SUPPORT OF PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>May 19, 2020</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

<div align="right">☒ Service information continued on attached page.</div>

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) <u>May 19, 2020</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

<div align="right">☐ Service information continued on attached page.</div>

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<div align="right">☐ Service information continued on attached page.</div>

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 19, 2020 | Cheryl Caldwell | */s/ Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "9", PAGE 343

<u>**ADDITIONAL SERVICE INFORMATION**</u> (if needed):

1. <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Daniel A Lev**    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Ronald N Richards**    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- **Neal Salisian**    ECF@salisianlee.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT "9", PAGE 344

EXHIBIT "10"

**Incomplete, APPEAL**

## U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Bankruptcy Petition #: 2:20-bk-13530-BR

*Date filed:* 04/06/2020

*Assigned to:* Barry Russell
Chapter 7
Involuntary

*341 meeting:* 07/29/2020
*Deadline for filing claims (govt.):* 12/14/2020
*Deadline for objecting to discharge:* 09/28/2020

---

***Debtor***
**Jadelle Jewelry And Diamonds LLC a**
**Delaware limited liability company**
9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212
LOS ANGELES-CA
Tax ID / EIN: 00-0000000
***dba* Jadelle Inc**

represented by **Robert S Marticello**
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
714-445-1000
Email: Rmarticello@swelawfirm.com

**Michael Simon**
3200 Park Center Dr Ste 250
Costa Mesa, CA 92626
714-445-1000
Fax : 714-445-1002
Email: msimon@swelawfirm.com

---

***Petitioning Creditor***
**First International Diamond Inc**
PO Box 3765
Beverly Hills, CA 90212

represented by **Baruch C Cohen**
Law Office of Baruch C. Cohen
APLC
4929 Wilshire Blvd Ste 940
Los Angeles, CA 90010
323-937-4501
Email: bcc@BaruchCohenEsq.com

**Daniel A Lev**
333 South Grand Avenue
Suite 3400
Los Angeles, CA 90071
213-626-2311
Fax : 213-629-4520
Email: dlev@sulmeyerlaw.com

---

***Petitioning Creditor***
**Peter Marco LLC**
252 N Rodeo Dr
Beverly Hills, CA 90210

represented by **Baruch C Cohen**
(See above for address)

**Daniel A Lev**
(See above for address)

EXHIBIT "10", PAGE 345

*Petitioning Creditor*
**Victor Franco Noval**
1141 Summit Drive
Beverly Hills, CA 90210

represented by **Daniel A Lev**
(See above for address)

**Ronald N Richards**
Law Offices of Ronald Richards &
Assoc
PO Box 11480
Beverly Hills, CA 90213
310-556-1001
Fax : 310-277-3325
Email: ron@ronaldrichards.com

*Trustee*
**Sam S Leslie (TR)**
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
213-368-5000

represented by **Carolyn A Dye**
3435 Wilshire Blvd Ste 990
Los Angeles, CA 90010
213-368-5000
Email: trustee@cadye.com

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 07/07/2020 | 98 (8 pgs) | Notice of motion/application *to Employ the Law Office of Carolyn A. Dye as General Bankruptcy Counsel* Filed by Trustee Sam S Leslie (TR) (RE: related document(s)97 Application to Employ the Law Office of Carolyn A. Dye as General Bankruptcy Counsel Filed by Trustee Sam S Leslie (TR)). (Dye, Carolyn) (Entered: 07/07/2020) |
| 07/07/2020 | 97 (30 pgs) | Application to Employ the Law Office of Carolyn A. Dye as General Bankruptcy Counsel Filed by Trustee Sam S Leslie (TR) (Dye, Carolyn) (Entered: 07/07/2020) |
| 07/07/2020 | 96 (9 pgs) | Notice of motion/application *to Employ LEA Accountancy, LLP as Accountant* Filed by Accountant LEA Accountancy, LLP (RE: related document(s)95 Application to Employ LEA Accountancy, LLP as Accountant Filed by Accountant LEA Accountancy, LLP.). (Leslie, Sam) (Entered: 07/07/2020) |
| | | |

EXHIBIT "10", PAGE 346

| 07/07/2020 | 95<br>(33 pgs) | Application to Employ LEA Accountancy, LLP as Accountant Filed by Accountant LEA Accountancy, LLP. (Leslie, Sam) (Entered: 07/07/2020) |
| 07/03/2020 | 94<br>(4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)87 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 07/03/2020. (Admin.) (Entered: 07/03/2020) |
| 07/02/2020 | 93<br>(2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)84 Order on Generic Motion (BNC-PDF)) No. of Notices: 1. Notice Date 07/02/2020. (Admin.) (Entered: 07/02/2020) |
| 07/02/2020 | 92<br>(10 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)83 Memorandum of decision (BNC-PDF)) No. of Notices: 1. Notice Date 07/02/2020. (Admin.) (Entered: 07/02/2020) |
| 07/02/2020 | 91<br>(3 pgs) | Notice of transcripts *Designated for an Appeal* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)61 Notice of Appeal and Statement of Election (Official Form 417A)). (Marticello, Robert) (Entered: 07/02/2020) |
| 07/02/2020 | 90<br>(8 pgs) | Statement of Issues on Appeal *Appellant's Statement of Issues to be Presented on Appeal and Designation of Record on Appeal* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)61 Notice of Appeal and Statement of Election (Official Form 417A)). (Marticello, Robert) (Entered: 07/02/2020) |
| 07/01/2020 | 89<br>(20 pgs) | Amended notice of appeal Filed by Interested Party Jona Rechnitz (RE: related document(s)75 Notice of Appeal and Statement of Election (Official Form 417A)). (Smith, Cynthia Joyce) (Entered: 07/02/2020) |
| 07/01/2020 | 88<br>(20 pgs) | Amended notice of appeal Filed by Interested Party Rachel Rechnitz (RE: related document(s)76 Notice of Appeal and Statement of Election (Official Form 417A)). (Smith, Cynthia Joyce) CORRECTION: Corrected filed date; Modified on 7/2/2020 (Smith, Cynthia Joyce). (Entered: 07/02/2020) |
| 07/01/2020 | | |

EXHIBIT "10", PAGE 347

| | 87<br>(3 pgs) | Order vacating (1) continued status conference on chapter 7 case, and (2) continued hearing on petitioning creditors' motion for appointment of interim chapter 7 trustee Re: (BNC-PDF) (Related Doc # 12) Signed on 7/1/2020 (Fortier, Stacey) (Entered: 07/01/2020) |
|---|---|---|
| 06/30/2020 | | Receipt of Noticing Fee - $10.00 by 01. Receipt Number 20240937. (admin) (Entered: 06/30/2020) |
| 06/30/2020 | | Receipt of Appeal Filing Fee - $586.00 by 01. Receipt Number 20240937. (admin) (Entered: 06/30/2020) |
| 06/30/2020 | 86<br>(3 pgs) | Declaration re: *Declaration of Robert S. Marticello Regarding Statement of Compensation Pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b)* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company. (Marticello, Robert) (Entered: 06/30/2020) |
| 06/30/2020 | 85<br>(3 pgs) | Statement *re Schedules and Statement of Financial Affairs* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company. (Marticello, Robert) (Entered: 06/30/2020) |
| 06/30/2020 | 84<br>(1 pg) | Order Denying Debtor's "Emergency Motion Pursuant To Federal Rule Of Banruptcy Procedure 8007 For Stay Pending Appeal (BNC-PDF) (Related Doc # 62 ) Signed on 6/30/2020 (Fortier, Stacey) (Entered: 06/30/2020) |
| 06/30/2020 | 83<br>(9 pgs) | Memorandum of decision on Debtor's "Emergency Motion Pursuant to Federal Rule Of BAnkruptcy Procedure 8007 For Stay Pending Appeal (BNC-PDF) (Related Doc # 62 ) Signed on 6/30/2020 (Fortier, Stacey) (Entered: 06/30/2020) |
| 06/30/2020 | 82<br>(2 pgs) | Opening Letter RE: Appeal from BAP CC 20-1160 (Originally filed at BAP 06/30/2020). (RE: related document(s)76 Notice of Appeal and Statement of Election (Official Form 417A) filed by Interested Party Rachel Rechnitz) (Milano, Sonny) (Entered: 06/30/2020) |
| 06/30/2020 | 81<br>(2 pgs) | Opening Letter RE: Appeal from BAP CC 20-1159 (Originally filed at BAP 06/30/2020). (RE: related document(s)75 Notice of Appeal and Statement of |

EXHIBIT "10", PAGE 348

| | | Election (Official Form 417A) filed by Interested Party Jona Rechnitz) (Milano, Sonny) (Entered: 06/30/2020) |
|---|---|---|
| 06/30/2020 | 80 (1 pg) | Deficiency Notice to Appellant - Does not include entered stamped copy of order, judgment, or decree. (RE: related document(s)76 Notice of Appeal and Statement of Election (Official Form 417A) filed by Interested Party Rachel Rechnitz) (Milano, Sonny) (Entered: 06/30/2020) |
| 06/30/2020 | 79 (1 pg) | Deficiency Notice to Appellant - Does not include entered stamped copy of order, judgment, or decree. (RE: related document(s)75 Notice of Appeal and Statement of Election (Official Form 417A) filed by Interested Party Jona Rechnitz) (Milano, Sonny) (Entered: 06/30/2020) |
| 06/30/2020 | 78 (20 pgs; 2 docs) | Notice of Referral of Appeal to the Bankruptcy Appellate Panel of the Ninth Circuit (BAP); with Notice of Appeal Service List. (RE: related document(s)76 Notice of Appeal and Statement of Election (Official Form 417A) filed by Interested Party Rachel Rechnitz) (Attachments: # 1 Notice of Appeal and Statement of Election) (Milano, Sonny) (Entered: 06/30/2020) |
| 06/30/2020 | 77 (20 pgs; 2 docs) | Notice of Referral of Appeal to the Bankruptcy Appellate Panel of the Ninth Circuit (BAP); with Notice of Appeal Service List. (RE: related document(s)75 Notice of Appeal and Statement of Election (Official Form 417A) filed by Interested Party Jona Rechnitz) (Attachments: # 1 Notice of Appeal and Statement of Election) (Milano, Sonny) (Entered: 06/30/2020) |
| 06/30/2020 | 76 (7 pgs) | Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel - Official Form 417A) - Fee Amount: $298.00; filed by Interested Party Rachel Rechnitz (RE: related document(s)39 Order on Generic Motion (BNC-PDF), 53 Order (Generic) (BNC-PDF), 54 Order (Generic) (BNC-PDF), 55 Order for Relief Ch 7 (BK Case - Involuntary) (BNC)). Appellant Designation due by 7/14/2020. (Milano, Sonny) (Entered: 06/30/2020) |
| 06/30/2020 | 75 (7 pgs) | Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel - Official Form 417A) - |

EXHIBIT "10", PAGE 349

| | | |
|---|---|---|
| | | Fee Amount: $298.00; filed by Interested Party Jona Rechnitz (RE: related document(s)39 Order on Generic Motion (BNC-PDF), 53 Order (Generic) (BNC-PDF), 54 Order (Generic) (BNC-PDF), 55 Order for Relief Ch 7 (BK Case - Involuntary) (BNC)). Appellant Designation due by 7/14/2020. (Milano, Sonny) (Entered: 06/30/2020) |
| 06/26/2020 | 74 (2 pgs) | Opening Letter RE: Appeal from BAP CC 20-1153 (Originally filed at BAP 06/26/2020). (RE: related document(s)61 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) (Milano, Sonny) (Entered: 06/26/2020) |
| 06/24/2020 | 73 (11 pgs) | Supplemental *to preliminary opposition due Doc#72* Filed by Petitioning Creditor Victor Franco Noval. (Richards, Ronald) (Entered: 06/24/2020) |
| 06/23/2020 | 72 (2 pgs) | Statement *re Creditor List* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company. (Marticello, Robert) (Entered: 06/23/2020) |
| 06/22/2020 | 71 (14 pgs) | Opposition to (related document(s): 62 Emergency motion *Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities* filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *(preliminary)* Filed by Petitioning Creditor Victor Franco Noval (Richards, Ronald) (Entered: 06/22/2020) |
| 06/22/2020 | 70 (31 pgs; 2 docs) | Notice of Referral of Appeal to the Bankruptcy Appellate for the Ninth Circuit (BAP); with Notice of Appeal Service List. (RE: related document(s)61 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) (Attachments: # 1 Notice of Appeal and Statement of Election) (Milano, Sonny) (Entered: 06/22/2020) |
| 06/21/2020 | 69 (3 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)60 Notice to creditors (BNC-PDF)) No. of Notices: 8. Notice Date 06/21/2020. (Admin.) (Entered: 06/21/2020) |

EXHIBIT "10", PAGE 350

| 06/21/2020 | [68](#)<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s) [55](#) Order for Relief Ch 7 (BK Case - Involuntary) (BNC)) No. of Notices: 8. Notice Date 06/21/2020. (Admin.) (Entered: 06/21/2020) |
| 06/20/2020 | [67](#)<br>(4 pgs) | BNC Certificate of Notice (RE: related document(s) [57](#) Meeting of Creditors Chapter 7 No Asset) No. of Notices: 8. Notice Date 06/20/2020. (Admin.) (Entered: 06/20/2020) |
| 06/19/2020 | [66](#)<br>(4 pgs) | Request for judicial notice *Debtor's Request for Judicial Notice in Support of Debtor's Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[62](#) Emergency motion *Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities*). (Marticello, Robert) (Entered: 06/19/2020) |
| 06/19/2020 | [65](#)<br>(309 pgs) | Exhibit *Index of Exhibits in Support of Debtor's Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[62](#) Emergency motion *Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities*). (Marticello, Robert) (Entered: 06/19/2020) |
| 06/19/2020 | [64](#)<br>(17 pgs) | Declaration re: *Declaration of Michael V Schafler in Support of Debtor's Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[62](#) Emergency motion *Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities*). (Marticello, Robert) (Entered: 06/19/2020) |
| 06/19/2020 | [63](#)<br>(3 pgs) | Declaration re: *Declaration of Robert S. Marticello in Support of Debtor's Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for a Stay Pending Appeal* Filed by Debtor Jadelle Jewelry |

EXHIBIT "10", PAGE 351

| | | |
|---|---|---|
| | | And Diamonds LLC a Delaware limited liability company (RE: related document(s)62 Emergency motion *Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities*). (Marticello, Robert) (Entered: 06/19/2020) |
| 06/19/2020 | 62 (30 pgs) | Emergency motion *Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 06/19/2020) |
| 06/19/2020 | | Receipt of Notice of Appeal and Statement of Election (Official Form 417A)(2:20-bk-13530-BR) [appeal,ntcaplel] ( 298.00) Filing Fee. Receipt number 51286692. Fee amount 298.00. (re: Doc# 61) (U.S. Treasury) (Entered: 06/19/2020) |
| 06/19/2020 | 61 (18 pgs) | Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel.(Official Form 417A) . Fee Amount $298 Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)39 Order on Generic Motion (BNC-PDF), 53 Order (Generic) (BNC-PDF), 54 Order (Generic) (BNC-PDF), 55 Order for Relief Ch 7 (BK Case - Involuntary) (BNC)). Appellant Designation due by 07/6/2020. (Marticello, Robert) (Entered: 06/19/2020) |
| 06/19/2020 | 60 (1 pg) | Notice to creditors (BNC-PDF) regarding order for relief; relates to 55(Fortier, Stacey) (Entered: 06/19/2020) |
| 06/18/2020 | 59 (4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)54 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 06/18/2020. (Admin.) (Entered: 06/18/2020) |
| 06/18/2020 | 58 (6 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)53 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 06/18/2020. (Admin.) (Entered: 06/18/2020) |
| 06/18/2020 | 57 (2 pgs) | Meeting of Creditors 341(a) meeting to be held on 7/29/2020 at 10:00 AM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT |

EXHIBIT "10", PAGE 352

| | | |
|---|---|---|
| | | THE TRUSTEE. Last day to oppose discharge or dischargeability is 9/28/2020. (Fortier, Stacey) (Entered: 06/18/2020) |
| 06/18/2020 | 56 (1 pg) | Notice of appointment and acceptance of trustee Filed by Trustee Sam S Leslie (TR). (Leslie (TR), Sam) (Entered: 06/18/2020) |
| 06/16/2020 | 55 (2 pgs; 2 docs) | Order for Relief Chapter 7 (BK Case - Involuntary Case) (BNC) Signed on 6/16/2020. Incomplete Filings due by 6/30/2020. Government Proof of Claim due by 12/14/2020. (Fortier, Stacey) (Entered: 06/16/2020) |
| 06/16/2020 | 54 (3 pgs) | Order directing clerk of court to immediately entered an order for relief under chapter 7, and requiring the debtor to file all schedules and related documentation for a chapter 7 case within fourteen days of the entry of this order (see order for relief) Re: (BNC-PDF) (Related Doc # 39) Signed on 6/16/2020 (Fortier, Stacey) (Entered: 06/16/2020) |
| 06/16/2020 | 53 (5 pgs) | Order Denying "Putative Debtor's Emergency Motion For (1) Reconsideration Of the Court's Order, Or (2) Alternatively, A Stay of the Banruptcy Case" (see order for details) Re: (BNC-PDF) (Related Doc # 44 ) Signed on 6/16/2020 (Fortier, Stacey) (Entered: 06/16/2020) |
| 06/16/2020 | 52 (6 pgs; 2 docs) | Declaration re: *DECLARATION OF DANIEL A. LEV IN SUPPORT OF ORDER (1) DENYING PUTATIVE DEBTORS MOTION TO DISMISS INVOLUNTARY PETITION AND REQUEST FOR ATTORNEYS FEES, COSTS, AND DAMAGES AND (2) ENTERING ORDER FOR RELIEF AGAINST PUTATIVE DEBTOR* Filed by Petitioning Creditor Victor Franco Noval (RE: related document(s)39 Order on Generic Motion (BNC-PDF)). (Attachments: # 1 proof of service) (Richards, Ronald) (Entered: 06/16/2020) |
| 06/16/2020 | 51 (6 pgs; 2 docs) | Notice of lodgment *For immediate signature per court order (Doc#39)* Filed by Petitioning Creditor Victor Franco Noval (RE: related document(s)8 Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle |

EXHIBIT "10", PAGE 353

| | | |
|---|---|---|
| | | Jewelry And Diamonds LLC a Delaware limited liability company). (Attachments: # 1 Proposed Order) (Richards, Ronald) (Entered: 06/16/2020) |
| 06/15/2020 | 50 (9 pgs) | Opposition to (related document(s): 44 Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support* filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *(preliminary)* Filed by Petitioning Creditor Victor Franco Noval (Richards, Ronald) (Entered: 06/15/2020) |
| 06/15/2020 | 49 (4 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)44 Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | 48 (316 pgs) | Exhibit *Putative Debtor's Index of Exhibits in Support of Putative Debtor's Emergency Motion for Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)44 Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | 47 (19 pgs) | Errata *Notice of Errata re: Declaration of Michael V Schafler in Support of the Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)46 Declaration). (Marticello, Robert) (Entered: 06/15/2020) |

EXHIBIT "10", PAGE 354

| 06/15/2020 | [46](#)<br>(5 pgs) | Declaration re: *Declaration of Michael V Schafler in Support of the Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[44](#) Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
|---|---|---|
| 06/15/2020 | [45](#)<br>(3 pgs) | Declaration re: *Declaration of Robert S. Marticello in Support of Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)[44](#) Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | [44](#)<br>(26 pgs) | Emergency motion *Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 06/15/2020) |
| 06/12/2020 | [43](#)<br>(5 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)[39](#) Order on Generic Motion (BNC-PDF)) No. of Notices: 1. Notice Date 06/12/2020. (Admin.) (Entered: 06/12/2020) |
| 06/12/2020 | [42](#) | Transcript regarding Hearing Held 06/09/20 RE: In Re: Jadelle Jewelry and Diamonds, LLC. Remote electronic access to the transcript is restricted until 09/10/2020. The transcript may be viewed at the Bankruptcy Court Clerk's Office on a public terminal **or** purchased through the Transcription Service Provider before the transcript access restriction has ended. [TRANSCRIPTION SERVICE PROVIDER: Ben Hyatt Corporation, Telephone number |

EXHIBIT "10", PAGE 355

| | | |
|---|---|---|
| | | 8882720022.]. Notice of Intent to Request Redaction Deadline Due By 6/19/2020. Redaction Request Due By 07/6/2020. Redacted Transcript Submission Due By 07/13/2020. Transcript access will be restricted through 09/10/2020. (Hyatt, Mitchell) (Entered: 06/12/2020) |
| 06/10/2020 | 41 (1 pg) | Transcript Order Form, regarding Hearing Date 06/09/20 Filed by Interested Party Israel Sam Gorodistian. (Salisian, Neal) Duplicate order- Please see order #20BR22. Party will contact transcription co. Modified on 6/11/2020 (Toliver, Wanda). (Entered: 06/10/2020) |
| 06/10/2020 | 40 | Transcript Record Transmittal (Court transcript records have been uploaded to FDS). For Order Number: 20-BR-22. RE Hearing Date: 6/9/20, [TRANSCRIPTION SERVICE PROVIDER: Ben Hyatt, Telephone number 888/272-0022.] (RE: related document(s)38 Transcript Order Form (Public Request) filed by Petitioning Creditor Peter Marco LLC) (Toliver, Wanda) (Entered: 06/10/2020) |
| 06/10/2020 | 39 (4 pgs) | Order: 1) directing Rachel Rechnitz and Jona Rechnitz to file joint declaration under penalty of perjury; 2) setting date by which petitioning creditors may contact creditors identified in joint declaration and conduct certain discovery; 3) setting date for hearing on status conference; and 4) setting date for filing of joint status report prior to status conference (see order for details) (BNC-PDF) (Related Doc # 8 and 12 Signed on 6/10/2020 (Fortier, Stacey) (Entered: 06/10/2020) |
| 06/09/2020 | 38 (1 pg) | Transcript Order Form, regarding Hearing Date 06/09/20 Filed by Petitioning Creditor Peter Marco LLC. (Cohen, Baruch) (Entered: 06/09/2020) |
| 06/02/2020 | 37 (118 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Reply to Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)36 Reply). (Marticello, Robert) (Entered: 06/02/2020) |

EXHIBIT "10", PAGE 356

| 06/02/2020 | [36](#) (32 pgs) | Reply to (related document(s): [19](#) Opposition filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Putative Debtor's Reply to Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 06/02/2020) |
| 06/02/2020 | [35](#) (10 pgs) | Objection (related document(s): [23](#) Declaration filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Evidentiary Objections to Declaration of Levin Prado in Support of Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | [34](#) (6 pgs) | Objection (related document(s): [22](#) Declaration filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Evidentiary Objections to Declaration of Marc S. Williams in Support of Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | [33](#) (6 pgs) | Reply to (related document(s): [29](#) Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Reply to Putative Debtor's Evidentiary Objections to Request for Judicial Notice in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | [32](#) (8 pgs) | Reply to (related document(s): [25](#) Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a |

EXHIBIT "10", PAGE 357

| | | |
|---|---|---|
| | | Delaware limited liability company, <u>26</u> Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company, <u>27</u> Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company, <u>28</u> Objection filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Omnibus Reply to Putative Debtor's Evidentiary Objections to Declarations of Ronald Richards, Victor Franco Noval, Peter Marco and Oved Anter in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | <u>31</u> (12 pgs) | Request for judicial notice *Request for Judicial Notice in Support of Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)<u>30</u> Reply). (Lev, Daniel) (Entered: 06/02/2020) |
| 06/02/2020 | <u>30</u> (25 pgs) | Reply to (related document(s): <u>20</u> Opposition filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Reply to Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 06/02/2020) |
| 05/26/2020 | <u>29</u> (4 pgs) | Objection (related document(s): <u>13</u> Request for judicial notice filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Request for Judicial Notice in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| | | |

EXHIBIT "10", PAGE 358

| 05/26/2020 | 28 (7 pgs) | Objection (related document(s): 14 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Declaration of Ronald Richards in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 27 (8 pgs) | Objection (related document(s): 16 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Declaration of Victor Franco in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 26 (10 pgs) | Objection (related document(s): 17 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Declaration of Peter Marco in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 25 (19 pgs) | Objection (related document(s): 15 Declaration filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Evidentiary Objections to Declaration of Oved Anter in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 24 (3 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle |

EXHIBIT "10", PAGE 359

| | | |
|---|---|---|
| | | Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Simon, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 23 (5 pgs) | Declaration re: *Declaration of Levin Prado in Support of Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 22 (3 pgs) | Declaration re: *Declaration of Marc S. Williams in Support of Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 21 (214 pgs) | Exhibit *Putative Debtor's Index of Exhibits in Support of Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)20 Opposition). (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 20 (36 pgs) | Opposition to (related document(s): 12 Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service* filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) *Putative Debtor's Opposition to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 05/26/2020) |
| 05/26/2020 | 19 (34 pgs) | Opposition to (related document(s): 8 Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and* |

EXHIBIT "10", PAGE 360

|  |  |  |
|---|---|---|
|  |  | *Damages; and Memorandum of Points and Authorities in Support* filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) *Petitioning Creditors' Opposition to Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; Memorandum of Points and Authorities in Support Thereof, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 05/26/2020) |
| 05/20/2020 | 18 | Hearing Set (RE: related document(s)12 Motion to Appoint Trustee filed by Petitioning Creditor Victor Franco Noval, Petitioning Creditor First International Diamond Inc, Petitioning Creditor Peter Marco LLC) The Hearing date is set for 6/9/2020 at 10:00 AM at Crtrm 1668, 255 E Temple St., Los Angeles, CA 90012. The case judge is Barry Russell (Fortier, Stacey) (Entered: 05/20/2020) |
| 05/19/2020 | 17 (33 pgs) | Declaration re: *Declaration of Peter Marco in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)12 Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | 16 (20 pgs) | Declaration re: *Declaration of Victor Franco Noval in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)12 Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | 15 (35 pgs) | Declaration re: *Declaration of Ovel Anter in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* |

EXHIBIT "10", PAGE 361

| | | Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)12 Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
|---|---|---|
| 05/19/2020 | 14 (23 pgs) | Declaration re: *Declaration of Ronald Richards in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)12 Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | 13 (84 pgs) | Request for judicial notice *in Support of Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (RE: related document(s)12 Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service*). (Lev, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | 12 (23 pgs) | Motion to Appoint Trustee *Notice of Motion and Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee; Memorandum of Points and Authorities in Support Thereof, with Proof of Service* Filed by Petitioning Creditors First International Diamond Inc, Victor Franco Noval, Peter Marco LLC (Lev, Daniel) (Entered: 05/19/2020) |
| 05/04/2020 | 11 | Hearing Set (RE: related document(s)8 Generic Motion filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company) The Hearing date is set for 6/9/2020 at 10:00 AM at Crtrm 1668, 255 E Temple St., Los |

EXHIBIT "10", PAGE 362

| | | |
|---|---|---|
| | | Angeles, CA 90012. The case judge is Barry Russell (Fortier, Stacey) (Entered: 05/04/2020) |
| 05/01/2020 | 10<br>(190 pgs) | Request for judicial notice *Putative Debtor's Request for Judicial Notice in Support of Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)8 Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support*). (Marticello, Robert) (Entered: 05/01/2020) |
| 05/01/2020 | 9<br>(3 pgs) | Notice of Hearing *on Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (RE: related document(s)8 Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company). (Marticello, Robert) (Entered: 05/01/2020) |
| 05/01/2020 | 8<br>(29 pgs) | Motion *Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages; and Memorandum of Points and Authorities in Support* Filed by Debtor Jadelle Jewelry And Diamonds LLC a Delaware limited liability company (Marticello, Robert) (Entered: 05/01/2020) |
| 04/16/2020 | 7<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Salisian, Neal. (Salisian, Neal) (Entered: 04/16/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/08/2020 10:14:05 | | |
| LLWEPacer:4347578:4330007 | | JAD01-0001 |

| PACER Login: | | Client Code: | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 2:20-bk-13530-BR Fil or Ent: filed From: 4/9/2020 To: 7/8/2020 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

EXHIBIT "10", PAGE 364

# EXHIBIT "11"

```
 1                    UNITED STATES BANKRUPTCY COURT

 2            CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

 3                             --oOo--

 4   In Re:                      )  Case No. 2:20-bk-13530-BR
                                 )
 5   JADELLE JEWELRY AND DIAMONDS )  Chapter 7
     LLC, a Delaware Limited     )
 6   Liability Company,          )
                                 )
 7   Debtor,                     )  Los Angeles, California
                                 )  June 9, 2020
 8   ----------------------------)  Tuesday, 10:00 A.M.

 9                                  STATUS CONFERENCE RE
                                    INVOLUNTARY PETITION
10
                                    HEARING RE: MOTION OF
11                                  PUTATIVE DEBTOR'S MOTION
                                    TO DISMISS INVOLUNTARY
12                                  PETITION AND REQUEST FOR
                                    ATTORNEY'S FEES, COSTS,
13                                  AND DAMAGES

14                                  HEARING RE: CREDITORS'
                                    MOTION FOR APPOINTMENT OF
15                                  INTERIM CHAPTER 7 TRUSTEE

16
                 TRANSCRIPT OF TELEPHONIC PROCEEDINGS
17             BEFORE THE HONORABLE BARRY RUSSELL
                 UNITED STATES BANKRUPTCY JUDGE
18

19   APPEARANCES:

20   For the Debtor:         ROBERT S. MARTICELLO, ESQ.
                             Smiley Wang-Ekvall, LLP
21                           3200 Park Center Drive
                             Suite #250
22                           Costa Mesa, California  92626

23

24
     Proceedings produced by electronic sound recording;
25   transcript produced by transcription service.
```



P 888.272.0022  F 818.343.7119     BENHYATT     www.benhyatt.com
                                   Certified Deposition Reporters

EXHIBIT "11", PAGE 365

```
 1   For Victor Franco        RONALD N. RICHARDS, ESQ.
     Noval:                   Law Offices of Ronald Richards
 2                            PO Box 11480
                              Beverly Hills, California  90213
 3
     For First International  DANIEL A. LEV, ESQ.
 4   Diamond:                 333 South Grand Avenue
                              Suite #3400
 5                            Los Angeles, California  90071

 6   Court Recorder:          Nancy Vandensteen
                              U.S. Bankruptcy Court
 7                            Central District of California
                              Edward R. Roybal Federal Building
 8                              and Courthouse
                              255 East Temple Street, Room #940
 9                            Los Angeles, California  90012
                              (855) 460-9641
10
     Court Transcriptionist:  Ruth Ann Hager, C.E.T.**D-641
11                            Ben Hyatt Certified Deposition
                                Reporters
12                            17835 Ventura Boulevard
                              Suite #310
13                            Encino, California  91316

14

15

16

17

18

19

20

21

22

23

24

25
```

P 888.272.0022 F 818.343.7119    BENHYATT    www.benhyatt.com
Certified Deposition Reporters

Page                                                              3

1              LOS ANGELES, CALIFORNIA, TUESDAY, JUNE 9, 2020

2                              11:14 A.M.

3                              --oOo--

4           THE CLERK:  #10.00 through #12.00, Jadelle

5   Jewelry.

6           THE COURT:  Hold on just a second, as far as

7   appearances.  Okay.  We have the Jadelle Jewelry matter.

8   We have a couple people listening, apparently, the *New York*

9   *Daily News* is interesting.  I'm not exactly sure why, but

10  the public is always welcome.  Not to say anything, but

11  just listening mode.  These are public hearings.  Had we

12  not had this virus, we would have -- there would have

13  been -- somebody would be welcome to be in court, but so

14  they're on the line but won't be saying anything.

15          Then my list here shows that we have Mr. Lev for

16  the -- for all three of the creditors.  Is that right,

17  Mr. Lev?

18          MR. LEV:  I am here, Your Honor, yes.

19          THE COURT:  Okay.  And then we have -- well, I'm

20  not sure.  We have Mr. Cohen on the line.  You didn't file

21  anything, did you, Mr. Cohen?

22          MR. COHEN:  Your Honor, Baruch Cohen online.  No,

23  I did not file anything.

24          THE COURT:  Okay.  Well, you're welcome to

25  listen, but even though you may be interested, I'm not

P 888.272.0022  F 818.343.7119   **BEN HYATT**   www.benhyatt.com
Certified Deposition Reporters

Page                                                                 4

1   going to let you say anything.

2           Then we have -- of course, the other side of this

3   is Rob -- is the counsel for the -- well, let me see, we

4   have counsel for the debtor.  We have a number of them.

5   Robert Marticello -- I can never pronounce your last

6   name -- I know who you are.

7           MR. MARTICELLO:  That was per --

8           THE COURT:  What was your last name again?

9           MR. MARTICELLO:  That was perfect, Your Honor.

10  Good morning.  It's Marticello, Your Honor.

11          THE COURT:  Okay.  All right, now --

12          MR. MARTICELLO:  And also --

13          THE COURT:  -- who --

14          MR. MARTICELLO:  Michael Simon (indiscernible).

15          THE COURT:  -- now, you represent the debtor.

16  You have --

17          MR. MARTICELLO:  Correct.

18          THE COURT:  -- then Mr. Richards, you represent

19  the -- Mr. Noval, but I all -- looking here, I see Mr. Lev.

20  Who is re -- Mr. Lev, you represent all three of the

21  creditors?

22          MR. LEV:  Your Honor, the way -- yeah.  All of us

23  are on the pleading, Your Honor.  We --

24          THE COURT:  Well, who's --

25          MR. LEV:  -- represent the individ --



P 888.272.0022 F 818.343.7119    BENHYATT    www.benhyatt.com
                                 Certified Deposition Reporters

Page                                                              5

1           THE COURT:  I'm not going to let all three of you

2    speak.  One -- who's going to be --

3           MR. LEV:  No, no, no, Your Honor.  Yes, Your

4    Honor, we've decided to let Mr. Richards make the argument

5    on behalf of the petitioning creditors.  To the extent the

6    Court has questions regarding specific issues on specific

7    claims, Mr. Cohen represents two of the petitioning

8    creditors.  Mr. Richards represents one of the petitioning

9    creditors.  So to the extent you are asking questions

10   regarding Mr. Cohen's clients, Mr. Cohen would respond, but

11   I don't know if we're going to get to that type of detail,

12   so --

13          THE COURT:  Well, okay.  Well --

14          MR. LEV:  -- but Mr. Richards will be making the

15   initial presentation.

16          THE COURT:  Well, there's not going to be much of

17   an initial presentation because I've read all the papers.

18   I --

19          MR. LEV:  I understand, Your Honor.

20          THE COURT:  -- really dislike -- I've probably

21   said it a million times -- things on the phone, but we --

22   that's where we're at.

23          But -- so anyway, then we have Mr. Simon, but

24   also for the debtor, right?

25          MR. MARTICELLO:  Your Honor, this is Robert

Page                                                          6

1  Marticello.  Michael Simon is from my firm.  He's just

2  listening in.

3            THE COURT:  Oh, okay.

4            MR. MARTICELLO:  I will be handling the --

5            THE COURT:  So, okay.  So then -- okay.  So I'm

6  going to go to some --

7            MR. RICHARDS:  Your Honor, do you want me to make

8  my appearance?  Ronald Richards, just for the record.

9            THE COURT:  Oh, yes, please, please, and whenever

10 you speak, you've got to -- for -- the only way we keep

11 track -- that is, we, being the court recorder -- is who's

12 talking, you've got to -- and if you're physically in

13 court, we can see you, but whenever you say anything just

14 give your name.

15           I'm going to go through a number of these.

16 There's not going to be any argument on this, but I'm going

17 to go through these evidentiary objections.

18           The first one is the evidentiary objections to

19 the declaration of Oved Anter.  These are all evidentiary

20 objections made by the debtor, so I am going to make these

21 rulings and there's not going to be any argument on it, so

22 we're going to be here forever.  So I'm going to -- I'm

23 going to make these -- these -- so if you -- everybody have

24 those in front of them?  This has to do with the

25 declaration of Oved Anter, okay?  And you all know who --

P 888.272.0022  F 818.343.7119    **BEN**HYATT    www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                    7

1  that's the representative -- I can never tell with that --
2  is that a man?  Is Oved -- I don't know if it's -- it looks
3  like an Israeli name, so I don't know --
4          MR. COHEN:  Yes, Your Honor.  Baruch Cohen on
5  CourtCall.  Oved Anter is a man.
6          THE COURT:  Okay.  I wasn't 100 percent sure, but
7  I thought that was the case.  And that's the president --
8  the owner and president of International Diamond.
9          MR. COHEN:  Correct.
10          THE COURT:  So I'm going to -- okay, so I'm going
11  to go through the -- excuse me just one second.
12          Let me -- I will sustain, but, by the way, this
13  is going to be important.  Let me ask the debtor in this
14  case before I get to these evidentiary -- one of the two of
15  you.  It is pretty clear from all of the papers that -- is
16  it Rechnitz?  I'm pronoun -- Jona is the -- and his wife
17  are the own -- are the control -- owners and controlling of
18  the debtor, are they not?
19          MR. RICHARDS:  Hello?  Hello?
20          THE COURT:  Yes, that's for the debtor.
21          MR. RICHARDS:  Hello, hello?
22          THE COURT:  That is the case, is it not?
23          MR. RICHARDS:  We didn't hear you, Your Honor.
24  Can you --
25          THE COURT:  Oh.



P 888.272.0022  F 818.343.7119                              www.benhyatt.com

Page                                                              8

1          MR. RICHARDS:  -- repeat?  On the line right

2  now --

3          THE COURT:  That Jona and his wife are the

4  principals of the debtor, are they not?  They're the people

5  that run the debtor?

6          MR. RICHARDS:  I'm still not hearing you.

7          THE COURT:  You can't hear me now?

8          UNIDENTIFIED VOICE:  It's cutting out right at

9  the most important part, Your Honor.

10         MR. SIMON:  Your Honor, you are breaking up.

11         MR. RICHARDS:  This is Ronald Richards.  You cut

12 out.

13         THE COURT:  Well, that's a real problem.  Can you

14 hear me now?

15         MR. RICHARDS:  I'm still not hearing the Court.

16         THE CLERK:  Is the CourtCall operator on the

17 line?

18         THE COURT:  Oh, great.

19         COURTCALL OPERATOR:  Yes, I'm here.

20         THE COURT:  Well, they apparently can't hear me.

21         MR. RICHARDS:  Yeah.  Now I can hear you again,

22 Your Honor.  Ronald Richards for the creditor.

23         THE COURT:  Okay, you can?

24         MR. RICHARDS:  If you could just --

25         THE COURT:  Okay.  My question is, from the --



Page                                                                        9

1   excuse me just one second.  Just to settle something, from

2   the -- Mister -- let's see, excuse me.  From the debtor,

3   Marticello, the two principals are Jona and his wife,

4   right?

5           MR. MARTICELLO:  Well, Ms. Ra -- sorry, this is

6   Robert Marticello, Smiley Wang-Ekvall, for Jadelle.  Rachel

7   Rechnitz is the managing member of Jadelle.  Mr. Rec --

8   sorry, Your Honor, can you hear me, because it sounds like

9   it's gone dead.

10          THE COURT:  I can't hear you.

11          MR. MARTICELLO:  Yeah, the line keeps -- Your

12  Honor, the line keeps going in and out, I think for all of

13  us, so we hear things and then --

14          THE COURT:  Okay.  Tell me who are the principals

15  of the debtor?

16          MR. MARTICELLO:  So Rachel Rechnitz is the

17  managing member of Jadelle.

18          THE COURT:  Yes.

19          MR. MARTICELLO:  Jona Rechnitz is involved in the

20  operation of the business, but he does not have an official

21  title with the LLC.

22          THE COURT:  Well, who are the two principals?

23          (No audible response.)

24          There are only two principals, are there not, in

25  this LLC?

P 888.272.0022  F 818.343.7119       BEN HYATT       www.benhyatt.com
                                     Certified Deposition Reporters

EXHIBIT "11", PAGE 373

Page                                                            10

1        MR. RICHARDS:  Well, Your Honor, this is Ronald

2   Richards.  The debtors married -- the two principals are

3   husband and wife, so Mr. Rechnitz, obviously, has his

4   community property interest, and we're under the belief

5   that he owns the company with his wife and there's no other

6   members.

7        THE COURT:  Okay, because -- anyway, I -- oh,

8   okay.  Well, I will -- okay, I'm going to go through the

9   evidentiary objections.  It's pretty clear to me -- I don't

10  know who does what day to day.  And by the way, this is

11  not -- as far as the hearing.  Is the debtor still

12  operating?  I'm asking the debtor's counsel.

13       MR. RICHARDS:  No.

14       MR. MARTICELLO:  Your Honor, my understand --

15  this is Robert Marti --

16       THE COURT:  Are you talking, because I can't hear

17  you if you are.

18       MR. MARTICELLO:  It went dead, Your -- this is

19  Robert Marticello for Jadelle.  It's (indiscernible).

20       THE COURT:  Okay.  Is the debtor still operating?

21       MR. MARTICELLO:  Your Honor, my understanding is

22  that the debtor is paying its debts -- undisputed debts as

23  they come due on the agreed to terms.

24       THE COURT:  No, but is the debtor selling

25  anything?  I guess that's what I meant.  Is the debtor

P 888.272.0022 F 818.343.7119          www.benhyatt.com

Page                                                                11

1   operating?

2            MR. MARTICELLO:  I think there -- my

3   understanding is that there's been minimal operations

4   post-bankruptcy.

5            MR. RICHARDS:  Your Honor, this is Ronald

6   Richards.  There's no debtor at the location.  They moved

7   out.  That's -- we had trouble serving them.  That's why we

8   had to serve --

9            THE COURT:  Well, yeah, I've never physically --

10           MR. RICHARDS:  -- (indiscernible) at their house.

11           THE COURT:  I don't even recall.  Where is the --

12  was this a regular storefront?  I know it's pretty -- when

13  you're dealing with diamonds at a million -- $1.2 million,

14  I don't think I've ever seen one, but I guess they exist.

15           MR. RICHARDS:  Your Honor, they were operating

16  out of an executive suite at 9454 Wilshire Boulevard, out

17  of a suite at that location.  There's a lot of little

18  businesses in there, and they were -- that's where they

19  were operating.  They have no operation whatsoever.  No,

20  they're not --

21           THE COURT:  Is that -- let me --

22           MR. RICHARDS:  -- no one's --

23           THE COURT:  -- again, this is just background,

24  but I want to get -- I want to find out what's really going

25  on in this case.  Would that be from the debtor's



Page                                                                      12

1  standpoint?  I think counsel would know.  Are they still
2  operating out of that location?
3          MR. MARTICELLO:  My understanding is that they're
4  still operating, Your Honor.  I don't -- it has been
5  minimal operations, but I don't know if that's inconsistent
6  with the operations that occurred prebankruptcy.
7          THE COURT:  Okay.  In any case, I don't want to
8  get any further in it.
9          MR. RICHARDS:  He's not answering your question.
10         THE COURT:  It's more curiosity --
11         MR. RICHARDS:  They're not operating out of
12  (indiscernible) --
13         THE COURT:  -- because everybody on the call --
14         MR. MARTICELLO:  Your Honor --
15         THE COURT:  -- knows a lot more about this case
16  than I do.
17         MR. MARTICELLO:  And I'm sorry, Your Honor, this
18  is Robert Marticello.  When I'm speaking, it sounds like
19  the line is going dead, so I don't know if you're hearing
20  what I'm saying --
21         THE COURT:  Well, I did hear --
22         MR. MARTICELLO:  -- so that's the reason for
23  my --
24         THE COURT:  -- I did year you.  Okay, let's --
25  this is going to be very unfortunate --



P 888.272.0022  F 818.343.7119                     www.benhyatt.com

Page                                                                    13

1            MR. MARTICELLO:  Okay, understood.

2            THE COURT:  -- because there's obviously a lot of

3    money involved in this case and important to all sides.

4            I am going to go make these evidentiary rulings.

5    The -- can everybody hear me?  Of course, if you can't,

6    it's hard for you to say you can't hear me.

7            MR. RICHARDS:  Now I can hear you, Your Honor.

8            THE COURT:  Okay.  At least -- we need at least

9    two people, one representing the creditors and --

10           MR. RICHARDS:  Can anybody hear the Court?

11           THE COURT:  -- and I have no idea whether the --

12           UNIDENTIFIED VOICE:  I cannot.

13           UNIDENTIFIED VOICE:  Okay, good.

14           THE COURT:  Okay.

15           MR. MARTICELLO:  Yeah, I hear you.  This is

16   Robert Mart --

17           MR. RICHARDS:  I'd rather have the Court just

18   rule, if you guys don't mind --

19           THE COURT:  I am going to make the rulings.

20           MR. RICHARDS:  -- at a later time, and he can

21   (indiscernible) --

22           THE COURT:  I want to make sure everybody hears

23   it.

24           MR. RICHARDS:  Since we're --

25           THE COURT:  This is why I really --



Page                                                              14

1           MR. RICHARDS:  -- having technical problems.

2           THE COURT:  -- really, intensely dislike hearings

3    on the phone because of just this, but in any case --

4           (Indiscernible simultaneous speech)

5           THE COURT:  -- I'm going to -- so we don't spend

6    the entire day on these rulings, I'm going to make my

7    rulings.

8           UNIDENTIFIED VOICE:  (Indiscernible) CourtCall?

9    Yes.

10          THE COURT:  Now, this is the objections to the

11   declaration of Oved Anter.  I will sustain the first

12   objection.

13          MR. RICHARDS:  Should we recall in?

14          THE COURT:  I don't know of any foundation.

15          MR. MARTICELLO:  No, no, no, you should not do

16   that.

17          THE COURT:  What's that?

18          MR. MARTICELLO:  The CourtCall operator will

19   handle it.

20          THE COURT:  Okay.  I will sustain the objection.

21   It says that the controlling principal and insider, Jona

22   Rechnitz --

23          MR. MARTICELLO:  You're all on the line.  That's

24   the more important thing.  The Judge, they can reconnect.

25          THE COURT:  Can you hear me, by the way?



P 888.272.0022  F 818.343.7119          BEN HYATT          www.benhyatt.com
                                        Certified Deposition Reporters

EXHIBIT "11", PAGE 378

Page                                                                    15

1              MR. MARTICELLO:  I don't even know where the

2    Judge is calling in from.

3              THE COURT:  Hello, can you hear me?

4              UNIDENTIFIED VOICE:  Right.

5              THE COURT:  Apparently not.  Can anybody hear me?

6              MR. MARTICELLO:  I know the Court does not like

7    these calls, so I don't want to make it frustrating.

8              THE COURT:  I hear counsel talking, but --

9              MR. MARTICELLO:  (Indiscernible) --

10             THE COURT:  Is there an operator on?

11             MR. MARTICELLO:  A new operator won't even know

12   what we're talking about.  Better we just wait.

13             THE CLERK:  Is the CourtCall operator on?

14             THE COURT:  Hello?

15             (No audible response.)

16             Oh, Jesus.

17             THE CLERK:  Is the CourtCall operator on?

18             THE COURT:  Well, we're going to finish this.

19   Can you hear -- can anybody hear me?

20             (No audible response.)

21             Is the operator on?

22             (No audible response.)

23             This is so un -- can anybody hear me?

24             COURTCALL OPERATOR:  I'm going to try to plug in

25   my headset and see if I can get a response.  I'll be right

Page                                                          16

1  back with you all.

2            THE COURT:  Who is -- who's talking now?

3            THE CLERK:  That's the CourtCall operator.

4            THE COURT:  Well, can you --

5            COURTCALL OPERATOR:  Your Honor?

6            THE COURT:  -- let the parties know that we're

7  going to continue this hearing, but they can't hear me.

8            COURTCALL OPERATOR:  Can anyone from the Court

9  hear me?

10           THE COURT:  I can hear you.  This is the Judge.

11  What about the other people, can they hear you?

12           UNIDENTIFIED VOICE:  And it seemed to work fine

13  for the hour we were waiting.

14           THE COURT:  What I'm trying to figure out is --

15           MR. LEV:  It's just our luck, right?

16           THE COURT:  -- this is just so unacceptable.

17           UNIDENTIFIED VOICE:  (Indiscernible) the power

18  went out at my house for the last hour and a half and I had

19  to call in on a cell phone and I was so nervous that I'd

20  have to disclose I'm on a cell phone, and have the Court

21  get upset, but I was able to --

22           THE COURT:  No, I --

23           UNIDENTIFIED VOICE:  -- get through

24  (indiscernible) --

25           THE COURT:  Well, I'm not upset about the



P 888.272.0022  F 818.343.7119    BENHYATT    www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                17

1   telephone.

2            UNIDENTIFIED VOICE:  -- the power went out right

3   before our call, if you can believe it.

4            THE CLERK:  (Indiscernible)

5            THE COURT:  Oh, you mean a cell phone?  Oh, no,

6   I -- if you know me at all, you know I don't get upset

7   easily, but if your power went out Murphy's law apparently

8   is in action.  That's why I'm glad I'm in the court because

9   at home my power went out the other day, but I only do

10  hearings from here.

11           Is -- why don't -- let's -- I'm going to take a

12  roll call of the people we -- I have no idea whether the

13  press is still on, but if they're on listening mode.  The

14  operator -- do you know whether or not the -- there was

15  one --

16           UNIDENTIFIED VOICE:  Well, you're back.

17           THE COURT:  -- from the New York -- Steven Brown.

18  Do you know if Mr. Brown is still on?

19           MR. MARTICELLO:  Your Honor, we're all back on.

20           COURTCALL OPERATOR:  This is (indiscernible) --

21           THE COURT:  I have no way of knowing if Mr. Brown

22  is on from the *New York Daily News*, because he's not on --

23  it's only on listening mode.  Does the operator know

24  whether or not he's still on the listening?

25           COURTCALL OPERATOR:  Yes.  He

P 888.272.0022  F 818.343.7119    **BENHYATT**    www.benhyatt.com
                                  Certified Deposition Reporters

EXHIBIT "11", PAGE 381

Page                                                            18

1   is(indiscernible) --

2            THE COURT:  Good.  Okay, good --

3            COURTCALL OPERATOR:  -- (indiscernible).

4            THE COURT:  -- and I have no way of knowing.

5   Well, the only -- what's been the problem?  This is the

6   second or third time we keep coming in and out.  Do you --

7   okay, can any --

8            MR. MARTICELLO:  We can all hear you, Your Honor.

9            THE COURT:  -- if I hear silence on the other

10  side, I'll know you can't hear me.  Can everybody hear me?

11           MR. MARTICELLO:  Yes, Your Honor.

12           MR. RICHARDS:  Yes, we can hear you.

13           THE COURT:  But if I don't -- the only reason I

14  knew you couldn't hear me is I heard other people talking

15  to each other and not responding to me.  Okay.  Well, we're

16  going to try to get through this.  We'll do it today one

17  way or another.

18           First objection --

19           MR. MARTICELLO:  We can hear you, Your Honor.

20           THE COURT:  -- no word on the Oved answer.  First

21  objection is sustained.  The second is sustained.  The

22  third objection as to paragraph 5 is overruled.  The

23  next -- the objection number 6, that is sustained, at least

24  on the best evidence rule -- grounds.

25           The -- by the way, you have a problem in these --

P 888.272.0022  F 818.343.7119     **BENHYATT**     www.benhyatt.com
                                   Certified Deposition Reporters

EXHIBIT "11", PAGE 382

Page                                                                        19

1  on these -- a lot -- most of these objections have to do

2  with text calls.  Do you understand that?  That's a

3  violation of the best evidence rule.  You can take a

4  picture of it or something, but just saying what's in

5  there, that's a clear violation of the best evidence rule,

6  and that's a lot of this declaration.  If we have any

7  further hearings on this, you might seriously consider

8  taking pictures of it or something like that, but just

9  telling me what's in the text is a classic violation of the

10 best evidence rule.  Can everybody hear me?

11          ATTORNEYS:  Yes.

12          THE COURT:  Okay, I just want to make sure

13 that -- okay.  So that's why I'm sustaining the objections,

14 so objection number 7 on page 3, that's sustained.  And

15 then -- and that's going to be true of a lot of this stuff.

16 It's unfortunate, but that's just the way the rules work.

17          I'm ruling -- I'm moving now to the pages here

18 and I just sustained all of that.

19          Okay.  The next objection is on page 15 of the

20 objections.  That is the declaration -- we do have the

21 exhibit, so it will be -- it will -- but we do have the

22 exhibit, but that would be sustained, but we have the

23 exhibit.

24          The next one is a little bit trickier.  The next

25 one on page 15 is in paragraph 9.  I'm going to sustain the



Page                                                                                                   20

1  first part, which is basically argument, ending with

2  "Jadelle absconded with all of First International's

3  consigned jewelry either pawning them off or retaining,"

4  et cetera, et cetera, ending with -- up to the point where

5  it says, "Simply stated."  That first part will be

6  sustained.  The part, "Simply stated, has not received a

7  single dollar on the 2.8 million-plus," that will be

8  overruled, that second part of the declaration.

9         The next one is obviously hearsay, that'll be

10  sustained, number -- objection number 10.  Objection

11  number 11 would be sustained.  A lot of these are

12  conclusions and opinion.

13         The next one, 12, will be sustained.  Number 13,

14  the first part of that up to the words, "Importantly, at no

15  time," the first part of that will be sustained, but the

16  second part, "Importantly, at no time," that will be

17  overruled.  And then number 14, that objection will be

18  sustained.

19         Without going any further, has everybody heard

20  that?  Am I still online?

21         UNIDENTIFIED VOICE:  Yes.

22         UNIDENTIFIED VOICE:  Yes, Your Honor.

23         THE COURT:  Okay, good, we've got --

24         MR. MARTICELLO:  Yeah, we heard you, Your Honor.

25         THE COURT:  Okay, wow.  Never thought it would be



Page                                                              21

1   such an accomplishment to get through evidentiary

2   objections, but we did it.  The first part.

3           Next one, evidentiary objection, declaration of

4   Peter Marco.  I'll go through those.  Let's see.  The first

5   objection in paragraph 3, that will be sustained.  That

6   basically is argument.

7           The next one, again, dealing with the ownership

8   and so forth, that'll be sustained for lack of foundation,

9   although I have a pretty well -- good idea of who at least

10  owns the debtor.

11          The next one, exhibit -- paragraph 5, the -- t

12  here is an objection and it is to the -- it's number 5,

13  it's sustained.  That is the best evidence rule.

14          The next one to declaration, paragraph 6, that is

15  overruled.  And then the paragraph -- also part of

16  paragraph 6, it says, "In late December, after I learned

17  that Jona was sentenced for crimes," that's sustained.

18  Then the next part, "Jona advised me," that is overruled.

19          And then the same on the -- also paragraph 6, the

20  first part, "This represent -- represented by Jona was

21  false, was made to me and Jona knew it was false," that is

22  sustained, but the rest of it after that, "Jona then

23  persuaded me," that will be overruled.  A lot of these are

24  part of it because these are lengthy objections.

25          The next one, the first -- the part of this

P 888.272.0022  F 818.343.7119   BEN HYATT   www.benhyatt.com
                                 Certified Deposition Reporters

Page                                                          22

1   says -- will be sustained, the portion that reads, "In

2   order to foster his image, his honesty, religious, family

3   oriented, trust me, firstly don't even introduce my brother

4   to his own children," et cetera, et cetera, ending with,

5   "Everything goes -- is illegal."  And then starting up, "To

6   my surprise," that will be overruled, and then the first

7   part of that quote part up to the part that I just

8   sustained will be overruled.  It's just the stuff in the

9   middle that I sustained.

10          The next objection, paragraph 8, that will be

11  sustained.  Paragraph 9, that will be overruled.

12  Paragraph 10, that will be sustained.  Number 11, that will

13  be sustained.  Number 12, that will be sustained.  And

14  the -- again, these are -- by the way, those do not rela --

15  I'm sustaining it, but not as far as the Exhibit E in that

16  particular case, and in the -- one of the previous ones we

17  do have that Exhibit C in number -- paragraph 10.  Those

18  will be allowed.  And then we have 12 I just ruled on and

19  13 is sustained.

20          Now, again, I'm not going to have any further

21  argument.  Did everybody hear everything I said?

22          MR. RICHARDS:  Yes.

23          MR. MARTICELLO:  Yes, Your Honor.

24          UNIDENTIFIED VOICE:  Yes, Your Honor.

25          THE COURT:  Okay.  All right, we made it through

Page                                                                      23

1  another one.  Okay.  The declaration of Victor Franco --

2           UNIDENTIFIED VOICE:  Your Honor, that was Victor

3  Franco.

4           THE COURT:  Oh, excuse me.  I'm sorry, that was,

5  so we -- that was Victor Franco, so we've got -- so we've

6  gotten through three of them so far.

7           Now we're dealing -- the -- we've gotten

8  through --

9           MR. COHEN:  You haven't -- Your Honor, Baruch

10 Cohen for Marco.  You haven't addressed Peter Marco's

11 declaration yet.

12          THE COURT:  Excuse me a second.  Okay, hang on a

13 second.  Sorry about that.  I had it right in front of me

14 and I -- and then I skipped over it.  Thank you, Mr. Cohen.

15 Okay, Mister -- objections to Peter Marco.  The first will

16 be sustained.  The second will be sustained.  That is the

17 paragraph 4.  The next one, paragraph 6, that will be

18 overruled.  Then paragraph 7, that'll be overruled.

19          The paragraph 8 will be overruled.  And by the

20 way, whoever made these objections, I guess it's Marcell --

21 Mr. Marticello -- misleading is Ravinski's (phonetic) items

22 that were in possession of Ravinski, is hardly an

23 evidentiary objection, just for future reference.  I don't

24 know why you put that in there, but that's not an

25 evidentiary objection.

P 888.272.0022  F 818.343.7119     BEN HYATT     www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                      24

1            Number 9, that's overruled.  Number 10, that is
2    sustained.  Number 11, that is sustained.  And number 12,
3    that's a best evidence violation, that is sustained.  Next
4    one is -- let's see, that's number -- number 13 is
5    sustained.  That's a best evidence.  Same with number 14,
6    sustained, best evidence.  Number 15, best evidence,
7    sustained.
8            Number 16, that is overruled.  Number 17, it's
9    overruled as to the portion that reads, "Repeated demands
10   have been made to Jona and Jadelle to return Marco's
11   consigned jewelry, including Ravinski's ring, necklace but
12   to no avail," that overruled.  The rest of that objected to
13   material is sustained.
14           The next one, 18, is sustained.  That's a best
15   evidence violation.  The -- number 19 is sustained.
16   Number 20 is sustained.  Number 21 is sustained.  Number 22
17   is sustained.  23 is sustained.  24 is sustained.
18   Number 25 is overruled.  The -- and we also have this
19   Exhibit C, in any case.  The -- number 26 is sustained.
20   Number 27 is sustained.
21           Again, make sure after -- everybody hear all
22   those?
23           MR. RICHARDS:  Yes.
24           MR. MARTICELLO:  Yes, Your Honor.
25           THE COURT:  Okay, so that's -- thank you,



Page                                                                25

1  Mr. Cohen, that's Mr. Marcos.  So now we're down -- we have

2  those three.

3          Now we have the evidentiary objections, request

4  for judicial notice, which is the next item.  The -- excuse

5  me.  These -- I will sustain those -- all those judicial

6  notice requests have to do with things, in my opinion, are

7  totally irrelevant.  If there were a jury here, I don't

8  know, but we don't have juries in this matter, but it's

9  crim -- the criminal background and so forth and

10 transcripts.  It's very interesting and I did read it all,

11 but I can tell you it's totally irrelevant.  So one of the

12 things I can do very easily, even though I read it, I can

13 totally ignore it.  So I am not going to -- I will not take

14 judicial notice of those proceedings, although interesting,

15 not relevant to the issues before me today.  So that's --

16 excuse me, that is that one.

17          Then we have the objections -- let's see, the

18 final one is the evidentiary objection to the declaration

19 of Ronald Richards.  Let me find that.  I have that.  And

20 all of those objections will be sustained.

21          Anyway, that takes care of, I believe, of all the

22 various objections, is that correct?  Or I do have --

23 excuse me just one second.  I -- that's by -- those

24 objections -- I do have --

25          MR. RICHARDS:  We made objections, Your Honor.



Page                                                            26

1  This is Ronald Richards --

2              THE COURT:  Yeah, right --

3              MR. RICHARDS:  -- (indiscernible).

4              THE COURT:  -- that was half of them.  I have the

5  other half here.  And then the other objections --

6              Stacy?  You're quite correct.  I had these, but

7  where are -- is there a list of the others?

8              Okay, well, let me just go through them here.

9  You're right, I have a whole pile of things here.

10             I have the -- there's the objections -- well,

11 I'll go through them and if I miss any -- I've gone

12 through -- this one is the evidentiary objections to the

13 declaration of -- oh, here we go.  Thank you.  I knew I had

14 another list.  That was of Levin Prado, right?  So that --

15 we start with those.  I have the -- those.  I am going to

16 go through them.  The -- I'm going -- the first objection

17 is on page 4, I believe.  That will be sustained.  And then

18 there's objection number 3, which is -- that will be

19 sustained.  Then the next one is number 4, that will be

20 sustained.  Number 6, that will be overruled.  Number 7

21 will be overruled.  Number 8 will be overruled.  So that's

22 the ones as to, excuse me, Mr. Prado.

23             Then we have the next one is evidentiary

24 objections to the declaration of Marc Williams.  Let me

25 find that, excuse me.  Those -- excuse me just one -- yes,

P 888.272.0022  F 818.343.7119     BENHYATT     www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                    27

1   those will be sustained, those objections.  They just --

2   well, no, excuse me just one second.  No, I -- on that one,

3   I am going to overrule it but I think, to say the least,

4   they have little if no relevance, but there might be some

5   relevance buried in there.  But as a practical matter, I'm

6   going to overrule it, but I really don't think they have

7   any real bearing on this case, so I'll leave it at that.

8   Sort of a Pyrrhic victory for the objector.

9            The petitioning -- let's see, then there's

10  petitioning creditors, the reply.  Let's see, I have -- is

11  that -- have I missed any, as far as the object -- the

12  evidentiary objections?

13           MR. RICHARDS:  No, there was no -- I don't think

14  there was any more objections.

15           THE COURT:  I --

16           MR. RICHARDS:  There was no --

17           THE COURT:  Who was talking?

18           MR. RICHARDS:  Ronald Richards.  I don't think

19  there was any other --

20           THE COURT:  Yeah.

21           MR. RICHARDS:  I don't think the reply had --

22           THE COURT:  Yeah, as I say, this last one, the

23  objection is overruled but I'd say very slight, if any,

24  relevance.  So now we're dealing with the case itself,

25  right?  We're done with all that?



Page                                                                    28

1          Let me ask the -- as far as the -- well, I'm
2    going to skip to the -- I'm not going to deal at the moment
3    with the appointment of a trustee, but we do have the
4    basic -- excuse me just one second -- the motion to
5    dismiss.
6          So who's going to argue that for the debtor?
7          MR. MARTICELLO:  That would be me, Your Honor,
8    Robert Marticello, for Jadelle.
9          THE COURT:  Okay.  Let me ask a couple things.
10   It seems -- I can tell you, just so you get a heads-up from
11   the other side, I think as far as the -- just so you
12   understand, it's true you didn't present any testimony,
13   certainly not by the principals, but I -- but just so the
14   other side be listening carefully, I think you're right.
15   I -- when I -- I mean, I am somewhat of an expert on this.
16   I can take judicial notice, as I have, of all these various
17   pleadings, and not -- and the rule is again, not
18   necessarily for the truth of the matter asserted in there,
19   and that's pretty clear.
20         However -- the big however is, as you point out,
21   that when you're dealing with admissions the judicial
22   notice doesn't get it in, but if in a previous pleading or
23   a declaration one of the petitioning creditors or all three
24   of them in this case have said things that are -- that show
25   that there is a dispute as to either amount or as to just

P 888.272.0022  F 818.343.7119        BENHYATT
                                      Certified Deposition Reporters        www.benhyatt.com

EXHIBIT "11", PAGE 392

Page                                                                    29

1  liability itself, those are admissible and I assume that

2  you would agree with that, the counsel who's arguing this.

3           MR. MARTICELLO:  Yes, Your Honor.  This is Robert

4  Marticello.

5           MR. RICHARDS:  Are you directing this to me, Your

6  Honor, Ronald Richards, or to the counsel?

7           THE COURT:  Well, no, Mr. Richards, you're

8  arguing this, right?

9           MR. RICHARDS:  No, they're arg -- I didn't file a

10  motion to dismiss.  The other side did.  So who did you

11  want to discuss -- who were you addressing first?

12           THE COURT:  No, no, no, I've got everybody messed

13  up here.  No, whoev -- the attorneys -- this was filed --

14  the motion to dismiss -- let me take a look at the papers

15  here.  It was filed obviously by the debtor.

16           MR. MARTICELLO:  Your Honor, this is Robert

17  Marticello --

18           THE COURT:  So you're --

19           MR. MARTICELLO:  -- for Jadelle.

20           THE COURT:  Right, that's who we started off.

21  You're -- like I said, Mr. Marticello, you're going to be

22  arguing the motion to dismiss, right?

23           MR. MARTICELLO:  That's correct, Your Honor.

24           THE COURT:  Okay.  Again -- and I'm repeating my

25  frustration.  Not with you guys at all.  It's just the idea



P 888.272.0022  F 818.343.7119          BENHYATT
                                        Certified Deposition Reporters          www.benhyatt.com

Page                                                                    30

1  of being on the phone.  If I could see people, it makes

2  things a lot easier, but that's just where we're at.  Okay.

3           Now, the one thing -- let me just sum -- just for

4  Mr. Marticello, it's very interesting and would you agree

5  with this -- it's a rhetorical question -- that I read, of

6  course, the reply of the creditors, but they never that I

7  can see specifically address your specific points.  Would

8  that be a fair statement?

9           MR. MARTICELLO:  That's correct, Your Honor.  The

10  way I viewed the opposition was they don't address the

11  specific disputes that we've identified and other evidence

12  by their own statements, but asked the Court for delay

13  through a number of procedural mechanisms.

14           THE COURT:  Okay.  Well, the fact is, I've read

15  the Oved case and all, very interesting.  Involuntary is a

16  very strange animal.  It doesn't fit exactly, but the rules

17  are quite clear that you can, under 12(b)(6).  It's not

18  exactly a complaint, but, you know, and the -- but you can,

19  in that case, you can -- and my opinion is pretty firm on

20  that.  You look at the face of it -- of course, the face of

21  it is not an awful lot, obviously, on our -- on the

22  approved form.  Nevertheless, and you -- a court can and

23  this Court will if things I can take judicial notice of,

24  namely, the various pleadings and the -- and declarations

25  and so forth in other courts, that, in my opinion, anyway,

P 888.272.0022  F 818.343.7119  **BENHYATT**  www.benhyatt.com
Certified Deposition Reporters

Page                                                                         31

1  give you a heads-up, but you made a good point, are

2  clearly, at least as to liability and/or certainly as to

3  amount, are inconsistent, which in my view are -- this

4  is -- these are statements.  It's not hearsay because these

5  are statements of a -- admission, actually, by, you know,

6  statements, you know, under the Federal Rules of Evidence,

7  a statement by a party opponent, namely, the petitioning

8  creditors, it's not even hearsay, it's a -- if it's a

9  statement by a party opponent.

10         And all these statements that you've presented --

11 and I'm going to take them one at a time, and that it seems

12 to me on its face, as an example, the -- you have the one

13 claim by Mr. Marco and International, it's clear on their

14 pleadings that they're both making a claim on the same

15 jewelry.  Is that correct, at least part of it?

16         MR. MARTICELLO:  Yes, Your Honor.  This is Robert

17 Marticello for Jadelle.

18         THE COURT:  Yeah.  And as far as -- get my --

19 excuse me a second.  The -- as far as Mr. Noval, he

20 basically says that he has the state court action, I

21 believe -- is it state or district court?  I know it's

22 another court, Mr. Noval.  It's a state court, right?

23         MR. MARTICELLO:  Right.

24         MR. RICHARDS:  Mr. Noval is in state -- this is

25 Ronald Richards.  Mr. Noval is in state court.  Mr. Marco

Page                                                        32

1  is in federal court.

2          THE COURT:  Right, okay.  Now, as far as

3  Mr. Noval, he made, did he not -- and, again, this is just

4  for Mister -- so the debtor's counsel.

5          By the way, I know people, when they're -- when

6  the pleadings say "putative" or "alleged," the statute

7  doesn't say it, so I refer to the debtor as the debtor,

8  even though I know this is an involuntary, so that -- just

9  so you understand, that's -- there's nothing in the statute

10  about being an alleged debtor or so forth, but I understand

11  why debtors do it.

12          There he's saying -- he has different amounts.

13  In the state court he's asking for 7 million, in the

14  bankruptcy, 5.8, and he basically says -- and I can

15  certainly understand how the straightforwardness of that

16  is, "Well, I only put the amount 5.8 because that's the one

17  that he can't really dispute," Mr. Marticello, that's what

18  he says, right?

19          MR. MARTICELLO:  That's correct, Your Honor.

20          THE COURT:  Right.  Well, that, on its face, the

21  Ninth Circuit has ruled that that is an admission, in my

22  opinion, that he either owed more, and therefore it is in

23  dispute.  I mean, that was a recent change to -- and I

24  assume you agree with that statement, Mr. Marticello?

25          MR. MARTICELLO:  Yes, Your Honor.

Page                                                                                    33

1              THE COURT:  Right.  Now, as far as Mr. Noval, is

2      that's basically the two things.  One is he has different

3      amounts in different lawsuits for the same stuff, but also

4      he's admitted that the -- that only the amount that's --

5      anything else you want to say about Mr. Noval?

6              MR. MARTICELLO:  Your Honor, I have other

7      arguments, but I'm happy to --

8              THE COURT:  Well, no, I want to say anything --

9              MR. MARTICELLO:  -- rest if it's

10     (indiscernible) --

11             THE COURT:  -- to add because since it's your

12     motion, I'll let --

13             MR. MARTICELLO:  Well, I --

14             THE COURT:  -- you respond.

15             MR. MARTICELLO:  With respect to Noval, Your

16     Honor, I would highlight that I agree, Your Honor, the

17     starting point is that Mr. Noval has admitted that he has

18     taken inconsistent positions with his claim and stated a

19     much lower claim in the involuntary petition because he's

20     attempting to avoid the dispute that the Ninth Circuit has

21     said renders him ineligible to commence his case.

22             I would also say that based on his judicial

23     admissions, he alleges that he's a lender and that he

24     loaned Jadelle 5.8 million dollars, and that the loan is

25     governed by the terms of the debt -- the agreement that's

Page                                                                    34

1    attached to his complaint, but he's seeking an amount in

2    excess of what he has allegedly loaned to Jadelle.  He's

3    seeking seven million dollars and he says that seven

4    million dollars is the value of the collateral that secured

5    his loan.

6              THE COURT:  Yeah, and I saw that --

7              MR. MARTICELLO:  And so very simply, he --

8              THE COURT:  -- and I'm somewhat astonished by

9    that argument that you can do -- that he has a claim for a

10   certain amount and if the collateral doesn't cover it or if

11   it goes over that, then the debtor gets it back, right?

12             MR. MARTICELLO:  Well, correct, Your Honor, so --

13   but my point is as a matter of law his claim in *bona fide*

14   dispute because he's seeking amounts that he can never

15   recover, an amount in excess of what he actually loaned,

16   less payments received and interest on the loan.

17             THE COURT:  Yeah, no, it's --

18             MR. MARTICELLO:  So I think that clearly puts --

19             THE COURT:  It seems to me pretty clear, of

20   course, maybe not so clear from the other side, but it

21   seemed clear to me.  I mean, I'm the only person on this

22   call that doesn't -- that is totally neutral.

23             The next one, Mr. Marco --

24             MR. RICHARDS:  Your Honor, this is Ronald

25   Richards.  Can I address that before we go to the next



Page                                                              35

1  piece of --

2          THE COURT:  No, not at this point.  I'll hear

3  from you.  This is not -- that's why I don't like it on the

4  phone.  You'll get to be able to respond, but I just want

5  to lay out the plaintiff's side -- that is, the debtor's

6  side, rather.

7          MR. RICHARDS:  Right.

8          THE COURT:  But you'll get a chance, obviously.

9          Mr. Marco, there he says that the 7,676,000,

10  et cetera, is not correct, but it's really only 6,950,000.

11  Is that correct, counsel for the debtor?

12          MR. MARTICELLO:  That's correct, Your Honor.

13          THE COURT:  And he also -- it's clear from the

14  various pleadings that they and First International are

15  both going after the same claim, that is, that

16  interesting -- I guess I'm living in a different world, but

17  I guess there are diamonds worth over a million dollars,

18  but they're fighting over the same diamond, are they not?

19          MR. MARTICELLO:  Your Honor --

20          COURTCALL OPERATOR:  And, Your Honor, this is the

21  CourtCall operator.  Were they able to hear you again?

22          THE COURT:  This -- is everybody still on the

23  line?  Oh-oh.

24          THE CLERK:  (Indiscernible)

25          THE COURT:  Mr. Marticello, you're not on the



Page                                                                36

1    line?  Okay, I guess if you don't hear me, you're not on
2    the line.
3            THE CLERK:  CourtCall, can you get them connected
4    again, please?
5            THE COURT:  Oh, Jesus.
6            COURTCALL OPERATOR:  Counsel, I just have to
7    confirm you all are still connected.
8            THE COURT:  Mr. Marticello, are you on the line?
9            UNIDENTIFIED VOICE:  Yes, we are.
10           COURTCALL OPERATOR:  (Indiscernible) is connected
11   as well.
12           THE COURT:  Is everybody -- for the operator, is
13   everybody -- why don't you just state your name really fast
14   if you can hear me.  Why don't --
15           MR. RICHARDS:  Ronald Richards.
16           MR. MARTICELLO:  We're -- Robert Marticello.
17   We're back, Your Honor.
18           THE COURT:  Okay.
19           MR. COHEN:  Baruch Cohen.
20           THE COURT:  Okay, okay.  Now, you heard -- you
21   heard what my question was that Mr. Marco has admitted that
22   the claim is wrong in the bankruptcy, the 7.6 million is
23   not correct.  The right amount is in the -- is 6.9 million,
24   is that correct, Mr. Marticello?
25           MR. MARTICELLO:  That's correct, Your Honor.



P 888.272.0022  F 818.343.7119                BEN**HYATT**
                                              Certified Deposition Reporters        www.benhyatt.com

EXHIBIT "11", PAGE 400

Page                                                                37

1          THE COURT:  Right, and also they're fighting over

2    the same million-dollar diamond, are they not, that is, the

3    First International?

4          MR. MARTICELLO:  That's correct, Your Honor.

5          THE COURT:  Well, and so -- okay, that's -- and

6    let me -- excuse me just one second.  And so anything you

7    want to add as far as the problem with Mr. Marco's claim

8    being not subject to reasonable dispute?

9          MR. MARTICELLO:  I mean, the other inconsistency

10   we have with Mr. Marco, Your Honor, is that he's -- he's

11   alleged that he consigned jewelry to Mr. Rechnitz and not

12   Jadelle specifically, which also creates a factual dispute.

13   And I think that --

14         THE COURT:  Well, wasn't it Mister --

15         MR. MARTICELLO:  -- with respect to all three --

16         THE COURT:  I'm trying to remember -- excuse me.

17   Wasn't it Mr. Marco that -- the two suits he has going,

18   one's against the principals and one's against the

19   bankruptcy, is that correct?

20         MR. MARTICELLO:  That's correct, Your Honor.

21         THE COURT:  And in the one against the

22   individuals, he had the same complaint, but just changed

23   the names.

24         MR. MARTICELLO:  Correct, Your Honor.

25         THE COURT:  That's -- and is that in -- and, now,



Page                                                                        38

1  is that one in New York or is that here?  I just don't
2  remember.
3          MR. MARTICELLO:  It is a district court here,
4  Your Honor.  It's before Judge Rice, I believe.
5          THE COURT:  That's here in LA?
6          MR. MARTICELLO:  That's correct, Your Honor.
7          THE COURT:  Okay.  I would say if that's not
8  inconsistent, it's hard to imagine anything more.  I can
9  understand he might think, "Well, they're really one in the
10 same," but if you -- but if there's obviously a dispute, it
11 seems to me, if you sue the involuntary -- of course the --
12 that's what this case is, an involuntary, against the
13 princ -- the debtor, which is Jadelle Jewelry.  But if you
14 go and sue the principals and say that the property was
15 consigned to them, at least as far as I can see, it -- I
16 can understand why he might take inconsistent positions.
17 But for our purposes there's clearly a dispute by his own
18 mouth.
19         Would you agree with that, I assume,
20 Mr. Marticello?
21         MR. MARTICELLO:  I agree.
22         THE COURT:  Anything else about Mr. Marco?
23         MR. MARTICELLO:  No, Your Honor.
24         THE COURT:  Okay.  And then the final thing about
25 International, then, in their case it's basically the

P 888.272.0022 F 818.343.7119   **BEN**HYATT   www.benhyatt.com
                                  Certified Deposition Reporters

Page                                                                  39

1  dispute is because they and Mr. Marco are seeking in

2  their -- as their claim the same at least -- it may be more

3  than that, but at least the same diamond worth, you know,

4  one-point-something million dollars.  Would that be a fair

5  statement?

6           MR. MARTICELLO:  That's a fair statement, Your

7  Honor.

8           THE COURT:  Anything else about International, as

9  far as the objection to their -- them being a petitioning

10 creditor?

11          MR. MARTICELLO:  I think the other inconsistency

12 we have with First International is similar to what we have

13 with Mr. Noval, in the sense that First International takes

14 the position in the involuntary petition, under penalty of

15 perjury, as the amount of his claim, but the declaration he

16 filed, that his princ -- that the principal filed,

17 Mr. Anter filed, in connection with the Trustee's motion,

18 says that the amount is higher.  And so I think you have

19 this trend across the creditors where they've attempted to

20 understate their claim in the petition to avoid the dispute

21 that they know exists.

22          THE COURT:  Well, which is -- which years ago

23 that would have been fine.  I would have ruled that way.

24 We wouldn't probably be having, well, a lot of this

25 discussion, except for the statute was changed, dealing

P 888.272.0022  F 818.343.7119     **BEN**HYATT     www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                40

1   with the dispute as to the amount, as opposed to just the

2   claim itself.  Anything you want to add till I hear -- I

3   assume Mr. Richards will reply?  Anything that you want to

4   say, Marticello, at this point?  You'll get to respond to

5   anything Mr. Richards says.

6            MR. MARTICELLO:  Just two points, Your Honor.  I

7   think, number one, I think when the Court talked about how

8   clear this is, I agree with the Court that it's clear

9   because of the Ninth Circuit law that we have in the *Blisik*

10  (phonetic) case, which makes clear that a dispute as to any

11  portion of their claim strips the creditor of standing to

12  file an involuntary petition.  And the Ninth Circuit case

13  in *Blisik* also states why we have that rule in the Code.

14  It's because disputed claims are to be resolved elsewhere.

15  Bankruptcy involuntary petitions is a measure of last

16  resort.  It's a disputed litigation claim that really needs

17  to be resolved in another forum, like --

18            THE COURT:  Well, let me --

19            MR. MARTICELLO:  -- where these claims

20  originated.

21            THE COURT:  -- stop you.  You can -- I want to

22  hear, just as far as the other side and then I'll get back

23  to you.

24            Okay, now who --

25            MR. MARTICELLO:  That's fine, Your Honor,



P 888.272.0022  F 818.343.7119                    www.benhyatt.com

```
Page                                                    41
```

1  understood.

2          THE COURT:  Now -- because there were several

3  people representing the various folks, but let me -- now, I

4  know, Mr. Richards, you represent at least Mr. Noval, is

5  that correct?

6          MR. RICHARDS:  Noval.  That's correct.

7          THE COURT:  Now as far as the other two, are you

8  going to deal with them or we have other counsel, Mr. Lev?

9  Are you going to deal just with Mr. Noval --

10          MR. RICHARDS:  No, Your Honor, I'm --

11          THE COURT:  -- or are you going to deal with all

12  three?

13          MR. RICHARDS:  I'm going to deal with Mr. Noval

14  in the global issue of using the other pleadings and

15  Mr. Cohen will address the comments the Court just made

16  about his specific claims, but it may be rendered moot by

17  some of my general positions.

18          THE COURT:  Well, I know your position.  I've

19  already -- just so you understand, I've made my ruling, and

20  I don't think you quite got it.  I can take judicial

21  notice, and generally speaking, not to the truth of the

22  matters asserted, but that's just by judicial notice.  But

23  if you're dealing -- if you're saying that I can't -- I

24  totally disagree, the cases are all over the place,

25  including my own, that -- so that's my ruling.  That's



P 888.272.0022  F 818.343.7119     www.benhyatt.com

Page                                                        42

1  not -- that was not a suggestion, that I will consider and

2  have considered, I'm going to consider admissions by the

3  various people and all the things we've been discussing.

4  So I'd like you to --

5        MR. RICHARDS:  Yeah, I know --

6        THE COURT:  -- given that --

7        MR. RICHARDS:  Your Honor, I'm going to

8  (indiscernible) your point.

9        THE COURT:  -- I know you may not agree with

10 that, but -- well, let me ask you.  You don't agree with

11 that proposition?

12       MR. RICHARDS:  No, you can take judicial notice

13 of admissions.  I don't disagree with that, but what I do

14 disagree with is the fact that in a state court pleading,

15 the fact that you pled an amount that's inconsistent in the

16 petitioning creditor amount does not create a *bona fide*

17 dispute.

18       When you file claims in a bankruptcy court, you

19 typically file the claim.  You don't add in attorney's fees

20 or costs, where in state court, if there's a default,

21 you're required to put the highest number possible so

22 there's a due process issue if the person defaults.  The

23 pleadings rules are totally different, so --

24       THE COURT:  No, but wait a minute --

25       MR. RICHARDS:  -- you never --

Page                                                                    43

1          THE COURT:  -- you're forgetting a little thing

2     about Mr. Noval, who says in his pleading that he only put

3     the principal amount absolutely not in dispute.  You read

4     that, did you not?

5          MR. RICHARDS:  Yeah, but the reason why that was

6     put before you was because the principal amount is not in

7     dispute.  The number is not a static number.  Interest is

8     always accruing --

9          THE COURT:  No, that --

10          MR. RICHARDS:  -- there's always fees accruing.

11          THE COURT:  No, no, no, that's -- that isn't what

12     he said.  Do you want me to quote it?  "Only the principal

13     amount, absolutely no chance of being disputed."  Principal

14     amount.  That's what he's talking about.  That has no

15     chance of being disputed.

16          I hear what you're saying.  He has basically

17     admitted that this -- in my opinion, you can disagree if

18     you wish, but it's clear to me that he is saying he left

19     off claims, and it's -- and that's all the testimony we

20     have.

21          The problem is -- Mr. Richards, with your side is

22     you didn't bother in responding to all this.  So the record

23     I have right before me is that there's -- that as far as

24     Mr. Noval, he has not listed the entire claim, period.  He

25     hasn't explained what you are telling me.  That's not in

Page                                                          44

1   his -- that's no evidence before me, so I --

2          MR. RICHARDS:  I know, but, Your Honor, it's a

3   12(b) motion, and you're not -- we didn't want to fall into

4   the trap of converting it to a Rule 56 motion.

5          THE COURT:  No, it's not a --

6          MR. RICHARDS:  If anything --

7          THE COURT:  -- this is not a summary judgment.

8   You don't get it.  The cases are quite clear that normally

9   in a 12(b)(6) you take it on its face, subject to things

10  that I can appropriately take judicial notice.  This is not

11  a summary judgment motion.  This is a 12(b)(6) motion.  And

12  the law is quite clear that in that motion, not converting

13  this to a summary judgment, that the question before me is

14  whether or not there's a reasonable dispute.  If he wanted

15  to respond, that's the only issue.  So I hear what you're

16  saying.  This is not a summary judgment.  This is a

17  12(b)(6) motion, and I can't consider --

18         MR. RICHARDS:  I know, but --

19         THE COURT:  -- the admissions.

20         MR. RICHARDS:  Right, but when the -- by

21  responding to the admissions and getting -- and presenting

22  testimony, we believed that that's -- that converts

23  mister -- now you're weighing credibility.  We're simply --

24  we simply set forth a *prima facie* claim of the amount that

25  we're contending is owed that is not in dispute.  You can't

P 888.272.0022  F 818.343.7119  **BEN**HYATT  www.benhyatt.com
Certified Deposition Reporters

EXHIBIT "11", PAGE 408

Page                                                        45

1  create a dispute by saying, well, in another case, in a

2  different pleading standard, he's now requested all of his

3  expenses and interest, et cetera.  We don't have to take

4  that risk when we filed the petition.  We filed the

5  petition with a clean claim that is the principal amount,

6  just like even on the claim form for this district --

7            THE COURT:  Well, what --

8            MR. RICHARDS:  -- because we tell you to add --

9            THE COURT:  -- then what -- well, then what --

10 where -- that statement was made in what pleading?  And I

11 have it in front of me, just make sure you understand

12 that -- only the principal.  That was in what -- what

13 pleading was that made in?

14           MR. RICHARDS:  In our opposition to the motion to

15 dismiss.

16           THE COURT:  No, no, no, for -- in the oppo --

17 where did he make that statement?

18           MR. RICHARDS:  About what?

19           THE COURT:  That he only included --

20           MR. RICHARDS:  What specifically, Your Honor?

21           THE COURT:  Let me ask you that.  Mister -- let

22 me ask the debtor's counsel.  Where did you make that

23 statement?

24           MR. MARTICELLO:  Regarding the calculation of the

25 claim?



P 888.272.0022  F 818.343.7119        www.benhyatt.com

Page                                                                    46

1              THE COURT:  Yeah, that he only --

2              MR. MARTICELLO:  Sorry, this is Robert Marticello

3    for the debtor.

4              THE COURT:  Yeah, Mr. Marticello.

5              MR. MARTICELLO:  It's in docket number 16.

6    That's Mr. Noval's declaration, page 6 --

7              THE COURT:  That's his declaration.

8              MR. MARTICELLO:  -- line --

9              THE COURT:  That's not in the state court

10   litigation.  That's his declaration.

11             MR. MARTICELLO:  Oh, correct, Your Honor.  I'm

12   sorry, I -- yeah, correct.  In the state court there's --

13   are you asking what -- if there was a statement regarding

14   the principal amount owed?

15             THE COURT:  Where he made that statement, that he

16   only included the things that are not in dispute?

17             MR. MARTICELLO:  The statement -- that statement

18   is in his declaration filed with the Trustee motion.

19             THE COURT:  Right, where he said --

20             MR. RICHARDS:  It's not in opposition to the --

21   that's where -- but that's not relevant to this motion.

22   We -- the -- we -- in this motion we didn't -- we don't

23   need to -- we don't -- we didn't want to fall into the trap

24   of getting into --

25             THE COURT:  No, no, wait, stop.

P 888.272.0022  F 818.343.7119    www.benhyatt.com

Page                                                                47

1              MR. RICHARDS:  -- providing witness testimony --

2              THE COURT:  I'm asking you a very simple

3   question.  That statement was not in the state court.  That

4   was in his declaration before this Court, was it not?

5              MR. RICHARDS:  In opposition to the motion to

6   dismiss or the Trustee motion?

7              THE COURT:  Well, it doesn't matter, does it?

8   It's a statement that he made.

9              MR. RICHARDS:  Yes, it does.

10             THE COURT:  It's an admission --

11             MR. RICHARDS:  It actually does.

12             THE COURT:  -- is it not?  It was a statement in

13  a declaration.  I have a whole pile of papers before me,

14  but I know I've read it.  I can't remember which one.

15  Mr. Marticello, which -- the declaration was in regards to

16  what pleading?

17             MR. MARTICELLO:  It is document number 16.  It's

18  the trust -- it's the declaration of Victor Franco

19  submitted in support of the motion for a trustee.

20             THE COURT:  Okay.  And --

21             MR. MARTICELLO:  And it --

22             THE COURT:  -- I don't have that -- actually, I

23  have it in front of me, but can you read -- do you have

24  that in front of you?  Can you read the actual statement?

25             MR. MARTICELLO:  I do, Your Honor.  He says, at

Page                                                          48

line 22:

1

2          "In fact, in calculating my debt for inclusion in

3     the involuntary petition, I took the most conservative

4     approach by including the principal amount owed and an

5     amount that had absolutely no chance of being

6     disputed."

7          THE COURT:  Okay.  Now, Mr. Richards, that's in

8   this court.  That was not in state court.  I'm going to

9   leave it, but I'm telling you right now, I don't buy your

10  argument.

11         MR. RICHARDS:  Well, Your Honor, there's nothing

12  on --

13         THE COURT:  That's in this particular court and

14  part of these proceedings before me.  He is stating exactly

15  what the Ninth Circuit says is subject to reasonable

16  dispute.  I'll give -- do you want to say one more -- a

17  couple words on that, but I -- that is so obvious to me

18  what he's doing, what the Ninth Circuit says you can't do.

19  And he's not talking about fees in the state court or

20  anything.  He's talking about the claim in this court.

21         MR. RICHARDS:  I know, but --

22         THE COURT:  So do you have any final statement

23  about Mr. Noval?  And this is not --

24         MR. RICHARDS:  Yes, Your Honor, and

25  unfortunately --



P 888.272.0022  F 818.343.7119                              www.benhyatt.com

EXHIBIT "11", PAGE 412

Page                                                                49

1          THE COURT:  -- by the way, summary judgment.

2    This is a 12(b)(6) motion.

3          MR. RICHARDS:  I know, but, Your Honor,

4    unfortunately, this state -- this testimony is being

5    misunderstood.  He's explaining in the declaration that the

6    claim that he's making in this case is not subject to

7    dispute.  He's not compelled to put on evidence of interest

8    or other things that they could dispute.  He's following

9    the procedures.  When you make a claim in the Central

10   District, you put the principal amount.  You don't put all

11   the other parts of the claim.  So he's explaining to you

12   why this --

13         THE COURT:  Well, for instance --

14         MR. RICHARDS:  -- there's an inconsistency in the

15   statement.

16         THE COURT:  -- let's say there are attorney's

17   fees involved in the claim.  Those -- and those might be

18   disputed --

19         MR. RICHARDS:  (Indiscernible) --

20         THE COURT:  -- on not being reasonable.  Isn't

21   that what the Ninth Circuit is talking about?

22         MR. RICHARDS:  No, Your Honor, because attorney's

23   fees are only by a motion.  You wouldn't put stuff that

24   hasn't been ruled on yet.  In the original claim you only

25   put the principal.  You can't put stuff that is not decided



P 888.272.0022  F 818.343.7119          www.benhyatt.com

Page                                                                    50

1   yet in the future, so --

2           THE COURT:  Oh, you're not saying --

3           MR. RICHARDS:  -- when you petition, if

4   someone's --

5           THE COURT:  I've seen claims --

6           MR. RICHARDS:  -- you don't --

7           THE COURT:  -- all the time where they say, my

8   claim is such-and-such plus attorney's fees allowed by the

9   contract.

10          MR. RICHARDS:  Well, that's because --

11          THE COURT:  Doesn't that happen all the time?

12          MR. RICHARDS:  If there's a contract -- if

13  there's a contract that calls for prevailing party

14  attorney's fees, you have to first win.  So, no, you

15  wouldn't -- that would only be if there's like an agreed-

16  upon amount in a contract for attorney's fees --

17          THE COURT:  Well, in any case --

18          MR. RICHARDS:  -- like a specific amount.

19          THE COURT:  -- Mr. Richards, I'm going to end the

20  discussion on this.  I hear you.  I just totally disagree

21  and not further any -- and he is not -- because his -- he

22  has stated it himself.  You can twist it and put any spin

23  you want on it, but it's absolutely clear, his statement

24  that he's -- what he said, and that he is stating that he

25  is only listing the amount, absolutely it can't be

P 888.272.0022  F 818.343.7119   **BEN**HYATT   www.benhyatt.com
Certified Deposition Reporters

Page                                                                51

1  disputed, and that tells me that there is more to it, he's

2  admitting it.  So I am not going to allow him as a

3  petitioning creditor.

4           Who is going to talk about Mr. Marco?

5           MR. COHEN:  Your Honor, that would be me, Baruch

6  Cohen.

7           THE COURT:  All right.  Well, mister -- you've

8  seen where, in the -- he and International going after the

9  same diamond, are they not?

10          MR. COHEN:  We do not agree that they're going

11  after the same diamond.  In fact, I didn't see any evidence

12  presented by the putative debtor that's it's the exact same

13  jewelry.  We liq --

14          THE COURT:  It looked like to me, in the claim --

15          MR. COHEN:  I did not see the exact same jewelry.

16  Plus, you know, we have a total of approximately 6.9.  You

17  know, there's been transactions between the parties as to

18  what the -- both of --

19          THE COURT:  No, but wait a minute.

20          MR. COHEN:  -- these balances, but we --

21          THE COURT:  Didn't he say it in the state court

22  action that -- isn't the claim 7.6?

23          MR. COHEN:  The --

24          THE COURT:  Take a look at --

25          MR. COHEN:  That was in addition -- yeah --



P 888.272.0022  F 818.343.7119          www.benhyatt.com

Page                                                                52

1          THE COURT:  -- his statement in the petitioning

2    creditors.  Isn't it 7.6 million, no 6.9?

3          MR. COHEN:  Correct, I believe so.

4          THE COURT:  Okay.  So right on the face of it --

5          MR. COHEN:  But then, again -- but we --

6          THE COURT:  -- he's admitting in the other

7    action --

8          MR. COHEN:  -- but let me just finish, Your

9    Honor.  The point --

10         THE COURT:  -- that it should be less than the

11   7.6.

12         MR. COHEN:  Well, you know, when we get a letter

13   from debtor's counsel saying that they want to pay my

14   client -- you know, this is the February 4th, 2020 letter.

15   So regardless of what the number was from one pleading to

16   the other, when Rechnitz's or Jadelle's lawyer writes us

17   saying, "We want to pay you," you know, that's the debtor

18   stating that, "We have no issue as to your amount, as to

19   Marco."  And the Court hasn't addressed that, but I don't

20   see how you could get around, when the debtor writes the

21   letter and saying, "Hey, you know, we have a family member

22   who wants to pay you," not raising any dispute as to

23   amount --

24         THE COURT:  I totally disagree.

25         MR. COHEN:  -- not raising any --



Page                                                                53

```
 1          THE COURT:  I hear you, and you're a fine lawyer,
 2  but that's just -- and as a matter of fact from the other
 3  side, namely on your side, that there's this family member
 4  out there.  I don't think you jump and down and say, "Wow,
 5  they're going to pay."  Would that be a fair statement?
 6          MR. COHEN:  That's not necessarily accurate.
 7  This is a family member who's quite a philanthropist who
 8  has a good reputation, you know, of being philanthropic.
 9  He's well known within the -- to our client.  He's well
10  known within the Orthodox Jewish community.  So without
11  dropping any names, when they say that, you know, Bill
12  Gates is paying your bill you take note.  And when we get a
13  letter saying, "Hey, we're paying your bill, you know,
14  we're just trying to fund it" and the debtor's letter says
15  absolutely nothing about there being a dispute then right
16  now what that --
17          THE COURT:  Well, no.  I --
18          MR. COHEN:  By the way --
19          THE COURT:  I hear you.  But let me ask you this.
20          MR. COHEN:  And Marco is now --
21          THE COURT:  This -- isn't he suing -- but getting
22  back to Mr. Marco, isn't he suing the -- for the same
23  jewelry, the individuals, in state court?
24          MR. COHEN:  I do not be -- no.  We're suing the
25  Rechnitzes in state court.
```

Page                                                             54

1          THE COURT:  For the same jeweler.  They're not
2   the --
3          MR. COHEN:  We are not suing Jadelle.
4          THE COURT:  Doesn't the state court action say
5   the matter is --
6          MR. COHEN:  I do not believe it's --
7          THE COURT:  I've seen the complaint.  It says --
8          MR. COHEN:  I'm -- I do not believe it --
9          THE COURT:  -- that the matter is consigned where
10  it's consigned to the -- he took the same language from
11  here and said -- in this case he says, "These jeweler items
12  were consigned through the debtor."  And in the state court
13  action he says the same language, they were consigned to
14  the Rechnitzes.  Isn't that the correct?
15         MR. COHEN:  You are correct, but it's
16  interchangeable because the invoices are both to Jadelle
17  and to Jona.
18         THE COURT:  Well, you say that but he didn't say
19  that.  How is they didn't -- he didn't say -- what he's
20  saying in the one complaint is --
21         MR. COHEN:  I think we're --
22         THE COURT:  He doesn't mention Jadelle at all,
23  does he, in the state court action?
24         MR. COHEN:  Because the state court was stayed
25  by -- it was a U.S. District Court matter, Your Honor,

P 888.272.0022  F 818.343.7119      www.benhyatt.com
Certified Deposition Reporters

EXHIBIT "11", PAGE 418

Page                                                                55

1  before --

2          THE COURT:  Okay.  District Court.  Okay.

3          MR. COHEN:  But in that matter -- that matter

4  because Jadelle already was -- there was an involuntary

5  already placed against it, so there was -- you know, there

6  was no real need to identify Jadelle as the responsible

7  party when in essence the invoices say both.

8          THE COURT:  No.  You're talking -- you're adding

9  something to it.  You're saying what the invoices say.  In

10 one pleading it says it's the individuals that -- consign

11 to it and then the involuntary says there was -- it was the

12 debtor Jadelle.  Those are -- you don't think those are

13 inconsistent positions --

14         MR. COHEN:  I think -- I think Peter Marco --

15         THE COURT:  -- that this lease -- not as a

16 matter --

17         MR. COHEN:  No, because when --

18         THE COURT:  -- not to decide it ultimately

19 because they might conceivably both be liable.  But I'm

20 saying as far as whether or not there is a -- on the face

21 of it a dispute as to who's liable.  Why does that not show

22 a dispute, just on its face?

23         MR. COHEN:  We don't believe it's a dispute.

24 They are one and the same.  It's for another substance.

25         THE COURT:  Well, you're -- again, you say

Page                                                                56

1  they're one and the same but isn't that subject to dispute?

2  They may say, "No, it's not."

3          MR. COHEN:  We lost the judge again, CourtCall

4  operator.

5          THE COURT:  You can't hear me?  Oh-oh.

6          ATTORNEYS:  We hear you now, Your Honor.

7          THE COURT:  I'm back.

8          MR. RICHARDS:  Yeah.

9          And, you know, are you sure, Mr. Cohen, that

10  you've looked at the pleading because I have and it seems

11  to me that there -- that International and Mr. Marco are

12  going after at least one of the same items.  Have you

13  looked at the documents?  Are you telling me that they

14  don't overlap?

15          MR. COHEN:  They're mis -- see, that's where the

16  confusion is.  There may be an overlap but that in terms of

17  the trans --

18          THE COURT:  Well, not a maybe.  They -- it seems

19  to me there is.  Am I -- I'm asking you as an officer of

20  the court, have you actually looked at the claims as to

21  whether or not there really is, at least as to this 1.2

22  million or whatever it's worth, this diamond, are you

23  telling me that that's not the case?

24          MR. COHEN:  No.  I'm saying there is overlap but

25  I'm saying it's a confusing web of transactions --



Page                                                                57

1          THE COURT:  No, no.  Wait a minute.

2          MR. COHEN:  -- with Rechnitzes --

3          THE COURT:  Back up.

4          MR. COHEN:  -- Jadelle and my client.

5          THE COURT:  That isn't what you just told me

6   about a couple minutes ago.  You said, no, there's no

7   overlap.  Be very careful, Mr. Cohen, that --

8          MR. COHEN:  No, what I'm saying is I don't see

9   ev -- Your Honor, I'm very careful.  I said I don't see

10  evidence of any overlap.

11         THE COURT:  Okay.

12         MR. COHEN:  It's hard to --

13         THE COURT:  Let me -- let me go back to

14  Mr. Marticello.  Why don't you point out to it?  I've seen

15  it but I want you to help Mr. Cohen out.

16         MR. MARTICELLO:  Your Honor, the evidence is in

17  Mr. Marco's pleading.  It is page -- it's Bates-stamped 100

18  of Exhibit 7 where it lists First International and the --

19  Diamond and the amount.

20         THE COURT:  And that -- the Diamond -- I forget.

21  I looked at it and my eyes kind of glazed over, but it does

22  describe -- I don't know what all those numbers mean, but

23  why don't you -- do you have in front of you what the -- I

24  don't know, is that 16 carat?  I don't know.  I don't know.

25  I'm not a jeweler so I have no idea.



P 888.272.0022  F 818.343.7119          BENHYATT          www.benhyatt.com
                                        Certified Deposition Reporters

Page                                                          58

1            MR. MARTICELLO:  Yeah, Your Honor, it -- under

2    the description -- and this is Robert Marticello for the

3    debtor.

4            THE COURT:  Yes.

5            MR. MARTICELLO:  Under the description it says

6    EID -- EID NT 13.62 d/bbs1, then the number sign, and then

7    the number sign, and then the number is 11776564.

8            THE COURT:  And again -- just for the record

9    again --

10           MR. MARTICELLO:  And the Court --

11           THE COURT:  -- you're reading from what?

12           MR. MARTICELLO:  I'm reading from -- this is our

13   request for judicial notice in support of our motion to

14   dismiss.  It's Exhibit 7, Bates-stamped 100.

15           THE COURT:  No, no.  What is the document?  I

16   think I have it but just for the record to be clear what

17   are you reading from?

18           MR. MARTICELLO:  The doc -- oh, the document,

19   it's Marco's third -- amended third-party complaint.

20           THE COURT:  All right.  And that's filed in the

21   district court?

22           MR. MARTICELLO:  Correct.

23           THE COURT:  Right.  And now shifting to

24   International, they're -- how -- they show that they're

25   looking for the same thing.  How do you connect the two?



Page                                                            59

1  What about things from them?

2          MR. MARTICELLO:  Well, one, Your Honor, the place

3  that I just read in Marco's third amended complaint, it

4  actually lists First International as the vendor for that

5  particular item, but also coming from Mr. Anter in this

6  Court he submitted the declaration in support of his motion

7  for a trustee --

8          THE COURT:  Right.

9          MR. MARTICELLO:  -- which is document number

10 15 -- and he states that he consigned certain items to

11 Jadelle and in support of that item he attaches his memos

12 and the memo lists the same item.

13         THE COURT:  All right.  Well, that was my

14 recollection.  I didn't remember all the documents.

15         But now, Mr. Cohen, are you -- do you -- are you

16 listening?  Do you now see that they're talking about the

17 same item?

18         MR. COHEN:  So, Your Honor, I'm not sure they're

19 the same item.  We -- first of all, First International did

20 not file a lawsuit yet.

21         THE COURT:  No.  They haven't filed a lawsuit.

22         MR. COHEN:  Number two, that this --

23         THE COURT:  Anyway, let's put it this way.

24         MR. COHEN:  And the --

25         THE COURT:  It is absolutely clear to me that

Page                                                          60

1    they -- and it's not unusual -- but they're making the same

2    claim and they may not even know amongst themselves through

3    all these consignments and so forth, but it's absolutely

4    clear to me that they're going after the same diamond.  And

5    again, I don't write the law.  I don't make the law.  But

6    it's clear that in that case they're not only talking about

7    the amount of the claim but actually as to what's included

8    in the claim.

9              So, Mr. Cohen, do you have anything to add to

10   either Mr. Marco or -- you're dealing with International as

11   well, right?

12             MR. COHEN:  You're right, Your Honor.  I'm

13   dealing with both and the problem is that the description

14   doesn't match in both.  And in an ideal world if they did

15   match I would be more ready and eager to acknowledge and

16   submit to the point, but they don't match and therefore I'm

17   not 100 percent sure that it's the same.

18             THE COURT:  Okay.

19             MR. COHEN:  But --

20             THE COURT:  Well, there is reference I am

21   convinced --

22             MR. COHEN:  Yeah.

23             THE COURT:  Because there is reference in

24   Mr. Marco's papers that it dealt with International.

25   Obviously, the money we're talking about at this level a

P 888.272.0022  F 818.343.7119    www.benhyatt.com

Page                                                                 61

1   lot of these, you know, outfits and people are dealing with

2   each other it's not unusual.  But I am convinced that --

3            MR. COHEN:  Right.  But the additional point,

4   Your Honor --

5            THE COURT:  Yes.

6            MR. COHEN:  The additional point, Your Honor, is

7   that Jadelle issued 2.1 -- $2,122,760 worth of bogus

8   checks.  There is absolutely no dispute that Jadelle issued

9   that amount of bounced checks.

10           THE COURT:  Well -- and, Mr. Cohen, stop.

11           MR. COHEN:  Well, even --

12           THE COURT:  You're changing the subject.  I --

13   you know, it is pretty clear to me -- and this is not a

14   criminal court.  This is just a bankruptcy court dealing

15   with an involuntary.  I have no doubt from reading all

16   these pleadings, and the debtor doesn't say they're not

17   correct, that there's all kinds of stuff going on and

18   jewelry that's missing and so forth.  So I don't doubt that

19   for a second.

20           But the only question for me is a very simple one

21   really, is whether or not there is a -- under the -- under

22   bankruptcy law whether there is a dispute as to the amount

23   of the debt.  So I have no doubt from these pleadings that

24   probably millions of dollars are probably at least owed by

25   the debtor.  That I have no doubt about it.  The question

Page                                                                62

1  is how much?  And that's what this is about.  So it seems

2  to me --

3           MR. RICHARDS:  Your Honor, excuse me.  Will we be

4  allowed to --

5           THE COURT:  -- that at least as far as people who

6  obviously work together, Marco and International, there is

7  an overlapping claim.

8           MR. RICHARDS:  Your Honor, we should be allowed

9  to -- this is Ronald Richards.  We should be allowed to

10 amend our pleadings to -- if that's an issue of any --

11          THE COURT:  No.  Let me stop you.  No.  This is

12 not a -- this -- no, this is a very simple matter.  This is

13 not a Ping-Pong match.

14          So as far as all three of these it is clear to me

15 and for the re -- this is a discussion that there are

16 disputes I've already indicated as to the amount, as to who

17 they're owed to, the dispute as to it and I've listed

18 pretty much all of them.

19          So, you know, there's not -- this is not a

20 pleading where you can amend.  This is dealing with the

21 petition.  But what I am going to do as follows.  Again --

22 and this is not the normal complaint, answer and so forth.

23 So the Rule 12(b)(6) does apply but in kind of an unusual

24 way.  What I'm going to do as follows.

25          It -- for the reasons I've stated on the record I

Page                                                                    63

1   agree with the debtor that these three have disputes, at

2   least as to the amount and/or as to the claim itself.

3   However, again, I'm not ruling -- of course, I'm

4   reiterating myself *ad nauseum* that indeed that's the final,

5   the ult -- at the end of the day those claims can't be

6   proven.  I'm just talking about whether petitioning

7   creditor -- I don't doubt that they have claims.  It's just

8   a question of whether they're subject to the dispute.

9   That's what's before me.  A totally different question.

10          But what I may do is this and that's why I

11  originally -- and, by the way, so I -- what I'm going to do

12  is the following.  I am going to require the -- both -- we

13  have two -- we -- there are two principals of this debtor,

14  right, the Rechnitz -- however you pronounce their last

15  name -- but that is correct, right, from the debtor -- from

16  the debtor's standpoint there are two?  They're the -- the

17  only two people in the LLC.  They're the only members, is

18  that correct?

19          MR. MARTICELLO:  To my -- Your Honor, this is

20  Robert Marticello for the debtor.  My understanding is that

21  Rachel Rechnitz is the member.  I -- to my knowledge

22  Mr. Rechnitz is not a member.

23          THE COURT:  Well, what is he?  I thought he -- I

24  thought you -- what --

25          MR. RICHARDS:  Your Honor, he was --



Page                                                              64

1          THE COURT:  In an LLC you're either a member or

2     you're not.

3          MR. RICHARDS:  Your Honor, Ronald Richards.

4          THE COURT:  I mean, I don't understand.  Why is

5     he not a member?

6          MR. RICHARDS:  His wife is the member.  She's the

7     member.  He's the -- he's a member under community property

8     law.

9          THE COURT:  No, no.

10         MR. RICHARDS:  And he's the one that frank --

11         THE COURT:  Is he an actual member on the papers?

12         MR. COHEN:  He is not, Your Honor.  This is

13    Baruch Cohen.  He is not a member.

14         MR. RICHARDS:  They objected to all of our

15    discovery requests, all of them that we sent, Your Honor,

16    that were -- last night we received blanket objections.

17         THE COURT:  As to what?  I don't have that before

18    me.  Because what I'm going to do --

19         MR. RICHARDS:  We --

20         THE COURT:  So you're telling me that again the

21    community -- obviously, because of the community property

22    is one thing.  I am going to order the debtor -- so she's

23    basically the one who runs the business end, is that

24    correct?

25         MR. RICHARDS:  No.  Mister Rechnitz -- Jonah

Page                                                                    65

1    Rechnitz runs the business.

2          THE COURT:  Excuse me?

3          MR. RICHARDS:  Jona Rech -- this is Ronald

4    Richards -- Jona Rechnitz runs the business.  His wife has

5    been listed as a member, but the person that's committing

6    these frauds and tendering the worthless checks is Jona

7    Rechnitz in connection with his wife.  They were married.

8    They have six children --

9          THE COURT:  Okay.

10         MR. RICHARDS:  -- together.

11         THE COURT:  Well, what I'm going to tell you what

12   I'm going to do because I hear --

13         MR. RICHARDS:  It's a community property

14   business.

15         THE COURT:  -- what's going on.  In all the

16   pleadings it seems like the -- they're both involved.  I

17   don't know which one is more involved.  I have no idea.

18         But I am going to do this.  I am going to require

19   the debtor -- and that is both Mr. and Mrs. Rechnitz -- to

20   file a declaration.  I'm going to give you -- I'm going to

21   give them one week from today, that is they have to file a

22   complete list of all creditors of the debtor.  Those are

23   the only two people I know were involved and they're going

24   to have to -- I'm giving them one week.  They would know

25   who the various creditors are.  They have one week from

Page                                                                66

1  today to file that, listing all creditors of the debtor

2  with the nature of the debt.  Just a summary but just, you

3  know, for its -- and jew -- consigned jewelry, what have

4  you, because you had said originally -- I think one counsel

5  for the debtor that they're all paying their debts as they

6  become due.  I forget who made that statement but one of

7  you did.

8          So obviously somebody and I'm not going to be --

9  worry about which one -- I want a declaration from both of

10 them signing it as to who the -- who are the creditors, how

11 much is owed, the nature of the debt, contact information.

12 namely the address, email, phone, anything possible in

13 order to allow the creditors, as you indicated in your

14 pleadings, to be able to get other people involved.

15         I know at least two of the creditors here have

16 filed suit.  International hasn't.  So -- but nevertheless

17 the law does require now with the Oved case with the big

18 problem with the judge.  I don't know reading that case was

19 fascinating as to how the things moved so quickly.  I'm

20 only trying to be fair to both sides.  But it seems to me

21 within one week the debtor and the joint I'm ordering both,

22 both of the principal -- the principals, that would be Mr.

23 and Mrs. Rechnitz, to be able to order under penalty of

24 perjury to file a statement of all the creditors.

25         And then after that I'm going to -- I am going to



P 888.272.0022  F 818.343.7119   BENHYATT   www.benhyatt.com
Certified Deposition Reporters

Case 2:20-cv-06133-DOC Document 16-1 Filed 07/10/20 Page 157 of 439 Page ID #:725

Page                                                              67

1  give the -- after receipt of that list I'm going to give --

2  and I'll give some dates -- I'm going to give the creditors

3  30 days to contact them.  This is not a matter of just

4  discovery, just to be able to -- with the really creditor

5  to be able to see whether they would join in.  They may

6  very well want to.

7          And then what I'm going to do, I'll give you the

8  actual dates.  That should be plenty of time.  That is 30

9  days after you get the receipt.  And if the debtor -- the

10 principals play games and don't give adequate information

11 that will be a real problem.  Then I'm going to continue

12 this for a status conference.  I'll give you a specific

13 date for that.

14         And at this particular time, even though the --

15 and I'm not going to dismiss the case.  I will be preparing

16 the order in this case, by the way.  I'm not going to

17 dismiss it and I'm not going to appoint a trustee.  I see

18 no reason whatsoever at this point for appointing a

19 trustee.  I think the allegations are the debtor did some

20 really -- the principal -- I know the debtor did some

21 really bad things, but I see no -- I think in this

22 particular case if a trustee ultimately is appointed it's

23 going to be preferences, fraudulent transfers and searching

24 out things.  But I doubt seriously, from what I've heard,

25 that if in the premises they're going to find at that

Page                                                                    68

1  location an actual thing.

2         So I see -- I don't see at this point any need

3  for a trustee, so I will prepare an order without

4  prejudice.  I'm denying the motion for a trustee.  I'm

5  going to -- so I'm going to -- I will set this for a

6  further status conference to see whether or not the debtors

7  have complied and this -- again, this is under penalty of

8  perjury.  So I would strongly suggest that they tell the

9  truth because, if not, they know the consequences.  I'm

10 required by law to refer it to the Justice Department.  So

11 I fully expect that in far -- and this is not a -- just a

12 request.  This is an order.  If the debtors -- if both the

13 debtors --  principals, do not comply with my order I will

14 enter an order for relief.  So I want to make it very clear

15 at this point I've expressed my view as to, you know, the -

16 - why these particular creditors or these who are subject

17 to dispute -- not that the claims are invalid, but just

18 that they're subject to dispute -- and I'm required by law

19 to give them an opportunity and give them 30 days from

20 receipt of these declaration from the joint declaration

21 from the principals as to a listing of all of their

22 creditors.

23         Any -- and again, I'm not going to change what

24 I've said and I'll give you specific dates, but any -- let

25 me ask from the debtor's standpoint.  This is really from



P 888.272.0022  F 818.343.7119   BENHYATT   www.benhyatt.com
                                  Certified Deposition Reporters

Page                                                                69

1  the debtor, Mr. Cohen, or -- do you -- so if you have any

2  question about what I've ordered the debtor -- the

3  principals of the debtor to do?

4          MR. MARTICELLO:  I -- Your Honor, this is Robert

5  Marticello for the debtor.  I don't have a question, but I

6  would like to just make one point if I could, Your Honor,

7  because the Court stated it's so required to offer an

8  opportunity to join and I actually do not think that is

9  required under the *Vortex Fishing* cases in the Ninth

10 Circuit --

11         THE COURT:  I'm not saying it's required.  I am

12 requiring it.

13         MR. MARTICELLO:  Okay.  I understand.

14         THE COURT:  Do you follow?  This is -- I'm trying

15 to -- I am -- I have the power to do it and I'm doing it.

16 I don't see anything unreasonable.  The -- again, the law

17 is kind of a -- it's pretty clear to me after reading the

18 various opinions that I have to, and I will since I've

19 disqualified, at least for being petitioning creditors --

20 the three petitioning creditors and they have to have a

21 reasonable time to be able to see if they can get other

22 creditors to join in.  It's that simple.  What's -- so

23 what's so difficult about that to understand?

24         And who was it that was just speaking?

25         MR. MARTICELLO:  It's not -- Your Honor, I

Page                                                              70

1   apologize.  This is Robert Marticello for the debtor.

2            THE COURT:  Yeah.  Well -- and that's -- you

3   understand.  That's not difficult to understand, is it,

4   what I'm ordering?

5            MR. MARTICELLO:  It -- I understand the Court's

6   order.

7            MR. RICHARDS:  Your Honor, this is Robert

8   Richards.  Just so the record's clear because you keep

9   referring to the debtor's principal.  Do you mean Jona and

10  Rachel Rechnitz are required to file a declaration?

11           THE COURT:  Those are the two people.  That's it.

12  Those are the only people that I -- there was this other

13  declaration person who was signing checks.  But, yes, those

14  are the two people that -- as far as I can tell.  That's

15  why I asked you when we started this hearing, who's really

16  -- is -- are the people behind the debtor and obviously

17  those are the two people.  And it's -- and the -- and I

18  assume they have -- if they're not ans -- to an -- able to

19  answer that question I'm going to enter an order for

20  relief.  I want them to answer truthfully and I want to

21  give the creditors -- the petitioning creditors an

22  opportunity to see if they could convince the three other -

23  - assuming there are more than 12 -- creditors to be able

24  to do it.

25           Any questions about what I'm ordering?

P 888.272.0022  F 818.343.7119       **BEN HYATT**
                                     Certified Deposition Reporters       www.benhyatt.com

EXHIBIT "11", PAGE 434

Page                                                                   71

1              MR. MARTICELLO:  No, Your Honor.

2              MR. RICHARDS:  And from -- this is Ronald

3    Richards.

4              THE COURT:  Okay.  Then I'm going to do this.  I

5    am going to -- there's -- seven days should be more than

6    enough time.  This is not a difficult thing to do, is it,

7    Mr. Marticello?  That should be a simple thing for them to

8    do, right?

9              MR. MARTICELLO:  I believe we can accomplish it

10   in seven days, Your Honor.

11             THE COURT:  Okay.  So I'm going to do this.  I'm

12   going to give you some dates and I'll look at my calendar

13   here.  Just so you understand, I just want to get -- I want

14   to give each side a fair opportunity to present the case

15   but I think it's important for both sides, quite frankly,

16   to get this resolved one way or the other.  So I'm still

17   looking for my -- I'm looking for my calendar.

18             Stacy?  No, no.  An actual calendar.

19             THE CLERK:  (Indiscernible.)

20             THE COURT:  I have such a pile of papers here.  I

21   can't find my little -- there it is.  It was buried

22   under -- okay.  So today, this is June 9th.  I will pre --

23   I -- it may take me a day or two to prepare this order, but

24   this is the order right now.  In fact, you may not get the

25   written one.  That's why I want to make it absolutely

P 888.272.0022  F 818.343.7119    **BEN HYATT**    www.benhyatt.com
Certified Deposition Reporters

Page                                                                 72

1  clear --  everybody hears me -- this is June 6 -- excuse
2  me, this June 9.  By the end of the day on June -- let's
3  say -- I'm going to change this.  Everybody knows it's all
4  done by email.  I want it filed with the Court by 3 o'clock
5  on the 16th of June.  So we'll get it and the other -- and
6  the -- obviously, all the three petitioning creditors or
7  counsel they will get the -- this list.
8          Again, just so there's no misunderstanding, it's
9  got to be signed by both under penalty of perjury that it
10 is a complete list of all creditors of the debtor.  And
11 with the amount of the debt -- of the name of -- of course,
12 the name of the creditor, all indication in how to reach
13 them, namely, phone, email, mailing address and the nature
14 of the debt.
15         MR. RICHARDS:  Your Honor, did you say email,
16 too?
17         THE COURT:  Everything.
18         MR. RICHARDS:  Email address?
19         THE COURT:  Any way of contacting them.
20         MR. RICHARDS:  Okay.
21         THE COURT:  That is a physical address, phone,
22 fax, any way of communicating with them, then -- and of all
23 of them.  Again, the amount, the name --
24         MR. RICHARDS:  Any cell phones if they have it?
25         THE COURT:  Excuse me?



P 888.272.0022  F 818.343.7119                          www.benhyatt.com

EXHIBIT "11", PAGE 436

Page                                                                      73

1          MR. RICHARDS:  And cell phones if they have it?

2          THE COURT:  Yeah.  Well, of course.  Only if they

3    have it.  But I'm not going to be too impressed if they

4    say, "Gee, we really can't reach them."  That would be

5    pretty -- a pretty ridiculous response.  So in any case

6    it's the name, what the debt's for, just a summary, you

7    know, for a consigned whatever, whatever it is, or it could

8    be non-jewelry.  It could be other debts.  I don't know

9    what the debtor might have, rent on the place, whatever.  I

10   don't -- I don't know.  But whatever debts.  The name of

11   the creditor, the amount, the nature of the debt and every

12   contact information, an address, email, fax, phone, you

13   know, whatever.  And that -- and it's asked by 3:00 p.m.

14   next Tuesday.  And that has to be delivered.

15          And from there I'm going to give the petitioning

16   creditors -- to the approximate -- let's see, that's one,

17   two, three -- I'll give actually a little more.  I'll give

18   to July -- Bastille Day, no particular importance to us

19   here in the U.S. -- July 14th for the creditors to try to

20   get any additional person to file -- to join in in the

21   petition.

22          Is that clear from the petitioning creditors?

23   Mr. Richards, any of the others, is that clear?

24          MR. RICHARDS:  Yes, Your Honor.  Just a quick

25   question.  When you say "deliver this list," I'm assuming

Page                                                                      74

1  that they are going to file the two declarations on the

2  docket, correct, by 3:00 p.m.?

3            THE COURT:  Oh, they'll be filed but also they'll

4  be served by email on the -- all the three petitioning

5  cred -- counsel for the petitioning creditors.  Yes.

6            MR. RICHARDS:  Okay.  Thank you.

7            THE COURT:  And then you'll get to the 6th -- to

8  July 14th by -- again by 5:00 but we'll make it again by 3

9  o'clock.  Just to make it clear, by 3 o'clock on July 14th

10  to have to get somebody else to join in and I'll have no

11  idea how many of those other people are.

12            And, by the way, if there are -- of course, if

13  there are less than 12 creditors there can be just one but

14  so -- but I don't know.  So if there -- so we all know

15  that, that's a bankruptcy if there's more than 12 or 12 or

16  more.

17            So what I'm going to do and I will know and you

18  will know by the 14th of July at 3 o'clock if you have at

19  least the required number of creditors and then I'm going

20  to set it for a status conference two weeks after that or

21  approximately.

22            Do we have a date?

23            THE CLERK:  We have July 7th at 3:00.

24            THE COURT:  Okay.  So that would be -- no, no, it

25  can't be July 7th.  Two weeks after the 14th.  So that



P 888.272.0022  F 818.343.7119          www.benhyatt.com

Page                                                                75

1   would be -- that would be the 28th.

2          So I'm going to continue this for a status

3   conference on July 28th at 10:00 a.m. and I'll find out at

4   that point whether I dismiss this because there is not a --

5   there are no -- not sufficient creditors or if there are go

6   from there.  If there are some filed there may be further

7   objections to them.  I have no idea but I want -- I -- what

8   I want is a status report one week before the 28th.  That

9   is on the 21st I want a status or joint status from just

10  to -- just telling me what's happening.  That is, the

11  counsel for the -- well, there's one counsel for the debtor

12  and I guess there are either two or three, depending on how

13  you count, on the creditors to tell me what's going on.

14  There are a lot of possibilities.  It may be that there's

15  no further -- no further, you know, creditors and then I --

16  and then, of course, there's going to be a motion for

17  attorney's fees or -- by the debtor, but I don't know that

18  for sure but that would likely happen.  But if there are

19  other creditors then I'd have to know on that status report

20  whether or not there's a dispute as to who -- you know,

21  they're being eligible.

22          And so I'm going to -- I will ultimately prepare

23  an order on this, but as far as getting that list out and

24  as far as the response and all, I want everybody to know

25  exactly what's going to happen and we will again have

Page                                                                          76

1    that -- let's see, the hearing will be when again?

2              THE CLERK:  You said July 28th at 10:00.

3              THE COURT:  Yeah.  July -- it would be July 28th

4    at 10:00.

5              Any questions at all about what I've said?  I'm

6    not asking the creditors to agree.  I just want to

7    understand what I've done.  Any question at all?

8              MR. COHEN:  Your Honor, this is Baruch Cohen.  I

9    have a question for you.

10             THE COURT:  Yes.

11             MR. COHEN:  Baruch Cohen on CourtCall.  I have a

12   question.  Okay.  So the principals of the debtor, Mr. and

13   Mrs. Rechnitz, to submit a declaration as to the debts of

14   Jadelle as of what date?  As of the petition date?  Because

15   I suspect that the Rechnitzes are immediately upon

16   conclusion of this hearing going to try and interfere with

17   creditors --

18             THE COURT:  Oh, no, no.  That's --

19             MR. COHEN:  -- and try to pay them off.

20             THE COURT:  No, the law is -- no, it's clear and

21   it's a good question and for lots of reasons.  It's as of

22   the petition date because what people have tried to do

23   is -- in the past is try to pay off all the debts, you

24   know.  And, of course, that's not going to happen --

25             MR. COHEN:  Right.



P 888.272.0022  F 818.343.7119                          www.benhyatt.com

Page                                                                77

1          THE COURT:  -- in this case because you've got

2    millions of dollars in this one.  I have had a couple cases

3    where --

4          MR. COHEN:  There -- over 30 million we can

5    leave, Your Honor.

6          THE COURT:  -- the debtor says --

7          MR. COHEN:  But what the --

8          THE COURT:  "Well, I'll just pay off the debt so

9    there's no petitioning creditors."  That's -- no, law is as

10   of the date of the petition.

11         MR. RICHARDS:  Your Honor --

12         MR. COHEN:  Thank you.

13         MR. RICHARDS:  -- Ronald Richards.  It's also

14   important that you make it clear in your order of who a

15   creditor is, that any claims that Mr. Rechnitz has in the

16   Rabbinical Court, because we've been contacted by many

17   debtors that felt they had religious obligations to exhaust

18   that -- our creditors so there's no funny business, that he

19   excludes creditors.  It's anybody that he's -- owes money

20   to.

21         THE COURT:  Oh, yeah.

22         MR. MARTICELLO:  Your Honor --

23         THE COURT:  You know, I'm quite familiar, not --

24         MR. MARTICELLO:  -- this is Bob Mar --

25   Marticello.

P 888.272.0022  F 818.343.7119  BEN HYATT  www.benhyatt.com
Certified Deposition Reporters

Page                                                                78

1          THE COURT:  -- I mean, with the *bet din*, I guess
2     it's called as I recall.  No, no, no.  This is -- yeah,
3     make it quite clear.  I know you're all very -- I know most
4     of you on the line very bright people.  No, this is the --
5     I understand about their religious court.  No, no.  This is
6     very simple, not complex at all.  We're talking about
7     outside in the -- in the regular world how much -- what
8     creditors they have.
9          I hear what you said, Mr. Cohen.  I don't
10    understand what the debtor would attempt to -- what monkey
11    business the debtor would attempt to do here.
12         MR. RICHARDS:  We're concerned that -- this is
13    Ronald Richards.  I'm just concerned that because we --
14    they objected to all of our discovery and we can't file a
15    motion to compel before the -- well, I'd like permission to
16    file a motion to compel that there be some check-and-
17    balance that we could verify they're not intentionally
18    excluding creditors because we believe there's over 30
19    million dollars' worth of theft in defaulted payments and
20    bad checks.  And so by trusting Jona and Rachel to be
21    honest and not commit perjury is a -- is one thing, but
22    we'd have no way of imploring the adversarial process.  So
23    I don't know why we wouldn't be able to take a deposition
24    after they submit the declaration --
25         THE COURT:  Okay.



P 888.272.0022  F 818.343.7119                        www.benhyatt.com

Page                                                                79

1        MR. RICHARDS:  -- and make sure that --

2        THE COURT:  You know what I'm going to do, I am

3  going to change one thing because I hadn't thought of that

4  and certainly that possibility.  So I'm going to change a

5  couple of things.

6        I'm going to give you 60 days to get these other

7  people because I was thinking that if there -- I can just

8  see obviously the creditors don't trust the debtor at all,

9  the principals, so I'm going to -- I am going to change

10  that.  I had -- it hadn't dawned on me that you would no

11  doubt want to do what you've just suggested so I'm going to

12  change that.  So I'm going to change from the -- I'm going

13  to -- that the debtor still by the 16th at 3:00. but I'm

14  going to give you until 60 days.  So that would be to the -

15  - approximately 60 days -- to August 14 at 3:00 to get the

16  creditors to join and I'm changing that.  And I'm going to

17  continue the hearing to the -- or may -- I may -- no, let

18  me.  Let me -- I'm going to keep this on, you know, Aug --

19  or may -- August 14.  And then I'm going to change the

20  hearing.  And I'm asking my credit -- my staff here to give

21  me the hearing after that.

22        THE CLERK:  We have August 25th at 10:00.

23        THE COURT:  Yeah.  I'm going to continue the

24  hearing to August 25 at 10:00.  So I -- yeah, I'm going to

25  take into account that just -- it may not be necessary but

Page                                                                80

1  you're right.  Thirty days is just not a lot of time to

2  give you the opportunity to do discovery, so I'm changing

3  the hearing date to August 25 at 10:00.  The -- by

4  August 14 at 3 o'clock you have the -- at that point is the

5  time that you can get any additional creditors and you --

6  and as far as the discovery you can go -- immediately get

7  the discovery.  I assume you want to take the deposition as

8  to just what we're talking about.  I hope you don't do any

9  beyond that.  It will make it very unnecessarily

10  complicated.

11          MR. RICHARDS:  I will not do that, Your Honor.  I

12  (indiscernible) --

13          THE COURT:  The discovery should just be at this

14  point literally --

15          MR. RICHARDS:  I understand declarations.

16          THE COURT:  -- if you take they're either written

17  discovery or do what you want as to tell -- to be able to

18  cross-examine both of them as to -- you know, that's what

19  we're talking about.  So, yeah.  I think that's only fair

20  and then the -- so the -- I still want that status report

21  one week before the 25th of September and that would be --

22  no, was it -- no, wait.

23          It was the 15th of September, wasn't it?

24          THE CLERK:  August 25th was the status --

25          MR. RICHARDS:  August, Your Honor.

Page                                                                        81

1              THE COURT:  Oh, I'm sorry.  August.  I'm --
2              THE CLERK:  Yeah.
3              THE COURT:  You know, yeah, this has been a very
4    long morning.  I apol -- I actually seem to be in the
5    afternoon now.  My head is spinning.  August 25 at 10:00.
6    So a week before that is August 18, I want that status
7    report.  And by that time it seems to me you will have
8    exhausted the -- getting the information from both the
9    principals.  And I hope for their sake that don't know --
10   at least in this Court anyway if I have any suspicion that
11   they're not being truthful, that would be a problem.  And I
12   don't have any reason to suspect they won't be and if they
13   are, then it's really up to the creditors and that time is
14   more -- that's more.  They've got 60 days to be able to
15   convince other people to join in.  But at that point one or
16   two things are going to happen:  either they -- you've not
17   been able to convince other people, then I will dismiss it,
18   or you have and then we'll deal with them.
19             So any questions about the -- any of that?  From
20   the debtor's standpoint --
21             MR. MARTICELLO:  Your Honor --
22             THE COURT:  -- you know basically what the debtor
23   has to do.
24             MR. COHEN:  Yes, Your Honor.  Baruch Cohen.
25   Clarification question.  A clarification question --

P 888.272.0022  F 818.343.7119        BENHYATT
                                      Certified Deposition Reporters        www.benhyatt.com

EXHIBIT "11", PAGE 445

Page                                                          82

1          MR. MARTICELLO:  Your Honor, this is Robert

2   Marticello with --

3          THE COURT:  I want to hear first from the debtor.

4          Or, Mr. Marticello, what do you want?  What's

5   your question?

6          MR. MARTICELLO:  Sure.  Your Honor, I would -- I

7   have a couple points, Your Honor.  I would ask that the

8   Court not prejudge any request for discovery at this point.

9   We have three creditors that the Court --

10         THE COURT:  Well, let me stop you.  I'm not

11  prejudging anything.

12         MR. MARTICELLO:  -- has determined are not

13  eligible.

14         THE COURT:  But I'm telling you right now -- I'm

15  telling -- that's why I was telling the creditors their

16  discovery, as far as I'm concerned, should be limited to

17  just what we're talking about, who the creditors of the

18  debtor are.  What are you worried about?

19         MR. MARTICELLO:  I just -- I'm -- Your Honor, the

20  document requests we were served it basically -- the

21  petitioning creditors are trying to litigate their existing

22  pending litigation disputes before this Court.

23         THE COURT:  That's -- that -- let me ask you

24  this.

25         MR. MARTICELLO:  I have three creditors that

Page                                                    83

1  aren't even eligible in this case.

2          THE COURT:  As far as the -- taking the

3  depositions for the purpose of this hearing, the creditors

4  you agree I -- for that purpose only because it can get --

5  I don't want to be here forever and objections to this side

6  and the other thing.  Would you simply limit your

7  discovery?  You have to amend it to just the -- what we're

8  talking about, just the creditors.  I'm not going to allow

9  you at this point --

10          MR. MARTICELLO:  Yes.  We will amend --

11          THE COURT:  -- to be litigating the whole

12  thing --

13          MR. MARTICELLO:  We will amend our discovery.

14          THE COURT:  -- because you might if there --

15          MR. MARTICELLO:  Yeah.  We will serve --

16          THE COURT:  If we have an order for relief then I

17  have no problem with that.  So let me again --

18          MR. MARTICELLO:  Your Honor --

19          THE COURT:  I didn't fully appreciate that,

20  Mr. Marticello.

21          So from the creditors' standpoint I would like

22  you -- for I will allow discovery, but why don't you redo

23  the -- why don't you do discovery requests?

24          MR. RICHARDS:  We will, Your Honor.  We will --

25          THE COURT:  Limit it just to --



Page                                                                84

1              MR. RICHARDS:  We thought our current discovery

2     is for other creditors and (indiscernible).  We will amend

3     it.

4              THE COURT:  Just to the -- what we're talking

5     about.  Just to who all the creditors are and contact

6     information and briefly, very short, you know, as Mister --

7     Mark Twain was supposed to have said, "If I had more time I

8     would have written you a shorter letter."  Keep it brief.

9              MR. RICHARDS:  Right.  And, Your Honor, and in

10    the depositions we will stick to those areas as well.

11             THE COURT:  Just to that, that may --

12             MR. RICHARDS:  We will not go into the other

13    areas.

14             THE COURT:  I know that plenty of you want to

15    know where the stuff is.  You want to know all kinds of

16    stuff or where the transfer -- whatever.  For these

17    purposes I just -- I'm going to limit your discovery to

18    just the very simple questions of what they're going to

19    have to do by the -- by a week from today, in any case.

20    But you certainly can probe further if you wish and they

21    may -- I assume they'll give you the same answers.  But,

22    yes, it's just limited.  That discovery is just to the --

23    so redo your discovery just to basically ask him.  And as I

24    said, as a practical matter if they comply with my order

25    they will have already answered you but you certainly have



P 888.272.0022  F 818.343.7119                      www.benhyatt.com

Page                                                                 85

1   a right to do your own investigations and then under oath,
2   of course, to cross-examine them, you know, at the -- you
3   know, or not cross-examine them.  Examine them at your
4   deposition.
5           So from the creditors' standpoint you now
6   understand --
7           MR. RICHARDS:  Your Honor, we'll --
8           THE COURT:  -- you're going to redo --
9           MR. RICHARDS:  We're going to send out the dep --
10          THE COURT:  -- your discovery?
11          MR. RICHARDS:  Yeah.  We're going to send out
12  deposition notices today with a document production related
13  to who the creditors are and documents that will identify
14  the creditors and then we'll see how they respond.  I think
15  you're assuming that they're going to participate in this
16  case.  Let's just see what happens.  We'll follow --
17          THE COURT:  Well, again, I told you, by the
18  way --
19          MR. RICHARDS:  -- the Court's (indiscernible)
20  order.
21          THE COURT:  I know that there are criminal --
22  there are other charges and so there's a lot of stuff going
23  on.  I have no opinion.  I know what happened in the state
24  court, but I have no opinion as to the ultimate outcome.
25  But I tell you this, if either -- or they both must comply

P 888.272.0022  F 818.343.7119      www.benhyatt.com
Certified Deposition Reporters

Page                                                                86

1   and I make it quite clear.  If they don't comply with the

2   request, whether it's Fifth Amendment or whatever, then I

3   will enter the order for relief.

4          Is it the debt -- from the debtor's standpoint,

5   do you understand that?  Mr. Marticello, do you understand

6   that?

7          MR. MARTICELLO:  Your Honor, this is Robert

8   Marticello for the debtor.  I understand the Court's --

9   what the Court just said and I will comply with the Court's

10  order.  My concern is, Your Honor, like you said there are

11  other things going on and --

12         THE COURT:  No, I understand that.  But, no, I'm

13  telling you --

14         MR. MARTICELLO:  -- if there is a -- if there's

15  a --

16         THE COURT:  -- this is really simple and I

17  can't -- I'm not -- I -- people have a right to the -- you

18  know, to take the Fifth and I -- again, whether they do or

19  not I have no idea.  But I'm telling you right now the

20  creditors have a right to this information.  If they

21  refuse, either of them, I want both of them to sign it

22  because it's not clear to me exactly who's really running

23  the business.  My guess is that maybe the husband is but I

24  don't know that, just from the various pleadings.  I don't

25  really know.

P 888.272.0022  F 818.343.7119    www.benhyatt.com

Page                                                              87

1           So there -- therefore, I am requiring both to

2    sign under penalty of perjury.  And if nei -- and if they

3    don't both sign it under penalty of perjury, then I will

4    enter an order for relief.  I just want you -- you -- I

5    want you in particular and your clients, the debtor, the

6    principals, to understand that.  You do -- you understand

7    what I've said.  I want them to understand it.  That would

8    be the price for not complying with my order.  You --

9           MR. MARTICELLO:  I understand, Your Honor.

10          THE COURT:  Mr. Marticello, you understand what

11   I've said obviously.  I'm not being facetious.  You

12   understand.

13          And so any --

14          MR. MARTICELLO:  Correct, Your Honor.

15          THE COURT:  Any other questions?  This is going

16   to be a long -- this is important, but I think I've given

17   the debtor a fair opportunity.  I've agreed as far as their

18   argu -- your arguments as far as these particular

19   creditors, at least not in being -- not that they're claims

20   are not allowed, but that they're just obviously for

21   various reasons that I've stated on the record are not

22   eligible to be petitioning creditors.  And you also know

23   the obligation a week from today at 3:00 that for your --

24   both the principals to do what I've suggested, right?

25          MR. COHEN:  Your Honor, this is Baruch Cohen.  I



P 888.272.0022  F 818.343.7119          www.benhyatt.com

Page                                                             88

1  have a clarification question.

2          THE COURT:  All right.  Briefly.  What is it?

3          MR. COHEN:  Briefly.  Number one, when we conduct

4  discovery of the principals of the debtor we are allowed to

5  ask them whether there's a dispute as to the amount

6  (indiscernible).

7          THE COURT:  Okay.

8          MR. COHEN:  Not just merely --

9          THE COURT:  Okay.  You know that's a good

10 question.  I hadn't thought of that and that's why I enjoy

11 these discussions.  Yes.  I think at that point that's a --

12 yeah, because that -- what I anticipate is if they list

13 them -- somebody and then they're li -- then you get them

14 to file -- and remember I mentioned that briefly -- and

15 then you get them to sign up being petitioning creditors

16 and then they'll object as -- yes.  I think that's a --

17 that is in -- a fair question to -- they list all of the

18 creditors, period, and then -- that's a very good point.

19 And then to say as to this one are -- is there any dispute

20 either amount or liability and, if so, what is that?  Yes.

21 I'll allow that.

22          MR. MARTICELLO:  Your Honor, this is Robert

23 Marticello for the debtor.  And you're talking about the

24 creditors -- other creditors on this list, not the

25 petitioning creditors, correct?

P 888.272.0022  F 818.343.7119    www.benhyatt.com
Certified Deposition Reporters

EXHIBIT "11", PAGE 452

Page                                                                          89

1          THE COURT:  Oh, yes.  Oh, yeah.  Oh, yes,
2    absolute -- no, we're only talking about the additional
3    one.  We're not -- we've already gone -- there's nothing
4    new about these three.
5          MR. MARTICELLO:  Understood, Your Honor.
6          THE COURT:  But that's a good point.  That will
7    eliminate -- at least it will tee up any particular
8    problems that maybe they're in dispute or not.  I think
9    that's a very good point.
10          Yeah.  No, we're only talking -- not -- I'm not
11   talking about these three petitioning creditors.  We're
12   talking about the additional ones that they -- that is a
13   list as their other creditors.
14          So, thank you, Mr. Cohen.  That's a very good
15   point.
16          Anything else?
17          MR. COHEN:  Actually, my counterpoint to that is
18   it's important that the debtors do describe under penalty
19   of perjury why they dispute our client's claim.
20          THE COURT:  No, no, no, no.
21          MR. COHEN:  Why should our three clients --
22          THE COURT:  I've already ruled it.
23          MR. COHEN:  -- be excluded?
24          THE COURT:  I've ruled on it.  No.  Stop.
25          MR. COHEN:  Okay.  Second point.  Your Honor,



P 888.272.0022  F 818.343.7119          BENHYATT          www.benhyatt.com
                                        Certified Deposition Reporters

EXHIBIT "11", PAGE 453

Page                                                                       90

1  quickly, second point.  To what extent can the Court

2  instruct this debtor and the principals not to engage in

3  funny business by interfering with creditors right now and

4  communicating with them and trying to get them to sign off

5  on claims?

6          THE COURT:  Well, I don't see that that's -- you

7  can talk to them.  They can talk to them.  I don't see any

8  problem with that.  Now, there are criminal laws.  They

9  can't threaten them.  They can't -- I think that -- I don't

10 see any provision of the law.

11         Now, the fact of the matter is if these other

12 creditors -- as I told you before, the date of the petition

13 is the time.  So even if they were to -- so, you know, they

14 could offer to pay them but, no, I -- you can talk to them.

15 I don't see any reason why the debtor can't talk to them

16 unless there's no threats.  So, no, I don't see any reason

17 at all.

18         So, anyway, any other questions?

19         MR. COHEN:  All right, Your Honor.  Thank you

20 very much for your time today.

21         THE COURT:  What's that?

22         MR. COHEN:  No questions.

23         MR. MARTICELLO:  Your Honor, Robert Marticello

24 for the debtor.  One question, just to make sure we're

25 clear.  Any joinder needs to be filed with the Court by



P 888.272.0022  F 818.343.7119    BENHYATT  www.benhyatt.com
                                  Certified Deposition Reporters

EXHIBIT "11", PAGE 454

Page                                                                91

1   that 3:00 p.m. deadline on August 14th, is that correct?

2             THE COURT:  That's correct.

3             MR. MARTICELLO:  Thank you, Your Honor.

4             THE COURT:  And at that point, if there's -- if

5   we don't -- and again, one will be sufficient if there are

6   fewer than 12, but I have no idea.  I gather there are more

7   than 12.  I don't know because I don't think that was ever

8   mentioned in the pleadings.  But there's -- if it's li --

9   if there are -- it could be one, if there are very few

10  creditors but if there are 12 or more then obviously there

11  would be three and that will be it.  At that point you

12  either have them or they're not.  So I have no idea.  I

13  have no idea how many other creditors there are out there

14  from the debtor.  These are obviously probably the

15  biggest -- well, not probably, I don't know that, but

16  certainly three big creditors as far as amount.

17            Anything else?  I hate to suggest it.  Anything

18  else?

19            (Laughter.)

20            MR. MARTICELLO:  No, Your Honor.

21            THE COURT:  Okay.  It's a very bright group of

22  people.  But, you know what, there's some good points that

23  have been made and I think this is fair.  Again, obviously

24  the creditors don't agree with it, but as I was saying,

25  it's absolutely clear to me on the documents as far as that



P 888.272.0022  F 818.343.7119    **BEN HYATT**    www.benhyatt.com
                                  Certified Deposition Reporters

EXHIBIT "11", PAGE 455

Page                                                                    92

1  I can take judicial notice of that there is a dispute as to

2  the amount and/or -- subject to dispute.

3          But as far as this other, I think giving the

4  creditors the 60 days to search out other people and the

5  discovery, at the end of the day I think everybody will

6  have their fair day in court and then I will find out with

7  your status report filed -- what did I say, one week before

8  the -- that's by the 18th --

9          MR. MARTICELLO:  Yes, your Honor.

10          THE COURT:  -- of August that I'll know what's

11  going on in this case.  So anyway, it's been interesting.

12          MR. RICHARDS:  Your Honor, Ronald Richards.

13          THE COURT:  And that will conclude this hearing.

14  I'll see you all at the --

15          MR. RICHARDS:  King Solomon couldn't have done

16  better himself today.

17          THE COURT:  By the way, one thing I did not

18  mention that after all of this because it was -- it was

19  extended 30 days.  We had a judge's meeting on Friday and

20  as to when we're going to open up.  That -- this hearing,

21  by the way, on the 25th is going to be here in court unless

22  some -- something happens that will prevent me from doing

23  that due to who knows what, but we fully intend to be

24  operational of -- subject to each judge.  But I don't like

25  these hearings at all.  I like seeing people and see -- you

Page                                                              93

1   seeing me, I seeing you.  So if -- for me anyway this

2   hearing, by the way, is going to be in court unless you are

3   notified a couple of wee -- about two weeks before that

4   something has come up and it won't be, so I want you to

5   understand that.  This will be an in-court, real hearing.

6           MR. COHEN:  Will it be an evidentiary hearing,

7   Your Honor?

8           THE COURT:  No.  No, no, no, no.  This is a

9   status hearing, not an -- no, the only --

10          MR. COHEN:  Well, the status conference.

11          THE COURT:  The -- it's as I said you're --

12  either we will have three petitioning creditors, assuming

13  there are 12 or more, or we won't.  If we don't, then I'm

14  going to dismiss the petition and no doubt the other --

15  then it will be a status conference and no doubt the other

16  side will be asking for fees.  No, there's nothing to be in

17  an evidentiary hearing about.  It's basically a status.  If

18  there are three then I'll have to see whether or not

19  there's an objection to them as being in dispute and the

20  creditors will know that at least because they'll be asking

21  that question and I'm glad you clarified that and I will --

22  as far as discovery.  So, no, there's no -- there will not

23  be an evidentiary hearing.

24          MR. COHEN:  Understood.

25          THE COURT:  Okay.  Thank you.  We've worn

Page                                                                94

1  everybody out, including me.

2        MR. RICHARDS:  All right.  Thank you, Your Honor.

3  You missed my -- when I said King Solomon couldn't have

4  done better himself today.

5        THE COURT:  Well, we had an equally interesting

6  one in the morning which you didn't have to participate in.

7  So, in any case, it's a fascinating case and I'll see you

8  back August 25 -- excuse me.  Yeah, August 25 at 10:00.

9  But these orders, even though you don't have it in writing

10 at the moment, consider those -- those are the order of the

11 Court.  We'll eventually get a written order but you have

12 all of the dates and so forth and we'll see how it turns

13 out.  So I'll see you back on the 25th at 10:00.  Anyway,

14 that concludes this hearing.  Thank you very much.

15       ATTORNEYS:  Thank you, Your Honor.

16       THE COURT:  Thank you.

17 (End at 1:03 p.m.)

18                   * * * * * * * *

19       I certify that the foregoing is a correct

20 transcript from the electronic sound recording of the

21 proceedings in the above-entitled matter.

22

23

24 _____     Date:  6/12/2020

25 RUTH ANN HAGER, C.E.T.**D-641

P 888.272.0022  F 818.343.7119     BENHYATT
                                   Certified Deposition Reporters     www.benhyatt.com

# EXHIBIT "12"

1
2
3
4
5
6
7
8
9
10
11

**FILED & ENTERED**

JUN 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:20-bk-13530-BR |
| Jadelle Jewelry and Diamonds LLC, | Chapter 7 |
| | **ORDER:** |
| | **(1)  DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;** |
| Debtor(s). | **(2)  SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;** |
| | **(3)  SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND** |
| | **(4)  SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE** |
| | Date:        June 9, 2020<br>Time:        10:00 a.m.<br>Courtroom: 1668 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-1-

EXHIBIT "12", PAGE 459

1    The Court held a hearing on June 9, 2020 on the following two motions: the

2  "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's

3  Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020,

4  and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim

5  Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning

6  creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

7    Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the

8  debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC,

9  Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional

10  Corporation, appeared on behalf of the petitioning creditors.

11    With respect to the debtor's Motion to Dismiss, the Court considered the Motion,

12  the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning

13  creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

14    With respect to the petitioning creditors' Trustee Appointment Motion, the Court

15  considered the Motion and all related pleadings including the separately filed

16  declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco,

17  the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's

18  Opposition, and all other pleadings related to the Motion, Opposition and Reply.

19    The Court also considered the debtor's separately filed declarations of Levin

20  Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's

21  evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter

22  Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the

23  debtor's Request for Judicial Notice, and all other pleadings related to the Motion,

24  Opposition and Reply.

EXHIBIT "12", PAGE 460

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

    a. the name of the creditor;

    b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

    c. the amount of the creditor's claim;

    d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

    e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

-3-

EXHIBIT "12", PAGE 461

1    for relief in this case. The entry of such an order for relief will render both the

2    pending Motion to Dismiss and Trustee Appointment Motion moot;

3    4. If the Rechnitz's file the joint declaration by the required date and time, then:

4       a.   The petitioning creditors shall have sixty (60) days from the date of

5            this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to

6            contact the creditors listed in the joint declaration to determine if any of

7            them are willing to join in the involuntary petition;

8       b.  The petitioning creditors shall have the same sixty (60) day period

9            within which to conduct discovery of the creditors listed in the joint

10           declaration, which discovery shall be limited solely to questions

11           regarding the nature and amount of the creditor's claim and, if the

12           creditor's claim is listed in the joint declaration as disputed, the nature

13           of such dispute;

14      c.  The Court shall hold a status conference on this involuntary case on

15           August 25, 2020 at 10:00 a.m., and

16      d.  The parties shall file a joint status report seven (7) days prior to the

17           status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

18   **IT IS SO ORDERED.**

19                                            **###**

20   Date: June 10, 2020

21                                            _____

22                                            Barry Russell
                                             United States Bankruptcy Judge

EXHIBIT "12", PAGE 462

EXHIBIT "13"

1  Baruch C. Cohen, Esq. (SBN 159455)
   **LAW OFFICE OF BARUCH C. COHEN**
2       A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   (323) 937-4501     Fax (888) 316-6107
4  e-mail: baruchcohenesq@baruchcohenesq.com

5  *Attorney for Defendants/Third-Party Plaintiffs PETER VOUTSAS aka PETER*
   *MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS*
6  *OF BEVERLY HILLS, dba PETER MARCO LLC*

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11 DAVID ROVINSKY LLC, a Delaware        USDC # 2:20-cv-02580-ODW-AS
   limited liability company,
12                                        Hon. Otis D. Wright II
              Plaintiff,
13                                        **SUPPLEMENTAL DECLARATION**
   PETER VOUTSAS aka PETER               **OF BARUCH C. COHEN**
14 MARCO aka PETER VOUTSAS, aka          **REGARDING THIRD-PARTY**
   PETER MARCO EXTRAORDINARY             **DEFENDANTS' MOTION FOR**
15 JEWELS OF BEVERLY HILLS, dba          **STAY OF PROCEEDINGS**
   PETER MARCO LLC,
16                                        [*Concurrently filed with Request for*
         Defendants/Third-Party Plaintiffs,  *Judicial Notice*]
17
   vs.
18                                        Date: [Taken off Calendar]
   JONA S. RECHNITZ, an individual;      Time:
19 RACHEL RECHNITZ, an individual;       Courtroom: 5D
   LEVIN PRADO aka LEVON PRADO,
20 an individual,

21         Third-Party Defendants.

22

23      Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER

24 VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY

25 HILLS, dba PETER MARCO LLC ("Marco"), hereby submit a *Supplemental*

26 *Declaration of Baruch C. Cohen Regarding Third-party Plaintiffs' Third-party*

27 *Defendants' Motion for Stay of Proceedings*.

28          **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
            **THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

1   On 6-2-2020, this Court vacated the 6-15-2020 hearing on Rechnitz's *Motion*

2   *to Stay*, and the matter is submitted.

3   On 6-9-2020, this Court denied Rechnitz's *ex Parte Application for an Order*

4   *Permitting Submission for in Camera Review, Declaration of Counsel Providing*

5   *Information to the Court Relating to the Ongoing Criminal Investigation ("*Ex

6   Parte*")*[Doc-57]  *Regarding the Motion for Stay of Proceedings* ("Motion") finding

7   that the application does not warrant in camera review.

8   As to whether this court should stay this proceeding, Marco wishes to advise

9   and update this Court that on 6-10-2020, in the Jadelle involuntary bankruptcy

10  proceeding, Case # 2:20-bk-13530-BR United States Bankruptcy Judge Barry

11  Russell, issued an *Order Directing Rachel Rechnitz and Jona Rechnitz to File Joint*

12  *Declaration under Penalty of Perjury* [Doc-39] ordered the following:

13  1.   Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a

14       file a joint declaration, sworn under penalty of perjury, which identifies each

15       and every one of the debtor's creditors as of the date of the filing of the

16       involuntary petition on April 6, 2020. The joint declaration shall include,

17       without limitation, the following information with respect to each creditor

18       identified therein:

19       a.   the name of the creditor;

20       b.   the nature of the debt owed to the creditor (e.g., consigned jewelry, rent

21            due and owing, etc.);

22       c.   the amount of the creditor's claim;

23       d.   whether the creditor's claim is disputed and, if so, the nature of the

24            dispute; and

25       e.   complete contact information for each creditor including, but not

26            limited to, the creditor's address, telephone number, cell phone number

27            (if known), fax number (if applicable), and email address (if known);

28       **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
         **THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

EXHIBIT "13", PAGE 464

2.    The Rechnitz's shall have seven (7) days from the date of this hearing (i.e., no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3.    If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order for relief in this case. The entry of such an order for relief will render both the pending Motion to Dismiss and Trustee Appointment Motion moot;

4.    If the Rechnitz's file the joint declaration by the required date and time, then:

a.    The petitioning creditors shall have sixty (60) days from the date of this hearing (i.e., no later than 3:00 p.m. on August 14, 2020) to contact the creditors listed in the joint declaration to determine if any of them are willing to join in the involuntary petition;

b.    The petitioning creditors shall have the same sixty (60) day period within which to conduct discovery of the creditors listed in the joint declaration, which discovery shall be limited solely to questions regarding the nature and amount of the creditor's claim and, if the creditor's claim is listed in the joint declaration as disputed, the nature of such dispute.[1]

The point being, is that by filing their Joint Declarations sworn under penalty of perjury regarding their defrauded creditors (like Marco), and their having to be deposed by Petitioning Creditors re same. Rechnitz will *de facto*, have to **_waive_** their

---

[1]A true and correct copy of United States Bankruptcy Court Judge Barry Russell's 6-10-2020 *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified in Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Doc-39] is attached hereto as Exhibit "1" and is incorporated herein by this reference. See, Declaration of Baruch C. Cohen, and Request for Judicial Notice.

**SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
**THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

6/11-2:58pm                       -3-

1    Fifth amendment rights against self-incrimination from criminal liability that they

2    fear in this Motion. If indeed, Rechnitz complies with Judge Russell's Order, this

3    Motion for Stay would be moot.

4

5    DATED:        June 11, 2020              LAW OFFICE OF BARUCH C. COHEN
                                             A Professional Law Corporation
6
                                             By    /S/ Baruch C. Cohen
7                                                  Baruch C. Cohen, Esq.
                                             *Attorney for Defendants/Third-Party*
8                                            *Plaintiffs PETER VOUTSAS aka PETER*
                                             *MARCO aka PETER VOUTSAS, aka PETER*
9                                            *MARCO EXTRAORDINARY JEWELS OF*
                                             *BEVERLY HILLS, dba PETER MARCO LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                     **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
                     **THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

     6/11-2:58pm                          -4-

## SUPPLEMENTAL DECLARATION OF BARUCH COHEN

I, BARUCH C. COHEN, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. I am a member in good standing and eligible to practice before the following courts: California State Supreme Court; United States Court of Appeals - Ninth Circuit; Bankruptcy Appellate Panel; United States District Courts: Central District of California; Eastern District of California; Northern District of California; and Southern District of California.

3. I am the principal shareholder and President of The Law Office of Baruch C. Cohen, a Professional Law Corporation, located at 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

4. I proudly represent Defendants/Third-Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC.

5. This Supplemental Declaration is in support of **THIRD-PARTY PLAINTIFFS' OPPOSITION TO THIRD-PARTY DEFENDANTS' THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS.**

6. A true and correct copy of United States Bankruptcy Court Judge Barry Russell's 6-10-2020 *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration under Penalty of Perjury; (2) Setting Date by Which Petitioning Creditors May Contact Creditors Identified in Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to*

1   *Status Conference* [Doc-39] is attached hereto as Exhibit "1" and is

2   incorporated herein by this reference.

3   I declare under penalty of perjury under the laws of the State of California that

4   the foregoing is true and correct.

5   Executed June 11, 2020, at Los Angeles, California.

6                                          By /s/ *Baruch C. Cohen*

7                                             Baruch C. Cohen

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28       **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING**
         **THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

6/11-2:58pm                              -6-

Case 2:20-bk-13530-BR    Doc 39    Filed 06/10/20    Entered 06/10/20 13:01:33    Desc
Main Document    Page 1 of 4



FILED & ENTERED

JUN 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier       DEPUTY CLERK

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| In re: | Case No.: 2:20-bk-13530-BR |
|---|---|
| Jadelle Jewelry and Diamonds LLC, | Chapter 7 |
| | **ORDER:** |
| | **(1)  DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;** |
| Debtor(s). | **(2)  SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;** |
| | **(3)  SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND** |
| | **(4)  SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE** |
| | Date:    June 9, 2020 |
| | Time:    10:00 a.m. |
| | Courtroom:  1668 |

-1-

### Exhibit 1, Page 1 of 5

EXHIBIT "13", PAGE 469

Case 2:20-bk-13530-BR   Doc 39   Filed 06/10/20   Entered 06/10/20 13:01:33   Desc
Main Document    Page 2 of 4

1    The Court held a hearing on June 9, 2020 on the following two motions: the
2    "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's
3    Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020,
4    and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim
5    Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning
6    creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.
7
8        Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the
9    debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC,
10   Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional
11   Corporation, appeared on behalf of the petitioning creditors.
12
13       With respect to the debtor's Motion to Dismiss, the Court considered the Motion,
14   the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning
15   creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.
16
17       With respect to the petitioning creditors' Trustee Appointment Motion, the Court
18   considered the Motion and all related pleadings including the separately filed
19   declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco,
20   the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's
21   Opposition, and all other pleadings related to the Motion, Opposition and Reply.
22
23       The Court also considered the debtor's separately filed declarations of Levin
24   Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's
25   evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter
26   Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the
27   debtor's Request for Judicial Notice, and all other pleadings related to the Motion,
28   Opposition and Reply.

-2-

**Exhibit 1, Page 2 of 5**

EXHIBIT "13", PAGE 470

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

   a. the name of the creditor;

   b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

   c. the amount of the creditor's claim;

   d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

   e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.,* no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

-3-

**Exhibit 1, Page 3 of 5**

EXHIBIT "13", PAGE 471

Case 2:20-bk-13530-BR   Doc 39   Filed 06/10/20   Entered 06/10/20 13:01:33   Desc
Main Document    Page 4 of 4

1    for relief in this case. The entry of such an order for relief will render both the

2    pending Motion to Dismiss and Trustee Appointment Motion moot;

3    4.  If the Rechnitz's file the joint declaration by the required date and time, then:

4

5        a.  The petitioning creditors shall have sixty (60) days from the date of

6           this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to

7           contact the creditors listed in the joint declaration to determine if any of

8           them are willing to join in the involuntary petition;

9        b.  The petitioning creditors shall have the same sixty (60) day period

10           within which to conduct discovery of the creditors listed in the joint

11           declaration, which discovery shall be limited solely to questions

12           regarding the nature and amount of the creditor's claim and, if the

13           creditor's claim is listed in the joint declaration as disputed, the nature

14           of such dispute;

15

16        c.  The Court shall hold a status conference on this involuntary case on

17           August 25, 2020 at 10:00 a.m., and

18

19        d.  The parties shall file a joint status report seven (7) days prior to the

20           status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

21    **IT IS SO ORDERED.**

22                        **###**

23

24

25    Date: June 10, 2020

26                        Barry Russell
                           United States Bankruptcy Judge

27

28

-4-

**Exhibit 1, Page 4 of 5**

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS** on all interested parties in this action by the method indicated below at the address stated below:

Marc S. Williams, Esq.
Cohen Williams, LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Email: mwilliams@cohen-williams.com
*Attorney for Third-Party Defendants Jona S. & Rachel Rechnitz*

**[X]** **BY ELECTRONIC TRANSMISSION**: by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case. A pdf version of this document was also transmitted to counsel via electronic mail at the mail address indicated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 11, 2020 at Los Angeles, California.

By: /s/ *Baruch C. Cohen*
Baruch C. Cohen

**SUPPLEMENTAL DECLARATION OF BARUCH C. COHEN REGARDING THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

-7-

6/11-2:58pm

# EXHIBIT "14"

| From: | Ronald Richards <ron@ronaldrichards.com> |
|---|---|
| Sent: | Thursday, June 11, 2020 5:12 PM |
| To: | Robert Marticello |
| Cc: | dlev@sulmeyerlaw.com; Baruch Cohen; Morani Stelmach |
| Subject: | DEPOSITION NOTICES |
| Attachments: | Exhibit _A_ in Support of Subpoena to Testify At Deposition (Jadelle_Jona Rechnitz).pdf; Notice of Deposition of Jona Rechnitz (Jadelle) (002).pdf; Subpoena to Testify At Deposition (Jadelle_Jona Rechnitz).pdf; Subpoena to Testify At Deposition II (Jadelle_Rachel Rechnitz).pdf; Exhibit _A_ in Support of Subpoena to Testify At Deposition II (Jadelle_^.^.pdf; Notice of Deposition of Rachel Rechnitz (Jadelle).pdf |

| Importance: | High |
|---|---|

Dear Robert,

Please see attached deposition notices. I am assuming you will agree that we don't need to serve a party member and manager for the deposition, or her husband if that is even the case, or a manager of the entity.

Previously, Marc Cohen did not want me to send a legion of process servers to Jona's house in Beverlywood. Out of my high respect for Marc and Reuven, and of course you, I will not send them there this evening. However, I have three standing by for tomorrow night, at exactly 8:05pm to serve these subpoenas, as well as day service. It would very unfortunate if we had any issue at all on this. I am asking you to produce these people that the court ordered their declarations and deposition. There is also a local rule on deposing declarants that is analogous.

I am happy to send them there all night Friday and Saturday all day, and then non stop until they are served even though I do not believe they have to be served as they are making a general appearance per court order. I am sorry for the tone but some people told me that you would not be cooperative and I said Robert has done a great job and is a true professional. He will not advise his members to avoid service or send a message to Judge Russell that they are avoiding a deposition or discovery as contemplated by the Court.

I would think the judge would frown upon any games as to service as stated above. Finally, if they are not going to provide testimony as has been their position in two other cases which officers of the Court represented they would not, that is fine, just let me know the grounds.

I want you to be aware of the below cases based upon previous positions taken by Jona and Rachel. Please review these cases. We believe if you file the declarations the court requested, you have waived any assertion of the 5th Amendment as to the entire subject matter which will be a large swath of questions about the various creditors and Jona and Rachel's credibility is far game and at issue. Therefore, we don't want to waste time on scheduling these if you are going to invoke. If you are not going to invoke, then will be taking two depositions and serving written discovery. We will also need Jona and Rachel's cell phones for a vendor to upload their text message and emails. We will need ESI discovery on Jona's email account so we need to formulate a ESI protocol between our respective offices. Please tell me how you want to do that and please tell Jona and Rachel that any deleted text messages will be met with motion practice for things I will not mention herein. The relevant cases are below.

See Mitchell v. United States, 526 U.S. 314 (1999)("It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."). The Supreme Court of the United States of America has articulated two discrete explanations why selective waiver of the privilege against self-incrimination is impermissible; Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct.

EXHIBIT "14", PAGE 474

438, 95 L.Ed. 344 (1951) (discussing 5th Amendment privilege against self-incrimination, the Supreme Court noted that, having waived the privilege, one cannot later assert it: "To uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony."). It would provide a perverse incentive to dilatory discovery practice if the Court were to allow a party to escape disclosure of documents it has shown to a testifying expert. CP Kelco U.S. Inc., 213 F.R.D. at 179.; Sundance Image Technology, Inc. v. Cone Editions Press, Ltd. (S.D. Cal., Aug. 19, 2005, No. 02CV2258 B (AJB)) 2005 WL 8173278, at *4.; The Fifth Amendment privilege is not self-executing, however, and may be found to have been waived if it is not invoked in a timely manner. Maness v. Meyers, 419 U.S. 449, 465–66 (1975); Rogers v. United States, 340 U.S. 367, 370–71 (1951); Yakus v. United States, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); United States ex rel. Vajtauer v. Comm'r of Immigration at Port of New York, 273 U.S. 103, 113 (1927); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981). A waiver may be found if one agrees to an order commanding one to do the very thing later claimed to be privileged without invoking the privilege at or before the time of the entry of the order. See S.E.C. v. Telexfree, Inc., 164 F. Supp. 3d 187, 192 (D. Mass. 2015);  In re Wolf (Bankr. N.D. Ill., May 24, 2018, No. 14 B 27066) 2018 WL 2386813, at *5; An individual may invoke the Fifth Amendment privilege against self-incrimination in any proceeding "whether civil or criminal, formal or informal, including a bankruptcy proceeding." In re Blan, 239 B.R. 385, 392 (Bankr.W.D.Ark.1999) (citations omitted). It is, however, "not self-executing." In re Gi Yeong Nam, 245 B.R. 216, 227 (Bankr.E.D.Pa.2000) (citing Roberts v. United States, 445 U.S. 552, 559, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)). The privilege may only be relied upon if it is invoked in a proper and timely manner. Roberts, 445 U.S. at 559–60, 100 S.Ct. 1358; see also 3–344 Collier on Bankruptcy ¶ 344.03 (15th ed. 2015) ("[I]t may not properly be invoked, for example, for the first time at a contempt hearing arising out of the refusal to answer."). If the privilege is not timely asserted, it may be deemed waived. See In re Gi Yeong Nam, 245 B.R. at 226–27 (citing Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951)); To properly invoke the privilege, a party must produce "for the Court's consideration, a meaningful, articulation of the reasons why [responding] would tend to incriminate him." In re Bartlett, 162 B.R. 73, 79 (Bankr.D.N.H.1993) (citations omitted). The claimant need not "establish the threat of incrimination in detail, of course, since such detailed disclosure may negate the very privilege he seeks to assert." In re Blan, 239 B.R. at 392 (citing In re Connelly, 59 B.R. 421, 433 (Bankr.N.D.Ill.1986)). However, the party must at a minimum show that "the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 59, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); see In re Connelly, 59 B.R. at 433. There need not be an active criminal investigation or proceeding in order to assert the privilege. See, e.g., In re Gi Yeong Nam, 245 B.R. at 225–26 (adequate facts were alleged and certain federal and state statutes identified to find it "conceivable that Defendants could be linked with the federal or state crime of aiding and abetting flight to avoid prosecution"); In re Brown, No. 12–50853–can7, 2014 WL 309403, at *2 (Bankr.W.D.Mo. Jan. 28, 2014) (determining the debtor's response to a particular question may result in his admitting to fraud);

As for our call tomorrow, the other things I want to propose and discuss are not in this email so I look forward to seeing you on the call at 930am and I wish you a pleasant evening.  We all respect you and your team and the practice we have engaged in thus far.


Sincerely,


Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
310-556-1001 Office
310-277-3325 Fax
www.ronaldrichards.com


Mailing Address:
P.O. Box 11480
Beverly Hills, CA 90213

EXHIBIT "14", PAGE 475



®

**A multi jurisdictional practice with bar admissions on the East and West Coast**

***CONFIDENTIALITY NOTICE*** This electronic mail transmission has been sent by an attorney. This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.
_____

THINK GREEN. PLEASE CONSIDER THE ENVIRONMENT BEFORE YOU PRINT THIS MESSAGE. THANK YOU.

## EXHIBIT "A" IN SUPPORT OF SUBPOENA TO JONA RECHNITZ

### Production of Documents

**Definitions:**

The following definitions apply herein:

A.      The term "Case" shall mean that bankruptcy case styled In re Jadelle Jewelry and Diamonds, LLC, presently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division, bearing Case No. 2:20-bk-13530-BR, commenced on April 6, 2020.

B.      The term "Claim" shall have the meaning ascribed to it in 11 U.S.C. § 101(5).

C.      The term "Creditor" shall have the meaning ascribed to it in 11 U.S.C. § 101(10).

D       The term "Communications" shall mean any transmission of information from one person or entity to another by mail, facsimile, electronic mail, text message, instant messaging, audio recordings, journals, diaries, logs, or calendars, including (without limitation) any form of memorialization of personal meetings, conferences, telephone conversations, radio, electronic mail, teleconference, etc.

E       The term "Debt" shall have the meaning ascribed to it in 11 U.S.C. § 101(12).

G.      The term "Involuntary Petition" shall mean that certain involuntary chapter 7 petition styled In re Jadelle Jewelry and Diamonds, LLC, presently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division, bearing Case No. 2:20-bk-13530-BR.

H.      The term "Jadelle" shall mean Jadelle Jewelry and Diamonds, LLC, and any of its respective officers, directors, employees, affiliates, parents, subsidiaries, representatives, agents, attorneys, and all other persons acting or purporting to act on its behalf, including Jona Rechnitz and Rachel Rechnitz.

I.       The term "Jona" shall mean Jona Rechnitz, and his representatives, agents, attorneys, and all other persons acting or purporting to act on his behalf.

J.       The term "Petition Date" shall mean April 6, 2020, the date the Involuntary Petition was filed.

K.      The term "Rachel" shall mean Rachel Rechnitz, and her representatives, agents, attorneys, and all other persons acting or purporting to act on her behalf.

L.      The terms "and" or "or" or "and/or" shall be construed either disjunctively or conjunctively or both, as necessary, to bring within the scope of any request for responses which might otherwise be construed to be outside the scope.

EXHIBIT "14", PAGE 477

M.      The term "Contact Information" shall mean information upon which a person or entity may be reached via  mail, telephone, facsimile, e-mail or in person or any other medium that is reasonable, and shall include without limitation, present and last known address(es), phone number(s), facsimile number(s), and e- mail address(es).

N.      The terms "Document" or "Documents" shall mean and includes any medium, including without limitation, writings, drawings, graphs, charts, photographs, audio and video recordings, computerized records, such as e-mails, microfilm, microfiche, data compilations, upon which intelligence or information can be recorded, maintained or retrieved, including without limitation, the original or a copy thereof, regardless of the origin and location, of any writing or recording of any type or description, however produced or reproduced, which is in your or your representatives' possession, custody or control, or to which you have or had access, or of which you have knowledge or which you have a right or privilege to examine upon request or demand, and includes any and all writings and recordings as the term is used in Rule 1001(1) of the Federal Rules of Evidence and includes the original (or a copy if the original is not available) and any nonidentical copies (whether different from the original because of notes made on the copy or otherwise).

O.      The terms "relate to", "refer to", "evidence", "concern", "pertain to" and "pertaining to" shall mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with, embodying, evidencing, constituting, concerning, reporting, purporting or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

P.      The term "you" or "your" shall mean and includes Jadelle.  The term "Jadelle" shall be used interchangeably with the terms "you" or "your".

Q.      The singular form of a word should be interpreted as plural and the plural should be interpreted as singular to give the word or words the broadest possible meaning.

R.      The masculine gender of any word shall be construed to include the masculine, feminine, and neuter gender.

**Requested Documents:**

1.      All Documents regarding any Debt owed by Jadelle to a Creditor as of the Petition Date, including, without limitation, Documents evidencing (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Debt, (iii) the basis for the Debt, (iv) the date the Debt was incurred, (v) the account or reference number of the Debt, and (vi) the nature, priority, and validity of the Debt.

2.      All Documents regarding any Claim of a Creditor against Jadelle as of the Petition Date, including, without limitation, Documents evidencing (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Claim, (iii) the basis for the Claim, (iv) the date the Claim was incurred, (v) the account or reference number of the Claim, and (vi) the nature, priority, and validity of the Claim.

EXHIBIT "14", PAGE 478

3.      All Documents you contend support your contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

4.      All Documents you contend support your contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

5.      All Documents referencing any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

6.      All Documents referencing any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

7.      All Documents referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

8.      All Documents referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

## Topics of Examination

1.      The nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date, including, without limitation, (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Debt, (iii) the basis for the Debt, (iv) the date the Debt was incurred, (v) the account or reference number of the Debt, and (vi) the nature, priority, and validity of the Debt.

2.      Any Documents which support the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

3.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Debt owed by Jadelle to a Creditor as of the Petition Date.

4.      Any Documents which support your contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

5.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, supporting Jadelle, Rachel, or Jona's contention that there is a bona fide dispute regarding the amount or liability of any Debt owed by Jadelle to a Creditor as of the Petition Date.

EXHIBIT "14", PAGE 479

6.      Any Documents referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

7.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, referencing the post-Petition Date payment of any portion of a Debt owed by Jadelle to a Creditor as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

8.      The nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date, including, without limitation, (i) the identity of the Creditor, including Contact Information, (ii) the amount of the Claim, (iii) the basis for the Claim, (iv) the date the Claim was incurred, (v) the account or reference number of the Claim and (vi) the nature, priority, and validity of the Claim.

9.      Any Documents which support the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

10.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, regarding the nature, amount, and validity of any Claim of a Creditor against Jadelle as of the Petition Date.

11.      Any Documents which support your contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

12.      Any Communications between Jadelle, Rachel, Jona, or  any person acting, or purporting to act, on their respective behalf, supporting Jadelle, Rachel, or Jona's contention that there is a bona fide dispute regarding the amount or liability of any Claim of a Creditor against Jadelle as of the Petition Date.

13.      Any Documents referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

14.      Any Communications between Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf, referencing the post-Petition Date payment of any portion of a Claim of a Creditor against Jadelle as of the Petition Date made by Jadelle, Rachel, Jona, or any person acting, or purporting to act, on their respective behalf.

EXHIBIT "14", PAGE 480

1   Daniel A. Lev (CA Bar No. 129622)
    dlev@sulmeyerlaw.com
2   **Sulmeyer**Kupetz
  A Professional Corporation
3   333 South Grand Avenue, Suite 3400
  Los Angeles, California 90071-1406
4   Telephone: 213.626.2311
  Facsimile: 213.629.4520
5
6   Attorneys for Petitioning Creditors

7   Ronald Richards (CA Bar No. 176246)
    ron@ronaldrichards.com
  Law Offices of Ronald Richards & Associates, APC
8   P.O. Box 11480
  Beverly Hills, California 90213
9   Telephone:  310.556.1001
  Facsimile:  310.277.3325
10
11   Attorneys for Victor Franco Noval

12   Baruch C. Cohen (CA Bar No. 159455)
    baruchcohen@baruchcohenesq.com
  Law Office of Baruch C. Cohen, APLC
13   4929 Wilshire Boulevard, Suite 940
  Los Angeles, California 90010
14   Telephone: 323.937.4501
  Facsimile: 888.316.6107
15
16   Attorneys for Peter Marco, LLC and First International Diamond, Inc.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| | **NOTICE OF SUBPOENA TO APPEAR AT DEPOSITION SERVED ON JONA RECHNITZ** |
| Alleged Debtor. | **DEPOSITION OF JONA RECHNITZ:** |
| | DATE:    June 25, 2020 |
| | TIME:    10:00 a.m. |
| | PLACE:  333 South Grand Avenue |
| |            Suite 3400 |
| |            Los Angeles, CA 90071 |

*Left margin (vertical):* **Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

VICTOR FRANCO NOVAL; PETER MARCO, LLC; and FIRST INTERNATIONAL DIAMOND, INC.,

Petitioning Creditors,

vs.

JADELLE JEWELRY AND DIAMONDS, LLC,

Alleged Debtor.

**TO THE ALLEGED DEBTOR, JONA RECHNITZ, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure (made applicable to this bankruptcy case pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure), petitioning creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and together with Noval and Marco, the "Petitioning Creditors"), have caused the "Subpoena to Appear and Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding)" (the "Subpoena"), to be issued and served upon Jona Rechnitz (the "Subpoenaed Party"). A true and correct copy of the Subpoena is attached hereto as Exhibit "A".

**PLEASE TAKE FURTHER NOTICE** that the Subpoena commands that the Subpoenaed Party appear for deposition, under oath, and that such deposition take place on June 25, 2020, at 10:00 a.m., at **Sulmeyer**Kupetz, A Professional Corporation, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071.

**PLEASE TAKE FURTHER NOTICE** that the Subpoenaed Party is a natural person.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    **PLEASE TAKE FURTHER NOTICE** that the Subpoena commands the

2    Subpoenaed Party to bring to the deposition, and permit inspection and copying of,

3    documents and other information set forth in Exhibit "A" to the Subpoena.

4    **PLEASE TAKE FURTHER NOTICE** that the deposition will be recorded by

5    audio, audiovisual, and/or stenographic means, and that Petitioning Creditors, at their

6    sole discretion, may elect to conduct the deposition by means of "zoom" or such other

7    form of virtual examination.

8    DATED: June 11, 2020              **Sulmeyer**Kupetz
                                        A Professional Corporation
9

10

11                                     By: /s/ Daniel A. Lev _____
                                           Daniel A. Lev
12                                         Attorneys for Petitioning Creditors

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central _____  District of California _____

In re JADELLE JEWELRY AND DIAMONDS, LLC, _____

Alleged Debtor

Case No. 2:20-bk-13530-BR

*(Complete if issued in an adversary proceeding)*

Chapter 7

_____

Plaintiff

v.

_____

Defendants

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Jona Rechnitz _____

*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| **Sulmeyer**Kupetz, A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | June 25, 2020 at 10:00 a.m. |

The deposition will be recorded by this method: Stenography and/or video

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit "A"

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 12, 2020 _____

CLERK OF COURT

OR

_____         _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*
                                              Daniel A. Lev

The name, address, email address, and telephone number of the attorney representing *(name of party)* petitioning creditors *Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.,* who issues or requests this subpoena, are: Daniel A. Lev, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071, email: dlev@sulmeyerlaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

DAL 2702619v1


American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "14", PAGE 484

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):* Jona Rechnitz _____

on *(date)* June XX, 2020 .

☒I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true and correct.

Date: June XX, 2020 _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B)*Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

DAL 2702619v1


American LegalNet, Inc.
www.FormsWorkFlow.com

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

| Central | District of California |
|---|---|

In re JADELLE JEWELRY AND DIAMONDS, LLC,
<p align="center">Alleged Debtor</p>

<p align="center">(Complete if issued in an adversary proceeding)</p>

Case No. 2:20-bk-13530-BR

Chapter 7

<p align="center">Plaintiff</p>
<p align="center">v.</p>

<p align="center">Defendants</p>

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Rachel Rechnitz
<p align="center">(Name of person to whom the subpoena is directed)</p>

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| **Sulmeyer**Kupetz, A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | June 26, 2020 at 10:00 a.m. |

The deposition will be recorded by this method: Stenography and/or video

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit "A"

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 12, 2020

<p align="center">CLERK OF COURT</p>
<p align="center">OR</p>

| _____ | _____ |
|---|---|
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature*<br>Daniel A. Lev |

The name, address, email address, and telephone number of the attorney representing *(name of party)* petitioning creditors *Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.*, who issues or requests this subpoena, are: Daniel A. Lev, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071, email: dlev@sulmeyerlaw.com

<p align="center">Notice to the person who issues or requests this subpoena</p>

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

DAL 2702614v1



American LegalNet, Inc.
www.FormsWorkFlow.com

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):*  Rachel Rechnitz
on *(date)* June XX, 2020    .

☒ I served the subpoena by delivering a copy to the named person as follows: 

_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: 

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.


I declare under penalty of perjury that this information is true and correct.

Date:  June XX, 2020    

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

EXHIBIT "14", PAGE 488

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B)*Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

DAL 2702614v1



EXHIBIT "14", PAGE 489

# EXHIBIT "15"

1  **SMILEY WANG-EKVALL, LLP**
   Robert S. Marticello, State Bar No. 244256
2  *rmarticello@swelawfirm.com*
   Michael L. Simon, State Bar No. 300822
3  *msimon@swelawfirm.com*
   3200 Park Center Drive, Suite 250
4  Costa Mesa, California 92626
   Telephone:    714 445-1000
5  Facsimile:    714 445-1002

6  Attorneys for Jadelle Jewelry and Diamonds,
   LLC

7

8               **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

11 In re                          Case No. 2:20-bk-13530-BR

12 JADELLE JEWELRY AND DIAMONDS,   Chapter 7
   LLC,
13                                 **PUTATIVE DEBTOR'S EMERGENCY
          Putative Debtor.         MOTION FOR (1) RECONSIDERATION
14                                 OF THE COURT'S ORDER, OR (2)
                                   ALTERNATIVELY, A STAY OF THE
15                                 BANKRUPTCY CASE; AND
                                   MEMORANDUM OF POINTS AND
16                                 AUTHORITIES IN SUPPORT**

17                                 **[Declaration of Robert S. Marticello,
                                   Declaration of Michael V Schafler, Request
18                                 for Judicial Notice, and Index of Exhibits
                                   filed concurrently herewith]**
19
                                   **HEARING:**
20                                 **DATE:    To Be Determined**
                                   **TIME:    To Be Determined**
21                                 **CTRM:    1668**
                                   **255 E. Temple Street**
22                                 **Los Angeles, CA 90012**

23

24

25

26

27

28

2828340.1                                    EMERGENCY MOTION

EXHIBIT "15", PAGE 490

**TABLE OF CONTENTS**

Page

I. INTRODUCTION.................................................................................................1

II. BACKGROUND.................................................................................................4

    A. Hearing on the Motion to Dismiss and the Court's Order...........................4

    B. The Ineligible Creditors Immediately Begin to Take Advantage of the Order..........6

    C. The Criminal Investigation........................................................................7

III. THE COURT CAN AND SHOULD RECONSIDER THE ORDER BECAUSE IT IS CONTRARY TO THE CODE AND TO NINTH CIRUIT PRECEDENT .....................9

    A. Entry of an Order for Relief Would Be Contrary to the Code ................................10

    B. The Court May Dismiss This Case Without a Creditor List ....................................12

IV. IF THE COURT DOES NOT RECONSIDER ITS ORDER, THEN A STAY PURSUANT TO THE FIFTH AMENDMENT IS NECESSARY AND PROPER ...........14

    A. Courts Have Discretion to Stay Cases as Justice Requires ....................................14

    B. The Most Important Factor in Deciding Whether to Stay a Case is the Overlap Between the Proceedings..............................................................................16

    C. Courts Can Stay Cases Against Companies on Fifth Amendment Grounds............17

V. THE STAY OF THIS CASE IS APPROPRIATE .................................................17

    A. The Issues in the Criminal Investigation Overlap with the Bankruptcy Case..........17

    B. Absent a Stay, the Rechnitz Parties and Jadelle Will Be Substantially Prejudiced and Burdened .......................................................................19

    C. The Ineligible Creditors Will Not Be Prejudiced by a Stay ...................................20

    D. Judicial Economy Is Served by the Proposed Stay .................................................21

    E. Persons Not Parties to this Action Will Not Be Adversely Impacted by the Proposed Stay .........................................................................................21

    F. The Interest of the Public Favors a Stay.................................................................22

VI. CONCLUSION .................................................................................................23

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 491

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the putative debtor ("Jadelle"), files this motion (the "Motion") for either (1) reconsideration of the Court's order entered on June 10, 2020 [Docket No. 39] (the "Order"); or (2) alternatively, a stay of the bankruptcy case.  Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International, Inc. ("First International"), shall be collectively referred to as the "Ineligible Creditors."  In support of this Motion, Jadelle submits the concurrently-filed Declaration of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice, and Index of Exhibits, and the following memorandum of points and authorities.

## MEMORANDUM AND POINTS AND AUTHORITIES

## I.    INTRODUCTION

Jadelle requests that the Court reconsider the Order, or, alternatively, stay this involuntary case pending the conclusion of the ongoing criminal investigation.  As discussed herein, the Order is contrary to the express provisions of the Code.  Moreover, the Ineligible Creditors have made clear their intent to misuse the Order and gain an unfair and unwarranted advantage in this and other pending litigation.  The Order, and the Ineligible Creditors' intent to exploit it, have placed Jona Rechnitz and Rachel Rechnitz (collectively, the "Rechnitz Parties") in precisely the type of Hobson's choice that a temporary stay is meant to remedy when there are parallel civil and criminal proceedings.  In fact, here, the consequences of invoking the Fifth Amendment are far more severe than would typically be the case because it will result in the ultimate relief requested by the Ineligible Creditors—an order for relief, which they otherwise lack the standing to obtain.

The Court may and should reconsider the Order.  The entry of an order for relief if the Rechnitz Parties do not file the joint declaration required by the Order would be contrary to the express language of the Code.  An order for relief is permitted "***only if***" certain circumstances are satisfied, none of which have been satisfied here.  *See* 11 U.S.C. § 303(b) & (h).  Jadelle timely contested the involuntary petition by its motion to dismiss, there are no eligible petitioning

EXHIBIT "15", PAGE 492

1   creditors, and there has been no finding that Jadelle is not paying its undisputed debts as they

2   come due.  Put simply, there is no basis in the Code to enter an order for relief.

3          As it stands, the Order essentially imposes unauthorized terminating sanctions against

4   Jadelle for the Rechnitz Parties' permissible exercise of their Fifth Amendment rights.  Neither the

5   Rechnitz Parties nor Jadelle have done anything to warrant such (or any other) sanctions.  At most,

6   the Rechnitz Parties' assertion of their Fifth Amendment rights gives rise to an adverse inference at

7   trial, as opposed to the immediate entry of the ultimate judgment sought by the Ineligible

8   Creditors.  Thus, at a minimum, the Court should reconsider the aspect of the Order requiring the

9   filing of the joint declaration and for the entry of an order for relief if the Rechnitz Parties do not

10  file the joint declaration.

11         The Court can also reconsider the Order in its entirety by vacating it and dismissing this

12  case.  The case was commenced by three petitioning creditors, all of whom the Court has

13  concluded are not eligible (based on their own admissions).  A putative debtor must file a creditor

14  list and creditors must be afforded a reasonably opportunity to join an involuntary petition pending

15  trial only when required by Bankruptcy Rule 1003(b).  By its express terms, and as interpreted by

16  both the Ninth Circuit and the Ninth Circuit BAP, Bankruptcy Rule 1003(b) does not apply in this

17  case.  As a result, under the Ninth Circuit's decision in *In re Vortex Fishing*, the Court is not

18  required to "pause" to afford non-petitioners with an opportunity to join, but is to determine the

19  issues of this case "'at the earliest practicable time and forthwith' enter a dispositive order."

20  Because the Court has already determined that the Ineligible Creditors are all ineligible, that

21  dispositive order can and should be an order granting Jadelle's motion to dismiss and dismissing

22  the case.

23         Alternatively, if the Court declines to reconsider its Order, the Court should stay this

24  matter on the basis of the Rechnitz Parties' intent to validly assert their Fifth Amendment privilege

25  against self-incrimination.  The single most important factor in determining whether to stay a

26  proceeding based on a litigant's Fifth Amendment privilege is the extent to which that proceeding

27  and the related criminal investigation overlap.  There can be no question that, here, the criminal

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 493

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   investigation, the bankruptcy case, and the Ineligible Creditors' pending civil lawsuits all stem

2   from and relate to the operation of Jadelle and its jewelry business.  In fact, federal prosecutors

3   have unambiguously stated that they are aware of the civil lawsuits and this bankruptcy case and

4   that the allegations in those cases are within the scope of the criminal investigation.  Thus, the

5   single most important factor supports a stay.

6        A balancing of the harms also heavily weighs in favor of staying this case.  The Ineligible

7   Creditors have already asserted that, by complying with the Order, the Rechnitz Parties will have

8   waived their Fifth Amendment rights in this case and in their respective pending suits and the

9   Ineligible Creditors will seek to gain an advantage in all of the civil lawsuits on that basis.  Thus,

10  if the Rechnitz Parties comply with the Order, they risk waiving their constitutional rights in

11  multiple proceedings.  In contrast, the Rechnitz Parties' invocation of the Fifth Amendment will

12  irreparably harm Jadelle as it will be involuntarily placed into bankruptcy in favor of three

13  creditors whom this Court has already determined are clearly not eligible and not entitled to

14  commence this case.  The Ineligible Creditors will thus obtain *an order for relief in a case they*

15  *had no right or standing to commence in the first place*.  This is not a fair result, it invokes too

16  great a penalty for the exercise of Constitutional rights, and is the type of result that the Court can

17  address and prevent through a stay.

18       Dismissal of this case is the most equitable result.  The parallel proceedings are of the

19  Ineligible Creditors own creation.  The Ineligible Creditors prompted the criminal investigation

20  with their allegations and have been attempting to profit ever since.  Noval referred the Rechnitz

21  Parties and Jadelle to law enforcement for criminal prosecution.  Then, Noval and Marco

22  commenced suit.  When Noval's suit was temporarily stayed, the Ineligible Creditors brought the

23  same allegations and disputes to this Court.  Notwithstanding the fact that the Ineligible Creditors

24  had no standing or right to commence this case, they now stand to obtain discovery they cannot

25  currently obtain in their individual lawsuits or an order for relief contrary to the express provisions

26  of the Code.

27

28

EXHIBIT "15", PAGE 494

Finally, there is cause for emergency relief.  The Order requires that the Rechnitz Parties file a joint declaration by 3:00 p.m. on Tuesday, June 16, 2020.  As there has been only a week between the hearing that resulted in the Order and that filing deadline, Jadelle could not have been reasonably expected to file this Motion at an earlier time.  Due to the deadline in the Order, Jadelle files this Motion on an emergency basis.  If the Court is inclined to proceed with the entry of an order for relief if the joint declaration is not timely filed, then Jadelle requests an emergency hearing before the deadline.  If, however, the Court is inclined to refrain from entering an order for relief pending consideration or a hearing on this Motion, then Jadelle requests a hearing on the Motion on a date and time convenient from the Court.

Accordingly, Jadelle respectfully requests that the Court reconsider the Order and either (1) remove the requirement that a joint declaration be filed by the Rechnitz Parties and providing for the entry of an order for relief if they do not, or (2) vacate the Order, grant Jadelle's motion to dismiss this case, and dismiss this case.  Alternatively, Jadelle respectfully requests that the Court stay this case on account of the Rechnitz Parties assertion of their Fifth Amendment privilege.

## II.   **BACKGROUND**

### A.   Hearing on the Motion to Dismiss and the Court's Order

On June 9, 2020, at 10:00 a.m., the Court heard two motions, Jadelle's motion to dismiss this case for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) [Docket No. 8] (the "Motion to Dismiss") and the Ineligible Creditors' motion for the appointment of an interim trustee [Docket No. 12] (the "Trustee Motion").  A status conference was also on calendar that day.

With respect to the Motion to Dismiss, the Court determined that, as argued by Jadelle, the Ineligible Creditors are ineligible to be petitioning creditors.  This Court found that their claims are subject to bona fide disputes as to amount and/or liability based on the Ineligible Creditors' judicial admissions and the facts subject to judicial notice.  (*See* Ex. 1[1] at Bates Stamps 53, line 19

---

[1]   Unless otherwise provided, all references to exhibits herein are to the concurrently filed Index of Exhibits.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  to 51, line 3, Bates Stamp 62, line 3 to Bates Stamp 63, line 8, Bates Stamp 65, line 14 to Bates

2  Stamp 66, line 2, and Bates Stamp 90, lines 17-22.)  The Court also denied the Trustee Motion

3  without prejudice.  (*See id.* at Bate Stamp 71, lines 2-4.)

4       Nevertheless, the Court ordered the Rechnitz Parties to sign and file, under penalty of

5  perjury, a joint declaration identifying each and every one of Jadelle's creditors as of the petition

6  date of April 6, 2020.  (*See* Ex. 2 at § 1.)  The Court required that such declaration be filed within

7  seven days of the hearing, by 3:00 p.m. on Tuesday, June 16, 2020.  (*See id.* at § 2.)  The Order

8  states that if the Rechnitz Parties fail to file the joint declaration by the deadline, the Court will

9  deny the Motion to Dismiss and "immediately enter an order for relief in this case." (*See id.* at §

10  3.)  The Court ordered the filing of the joint declaration in order to provide the Ineligible Creditors

11  with 60 days to contact other creditors in order to determine whether any such creditors are willing

12  to join the petition.  (*See id.* at § 4.a.)  Any joinders must be filed by 3:00 p.m. on August 14,

13  2020.  (*See id.*; *see also* Ex. 1 at Bate Stamp 93, line 25 to Bates Stamp 94, line 2.)

14       The Order also authorized the Ineligible Creditors to conduct certain limited discovery.

15  (*See* Ex. 2 at § 4.b.)  During the hearing, the Court emphasized that any discovery should be

16  limited and not complicated.  (*See* Ex. 1 at Bates Stamp 83, lines 7-10, the Court stating "I assume

17  you want to take the deposition as to just what we're talking about.  **I hope you don't do any**

18  **beyond that.  It will make it very unnecessarily complicated**." (emphasis added); *see also id.* at

19  Bates Stamp 85, lines 16-18, the Court stating "as far as I'm concerned, should be limited to just

20  what we're talking about, who the creditors of the debtor are.")

21       In response to concerns the Ineligible Creditors would seek discovery regarding their own

22  disputed claims, the Court made clear it wanted the discovery limited to only the existence of, and

23  any asserted disputes related to, the other creditors listed.  (*See id.* at Bates Stamp 85, line 19 to

24  Bates Stamp 86, line 20;[2] *see also id.* at Bates Stamp 87 lines 4-19.)  The Court stated that it did

25  not want the Ineligible Creditors seeking discovery as to their own claims.  (*See id.* at Bates Stamp

26

27

28  [2]  The reference to "Mr. Marticello" stating "We will amend our discovery" is mistaken and should be "Mr. Richards."

1    91, line 22 to Bates Stamp 92, line 24.)  The Court stated it that it was not prejudging the requests

2    for discovery.  (*See id.* at Bates Stamp 85, lines 7-18.)

3    **B.    The Ineligible Creditors Immediately Begin to Take Advantage of the Order**

4          The Ineligible Creditors immediately began attempting to misuse and improperly exploit

5    the Order.  On June 11, 2020, the day after entry of the Order, Marco filed a declaration in his

6    pending lawsuit against the Rechnitz Parties.  The declaration was filed in support of Marco's

7    opposition to the Rechnitz Parties' motion for a stay of that case (which motion was already, and

8    still is, under submission with the District Court).  The declaration states, *inter alia*, as follows:

9               The point being, is that by filing their Joint Declarations sworn under
                penalty of perjury regarding their defrauded creditors (like Marco),
10              and their having to be deposed by Petitioning Creditors re same.
                Rechnitz will *de facto*, have to **waive** their Fifth amendment rights
11              against self-incrimination from criminal liability that they fear in this
                Motion. If indeed, Rechnitz complies with Judge Russell's Order, this
12              Motion for Stay would be moot.

13   (*See* Ex. 3 at Bates Stamp 104-105 (emphasis in original).)

14         The Ineligible Creditors also began seeking and demanding discovery that is overly broad

15   and overly complicated.  On June 11, 2020, the Ineligible Creditors, via counsel, contacted

16   Jadelle's counsel to arrange for certain discovery.  (*See* Ex. 4 at Bates Stamp 113.)  Specifically,

17   the Ineligible Creditors stated their intentions of serving deposition and document subpoenas on

18   Mr. Rechnitz and Mrs. Rechnitz.

19         Contrary to the Court's desire that any discovery be simple and limited, the Ineligible

20   Creditors indicated that they were demanding the Rechnitz Parties' cell phones in order "to upload

21   their text messages and emails" and they intended to seek electronically stored information

22   discovery regarding Mr. Rechnitz's email account.  (*See id.*)

23         The Ineligible Creditors served new document requests, but the new document requests

24   included with the subpoenas are still overly broad in at least four respects.[3]  First, the Ineligible

25   Creditors seek all documents and communications related to all "Creditor[s,]" which as defined in

26

27         [3]   Jadelle reserves any and all rights and objections related to the discovery proposed by the Ineligible
           Creditors.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   the document request would include discovery related to the Ineligible Creditors, which the Court

2   specifically said was not allowed.  (*See* Ex. 4 at Bates Stamps 116-117 .)  Second, the Ineligible

3   Creditors seek documents regarding any payments to creditors after the petition date, even though

4   the Court made clear that the focus of the Ineligible Creditors' inquiry should be as of the petition

5   date.  (*See id.* at Bates Stamp 118; *see also* Ex. 1 at Bates Stamp 80, lines 8-10, stating that post-

6   petition payments are irrelevant because the "law is as of the date of the petition."; *id.* at Bates

7   Stamp 93, lines 6-17.)  Any post-petition payments or communications are irrelevant.[4]  Third, the

8   Ineligible Creditors did not include any time limitations in their discovery requests at all.  (*See id.*

9   at Bates Stamp 116-119.)  Fourth, as discussed above, the Ineligible Creditors' demands for cell

10  phones and electronically stored information is simply overly broad and burdensome in light of

11  the limited issues currently before the Court—the mere existence of other creditors who may or

12  may not want to join the petition.

13          This is a classic case where the Court gave the Ineligible Creditors an inch (that they were

14  not entitled to) and they are racing to take a mile.  It is clear that the Ineligible Creditors, whose

15  bad faith was extensively documented in the Motion to Dismiss, are seeking to use this case and,

16  now, discovery to obtain the type of improper leverage the Ninth Circuit in *Blixseth* was

17  concerned about.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1184 & 1187 (9th Cir. 2019)

18  (stating the "'bona fide dispute' limitation" is designed to prevent creditors using the involuntary

19  bankruptcy process to leverage the collection of disputed claims).  It was also not lost on Jadelle

20  that the Ineligible Creditors requested that counsel accept service of the subpoenas for the

21  Rechnitz Parties under the threat of sending process servers to their house starting 8:05 p.m. on

22  Friday, June 12.  (*See* Ex. 4. at Bates Stamp 113.)  That is the exact time for sundown and is the

23  beginning of Shabbat, which the Rechnitz Parties strictly observe and which is well known to the

24  Ineligible Creditors.

25      **C.**      **The Criminal Investigation**

26          Rechnitz Parties and Jadelle first became aware of the ongoing criminal investigation

27  _____

28      [4]   The Court also made clear that there was nothing improper with Jadelle communicating with its creditors
post-petition.  (*See* Ex 1 at Bates Stamp 93, lines 6-17.)

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 498

1  through a draft Los Angeles Superior Court complaint received from Noval.  (*See* Schafler Decl.

2  at ¶ 3a ; *see also id.*, Ex. B , Cohen Decl. at ¶ 9.)  Rechnitz Parties and Jadelle received the draft

3  Noval complaint on February 4, 2020.  (*See id.* at Ex. B, Cohen Decl. at ¶ 9.)  The draft complaint

4  contained allegations against the Rechnitz Parties and Jadelle, among others, regarding alleged

5  loans made to Jadelle.  (*Id.*)

6          Noval's draft complaint indicated that Noval had filed a police report with the Beverly

7  Hills Police Department ("BHPD") concerning the allegations in the draft complaint.  (*See*

8  Schafler Decl. at Ex. B, Cohen Decl., ¶ 9.)  This is also reflected in Noval's filed complaint.  (*See*

9  Ex. 5 at Bates Stamp 137, ¶ 37.)  On February 7, 2020, counsel for Rechnitz Parties and Jadelle

10  confirmed with a detective from the BHPD that allegations related to the jewelry business had

11  been referred to the Federal Bureau of Investigation ("FBI").  (*See* Schafler Decl. at Ex. B, Cohen

12  Decl. at ¶ 10.)  Thereafter, counsel for the Rechnitz Parties and Jadelle conferred with an Assistant

13  United States Attorney ("AUSA") from the Los Angeles office of the United States Attorney's

14  Office for the Central District of California ("USAO") regarding the status of any criminal

15  investigation.  (*Id.* at ¶ 11.)

16          Based on multiple discussions with the federal prosecutors investigating Jadelle's jewelry

17  business, the following is known:

18          1.      The USAO and FBI are investigating conduct related to the jewelry business

19                  operated through Jadelle.

20          2.      The government's investigation includes the allegations that are the subject of and

21                  included in the civil complaints filed by Marco and Noval.

22          3.      Mr. Rechnitz is presently a subject of the government's investigation.

23          4.      The government's ongoing investigation goes beyond Mr. Rechnitz's conduct and

24                  includes other individuals.  The government does not wish to publicly disclose the

25                  nature and scope of its investigation.

26          5.      Mr. Rechnitz may soon be subpoenaed to testify before the grand jury and the

27                  government understands that Mr. Rechnitz may assert his Fifth Amendment

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 499

1    privilege to decline to testify.

2    6.    The government is aware of the involuntary bankruptcy proceedings (in addition to

3    the other civil actions) and this Court's oral ruling on June 10, it understands that

4    Jadelle is seeking a stay based on Mr. Rechnitz's Fifth Amendment privilege, and it

5    does not oppose Mr. Rechnitz's assertion of his Fifth Amendment privilege in this

6    case or in the civil lawsuits.

7    7.    The government's investigation is ongoing.

8    (*See* Schafler Decl. at ¶ 4.)  If Ms. Rechnitz were to be called as a witness, she would for many of

9    the same reasons assert her Fifth Amendment privilege and marital privilege to

10    decline to answer.  (*See id.* at ¶ 5.)

11

12    **III.    THE COURT CAN AND SHOULD RECONSIDER THE ORDER BECAUSE IT IS**

13    **CONTRARY TO THE CODE AND TO NINTH CIRUIT PRECEDENT**

14    The Court has the discretion to reconsider the Order.  The standard governing

15    reconsideration depends on whether the Order is considered interlocutory or final.  The Court has

16    the inherent authority to reconsider and rescind an interlocutory order.  *See City of Los Angeles,*

17    *Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886–87 (9th Cir. 2001) ("[A] district

18    court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent

19    power rooted firmly in the common law and is not abridged by the Federal Rules of Civil

20    Procedure.").  Moreover, the Court has the authority to reconsider an interlocutory order as justice

21    requires under Rule 54(b), which is incorporated into bankruptcy cases by Bankruptcy Rule

22    7054(a).  *See Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (stating that Rule 54(b) involves a

23    more flexible standard and reflects the "'inherent power of the rendering district court to afford

24    such relief from interlocutory judgments as justice requires.'").

25    If the Order is considered a final order, then Rule 59 permits the Court to amend the Order

26    or issue a new order *sua sponte* or on a motion by a party.  *See* Fed. R. Civ. P. 59(a)(2), (d), & (e).

27    The Ninth Circuit has articulated the following standard for reconsideration under Rule 59(e):

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e). There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is "necessary to correct manifest errors of law or fact upon which the judgment is based;" 2) the moving party presents "newly discovered or previously unavailable evidence;" 3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law.

*Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (alternation in original and citations omitted).

Reconsideration of the Order is appropriate whether it is considered final or interlocutory. If the Order is interlocutory, then the Court has the inherent power to reconsider it or as justice requires under Rule 54(b). If the Order is considered final, then reconsideration is appropriate because entry of an order for relief in this case would constitute a manifest error of law. Moreover, the requirement that the Rechnitz Parties file a joint declaration and the entry of an order for relief if they do not do so was not briefed for the Court, but was raised by the Court *sua sponte* during the hearing on the Motion to Dismiss.

Reconsideration is also appropriate due to the conduct of the Ineligible Creditors. Despite the Court's finding that all three Ineligible Creditors are ineligible based on their own admissions, they are emboldened. The Ineligible Creditors are seeking discovery more complicated than and broader than the limited discovery it appears the Court envisioned. They are also using any compliance with the Court's Order to gain an unfair advantage—the entry of an order for relief in case they lacked standing to pursue or a waiver of the Rechnitz Parties' Fifth Amendment rights.

A.    **Entry of an Order for Relief Would Be Contrary to the Code**

Under the Bankruptcy Code, an involuntary petition must be commenced by the requisite number of eligible petitioning creditors and, if an involuntary petition is timely controverted, the court shall, ***after trial***, enter an order for relief "***only if*** — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount. . . ." *See* 11 U.S.C. § 303(b) & (h) (emphasis added); *see also In re Marciano*, 446 B.R. 407, 420 (Bankr. C.D. Cal. 2010), *aff'd*, 459 B.R. 27 (B.A.P. 9th Cir.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 501

1  2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013) (listing the five elements petitioning creditors must

2  establish).

3       The entry of an order for relief at this preliminary stage simply if the Rechnitz Parties

4  permissibly invoke the Fifth Amendment and decline at their counsel's advice to file the joint

5  declaration as required by the Order would be contrary to the Code.  The Code permits the entry of

6  an order for relief only in certain express circumstances, none of which will have been satisfied in

7  this case.

8       • *First*, Jadelle timely controverted the Involuntary Petition, and, therefore entry of

9         an order for relief due to an alleged debtor's default is not appropriate.  *See* 11

10        U.S.C. § 303(h).

11      • *Second*, the Court concluded that each of the Ineligible Creditors are ineligible

12        under the Ninth Circuit's decision in *Blixseth* and, as a result, the Ineligible

13        Creditors lack standing to commence this case as required by § 303(b) and no other

14        creditors have joined this case.  *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179,

15        1185 (9th Cir. 2019) (stating that a bona fide dispute "strips the creditor of

16        standing. . . .").

17      • *Third*, there has been no finding, after trial, that Jadelle is generally not paying its

18        undisputed debts as they become due on the agreed to terms.  *See* 11 U.S.C. §

19        303(h).

20      Because Jadelle timely controverted the Involuntary Petition, the Court can enter an order

21  for relief if and "only if" there is the requisite number of eligible petitioning creditors and the

22  Court determines after a trial that Jadelle is generally not paying its undisputed debts as they

23  become due on the agreed to terms.  These requirements have not been satisfied.  The entry of an

24  order for relief would, in effect, be an unwarranted terminating sanction contrary to the express

25  language of the Code.  Jadelle should not be penalized or sanctioned as a result of non-debtor third

26  parties exercising their Constitutional rights.  The Ineligible Creditors are not entitled the windfall

27  or (victory by default) that they seek and that they have essentially tried to engineer since the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 502

1  outset of their disputes with Jadelle.  Thus, the Court should reconsider its Order and remove the

2  requirements that the Rechnitz Parties file a joint declaration and that an order for relief will be

3  entered if they do not file the joint declaration.

4  **B.    The Court May Dismiss This Case Without a Creditor List**

5  According to the Ninth Circuit, "'[t]he court shall determine the issues of a contested

6  [involuntary] petition at the earliest practicable time and forthwith' enter a dispositive order."  *See*

7  *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002) (quoting Bankruptcy Rule

8  1013(a)) (alterations in original).  The bankruptcy court is required to "pause before [a] hearing on

9  the merits of an involuntary petition *in only one circumstance*."  *See id.* (emphasis added).  The

10 court must assure that creditors have a reasonable opportunity to join the petition when required

11 by Bankruptcy Rule 1003(b), *i.e.,* "when the alleged debtor's answer to the petition *filed by fewer*

12 *than three petitioners* asserts that the petition fails" because three petitioning creditors are

13 required.  *See id.* (emphasis added).  In *Vortex Fishing*, the Ninth Circuit concluded that

14 "[b]ecause more than three petitioners filed the initial involuntary petition, notification of other

15 creditors was not required under the joinder provisions of Bankruptcy Rule § 1003(b)."  *See id.* at

16 1072.

17 The Ninth Circuit BAP's decision in *QDOS, Inc.*, fully supports granting Jadelle's

18 meritorious Motion to Dismiss and without requiring a creditor list and an opportunity to join the

19 petition.  *QDOS* is distinguishable for three important reasons.  First, the issue presented to the

20 bankruptcy court in that case was whether the case was commenced by too few creditors, *i.e.*, only

21 two eligible creditors when three were required.  *See In re QDOS, Inc.*, 607 B.R. 338, 341-42

22 (B.A.P. 9th Cir. 2019).  Second, the bankruptcy court determined that it could not grant the

23 putative debtor's Rule 12(b)(6) motion to dismiss and triable issues existed.  *See id.* at 341-42 &

24 346-47.  Third, according to the BAP, once the bankruptcy court determined that triable issues

25 existed (and implicitly denied the debtor's motion to dismiss), the debtor was required to answer

26 and, based on the debtor's position, provide a list of creditors as required by Rule 1003(b).  *See id.*

27 at 341 & 347.  However, the BAP recognized that the putative debtor is required to answer the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 503

1   petition *only if* a Rule 12(b)(6) motion to dismiss is denied. *See id.* at 345. Moreover, a debtor is

2   required to comply with Bankruptcy Rule 1003(b) and provide a list of creditors as required

3   pursuant to that rule "*if*" it "asserts that it has more than 12 creditors in its answer. . . ." *See id.* at

4   345 (emphasis added). The BAP reversed the bankruptcy court for procedural reasons because it

5   determined that Bankruptcy Rule 1003 applied in that case and the court dismissed the case due to

6   an insufficiency in the number of petitioning creditors without requiring the putative debtor to

7   comply with Bankruptcy Rule 1003. *See id.* at 341.

8        Where, as here, the case is commenced by three petitioning creditors, Rule 1003(b) does

9   not apply and the court is not required to provide creditors with any opportunity to join. In *In re*

10  *Taub*, the alleged debtor sought dismissal of an involuntary petition commenced by three

11  petitioning creditors on the basis that the creditors' claims were subject to bona fide dispute as to

12  liability and amount. *See In re Taub*, 439 B.R. 261, 267 (Bankr. E.D.N.Y. 2010). The petitioning

13  creditors argued that the court "should provide a window of time for non-petitioning creditors

14  holding unsecured claims to join the Petition." *See id.* at 271. The court rejected the creditors'

15  request. *See id.* at 271-72. The court held that Bankruptcy Rule 1003 does not apply "when the

16  alleged debtor seeks dismissal of the petition on the basis that the petitioning creditors are not

17  qualified under § 303(b) because their claims are subject to a bona fide dispute." *See id.* at 271.

18  Relying on the Ninth Circuit's decision in *Vortex Fishing Systems*, the court concluded that

19  because the case was commenced by three petitioners and because the debtor sought dismissal

20  because all three were ineligible, "there is no requirement that non-petitioning creditors be

21  afforded 'a reasonable opportunity' to join the Petition." *See id.*

22        The Court can and should dismiss this case at this time and without affording non-

23  petitioners an opportunity to join. According to both the Ninth Circuit and the Ninth Circuit BAP,

24  a creditor list and opportunity to join is required *only where Bankruptcy Rule 1003(b) requires it*.

25  The procedural mistake by the court in *QDOS* was that the BAP concluded that Bankruptcy Rule

26  1003(b) applied in that case and the putative debtor was not required to answer and file a list as the

27  rule requires. *See In re QDOS, Inc.*, 607 B.R. at 347. Here, Bankruptcy Rule 1003(b) is

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2828340.1                 13                  EMERGENCY MOTION

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   inapplicable because the case was not commenced by "fewer than three petitioning creditors[.]"

2   Like *Taub*, this case was commenced by three creditors and Jadelle sought dismissal on the basis

3   that all three are ineligible.  Moreover, the Court concluded that the claims of the Ineligible

4   Creditors are subject to bona fide disputes and that the Motion to Dismiss could be granted.

5   Because Bankruptcy Rule 1003(b) does not apply here, the Court is not required to pause, but

6   enter a dispositive order "at the earliest practicable time and forthwith[.]"  *See In re Vortex Fishing*

7   *Systems, Inc.*, 277 F.3d at 1061.

8       This Court has already determined that the Ineligible Creditors are ineligible, and

9   therefore, under the Code and Ninth Circuit precedent, this Court should issue a dispositive order

10  granting the Motion to Dismiss and dismissing the case.

11

12  **IV.    IF THE COURT DOES NOT RECONSIDER ITS ORDER, THEN A STAY**

13         **PURSUANT TO THE FIFTH AMENDMENT IS NECESSARY AND PROPER**

14      **A.    Courts Have Discretion to Stay Cases as Justice Requires**

15      It is widely recognized that courts have the authority to stay civil proceedings pending the

16  resolution of a parallel criminal proceeding.  *See Keating v. Office of Thrift Supervision*, 45 F.3d

17  322, 324 (9th Cir. 1995); *Grubbs v. Irey*, 2008 WL 906246 (E.D. Cal. March 31, 2008).  While the

18  Constitution does not require a stay, the decision whether to stay civil proceedings in the face of a

19  parallel criminal proceeding depends on "the particular circumstances and competing interests

20  involved in the case."  *See Keating*, 45 F.3d at 324 (quoting *Federal Sav. & Loan Ins. Corp. v.*

21  *Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).

22      The Fifth Amendment privilege against self-incrimination may be asserted "in any

23  proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory."  *Fuller v.*

24  *Superior Court of Los Angeles County*, 87 Cal. App. 4th 299, 305 (2001).  In civil actions,

25  however, a witness invoking his constitutional privilege may be subjected to adverse

26  consequences arising from the refusal to testify.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318-19

27  (1976).  Courts have recognized "the dilemma faced by a defendant who must choose between

28

1   defending the civil litigation by providing testimony that may be incriminating on the one hand,

2   and losing the case by asserting the constitutional right and remaining silent, on the other hand."

3   *See Fuller*, 87 Cal. App. 4th at 306 (citing *Avant! Corp. v. Superior Court of Santa Clara County*,

4   79 Cal. App. 4th 876, 882 (2000)); *see also People v. Coleman*, 13 Cal. 3d 867, 884-85 (1975)

5   (recognizing "the plight of a defendant in a criminal prosecution who must also defend against

6   civil proceedings involving the same facts.").

7           When faced with pending criminal proceedings, a district court has the discretion to stay

8   civil proceedings "'when the interests of justice seem [] to require such action.'"  *See Keating v.*

9   *Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Securities & Exchange*

10  *Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)); *see also Volmar*

11  *Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("It is well settled that

12  district courts have the inherent power, in the exercise of discretion, to issue a stay when the

13  interests of justice require such action.").  Whether a district court exercises its discretion depends

14  on the particular circumstances and competing interests involved in the case.  *See Federal Sav. &*

15  *Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989).  "Depending on the particular

16  facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or

17  impose protective orders." *Volmar Distributors, Inc*, 152 F.R.D. at 39.

18          Based on Fifth Amendment privilege concerns, courts have entered stay of civil

19  proceedings to protect the Fifth Amendment privileges of defendants currently under indictment or

20  facing the possibility of indictment.  *See Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D.

21  Mich. 2007) ("[S]imultaneous criminal and civil cases involving the same or closely related facts

22  may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings.");

23  *see also eBay, Inc. v. Digital Point Solutions*, 2010 WL 702463 at *3 (N.D. Cal. Feb. 25, 2010)

24  (following *Chao*).

25          "[T]he mere possibility of criminal prosecution is all that is necessary for the Fifth

26  Amendment privilege against self-incrimination to be invoked." *Consumer Fin. Prot. Bureau v.*

27  *Global Fin. Support, Inc.*, 2016 WL 2868698, at *3 (S.D. Cal. May 17, 2016).  Thus, even where a

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  party has not been charged, a stay may still be appropriate.  *See id.* (granting a 120-day stay and

2  setting status conference to determine necessity of a further stay in light of an ongoing

3  investigation by IRS and FBI); *see also Franco v. City of W. Covina*, 2019 WL 6794203, at *2

4  (C.D. Cal. 2019) (granting a stay of a deposition and discovery related to an officer's involvement

5  in a shooting where the authorities were reviewing the legality of the shooting, and noting "[while

6  defendant-officer's] Fifth Amendment rights are implicated to a lesser extent than they would be if

7  charges had been brought against him . . . this case is not one in which there is an 'absence of any

8  hint of criminal proceedings'"); *Clifford v. Trump*, 2018 WL 3435419, at *3, 6 (C.D. Cal. 2018),

9  *reconsideration denied*, 2018 WL 3436832 (C.D. Cal. 2018) (granting defendant's *ex parte*

10  application for a 90-day stay in light of an ongoing criminal investigation, scheduling a status

11  conference at expiration of those 90 days, and noting that "there [was] a large potential factual

12  overlap between the civil and criminal proceedings that would heavily implicate [defendant's]

13  Fifth Amendment rights"); *C.M. by & through McLain v. City of Los Angeles*, 2017 WL

14  10527380, at *2 (C.D. Cal. 2017) ("[T]he Court may still order a stay if there is substantial overlap

15  between the criminal investigation and the allegations in the lawsuit.").

16      **B.**    **The Most Important Factor in Deciding Whether to Stay a Case is the Overlap**

17              **Between the Proceedings**

18        The most important factor in determining whether to stay a proceeding pending a criminal

19  investigation is the extent to which the matters overlap.  *See Volmar Distributors, Inc. v. New York*

20  *Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (quoting *Parallel Civil and Criminal Proceedings*,

21  129 F.R.D. 201, 203 (S.D.N.Y. 1989) ("The most important factor at the threshold is the degree to

22  which the civil issues overlap with the criminal issues."); *see also Chao*, 498 F.Supp.2d at 1039

23  (stating that "the extent to which the issues in the criminal case overlap with those in the civil case,

24  is regarded as the most important factor." (internal quotation marks omitted)).

25        District courts also consider the following factors: (1) the interest of the plaintiffs in

26  proceeding expeditiously with this litigation or any particular aspect of it, and the potential

27  prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings

28

EXHIBIT "15", PAGE 507

may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *See Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989). Courts are to balance these factors on a case-by-case basis to "avoid prejudice." *See Volmar Distributors, Inc. v. New York Post Co.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

### C. Courts Can Stay Cases Against Companies on Fifth Amendment Grounds

Courts have stayed cases against a company based on the Fifth Amendment rights of an individual where the individuals invocation of his or her Fifth Amendment rights would prevent the company from adequately defending itself. *See, e.g. Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009) (holding that the corporate defendant was "likely to be greatly prejudiced in it[s] ability to meaningful defend itself in the civil matter."); *In re Adelphia Commc'ns Corp.*, 302 B.R. 439, 452 (Bankr. S.D.N.Y. 2003) (finding it "necessary and appropriate" to protect companies from the risk that the individuals invocation of the Fifth Amendment would result in adverse consequences to the companies and could also cause "a threat to a successful reorganization . . . ."). At least one court has also stayed a civil action against a company in the interests of judicial economy and to avoid duplication of effort. *See Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (the defendants also raised the argument that the individuals' invocation of the Fifth Amendment would prevent the company from adequately defending itself).

## V. THE STAY OF THIS CASE IS APPROPRIATE

### A. The Issues in the Criminal Investigation Overlap with the Bankruptcy Case

The criminal investigation and this case involve the same matter. In fact, the criminal investigation was initiated by a criminal referral by the Ineligible Creditors. (Schafler Decl, Ex. B, Cohen Decl. at ¶ 9.) There can be no dispute that the pending criminal investigation, the Ineligible Creditors' civil lawsuits, and this bankruptcy case are all inextricably intertwined. All three stem

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   from and relate to Jadelle's business.  There is an ongoing federal criminal investigation

2   concerning the Rechnitz Parties related to the operation of Jadelle and its jewelry business.  (*See*

3   Schafler Decl. at ¶ 4.)  That same business is the focus of the Ineligible Creditors' claims and

4   allegations.  (*See* Ex. 5 at Bates Stamp 134, Ex. 6 at Bates Stamp 166, and Ex. 7 at Bates Stamp

5   254.)  Jadelle's jewelry business is the focus of this case.  In particular, the Order requires a joint

6   declaration under penalty of perjury identifying the persons with whom Jadelle conducted its

7   jewelry business.  Thus, the criminal investigation relates to very transactions underlying the

8   Ineligible Creditors' claims and with the alleged creditors that would be included in the joint

9   declaration ordered by the Court.  Moreover, the Order does not merely require a list, but that the

10  Rechnitz Defendants provide testimony under oath identifying and regarding Jadelle's alleged

11  creditors.  The Rechnitz Parties' Fifth Amendment rights are clearly implicated in this case.

12          The overlap between the criminal investigation and this case is further demonstrated by the

13  Ineligible Creditors' actions since the Order was entered.  Immediately following entry of the

14  Order, Marco filed a declaration with the District Court where his lawsuit is pending asserting that

15  if the Rechnitz Parties comply with the Order, they will have waived their Fifth Amendment rights

16  in that lawsuit.  (*See* Ex. 3 at Bates Stamps 104-105.)  Similarly, in seeking discovery, the

17  Ineligible Creditors have asserted that if the Rechnitz Parties comply with the Order, they will

18  have waived their Fifth Amendment rights "as to the entire subject matter which will be a large

19  swath of questions about the various creditors and Jona and Rachel's credibility is far game and at

20  issue."  (*See* Ex. 4 at Bates Stamp 113.)  According to the Ineligible Creditors, if the Rechnitz

21  Parties comply with the Court's Order, they will have waived their Fifth Amendment rights in this

22  case and the pending civil lawsuits.  Moreover, if the Rechnitz Parties comply with the Order, then

23  the Ineligible Creditors will attempt to proceed with overly broad discovery regarding the same

24  transactions at issue in their underlying lawsuits and with the other alleged creditors arising from

25  Jadelle's jewelry business, all of which is the subject of the ongoing criminal investigation.  The

26  criminal investigation, the Ineligible Creditors' lawsuits, and the issues in this case all involve

27

28

EXHIBIT "15", PAGE 509

1    Jadelle and its jewelry business.  Thus, the most important factor considered by courts supports

2    staying this case.

3        **B.**       **Absent a Stay, the Rechnitz Parties and Jadelle Will Be Substantially**

4                    **Prejudiced and Burdened**

5    Jadelle and the Rechnitz Parties will be substantially and irreparably prejudiced absent a

6    stay.  The Rechnitz Parties face a Hobson's Choice.  The Rechnitz Parties face the impossible

7    choice of potentially waiving their Fifth Amendment rights in multiple matters by complying with

8    the Order, or, exercising those rights and prejudicing themselves *and Jadelle* as a result.  If the

9    Rechnitz Parties comply with the Order, the Ineligible Creditors are waiting to profit therefrom, by

10   asserting that the Rechnitz Parties have forever and broadly waived their Fifth Amendment rights

11   in this proceeding and their lawsuits.  In contrast, invoking the Fifth Amendment, invites prejudice

12   and negative inferences.  *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir.

13   2000) ("[I]n civil proceedings adverse inferences can be drawn from a party's invocation of this

14   Fifth Amendment right."); *see also Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin.,*

15   *Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009) ("if discovery moves forward, the

16   defendant will be faced with the difficult choice between asserting his right against self-

17   incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting

18   liability in the civil case.").

19   The invocation of the Rechnitz Parties' Fifth Amendment rights also will impact Jadelle's

20   ability to defend itself.  This case is unique as the prejudicial impact arising from the Rechnitz

21   Parties exercising their Fifth Amendment rights will go far beyond an adverse inference in this

22   case or the civil lawsuits.  Rather, if the Rechnitz Parties invoke their Fifth Amendment rights,

23   then Jadelle will receive a terminating sanction in the form of the entry of an order for relief

24   (where the statutory requirements for such order have not been met).  Even if the Court does not

25   enter an order for relief, pending the criminal investigation, Jadelle is unable participate in

26   discovery and defend itself in response to the Ineligible Creditors' allegations.  Thus, absent a stay,

27   the Ineligible Creditors will receive an undue advantage—an order for relief in a case where (1)

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 510

1   they themselves referred the Rechnitz Parties for criminal prosecution, (2) they did not have

2   standing to commence the petition in the first place and (3) they have not and cannot establish the

3   statutory requirements for such an order.

4       **C.      The Ineligible Creditors Will Not Be Prejudiced by a Stay**

5       The Ineligible Creditors will not be prejudiced by a stay.  First, the Ineligible Creditors are

6   ineligible and have no standing to commence or proceed with this case.  Thus, as it now stands,

7   there is no proper petitioning creditor with standing or any interest in proceeding with this case

8   (expeditiously or otherwise).  For this reason alone, the Ineligible Creditors are not prejudiced if

9   this case is temporarily stayed.

10      Second, the Ineligible Creditors seek to avoid the stay or potential stay of their own

11  individual lawsuits.  Noval's lawsuit has been stayed until November 2020.  (*See* Ex. 8 at Bates

12  Stamp 288; *see also* Ex. 9 at Bates Stamp 290.)  There is a motion to stay Marco's lawsuit that is

13  under submission.  (*See* Ex. 10 at Bates Stamp 297, Docket No. 56.)  To the extent those lawsuits

14  are stayed, the Ineligible Creditors should be bound by the courts' rulings.  They should not be

15  allowed to circumvent the stay in the pending civil lawsuits by commencing this case.  If it was

16  not already clear, the discovery contemplated by the Ineligible Creditors demonstrates that this is

17  exactly what they intend to do.

18      Third, the Ineligible Creditors created the parallel proceedings and seek to profit therefrom.

19  They referred the matter to law enforcement for a criminal referral.  (Schafler Decl. at ¶ 3(a).)

20  Having engineered the criminal investigation with their disputed allegations, they then began

21  trying to obtain relief while the Rechnitz Parties and Jadelle have been unable to adequately and

22  fully defend themselves.  The Ineligible Creditors improperly commenced this case only after

23  Noval's suit was temporarily stayed to pursue the same disputed allegations set forth in their

24  lawsuits.  The Ineligible Creditors have been seeking to create the dilemma the Rechnitz Parties

25  are now in order to get precisely the type of advantage provided by the Order.

26      Fourth, at most, any prejudice caused to the Ineligible Creditors is the delay of their

27  attempts to recover money judgments, which is not a basis to deny a request for a stay.  *See Larsen*

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "15", PAGE 511

1   *v. City of Los Angeles*, 2012 WL 12887557, at *9 (C.D. Cal. 2012) ("A delay in recovering

2   potential monetary damages is not sufficient prejudice to warrant denial of a stay.").

3       **D.    Judicial Economy Is Served by the Proposed Stay**

4       Granting a stay is in the interests of judicial economy.  A stay could prevent a number of

5   proceedings and disputes.  If the involuntary case were to proceed, as demonstrated by the

6   Ineligible Creditors' conduct, the discovery addressed to Jadelle and/or to the Rechnitz Parties

7   would relate to topics on which the Rechnitz Parties are entitled to invoke their Fifth Amendment

8   privileges, and a number of disputes related to discovery are likely to ensue.  Similarly, if the

9   Court enters an order for relief, then a trustee will be appointed and there will be a number of

10  potential disclosures either through discovery or Bankruptcy Rule 2004 or as required by the

11  Bankruptcy Code and Rules (*e.g.*, schedules, § 341(a) meeting, etc.) that will implicate the

12  Rechnitz Parties' Fifth Amendment rights.  The proposed stay could negate a series of discovery

13  disputes and motions regarding the boundaries of Rechnitz Parties' rights to invoke their Fifth

14  Amendment privilege in the context of a bankruptcy case.  A stay could also avoid an appeal of

15  the Order and the order for relief and a motion for a stay pending such appeal.  Because these

16  potential disputes could be avoided by a stay pending the criminal investigation, the interests of

17  judicial efficiency weigh in favor of a temporary stay.

18      **E.    Persons Not Parties to this Action Will Not Be Adversely Impacted by the**

19          **Proposed Stay**

20      Any non-parties will not be prejudiced by a stay.  The FBI and USAO have an interest in

21  an investigation unaffected by related proceedings.  The USAO has indicated that it does not

22  oppose a stay of matters related to the criminal investigation.  (*See* Schafler Decl. at ¶ 4(f).)  It

23  remains to be seen whether there are other creditors who wish to join the petition.  The Ineligible

24  Creditors cannot argue that other alleged creditors are not aware of this case.  This case has been

25  pending for over two months and the Ineligible Creditors argued to this Court that they know of

26  other creditors who want to join the petition, which must mean they have already been contacting

27  alleged creditors.  (*See* Ex. 11, excerpt of Opp'n. to Mot. to Dismiss, at Bates Stamp 304, note 3.)

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

21                                EMERGENCY MOTION

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Yet, despite the Ineligible Creditors assertions and efforts, no other creditors have attempted to

2   join the petition.  Moreover, even if there are other creditors who may wish to join the petition, a

3   temporary stay will not prejudice them.  Again, this case should not have been commenced in the

4   first instance as the Ineligible Creditors lacked standing from the beginning.

5           **F.**     **The Interest of the Public Favors a Stay**

6           The interest of the public would undoubtedly weigh in favor of a stay.  The public interest

7   is better served by the completion of the criminal investigation unfettered by the bankruptcy case

8   because courts agree that the resolution of criminal proceedings "is of primary importance to the

9   public."  *See S.E.C. v. Nicholas III*, 569 F. Supp. 2d 1065, 1072 (C.D. Cal. 2008) (stating that the

10  related civil proceeding was not "of an equally pressing nature."); *see also Jones v. Conte*, 2005

11  WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) ("[T]he public interest is furthered by a stay because

12  'the public's interest in the integrity of the criminal case is entitled to precedence over the civil

13  litigant.'").  Therefore, this factor also weighs in favor of the proposed stay.

14          In sum, there is clear overlap between this case and the criminal investigation as both relate

15  to Jadelle's jewelry business.  Moreover, a weighing of the other factors considered by courts

16  support the temporary stay of this case.  Absent a stay, Jadelle will be irreparably prejudiced and

17  harmed by the entry of an order for relief contrary to the Code.  The Ineligible Creditors will not

18  be harmed by a stay and any alleged prejudice cannot outweigh the substantial harm to Jadelle.

19  Accordingly, the Court should stay this case pending the criminal investigation.

20  ///

21  ///

22  ///

23

24

25

26

27

28

EXHIBIT "15", PAGE 513

1  **VI.**    **CONCLUSION**

2      Based on the foregoing, Jadelle respectfully requests that the Court reconsider the Order

3  and either (1) remove the requirement that a joint declaration be filed by the Rechnitz Parties and

4  providing for the entry of an order for relief if they do not, or (2) vacate the Order, grant the

5  Motion to Dismiss, and dismiss this case.  Alternatively, it should stay this case.

6

7                              Respectfully submitted,

8  DATED:  June 15, 2020              SMILEY WANG-EKVALL, LLP

9

                                 By:    _/s/ Robert S. Marticello_
10                                      ROBERT S. MARTICELLO
                                     MICHAEL L. SIMON
11                                      Attorneys for Jadelle Jewelry and Diamonds,
                                     LLC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2828340.1                            23                    EMERGENCY MOTION

EXHIBIT "15", PAGE 514

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case; and Memorandum of Points and Authorities in Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/15/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
    gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com,
    lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/15/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/15/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT "15", PAGE 515

EXHIBIT "16"

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br>Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DENYING "PUTATIVE DEBTOR'S EMERGENCY MOTION FOR (1) RECONSIDERATION OF THE COURT'S ORDER, OR (2) ALTERNATIVELY, A STAY OF THE BANKRUPTCY CASE"**<br><br>[No Hearing Date Required] |

This matter is before the Court on the "Putative Debtor's Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion"), filed by the debtor on June 15, 2020.

The Court has considered the Emergency Motion and all related pleadings filed in support thereof, consisting of the supporting declarations of Robert S. Marticello and Michael V. Schafler (including an Errata thereto), an Index of Exhibits and a Request For Judicial Notice as well as the petitioning creditors' Preliminary Opposition thereto.

-1-

EXHIBIT "16", PAGE 516

1   The Emergency Motion seeks reconsideration of the Court's order entered on

2   June 10, 2020 ("June 10, 2020 Order") entitled "Order: (1) Directing Rachel Rechnitz

3   And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date

4   By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And

5   Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And

6   (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference."

7   The June 10 Order specifically ordered, *inter alia* that:

8   > 1. Rachel Rechnitz and Jona Rechnitz (collectively, the
9   > 'Rechnitz's') must file a joint declaration, sworn under
    > penalty of perjury, which identifies each and every one of the
10  > debtor's creditors as of the date of the filing of the
    > involuntary petition on April 6, 2020. The joint declaration
11  > shall include, without limitation, the following information with
    > respect to each creditor identified therein: . . .
12

13  June 10, 2020 Order (docket no. 39), page 3.

14  The Court issued its June 10, 2020 Order following a telephonic hearing on June

15  9, 2020 on two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition

16  and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by

17  the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion

18  for  Appointment of Interim Chapter 7 Trustee," filed by the petitioning creditors on May

19  19, 2020. At that hearing, the Court heard argument and representations of counsel

20  regarding both motions, made evidentiary rulings on the record, and made its oral ruling

21  as reflected in its June 10, 2020 Order.

22  A major focus of the Emergency Motion is the debtor's argument that the June

23  10, 2020 Order deprives the debtor's principals, Rachel and Jona Rechnitz, of their Fifth

24  Amendment privilege against self-incrimination by its requirement that the Rechnitz's file

25  a joint declaration under penalty of perjury regarding the identity of the debtor's creditors

26  and by allowing the petitioning creditors to conduct certain limited discovery with respect

27  to the creditors identified by them.

28

-2-

EXHIBIT "16", PAGE 517

1    The Court, however, specifically addressed the Fifth Amendment privilege issue

2  with the debtor's counsel, Robert S. Marticello, at the June 9, 2020 hearing on the

3  debtor's Motion to Dismiss:

4          THE COURT:  I know that there are criminal -- there are
           other charges and so there's a lot of stuff going on. I have no
5          opinion. I know what happened in the state court, but I have
           no opinion as to the ultimate outcome. But I tell you this, if
6          either -- or they both must comply and, make it quite clear. If
           they don't comply with the request, whether it's Fifth
7          Amendment or whatever, then I will enter the order for relief.
           Is it the debt -- from the debtor's standpoint, do you
8          understand that? Mr. Marticello, do you understand that?
9
10         MR. MARTICELLO: Your Honor, this is Robert Marticello for
           the debtor. I understand the Court's – what the Court just
11         said and I will comply with the Court's order. My concern is,
           Your Honor, like you said there are other things going on
12         and –
13
           THE COURT: No, I understand that. But, no, I'm telling you –
14
15         MR. MARTICELLO: -- if there is a -- if there's a –

16         THE COURT: -- this is really simple and I can't -- I'm not -- I -
           - people have a right to the -- you know, to take the Fifth and
17         I -- again, whether they do or not I have no idea. But I'm
           telling you right now the creditors have a right to this
18         information. If they refuse, either of them, I want both of
           them to sign it because it's not clear to me exactly who's
19         really running the business. My guess is that maybe the
           husband is but I don't know that, just from the various
20         pleadings. I don't really know. So there -- therefore, I am
           requiring both to sign under penalty of perjury. And if nei --
21         and if they don't both sign it under penalty of perjury, then I
           will enter an order for relief. I just want you -- you -- I want
22         you in particular and your clients, the debtor, the principals,
           to understand that. You do -- you understand what I've said.
23         I want them to understand it. That would be the price for not
           complying with my order. You –
24
25         MR. MARTICELLO: I understand, Your Honor.
26
           THE COURT: Mr. Marticello, you understand what I've said
27         obviously. I'm not being facetious. You understand. And so
           any –
28

-3-

1    MR. MARTICELLO: Correct, Your Honor.

2 Transcript of Telephonic Proceedings Before The Honorable Barry Russell, United

3 States Bankruptcy Judge, Docket No. 42 at p. 85, lines 21-25 through p. 87, lines 1-14.

4    The Court notes that despite debtor's counsel's statements in the above

5 proceedings that he understood what the Court had said and would comply with the

6 Court's June 10, 2020 Order, the debtor instead filed the Emergency Motion less than

7 twenty-four (24) hours before the deadline imposed by the June 10, 2020 for the filing of

8 the Rechnitz's joint declaration.

9    The Court further notes that the despite the Emergency Motion's arguments

10 regarding the Rechnitz's Fifth Amendment privilege, the debtor in this case is an LLC,

11 that the Fifth Amendment privilege only applies to individuals, and that the debtor's

12 principals (the Rechnitz's) are not entitled to assert a Fifth Amendment privilege on the

13 debtor's behalf.

14    The Emergency Motion also argues that the Court may dismiss this case without

15 the requirement of a creditor list, and that the Court is not required to provide creditors

16 (other than the petitioning creditors) an opportunity to join in the involuntary petition. The

17 Court finds this argument unpersuasive in this case.

18    It may very well be that there are additional creditors who may have substantial,

19 undisputed claims against the debtor. The debtor's failure to timely file the list of

20 creditors, as required by the Court's June 10, 2020 Order, will prevent the petitioning

21 creditors from being able to identify any such additional potential creditors and will also

22 prevent the petitioning creditors, and any other additional creditors, from attempting to

23 prove that the debtor is not paying its debts as they become due.

24 ///

25 ///

26 ///

27 ///

28 ///

-4-

1   Finally, the Court finds all other arguments in the Emergency Motion equally ill-

2   founded and unpersuasive. Accordingly, no good cause having been shown to grant the

3   Emergency Motion, the Emergency Motion is **DENIED**.

4   **IT IS SO ORDERED**.

Date: June 16, 2020

Barry Russell
United States Bankruptcy Judge

EXHIBIT "16", PAGE 520

# EXHIBIT "17"

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br><div align="right">Debtor(s).</div> | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DIRECTING CLERK OF COURT TO IMMEDIATELY ENTER AN ORDER FOR RELIEF UNDER CHAPTER 7, AND REQUIRING THE DEBTOR TO FILE ALL SCHEDULES AND RELATED DOCUMENTATION FOR A CHAPTER 7 CASE WITHIN FOURTEEN DAYS OF THE ENTRY OF THIS ORDER**<br><br>[No Hearing Required] |

On June 10, 2020, the Court entered its "Order: (1) Directing Rachel Rechnitz And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference" ("June 10 Order"), wherein the Court specifically ordered, *inter alia,* that:

-1-

EXHIBIT "17", PAGE 521

1

     1.   Rachel Rechnitz and Jona Rechnitz (collectively, the 'Rechnitz's') must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

     a. the name of the creditor;

     b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

     c. the amount of the creditor's claim;

     d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

     e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2.  The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.,* no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3.  If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order for relief in this case. [. . .]

June 10, 2020 Order, docket no. 39, pages 3 and 4.

     The debtor filed an "Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion") on June 15, 2020. The Court denied the Emergency Motion by a separate order entered on June 16, 2020.

     As of 3:00 p.m. on June 16, 2020, the Rechnitz's failed to file the joint declaration under penalty of perjury, the required list of creditors, or otherwise comply with the June 10, 2020 Order in any respect.  Accordingly, **IT IS HEREBY ORDERED** that:

EXHIBIT "17", PAGE 522

Case 2:20-bk-13530-BR    Doc 54    Filed 06/16/20    Entered 06/16/20 15:59:50    Desc
Main Document    Page 3 of 3

1.  The Clerk of Court shall enter an order for relief under chapter 7 of the Bankruptcy Code immediately upon entry of this Order; and

2.  The debtor is required to file all schedules and related documentation for a chapter 7 case, in accordance with the Local Bankruptcy Rules, within fourteen (14) days from the date of entry of this Order.

**IT IS SO ORDERED.**

###

Date: June 16, 2020

Barry Russell
United States Bankruptcy Judge

-3-

# EXHIBIT "18"

Form ofri−(orlf7,orlf11,iors) VAN−93
Rev. 12/2015

# United States Bankruptcy Court
## Central District of California

### 255 East Temple Street, Los Angeles, CA 90012

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
Jadelle Jewelry And Diamonds LLC a Delaware
limited liability company
dba Jadelle Inc
**SSN:** N/A
**EIN:** 00-0000000

9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212

**BANKRUPTCY NO.**  2:20−bk−13530−BR
**CHAPTER**  7

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above−named debtor on April 6, 2020

☐   Debtor consented to the entry of an order of relief.

☐   No pleading or other defense to the petition having been filed within 21 days after service of the summons (or within
any longer period of time precribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is ordered to file within **seven** days after entry of this order for relief, a list containing the name and address of each
entity included on Schedule D, E/F, G, and H as prescribed by the Official Forms (Federal Rule of Bankruptcy Procedure 1007
(a)(2)).

Debtor is also ordered to file schedules, statement and Statement About Your Social Security Numbers (Official Form B121)
referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) and (f) within 14 days after entry of this Order For Relief.

Dated: June 16, 2020

For The Court,

**Kathleen J. Campbell**
Clerk of Court

(Form ofri−orlf7,orlf11,iors) VAN−93 Rev. 12/2015

**55 / SF**

EXHIBIT "18", PAGE 524

# EXHIBIT "19"

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds,
LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| Putative Debtor. | **STATEMENT RE CREDITOR LIST** |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the debtor (the "Debtor"), is unable to prepare and file the list required by Federal Rule of Bankruptcy Procedure 1007(a)(2) because the individual who has access to the information to prepare, and who would prepare, sign, and verify, such list has been advised by counsel to decline to answer based on the Fifth Amendment privilege against self-incrimination. The Debtor has, via counsel, advised counsel for Sam Leslie, the chapter 7 trustee, that it would be filing this statement.

DATED: June 23, 2020               SMILEY WANG-EKVALL, LLP

By:    _/s/ Robert S. Marticello_
ROBERT S. MARTICELLO
Attorneys for Jadelle Jewelry and Diamonds,
LLC.

2822846.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**


A true and correct copy of the foregoing document entitled (*specify*): **Statement re Creditor List** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/23/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@iq7technology.com;trustee@trusteeleslie.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
    gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com,
    lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/23/2020 | Lynnette Garrett | /s/ Lynnette Garrett |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT "19", PAGE 526

# EXHIBIT "20"

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:     714 445-1000
Facsimile:     714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re | Case No. 2:20-bk-13530-BR |
|---|---|
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| Putative Debtor. | **STATEMENT RE SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS** |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the debtor (the "Debtor"), is unable to prepare and file the schedules and statement of financial affairs required by Federal Rule of Bankruptcy Procedure 1007(b)(1) because the individual who has access to the information to prepare, and who would prepare, sign, and verify, such schedules and statement has been advised by counsel (Cohen Williams LLP) to decline to answer based on the Fifth Amendment privilege against self-incrimination.  However, below is certain information required by the Schedule A/B and/or the Statement of Financial Affairs that is publically available:

///

///

///

2822846.1

STATEMENT

**Schedule A/B, Part 1 Checking, savings, money market, or financial brokerage accounts; Statement of Financial Affairs Part 10: Financial Accounts, Safe Deposit Boxes, Storage Units**

| Name of Institution | Last 4 digits of account number | Type of Account |
|---|---|---|
| Wells Fargo | 1313 | Checking |

**Statement of Financial Affairs, Part 3: Legal Actions or Assignments**

| Case Title and Number | Nature of Case | Court of Agency's Name and Address | Status of Case |
|---|---|---|---|
| Victor Franco Noval v. Jona Rechnitz, et al., Case No. 20SMCV00216 | Civil lawsuit. | Superior Court of the State of California for the County of Los Angeles – West District | Pending. |
| Khaled J. Al-Sabah, et al. v. Victorino Noval, et al., Case No. 19STCV42446 | Civil lawsuit. A motion for leave to file an amended complaint adding the Debtor was filed prior to the entry of the order for relief. | Superior Court of the State of California In and for the County of Los Angeles – Central District | Pending. |
| Israel Sam Gorodistian v. Jadelle, et al., Case No. 20STCV07425 | Civil lawsuit. | Superior Court of the State of California for the County of Los Angeles – Central District | Pending. |

DATED: June 30, 2020

SMILEY WANG-EKVALL, LLP

By: _/s/ Robert S. Marticello_
ROBERT S. MARTICELLO
Attorneys for Jadelle Jewelry and Diamonds, LLC.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2822846.1

2

STATEMENT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**


A true and correct copy of the foregoing document entitled (*specify*): **Statement re Schedules and Statement of Financial Affairs** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/30/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen     bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Sam S Leslie (TR)     sleslie@trusteeleslie.com, sleslie@iq7technology.com;trustee@trusteeleslie.com
- Daniel A Lev     dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello     Rmarticello@swelawfirm.com,
    gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards     ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian     ECF@salisianlee.com
- Michael Simon     msimon@swelawfirm.com,
    lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/30/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "21"

# Sam S. Leslie, CPA
## Chapter 7 Trustee

June 18, 2020

Via: Via Federal Express and
      Email: rmarticello@swelawfirm.com

Robert S. Marticello, Esq.
**Smiley Wang-Ekvall, LLP**
3200 Park Center Drive Ste. 320
Costa Mesa, CA 92626

Re: Jadelle Jewelry and Diamonds, LLC
    Chapter 7 Bankruptcy Case No. 2:20-bk-13530-BR

Dear Mr. Marticello,

As you know, the above-referenced Debtor was the subject of an Involuntary Chapter 7 bankruptcy case filed on April 6, 2020, and on June 18, 2020 I was appointed as the Chapter 7 Trustee. A copy of the Court's Notice of Chapter 7 Bankruptcy Case reflecting my appointment is included herewith for your reference.

Please be advised that any and all documents of the Debtor, including text messages, emails and correspondence, relating to transactions and the business affairs in which the Debtor and its principals and officers working for and on behalf of the Debtor were involved must be preserved and turned over to me. Since this case is in a Chapter 7, of course, the Debtor may not transact any business or dispose of any assets. I will require an inspection of the property located at 9533 Sawyer Street and its contents as I understand that property is being used as the home office for the Debtor.

In order to properly administer the above-referenced case, I request production of the following documents:

1. Documents relating to the Debtor, including:
   a. Any and all records relating to consignments (including without limitation, memos of transfer or other records) to Debtor of diamonds and/or jewelry since the Debtor's inception;
   b. Any and all records relating to consignments (including without limitation, memos of transfer or other records) by Debtor to any third party of diamonds and/or jewelry since inception;

EXHIBIT "21", PAGE 530

# Sam S. Leslie, CPA
## Chapter 7 Trustee

   c. Any and all records relating to sales (including without limitation, invoices or memos of transfer or other records) by Debtor of diamonds and/or jewelry to third parties and/or insiders since inception;

   d. Any and all records relating to pledges or hypothecations by Debtor of diamonds and/or jewelry to third parties and/or insiders since inception;

   e. Any and all records relating to transactions conducted through or with Malca-Amit including, but not limited to, communications with Malca-Amit;

   f. A list of all bank, brokerage, PayPal or similar cash accounts, including names and addresses and the account numbers used and/or controlled by the Debtor or on the Debtor's behalf for the conduct of its business since inception, including without limitation, any new account opened since May 28, 2020;

   g. A copy of all retainer agreements with attorneys entered into by Debtor and its principals, with evidence of what amount of retainer was paid and by whom;

   h. An inventory of all the Debtor's merchandise, diamonds and jewelry on hand and its location and approximate value;

   i. All original GIA certificates on hand;

   j. All records relating to any and all payments made by the Debtor to or on behalf of the Debtor's principals or to related parties in the year before April 6, 2020, and subsequently, whether for living expenses or compensation or any other purpose;

   k. All records relating to any and all payments made by the Debtor to or on behalf of a creditor of Debtor in the 90 days prior to April 6, 2020, and subsequently;

   l. The names and addresses and amounts owed to all persons owed money by the Debtor;

   m. A Balance Sheet for the years 2017, 2018, 2019 and year to date for 2020;

   n. Profit and loss statements for the Debtor for the year ended 2017, 2018, and 2019, and year to date for 2020;

   o. Tax returns for the company for the years: 2019, 2018, and 2017;

   p. Payroll tax returns for the last 3 years;

   q. Bank statements for the 60 months prior to the filing of the bankruptcy case as well as cancelled checks relating to any bank account into which or from which proceeds of the Debtor's operations were deposited or withdrawn, and any statements issued on accounts after the filing of the bankruptcy case;

EXHIBIT "21", PAGE 531

# Sam S. Leslie, CPA
## Chapter 7 Trustee

    r.  Current list of accounts receivable for the company (aging report);

    s.  Current list of accounts payable for the company (aging report);

    t.  If the company uses accounting software (QuickBooks, Quicken, etc.), provide the accounting in a thumb-drive format, and with any passwords and usernames if necessary; if online accounting software was used, provide login information.

    u.  Where are the vendor files maintained? (As noted above, until we take physical possession, please advise the debtor not to destroy these files)

    v.  Where is the company computer server? (As noted above, until we take physical possession, please advise the debtor not to destroy it or otherwise compromise the data on the server);

    w.  A listing of all the Debtor's personal property, including any autos or other vehicles;

    x..  A listing of all property paid for by the Debtor on behalf of the principals, related parties, and other parties since inception;

    y.  A listing of all persons, whether employees or external, who performed accounting or other financial bookkeeping of the Debtor;

    z.  A listing of insurance companies and copies of all policies for the Debtor since inception, including but not limited to life insurance, errors and omissions, property, or vehicle; and

2. Does or has the Debtor owned any real estate property? If yes, have the Debtor provide for each property the following:

    a.  Most recent mortgage statement;

    b.  Deed showing debtor on the title;

    c.  Deed of trust;

    d.  Evidence of insurance; or

    e.  Closing statement, if sold

Please provide the above requested documentation and/or clarifications within 7 (seven) days. If any such documents do not exist, please so state. If any documents cannot be provided in that time frame, please provide an explanation of when they will be available.

EXHIBIT "21", PAGE 532

# Sam S. Leslie, CPA
## Chapter 7 Trustee

As to the any and all inventory, this must be turned over immediately. Please contact me to arrange for this.

Any unearned retainer you are presently holding should be turned over to me as Trustee. The check should be made payable to Sam S. Leslie, ATF, Jadelle Jewelry and Diamonds, LLC

I thank you in advance for your attention to this highly important matter.

Should you have any questions, please contact my office at (213) 368-5000.

Very truly yours,

Sam S. Leslie, CPA
**CHAPTER 7 TRUSTEE**

Enclosure

cc:
Carolyn A. Dye, Esq
Daniel A. Lev. Esq.

EXHIBIT "21", PAGE 533

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor | **Jadelle Jewelry And Diamonds LLC a Delaware limited liability company** | | EIN  **00−0000000** |
| | Name | | |
| United States Bankruptcy Court  **Central District of California** | | Date case filed for chapter  **7   4/6/20** | |
| Case number:  **2:20−bk−13530−BR** | | | |

## Official Form 309C (For Corporations or Partnerships)

## Notice of Chapter 7 Bankruptcy Case −− No Proof of Claim Deadline                    12/15

**For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| **1. Debtor's full name** | Jadelle Jewelry And Diamonds LLC a Delaware limited liability company | |
| **2. All other names used in the last 8 years** | dba Jadelle Inc | |
| **3. Address** | 9454 Wilshire Blvd Penthouse 01 Beverly Hills, CA 90212 | |
| **4. Debtor's attorney** Name and address | Robert S Marticello Smiley Wang−Ekvall, LLP 3200 Park Center Drive, Suite 250 Costa Mesa, CA 92626 | Contact phone 714−445−1000 Email _____ |
| **5. Bankruptcy trustee** Name and address | Sam S Leslie (TR) 3435 Wilshire Blvd., Suite 990 Los Angeles, CA 90010 | Contact phone 213−368−5000 Email _____ |
| **6. Bankruptcy clerk's office** Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 255 East Temple Street, Los Angeles, CA 90012 | Hours open: 9:00AM to 4:00 PM Contact phone 855−460−9641 Dated: 6/18/20 |
| **7. Meeting of creditors** The debtor's representative must attend the meeting to be questioned under oath by the trustee and by creditors. Creditors may attend, but are not required to do so. | July 29, 2020 at 10:00 AM The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. The trustee is designated to preside at the meeting of creditors. The case is covered by the chapter 7 blanket bond on file with the court. | Location: **TELEPHONIC MEETING, FOR INSTRUCTIONS, CONTACT THE TRUSTEE** |
| **8. Proof of claim** Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |

57/SF

**For more information, see page 2 >**

Official Form 309C (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case −− No Proof of Claim Deadline**                    page 1

EXHIBIT "21", PAGE 534

1   PETER C. ANDERSON
    UNITED STATES TRUSTEE
2   OFFICE OF THE UNITED STATES TRUSTEE
    915 Wilshire Blvd., Suite 1850
3   Los Angeles, California 90017-3560
    (213) 894-6811
4
                       **UNITED STATES BANKRUPTCY COURT**
5
                        **CENTRAL DISTRICT OF CALIFORNIA**
6
                          **LOS ANGELES DIVISION**
7                      )
    In re:             )   Chapter 7 (Involuntary)
8                      )
    JADELLE JEWELRY AND DIAMONDS,  )   Case No.: 2:20-bk-13530-BR
9   LLC.               )
                       )   NOTICE OF APPOINTMENT OF
10              Alleged Debtor.   )   TRUSTEE AND FIXING OF BOND:
                       )   ACCEPTANCE OF APPOINTMENT AS
11  _____ )   INTERIM TRUSTEE
12
                  Pursuant to 11 U.S.C. 701 and 11 U.S.C. 322
13
14            SAM LESLIE, of  LOS ANGELES, CA
15
16          is appointed Interim Trustee of the case of said debtor(s) and is hereby designated to preside
    at the meeting of creditors.  This case is covered by the chapter 7 blanket bond on file with the
17  Court on behalf of the Trustees listed on Schedule A of the bond and any amendments or
    modifications thereto.
18
19  DATED: June 17, 2020
20
21                                    **PETER C. ANDERSON**
22                                    UNITED STATES TRUSTEE
23  I, the undersigned, affirm that to the best of my knowledge and belief, I am disinterested within the
    meaning of 11 U.S.C. 101(14), and on this basis, I hereby accept my appointment as Interim
24  Trustee in the above case.  I will immediately notify the United States Trustee if I become aware of
    any facts to the contrary.
25
26  DATED: June 18, 2020                        Sam S. Leslie
                                                Sam Leslie
27                                              Interim Trustee
28
                                    1

EXHIBIT "22"

**ORIGINAL**

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Jona Rechnitz<br>9533 Sawyer Street<br>Los Angeles, CA 90035<br>(646) 283-3283 | FOR COURT USE ONLY<br><br>**FILED**<br>JUN 3 0 2020<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:                    Deputy Clerk |

☒ Individual appearing without attorney
☐ Attorney for:

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br>JADELLE JEWELRY AND DIAMONDS, LLC<br><br><br><br>Debtor(s). | CASE NO.:2:20-bk-13530-BR<br><br>ADVERSARY NO.:<br>(*if applicable*)<br><br>CHAPTER: 7 |
| <br><br><br><br>Plaintiff(s) (*if applicable*).<br>vs.<br><br><br><br>Defendant(s) (*if applicable*). | **NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1: Identify the appellant(s)**

1.  Name(s) of appellant(s): Jona Rechnitz

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (*describe*):

For appeals in a bankruptcy case and not in an adversary proceeding.
☐ Debtor
☐ Creditor
☐ Trustee
☒ Other (*describe*): Interested Party

---

December 2018    Page 1    Official Form 417A

EXHIBIT "22", PAGE 536

**Part 2:  Identify the subject of this appeal**

1.  Describe the judgment, order, or decree appealed from:

See attachment.

2.  The date the judgment, order, or decree was entered:  See attachment.

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (*attach additional pages if necessary*):

1.  Party:  See attachment.

Attorney:

2.  Party:

Attorney:

**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5:  Sign below**

_____    Date: 06/30/2020
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

EXHIBIT "22", PAGE 537

**PART 2: THE SUBJECT OF THIS APPEAL**

**1.** *Order for Relief and Order to File Schedules, Statements and List(s)* [Docket No. 55], entered on June 16, 2020.

**2.** *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing On Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Docket No. 39], entered on June 10, 2020.

**3.** *Order Denying "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, of (2) Alternatively, a Stay of the Bankruptcy Case"* [Docket No. 53], entered on June 16, 2020.

**4.** *Order Directing Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of this Order* [Docket No. 54], entered on June 16, 2020.

**PART 3: PARTIES TO THE APPEAL**

**1.** Party: Jadelle Jewelry and Diamonds, LLC, Appellant and Debtor

Counsel:
Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
(714) 445-1000

**2.** Party: Victor Franco Noval, Petitioning Creditor

Counsel:
Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213
(310) 556-1001

and

Dan Lev
SulmeyerKupetz

EXHIBIT "22", PAGE 538

333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

**3.** Party: Peter Marco, LLC, Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

**4.** Party: First International Diamond, Inc., Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

**5.** Party: Sam S. Leslie, Interim Chapter 7 Trustee

Sam S. Leslie
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

and

EXHIBIT "22", PAGE 539

Counsel: Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

**6.** Party: Rachel Rechnitz, Member and Managing Member,
Jadelle Jewelry and Diamonds, LLC

Rachel Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

**7.** Interested Party: Jona Rechnitz

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

3

EXHIBIT "22", PAGE 540

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

724 S. Spring St., 9th Floor, Los Angeles, CA 90014

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  06/30/2020   , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  06/30/2020   , I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

Via Nationwide:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple St., Suite 1660/Courtroom 1668
Los Angles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/30/2020 | Raul Chavarin | *[signature]* |
| *Date* | *Printed Name* | *Signature* |

EXHIBIT "22", PAGE 541

## PROOF OF SERVICE CONT'D

Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213

Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Sam S. Leslie
Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010

Rachel Rechnitz
9533 Sawyer Street
Los Angeles, CA 90035

EXHIBIT "22", PAGE 542

EXHIBIT "23"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Rachel Rechnitz<br>9533 Sawyer Street<br>Los Angeles, CA 90035<br>(646) 283-3283 | **FILED**<br>**JUN 3 0 2020**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:                    Deputy Clerk |
| ☒ Individual appearing without attorney<br>☐ Attorney for: | |

ORIGINAL

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>JADELLE JEWELRY AND DIAMONDS, LLC<br><br><br>Debtor(s). | CASE NO.:2:20-bk-13530-BR<br><br>ADVERSARY NO.:<br>(if applicable)<br><br>CHAPTER: 7 |
|---|---|
| <br><br>Plaintiff(s) (if applicable).<br>vs.<br><br><br>Defendant(s) (if applicable). | **NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1: Identify the appellant(s)**

1.  Name(s) of appellant(s): Rachel Rechnitz

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (describe):

For appeals in a bankruptcy case and not in an adversary proceeding.
☐ Debtor
☐ Creditor
☐ Trustee
☒ Other (describe): Member and Managing Member, Jadelle Jewelry and Diamonds, LLC

EXHIBIT "23", PAGE 543

**Part 2:  Identify the subject of this appeal**

1.  Describe the judgment, order, or decree appealed from:

    See attachment.

2.  The date the judgment, order, or decree was entered:  See attachment.

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (*attach additional pages if necessary*):

1.  Party:  See attachment.

    Attorney:

2.  Party:

    Attorney:

**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5:  Sign below**

_____    Date: 06/30/2020
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

EXHIBIT "23", PAGE 544

**PART 2: THE SUBJECT OF THIS APPEAL**

**1.** *Order for Relief and Order to File Schedules, Statements and List(s)* [Docket No. 55], entered on June 16, 2020.

**2.** *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing On Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Docket No. 39], entered on June 10, 2020.

**3.** *Order Denying "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, of (2) Alternatively, a Stay of the Bankruptcy Case"* [Docket No. 53], entered on June 16, 2020.

**4.** *Order Directing Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of this Order* [Docket No. 54], entered on June 16, 2020.

**PART 3: PARTIES TO THE APPEAL**

**1.** Party: Jadelle Jewelry and Diamonds, LLC, Appellant and Debtor

Counsel:
Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
(714) 445-1000

**2.** Party: Victor Franco Noval, Petitioning Creditor

Counsel:
Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213
(310) 556-1001

and

Dan Lev
SulmeyerKupetz

1

333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

**3.** Party: Peter Marco, LLC, Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

**4.** Party: First International Diamond, Inc., Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

**5.** Party: Sam S. Leslie, Interim Chapter 7 Trustee

Sam S. Leslie
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

and

2

EXHIBIT "23", PAGE 546

Counsel: Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

**6.** Party: Rachel Rechnitz, Member and Managing Member,
Jadelle Jewelry and Diamonds, LLC

Rachel Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

**7.** Interested Party: Jona Rechnitz

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

3

EXHIBIT "23", PAGE 547

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

724 S. Spring St., 9th Floor, Los Angeles, CA 90014

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _06/30/2020_ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _06/30/2020_ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Nationwide:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple St., Suite 1660/Courtroom 1668
Los Angles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/30/2020 | Raul Chavarin | |
| *Date* | *Printed Name* | *Signature* |

EXHIBIT "23", PAGE 548

## PROOF OF SERVICE CONT'D

Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213

Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Sam S. Leslie
Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA 90035

EXHIBIT "23", PAGE 549

EXHIBIT "24"

FILED & ENTERED

JUN 30 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br><br><br><br><br>Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DENYING DEBTOR'S "EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL"**<br><br>[NO HEARING REQUIRED] |

Based on the Memorandum of Decision on the debtor's "Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal," entered contemporaneously herewith, **IT IS HEREBY ORDERED** that the Emergency Motion is **DENIED**.

**IT IS SO ORDERED.**

###

Date: June 30, 2020

Barry Russell
United States Bankruptcy Judge

-1-

EXHIBIT "25"

FILED & ENTERED

JUN 30 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

Jadelle Jewelry and Diamonds, LLC,

                                    Debtor(s).

Case No. 2:20-bk-13530-BR

Chapter 7

**MEMORANDUM OF DECISION ON DEBTOR'S "EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL"**

[NO HEARING REQUIRED]

This matter is before the Court on the "Emergency Motion Pursuant To Federal Rule Of Bankruptcy Procedure 8007 For Stay Pending Appeal" ("Motion for Stay") [Docket No. 62], filed by the debtor on June 19, 2020. The Motion for Stay seeks a stay pending appeal of the Court's recent denial of the debtor's motion to dismiss and the Court's entry of an Order for Relief in this chapter 7 case.

The Court has considered the Motion for Stay and attached Memorandum of Point and Authorities, together with the Declaration of Robert S. Marticello [docket no. 63], Declaration of Michael V. Schafler and the three declarations of Reuven L. Cohen attached thereto as Exhibits A-C [docket no. 64], the Index of Exhibits [docket no. 65],

-1-

and the Request for Judicial Notice [docket no. 66], all filed separately by the debtor in support of the Motion for Stay.

In addition, the Court has considered the "Petitioning Creditors' Preliminary Opposition to Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal" ("Preliminary Opposition") and attached Declaration of Ronald Richards in support thereof [docket no. 71], filed on June 22, 2020. The Preliminary Opposition argues, *inter alia*, that the debtor lacks standing to prosecute an appeal because it filed the Motion for Stay without the express authorization of the newly appointed chapter 7 trustee in this case.

The Court has also considered the "Statement Re Creditor List" ("Statement") [Docket No. 72] filed by the debtor on June 23, 2020, which states simply that the debtor is unable to prepare and file the list of creditors because the individual who has access to the information to prepare, and who would prepare, sign and verify, such list has been advised by counsel to decline to answer based on the Fifth Amendment privilege against self-incrimination.

Finally, the Court has considered the "Supplement To Creditors' Preliminary Opposition To Emergency Motion Pursuant To Federal Rule Of Bankruptcy Procedure 8007 For Stay Pending Appeal" ("Supplement") [Docket No. 73], filed by the petitioning creditors on June 24, 2020.

The Court has carefully reviewed and analyzed of all of the above pleadings as well as the entire prior record regarding this case. The Court has also taken into consideration the fact that the prior record is replete with assertions regarding the debtor's alleged dissipation of its assets and the alleged disappearance of millions of dollars' worth

EXHIBIT "25", PAGE 552

of jewelry under its control. The Court has concluded that the debtor has shown no good

cause for the requested relief and, consequently, the Court will deny the Motion for Stay.

I.    BACKGROUND

In order to place it in its appropriate context, the Court provides the following

history of events leading up to the filing of the Motion for Stay:

The Court held a hearing on June 9, 2020 on two motions: the "Putative Debtor's

Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and

Damages" ("Motion to Dismiss") [docket no. 8], and the "Petitioning Creditors' Notice of

Motion and Motion for Appointment of Interim Chapter 7 Trustee" [docket no. 12], filed

by petitioning creditors Victor Franco Noval, Peter Marco, LLC and First International

Diamond, Inc.

The next day, on June 10, 2020, the Court entered its "Order: (1) Directing

Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury;

(2) Setting Date By Which Creditors May Contact Creditors Identified in Joint

Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing on Status

Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status

Conference" ("June 10, 2020 Order") [docket no. 39].

The June 10, 2020 Order, *inter alia*, directed Rachel and Jona Rechnitz (the

"Rechnitzs") to file a declaration jointly under penalty of perjury by June 16, 2020,

identifying each and every one of the debtor's creditors as of the petition date. The

Order also stated, *inter alia*, that the Court would deny the debtor's Motion to Dismiss

and immediately direct the entry of an Order for Relief if the Rechnitzs failed to timely

file the requisite declaration.

EXHIBIT "25", PAGE 553

1    The Rechnitzs failed to file the declaration, timely or at all. Instead, the debtor

2  filed the "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's

3  Order, or (2) Alternatively, a Stay of the Bankruptcy Case" ("Reconsideration Motion")

4  [docket no. 44] late on the afternoon of June 15, 2020, the day prior to the deadline for

5  filing the declaration. The Court denied the Reconsideration Motion by entry of its

6  "Order Denying 'Putative Debtor's Emergency Motion for (1) Reconsideration of the

7  Court's Order, or (2) Alternatively, a Stay of the Bankruptcy Case" [docket no. 53] on

8  June 16, 2020.

9    Also on June 16, 2020, the Court entered its "Order Directing Clerk of Court to

10 Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File

11 All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days

12 of the Entry of This Order" [docket no. 54]. The Clerk of Court entered the "Order for

13 Relief and Order to File Schedules, Statements and List(s)" ("Order for Relief") [docket

14 no. 55] on the same day.

15   Two days later, on June 18, 2020, the Office of the United States Trustee filed a

16 "Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as

17 Interim Trustee" [docket no. 56], which named Sam S. Leslie, Esq. as the chapter 7

18 trustee in this case.

19   As noted above, the Motion for Stay seeks a stay pending appeal of the Court's

20 denial of the debtor's Motion to Dismiss, which the June 10, 2020 Order specifically

21 stated would be denied if the Rechnitzs failed to file their joint declaration in compliance

22 with the Court's June 10, 2020 Order, as well as a stay of the Order for Relief entered

23 on June 16, 2020.

-4-

1

2

II.   DISCUSSION

3

A.   Debtor's Lack of Standing To File Motion for Stay

4

5        The petitioning creditors' Preliminary Opposition asserts that once the Order for

6   Relief was entered and the chapter 7 trustee appointed, the debtor and its principals (the

7   Rechnitzs) were divested of any authority to act on the debtor's behalf, as only the chapter

8   7 trustee, and not the debtor's prior management, had the authority to act for the debtor.

9   The Court agrees.

10

11       The Office of the United States Trustee appointed Sam S. Leslie as chapter 7

12   trustee on June 18, 2020. Mr. Leslie is now the manager of the debtor and his

13   appointment has ousted the debtor and the Rechnitzs from their management role. See

14   C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.), 636 F.3d 1257 (10th Cir. 2011)

15   and Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352–53 (1985).

16

17   In an email attached as Exhibit A to the Preliminary Opposition, the trustee expressly

18   stated that he did not authorize the debtor to file the Motion for Stay. Consequently, the

19   debtor lacked standing to have done so.

20

21       B.   Debtor's Counsel's Conflict of Interest and Efforts to Obstruct The Trustee

22       In addition, it is clear to the Court that the attorneys for the debtor have a conflict

23   of interest in this case. The attorneys have been representing the interests of the

24   Rechnitzs throughout these proceedings and in underlying state court lawsuits, rather

25   than the interests of the debtor or the bankruptcy estate. The Court believes that the

26   debtor's attorneys are not seeking to determine the truth about what has happened to the

27   assets of the debtor, but instead are only interested in protecting the rights of the

28

-5-

EXHIBIT "25", PAGE 555

1   Rechnitzs, who are non-debtors.

2         On the other hand, the Court believes that the chapter 7 trustee is in fact seeking

3   the truth about the debtor's assets, and that the Motion for Stay is an attempt by the

4   debtor, and ultimately by the Rechnitzs, to obstruct the trustee in the exercise of his

5   statutory duties. Those duties include, but are not limited to, marshalling the property of

6   the estate and obtaining any recorded information relating to property of the estate, which

7   he has already begun to do in the exercise of his authority as trustee in this case. Such a

8   conflict of interest, and efforts to obstruct the trustee's exercise of his statutory duties,

9
10  merits denial of the Motion for Stay.

11
12        C.    Debtor's Bad Faith Alllegations in Motion for Stay

13        Additional reasons for denying the requested stay exist in this case, which are not

14  limited to the debtor's lack of standing, its counsel's conflict of interest, and its

15  obstructionist conduct. For example, the debtor repeatedly asserts that the petitioning

16  creditors filed the involuntary petition in bad faith and, in repeatedly doing so, impugns

17
18  the petitioning creditors' legitimacy. The Court has made no such finding of bad faith in

19  this case, and the debtor's assertions to the contrary are not supported by the record.

20        On the other hand, the record clearly reflects that the petitioning creditors are owed
21
22  millions of dollars, and that they have every right to expect that the trustee will be able to

23  perform his duties to determine what happened to the debtor's assets and records in order

24  for their claims to be paid in this chapter 7 case. The debtor's continued bad faith

25  allegations lack merit, given the absence of any such finding by this Court.

26
        D.    Debtor's Lack of Admissible Evidence to Support Motion for Stay
27
28        The debtor also claims that it will be "irreparably" harmed if a stay is not

EXHIBIT "25", PAGE 556

immediately imposed. The debtor offers much rhetorical argument but no admissible

evidence to support such a claim. By way of example, it offers no admissible evidence

that it is still operating or that it is paying any of its debts, disputed or undisputed, or even

in what way it is being or may be harmed.

The Motion for Stay also describes at length the facts surrounding a pending

criminal investigation of the debtor's principals and the fact that they have allegedly

claimed their Fifth Amendment privilege against self-incrimination in that investigation as

well as in in this case, as discussed below. Under such circumstances, it is highly unlikely

that persons or entities employed in the jewelry business, or potential customers, are

continuing to do doing business with the debtor at this point. The debtor's failure to provide

supporting admissible evidence of harm similarly merits denial of the Motion for Stay.

E.    The Rechnitzs' Invocation of the Fifth Amendment Privilege

It is well-established that only individuals have a Fifth Amendment privilege against

self-incrimination. It is also well-settled that an individual cannot rely on the privilege to

avoid producing the records of an entity such as the debtor, which are in the individual's

possession in a representative capacity, even if the records might incriminate the

individual personally.  Bellis v. United States, 417 U.S. 85 (1974); Butcher v. Bailey, 753

F.2d 465, 469 (6th Cir. 1984), cert. denied, 473 U.S. 925, 106 S. Ct. 17, 87 L.Ed. 2d 696

(1985).

Nevertheless, the Motion for Stay relies on the alleged claim of the Fifth

Amendment privilege by the debtor's principals to justify the debtor's failure to provide the

complete list of its creditors, in violation of this Court's June 10, 2020 Order.  As noted

above, the "Statement Re Creditors List" filed by the debtor on June 23, 2020 states:

EXHIBIT "25", PAGE 557

Jadelle Jewelry and Diamonds, LLC, the debtor (the 'Debtor') is unable to prepare and file the list required by Federal Rule of Bankruptcy Procedure 1007(a)(2) because the individual who has access to the information to prepare, and who would prepare, sign and verify, such list has been advised by counsel to decline to answer based on the Fifth Amendment privilege against self-incrimination. The Debtor has, via counsel, advised counsel for Sam Leslie, the chapter 7 trustee, that it would be filing this statement.

Statement Re Creditors List [docket no. 72].

The filing of this Statement is a continuation of the debtor's pattern of stonewalling in order to resist any and all efforts to provide vital information regarding its creditors. In its continued efforts to obscure the facts, the debtor relies on an alleged unidentified individual's claim of the privilege. The debtor has claimed throughout its pleadings in this case that the Rechnitzs have and will continue to exercise their individual Fifth Amendment privilege. However, no such blanket privilege is permissible. The Rechnitzs must appear for questioning, when properly ordered by this Court to do so, and assert their claims of privilege to each question, if they believe doing so to be necessary. It will then be this Court's role to rule on any such privilege claim.

III.   CONCLUSION

The trustee and the creditors of this case do not have the luxury to wait for the criminal proceedings against the Rechnitzs to conclude while the debtor files an appeal of this Court's orders. Time is not on the side of the trustee or the debtor's creditors. The record is clear that the petitioning creditors have millions of dollars of legitimate claims; given the debtor's failure to disclose its information regarding all of its creditors, the total amount of the petitioning creditors' claims may in fact be much larger.

It is crucial for the trustee complete to his efforts to determine the existence, nature,

-8-

EXHIBIT "25", PAGE 558

1  amount and current location of the debtor's assets so that he may marshal them and, if

2  necessary, institute litigation to recover them. It appears that the assets may have been

3  dissipated by the Rechnitzs and that there may be millions of dollars in missing jewelry,

4  which the Court considers to be in dire need of investigation by the chapter 7 trustee. The

5  trustee has the right to question the Rechnitzs, who are non-debtors, about all aspects of

6  the debtor's business.

7        Additionally, it will be up to the Court to decide whether or not the Rechnitzs' claims

8  of their individual Fifth Amendment privilege against self-incrimination are valid privilege

9  claims. Even assuming, *arguendo*, that the Court finds the claims are valid, the trustee

10 nevertheless has the right to turnover of the debtor's records, to which there can be no

11 valid Fifth Amendment claim. It is imperative that the trustee continue his efforts on behalf

12 of the estate to determine what has happened to the debtor's assets.

13       Accordingly, no good cause having been shown, the Motion for Stay will be denied.

14 The Court will contemporaneously enter a separate order denying the Motion.

15       **IT IS SO ORDERED**.

16

17

18

19

20

21

22

23

24

25    Date: June 30, 2020

26                                          Barry Russell
                                            United States Bankruptcy Judge
27

28

-9-

# EXHIBIT "26"

**CLOSED, HistCase**

**U.S. Bankruptcy Court**
**Central District of California (Los Angeles)**
**Bankruptcy Petition #: 2:00-bk-38197-VZ**

|  |  |
|---|---|
| | *Date filed:* 10/06/2000 |
| *Assigned to:* Vincent P. Zurzolo | *Date terminated:* 05/01/2019 |
| Chapter 7 | *Deadline for filing claims:* 08/05/2002 |
| Involuntary | *Deadline for filing claims (govt.):* 04/03/2001 |
| Asset | |


*Debtor disposition:*  Discharge Not Applicable


| | |
|---|---|
| ***Debtor*** | represented by **Evan C Borges** |
| **Focus Media Inc** | Greenberg Gross LLP |
| 2401 Colorado Avenue | 650 Town Center Drive, Suite 1700 |
| Santa Monica, CA 90404 | Costa Mesa, CA 92626 |
| LOS ANGELES-CA | 949-383-2800 |
| Tax ID / EIN: 95-3835767 | Fax : 949-383-2801 |
| | Email: eborges@ggtriallaw.com |
| | |
| | **Matthew Grimshaw** |
| | Blakeley & Blakeley LLP |
| | 2 Park Plaza Ste 400 |
| | Irvine, CA 92614 |
| | 949-260-0618 |
| | Fax : 949-260-0613 |
| | Email: mgrimshaw@marshackhays.com |
| | *TERMINATED: 07/22/2010* |
| | |
| | **Geoffrey C Mousseau** |
| | 1421 Valverde Pl Ste B |
| | Glendale, CA 91208 |
| | 818-248-0393 |
| | |
| ***Trustee*** | represented by **Peter C Anderson** |
| **John P Pringle (TR)** | 6055 E. Washington Blvd. Suite 608 |
| Roquemore, Pringle & Moore, Inc. | Los Angeles, CA |
| 6055 East Washington Blvd., Suite 500 | *TERMINATED: 06/06/2006* |
| Los Angeles, CA 90040 | |
| (323) 724-3117 | **Wesley H Avery** |
| | Law Offices of Wesley H. Avery, APC |
| | 758 E. Colorado Avenue # 210 |
| | Pasadena, CA 91101 |
| | 626-395-7576 |

EXHIBIT "26", PAGE 560

Fax : 661-430-5467
Email: wes@averytrustee.com

**Lynda T Bui**
Shulman Bastian Friedman & Bui LLP
100 Spectrum Ctr Dr Ste 600
Irvine, CA 92618
949-340-3400
Email: lbui@shulmanbastian.com

**Toan B Chung**
Roquemore Pringle & Moore
6055 E Washington Blvd Ste 500
Los Angeles, CA 90040
323-724-3117
Fax : 323-724-5410
Email: tbchung@rpmlaw.com

**Leonard M Shulman**
Shulman Bastian Friedman & Bui LLP
100 Spectrum Ctr Dr Ste 600
Irvine, CA 92618
949-340-3400
Fax : 949-340-3000
Email: lshulman@shulmanbastian.com

**Howard Steinberg**
1800 Ave Of The Stars Ste 900
Los Angeles, CA 90067-4276
310-284-7467
Fax : 310-556-5391
Email: hsteinberg@irell.com

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

represented by **David A Ortiz**
Office of the United States Trustee
402 W Broadway Ste 600
San Diego, CA 92101
619-557-5013
Fax : 619-557-5339
Email: david.a.ortiz@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 05/01/2019 | 1757 | Bankruptcy Case Closed - CHAPTER 7 ASSET. Pursuant to the Trustee's Final Account and Distribution Report Certification that the Estate has been Fully Administered and Application to be Discharged, it is ordered that the above case be |

EXHIBIT "26", PAGE 561

| | | |
|---|---|---|
| | | Number: 820 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/16/2001) |
| 11/15/2001 | [874](#) (78 pgs) | Designation of record on appeal by appellant Geoffrey C. Mousseau RE: Item# 848 [BP] Original NIBS Entry Number: 819 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/16/2001) |
| 11/15/2001 | [871](#) (1 pg) | Transcript filed for hearing on 10-2-01 RE: Item# 765 [NV] Original NIBS Entry Number: 816 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/15/2001) |
| 11/15/2001 | [870](#) (1 pg) | Transcript filed for hearing on 9-26-01 RE: Item# 795 [NV] Original NIBS Entry Number: 815 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/15/2001) |
| 11/15/2001 | [869](#) (1 pg) | Transcript filed for hearing on 9-19-01 [could not find docket to relate] [NV] Original NIBS Entry Number: 814 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/15/2001) |
| 11/15/2001 | [868](#) (1 pg) | Transcript filed for hearing on 9-18-01 RE: Item# 704 [NV] Original NIBS Entry Number: 813 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/15/2001) |
| 11/14/2001 | [886](#) (1 pg) | Appeal transferred notice from BAP to USDC on 11-14-01 BAP No. CC-01-1550 RE: Item# 848 [BP] Original NIBS Entry Number: 831 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/26/2001) |
| 11/14/2001 | [873](#) (5 pgs) | Notice of appeal [Duplicate of 11-1-01 appeal]; filed by Geoffrey C. Mousseau, appellant; Receipt No. LA-045276 $105.00 RE: Item# 831[Disposed] [BP] Original NIBS Entry Number: 818 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/15/2001) |
| 11/14/2001 | [872](#) (7 pgs) | Statement section 329 [revised] by Mousseau & Associates under protest pursuant to Court compensation; declaration of Geoffrey C. Mousseau, Esq. RE: Item# 769 [BP] Original NIBS Entry Number: 817 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 11/15/2001) |

EXHIBIT "26", PAGE 562

|            |                        | on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 10/23/2001) |
|------------|------------------------|-------------------------------------------------------------------|
| 10/22/2001 | 832<br>(2 pgs)         | Notice of 341a meeting [requested from BNC] hearing on 11/20/2001 at 10:00 a.m. at 221 N. Figueroa St., Ste. 105, Los Angeles, CA 90012 RE: Item# 831[Rescheduled] [SKF] Original NIBS Entry Number: 777 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 10/22/2001) |
| 10/22/2001 | 831<br>(8 pgs; 2 docs) | ORDER for relief and order to file schedules, statements and list[s] [requested from BNC] with notice of entry RE: Item# 130 [SKF] Original NIBS Entry Number: 776 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 10/22/2001) |
| 10/18/2001 | 829<br>(5 pgs)         | ORDER re: respondent's motion to compel compliance with trial subpoenas, with notice of entry RE: Item# 827 [SKF] Original NIBS Entry Number: 774 (Entered: 10/18/2001) |
| 10/17/2001 | 830<br>(4 pgs)         | Proof of service of 1] subpoena in case under the Bankruptcy Code on Walter Liss with the $150 fee; 2] Subpoena in a case under the Bankruptcy Code on Robert Iger with the $150 fee; 3. Subpoena in a case under the Bankruptcy code on Tanya L. Menton with the $150 fee, fil ed by Joey Fernandez [SKF] Original NIBS Entry Number: 775 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 10/18/2001) |
| 10/17/2001 | 828<br>(63 pgs)        | Opposition to Focus Media, Inc.,s emergency motion re: subpoenas of Focus Media Inc. to Robert Iger, Walter Liss and Tanya L. Menton; declaration of Bruce A. Wessel; filed by Bruce A. Wessel, attorney for petitioniong creditors, with proof of service RE: Item# 827 [SKF] Original NIBS Entry Number: 773 Additional attachment(s) added on 2/12/2015 (Banderas (Barrera), Cynthia). (Entered: 10/18/2001) |
| 10/17/2001 | 827<br>(6 pgs)         | Emergency motion re: Compelling witnesses to appear and produce documents at trial; declaration of Maurice Wainer; filed by Maurice Wainer, attorney for Focus Media, with proof of service |

EXHIBIT "26", PAGE 563

| | | |
|---|---|---|
| | | Statement [alleged] by debtor of non-opposition to Sears, Roebuck and Co.'s motion for relief from the automatic stay; and opposition to motion for appointment of an interim trustee and accompanying exhibits; [being filed separately] and proof of service filed by attorneys for Focus Media Inc., Alleged Chapter 7 Debtor RE: Item# 17 [GDG] Original NIBS Entry Number: 17 Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/31/2000) |
| 10/27/2000 | 23 | Supplemental declaration of Mitchell J. Langberg in support of motion for relief from the automatic stay and motion for appointment of interim trustee and proof of service filed by attorneys for plaintiff, Sears, Roebuck and Co. RE: Item# 17 [GDG] Original NIBS Entr y Number: 16 Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/31/2000) |
| 10/27/2000 | 22 | Opposition of petitioning creditors to emergency motion of Sears, Roebuck & Company for relief from automatic stay and proof of service filed by attorneys for petitioning creditors national Broadcasting Company Inc., American Broadcasting Company Inc. and Paxon Com munications Inc. RE: Item# 17 [GDG] Original NIBS Entry Number: 15 Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/31/2000) |
| 10/27/2000 | 20 | Declaration of Jeffrey K. Compton; With proof of service [DEO] Original NIBS Entry Number: 13 Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/30/2000) |
| 10/27/2000 | 19 | ORDER granting relief from stay re action in non-bankruptcy forum; With notice of entry RE: Item# 17 [BB] Original NIBS Entry Number: 12 (Entered: 10/27/2000) |
| 10/27/2000 | 18 | ORDER granting/approving motion for appointment of interim trustee; With proof of service With notice of entry RE: Item# 10 [BB] Original NIBS Entry Number: 11 (Entered: 10/27/2000) |
| 10/26/2000 | 17 | Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: Los Angeles Superior Court, West District SC 060780 Sears, Roebuck & Company vs Focus Media Inc. BY: Mitchell J. Langberg 310 556-5800 FOR: Sears, Roebuck & Company; With proof of serivce; With declarations hearing on 10/27/2000 at 4:00 p.m. at 2 55 |

EXHIBIT "26", PAGE 564

|  |  |  |
|---|---|---|
|  |  | E. Temple St., Courtroom 1468, Los Angeles, CA 90012 RE: Item# 13[Disposed] [BB] Original NIBS Entry Number: 10 Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/27/2000) |
| 10/26/2000 | 16 | Declaration of David Isenberg RE: Item# 13 [BB] Original NIBS Entry Number: 9C (Entered: 10/27/2000) |
| 10/26/2000 | 15 | Declaration of Mitchell J. Langberg RE: Item# 13 [BB] Original NIBS Entry Number: 9B (Entered: 10/27/2000) |
| 10/26/2000 | 14 | Memorandum of points and authorities RE: Item# 13 [BB] Original NIBS Entry Number: 9A (Entered: 10/27/2000) |
| 10/26/2000 | 13 | Ex parte application ning time on motion for relief from automatic stay filed by Mitchell J. Langberg attorney for movant Sears, Roebuck and Company; With proof of service hearing on 10/27/2000 at 4:00 p.m. at 255 E. Temple St., Courtroom 1468, Los Angeles, CA 90012 RE: It em# 10 [Disposed] Original NIBS Entry Number: 9 [DISPOSED] see Order Docket Item #7 Granting exparte application and hearing for 10-27-00 at 4:00 p.m. in Courtroom 1468 RE: Item# 10 [BB] Original NIBS Entry Number: 9 [DISPOSED] [SKF] Original NIBS Entry Number: 9 Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/27/2000) |
| 10/26/2000 | 12 | Declaration filed by Mitchell J. Langberg RE: Item# 10 [BB] Original NIBS Entry Number: 8B (Entered: 10/27/2000) |
| 10/26/2000 | 11 | Memorandum of points and authorities RE: Item# 10 [BB] Original NIBS Entry Number: 8A (Entered: 10/27/2000) |
| 10/26/2000 | 10 | Motion by movant Sears, Roebuck and Company for appointment of an interim trustee under 11 U.S.C. 303[g]; Filed by Mitchell J. Langberg attorney for movant; With proof of service hearing on 10/27/2000 at 4:00 p.m. at 255 E. Temple St., Courtroom 1468, Los Ang eles, CA 90012 RE: Item# 9[Disposed] [BB] Original NIBS Entry Number: 8 Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/27/2000) |
| 10/26/2000 | 9 | ORDER shortening time GRANTED; Hearing 10-27-00 at 4:00 p.m. in Courtroom 1468, 255 E. Temple Street, Los Angeles, CA 90012 RE: Item# 6 [BB] Original NIBS Entry Number: 7 (Entered: 10/27/2000) |

| 10/26/2000 | 8 | Declaration of Mitchell J. Langberg RE: Item# 6 [BB] Original NIBS Entry Number: 6B (Entered: 10/27/2000) |
| 10/26/2000 | 7 | Memorandum of points and authorities RE: Item# 6 [BB] Original NIBS Entry Number: 6A (Entered: 10/27/2000) |
| 10/26/2000 | 6 | Ex parte application for order shortening time on motion for appointment of an interim trustee; Filed by Mitchell J. Langberg attorney for movant Sears, Roebuck and Company; With proof of service hearing on 10/27/2000 at 4:00 p.m. at 255 E. Temple St., Courtroom 1468, Los Angeles, CA 90012 [Disposed] [BB] Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/27/2000) |
| 10/25/2000 | 5 | Proof of service filed by attorneys for petitioner [GDG] Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/26/2000) |
| 10/18/2000 | 4 | Request for special notice filed by Mitchell J. Langberg,Attorneys for Sears,Roebuck & Company;with proof of service. [NDI] (Entered: 10/19/2000) |
| 10/17/2000 | 3 | Summons service executed RE: Item# 2 [DEO] Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/18/2000) |
| 10/10/2000 | 2 | Involuntary summons issued - Sheri Bluebond RE: Item# 1 [GDG] Additional attachment(s) added on 2/5/2015 (Banderas (Barrera), Cynthia). (Entered: 10/10/2000) |
| 10/06/2000 | 1 (3 pgs) | Involuntary petition [ASI] (Entered: 10/10/2000) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 07/08/2020 10:26:21 | | |
| **PACER Login:** | LLWEPacer:4347578:4330007 | **Client Code:** | JAD01-0001 |
| **Description:** | Docket Report | **Search Criteria:** | 2:00-bk-38197-VZ Fil or Ent: filed From: 4/9/1999 To: 7/8/2020 Doc |

EXHIBIT "26", PAGE 566

| | | | From: 0 Doc<br>To: 99999999<br>Term: included<br>Format: html<br>Page counts for<br>documents:<br>included |
|---|---|---|---|
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

EXHIBIT "26", PAGE 567

EXHIBIT "27"

FILED
OCT 2 2 2001

1
2 # UNITED STATES BANKRUPTCY COURT
3 ## CENTRAL DISTRICT OF CALIFORNIA

ENTERED
OCT 2 2 2001
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

4 | In re: | Bankruptcy Case No. LA00-38197KM |

5 FOCUS MEDIA | Chapter 7

6 Tax I.D. : 95-3835767 | **ORDER OF RELIEF AND ORDER**

7 **TO FILE SCHEDULES AND STATEMENT OF AFFAIRS**

8 On consideration of the petition filed on ___ October 6, 2000 ___

9 against the above-named debtor(s), an Order of Relief under Chapter __7__

10 of Title 11 of the United States Code is **GRANTED**, after trial of involuntary held on October 18,

11 19 an 20, 2001.  Trial was completed on October 20, 2001. After oral argument by both sides the

12 court ruled from the bench and made its Findings of Fact and Conclusions of Law orally on the

13 record as allowed by F.R.B.P. Rule 7052.

14      **IT IS FURTHER ORDERED** that the above-named debtor(s) shall prepare, make

15 oath to, and file in this Court, within fifteen (15) days from the date hereof a *schedule of

16 his property, showing the amount and kind of property, the location thereof and its money

17 value in detail; and a list of all of its creditors showing their residences or place of business

18 if known, or if unknown that fact to be stated, the amount due to or claimed by each of

19 them, the consideration thereof, the date each debt was incurred and the security held by

20 them, if any; also a *statement of its affairs.

21
22
23 DATED:

24 Oct. 22, 2001          KATHLEEN P. MARCH - U.S. BANKRUPTCY JUDGE

25
26 * In Chapter 7 cases, file an original plus three (3) copies.

27
28          ORDER OF RELIEF AND ORDER TO FILE SCHEDULES
AND STATEMENT OF AFFAIRS

EXHIBIT "27", PAGE 568

| In re (SHORT TITLE) | CHAPTER _7_ CASE NUMBER: |
|---|---|
| FOCUS MEDIA Debtor | LA00-38197KM |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES ON THE ATTACHED SERVICE LIST:

1.     You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(v), that a judgment or order entitled *(specify)*:

**ORDER OF RELIEF AND ORDER TO FILE SCHEDULES AND STATEMENT OF AFFAIRS**

was entered on *(specify date)*:     **OCT 2 2 2001**

2.     I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*:

**OCT 2 2 2001**

DATED:     **OCT 2 2 2001**

JON D. CERETTO

Clerk of the Bankruptcy Court

By: _____

Deputy Clerk

-2-

EXHIBIT "27", PAGE 569

**SERVICE LIST**

1

2

3  OFFICE OF THE UNITED STATES TRUSTEE
221 NORTH FIGUEROA STREET
SUITE 800

4  LOS ANGELES, CA 90012

5

6  IRV GROSS
ROBINSON, DIAMANT & WOLKOWITZ
1888 CENTURY PARK EAST, SUITE 1500

7  LOS ANGELES, CA 90067

8  HOWARD STEINBERG
IRELL & MANELLA LLP

9  1800 AVENUE OF THE STARS SUITE 900
LOS ANGELES, CA 90067

10
ELIOT G. DISNER

11  ERVIN COHEN & JESSUP LLP
9401 WILSHIRE BLVD. SUITE 900

12  LOS ANGELES, CA 90212-2928

13  PETER ANDERSON
ROQUEMORE, PRINGLE, MOORE

14  6055 EAST WASHINGTON BLVD.,
SUITE 608

15  LOS ANGELES, CA 90040

16  JOHN PRINGLE
ROQUEMORE, PRINGLE AND MOORE

17  6055 EAST WASHINGTON BLVD.
SUITE608

18  LOS ANGELES, CA 90040

19  GEOFFREY MOUSSEAU
MOUSSEAU & ASSOCIATES

20  3435 WILSHIRE BOULEVARD
SUITE 2700

21  LOS ANGELES, CA 90010

22  CATHERINE PETRELLO
V.P. CASH MANAGEMENT

23  NBC, INC
30 ROCKEFELLER PL.

24  NEW YORK, NY 10012

25  TANYA L. MENTON
SENIOR COUNSEL

26  ABC INC.
77 WEST 66TH STREET

27  15TH FLOOR
NEW YORK, NY 10023

28

```
 1  ALLEN B. GRODSKY
    C/O BROWN & WOODS
 2  450 ROXBURY DRIVE
    7TH FLOOR
 3  BEVERLY HILLS, CA 90210

 4  IAN WAINER
    SNIPPER, WAINER & MARKOFF
 5  2029 CENTURY PARK EAST
    #1690
 6  LOS ANGELES, CA 90067

 7  MITCHELL LANGBERG
    STROOK & STROOK & LAVAN, LLP
 8  2029 CENTURY PARK EAST
    SUITE 1800
 9  LOS ANGELES, CA 90067-3086

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

TOTAL P.05

EXHIBIT "27", PAGE 571

## United States Bankruptcy Court
## Central District of California
255 East Temple Street, Los Angeles, CA 90012

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
FOCUS MEDIA INC
SSN: N/A
EIN: 95-3835767
2401 COLORADO AVENUE
SANTA MONICA, CA 90404

**BANKRUPTCY NO.** LA00-38197-KM

**CHAPTER 7**

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above-named debtor on October 6, 2000, and no pleading or other defense to the petition having been filed within 20 days after service of the summons (or within any longer period of time prescribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is also ordered to file schedules, statement and list(s) referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) within 15 days after entry of this Order For Relief.

For The Court,

**JON D. CERETTO**
Clerk of Court

Dated: October 22, 2001

(Form rev: 9/98) VAN-93    **776 /SKF**

000045

EXHIBIT "27", PAGE 572

**BAE SYSTEMS**

11400 Commerce Park Drive
Suite 600
Reston, Virginia 22091-1506

# CERTIFICATE OF SERVICE

District/off: 0973-2          User: SKF                Page 1 of 1              Date Rcvd: Oct 23, 2001
Case: 00-38197-KM            Form ID: VAN-93           Total Served: 25

The following entities were served by first class mail on Oct 25, 2001.
| | |
|---|---|
| D | FOCUS MEDIA INC., 2401 COLORADO AVENUE, SANTA MONICA, CA 90404 |
| DA | +JULIE MC COY AKINS, STRADLING YOCCA CARLSON & RAUTH, 660 NEWPORT CENTER DRIVE, STE 1600, NEWPORT BEACH, CA 92660-6458 |
| T | JOHN P PRINGLE, 6055 EAST WASHINGTON BLVD., #608, LOS ANGELES, CA 90040 |
| T | UNITED STATES TRUSTEE, 221 N. FIGUEROA ST., #800, LOS ANGELES, CA 90012 |
| 2 | +LOS ANGELES CITY CLERK, CITY HALL ROOM 101, LOS ANGELES, CA 90012 |
| 3 | +EMPLOYMENT DEVELOPMENT DEPARTMENT, PO BOX 826880-BK GROUP,MIC92E, SACRAMENTO, CA 94208 |
| 4 | INTERNAL REVENUE SERVICE, 300 N LOS ANGELES ST, STOP 5022, LOS ANGELES, CA 90012 |
| 5 | MITCHELL LANGBERG, STROOK & STROOK & LAVAN LLP, 2029 CENTURY PARK EAST,STE.1800, LOS ANGELES, CA 90067-3086 |
| 6 | +NATIONAL BROADCASTING COMPANY INC, C/O SHERI BLUEBOND, 333 S.HOPE STREET, SUITE 3300, LOS ANGELES, CA 90071-1406 |
| 7 | +AMERICAN BROADCASTING COMPANY INC, C/O SHERI BLUEBOND, 333 S.HOPE STREET, SUITE 3300, LOS ANGELES, CA 90071-1406 |
| 8 | +PAXSON COMMUNICATIONS INC, C/O SHERI BLUEBOND, 333 S.HOPE STREET, SUITE 3300, LOS ANGELES, CA 90071-3301 |
| 9 | +TST COLORADO AVENUE LP, GEORGE T MCDONNELL/KUSHAL S BHAKTA, 515 S FIGUEROA STREET 7TH FLOOR, LOS ANGELES, CA 90040-2427 |
| 11 | ROQUEMORE PRINGLE & MOOE INC., 6055 EAST WASHINGTON BLVD., STE. 608, LOS ANGELES, CA 90040-2466 |
| 12 | JAN NEIMAN, 13551 RYE STREET, #1, SHERMAN OAKS, CA 91423 |
| 13 | +VAN HORN & RINELLA AUCTION GROUP, C/O ROQUEMORE PRINGLE & MOORE, 6055 EAST WASHINGTON BLVD, STE 608, LOS ANGELES, CA 90040-2427 |
| 14 | NIELSON & ELLGREN, 2029 CENTURY PARK EAST, STE. 900, LOS ANGELES, CA 90067 |
| 15 | WALD REALTY ADVISORS, INC., 1990 S BUNDY DR., STE. 500, LOS ANGELES, CA 90025 |
| 16 | WKCY RADIO A MID ATLANTIC NETWORK, 207 UNIVERSITY BLVD., HARRISONBURG, VA 22801 |
| 18 | SBS OF GREATER NEW YORK, A PROFESSIONAL CORPORATION, 2323 W. LINCOLN AVE STE. 127, ANAHEIM, CA 92801 |
| 19 | MOUSSRAU & ASSOCIATES, 3435 WILSHIRE BLVD. STE.2700, LOS ANGELES, CA 90010 |
| 20 | PAUL J. LAURIN, ESQ., WEINER & LAURIN, LLP., 16311 VENTURA BLVD., STE 1200, ENCINO, CA 91436-2152 |
| 21 | WAYNE M. SMITH, WARNER BROS., 4000WARNER BLVD BLDG 156 RM 5158, BURBANLK, CA 91522 |
| 22 | +DENNIS H LONG ICE MILLER, ONE AMERICAN SQUARE, BOX 82001, INDIANAPOLIS, IN 46282-0020 |
| 23 | PETER CRAIG, C/O BAY SHERMAN CRAIG & GOLDSTEIN, 11845 WEST OLYMPIC BLVD, STE 845, LOS ANGELES, CA 90064 |
| 24 | ZELLE, HOFFMAN, VOELBEL, MASON, 500 SANSOME STREE, STE. 400, SAN FRANCISCO, CA 94111 |

The following entities were served by electronic transmission.
NONE.                                                                            TOTAL: 0

| | | |
|---|---|---|
| | ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) ***** | |
| 17* | WALD REALTY ADVISORS INC, 1990 S BUNDY DR., STE. 500, LOS ANGELES, CA 90025 | TOTALS: 0, * 1 |

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

Date: Oct 25, 2001                    Signature:    *Joseph Speetjens*

000045

EXHIBIT "27", PAGE 573

# United States Bankruptcy Court
## Central District of California

255 East Temple Street, Los Angeles, CA 90012

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
FOCUS MEDIA INC
**SSN:** N/A
**EIN:** 95-3835767
2401 COLORADO AVENUE
SANTA MONICA, CA 90404

**BANKRUPTCY NO.** LA00-38197-KM

**CHAPTER** 7

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above-named debtor on October 6, 2000, and no pleading or other defense to the petition having been filed within 20 days after service of the summons (or within any longer period of time prescribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is also ordered to file schedules, statement and list(s) referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) within 15 days after entry of this Order For Relief.

For The Court,

**JON D. CERETTO**
Clerk of Court

Dated: October 22, 2001

(Form rev: 9/98) VAN-93   776 /SKF

000045

EXHIBIT "27", PAGE 574

**BAE SYSTEMS**

11400 Commerce Park Drive
Suite 600
Reston, Virginia 22091-1506

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| District/off: 0973-2 | User: SKF | Page 1 of 1 | Date Rcvd: Oct 23, 2001 |
| Case: 00-38197-KM | Form ID: VAN-93 | Total Served: 25 | |

The following entities were served by first class mail on Oct 25, 2001.
```
D      FOCUS MEDIA INC,   2401 COLORADO AVENUE,   SANTA MONICA, CA 90404
DA    +JULIE MC COY AKINS,   STRADLING YOCCA CARLSON & RAUTH,   660 NEWPORT CENTER DRIVE, STE 1600,
       NEWPORT BEACH, CA 92660-6458
T      JOHN P PRINGLE,   6055 EAST WASHINGTON BLVD., #608,   LOS ANGELES, CA 90040
1      UNITED STATES TRUSTEE,   221 N. FIGUEROA ST., #800,   LOS ANGELES, CA 90012
2     +LOS ANGELES CITY CLERK,   CITY HALL ROOM 101,   LOS ANGELES, CA 90012
3     +EMPLOYMENT DEVELOPMENT DEPARTMENT,   PO BOX 826880-BK GROUP,MIC92E,   SACRAMENTO, CA 94208
4      INTERNAL REVENUE SERVICE,   300 N LOS ANGELES ST, STOP 5022,   LOS ANGELES, CA 90012
5      MITCHELL LANGBERG,   STROOK & STROOK & LAVAN LLP,   2029 CENTURY PARK EAST,STE.1800,
       LOS ANGELES, CA 90067-3086
6     +NATIONAL BROADCASTING COMPANY INC,   C/O SHERI BLUEBOND,   333 S.HOPE STREET, SUITE 3300,
       LOS ANGELES, CA 90071-1406
7     +AMERICAN BROADCASTING COMPANY INC,   C/O SHERI BLUEBOND,   333 S.HOPE STREET, SUITE 3300,
       LOS ANGELES, CA 90071-1406
8     +PAXSON COMMUNICATIONS INC,   C/O SHERI BLUEBOND,   333 S.HOPE STREET, SUITE 3300,
       LOS ANGELES, CA 90071-1406
9     +TST COLORADO AVENUE LP,   GEORGE T MCDONNELL/KUSHAL S BHAKTA,   515 S FIGUEROA STREET 7TH FLOOR,
       LOS ANGELES, CA 90071-3301
11     ROQUEMORE PRINGLE & MOOE INC.,   6055 EAST WASHINGTON BLVD., STE. 608,   LOS ANGELES, CA 90040-2466
12     JAN NEIMAN,   13551 RYE STREET, #1,   SHERMAN OAKS, CA 91423
13    +VAN HORN & RINELLA AUCTION GROUP,   C/O ROQUEMORE PRINGLE & MOORE,
       6055 EAST WASHINGTON BLVD, STE 608,   LOS ANGELES, CA 90040-2427
14     NIELSON & ELLGREN,   2029 CENTURY PARK EAST, STE. 900,   LOS ANGELES, CA 90067
15     WALD REALTY ADVISORS, INC.,   1990 S BUNDY DR., STE. 500,   LOS ANGELES, CA 90025
16     WKCY RADIO A MID ATLANTIC NETWORK,   207 UNIVERSITY BLVD.,   HARRISONBURG, VA 22801
18     SBS OF GREATER NEW YORK,   A PROFESSIONAL CORPORATION,   2323 W. LINCOLN AVE STE. 127,
       ANAHEIM, CA 92801
19     MOUSSEAU & ASSOCIATES,   3435 WILSHIRE BLVD. STE.2700,   LOS ANGELES, CA 90010
20     PAUL J. LAURIN, ESQ.,   WEINER & LAURIN, LLP,   16311 VENTURA BLVD., STE 1200,
       ENCINO, CA 91436-2152
21     WAYNE M. SMITH,   WARNER BROS,   4000WARNER BLVD BLDG 156 RM 5158,   BURBANLK, CA 91522
22    +DENNIS H LONG ICE MILLER,   ONE AMERICAN SQUARE, BOX 82001,   INDIANAPOLIS, IN 46282-0020
23     PETER CRAIG,   C/O BAY SHERMAN CRAIG & GOLDSTEIN,   11845 WEST OLYMPIC BLVD, STE 845,
       LOS ANGELES, CA 90064
24     ZELLE, HOFFMAN, VOELBEL, MASON,   500 SANSOME STREE, STE. 400,   SAN FRANCISCO, CA 94111
```

The following entities were served by electronic transmission.
```
NONE.                                                                        TOTAL: 0
```

```
          ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
17*    WALD REALTY ADVISORS INC,   1990 S BUNDY DR., STE. 500,   LOS ANGELES, CA 90025
                                                                        TOTALS: 0, * 1
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

Date: Oct 25, 2001          Signature: *Joseph Speetjens*

EXHIBIT "27", PAGE 575

# EXHIBIT "28"

1  Daniel A. Lev (CA Bar No. 129622)
     dlev@sulmeyerlaw.com
2  **Sulmeyer**Kupetz
   A Professional Corporation
3  333 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-1406
4  Telephone: 213.626.2311
   Facsimile: 213.629.4520
5
6  Attorneys for Petitioning Creditors

7  Ronald Richards (CA Bar No. 176246)
     ron@ronaldrichards.com
8  Law Offices of Ronald Richards & Associates, APC
   P.O. Box 11480
9  Beverly Hills, California 90213
   Telephone:  310.556.1001
10 Facsimile:  310.277.3325

11 Attorneys for Victor Franco Noval

12 Baruch C. Cohen (CA Bar No. 159455)
     baruchcohen@baruchcohenesq.com
13 Law Office of Baruch C. Cohen, APLC
   4929 Wilshire Boulevard, Suite 940
14 Los Angeles, California 90010
   Telephone:  323.937.4501
15 Facsimile: 888.316.6107

16 Attorneys for Peter Marco, LLC and First International Diamond, Inc.

17            **UNITED STATES BANKRUPTCY COURT**

18        **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

19 In re                                    Case No. 2:20-bk-13530-BR

20 JADELLE JEWELRY AND DIAMONDS,            Chapter 7
   LLC,
21                                          **PETITIONING CREDITORS'**
                                            **PRELIMINARY OPPOSITION TO**
22                                          **EMERGENCY MOTION PURSUANT TO**
                                            **FEDERAL RULE OF BANKRUPTCY**
23            Debtor.                       **PROCEDURE 8007 FOR STAY**
                                            **PENDING APPEAL; DECLARATION OF**
24                                          **RONALD RICHARDS IN SUPPORT**
                                            **THEREOF**
25
                                            DATE:      None Set
26                                          TIME:      None Set
                                            PLACE:     Courtroom "1668"
27

28

DAL 2703055v1

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

VICTOR FRANCO NOVAL; PETER
MARCO, LLC; and FIRST
INTERNATIONAL DIAMOND, INC.,

      Petitioning Creditors,

      vs.

JADELLE JEWELRY AND DIAMONDS,
LLC,

      Alleged Debtor.

        Petitioning creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International Diamond, Inc. ("First International" and together with Noval and Marco, the "Petitioning Creditors"), hereby submit their "Petitioning Creditors' Preliminary Opposition to Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; Declaration of Ronald Richards in Support Thereof" (the "Opposition"), in response to the "Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal" (the "Motion"), filed by the debtor Jadelle Jewelry and Diamonds, LLC (the "Debtor" or "Jadelle"), and represent as follows:[1]

**I.**

**PREFATORY STATEMENT**

        After suffering the consequences of its decision to intentionally violate a court order, the Debtor now seeks equity in the form of a stay pending appeal. Setting

---

[1] As is its custom, the Debtor waited until 5:06 p.m. on June 19, 2020, in other words, three days after entry of the Court's June 16, 2020, "Order Directing Clerk of Court to Immediately Enter An Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of This Order" (the "June 16 Order") [Docket No. 54], to file its alleged "emergency" Motion. As such, Petitioning Creditors again have been provided with insufficient time to address each of the inaccurate and misleading arguments littered throughout the Motion. Therefore, to the extent the Court does not simply deny the Motion, as it should, Petitioning Creditors must be afforded sufficient time to present a more detailed opposition to the Motion.

EXHIBIT "28", PAGE 577

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  aside the inarguable fact that the Debtor satisfies none of the four elements required to

2  obtain a stay, the Debtor cannot even meet the threshold requirement of standing to

3  prosecute an appeal since it acted without the express authorization of the newly

4  appointed chapter 7 trustee.  The Debtor's lack of standing alone reinforces why the

5  Debtor cannot show it is likely to succeed on its appeal, that it will suffer any real (let

6  alone irreparable) harm in the absence of a stay, that the estate and other creditors will

7  not suffer harm with a stay, and that the public interest will be served by a stay.  In short,

8  the Debtor's lack of standing renders the Motion utterly meaningless.[2]

9                                           **II.**

10      **THE INDISPUTABLE FACT THAT THE DEBTOR LACKS STANDING TO**

11      **PROSECUTE THE APPEAL MANDATES DISMISSAL OF THE MOTION**

12              On June 18, 2020, Sam Leslie (the "Trustee") was appointed chapter 7

13  trustee for the Debtor's estate.  In the few short days since he was appointed, the Trustee

14  has conducted a preliminary review of the case and requested that the Debtor produce a

15  series of documents which, to this date, the Debtor has refused to turn over.  One thing

16  the Trustee has not done, however, is authorize the Debtor's filing of the appeal of the

17  June 16 Order which occurred after his appointment.[3]  Under Supreme Court law, once

18  the Trustee was appointed, the Debtor's attorneys were divested of any authority to act

19  on the Debtor's behalf absent the express consent of the Trustee.  As a result, counsel

20  for the Debtor had no authority or power to file the appeal or the Motion on the Debtor's

21  behalf, as only the Trustee, not the Debtor's prior management (Jona and Rachel

22  Rechnitz), had the authority to direct them to act in this manner.

23

24  _____

25  [2] Petitioning Creditors understand that, unless the Debtor voluntarily dismisses the appeal (which will not happen), the issue of dismissal will need to be raised with the appropriate appellate court.  The Debtor's

26  lack of standing, however, certainly is relevant to whether the Court should issue a stay pending appeal.

27  [3] A true and correct copy of the June 19, 2020, email from the Trustee unequivocally stating that he did not authorize the Debtor's filing of the appeal is attached as Exhibit "A" to the declaration of Ronald Richards, affixed hereto.

28

EXHIBIT "28", PAGE 578

1    Specifically, although a debtor generally has standing to appeal an order for

2  relief in an involuntary bankruptcy, the issue as to whether a corporate debtor has the

3  authority to appeal through its ousted management where a trustee has been appointed,

4  and the trustee objects to the ousted management bringing an appeal on the debtor's,

5  behalf is well-settled law.  Although it will contend otherwise, the Debtor will be unable to

6  cite this Court to a single case which contradicts this rationale.  In other words, absent

7  the Trustee's express authorization, which was not obtained here, the Debtor's attorneys

8  lacked the requisite corporate authority to file the appeal of the June 16 Order on the

9  Debtor's behalf.  See C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.), 636 F.3d

10  1257 (10th Cir. 2011).

11    In C.W. Mining, for example, creditors commenced an involuntary chapter

12  11 proceeding against the debtor.  The case was converted to chapter 7, and a chapter 7

13  trustee was appointed without objection by the debtor.  The debtor's former managers

14  then appealed to the Bankruptcy Appellate Panel (the "BAP") on the debtor's behalf.  The

15  trustee moved to dismiss the appeal, contending that the former managers could not

16  bring an appeal on the debtor's behalf over the trustee's objection.  Initially, the BAP

17  concluded that the former managers could bring the appeal because a putative debtor

18  must have standing to bring a bankruptcy court's involuntary order for relief before an

19  appellate court.  The Tenth Circuit reversed, however.

20    According to the Tenth Circuit, although the debtor may have had standing

21  to appeal as a person aggrieved, the dispositive question was not whether the debtor had

22  standing to appeal, but whether the former managers had the authority to appeal on the

23  debtor's behalf.  Similar to Jadelle, because the debtor was a corporation, it could act

24  only through its authorized agents.  As the Tenth Circuit noted, once a trustee is

25  appointed over a corporate debtor, the trustee assumes control of the business, and the

26  debtor's directors are completely ousted.  In issuing its ruling, the Tenth Circuit was

27  following the Supreme Court's decision in Commodity Futures Trading Comm'n v.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "28", PAGE 579

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Weintraub, 471 U.S. 343, 352–53, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985).  As the

2   Court explained:

3         After [the debtor] entered into Chapter 7 bankruptcy and a

4         trustee was appointed, [the debtor's] former management's

5         only role was "to turn over the corporation's property to the

6         trustee and to provide certain information to the trustee and

7         to the creditors."  Weintraub, 471 U.S. at 352.  [The debtor's]

8         directors were otherwise "completely ousted."  Id. at 353.

9         The Bankruptcy Code makes no provision for former

10        management to appear in a Chapter 7 proceeding to assert

11        a separate interest on behalf of the Debtor.  See Log

12        Furniture, Inc., 180 F. App'x at 787.  Authority to make legal

13        decisions, like all other business decisions, passed to the

14        Trustee alone.

15  C.W. Mining, 636 F.3d at 1263.

16        The Court continued as follows:

17        When a corporation enters Chapter 7 bankruptcy and a

18        trustee is appointed, the corporation itself, as an intangible

19        legal creation, remains unchanged.  But it gets new

20        management, in the form of a trustee, Weintraub, 471 U.S.

21        at 353, and its legal purpose becomes vastly different.  The

22        Supreme Court "has long recognized that a chief purpose of

23        the bankruptcy laws is to secure a prompt and effectual

24        administration and settlement of the estate of all bankrupts

25        within a limited period."  Katchen v. Landy, 382 U.S. 323,

26        328, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966) (quotation

27        omitted).  The entire purpose of  involuntary bankruptcy is to

28        "protect the interests and desires of the creditors as a whole"

EXHIBIT "28", PAGE 580

1    <u>Basin Elec. Power Co-op. v. Midwest Processing Co.</u>, 47

2    B.R. 903, 908 (D.N.D. 1984).  Accordingly, bankruptcy law

3    drastically redefines and narrows the corporation's "interest"

4    - the major purpose for its continued existence is maximizing

5    the value of the estate for its creditors, not its shareholders.

6    Bankruptcy law abrogates other "interests" [the debtor] may

7    have formerly had.

8    To the extent the Managers argue they are vindicating [the

9    debtor's] interests, they are wrong.  Just the opposite is true:

10   the Managers' attempts to confound the Trustee's

11   administration of the estate hinder the only interest [the

12   debtor] now legally has, which is liquidating the business in

13   such a manner as to maximize the estate's value.

14   <u>C.W. Mining</u>, 636 F.3d at 1264-65.

15          The Tenth Circuit thus rightly concluded that, although other individuals

16   might have standing to appeal under the "person aggrieved rule," those individuals may

17   not usurp the corporation's right to appeal, which may be exercised by the trustee alone.

18   <u>Id.</u>, at 1263.  Absent authorization from the Trustee, the Debtor lacked the independent

19   right to file the appeal and the Motion, which eliminates any argument that the Debtor will

20   be successful on the merits of its appeal.  See also <u>S. Edge LLC v. JPMorgan Chase</u>

21   <u>Bank, N.A.</u>, 2011 U.S. Dist. LEXIS 49621 (D. Nev. 2011) (court granted chapter 11

22   trustee's motion to dismiss an appeal of an order granting chapter 11 relief brought by

23   involuntary debtor and its former managers where trustee had been appointed after order

24   was entered, and as a result, trustee was substituted for debtor in all pending litigation as

25   the real party in interest such that only trustee had authority to decide whether to

26   continue to pursue appeal on debtor's behalf); <u>Quest Ventures, Ltd. v. IPA Mgmt. IV,</u>

27   <u>LLC</u>, 2018 U.S. Dist. LEXIS 25225 (E.D.N.Y. 2018) (same); <u>Public-Sector Solutions, Inc.</u>

28   <u>v. HCG Software, LLC</u>, 2014 U.S. Dist. LEXIS 134446 (D. Md. 2014) (same).

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "28", PAGE 581

1   The Debtor will pin its hopes on several factually distinguishable decisions

2 and the additional fact that the Ninth Circuit has not formally adopted the C.W. Mining

3 ruling.  However, simply because the Ninth Circuit has not rendered a decision on this

4 uncontroversial rule of law does not diminish the soundness of the Tenth Circuit's

5 decision which is in line with prior Supreme Court precedent.  In fact, the court in S Edge

6 itself stated that although the Ninth Circuit has never squarely addressed the issue, "[t]he

7 Court concludes that if the Ninth Circuit did address the issue, it would follow the

8 reasoning in the Tenth Circuit's opinion in C.W. Mining."  S. Edge, 2011 U.S. Dist. LEXIS

9 49621, at *14-15.

10   The decisions which the Debtor will rely on are, as noted, insignificant.

11   For instance, the Ninth Circuit's decision in Security Bldg. & Loan Ass'n v.

12 Spurlock, 65 F.2d 768, 770 (9th Cir. 1933) is irrelevant, not just because it is nearly one

13 hundred years old, and pre-dates decades of amendments to the Bankruptcy Code and

14 Weintraub, but because the standing issue was not before the Court.  In Spurlock, the

15 Court was required to determine whether a state court receiver acted without authority to

16 appeal or to participate in a proceeding because he was not specially authorized so to do

17 by the state court which appointed him.  In other words, the issue confronting the Court

18 surrounded an entity's right to seek relief from actions of a state court receiver, which is

19 entirely irrelevant to the issue raised by this Opposition, namely, that once the Trustee

20 was appointed, the Debtor could only appeal the June 16 Order with the express

21 authorization of the Trustee, which was not provided.

22   Similarly, the decision in In re Focus Media, Inc., 378 F.3d 916, 922 (9th

23 Cir. 2004) is irrelevant, since there is nothing in this now overruled opinion that suggests

24 that the trustee ever raised the lack of corporate authority issue that is being raised here.

25 Hence, this decision has no bearing on the fundamental issue of standing being raised

26 here.  The BAP's decision in Kenny G Enters., LLC v. Casey (In re Kenny G Enters.,

27 LLC), 2014 Bankr. LEXIS 3529 (B.A.P. 9th Cir. 2014), is equally unavailing since, again,

28 the there was no standing challenge to an appeal of a conversion order.  In fact, current

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

EXHIBIT "28", PAGE 582

1   counsel for Noval actually represents the trustee in the Kenny G case and can speak to

2   the fact that standing was not an issue on appeal.

3          In fact, there were only three issues raised on appeal in the <u>Kenny G</u> case:

4   (i) did the bankruptcy court violate the debtor's due process rights when it *sua sponte*

5   converted the case to chapter 7 at the hearing on the final decree motion, (ii) did the

6   bankruptcy court abuse its discretion in converting the case to chapter 7, and (iii) did the

7   bankruptcy court abuse its discretion in denying reconsideration of the conversion order.

8   In sum, no part of the <u>Kenny G</u> decision has any bearing on the issues before this Court.

9          <u>In re Trusted Net Media Holdings, LLC</u>, 550 F.3d 1035, 1038 (11th Cir.

10  2008), another case that will be cited by the Debtor, is equally irrelevant since, again, it

11  has no discussion of the standing issue raised here.  In <u>Trusted Net Media</u>, a controlling

12  insider had litigation in the bankruptcy court and there is no indication the trustee

13  objected on lack of corporate authority grounds.  It was also decided years before the

14  current line of cases cited by Petitioning Creditors dismissing appeals by involuntary

15  debtor due to lack of corporate authority.  The decision In re <u>YBA Nineteen, LLC</u>, 505

16  B.R. 289, 304 (S.D. Cal. 2014) also should be ignored.  <u>YBA</u> involved the appeal of a

17  conversion order, not applicable to this case, and no one challenged the debtor's

18  attorney's authority to proceed.  The failure to raise the standing issue or the waiver of

19  that issue have nothing to do with the facts or issues presented here.

20         Ironically, the debtor in <u>YBA</u> objected to the trustee's brief on the basis that

21  the trustee did not have standing to oppose the debtor's appeal.  However, the court

22  overruled the debtor's objection as moot, finding that, even if the trustee did not have

23  standing, the court considered the trustee's brief as an *amicus curiae* filing, citing <u>In re</u>

24  <u>Heath</u>, 331 B.R. 424, 429–30 (B.A.P. 9th Cir. 2005) (considering trustee's brief as an

25  *amicus* brief "even if Trustee cannot appear as a party" due to lack of appellate standing).

26  The <u>YBA</u> court further stated that "[t]he Court makes no finding as to the Trustee's

27  standing on appeal."  YBA, 505 B.R. at 304.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "28", PAGE 583

III.

**CONCLUSION**

Since the Debtor acted without the express authorization of the Trustee, it lacks the standing to prosecute this appeal.  Although Petitioning Creditors (and the Trustee) understand that a formal motion to dismiss must be brought before the appellate court, this Court surely can consider the lack of standing as it mulls over whether the Debtor has carried its heavy burden of obtaining a stay pending appeal of the June 16 Order.  Since there is no doubt that the Debtor cannot prosecute this appeal, this Court cannot find that the Debtor is entitled to a stay and the Motion, therefore, must be denied.

DATED: June 22, 2020             **Sulmeyer**Kupetz
                                 A Professional Corporation


By: /s/ *Daniel A. Lev*                                       
    Daniel A. Lev
    Attorneys for Petitioning Creditors

DATED: June 22, 2020             Law Offices of Ronald Richards & Associates, APC


By: /s/ *Ronald Richards*                                     
    Ronald Richards
    Attorneys for Victor Franco Noval

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "28", PAGE 584

## DECLARATION OF RONALD RICHARDS

I, Ronald Richards, declare and state as follows:

1.    I am a member of the State Bar of California and am duly authorized to practice before this Court, and am the attorney principally responsible for the representation of petitioning creditor Victor Franco Noval ("Noval") in the above-captioned case.

2.    After receiving the Debtor's appeal of the June 16 Order and the Motion, I asked the Trustee if he authorized the Debtor's filings.  On June 20, 2020, I received an email from the Trustee expressly stating that he did not authorize either of the two filings.  A true and correct copy of the June 20, 2020, email from the Trustee is attached hereto as Exhibit "A" and incorporated herein by reference.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of June, 2020, at Los Angeles, California.


/s/ Ronald Richards
Ronald Richards

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "28", PAGE 585

# EXHIBIT A

**Ronald Richards**

---

| | |
|---|---|
| **From:** | Sam Leslie <sleslie@trusteeleslie.com> |
| **Sent:** | Saturday, June 20, 2020 11:57 AM |
| **To:** | cdye@cadye.com; Ronald Richards; Daniel Lev; bcc@baruchcohenesq.com; Timothy Kincaid; Marianna Falco |
| **Subject:** | Re: Bankruptcy Case: 20-13530 - Jadelle Jewelry and Diamonds, LLC LACK OF AUTHORIZATION CONFIRMATION |
| **Attachments:** | image001.jpg; ATT00001.htm; doc61appeal.pdf; ATT00002.htm |

Ron, accept this email that I did not authorize the appeal nor the motion for stay for the debtor
best
Sam

> **From:** Ronald Richards <ron@ronaldrichards.com>
> **Date:** June 20, 2020 at 7:00:41 AM PDT
> **To:** Sam Leslie <sleslie@trusteeleslie.com>, "bcc@baruchcohenesq.com" <bcc@baruchcohenesq.com>
> **Cc:** Carolyn Dye <cdye@cadye.com>, "Lev, Daniel A." <dlev@sulmeyerlaw.com>, Marianna Falco <MFalco@leaaccountancy.com>, Timothy Kincaid <TKincaid@leaaccountancy.com>
> **Subject: RE:  Bankruptcy Case: 20-13530 - Jadelle Jewelry and Diamonds, LLC LACK OF AUTHORIZATION CONFIRMATION**
>
> Dear Mr. Leslie,
>
> I am drafting a rule 9011 letter and other immediate relief.  Please confirm you did not authorize the attached appeal nor the motion for a stay for the Debtor, JADELLE JEWELRY AND DIAMONDS, LLC, in this matter.
>
> Sincerely,
>
> Ronald Richards, Esq.
> Law Offices of Ronald Richards & Associates, A.P.C.
> 310-556-1001 Office
> 310-277-3325 Fax
> www.ronaldrichards.com
>
> Mailing Address:
> P.O. Box 11480
> Beverly Hills, CA 90213
> ®

EXHIBIT "28", PAGE 587

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is
PO BOX 11480, BEVERLY HILLS, CA  90213

A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF RONALD RICHARDS,
PRELIMINARY OPPOSITION TO MOTION FOR STAY, will be served or was served **(a)** on the judge in chambers in the
form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
June 22, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com

Daniel A Lev dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Robert S Marticello Rmarticello@swelawfirm.com,

gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Ronald N Richards ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com

Neal Salisian ECF@salisianlee.com

Michael Simon msimon@swelawfirm.com,

lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building (waived per court order)
Bin outside of Courtroom 1660
255 E. Temple Street

---

DAL 2702848v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "28", PAGE 588

Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 22, 2020 | | /s/ Ronald Richards |
|---|---|---|
| Date | Printed Name | Signature |

DAL 2702848v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT "28", PAGE 589

# EXHIBIT "29"

1 | Daniel A. Lev (CA Bar No. 129622)
dlev@sulmeyerlaw.com
2 | **Sulmeyer**Kupetz
A Professional Corporation
3 | 333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
4 | Telephone: 213.626.2311
Facsimile: 213.629.4520
5 |
6 | Attorneys for Victor Franco Noval, Peter Marco, LLC, and First International Diamond, Inc.

7 | Ronald Richards (CA Bar No. 176246)
ron@ronaldrichards.com
8 | Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
9 | Beverly Hills, California 90213
Telephone:  310.556.1001
10 | Facsimile:  310.277.3325

11 | Attorneys for Victor Franco Noval

12 | Baruch C. Cohen (CA Bar No. 159455)
baruchcohen@baruchcohenesq.com
13 | Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
14 | Los Angeles, California 90010
Telephone:  323.937.4501
15 | Facsimile: 888.316.6107

16 | Attorneys for Peter Marco, LLC and First International Diamond, Inc.

17 | **UNITED STATES BANKRUPTCY COURT**

18 | **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

19 |
20 | In re | Case No. 2:20-bk-13530-BR
21 | JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7
22 | | **SUPPLEMENT TO CREDITORS' PRELIMINARY OPPOSITION TO EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL**
23 | Debtor. |
24 |
25 | | DATE:      None Set
26 | | TIME:      None Set
PLACE:   Courtroom "1668"
27 |
28 |

DAL 2703171v1

EXHIBIT "29", PAGE 590

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1        Creditors, Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and

2  First International Diamond, Inc. ("First International" and together with Noval and Marco,

3  the "Creditors"), hereby submit their "Supplement to Creditors' Preliminary Opposition to

4  Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay

5  Pending Appeal" (the "Supplement") in support of their "Petitioning Creditors' Preliminary

6  Opposition to Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure

7  8007 for Stay Pending Appeal; Declaration of Ronald Richards in Support Thereof" (the

8  "Opposition") in response to the "Emergency Motion Pursuant to Federal Rule of

9  Bankruptcy Procedure 8007 for Stay Pending Appeal" (the "Motion"), filed by the debtor

10  Jadelle Jewelry and Diamonds, LLC (the "Debtor" or "Jadelle"), and represent as follows:

11                                  **I.**

12                      **<u>PREFATORY STATEMENT</u>**

13        Adding to the mounting list of court orders it refuses to comply with, the

14  Debtor filed a "Statement Re Creditor List" late in the evening on June 23, 2020,

15  proclaiming that it has no intention of complying with the Court's June 16 Order.[1]  In a

16  feeble attempt to justify its latest violation of a court order, the Debtor states that it is

17  unable to prepare and file the list required by Federal Rule of Bankruptcy Procedure

18  1007(a)(2) "because the individual who has access to the information to prepare, and

19  who would prepare, sign, and verify, such list has been advised by counsel to decline to

20  answer based on the Fifth Amendment privilege against self-incrimination."

21        The unidentified individual, presumably Rachel Rechnitz, the Debtor's

22  putative managing member, believes (wrongly) that she can use her blanket assertion of

23  the Fifth Amendment to shield the Debtor from complying with any court order or the

24  statutory duties imposed on debtors by the Bankruptcy Code.  This blanket assertion

25  violates decades of case law, however.  The Debtor is improperly asserting a Fifth

26  ───────────────

27  [1] As has become its custom, the Debtor filed the "Statement Re Creditor List" (the "Statement") [Docket No. 72] at 8:04 p.m.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "29", PAGE 591

1    Amendment objection for an individual and, as the Court already opined, the Debtor, as a

2    corporate entity, has no Fifth Amendment privilege.  Furthermore, filing schedules and

3    providing crucial creditor information does not act as a waiver of the Fifth Amendment.

4            The Debtor's untenable position and continuing disregard of court orders

5    and the Bankruptcy Code further reinforces why this Court must not stay its order for

6    relief.

7                                            II.

8        **A DEBTOR'S OFFICER MAY NOT USE THE FIFTH AMENDMENT TO SHIELD**

9            **THE DEBTOR FROM COMPLYING WITH ITS STATUTORY DUTIES**

10                              **AND COURT ORDERS**

11            The Statement simply is another in a series of obstructionist positions

12   meant to prevent the Court, the newly appointed trustee, and creditors from getting to the

13   bottom of the truth.  The Court now must see what the Creditors have long known - the

14   Debtor is a criminal enterprise being run by the Rechnitz's for their own personal benefit

15   and amusement.  Coupled with the fact that counsel for the Debtor lacked the corporate

16   authority to appeal the June 16 Order, the Court has no choice but to deny the requested

17   stay pending appeal.

18            As this Court knows, among the duties imposed on debtors is the duty to (i)

19   submit to an examination at a meeting of creditors (11 U.S.C. § 343), (ii) file a list of

20   creditors, schedules of assets and liabilities, and statement of financial affairs (11 U.S.C.

21   § 521(1)), and (iii) surrender to the trustee property of the estate, including any recorded

22   information relating to property of the estate (11 U.S.C. § 521(4)).  Now, as part of its

23   orchestrated effort not to abide by any court order or statutorily imposed requirement,

24   some imaginary and unidentified person has asserted his/her Fifth Amendment privilege

25   in lieu of the Debtor making the foregoing disclosures and productions required by the

26   Bankruptcy Code.

27            As the Sixth Circuit noted when reviewing the behavior of a recalcitrant

28   debtor in Butcher v. Bailey, 753 F.2d 465, 469 (6th Cir. 1984), cert. denied, 473 U.S. 925,

EXHIBIT "29", PAGE 592

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   106 S. Ct. 17, 87 L. Ed. 2d 696 (1985), "compulsion is obviously present" from the

2   Bankruptcy Code requirements.  But a finding that compulsion is present is only the

3   starting point.  The Fifth Amendment is only violated when an individual, such as the

4   Debtor's unidentified person, is placed under "compulsion, to incriminate, not merely

5   compulsion to make unprivileged disclosures." United States v. Washington, 431 U.S.

6   181, 190, 97 S. Ct. 1814, 1820, 52 L. Ed. 2d 238 (1977) (quoting Garner v. United States,

7   424 U.S. 648, 657, 96 S. Ct. 1178, 47 L. Ed. 2d 370 (1976)).

8         As long as a witness can demonstrate any possibility of prosecution which

9   is more than fanciful, a claim of Fifth Amendment privilege is well taken.  In re Folding

10  Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir. 1979).  Moreover, it is the

11  possibility of prosecution, not the judge's assessment of the likelihood of such

12  prosecution, which establishes a valid claim.  In re Corrugated Container Antitrust

13  Litigation, 661 F.2d 1145, 1150 (7th Cir. 1981), aff'd, 459 U.S. 248, 103 S. Ct. 608, 74 L.

14  Ed. 2d 430 (1983).  Thus, an assertion of the privilege is meaningful and appropriate only

15  when the danger of incrimination is demonstrated to be real and appreciable, not merely

16  imaginary, remote, and speculative.  See Ueckert v. C.I.R., 721 F.2d 248 (8th Cir. 1983);

17  McCoy v. C.I.R., 696 F.2d 1234 (9th Cir. 1983).

18        The court's decision in In re Connelly, 59 B.R. 421, 431-432 (Bankr. N.D. Ill.

19  1986) demonstrates that it is incumbent upon the court to conduct a proper inquiry into

20  the legitimacy and scope of such a blanket assertion of privilege.  See also United States

21  v. Goodwin, 625 F.2d 693, 701 (5th Cir. 1980).  This requires the court to go beyond the

22  threshold "possibility of prosecution" discussed by the Court in Corrugated Container and

23  delve into the realm of "real danger of incrimination" if a debtor is required to respond to

24  particular inquiries.  Martin-Trigona v. Gouletas, 634 F.2d 354, 360 (7th Cir. 1980), cert.

25  denied, 449 U.S. 1025, 101 S. Ct. 593, 66 L. Ed. 2d 486 (1980).  The court's inquiry into

26  a debtor's claim of privilege is further guided by the standards of Hoffman v. United

27  States, 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951).  See United States v. Moore,

28  682 F.2d 853, 856 (9th Cir. 1982).  Generally, an individual must have reasonable cause

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "29", PAGE 593

1    to apprehend danger of self-incrimination from direct answers to the specific questions

2    posed.  Hoffman, 341 U.S. at 486; Martin-Trigona, 634 F.2d at 360.  As such, the lack of

3    any specificity, or even the identity of the person asserting the privilege, renders the

4    Debtor's blanket Fifth Amendment assertion a legal nullity.

5              Importantly, the Fifth Amendment does not relieve a debtor from answering

6    questions solely on the basis of his own judgment that the information would incriminate

7    himself.  In re Arend, 286 F. 516, 518 (2d Cir. 1922); Mason v. U.S., 244 U.S. 362, 37 S.

8    Ct. 621, 61 L. Ed. 1198 (1917).  The availability of the privilege is in the first instance for

9    the court to determine its application, since the court is the closest to the evidence.

10   Hoffman, 341 U.S. at 479; In re U.S. Hoffman Can Corp., 373 F.2d 622, 628 (3d Cir.

11   1967).  The determination is to be made by the trial court in the exercise of its sound

12   discretion, and unless there is a reasonable ground as distinct from a remote or

13   speculative possibility, to apprehend that a direct answer may prove dangerous to the

14   witness, the answer should be compelled.  Arend, 286 F. at 518.  "The focus of inquiry

15   when information is sought over a claim of privilege is whether the hazards of self-

16   incrimination are 'real and appreciable' as opposed to 'trifling or insubstantial.'"  U.S. v.

17   Sahadi, 555 F.2d 23, 26 (2d Cir. 1977).

18             In other words, the court must be presented with the facts from which to

19   determine whether the refusal is "based on merely fanciful grounds or upon some

20   imaginary fear or arbitrary reason . . . ."  Arend, supra.  See also Podolin v. Lesher

21   Warner Dry Goods Co., 210 F. 97 (3d Cir. 1914).  The invocation of the privilege must be

22   in the court's presence so that it may consider, by its own personal perception of the

23   peculiarities of the case the implication of the question in the setting in which it is asked.

24   Hoffman Can, 373 F.2d at 628.  If the claim of privilege is still asserted, some further

25   showing of possible incrimination must be permitted before disposal of the claim.  Id., at

26   628.  A person attempting to hide behind the Fifth Amendment must, therefore, make a

27   showing to the "limited extent requisite to make it known to a perceptive judgment that he

28   has reached a risk of disclosure which should be avoided, lest in establishing his right to

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "29", PAGE 594

1  the constitutional safeguard he says enough to destroy it." Id. But the required showing

2  must be made; here no such showing is even attempted by the Debtor.

3  Due to the fact that the Debtor chose to assert an anonymous Fifth

4  Amendment assertion and has again violated a court order, the Court cannot even review

5  the assertion. The Trustee is now being blocked from performing his statutory duties as

6  a fiduciary duty to all known and unknown creditors, and the Creditors are being

7  effectively prevented from conducting Rule 2004 examinations based on a premature,

8  blanket assertion of the Fifth Amendment. The Debtor's willful flouting of court orders

9  must end, and the Debtor cannot be rewarded for its intransigence by obtaining the

10  benefits of a stay.

11  Judge Kwan thoroughly analyzed this issue in McKnew v. Wilson (In re

12  Wilson), 2015 Bankr. LEXIS 2205 (Bankr. C.D. Cal., July 2, 2015). In Wilson, Judge

13  Kwan found that:

14  In determining whether such a real and appreciable danger

15  of incrimination exists, a trial judge must examine the

16  "implications of the question(s) in the setting in which (they

17  are) asked...." Hoffman v. United States, 341 U.S. at 486;

18  United States v. Pierce, 561 F.2d 735, 741 (9th Cir. 1977);

19  Hashagen v. United States, 283 F.2d at 350. He "'(m)ust be

20  governed as much by his personal perception of the

21  peculiarities of the case as by the facts actually in

22  evidence.'" Hoffman v. United States, 341 U.S. at 487,

23  quoting Ex parte Irvine, 74 F. 954, 960 (C.C. Ohio, 1896);

24  United States v. Pierce, 561 F.2d at 741. If the trial judge

25  decides from this examination of the questions, their setting,

26  and the peculiarities of the case, that no threat of self-

27  incrimination exists, it then becomes incumbent "upon the

28  defendant to show that answers to (the questions) might

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "29", PAGE 595

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    criminate him." United States v. Weisman, 111 F.2d 260,

2    261 (2d Cir. 1940).  See also Garner v. United States, 424

3    U.S. 648, 658 n.11 (1976); United States v. Daly, supra, 481

4    F.2d 28, 30 (8th Cir. 1973); In re U.S. Hoffman Can Corp.,

5    373 F.2d 622, 628 (3d Cir. 1967); Hashagen v. United

6    States, 283 F.2d at 350.  This does not mean that the

7    defendant must confess the crime he has sought to conceal

8    by asserting the privilege.  The law does not require him "'to

9    prove guilt to avoid admitting it.'"  Marchetti v. United States,

10   390 U.S. at 50, 88, quoting United States v. Kahriger, 345

11   U.S. 22, 34 (1953) (Jackson, J., concurring).  But neither

12   does the law permit the defendant to be the final arbiter of

13   his own assertion's validity.  "The witness is not exonerated

14   from answering merely because he declares that in so doing

15   he would incriminate himself his say-so does not of itself

16   establish the hazard of incrimination.  It is for the court to

17   decide whether his silence is justified...." Hoffman v. United

18   States, 341 U.S. at 486.  See also Marchetti v. United

19   States, 390 U.S. at 50; Albertson v. SACB, 382 U.S. 70, 79;

20   United States v. Johnson, 577 F.2d 1304, 1311 (5th Cir.

21   1978); United States v. Daly, 481 F.2d at 30; Hashagen v.

22   United States, 283 F.2d at 348.

23   Wilson, 2015 Bankr. LEXIS 2205, at *3-*4.

24        Thus, the Debtor cannot simply assert a blanket Fifth Amendment privilege

25   on behalf of its two co-conspirators in an effort to avoid submitting required financial

26   information and vital testimony.  As such, based upon the Debtor's willful and repeated

27   violation of numerous court orders, the Court should deny its stay request so the parties

28   can move forward with the appropriate contempt motions, motions seeking production of

EXHIBIT "29", PAGE 596

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  documents and testimony under Rule 2004, and other remedial actions to assist the

2  Trustee in recovering dissipated assets.[2]

3          The fact that this Court was told at the June 9, 2020, hearing that the

4  Debtor is generally paying its debts as they become due, cannot be reconciled with the

5  Statement.  During the June 9 hearing, when asked by the Court if the Debtor was still

6  operating and paying its debts, counsel responded as follows:

7          THE COURT: Okay. Is the debtor still operating?

8          MR. MARTICELLO: Your Honor, my understanding is that

9          the debtor is paying its debts -- undisputed debts as they

10         come due on the agreed to terms.

11  See Official Transcript of Proceedings, p. 10, lls. 20-23.

12         Why would an entity that is paying its debts as they become due be so

13  criminally infested that they cannot even allegedly complete its initial schedules due to

14  Fifth Amendment concerns.  This is a rhetorical question, of course.

**III.**

**CONCLUSION**

17         It is for the Court, not the Debtor, to decide whether an invocation of the

18  Fifth Amendment is justified and, if so, to what extent.  By filing the Statement, the Debtor

19  is preventing the Court from undertaking this fact-specific inquiry.  And, as the Creditors

20  already have demonstrated, the Debtor has no right to invoke the Fifth Amendment

---

[2] The Debtor already has refused to provide substantive responses to the First Set of Requests for Production of Documents propounded on it by the Creditors.  As noted by the court in Scarfia v. Holiday Bank, 129 B.R. 671 (M.D. Fla. 1990), blanket objections on the grounds of self-incrimination in connection with discovery requests is improper.  It is axiomatic that a debtor may not cloak himself with the Fifth Amendment's protection against self-incrimination simply by a blanket assertion that his answers to interrogatories, requests for admissions and requests for production of documents will tend to incriminate him.  Hoffman, 341 U.S. at 486 (a witness's "say-so does not of itself establish the hazard of incrimination"); Securities and Exchange Commission v. First Financial Group of Texas, 659 F.2d 660, 668 (5th Cir. 1981); Arend, supra, In re Mudd, 95 B.R. 426, 430 (Bankr. N.D. Tex. 1989); In re Hulon, 92 B.R. 670, 675 (Bankr. N.D. Tex. 1988); In re Krisle, 54 B.R. 330, 338 (Bankr. D.S.D. 1985) (a debtor "may not decline to disclose information on the basis of a naked assertion that the information requested may tend to incriminate him").  As a result, the Creditors intend to proceed with the appropriate motions to obtain the Debtor's compliance.

EXHIBIT "29", PAGE 597

1 | privilege in the first instance.  Since the Debtor also acted without the express

2 | authorization of the Trustee in filing the appeal and the stay motion, its request for a stay

3 | must be denied.

4 | DATED: June 24, 2020                    **Sulmeyer**Kupetz
                                          A Professional Corporation

7 |                                        By: /s/ *Daniel A. Lev* _____
8 |                                            Daniel A. Lev
                                             Attorneys for Victor Franco Noval, Peter
                                             Marco, LLC, and First International Diamond,
9 |                                            Inc.

10 | DATED: June 24, 2020                   Law Offices of Ronald Richards & Associates, APC

13 |                                        By: /s/ *Ronald Richards* _____
                                             Ronald Richards
14 |                                            Attorneys for Victor Franco Noval

EXHIBIT "29", PAGE 598

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is
PO BOX 11480, BEVERLY HILLS, CA  90213

A true and correct copy of the foregoing document entitled (*specify*): SUPPLEMENTAL TO PRELIMINARY OPPOSITION
TO MOTION FOR STAY, will be served or was served **(a)** on the judge in chambers in the form and manner required by
LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
June 24, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com

Daniel A Lev dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Robert S Marticello Rmarticello@swelawfirm.com,

gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Ronald N Richards ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com

Neal Salisian ECF@salisianlee.com

Michael Simon msimon@swelawfirm.com,

lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building (waived per court order)
Bin outside of Courtroom 1660
255 E. Temple Street

DAL 2702848v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                         **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "29", PAGE 599

Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 24, 2020 | | /s/ Ronald Richards |
| --- | --- | --- |
| Date | Printed Name | Signature |

DAL 2702848v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT "29", PAGE 600

# EXHIBIT "30"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| SMILEY WANG-EKVALL, LLP<br>Robert S. Marticello, State Bar No. 244256<br>rmarticello@swelawfirm.com<br>Michael L. Simon, State Bar No. 300822<br>msimon@swelawfirm.com<br>3200 Park Center Drive, Suite 250<br>Costa Mesa, California 92626<br>Telephone: 714 445-1000<br>Facsimile: 714 445-1002 | |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Jadelle Jewelry and Diamonds, LLC | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>JADELLE JEWELRY AND DIAMONDS, LLC,<br><br><br><br><div align="right">Debtor(s).</div> | CASE NO.: 2:20-bk-13530-BR<br><br>ADVERSARY NO.:<br>(*if applicable*)<br><br>CHAPTER: 7 |
|---|---|
| <div align="center">Plaintiff(s) (*if applicable*).</div><br>vs.<br><br><br><br>Defendant(s) (*if applicable*). | **NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1:  Identify the appellant(s)**

1.  Name(s) of appellant(s):  Jadelle Jewelry and Diamonds, LLC

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐  Plaintiff
☐  Defendant
☐  Other (*describe*):

For appeals in a bankruptcy case and not in an  adversary proceeding.
☒  Debtor
☐  Creditor
☐  Trustee
☐  Other (*describe*):

---

EXHIBIT "30", PAGE 601

**Part 2:  Identify the subject of this appeal**

1.    Describe the judgment, order, or decree appealed from:
      See attachment



2.    The date the judgment, order, or decree was entered:  _____

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone
numbers of their attorneys (*attach additional pages if necessary*):

1.    Party:  See attachment

      Attorney:







2.    Party:

      Attorney:







**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal
unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If
an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not
check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐    Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy
      Appellate Panel.

**Part 5:  Sign below**

 /s/ Robert S. Marticello _____          Date: __06/19/2020___
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in
§ 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P.
8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of
Appeal.]

EXHIBIT "30", PAGE 602

## PART 2:  THE SUBJECT OF THIS APPEAL

**1.**   *Order for Relief and Order to File Schedules, Statements and List(s)* [Docket No. 55], entered on June 16, 2020.

**2.**   *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing On Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Docket No. 39], entered on June 10, 2020.

**3.**   *Order Denying "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, of (2) Alternatively, a Stay of the Bankruptcy Case"* [Docket No. 53], entered on June 16, 2020.

**4.**   *Order Directing Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of this Order* [Docket No. 54], entered on June 16, 2020.

## PART 3:  PARTIES TO THE APPEAL

**1.**   Party: Jadelle Jewelry and Diamonds, LLC, Appellant and Debtor

Counsel:

Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
(714) 445-1000

**2.**   Party:  Victor Franco Noval, Petitioning Creditor

Counsel:

Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213
(310) 556-1001

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

**3.**   Party:  Peter Marco, LLC, Petitioning Creditor

1

EXHIBIT "30", PAGE 603

Counsel:

Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

4.    Party:  First International Diamond, Inc., Petitioning Creditor

Counsel:

Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

5.    Party Sam S. Leslie, Interim Chapter 7 Trustee

Sam S. Leslie
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

EXHIBIT "30", PAGE 604

Form ofri−(orlf7,orlf11,iors) VAN−93
Rev. 12/2015

# United States Bankruptcy Court
# Central District of California

### 255 East Temple Street, Los Angeles, CA 90012

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
 Jadelle Jewelry And Diamonds LLC a Delaware
limited liability company
dba Jadelle Inc
**SSN:** N/A
**EIN:** 00-0000000

9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212

**BANKRUPTCY NO.** 2:20−bk−13530−BR
**CHAPTER** 7

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above−named debtor on April 6, 2020

☐ Debtor consented to the entry of an order of relief.

☐ No pleading or other defense to the petition having been filed within 21 days after service of the summons (or within any longer period of time precribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is ordered to file within **seven** days after entry of this order for relief, a list containing the name and address of each entity included on Schedule D, E/F, G, and H as prescribed by the Official Forms (Federal Rule of Bankruptcy Procedure 1007 (a)(2)).

Debtor is also ordered to file schedules, statement and Statement About Your Social Security Numbers (Official Form B121) referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) and (f) within 14 days after entry of this Order For Relief.

Dated: June 16, 2020

For The Court,

**Kathleen J. Campbell**
Clerk of Court

(Form ofri−orlf7,orlf11,iors) VAN−93 Rev. 12/2015

**55 / SF**

EXHIBIT "30", PAGE 605

FILED & ENTERED

JUN 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

|  |  |
|---|---|
| In re: | Case No.: 2:20-bk-13530-BR |
| Jadelle Jewelry and Diamonds LLC, | Chapter 7 |
|  | **ORDER:** |
|  | **(1)  DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;** |
| Debtor(s). | **(2)  SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;** |
|  | **(3)  SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND** |
|  | **(4)  SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE** |
|  | Date:        June 9, 2020 |
|  | Time:        10:00 a.m. |
|  | Courtroom:  1668 |

-1-

EXHIBIT "30", PAGE 606

The Court held a hearing on June 9, 2020 on the following two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC, Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional Corporation, appeared on behalf of the petitioning creditors.

With respect to the debtor's Motion to Dismiss, the Court considered the Motion, the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

With respect to the petitioning creditors' Trustee Appointment Motion, the Court considered the Motion and all related pleadings including the separately filed declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco, the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's Opposition, and all other pleadings related to the Motion, Opposition and Reply.

The Court also considered the debtor's separately filed declarations of Levin Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the debtor's Request for Judicial Notice, and all other pleadings related to the Motion, Opposition and Reply.

EXHIBIT "30", PAGE 607

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

   a. the name of the creditor;

   b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

   c. the amount of the creditor's claim;

   d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

   e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.,* no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

EXHIBIT "30", PAGE 608

1    for relief in this case. The entry of such an order for relief will render both the

2    pending Motion to Dismiss and Trustee Appointment Motion moot;

3    4. If the Rechnitz's file the joint declaration by the required date and time, then:

4

5        a.  The petitioning creditors shall have sixty (60) days from the date of

6            this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to

7            contact the creditors listed in the joint declaration to determine if any of

8            them are willing to join in the involuntary petition;

9        b.  The petitioning creditors shall have the same sixty (60) day period

10            within which to conduct discovery of the creditors listed in the joint

11            declaration, which discovery shall be limited solely to questions

12            regarding the nature and amount of the creditor's claim and, if the

13            creditor's claim is listed in the joint declaration as disputed, the nature

14            of such dispute;

15

16        c.  The Court shall hold a status conference on this involuntary case on

17            August 25, 2020 at 10:00 a.m., and

18        d.  The parties shall file a joint status report seven (7) days prior to the

19            status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

20

21    **IT IS SO ORDERED.**

22                                    **###**

23

24

25    Date: June 10, 2020

26                                    _____
                                     Barry Russell
27                                   United States Bankruptcy Judge

28

-4-

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re:

JADELLE JEWELRY AND DIAMONDS
LLC,

Debtor(s).

Case No.: 2:20-bk-13530-BR

Chapter 7

**ORDER DENYING "PUTATIVE DEBTOR'S
EMERGENCY MOTION FOR (1)
RECONSIDERATION OF THE COURT'S
ORDER, OR (2) ALTERNATIVELY, A STAY
OF THE BANKRUPTCY CASE"**

[No Hearing Date Required]

This matter is before the Court on the "Putative Debtor's Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion"), filed by the debtor on June 15, 2020.

The Court has considered the Emergency Motion and all related pleadings filed in support thereof, consisting of the supporting declarations of Robert S. Marticello and Michael V. Schafler (including an Errata thereto), an Index of Exhibits and a Request For Judicial Notice as well as the petitioning creditors' Preliminary Opposition thereto.

-1-

1    The Emergency Motion seeks reconsideration of the Court's order entered on

2 June 10, 2020 ("June 10, 2020 Order") entitled "Order: (1) Directing Rachel Rechnitz

3 And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date

4 By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And

5 Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And

6 (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference."

7    The June 10 Order specifically ordered, *inter alia* that:

8    1. Rachel Rechnitz and Jona Rechnitz (collectively, the
     'Rechnitz's') must file a joint declaration, sworn under
9    penalty of perjury, which identifies each and every one of the
     debtor's creditors as of the date of the filing of the
10   involuntary petition on April 6, 2020. The joint declaration
     shall include, without limitation, the following information with
11   respect to each creditor identified therein: . . .

12

13 June 10, 2020 Order (docket no. 39), page 3.

14    The Court issued its June 10, 2020 Order following a telephonic hearing on June

15 9, 2020 on two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition

16 and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by

17 the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion

18 for  Appointment of Interim Chapter 7 Trustee," filed by the petitioning creditors on May

19 19, 2020. At that hearing, the Court heard argument and representations of counsel

20 regarding both motions, made evidentiary rulings on the record, and made its oral ruling

21 as reflected in its June 10, 2020 Order.

22    A major focus of the Emergency Motion is the debtor's argument that the June

23 10, 2020 Order deprives the debtor's principals, Rachel and Jona Rechnitz, of their Fifth

24 Amendment privilege against self-incrimination by its requirement that the Rechnitz's file

25 a joint declaration under penalty of perjury regarding the identity of the debtor's creditors

26 and by allowing the petitioning creditors to conduct certain limited discovery with respect

27 to the creditors identified by them.

28

EXHIBIT "30", PAGE 611

1    The Court, however, specifically addressed the Fifth Amendment privilege issue

2    with the debtor's counsel, Robert S. Marticello, at the June 9, 2020 hearing on the

3    debtor's Motion to Dismiss:

4         THE COURT:  I know that there are criminal -- there are
          other charges and so there's a lot of stuff going on. I have no
5         opinion. I know what happened in the state court, but I have
          no opinion as to the ultimate outcome. But I tell you this, if
6         either -- or they both must comply and I will make it quite clear. If
          they don't comply with the request, whether it's Fifth
7         Amendment or whatever, then I will enter the order for relief.
          Is it the debt -- from the debtor's standpoint, do you
8         understand that? Mr. Marticello, do you understand that?
9
10        MR. MARTICELLO: Your Honor, this is Robert Marticello for
          the debtor. I understand the Court's – what the Court just
11        said and I will comply with the Court's order. My concern is,
          Your Honor, like you said there are other things going on
12        and –
13
          THE COURT: No, I understand that. But, no, I'm telling you –
14
15        MR. MARTICELLO: -- if there is a -- if there's a –
16        THE COURT: -- this is really simple and I can't -- I'm not -- I -
          - people have a right to the -- you know, to take the Fifth and
17        I -- again, whether they do or not I have no idea. But I'm
          telling you right now the creditors have a right to this
18        information. If they refuse, either of them, I want both of
          them to sign it because it's not clear to me exactly who's
19        really running the business. My guess is that maybe the
          husband is but I don't know that, just from the various
20        pleadings. I don't really know. So there -- therefore, I am
          requiring both to sign under penalty of perjury. And if nei --
21        and if they don't both sign it under penalty of perjury, then I
          will enter an order for relief. I just want you -- you -- I want
22        you in particular and your clients, the debtor, the principals,
          to understand that. You do -- you understand what I've said.
23        I want them to understand it. That would be the price for not
          complying with my order. You –
24
25        MR. MARTICELLO: I understand, Your Honor.
26
          THE COURT: Mr. Marticello, you understand what I've said
27        obviously. I'm not being facetious. You understand. And so
          any –
28

EXHIBIT "30", PAGE 612

1          MR. MARTICELLO: Correct, Your Honor.

2  Transcript of Telephonic Proceedings Before The Honorable Barry Russell, United

3  States Bankruptcy Judge, Docket No. 42 at p. 85, lines 21-25 through p. 87, lines 1-14.

4          The Court notes that despite debtor's counsel's statements in the above

5  proceedings that he understood what the Court had said and would comply with the

6  Court's June 10, 2020 Order, the debtor instead filed the Emergency Motion less than

7  twenty-four (24) hours before the deadline imposed by the June 10, 2020 for the filing of

8  the Rechnitz's joint declaration.

9          The Court further notes that the despite the Emergency Motion's arguments

10  regarding the Rechnitz's Fifth Amendment privilege, the debtor in this case is an LLC,

11  that the Fifth Amendment privilege only applies to individuals, and that the debtor's

12  principals (the Rechnitz's) are not entitled to assert a Fifth Amendment privilege on the

13  debtor's behalf.

14          The Emergency Motion also argues that the Court may dismiss this case without

15  the requirement of a creditor list, and that the Court is not required to provide creditors

16  (other than the petitioning creditors) an opportunity to join in the involuntary petition. The

17  Court finds this argument unpersuasive in this case.

18          It may very well be that there are additional creditors who may have substantial,

19  undisputed claims against the debtor. The debtor's failure to timely file the list of

20  creditors, as required by the Court's June 10, 2020 Order, will prevent the petitioning

21  creditors from being able to identify any such additional potential creditors and will also

22  prevent the petitioning creditors, and any other additional creditors, from attempting to

23  prove that the debtor is not paying its debts as they become due.

24  ///

25  ///

26  ///

27  ///

28  ///

-4-

EXHIBIT "30", PAGE 613

1    Finally, the Court finds all other arguments in the Emergency Motion equally ill-

2   founded and unpersuasive. Accordingly, no good cause having been shown to grant the

3   Emergency Motion, the Emergency Motion is **DENIED**.

4    **IT IS SO ORDERED**.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Date: June 16, 2020

26   Barry Russell
     United States Bankruptcy Judge

27

28

-5-

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br>Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DIRECTING CLERK OF COURT TO IMMEDIATELY ENTER AN ORDER FOR RELIEF UNDER CHAPTER 7, AND REQUIRING THE DEBTOR TO FILE ALL SCHEDULES AND RELATED DOCUMENTATION FOR A CHAPTER 7 CASE WITHIN FOURTEEN DAYS OF THE ENTRY OF THIS ORDER**<br><br>[No Hearing Required] |

On June 10, 2020, the Court entered its "Order: (1) Directing Rachel Rechnitz And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference" ("June 10 Order"), wherein the Court specifically ordered, *inter alia,* that:

-1-

EXHIBIT "30", PAGE 615

1.   Rachel Rechnitz and Jona Rechnitz (collectively, the 'Rechnitz's') must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

     a. the name of the creditor;

     b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

     c. the amount of the creditor's claim;

     d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

     e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2.  The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.,* no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3.  If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order for relief in this case. [. . .]

June 10, 2020 Order, docket no. 39, pages 3 and 4.

     The debtor filed an "Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion") on June 15, 2020. The Court denied the Emergency Motion by a separate order entered on June 16, 2020.

     As of 3:00 p.m. on June 16, 2020, the Rechnitz's failed to file the joint declaration under penalty of perjury, the required list of creditors, or otherwise comply with the June 10, 2020 Order in any respect. Accordingly, **IT IS HEREBY ORDERED** that:

EXHIBIT "30", PAGE 616

1. The Clerk of Court shall enter an order for relief under chapter 7 of the Bankruptcy Code immediately upon entry of this Order; and

2. The debtor is required to file all schedules and related documentation for a chapter 7 case, in accordance with the Local Bankruptcy Rules, within fourteen (14) days from the date of entry of this Order.

**IT IS SO ORDERED.**

###

Date: June 16, 2020

_Barry Russell_
Barry Russell
United States Bankruptcy Judge

-3-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**


A true and correct copy of the foregoing document entitled (*specify*): **Notice of Appeal and Statement of Election**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/19/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@iq7technology.com;trustee@trusteeleslie.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
     gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com,
     lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
  ☐ Service information continued on attached page


**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.




  ☐ Service information continued on attached page


**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/19/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012
  ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/19/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "30", PAGE 618

# EXHIBIT "31"

**ORIGINAL**

**BY FAX**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Rachel Rechnitz<br>9533 Sawyer Street<br>Los Angeles, CA 90035<br>(646) 283-3283 | FILED<br><br>JUL – 1 2020<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ Deputy Clerk |
| ☒  Individual appearing without attorney<br>☐  Attorney for: | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br>JADELLE JEWELRY AND DIAMONDS, LLC | CASE NO.:2:20-bk-13530-BR |
|---|---|
| | ADVERSARY NO.:<br>(if applicable) |
| | CHAPTER: 7 |
| Debtor(s). | |
| Plaintiff(s) (if applicable).<br><br>vs.<br><br><br><br>Defendant(s) (if applicable). | AMENDED<br>NOTICE OF APPEAL<br>AND STATEMENT OF ELECTION |

**Part 1:  Identify the appellant(s)**

1.   Name(s) of appellant(s): Rachel Rechnitz _____

2.   Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.

☐  Plaintiff
☐  Defendant
☐  Other (describe):

For appeals in a bankruptcy case and not in an adversary proceeding.

☐  Debtor
☐  Creditor
☐  Trustee
☒  Other (describe): Member and Managing Member, Jadelle Jewelry and Diamonds, LLC

EXHIBIT "31", PAGE 619

**Part 2:  Identify the subject of this appeal**

1.  Describe the judgment, order, or decree appealed from:

     See attachment.

2.  The date the judgment, order, or decree was entered:  See attachment.

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (*attach additional pages if necessary*):

1.  Party:  See attachment.
     Attorney:

2.  Party:
     Attorney:

**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5:  Sign below**

_____      Date: 06/30/2020
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

EXHIBIT "31", PAGE 620

## PART 2: THE SUBJECT OF THIS APPEAL

**1.** *Order for Relief and Order to File Schedules, Statements and List(s)* [Docket No. 55], entered on June 16, 2020.

**2.** *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing On Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Docket No. 39], entered on June 10, 2020.

**3.** *Order Denying "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, of (2) Alternatively, a Stay of the Bankruptcy Case"* [Docket No. 53], entered on June 16, 2020.

**4.** *Order Directing Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of this Order* [Docket No. 54], entered on June 16, 2020.

## PART 3: PARTIES TO THE APPEAL

**1.** Party: Jadelle Jewelry and Diamonds, LLC, Appellant and Debtor

Counsel:
Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
(714) 445-1000

**2.** Party: Victor Franco Noval, Petitioning Creditor

Counsel:
Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213
(310) 556-1001

and

Dan Lev
SulmeyerKupetz

1

EXHIBIT "31", PAGE 621

333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

3. Party: Peter Marco, LLC, Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

4. Party: First International Diamond, Inc., Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

5. Party: Sam S. Leslie, Interim Chapter 7 Trustee

Sam S. Leslie
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

and

2

EXHIBIT "31", PAGE 622

Counsel: Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

**6.** Party: Rachel Rechnitz, Member and Managing Member,
Jadelle Jewelry and Diamonds, LLC

Rachel Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

**7.** Interested Party: Jona Rechnitz

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

3

EXHIBIT "31", PAGE 623

Case 2:20-cv-06133-DOC Document 10-1 Filed 07/10/20 Page 370 of 499 Page ID #:861

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-E    Main Document 06/16/20 Page 6 of 20    '16/20 16:03:27    Desc
Ord Rlf/Ord File Shcd Stmnt    Page 1 of 1

Form ofri~(orlf7,orlf11,iors) VAN~93
Rev. 12/2015

# United States Bankruptcy Court
## Central District of California

**255 East Temple Street, Los Angeles, CA 90012**

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
Jadelle Jewelry And Diamonds LLC a Delaware
limited liability company
dba Jadelle Inc
**SSN:** N/A
**EIN:** 00-0000000

**BANKRUPTCY NO.** 2:20-bk-13530-BR
**CHAPTER** 7

9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above-named debtor on April 6, 2020

☐   Debtor consented to the entry of an order of relief.

☐   No pleading or other defense to the petition having been filed within 21 days after service of the summons (or within
any longer period of time precribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is ordered to file within **seven** days after entry of this order for relief, a list containing the name and address of each
entity included on Schedule D, E/F, G, and H as prescribed by the Official Forms (Federal Rule of Bankruptcy Procedure 1007
(a)(2)).

Debtor is also ordered to file schedules, statement and Statement About Your Social Security Numbers (Official Form B121)
referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) and (f) within 14 days after entry of this Order For Relief.

For The Court,

Dated: June 16, 2020

**Kathleen J. Campbell**
Clerk of Court

(Form ofri~orlf7,orlf11,iors) VAN~93 Rev. 12/2015

**55 / SF**

EXHIBIT "31", PAGE 624

Case 2:20-cv-06133-DOC-DFM Document 16-1 Filed 07/10/20 Page 371 of 439 Page ID #:862

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-BR    Doc 39    Filed 06/10/20    Entered    10/20 13:01:33    Desc
            Main Document    Page 1 of 4

FILED & ENTERED

JUN 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Jadelle Jewelry and Diamonds LLC,<br><br><br><br><br><br><br><br>Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER:**<br><br>**(1) DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;**<br><br>**(2) SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;**<br><br>**(3) SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND**<br><br>**(4) SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE**<br><br>Date:      June 9, 2020<br>Time:      10:00 a.m.<br>Courtroom: 1668 |

-1-

EXHIBIT "31", PAGE 625

Case 2:20-cv-06185-DOC Document 16-1 Filed 07/10/20 Page 372 of 499 Page ID #:863

Case 2:20-bk-13530-BR   Doc 88   Filed 07/01/20   Entered 07/02/20 08:56:12   Desc
Case 2:20-bk-13530-E   Doc 39   Filed 06/10/20   Entered   10/20 13:01:33   Desc
Main Document   Page 2 of 4

1   The Court held a hearing on June 9, 2020 on the following two motions: the

2   "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's

3   Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020,

4
    and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim
5
6   Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning

7   creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

8   Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the

9   debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC,

10
    Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional
11
12  Corporation, appeared on behalf of the petitioning creditors.

13  With respect to the debtor's Motion to Dismiss, the Court considered the Motion,

14  the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning

15  creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

16  With respect to the petitioning creditors' Trustee Appointment Motion, the Court

17  considered the Motion and all related pleadings including the separately filed
18
    declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco,
19
20  the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's

21  Opposition, and all other pleadings related to the Motion, Opposition and Reply.

22  The Court also considered the debtor's separately filed declarations of Levin

23  Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's

24
    evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter
25
26  Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the

27  debtor's Request for Judicial Notice, and all other pleadings related to the Motion,

28  Opposition and Reply.

-2-

EXHIBIT "31", PAGE 626

Case 2:20-cv-06188-DOC-DS3 Document 16-1 Filed 07/10/20 Page 373 of 439 Page ID #:864

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-L     Main Document    Page 9 of 20
Doc 39    Filed 06/16/20    Entered    10/20 13:01:33    Desc
Main Document    Page 3 of 4

1    At the June 9 hearing, the Court ruled on the record on all of the evidentiary

2    objections and heard argument and representations of counsel. After consideration of

3    all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

4        1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a

5           joint declaration, sworn under penalty of perjury, which identifies each and

6           every one of the debtor's creditors as of the date of the filing of the involuntary

7           petition on April 6, 2020. The joint declaration shall include, without limitation,

8           the following information with respect to each creditor identified therein:

9               a.  the name of the creditor;

10              b.  the nature of the debt owed to the creditor (*e.g.*, consigned jewelry,

11                  rent due and owing, etc.);

12              c.  the amount of the creditor's claim;

13              d.  whether the creditor's claim is disputed and, if so, the nature of the

14                  dispute; and

15              e.  complete contact information for each creditor including, but not limited

16                  to, the creditor's address, telephone number, cell phone number (if

17                  known), fax number (if applicable), and email address (if known);

18       2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.*,

19           no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint

20           declaration with the Court and serve the declaration on counsel for the

21           petitioning creditors;

22       3. If the Rechnitz's fail to file the joint declaration by that date and time, the

23           Court will deny the debtor's Motion to Dismiss and immediately enter an order

-3-

Case 2:20-cv-06158-DOC-DFM Document 16-1 Filed 07/10/20 Page 374 of 439 Page ID #:865

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-L    Doc 39    Filed 06/10/20    Entered 10/20 13:01:33    Desc
Main Document    Page 10 of 20
Main Document    Page 4 of 4

for relief in this case. The entry of such an order for relief will render both the pending Motion to Dismiss and Trustee Appointment Motion moot;

4. If the Rechnitz's file the joint declaration by the required date and time, then:

   a. The petitioning creditors shall have sixty (60) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to contact the creditors listed in the joint declaration to determine if any of them are willing to join in the involuntary petition;

   b. The petitioning creditors shall have the same sixty (60) day period within which to conduct discovery of the creditors listed in the joint declaration, which discovery shall be limited solely to questions regarding the nature and amount of the creditor's claim and, if the creditor's claim is listed in the joint declaration as disputed, the nature of such dispute;

   c. The Court shall hold a status conference on this involuntary case on August 25, 2020 at 10:00 a.m., and

   d. The parties shall file a joint status report seven (7) days prior to the status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

**IT IS SO ORDERED.**

###

Date: June 10, 2020

Barry Russell
United States Bankruptcy Judge

-4-

EXHIBIT "31", PAGE 628

Case 2:20-cv-06133-DOC-3 Document 16-1 Filed 07/10/20 Page 375 of 439 Page ID #:866

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Main Document    Page 11 of 20
Case 2:20-bk-13530-E    Doc 53    Filed 06/16/20    Entered 16/20 15:37:59    Desc
Main Document    Page 1 of 5

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br>Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DENYING "PUTATIVE DEBTOR'S EMERGENCY MOTION FOR (1) RECONSIDERATION OF THE COURT'S ORDER, OR (2) ALTERNATIVELY, A STAY OF THE BANKRUPTCY CASE"**<br><br>[No Hearing Date Required] |

This matter is before the Court on the "Putative Debtor's Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion"), filed by the debtor on June 15, 2020.

The Court has considered the Emergency Motion and all related pleadings filed in support thereof, consisting of the supporting declarations of Robert S. Marticello and Michael V. Schafler (including an Errata thereto), an Index of Exhibits and a Request For Judicial Notice as well as the petitioning creditors' Preliminary Opposition thereto.

-1-

1    The Emergency Motion seeks reconsideration of the Court's order entered on

2   June 10, 2020 ("June 10, 2020 Order") entitled "Order: (1) Directing Rachel Rechnitz

3   And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date

4   By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And

5   Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And

6   (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference."

7       The June 10 Order specifically ordered, *inter alia* that:

8           1. Rachel Rechnitz and Jona Rechnitz (collectively, the
             'Rechnitz's') must file a joint declaration, sworn under
9           penalty of perjury, which identifies each and every one of the
             debtor's creditors as of the date of the filing of the
10          involuntary petition on April 6, 2020. The joint declaration
             shall include, without limitation, the following information with
11          respect to each creditor identified therein: . . .

12

13   June 10, 2020 Order (docket no. 39), page 3.

14      The Court issued its June 10, 2020 Order following a telephonic hearing on June

15   9, 2020 on two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition

16   and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by

17   the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion

18   for Appointment of Interim Chapter 7 Trustee," filed by the petitioning creditors on May

19   19, 2020. At that hearing, the Court heard argument and representations of counsel

20   regarding both motions, made evidentiary rulings on the record, and made its oral ruling

21   as reflected in its June 10, 2020 Order.

22      A major focus of the Emergency Motion is the debtor's argument that the June

23   10, 2020 Order deprives the debtor's principals, Rachel and Jona Rechnitz, of their Fifth

24   Amendment privilege against self-incrimination by its requirement that the Rechnitz's file

25   a joint declaration under penalty of perjury regarding the identity of the debtor's creditors

26   and by allowing the petitioning creditors to conduct certain limited discovery with respect

27   to the creditors identified by them.

28

-2-

EXHIBIT "31", PAGE 630

Case 2:20-cv-06153-DOC3 Document 16-1 Filed 07/10/20 Page 377 of 439 Page ID #:868

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-E    Doc 53    Filed 06/16/20    Entered 16/20 15:37:59    Desc
Main Document    Page 3 of 5

1      The Court, however, specifically addressed the Fifth Amendment privilege issue

2  with the debtor's counsel, Robert S. Marticello, at the June 9, 2020 hearing on the

3  debtor's Motion to Dismiss:

4            THE COURT:  I know that there are criminal -- there are
        other charges and so there's a lot of stuff going on. I have no
5        opinion. I know what happened in the state court, but I have
        no opinion as to the ultimate outcome. But I tell you this, if
6        either -- or they both must comply and I make it quite clear. If
        they don't comply with the request, whether it's Fifth
7        Amendment or whatever, then I will enter the order for relief.
        Is it the debt -- from the debtor's standpoint, do you
8        understand that? Mr. Marticello, do you understand that?
9
        MR. MARTICELLO: Your Honor, this is Robert Marticello for
10       the debtor. I understand the Court's -- what the Court just
        said and I will comply with the Court's order. My concern is,
11       Your Honor, like you said there are other things going on
        and --
12
        THE COURT: No, I understand that. But, no, I'm telling you --
13
        MR. MARTICELLO: -- if there is a -- if there's a --
14
        THE COURT: -- this is really simple and I can't -- I'm not -- I -
15       - people have a right to the -- you know, to take the Fifth and
16       I -- again, whether they do or not I have no idea. But I'm
        telling you right now the creditors have a right to this
17       information. If they refuse, either of them, I want both of
        them to sign it because it's not clear to me exactly who's
18       really running the business. My guess is that maybe the
        husband is but I don't know that, just from the various
19       pleadings. I don't really know. So there -- therefore, I am
20       requiring both to sign under penalty of perjury. And if nei --
        and if they don't both sign it under penalty of perjury, then I
21       will enter an order for relief. I just want you -- you -- I want
        you in particular and your clients, the debtor, the principals,
22       to understand that. You do -- you understand what I've said.
23       I want them to understand it. That would be the price for not
        complying with my order. You --
24
        MR. MARTICELLO: I understand, Your Honor.
25
        THE COURT: Mr. Marticello, you understand what I've said
26       obviously. I'm not being facetious. You understand. And so
27       any --
28

EXHIBIT "31", PAGE 631

Case 2:20-cv-06128-DOC-DFM Document 16-1 Filed 07/10/20 Page 378 of 439 Page ID #:869

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-BR    Doc 53    Filed 06/16/20    Entered 06/16/20 15:37:59    Desc
Main Document    Page 14 of 20
Main Document    Page 4 of 5

1    MR. MARTICELLO: Correct, Your Honor.

2    Transcript of Telephonic Proceedings Before The Honorable Barry Russell, United

3    States Bankruptcy Judge, Docket No. 42 at p. 85, lines 21-25 through p. 87, lines 1-14.

4    The Court notes that despite debtor's counsel's statements in the above

5    proceedings that he understood what the Court had said and would comply with the

6    Court's June 10, 2020 Order, the debtor instead filed the Emergency Motion less than

7    twenty-four (24) hours before the deadline imposed by the June 10, 2020 for the filing of

8    the Rechnitz's joint declaration.

9    The Court further notes that the despite the Emergency Motion's arguments

10    regarding the Rechnitz's Fifth Amendment privilege, the debtor in this case is an LLC,

11    that the Fifth Amendment privilege only applies to individuals, and that the debtor's

12    principals (the Rechnitz's) are not entitled to assert a Fifth Amendment privilege on the

13    debtor's behalf.

14    The Emergency Motion also argues that the Court may dismiss this case without

15    the requirement of a creditor list, and that the Court is not required to provide creditors

16    (other than the petitioning creditors) an opportunity to join in the involuntary petition. The

17    Court finds this argument unpersuasive in this case.

18    It may very well be that there are additional creditors who may have substantial,

19    undisputed claims against the debtor. The debtor's failure to timely file the list of

20    creditors, as required by the Court's June 10, 2020 Order, will prevent the petitioning

21    creditors from being able to identify any such additional potential creditors and will also

22    prevent the petitioning creditors, and any other additional creditors, from attempting to

23    prove that the debtor is not paying its debts as they become due.

24    ///

25    ///

26    ///

27    ///

28    ///

-4-

EXHIBIT "31", PAGE 632

1        Finally, the Court finds all other arguments in the Emergency Motion equally ill-

2  founded and unpersuasive. Accordingly, no good cause having been shown to grant the

3  Emergency Motion, the Emergency Motion is **DENIED**.

4      **IT IS SO ORDERED**.

Date: June 16, 2020

Barry Russell
United States Bankruptcy Judge

-5-

EXHIBIT "31", PAGE 633

Case 2:20-cv-06153-DOC-DFM Document 16-1 Filed 07/10/20 Page 380 of 439 Page ID #:871

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-BR    Doc 54    Filed 06/16/20    Entered 06/16/20 15:59:50    Desc
Main Document    Page 16 of 20
Main Document    Page 1 of 3

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br>                  Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DIRECTING CLERK OF COURT TO IMMEDIATELY ENTER AN ORDER FOR RELIEF UNDER CHAPTER 7, AND REQUIRING THE DEBTOR TO FILE ALL SCHEDULES AND RELATED DOCUMENTATION FOR A CHAPTER 7 CASE WITHIN FOURTEEN DAYS OF THE ENTRY OF THIS ORDER**<br><br>[No Hearing Required] |

On June 10, 2020, the Court entered its "Order: (1) Directing Rachel Rechnitz And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference" ("June 10 Order"), wherein the Court specifically ordered, *inter alia,* that:

-1-

Case 2:20-cv-06128-DOC-DSS Document 16-1 Filed 07/10/20 Page 381 of 439 Page ID #:872

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-BR    Doc 54    Filed 06/16/20    Entered 06/16/20 15:59:50    Desc
                           Main Document    Page 17 of 20
                           Main Document    Page 2 of 3

1.  Rachel Rechnitz and Jona Rechnitz (collectively, the 'Rechnitz's') must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

a. the name of the creditor;

b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

c. the amount of the creditor's claim;

d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2.  The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3.  If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order for relief in this case. [ . . .]

June 10, 2020 Order, docket no. 39, pages 3 and 4.

The debtor filed an "Emergency Motion For (1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion") on June 15, 2020. The Court denied the Emergency Motion by a separate order entered on June 16, 2020.

As of 3:00 p.m. on June 16, 2020, the Rechnitz's failed to file the joint declaration under penalty of perjury, the required list of creditors, or otherwise comply with the June 10, 2020 Order in any respect. Accordingly, **IT IS HEREBY ORDERED** that:

-2-

EXHIBIT "31", PAGE 635

Case 2:20-cv-06183-DOC Document 16-1 Filed 07/10/20 Page 382 of 439 Page ID #:873

Case 2:20-bk-13530-BR    Doc 88    Filed 07/01/20    Entered 07/02/20 08:56:12    Desc
Case 2:20-bk-13530-BR    Doc 54    Filed 06/16/20    Entered 06/16/20 15:59:50    Desc
                         Main Document    Page 18 of 20
                         Main Document    Page 3 of 3

1    1.  The Clerk of Court shall enter an order for relief under chapter 7 of the

2        Bankruptcy Code immediately upon entry of this Order; and

3    2.  The debtor is required to file all schedules and related documentation for a

4        chapter 7 case, in accordance with the Local Bankruptcy Rules, within

5        fourteen (14) days from the date of entry of this Order.

6    **IT IS SO ORDERED.**

7                                        ###

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: June 16, 2020

26                                        Barry Russell
                                          United States Bankruptcy Judge
27

28

-3-

EXHIBIT "31", PAGE 636

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

724 S. Spring St., 9th Floor, Los Angeles, CA 90014

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 07/01/2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 07/01/2020 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Nationwide:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple St., Suite 1660/Courtroom 1668
Los Angles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 07/01/2020 | Raul Chavarin | *(signature)* |
| *Date* | *Printed Name* | *Signature* |

EXHIBIT "31", PAGE 637

## PROOF OF SERVICE CONT'D

Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213

Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Sam S. Leslie
Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA 90035

4

EXHIBIT "31", PAGE 638

# EXHIBIT "32"

ORIGINAL

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Jona Rechnitz<br>9533 Sawyer Street<br>Los Angeles, CA 90035<br>(646) 283-3283 | FOR COURT USE ONLY<br><br>FILED<br><br>JUL - 1 2020<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:_____ Deputy Clerk |
|---|---|
| ☒ Individual appearing without attorney<br>☐ Attorney for: | |

BY FAX

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>JADELLE JEWELRY AND DIAMONDS, LLC<br><br><br><br>Debtor(s). | CASE NO.:2:20-bk-13530-BR<br><br>ADVERSARY NO.:<br>(if applicable)<br><br>CHAPTER: 7 |
|---|---|
| <br><br>Plaintiff(s) (if applicable).<br>vs.<br><br><br><br>Defendant(s) (if applicable). | AMENDED<br>**NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1:  Identify the appellant(s)**

1.  Name(s) of appellant(s):  Jona Rechnitz _____

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (describe):

For appeals in a bankruptcy case and not in an adversary proceeding.
☐ Debtor
☐ Creditor
☐ Trustee
☒ Other (describe): Interested Party

EXHIBIT "32", PAGE 639

**Part 2: Identify the subject of this appeal**

1.  Describe the judgment, order, or decree appealed from:

    See attachment.

2.  The date the judgment, order, or decree was entered:  <u>See attachment.</u>

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (*attach additional pages if necessary*):

1.  Party:  See attachment.

    Attorney:

2.  Party:

    Attorney:

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

_____    Date: <u>06/30/2020</u>
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

EXHIBIT "32", PAGE 640

## PART 2: THE SUBJECT OF THIS APPEAL

**1.** *Order for Relief and Order to File Schedules, Statements and List(s)* [Docket No. 55], entered on June 16, 2020.

**2.** *Order: (1) Directing Rachel Rechnitz and Jona Rechnitz to File Joint Declaration Under Penalty of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration and Conduct Certain Discovery; (3) Setting Date for Hearing On Status Conference; and (4) Setting Date for Filing of Joint Status Report Prior to Status Conference* [Docket No. 39], entered on June 10, 2020.

**3.** *Order Denying "Putative Debtor's Emergency Motion for (1) Reconsideration of the Court's Order, of (2) Alternatively, a Stay of the Bankruptcy Case"* [Docket No. 53], entered on June 16, 2020.

**4.** *Order Directing Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7, and Requiring the Debtor to File All Schedules and Related Documentation for a Chapter 7 Case Within Fourteen Days of the Entry of this Order* [Docket No. 54], entered on June 16, 2020.

## PART 3: PARTIES TO THE APPEAL

**1.** Party: Jadelle Jewelry and Diamonds, LLC, Appellant and Debtor

Counsel:
Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
(714) 445-1000

**2.** Party: Victor Franco Noval, Petitioning Creditor

Counsel:
Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213
(310) 556-1001

and

Dan Lev
SulmeyerKupetz

1

EXHIBIT "32", PAGE 641

333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

3. Party: Peter Marco, LLC, Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

4. Party: First International Diamond, Inc., Petitioning Creditor

Counsel:
Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501

and

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213) 626-2311

5. Party: Sam S. Leslie, Interim Chapter 7 Trustee

Sam S. Leslie
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

and

2

EXHIBIT "32", PAGE 642

Counsel: Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010
(213) 368-5000

**6.** Party: Rachel Rechnitz, Member and Managing Member,
Jadelle Jewelry and Diamonds, LLC

Rachel Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

**7.** Interested Party: Jona Rechnitz

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA  90035
(646) 283-3283

3

EXHIBIT "32", PAGE 643

Case 2:20-cv-06183-DOC3 Document 16-1 Filed 07/10/20 Page 391 of 439 Page ID #:882

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-B    Main Document 06/16/20    Entered    /16/20 16:03:27    Desc
Ord Rlf/Ord File Shcd Stmnt    Page 1 or 1

Form ofri–(orlf7,orlf11,iors) VAN–93
Rev. 12/2015

# United States Bankruptcy Court
## Central District of California

### 255 East Temple Street, Los Angeles, CA 90012

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
Jadelle Jewelry And Diamonds LLC a Delaware
limited liability company
dba Jadelle Inc
**SSN:** N/A
**EIN:** 00–0000000

**BANKRUPTCY NO.** 2:20–bk–13530–BR
**CHAPTER** 7

9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above–named debtor on April 6, 2020

☐ Debtor consented to the entry of an order of relief.

☐ No pleading or other defense to the petition having been filed within 21 days after service of the summons (or within any longer period of time precribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is ordered to file within **seven** days after entry of this order for relief, a list containing the name and address of each entity included on Schedule D, E/F, G, and H as prescribed by the Official Forms (Federal Rule of Bankruptcy Procedure 1007 (a)(2)).

Debtor is also ordered to file schedules, statement and Statement About Your Social Security Numbers (Official Form B121) referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) and (f) within 14 days after entry of this Order For Relief.

For The Court,

Dated: June 16, 2020

**Kathleen J. Campbell**
Clerk of Court

(Form ofri–orlf7,orlf11,iors) VAN–93 Rev. 12/2015

**55 / SF**

EXHIBIT "32", PAGE 644

Case 2:20-cv-06158-DOC-DFM Document 16-1 Filed 07/10/20 Page 392 of 439 Page ID #:883

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-BR    Doc 39    Filed 06/10/20    Entered 10/20 13:01:33    Desc
Main Document    Page 7 of 20
Main Document    Page 1 of 4

FILED & ENTERED

JUN 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

In re:

Jadelle Jewelry and Diamonds LLC,

Debtor(s).

Case No.: 2:20-bk-13530-BR

Chapter 7

**ORDER:**

**(1) DIRECTING RACHEL RECHNITZ AND JONA RECHNITZ TO FILE JOINT DECLARATION UNDER PENALTY OF PERJURY;**

**(2) SETTING DATE BY WHICH PETITIONING CREDITORS MAY CONTACT CREDITORS IDENTIFIED IN JOINT DECLARATION AND CONDUCT CERTAIN DISCOVERY;**

**(3) SETTING DATE FOR HEARING ON STATUS CONFERENCE; AND**

**(4) SETTING DATE FOR FILING OF JOINT STATUS REPORT PRIOR TO STATUS CONFERENCE**

Date:        June 9, 2020
Time:        10:00 a.m.
Courtroom: 1668

-1-

Case 2:20-cv-06155-DOC-DC3 Document 16-1 Filed 07/10/20 Page 393 of 439 Page ID #:884

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-L    Doc 39    Filed 06/10/20    Entered    10/20 13:01:33    Desc
Main Document    Page 2 of 4

1    The Court held a hearing on June 9, 2020 on the following two motions: the

2    "Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's

3    Fees, Costs and Damages" ("Motion to Dismiss"), filed by the debtor on May 1, 2020,

4
5    and the "Petitioning Creditors' Notice of Motion and Motion for Appointment of Interim

6    Chapter 7 Trustee" ("Trustee Appointment Motion") filed on May 19, 2020 by petitioning

7    creditors Victor Franco Noval, Peter Marco, LLC and First International Diamond, Inc.

8    Robert S. Marticello, Esq. of Smiley, Wang-Ekvall, LLP appeared on behalf of the

9    debtor. Ronald Richards of the Law Firm of Ronald L. Richards & Associates, APC,

10   Baruch C. Cohen, APLC and Daniel A. Lev, Esq. of SulmeyerKupetz, A Professional

11
12   Corporation, appeared on behalf of the petitioning creditors.

13   With respect to the debtor's Motion to Dismiss, the Court considered the Motion,

14   the petitioning creditors' Opposition to the Motion, the debtor's Reply to the petitioning

15   creditors' Opposition, and all pleadings related to the Motion, Opposition and Reply.

16   With respect to the petitioning creditors' Trustee Appointment Motion, the Court

17   considered the Motion and all related pleadings including the separately filed

18
19   declarations of Ronald Richards, Oved Anter, Victor Franco Noval, and Peter Marco,

20   the debtor's Opposition to the Motion, the petitioning creditors' Reply to the debtor's

21   Opposition, and all other pleadings related to the Motion, Opposition and Reply.

22   The Court also considered the debtor's separately filed declarations of Levin

23   Prado and Marc Williams in Opposition to the Trustee Appointment Motion, the debtor's

24
25   evidentiary objections to the declarations of Oved Anter, Victor Franco Noval, Peter

26   Marco and Ronald Richards, the petitioning creditors' evidentiary objections to the

27   debtor's Request for Judicial Notice, and all other pleadings related to the Motion,

28   Opposition and Reply.

-2-

At the June 9 hearing, the Court ruled on the record on all of the evidentiary objections and heard argument and representations of counsel. After consideration of all of the above, the Court **HEREBY ORDERS AS FOLLOWS**:

1. Rachel Rechnitz and Jona Rechnitz (collectively, the "Rechnitz's") must file a joint declaration, sworn under penalty of perjury, which identifies each and every one of the debtor's creditors as of the date of the filing of the involuntary petition on April 6, 2020. The joint declaration shall include, without limitation, the following information with respect to each creditor identified therein:

   a. the name of the creditor;

   b. the nature of the debt owed to the creditor (*e.g.*, consigned jewelry, rent due and owing, etc.);

   c. the amount of the creditor's claim;

   d. whether the creditor's claim is disputed and, if so, the nature of the dispute; and

   e. complete contact information for each creditor including, but not limited to, the creditor's address, telephone number, cell phone number (if known), fax number (if applicable), and email address (if known);

2. The Rechnitz's shall have seven (7) days from the date of this hearing (*i.e.*, no later than 3:00 p.m. on Tuesday, June 16, 2020) to file their joint declaration with the Court and serve the declaration on counsel for the petitioning creditors;

3. If the Rechnitz's fail to file the joint declaration by that date and time, the Court will deny the debtor's Motion to Dismiss and immediately enter an order

-3-

EXHIBIT "32", PAGE 647

Case 2:20-cv-06183-DOC-DFM Document 16-1 Filed 07/10/20 Page 395 of 439 Page ID #:886

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
                         Main Document    Page 10 of 20
Case 2:20-bk-13530-BR    Doc 39    Filed 06/10/20    Entered 06/10/20 13:01:33    Desc
                         Main Document    Page 4 of 4

for relief in this case. The entry of such an order for relief will render both the
pending Motion to Dismiss and Trustee Appointment Motion moot;

4. If the Rechnitz's file the joint declaration by the required date and time, then:

    a. The petitioning creditors shall have sixty (60) days from the date of
this hearing (*i.e.*, no later than 3:00 p.m. on August 14, 2020) to
contact the creditors listed in the joint declaration to determine if any of
them are willing to join in the involuntary petition;

    b. The petitioning creditors shall have the same sixty (60) day period
within which to conduct discovery of the creditors listed in the joint
declaration, which discovery shall be limited solely to questions
regarding the nature and amount of the creditor's claim and, if the
creditor's claim is listed in the joint declaration as disputed, the nature
of such dispute;

    c. The Court shall hold a status conference on this involuntary case on
August 25, 2020 at 10:00 a.m., and

    d. The parties shall file a joint status report seven (7) days prior to the
status conference (*i.e.*, no later than 3:00 p.m. on August 18, 2020).

**IT IS SO ORDERED.**

###

Date: June 10, 2020

Barry Russell
United States Bankruptcy Judge

-4-

EXHIBIT "32", PAGE 648

Case 2:20-cv-06128-DOC-3 Document 16-1 Filed 07/10/20 Page 396 of 439 Page ID #:887

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
                          Main Document    Page 11 of 20
Case 2:20-bk-13530-L      Doc 53    Filed 06/16/20    Entered    16/20 15:37:59    Desc
                          Main Document    Page 1 of 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

JADELLE JEWELRY AND DIAMONDS
LLC,

                                    Debtor(s).

Case No.: 2:20-bk-13530-BR

Chapter 7

**ORDER DENYING "PUTATIVE DEBTOR'S
EMERGENCY MOTION FOR (1)
RECONSIDERATION OF THE COURT'S
ORDER, OR (2) ALTERNATIVELY, A STAY
OF THE BANKRUPTCY CASE"**

[No Hearing Date Required]

    This matter is before the Court on the "Putative Debtor's Emergency Motion For
(1) Reconsideration Of The Court's Order, Or (2) Alternatively, A Stay Of The
Bankruptcy Case" ("Emergency Motion"), filed by the debtor on June 15, 2020.

    The Court has considered the Emergency Motion and all related pleadings filed
in support thereof, consisting of the supporting declarations of Robert S. Marticello and
Michael V. Schafler (including an Errata thereto), an Index of Exhibits and a Request
For Judicial Notice as well as the petitioning creditors' Preliminary Opposition thereto.

-1-

EXHIBIT "32", PAGE 649

Case 2:20-cv-06158-DOC-DFM Document 16-1 Filed 07/10/20 Page 397 of 439 Page ID #:888

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-BR    Doc 53    Filed 06/16/20    Entered 06/16/20 15:37:59    Desc
Main Document    Page 12 of 20
Main Document    Page 2 of 5

1    The Emergency Motion seeks reconsideration of the Court's order entered on

2  June 10, 2020 ("June 10, 2020 Order") entitled "Order: (1) Directing Rachel Rechnitz

3  And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date

4  By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And

5  Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And

6  (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference."

7    The June 10 Order specifically ordered, *inter alia* that:

8          1. Rachel Rechnitz and Jona Rechnitz (collectively, the
           'Rechnitz's') must file a joint declaration, sworn under
9          penalty of perjury, which identifies each and every one of the
           debtor's creditors as of the date of the filing of the
10         involuntary petition on April 6, 2020. The joint declaration
           shall include, without limitation, the following information with
11         respect to each creditor identified therein: . . .

12

13  June 10, 2020 Order (docket no. 39), page 3.

14    The Court issued its June 10, 2020 Order following a telephonic hearing on June

15  9, 2020 on two motions: the "Putative Debtor's Motion to Dismiss Involuntary Petition

16  and Request for Attorney's Fees, Costs and Damages" ("Motion to Dismiss"), filed by

17  the debtor on May 1, 2020, and the "Petitioning Creditors' Notice of Motion and Motion

18  for Appointment of Interim Chapter 7 Trustee," filed by the petitioning creditors on May

19  19, 2020. At that hearing, the Court heard argument and representations of counsel

20  regarding both motions, made evidentiary rulings on the record, and made its oral ruling

21  as reflected in its June 10, 2020 Order.

22    A major focus of the Emergency Motion is the debtor's argument that the June

23  10, 2020 Order deprives the debtor's principals, Rachel and Jona Rechnitz, of their Fifth

24  Amendment privilege against self-incrimination by its requirement that the Rechnitz's file

25  a joint declaration under penalty of perjury regarding the identity of the debtor's creditors

26  and by allowing the petitioning creditors to conduct certain limited discovery with respect

27  to the creditors identified by them.

28

-2-

Case 2:20-cv-06158-DOC-DFM Document 16-1 Filed 07/10/20 Page 398 of 439 Page ID #:889

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-L    Doc 53    Filed 06/16/20    Entered 06/16/20 15:37:59    Desc
Main Document    Page 3 of 5

1    The Court, however, specifically addressed the Fifth Amendment privilege issue

2  with the debtor's counsel, Robert S. Marticello, at the June 9, 2020 hearing on the

3  debtor's Motion to Dismiss:

4           THE COURT: I know that there are criminal -- there are
         other charges and so there's a lot of stuff going on. I have no
5        opinion. I know what happened in the state court, but I have
         no opinion as to the ultimate outcome. But I tell you this, if
6        either -- or they both must comply and I make it quite clear. If
         they don't comply with the request, whether it's Fifth
7        Amendment or whatever, then I will enter the order for relief.
         Is it the debt -- from the debtor's standpoint, do you
8        understand that? Mr. Marticello, do you understand that?
9

10          MR. MARTICELLO: Your Honor, this is Robert Marticello for
         the debtor. I understand the Court's – what the Court just
11       said and I will comply with the Court's order. My concern is,
         Your Honor, like you said there are other things going on
12       and –
13
            THE COURT: No, I understand that. But, no, I'm telling you –
14
            MR. MARTICELLO: -- if there is a -- if there's a –
15
            THE COURT: -- this is really simple and I can't -- I'm not -- I -
16       - people have a right to the -- you know, to take the Fifth and
         I -- again, whether they do or not I have no idea. But I'm
17       telling you right now the creditors have a right to this
         information. If they refuse, either of them, I want both of
18       them to sign it because it's not clear to me exactly who's
         really running the business. My guess is that maybe the
19       husband is but I don't know that, just from the various
         pleadings. I don't really know. So there -- therefore, I am
20       requiring both to sign under penalty of perjury. And if nei --
         and if they don't both sign it under penalty of perjury, then I
21       will enter an order for relief. I just want you -- you -- I want
         you in particular and your clients, the debtor, the principals,
22       to understand that. You do -- you understand what I've said.
         I want them to understand it. That would be the price for not
23       complying with my order. You –
24
            MR. MARTICELLO: I understand, Your Honor.
25
            THE COURT: Mr. Marticello, you understand what I've said
26       obviously. I'm not being facetious. You understand. And so
27       any –
28

-3-

EXHIBIT "32", PAGE 651

Case 2:20-cv-06138-DOC-3 Document 16-8 Filed 07/10/20 Page 399 of 439 Page ID #:890

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-L    Doc 53    Filed 06/16/20    Entered    16/20 15:37:59    Desc
Main Document    Page 14 of 20
Main Document    Page 4 of 5

1        MR. MARTICELLO: Correct, Your Honor.

2    Transcript of Telephonic Proceedings Before The Honorable Barry Russell, United

3    States Bankruptcy Judge, Docket No. 42 at p. 85, lines 21-25 through p. 87, lines 1-14.

4        The Court notes that despite debtor's counsel's statements in the above

5    proceedings that he understood what the Court had said and would comply with the

6    Court's June 10, 2020 Order, the debtor instead filed the Emergency Motion less than

7    twenty-four (24) hours before the deadline imposed by the June 10, 2020 for the filing of

8    the Rechnitz's joint declaration.

9        The Court further notes that the despite the Emergency Motion's arguments

10    regarding the Rechnitz's Fifth Amendment privilege, the debtor in this case is an LLC,

11    that the Fifth Amendment privilege only applies to individuals, and that the debtor's

12    principals (the Rechnitz's) are not entitled to assert a Fifth Amendment privilege on the

13    debtor's behalf.

14        The Emergency Motion also argues that the Court may dismiss this case without

15    the requirement of a creditor list, and that the Court is not required to provide creditors

16    (other than the petitioning creditors) an opportunity to join in the involuntary petition. The

17    Court finds this argument unpersuasive in this case.

18        It may very well be that there are additional creditors who may have substantial,

19    undisputed claims against the debtor. The debtor's failure to timely file the list of

20    creditors, as required by the Court's June 10, 2020 Order, will prevent the petitioning

21    creditors from being able to identify any such additional potential creditors and will also

22    prevent the petitioning creditors, and any other additional creditors, from attempting to

23    prove that the debtor is not paying its debts as they become due.

24    ///

25    ///

26    ///

27    ///

28    ///

-4-

EXHIBIT "32", PAGE 652

Case 2:20-cv-06155-DOC-DSS Document 16-1 Filed 07/10/20 Page 400 of 439 Page ID #:891

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-BR    Doc 53    Filed 06/16/20    Entered 06/16/20 15:37:59    Desc
         Main Document    Page 15 of 20
         Main Document    Page 5 of 5

1    Finally, the Court finds all other arguments in the Emergency Motion equally ill-

2   founded and unpersuasive. Accordingly, no good cause having been shown to grant the

3   Emergency Motion, the Emergency Motion is **DENIED**.

4         **IT IS SO ORDERED**.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: June 16, 2020

26                                      Barry Russell
                                       United States Bankruptcy Judge
27

28

-5-

Case 2:20-cv-06128-DOC-DFM Document 16-1 Filed 07/10/20 Page 401 of 439 Page ID #:892

Case 2:20-bk-13530-BR Doc 89 Filed 07/01/20 Entered 07/02/20 09:00:20 Desc
Case 2:20-bk-13530-E Doc 54 Filed 06/16/20 16/20 15:59:50 Desc
Main Document Page 16 of 20
Main Document Page 1 of 3

<div style="text-align:center; border:1px solid;">
FILED & ENTERED

JUN 16 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK
</div>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>JADELLE JEWELRY AND DIAMONDS LLC,<br><br><br><br>Debtor(s). | Case No.: 2:20-bk-13530-BR<br><br>Chapter 7<br><br>**ORDER DIRECTING CLERK OF COURT TO IMMEDIATELY ENTER AN ORDER FOR RELIEF UNDER CHAPTER 7, AND REQUIRING THE DEBTOR TO FILE ALL SCHEDULES AND RELATED DOCUMENTATION FOR A CHAPTER 7 CASE WITHIN FOURTEEN DAYS OF THE ENTRY OF THIS ORDER**<br><br>[No Hearing Required] |

On June 10, 2020, the Court entered its "Order: (1) Directing Rachel Rechnitz And Jona Rechnitz To File Joint Declaration Under Penalty Of Perjury; (2) Setting Date By Which Petitioning Creditors May Contact Creditors Identified In Joint Declaration And Conduct Certain Discovery; (3) Setting Date For Hearing On Status Conference; And (4) Setting Date For Filing Of Joint Status Report Prior To Status Conference" ("June 10 Order"), wherein the Court specifically ordered, *inter alia,* that:

-1-

Case 2:20-cv-06133-DOC-DFM Document 16-1 Filed 07/10/20 Page 402 of 439 Page ID #:893

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Main Document    Page 17 of 20
Case 2:20-bk-13530-L    Doc 54    Filed 06/16/20    Entered .16/20 15:59:50    Desc
Main Document    Page 2 of 3

1

2    1.  Rachel Rechnitz and Jona Rechnitz (collectively, the
     'Rechnitz's') must file a joint declaration, sworn under

3    penalty of perjury, which identifies each and every one of the
     debtor's creditors as of the date of the filing of the

4    involuntary petition on April 6, 2020. The joint declaration
     shall include, without limitation, the following information with

5    respect to each creditor identified therein:

6        a. the name of the creditor;

7        b. the nature of the debt owed to the creditor (e.g.,
         consigned jewelry, rent due and owing, etc.);

8
         c. the amount of the creditor's claim;

9
         d. whether the creditor's claim is disputed and, if so,

10       the nature of the dispute; and

11
         e. complete contact information for each creditor

12       including, but not limited to, the creditor's address,
         telephone number, cell phone number (if known), fax

13       number (if applicable), and email address (if known);

14
     2.  The Rechnitz's shall have seven (7) days from the date of

15   this hearing (i.e., no later than 3:00 p.m. on Tuesday, June
     16, 2020) to file their joint declaration with the Court and

16   serve the declaration on counsel for the petitioning creditors;

17   3.  If the Rechnitz's fail to file the joint declaration by that

18   date and time, the Court will deny the debtor's Motion to
     Dismiss and immediately enter an order for relief in this

19   case. [. . .]

20   June 10, 2020 Order, docket no. 39, pages 3 and 4.

21       The debtor filed an "Emergency Motion For (1) Reconsideration Of The Court's

22   Order, Or (2) Alternatively, A Stay Of The Bankruptcy Case" ("Emergency Motion") on

23   June 15, 2020. The Court denied the Emergency Motion by a separate order entered on

24   June 16, 2020.

25       As of 3:00 p.m. on June 16, 2020, the Rechnitz's failed to file the joint declaration

26   under penalty of perjury, the required list of creditors, or otherwise comply with the June

27   10, 2020 Order in any respect. Accordingly, **IT IS HEREBY ORDERED** that:

28

-2-

EXHIBIT "32", PAGE 655

Case 2:20-cv-06158-DOC Document 16-1 Filed 07/10/20 Page 403 of 439 Page ID #:894

Case 2:20-bk-13530-BR    Doc 89    Filed 07/01/20    Entered 07/02/20 09:00:20    Desc
Case 2:20-bk-13530-L    Main Document    Page 18 of 20
Doc 54    Filed 06/16/20    Entered    .16/20 15:59:50    Desc
Main Document    Page 3 of 3

1.  The Clerk of Court shall enter an order for relief under chapter 7 of the Bankruptcy Code immediately upon entry of this Order; and

2.  The debtor is required to file all schedules and related documentation for a chapter 7 case, in accordance with the Local Bankruptcy Rules, within fourteen (14) days from the date of entry of this Order.

**IT IS SO ORDERED.**

###

Date: June 16, 2020

Barry Russell
United States Bankruptcy Judge

-3-

EXHIBIT "32", PAGE 656

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

724 S. Spring St., 9th Floor, Los Angeles, CA 90014

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) __07/01/2020__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Robert Marticello
Michael Simon
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __07/01/2020__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Nationwide:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple St., Suite 1660/Courtroom 1668
Los Angles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| __07/01/2020__ | Raul Chavarin | *Signature* |
| *Date* | *Printed Name* | |

EXHIBIT "32", PAGE 657

## PROOF OF SERVICE CONT'D

Ronald Richards
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, CA 90213

Baruch Cohen
Law Offices of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010

Dan Lev
SulmeyerKupetz
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Sam S. Leslie
Carolyn Dye
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010

Rachel Rechnitz
9533 Sawyer Street
Los Angeles, CA 90035

4

EXHIBIT "32", PAGE 658

EXHIBIT "33"

**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Jadelle Jewelry and Diamonds, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13530-BR |
| JADELLE JEWELRY AND DIAMONDS, LLC, | Chapter 7 |
| Debtor. | **EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL; AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Declaration of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice and Index of Exhibits filed concurrently herewith] |

///

///

///

2829078.1

EMERGENCY MOTION

EXHIBIT "33", PAGE 659

## TABLE OF CONTENTS

<div align="right">Page</div>

I.    INTRODUCTION ...................................................................................................2

II.   BACKGROUND ..................................................................................................5

      A.   Commencement of the Case ...................................................................5

      B.   The Hearing on the Motion to Dismiss and the Court's Order ...............5

      C.   The Ineligible Creditors Immediately Begin to Take Advantage of the Order ..........7

      D.   The Criminal Investigation .....................................................................7

      E.   The Entry of the Order For Relief ...........................................................8

      F.   The Basis for the Order for Relief ...........................................................9

      G.   The Appointment of the Trustee ...........................................................10

III.  THE LEGAL STANDARD FOR STAYING A CASE PENDING APPEAL ....................10

IV.   THE DEBTOR HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL ..............11

      A.   The Order For Relief Must Be Vacated ..................................................12

           1.   Entry of the Order for Relief Violated the Code ...........................12

           2.   The Order For Relief Cannot Be Justified as a Terminating Sanction ........13

           3.   The Order Is Void for Violation of Due Process ...........................17

      B.   The Court's Denial of the Motion to Dismiss Was In Error ....................18

           1.   The Court Was Required to Dismiss the Case Because the Ineligible Creditors Lacked Statutory Standing ..........................18

           2.   The Court Was Required to Enter a Dispositive Order Dismissing the Case Under the Bankruptcy Rules ..........................18

      C.   The Court Erred in Not Dismissing the Case for Bad Faith ....................20

      D.   The Court Erred in Denying the Debtor's Request for a Stay Pending the Related Criminal Investigation ..........................22

V.    THE DEBTOR WILL BE IRREPARABLY HARMED ABSENT A STAY ....................23

VI.   THE INELIGIBLE CREDITORS WILL NOT BE SUBSTANTIALLY INJURED BY A STAY ..............................................................25

VII.  A STAY WILL NOT HARM NON-PARTIES ..................................................26

VIII. THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY .................................26

IX.   CONCLUSION ...................................................................................................27

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

i                    TABLE OF CONTENTS

EXHIBIT "33", PAGE 660

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Jadelle Jewelry and Diamonds, LLC, the debtor (the "Debtor"), hereby files this emergency motion (the "Motion") for a stay of the case pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8007.  Victor Franco Noval ("Noval"), Peter Marco, LLC ("Marco"), and First International, Inc. ("First International"), shall be collectively referred to as the "Ineligible Creditors."  In support of this Motion, the Debtor submits the concurrently-filed Declarations of Robert S. Marticello, Declaration of Michael V Schafler, Request for Judicial Notice, and Index of Exhibits, and the following memorandum of points and authorities.

On June 19, 2020, the Debtor filed a notice of appeal to the Bankruptcy Appellate Panel for the Ninth Circuit (the "Appeal").  The Appeal arises from the following four orders of the Court:

1.  The order entered on June 10, 2020 [Docket No. 39] (the "June 10 Order") requiring that Jona Rechnitz and Rachel Rechnitz (the "Rechnitz Parties") file a joint declaration under penalty of perjury identifying an providing certain information regarding the alleged creditors of the Debtor;

2.  The order entered on June 16, 2020 [Docket No. 53] (the "Order Denying a Stay") denying the Debtor's motion for reconsideration of the June 10 Order or, alternatively, for a stay pending the ongoing criminal investigation;

3.  The order entered on June 16, 2020 [Docket No. 54] (the "June 16 Order") directing the entry of an order for relief; and

4.  The order for relief entered on June 16, 2020 [Docket No. 55] (the "Order for Relief").

///
///
///

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## MEMORANDUM AND POINTS AND AUTHORITIES

**I.     INTRODUCTION**

By the Motion, the Debtor seeks a stay pending the Appeal.  The questions presented by the Appeal are:

1.     Whether the Court erred when it entered an order for relief when none of the express elements set forth in the Bankruptcy Code had been satisfied; and

2.     Whether the Court erred when it declined to grant the Debtor's motion to dismiss the involuntary petition after finding that each of the three petitioning creditors are ineligible and lacked standing to commence the case.

As demonstrated below, the Debtor is likely to succeed on the merits of both questions and will be irreparably harmed if a stay pending appeal is not granted.

This case was commenced in bad faith by three ineligible petitioning creditors holding disputed litigation claims.  The Debtor timely and appropriately contested the involuntary petition with a motion to dismiss under Rule 12(b)(6).  At the hearing on that motion, the Court determined that all three petitioning creditors were ineligible and lacked standing to commence the case based on their own judicial admissions and the facts subject to judicial notice.  The Court did not, however, grant the motion and dismiss the case.  Instead, the Court ordered *sua sponte* and without briefing that two non-debtors who were not present or represented at the hearing, the Rechnitz Parities, file a joint declaration under penalty of perjury within seven days identifying all of the Debtor's alleged creditors.  The Court further ordered that if the Rechnitz Parties did not file the joint declaration, including due to the invocation of their Fifth Amendment rights, then it would enter an order for relief against the Debtor.  In other words, the Court ordered that it would impose terminating sanctions against the Debtor, if the Rechnitz Parties properly invoked their Fifth Amendment rights.  The Rechnitz Parties permissibly and on advice of counsel exercised their Fifth Amendment rights and declined to file the joint declaration.  The Court entered the June 16 Order denying the *meritorious* motion to dismiss and directing the entry of the Order for Relief (eliminating the Debtor's rights to answer and a trial).

2

EMERGENCY MOTION

EXHIBIT "33", PAGE 662

A stay pending appeal is appropriate and necessary because there is a strong likelihood that the Debtor will succeed on appeal. The entry of the Order for Relief is contrary to the Bankruptcy Code, the Bankruptcy Rules, United States Supreme Court precedent, and Ninth Circuit law, and is not a proper exercise of the Court's inherent authority to sanction.

The entry of the Order for Relief is contrary to the express and unambiguous provisions of the Code. Due to the extreme nature of an involuntary bankruptcy case, the Code enumerates the specific requirements that must be satisfied. An involuntary case must be commenced by the requisite number of eligible petitioning creditors. *See* 11 U.S.C. § 303(b). If a putative debtor timely contests the involuntary petition, then a bankruptcy court can order relief "*after trial*" and "*only if*" it finds that the debtor is generally not paying its undisputed debts as they become due. *See* 11 U.S.C. § 303(h) (emphasis added). The Debtor timely contested the involuntary petition by its motion to dismiss. There were no eligible petitioning creditors as required by § 303(b). Moreover, there was no trial and the Court did not find, as required by § 303(h), that the Debtor is not paying its undisputed debts as they come due. As such, the entry of the Order for Relief violated the Code.

The entry of the Order for Relief exceeds the Court's inherent authority to sanction a party in at least three respects. First, the Court lacks the authority to issue sanctions that are contrary to the express provisions of the Code under the Supreme Court's decision in *Law v. Siegel*. Second, the entry of the Order for Relief was not in response to the type of "extreme circumstances" (*i.e.*, willful deception of the Court) required by the Ninth Circuit to justify terminating sanctions. Neither the Rechnitz Parties nor the Debtor have done anything to warrant terminating (or any other) sanctions. The Rechnitz Parties permissibly and on advice of counsel exercised their constitutional (Fifth Amendment) rights. At worst, this gives rise to an adverse inference *at trial*, as opposed to terminating sanctions and the immediate entry of default judgment. Third, the Ninth Circuit has made clear that imposing the harshest sanction—a terminating sanction—in response to a proper exercise of the Fifth Amendment is an abuse of discretion. Thus, there is no proper legal basis for the entry of the Order for Relief and the Order for Relief must be vacated.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    The Court was required to grant the Debtor's motion to dismiss.  Under controlling Ninth

2    Circuit law, a bona fide dispute as to any portion of a creditor's claim strips the creditor of

3    statutory standing under § 303.  The Court found that the Ineligible Creditors lacked standing to

4    commence this case because their respective claims are subject to bona fide disputes and the Court

5    did so based on the standard for a Rule 12(b)(6) motion to dismiss.  According to the Ninth

6    Circuit, a lack of statutory standing *requires* dismissal for failure to state a claim.  Moreover,

7    because the Court concluded that the Debtor's motion to dismiss had merit, it was required, by

8    Bankruptcy Rule 1013(a) and Ninth Circuit precedent, to enter a dispositive order granting the

9    motion and dismissing the case.  The Court's decision to delay granting a meritorious motion to

10    dismiss in order to provide three ineligible creditors a further 60 days to attempt to convince non-

11    petitioners to join the involuntary petition was not permitted by the Code or the Bankruptcy Rules,

12    and was an abuse of discretion.  For all these reasons, there is not only a strong likelihood that the

13    Order for Relief will be vacated, but that the case will be dismissed.

14    A stay is necessary to avoid irreparable harm.  An involuntary bankruptcy is an "extreme

15    remedy with dire consequences . . . ."  *See In re Anmuth Holdings LLC*, 600 B.R. 168, 188 (Bankr.

16    E.D.N.Y. 2019) (internal quotation marks omitted).  The entry of an order for relief may

17    "seriously affect substantive rights" and has "a great potential for irreparable injury. . . ."  *See In re*

18    *Mason*, 709 F.2d 1313, 1316-17 (9th Cir. 1983).  Debtors are dispossessed of their property,

19    operations cease, and a trustee is appointed to gather and liquidate assets.  *See id.* at 1317.

20    Placing a company in bankruptcy against its will and the legal ramifications that automatically and

21    immediately arise, constitute, in and of themselves, irreparable harm.  Here, the irreparable harm

22    from the case proceeding is much greater where *none* of the elements required by the Code for the

23    entry of the Order for Relief were satisfied.  In contrast, the Ineligible Creditors will not be

24    harmed by a stay—they had no standing or right to an order for relief in the first place.  A stay

25    merely preserves the *status quo* and furthers judicial economy pending the Appeal.  Given the

26    extreme nature and serious consequences of the entry of an order for relief, the balance of harms

27    weighs heavily in favor of staying this case pending appeal.

28

EXHIBIT "33", PAGE 664

1    Accordingly, the Debtor requests that the Court stay this case pending the Appeal.  Cause

2    exists to hear or decide the Motion on an emergency basis because the Appeal calls into question

3    the existence of this case in its entirety.  Moreover, because the upcoming deadlines relate to

4    topics on which the Rechnitz Parties will invoke their Fifth Amendment privileges, a number of

5    disputes are likely to ensue.  A party must ordinarily seek a stay from the bankruptcy court before

6    requesting a stay from the appellate court.  The Debtor requests a temporary stay pending the

7    Court's consideration of the Motion, and, if the Court is inclined to deny the Motion, a temporary

8    stay to allow the Debtor to file a motion with the appellate court on an emergency basis.

9

10    **II.    BACKGROUND**

11    **A.    Commencement of the Case**

12    On April 6, 2020, the Ineligible Creditors filed an involuntary chapter 7 petition against the

13    Debtor [Docket No. 1] (the "Involuntary Petition").  (*See* Involuntary Petition, Index of Exhibits[1],

14    Ex. 5. at Bates Stamp 17.)  A response to the Involuntary Petition is due within 21 days of service,

15    plus three additional days if service was by mail.  *See* Fed. R. Bankr. P. 1011 & 9006(f).  The

16    Ineligible Creditors served the Involuntary Petition via mail, and, as a result, the Debtor's response

17    was due on May 1, 2020.  On that date, the Debtor filed a motion to dismiss the case for failure to

18    state a claim under Rule 12(b)(6) [Docket No. 8] (the "Motion to Dismiss").  By the Motion to

19    Dismiss, the Debtor also sought dismissal on the grounds that the Ineligible Creditors filed the

20    case in bad faith.

21    **B.    The Hearing on the Motion to Dismiss and the Court's Order**

22    On June 9, 2020, at 10:00 a.m., the Court heard two motions, the Motion to Dismiss and

23    the Ineligible Creditors' motion for the appointment of an interim trustee [Docket No. 12] (the

24    "Trustee Motion").  A status conference was also on calendar that day.

25    With respect to the Motion to Dismiss, the Court determined that, as argued by the Debtor,

26    the Ineligible Creditors are ineligible to be petitioning creditors because their claims are subject to

27

28    _____
[1] Unless otherwise expressly provided herein, all exhibit references are to the concurrently filed Index of Exhibits.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 665

1   bona fide disputes as to amount and/or liability based on the Ineligible Creditors' judicial

2   admissions and the facts subject to judicial notice.  (*See* Transcript of June 09, 2020 Hearings., Ex.

3   7 at Bates Stamps 89, lines 12 - 23; at Bates Stamp 91, lines 8 - 21; at Bates Stamp 95, lines 7 –

4   18; at Bates Stamp 95, line 24 – Bates Stamp 96, line 5; at Bates Stamp 105, lines 13-16; at Bates

5   Stamp 119, lines 14 – 18; and Bates Stamp 144, lines 20 - 22.)  The Court also determined that the

6   Ineligible Creditors were not allowed to amend the Involuntary Petition.  (*See id.* at Bates Stamp

7   119, lines 8-20.)  The Court also indicated that it was denying the Trustee Motion without

8   prejudice.  (*See id.* at Bate Stamp 125, lines 2-4.)

9          Notwithstanding the conclusion that the Ineligible Creditors had no standing to commence

10   this case, the Court did not grant the Motion to Dismiss.  Instead, the Court ordered, *sua sponte*

11   and without briefing, the Rechnitz Parties, who are not parties to the case and who were not

12   present or represented at the hearing, to sign and file, under penalty of perjury, a joint declaration

13   identifying each and every one of the Debtor's creditors as of the petition date of April 6, 2020.

14   (*See id.* at Ex. 1 at Bates Stamp 6, § 1.)   The Court required that such declaration be filed within

15   seven days of the hearing, by 3:00 p.m. on Tuesday, June 16, 2020.  (*See id.* at § 2.)  The June 10

16   Order resulting from the June 9 hearing states that if the Rechnitz Parties failed to file the joint

17   declaration by the deadline, the Court would deny the Motion to Dismiss and "immediately enter

18   an order for relief in this case."  (*See id.* at § 3.)   The Court stated that it would enter the order for

19   relief even if the joint declaration was not filed because the Rechnitz Parties invoked their Fifth

20   Amendment rights.  (*See* Ex. 7 at Bates Stamp 143, lines 1-3.)  The Court did not make any

21   findings of fact to support the entry of an order for relief or the imposition of terminating sanctions

22   against Debtor.

23          The June 10 Order provided the Ineligible Creditors with an additional 60 days to contact

24   other creditors in order to determine whether any such creditors were willing to join the petition.

25   (*See id.* at § 4.a.)  Any joinders were to be filed by 3:00 p.m. on August 14, 2020.  (*See id.*; *see*

26   *also* Ex. 7 at Bate Stamp 147, line 25 – Bates Stamp 148, line 3.)  The June 10 Order also

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 666

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   authorized the Ineligible Creditors to conduct certain limited discovery if the joint declaration was

2   filed by the Rechnitz Parties.  (*See id.* Ex. 1 at Bates Stamp 7, at § 4.b.)

3         **C.**     **The Ineligible Creditors Immediately Begin to Take Advantage of the Order**

4         The Ineligible Creditors immediately began using the June 10 Order as a sword.  On June

5   11, 2020, the day after the entry of the June 10 Order, Marco's counsel filed a declaration in his

6   pending lawsuit against Rechnitz Parties, among others, related to the motion for a stay of that

7   case (which is under submission with the District Court) stating as follows:

8             The point being, is that by filing their Joint Declarations sworn under
          penalty of perjury regarding their defrauded creditors (like Marco),

9             and their having to be deposed by Petitioning Creditors re same.
          Rechnitz will *de facto*, have to **_waive_** their Fifth amendment rights

10            against self-incrimination from criminal liability that they fear in this
          Motion. If indeed, Rechnitz complies with Judge Russell's Order, this

11            Motion for Stay would be moot.

12  (*See* Supplemental Decl. of B. Cohen, Ex. 8 at Bates Stamps 154-155 (emphasis in original).)

13        The Ineligible Creditors also began seeking discovery that was overly broad and overly

14  complicated.  On June 11, 2020, the Ineligible Creditors, via counsel, contacted the Debtor's

15  counsel to arrange for certain discovery.  (*See* R. Richards June 11, 2020 Email, Ex. 9 at Bates

16  Stamps 163-164.)  Specifically, the Ineligible Creditors stated their intentions of serving

17  deposition and document subpoenas on Mr. and Mrs. Rechnitz.  The Ineligible Creditors'

18  discovery included discovery related to their own respective claims, which the Court made clear

19  was not permitted.  In addition, the Ineligible Creditors demanded the Rechnitz Parties' cell

20  phones in order "to upload their text messages and emails" and noted their intention to seek

21  electronically stored information discovery regarding Mr. Rechnitz's email account.  (*See id.* at

22  Bates Stamp 163.)  The Ineligible Creditors reiterated their position that if the Rechnitz Parties

23  complied with the June 10 Order, they will have waived their Fifth Amendment rights "as to the

24  entire subject matter which will be a large swath of questions about the various creditors and Jona

25  and Rachel's credibility is fair game and at issue."  (*See id.*)

26        **D.**     **The Criminal Investigation**

27        The Ineligible Creditors manufactured the issues relating to the Fifth Amendment in order

28

7

EMERGENCY MOTION

EXHIBIT "33", PAGE 667

1    to gain an unfair advantage in litigation.  Specifically, the Ineligible Creditors referred their civil

2    disputes to law enforcement and persuaded law enforcement to open an investigation.  Now that

3    an investigation is open and the Rechnitz Parties are compelled to assert their Fifth Amendment

4    privilege consistent with legal advice, the Ineligible Creditors seek to gain an undue advantage

5    from their criminal referral while the government investigates.  The Rechnitz Parties and the

6    Debtor first became aware of the ongoing criminal investigation through a draft Los Angeles

7    Superior Court complaint received from Noval on February 4, 2020.  (Schafler Decl. at Ex. B,

8    Cohen Decl. at ¶ 9.)

9         Noval's draft complaint indicated that Noval had filed a police report with the Beverly

10   Hills Police Department ("BHPD") concerning the allegations in the draft complaint.  (*See id.*)

11   This is also reflected in Noval's filed complaint.  (*See* Ex. 10 at Bates Stamp 187, at ¶ 37.)  On

12   February 7, 2020, counsel for the Rechnitz Parties and the Debtor confirmed with a detective from

13   the BHPD that allegations related to the jewelry business had been referred to the Federal Bureau

14   of Investigation ("FBI").  (*See* Schafler Decl. at Ex. B, Cohen Decl. at  ¶ 10.)  Thereafter, counsel

15   for the Rechnitz Parties and the Debtor conferred with an Assistant United States Attorney

16   ("AUSA") from the Los Angeles office of the United States Attorney's Office for the Central

17   District of California ("USAO") regarding the status of any criminal investigation.  (*Id.* at ¶ 11.)

18        The AUSA advised that the USAO typically does not publicly confirm or deny the

19   existence of any investigation, but that public disclosure of facts related to the criminal allegations

20   concerning the jewelry business may adversely impact any investigation, and thus the USAO

21   supported a stay of related civil proceedings.  (*Id.*)  The investigation remains open and the

22   government continues to not oppose a stay based on the Fifth Amendment.  (*Id.*)

23        **E.    The Entry of the Order For Relief**

24        There was a week between the June 9 hearing on the Motion to Dismiss and the June 16

25   deadline to file the joint declaration.  The day prior to the deadline, on June 15, 2020, the Debtor

26   filed a motion for reconsideration of the June 10 Order or, alternatively, to stay the case pending

27   the conclusion of the criminal investigation (the "Reconsideration Motion").  As indicated in the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 668

1    Reconsideration Motion, the Rechnitz Parties did not file a joint declaration by 3:00 p.m. on June

2    16, 2020 due to the invocation of their Fifth Amendment rights on the advice of counsel. (*See* Ex.

3    11 at Bates Stamp 218-220.)

4         On June 16, 2020, after the 3:00 p.m. deadline passed, the Court entered the order denying

5    the Reconsideration Motion. In that order, the Court reiterated that it intended to enter the order

6    for relief if the joint declaration was not filed because the Rechnitz Parties invoked their Fifth

7    Amendment rights. (*See* Ex. 2 at Bates Stamps 8-12.) The Court also stated that the Debtor did

8    not have a Fifth Amendment right and that the Rechnitz Parties could not assert a Fifth

9    Amendment privilege on behalf of the Debtor. (*See id.* at Bates Stamp 11.)

10        After entry of the Order Denying a Stay, the Court entered an order directing the Clerk of

11   Court to enter an order for relief under chapter 7 and requiring the Debtor to file all schedules and

12   related documentation for a chapter 7 case, in accordance with the Local Bankruptcy Rules, within

13   fourteen days of the entry of the order. (*See* Ex. 3 at 15.) On that same date, the Court entered the

14   Order for Relief. The Order for Relief requires that the Debtor file a list of creditors and schedules

15   within seven and fourteen days, respectively, after the entry of the Order for Relief. The deadline

16   to file a list of creditors is June 23, 2020 and the deadline to file schedules under penalty of

17   perjury is June 30, 2020.

18        **F.    The Basis for the Order for Relief**

19        The legal basis for the entry of the Order for Relief is not clear. The Court did not cite to a

20   statute, rule, or other legal basis in its June 10 Order or June 16 Order to support the orders

21   contained therein or the entry of the Order for Relief, and the Court did not make any findings to

22   support the entry of the Order for Relief under the Code or as a terminating sanction.

23        The Court's order to require that the Rechnitz Parties file a joint declaration under penalty

24   of perjury and providing for the entry of order for relief as the sanction if the declaration was not

25   filed was raised *sua sponte* by the Court during the June 9 hearing on the Motion to Dismiss. The

26   issues related to the Court's order were not briefed. Moreover, the Rechnitz Parties, whose rights

27   were implicated by the Court's June 10 Order, were not represented or present at the hearing. The

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 669

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Court's June 10 Order does not cite to a rule or Code provision for the requirement that the

2  Rechnitz Parties file a joint declaration under penalty of perjury or for entry of an order for relief if

3  the declaration is not timely filed.  The Court did not cite to any such rule or Code provision on

4  the record of the June 9 hearing on the Motion to Dismiss and the Court did not make findings

5  regarding imposing terminating sanctions against the Debtor.  The Court did not entertain

6  argument regarding ordering the filing of the joint declaration and entering the order for relief as a

7  sanction if the Rechnitz Parties did not file the declaration, including due to their Fifth

8  Amendment rights.  (*See* Ex. 17 at Bates Stamp 125, lines 23 -24 ("I'm not going to change what

9  I've said"); at Bates Stamp 126, lines 4-12; and Bates Stamp 143, lines 7 – 25).  The June 16 Order

10  does not cite to any rule or Code provision for the basis of the entry of the Order for Relief.  (*See*

11  Ex. 2 at Bates Stamps 8-12.)

12         **G.**    **The Appointment of the Trustee**

13        Following the entry of the Order for Relief, on June 18, 2020, Sam S. Leslie (the

14  "Trustee"), was appointed as the chapter 7 trustee in the case.  That same day, the Trustee emailed

15  a letter to counsel for the Debtor (with a copy to the Ineligible Creditors' counsel), stating that the

16  Debtor may no longer transact business, requesting the turnover of all inventory, and requesting,

17  in seven days, a substantial amount of information.  (*See* Ex. 12 at Bates Stamps 241-244.)

18

19  **III.**    **THE LEGAL STANDARD FOR STAYING A CASE PENDING APPEAL**

20        Federal Rule of Bankruptcy Procedure ("Rule") 8007(a)(1)(A) allows a bankruptcy or

21  appellate court to suspend an order pending appeal.  The motion should initially be made to the

22  bankruptcy court.  *See* Fed. R. Bankr. Pro. 8007(a)(1).  The standard for determining whether to

23  grant a stay pending appeal is similar to the standard for issuing a preliminary injunction.  *See*

24  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663

25  (9th Cir. 1988).  For both the appellate court and the district court, the factors to be considered are:

26

27          (1) whether the stay applicant has made a strong showing that he is
likely to succeed on the merits of the appeal; (2) whether the applicant
will be irreparably injured absent a stay; (3) whether the issuance of

28

EMERGENCY MOTION

EXHIBIT "33", PAGE 670

the stay will substantially injure the other parties in the proceeding;
and (4) where the public interest lies.

*Braunskill*, 481 U.S. at 776.  Equal weight does not need to be given to the four factors and the

court may use the sliding scale approach to decide the motion for a stay.  *See Leiva-Perez v.*

*Holder*, 640 F.3d 962, 964 (9th Cir. 2011).  Courts have typically placed more weight on the first

two factors.  *See Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012).

The factor requiring a strong showing of likelihood of success on appeal is not a rigid

concept.  It does not mean that the applicant must prove that they are more likely to succeed on

appeal than not.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 966-67 (9th Cir. 2011).  After

analyzing the different terminology, from a "reasonable probability" to "serious legal questions" to

"fair prospect," the Ninth Circuit held:

> We think these formulations are essentially interchangeable, and
> that none of them demand a showing that success is more likely
> than not.  Regardless of how one expressed the requirement, the
> idea is that in order to justify a stay, a petitioner must show, at a
> minimum, that she has a substantial case for relief on the merits.

*Id.* at 967-68.

According to the Ninth Circuit, a rule that the moving party need *not* demonstrate that

success on appeal is probable "makes good sense."  *See id.* at 967.  The Ninth Circuit explained:

> A more stringent requirement would either, in essence, put every case
> in which a stay is requested on an expedited schedule, with parties
> required to brief the merits of the case in depth for stay purposes, or
> would have the court attempting to predict with accuracy the
> resolution of often-thorny legal issues without adequate briefing and
> argument.  Such pre-adjudication adjudication would defeat the
> purpose of a stay, which is to give the reviewing court the time to "act
> responsibly," rather than doling out "justice on the fly."

*Id.*

## IV.    THE DEBTOR HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL

An order for relief is a final appealable order.  *See In re Mason* 709 F.2d 1313, 1316 &

1318 (9th Cir. 1985).  "A bankruptcy court's findings of fact are reviewed for clear error and its

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 671

1    conclusions of law are reviewed *de novo*.  Mixed questions of law and fact are reviewed *de novo*."

2    *In re Quality Laser Works*, 211 B.R. 936, 940 (B.A.P. 9th Cir. 1997), *aff'd,* 165 F.3d 37 (9th Cir.

3    1998) (internal citations omitted).

4          A.    **The Order For Relief Must Be Vacated**

5                1.    **Entry of the Order for Relief Violated the Code**

6          The Bankruptcy Code permits the entry of an order for relief *only* in certain express

7    circumstances, none of which have been satisfied in this case.  Under the Bankruptcy Code, an

8    involuntary petition must be commenced by the requisite number of eligible petitioning creditors.

9    *See* 11 U.S.C. § 303(b).  If an involuntary petition is timely controverted, the court shall, ***after***

10   ***trial***, enter an order for relief "***only if*** — (1) the debtor is generally not paying such debtor's debts

11   as such debts become due unless such debts are the subject of a bona fide dispute as to liability or

12   amount . . . ."  *See* 11 U.S.C. § 303(h) (emphasis added).  The entry of an order for relief without

13   making the finding required by § 303(h) constitutes reversible error.  *See Bartmann v. Maverick*

14   *Tube Corp.*, 853 F.2d 1540, 1546 (10th Cir. 1988); *see also In re Arriola Energy Corp.*, 74 B.R.

15   784, 790-791 (S.D. Tex. 1987) (remanding a case to the bankruptcy court because the putative

16   debtors were denied procedural due process by not having an opportunity to present evidence

17   regarding whether they were generally paying their debts).

18         The entry of an order for relief was improper because none of the elements of the Code

19   were satisfied.

20         •    *First*, the Debtor timely controverted the Involuntary Petition, and, therefore entry

21              of an order for relief due to an alleged debtor's default is not appropriate.  *See* 11

22              U.S.C. § 303(h).

23         •    *Second*, the Court concluded that each of the Ineligible Creditors are ineligible

24              under the Ninth Circuit's decision in *Blixseth* and, as a result, the Ineligible

25              Creditors lack standing to commence this case as required by § 303(b).  *See Dep't*

26              *of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019) (stating that a bona fide

27              dispute "strips the creditor of standing. . . .").

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 672

- *Third*, there has been no finding, after trial (or at all), that the Debtor is generally not paying its undisputed debts as they become due on the agreed-to terms. *See* 11 U.S.C. § 303(h). **Instead, the Debtor was deprived of its statutory and due process rights to answer and to trial**. *See In re Arriola Energy Corp.*, 74 B.R. at 790-791.

Because the Debtor timely controverted the Involuntary Petition, the Court can enter an order for relief "*only if*" there are the requisite number of petitioning creditors and the Court determines after a trial that the Debtor is generally not paying its undisputed debts as they become due.  These requirements not have not been satisfied.  For this reason alone, the Order for Relief must be vacated.

### 2.   <u>The Order For Relief Cannot Be Justified as a Terminating Sanction</u>

The basis for the Court's entry of the Order for Relief is not clear from the record.  Neither the June 10 Order nor the June 16 Order cite to a rule or statute, or state the contemplated legal grounds for the requirement that the Rechnitz Parties file a joint declaration under penalty of perjury and the entry of an order for relief as the consequence if they did not.  As an involuntary bankruptcy case proceeds as an adversary proceeding with the order for relief serving as the judgment sought by the petitioners, the entry of the Order for Relief can only be viewed as a terminating sanction. *See In re Mason* 709 F.2d 1313, 1316 & 1318 (9th Cir. 1985) (stating that an involuntary case has many of the "attributes of 'adversary proceedings'" and that the "rules contemplate a procedure much like any other lawsuit. . . .").  Because the Court did not cite to any rule or Code provision to support the issuance of terminating sanctions and because entry of the Order for Relief did not satisfy the elements of the Code, the Debtor has also analyzed the entry of the Order for Relief as an exercise of the Court's inherent authority.  The entry of the Order for Relief also exceeded the Court's inherent authority.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EMERGENCY MOTION

EXHIBIT "33", PAGE 673

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ♦ Fax 714 445-1002

**(a)**     <u>The Entry of the Order for Relief Is Contrary to Supreme Court</u>

<u>Precedent</u>

The entry of the Order for Relief is contrary to the Supreme Court's holding in *Law v. Siegel*.  In that case, the bankruptcy court surcharged the debtor's homestead exemption as a sanction for his serious misconduct.  *See Law v. Siegel*, 571 U.S. 415, 420-21 (2014).  The Supreme Court stated:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."  Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.  **Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions**.  **We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code**.

*Law*, 571 U.S. at 421 (emphasis added).  With this in mind, the Supreme Court concluded that the surcharge was unauthorized because it "contravened a specific provision of the Code."  *See id.* at 422.

The Court's decision to direct the entry of the Order for Relief as a sanction was unauthorized because it contravened a specific provision of the Code.  As discussed above, the Code sets forth the specific requirements that must be satisfied for the entry of an order for relief.  There must be the requisite number of petitioning creditors.  *See* 11 U.S.C. § 303(b).  Moreover, the Code expressly states that where, as here, the involuntary petition is timely controverted, then an order for relief can be entered "after trial" and "***only if*** — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount . . . ."  *See* 11 U.S.C. § 303(h) (emphasis added).  Given the extreme and serious nature of an involuntary bankruptcy, the Code's express limitation of the circumstances in which an order for relief may be entered makes sense.[2]

---

[2]     The Code's express limitation of the circumstances in which a business can be forced into bankruptcy against its will, and the policy recognized by the Ninth Circuit in *Blixseth* of prohibiting ineligible creditors from using

EXHIBIT "33", PAGE 674

1    Here, there were no eligible creditors with standing to commence this case and the Court

2 did not find, after a trial, that the Debtor was generally not paying its undisputed debts as they

3 became due.  Under *Law v. Siegel*, the Court lacks the sanctioning power to override the Code and

4 to enter an order for relief contrary to the Code's express provisions.  The entry of the Order for

5 Relief without the requisite number of eligible creditors and without a finding, after trial, that the

6 Debtor was not generally paying its debts as they came due was contrary to specific provisions of

7 the Code—303(b) & (h).  For this reason alone, the Order for Relief must be vacated.

8    The Court's entry of the Order for Relief following denial of the Motion to Dismiss was

9 also contrary to the Bankruptcy Rules.  The Court concluded that the Motion to Dismiss had merit

10 and should be granted (absent any other eligible joining creditors).  However, assuming *arguendo*,

11 the Court had determined that the Motion to Dismiss must be denied (or if the Debtor had not filed

12 a motion to dismiss in the first place), then the consequence required by the Bankruptcy Rules is

13 that the Debtor must file an answer and the involuntary case proceeds to trial.  *See* Fed. R. Bankr.

14 P. 1011(a) &(c); Fed. R. Bankr. P. 1003(b); 11 U.S.C. § 303(h).  Whether the Debtor's answer

15 must be accompanied by a list of creditors is governed by Bankruptcy Rule 1003(b).  The entry of

16 the Order for Relief was contrary to the Code and the Bankruptcy Rules, and deprived the Debtor

17 of its statutory and procedural due process rights to contest the Involuntary Petition.  *See* Fed. R.

18 Bankr. P. 1011(a).

19    **(b)    The Entry of the Order For Relief Exceeded the Court's**

20    **Inherent Authority**

21    Alternatively, even if the entry of the Order for Relief did not violate the Code, it still

22 exceeded the scope of the Court's inherent authority.  Federal courts have the inherent power "to

23 levy sanctions in response to abusive litigation tactics." *See Fjelstad v. Am. Honda Motor Co.,*

24 *Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (internal quotation marks omitted).  However, a court's

25 inherent power to sanction has limits.  As explained by the Ninth Circuit:

26

27

28 involuntary petitions as a sword, are meaningless if *ineligible* creditors can obtain an order for relief when none of the
elements in the Code are satisfied.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 675

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In this circuit, courts have inherent power to dismiss an action when a party has **willfully deceived the court** and engaged in conduct utterly inconsistent with the orderly administration of justice. Due process limits the imposition of the severe sanctions of dismissal or default to **extreme circumstances** in which the deception related to matters in controversy and prevents their imposition merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.

*Fjelstad*, 762 F.2d at 1338 (9th Cir. 1985) (internal citations and quotation marks omitted) (emphasis added).

In addition, the Ninth Circuit has made clear that terminating sanctions in response to the invocation of the Fifth Amendment is improper and constitutes an abuse of discretion. *See Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979) (discussing in the context of terminating sanctions issued related to discovery under Rule 37); *see also Doe ex. rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("[T]he Rules of *Civil* Procedure recognize an appropriate role for the exercise of this privilege, and a refusal to respond to discovery under such invocation cannot justify the imposition of penalties."). In *Campbell*, the plaintiff pled the Fifth Amendment in response to certain interrogatories. *See id.* at 1056. The district court ordered the plaintiff to answer the interrogatories or face dismissal. When the plaintiff did not answer the interrogatories as ordered by the court, the court dismissed the lawsuit. *See id.* The Ninth Circuit, quoting the Supreme Court, made clear that the Fifth Amendment privilege applies regardless of the nature of the proceeding. *See id.* at 1057. The Ninth Circuit held that "[i]mposing the harshest of Rule 37 sanctions on a proper exercise of Fifth Amendment rights is not in accord with Supreme Court decisions." *See id.*

The Court exceeded its inherent authority by directing the entry of the Order for Relief. The Court did not make findings of the type of "extreme circumstances" and "willful deception" necessary to support its imposition of terminating sanctions. Neither the Rechnitz Parties nor the Debtor engaged in any conduct to warrant any sanctions (let alone terminating sanctions). The Order for Relief was not entered to sanction any alleged willful deception of the Court. Instead, the Court issued terminating sanctions against the Debtor for the failure to file a joint declaration (by two individuals who were not even parties to the proceeding). And, the joint declaration was

EXHIBIT "33", PAGE 676

1    not filed because the Rechnitz Parties permissibly and on advice of counsel exercised their Fifth

2    Amendment rights.  Thus, the entry of the Order for Relief cannot be justified as a terminating

3    sanction under the Court's inherent power.

4           The imposition of terminating sanctions because the Rechnitz Parties permissibly invoked

5    their Fifth Amendment rights violates Ninth Circuit law.  The Ineligible Creditors will certainly

6    argue that the Debtor, an LLC, does not have a Fifth Amendment right.  This argument misses the

7    point and, further, helps to demonstrate the severity of the sanction.  The June 10 Order did not

8    order the Debtor to do anything.  Rather, it ordered two individuals, the Rechnitz Parties, who

9    have Fifth Amendment rights, to provide testimony.  Compliance with the June 10 Order was not

10   within the Debtor's control.  Moreover, the fact remains that terminating sanctions were imposed

11   against the Debtor because the Rechnitz Parties permissibly invoked their Fifth Amendment rights

12   on advice of counsel.  The Reconsideration Motion made clear the dilemma the Rechnitz Parties

13   and the Debtor were facing.  (*See* Ex. 11 at Bates Stamp 235, line 5 – Bates Stamp 236, line 3.)

14   However, in denying the Reconsideration Motion, the Court reiterated that it would direct the

15   entry of the Order for Relief notwithstanding the Rechnitz Parties proper invocation of the Fifth

16   Amendment.  (*See* Ex. 2 at Bates Stamp 10, line 1 – Bates Stamp 11, line 13.)  This was contrary

17   to Ninth Circuit law.  *See Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979).

18                    **3.      The Order Is Void for Violation of Due Process**

19          The Order is void.  An order "issued by a court in a manner inconsistent with the due

20   process clause of the Fifth Amendment" is void.  *See In re Krueger*, 88 B.R. 238, 241 (9th Cir.

21   1988).  Here, the Order directs two persons who are not debtors, who were not parties to the

22   proceedings, and who were not represented at the hearings on June 9, 2020 to submit a joint

23   declaration under penalty of perjury.  Moreover, the requirement that the Rechnitz Parties submit

24   testimony under penalty of perjury or else an order for relief would be entered against the Debtor

25   was raised *sua sponte* by the Court.  The Rechnitz Parties did not receive any advance notice or an

26   opportunity to be heard regarding the June 10 Order, which implicated their constitutional rights.

27   Accordingly, because the Rechnitz Parties did not receive notice that the Court may order them to

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 677

1    take certain action (*i.e.*, file a joint declaration under penalty of perjury and to do so

2    notwithstanding their Fifth Amendment rights), the Order is void.

3        Based on all of the foregoing, there is a strong likelihood that the entry of the Order for

4    Relief will be reversed on appeal.  The next question is whether the case should be remanded or

5    dismissed.  It should be dismissed.

6        **B.**    **The Court's Denial of the Motion to Dismiss Was In Error**

7            **1.**    **The Court Was Required to Dismiss the Case Because the Ineligible**

8                **Creditors Lacked Statutory Standing**

9        The Court was required to dismiss the Involuntary Case.  A "lack of *statutory* standing

10   requires dismissal for failure to state a claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th

11   Cir. 2011) (emphasis in original).  A bona fide dispute as to any portion of a creditor's claim

12   "strips the creditor of standing under § 303(b)(1)." *See Dep't of Revenue v. Blixseth*, 942 F.3d

13   1179, 1185 (9th Cir. 2019).  The Court found that the Ineligible Creditors were ineligible because

14   their claims were subject to bona fide disputes.  Moreover, the Court made that finding within the

15   standard for a Rule 12(b)(6) motion based on their judicial admissions and the facts subject to

16   judicial notice.  Because the Court concluded that the Ineligible Creditors lacked statutory

17   standing to file the Involuntary Petition in connection with the Motion to Dismiss, dismissal for

18   failure to state a claim was required under binding Ninth Circuit Law.  *See Maya v. Centex Corp.*,

19   658 F.3d 1060, 1067 (9th Cir. 2011).

20           **2.**    **The Court Was Required to Enter a Dispositive Order Dismissing the**

21               **Case Under the Bankruptcy Rules**

22       The Ninth Circuit has emphasized on multiple occasions that "'[t]he court shall determine

23   the issues of a contested [involuntary] petition at the earliest practicable time and forthwith' enter a

24   dispositive order." *See In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002)

25   (quoting Bankruptcy Rule 1013(a)) (alterations in original); *see also In re Bishop, Baldwin,*

26   *Rewald, Dillingham & Wong, Inc.*, 779 F.2d 471, 474 (9th Cir. 1985) (same).  "The 'earliest

27   practicable time' is when the bankruptcy court has 'sufficient information to resolve the conflict'

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 678

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    before it." *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d at 474. "Entry of

2    summary judgment where appropriate is unquestionably a literal compliance with Rule 1013."

3    *See id.* at 475-75.

4         The bankruptcy court is required to "pause before hearing on the merits of an involuntary

5    petition *in only one circumstance*[,]" which does not apply here. *See In re Vortex Fishing Systems,*

6    *Inc.*, 277 F.3d at 1061. (emphasis added). The court must assure that creditors have a reasonable

7    opportunity to join the petition when required by Bankruptcy Rule 1003(b), *i.e.,* "when the alleged

8    debtor's answer to the petition *filed by fewer than three petitioners* asserts that the petition fails"

9    because three petitioning creditors are required. *See id.* In *Vortex Fishing*, the Ninth Circuit

10    concluded that "[b]ecause more than three petitioners filed the initial involuntary petition,

11    notification of other creditors was not required under the joinder provisions of Bankruptcy Rule §

12    1003(b)." *See id.* at 1062 (emphasis added). Moreover, according to the Ninth Circuit, the

13    discretion of the court to provide an opportunity for non-petitioners to join in three-petitioner

14    cases must be exercised within the "context of the Rule 1013(a) mandate that the court resolve the

15    merits of the involuntary petition 'at the earliest practicable time.'" *See id.* at 1062. (emphasis

16    added).

17         Where, as here, the case is commenced by three petitioning creditors, Rule 1003(b) does

18    not apply. In *In re Taub*, the alleged debtor sought dismissal of an involuntary petition

19    commenced by three petitioning creditors on the basis that the creditors' claims were subject to

20    bona fide dispute as to liability and amount. *See In re Taub*, 439 B.R. 261, 267 (Bankr. E.D.N.Y.

21    2010). The petitioning creditors argued that the court "should provide a window of time for non-

22    petitioning creditors holding unsecured claims to join the Petition." *See id.* at 271. The court

23    rejected the creditors' request. *See id.* at 271-72. The court held that Bankruptcy Rule 1003 does

24    not apply "when the alleged debtor seeks dismissal of the petition on the basis that the petitioning

25    creditors are not qualified under § 303(b) because their claims are subject to a bona fide dispute."

26    *See id.* at 271. Relying on *Vortex Fishing Systems*, the court concluded that because the case was

27    commenced by three petitioners and because the debtor sought dismissal because all three were

28

EXHIBIT "33", PAGE 679

1  ineligible, "there is no requirement that non-petitioning creditors be afforded 'a reasonable

2  opportunity' to join the Petition." *See id.*

3    The Court was required to grant the Motion to Dismiss.  The Court found that each of the

4  Ineligible Creditors were ineligible and lacked standing based on the standard governing a Rule

5  12(b)(6) motions to dismiss.  By its own findings, the Court had sufficient information to resolve

6  the dispute before it, and, as such, the "earliest practicable time" set forth in Bankruptcy Rule 1013

7  had arrived.  *See In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d at 474.

8  Granting a meritorious motion to dismiss is "unquestionably a literal compliance with Rule 1013."

9  *See Id.* at 474-75 (discussing entry of summary judgment).  Moreover, Bankruptcy Rule 1003(b) is

10  inapplicable in this case because it was not commenced by "fewer than three petitioning

11  creditors[.]"  Rather, like *Taub*, this case was commenced by three creditors and the Debtor sought

12  dismissal on the basis that all three are ineligible.  Because Bankruptcy Rule 1003(b) did not apply

13  and because the Motion to Dismiss had merit, the Court was required to enter a dispositive order

14  granting the Motion to Dismiss and dismissing the case.  Delaying the ruling on the Motion to

15  Dismiss to require a declaration and permit an additional 60 days for non-petitioners to join was

16  an abuse of discretion and violated Bankruptcy Rule 1013(a) and Ninth Circuit law.

17    **C.**  **The Court Erred in Not Dismissing the Case for Bad Faith**

18    Whether the bankruptcy court applied the correct legal standard in analyzing bad faith is a

19  mixed question of law and fact that is reviewed *de novo*.  *See In re Macke Int'l Trade, Inc.*, 370

20  B.R. 236, 245 (B.A.P. 9th Cir. 2007).  The bankruptcy court's finding of the absence of bad faith is

21  reviewed under the clearly erroneous standard.  *See id.*

22    An involuntary petition may be dismissed for bad faith.  Bankruptcy courts, including

23  those in the Ninth Circuit and within this District, have dismissed involuntary bankruptcy cases

24  commenced in bad faith.  *See, e.g.*, *In re WSB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal.

25  2003); *In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal. 2007); *In re U.S. Corp.*, 2011 WL

26  1900416, at *3 (Bankr. D. Ariz. 2011); *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 247–48

27  (B.A.P. 9th Cir. 2007) (upholding the bankruptcy court's dismissal of an involuntary petition

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  pursuant to § 305 based on the totality of the circumstances, including findings that there was

2  pending litigation in another forum that would be more appropriate to resolve the parties' disputes

3  and that, in commencing the involuntary case, the petitioning creditors were forum shopping).

4  The existence of bad faith is governed by an objective test.  Under the objective test, bad faith

5  exists if a reasonable person would believe that the subject conduct constitutes bad faith.  *See In re*

6  *Wavelength, Inc.*, 61 B.R. 614, 620 (B.A.P. 9th Cir. 1986).

7       The uncontroverted evidence before the Court demonstrated that the case was commenced

8  in bad faith for the following reasons:

9       1.    As the Ineligible Creditors' pending lawsuits demonstrate, state law remedies exist

10            and were not exhausted; (Ex. 14 at Bates Stamp 287, lines 21 – Bates Stamp 288,

11            line 26);

12      2.    The Ineligible Creditors' claims were clearly subject to bona fide disputes as to at

13            least amount, the Ineligible creditors knew bona fide disputes existed, and the

14            Ineligible Creditors either knew they were ineligible or failed to conduct a

15            reasonable investigation into the relevant facts and pertinent law before

16            commencing the case; (*See id.* at Bates Stamp 288, line 27 – Bate Stamp 289, line

17            11);

18      3.    The commencement of the case constituted forum shopping as the Ineligible

19            Creditors commenced this case only after Noval's lawsuit was stayed and in order

20            to circumvent that ruling; (*See id.* at Bates Stamp 289, lines 12 23); and

21      4.    The Ineligible Creditors have taken inconsistent positions, submitted inaccurate

22            testimony, misquoted Ninth Circuit law, and it appears that one Ineligible Creditor

23            submitted documentary evidence under penalty of perjury that was altered.  (*See id.*

24            at Bates Stamp 289, line 24 – Bates Stamp 290, line 4.)

25      The Court denied the Motion to Dismiss without deciding the issue of the Ineligible

26  Creditors' bad faith.  Based on the Ineligible Creditors' bad faith, the case should have been

27  dismissed.

28

1    In sum, there can be no question that the Debtor has a substantial case on the merits. The

2    strength of this factor alone supports a stay pending appeal. There is a strong likelihood that the

3    Order for Relief will be vacated on appeal. The elements for the entry of an order for relief were

4    not satisfied. Moreover, the entry of the Order for Relief as a terminating sanction for the non-

5    compliance with the June 10 Order exceeded the Court's authority. There is also a strong

6    likelihood that the case will be dismissed. Because the Court found that the Ineligible Creditors

7    lacked standing based on the Debtor's Motion to Dismiss, the Court was required to grant the

8    Motion to Dismiss and dismiss the case.

9    **D.    The Court Erred in Denying the Debtor's Request for a Stay Pending the**

10   **Related Criminal Investigation**

11   An order denying a motion to stay proceedings is reviewed for an abuse of discretion. *See*

12   *Maciel v. Palmer*, 271 Fed. Appx. 577, 577 (9th Cir. 2008). The Debtor sought reconsideration of

13   the June 9 Order, or, alternatively, a stay of the case pending the conclusion of the related criminal

14   investigation. The Court's denial of the Debtor's request for reconsideration was in error for the

15   reasons set forth above. In addition, the Court's denial of the Debtor's request for a stay was an

16   abuse of discretion. The Order Denying a Stay does not reflect that the Court considered the most

17   important factor in determining whether to stay a case due to parallel criminal and civil

18   proceedings (the overlap between the two) or weighed the factors typically considered by courts.

19   There can be no dispute that the criminal investigation, the Ineligible Creditors' lawsuits, and the

20   bankruptcy case all relate to the Debtor's jewelry business. Moreover, as demonstrated in the

21   Debtor's Reconsideration Motion, the other factors considered by courts weigh in favor of a stay.

22   In their opposition to the Reconsideration Motion, the Ineligible Creditors argued that the

23   Debtor, an LLC, does not have a Fifth Amendment right. This position is set forth in the Court's

24   Order Denying a Stay. However, the Debtor did not assert that it has a Fifth Amendment right.

25   Rather, the point is that the June 10 Order required two *individuals*, who do have Fifth

26   Amendment rights, to submit testimony. As argued in the Reconsideration Motion, courts have

27   stayed cases against a company based on the Fifth Amendment rights of an individual where the

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 682

1    individuals invocation of his or her Fifth Amendment rights would prevent the company from

2    adequately defending itself.  *See, e.g. Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin.,*

3    *Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009); *In re Adelphia Commc'ns Corp.*, 302

4    B.R. 439, 452 (Bankr. S.D.N.Y. 2003).  Here, the argument for a stay is even more compelling

5    because the Rechnitz Parties' permissible invocation of their Fifth Amendment rights on advice of

6    counsel resulted in terminating sanctions against the Debtor completely depriving it of the right to

7    defend itself.

8

9    **V.    THE DEBTOR WILL BE IRREPARABLY HARMED ABSENT A STAY**

10          An order for relief constitutes irreparable harm.  "Involuntary bankruptcy is

11    an extreme remedy with dire consequences upon [an alleged debtor]."  *In re Anmuth Holdings*

12    *LLC*, 600 B.R. 168, 188 (Bankr. E.D.N.Y. 2019) (alternation in original) (internal quotation marks

13    omitted).  In determining that an order for relief is an appealable order, the Ninth Circuit has

14    recognized the significant irreparable harm arising from entry of an order for relief in an

15    involuntary case.  *See In re Mason*, 709 F.2d 1313, 1316 (9th Cir. 1983) ("[W]e are convinced that

16    orders for relief should be considered final for purposes of appeal because they 'may determine

17    and seriously affect substantive rights' and 'cause irreparable harm to the losing party if he had to

18    wait to appeal to the end of the bankruptcy case.'").  Moreover, the Ninth Circuit itemized the

19    irreparable harm inflicted on alleged debtors as follows:

20          An order for relief, being a conclusive determination of the debtor's
      status as bankrupt, **carries with it a great potential for irreparable**
21    **injury** if immediate appeal is not allowed.
      An order for relief effectively divests the debtor of his assets, creating
22    an estate controlled by the bankruptcy court. In a Chapter 7 case the
      trustee is obligated to gather the assets of the estate, liquidate them,
23    and to the extent possible satisfy creditors' claims. . . . During the
      administration of the estate the debtor's rights are limited. On entry of
24    the order for relief he loses control of his assets, which may include a
      business. Once property of the estate is liquidated there appears to be
25    no way the debtor can force bona fide purchasers to return the
      assets. A debtor may possibly attack the propriety of every sale by
26    appeal, but to effectively do so he must seek to stay the sale. Such a
      procedure, however, is unduly burdensome and it is also unclear
27    whether a debtor, once adjudicated a bankrupt, is a proper party to
      attack a sale by the estate.
28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 683

1    *In re Mason*, 709 F.2d at 1317 (emphasis added).  The Ninth Circuit similarly recognized the

2    severe consequences of an involuntary case in *Vortex Fishing Sys., Inc.  See Higgin v. Vortex*

3    *Fishing Sys., Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) 379 F.3d 701, 707 (9th Cir. 2004) ("Filing

4    an involuntary petition should be a measure of last resort because even if the petition is filed in

5    good-faith, it can 'chill[ ] the alleged debtor's credit and sources of supply,' and 'scare away his

6    customers.'" (alterations in original)).

7            The Debtor is clearly irreparably harmed absent a stay pending appeal.  An involuntary

8    case is always an extreme remedy with dire consequences.  Here, the case is even more extreme as

9    the Debtor is being placed into bankruptcy against its will, without trial, and ***when none of the***

10   ***legal requirements have been satisfied***.  In this case, the entry of the Order for Relief in and of

11   itself constitutes irreparable injury.  Moreover, staying an order for relief entered in favor of

12   ineligible creditors and contrary to the Code is entirely consistent with the Ninth Circuit's view

13   that improper involuntary bankruptcy filings should be discouraged.  *See Vortex Fishing Sys., Inc.*,

14   379 F.3d at 707 (stating that the presumption in favor of attorney's fees upon dismissal an

15   involuntary case "helps reinforce the idea that '[t]he filing of an [i]nvoluntary [p]etition should not

16   be lightly undertaken,'. . .  and 'will serve to discourage inappropriate and frivolous filings.'"

17   (internal citations omitted) (alterations in original)); *see also Dep't of Revenue v. Blixseth*, 942

18   F.3d 1179, 1184 & 1187 (9th Cir. 2019) (stating the "'bona fide dispute' limitation" is designed to

19   prevent creditors using the involuntary bankruptcy process to leverage the collection of disputed

20   claims).

21           As recognized by the Ninth Circuit, the legal consequences immediately arising from the

22   entry of the Order for Relief constitute irreparable harm.  A trustee has been appointed who is now

23   tasked with collecting and liquidating assets.  The entry of the Order for Relief created the estate

24   comprised of legal and equitable interests in property as of the petition date of the Debtor.  *See* 11

25   U.S.C. § 541.  The Debtor is also divested of claims against the Ineligible Creditors and its ability

26   to defend against the Ineligible Creditors' claims is negatively impacted.  The position taken by the

27   Trustee immediately upon his appointment and the substantial amount of information he has

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 684

1    already requested in short order demonstrates the irreparable harm to be suffered by the Debtor

2    absent a stay.  (*See* Ex. 12 at Bates Stamps 241-244.)  Moreover, as stated by the Ninth Circuit,

3    requiring the Debtor to contest each and every transaction or act by the Trustee in the case would

4    be unduly burdensome.

5         Absent a stay the Debtor will not be in a position to defend itself or comply with certain

6    requirements.  The Trustee has requested significant information from the Debtor.  (*See* Ex. 12.)

7    The Court has ordered the Debtor to file schedules, which are completed under penalty of perjury,

8    in fourteen days from the entry of the Order for Relief.  The schedules and the information

9    requested by the Trustee will implicate the Fifth Amendment rights of the Rechnitz Parties, and

10    thus, the very issue that resulted in the Order for Relief will lead to a series of disputes post-

11    petition.  (*See* Schafler Decl. at ¶ 5.)  A stay will prevent the disputes likely to occur related to the

12    Rechnitz Parties' Fifth Amendment Rights.

13

14    **VI.    THE INELIGIBLE CREDITORS WILL NOT BE SUBSTANTIALLY INJURED BY**

15    **A STAY**

16         The Ineligible Creditors will not be injured by a stay, substantially or otherwise.  The entry

17    of the Order for Relief was an unwarranted windfall for the Ineligible Creditors.  The Ineligible

18    Creditors were determined to be ineligible and had no standing to commence the case and no right

19    to an order for relief.  Moreover, the Ineligible Creditors have pending lawsuits that provide for a

20    for their disputed claims.  To the extent those lawsuits are stayed, they should be bound by those

21    stays.  One of the Ineligible Creditors' lawsuits is temporarily stayed, and another has a motion for

22    stay under submission.  (*See* Ex. 11, at Bates Stamp 236, lines 11-13.)  The Ineligible Creditors

23    should not be permitted to circumvent their respective pending actions by obtaining free discovery

24    by use of the Trustee or otherwise in the bankruptcy case.

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 685

**VII.    A STAY WILL NOT HARM NON-PARTIES**

The stay will not substantially harm any alleged non-parties.  Again, this case should not have been commenced in the first instance as the Ineligible Creditors lacked standing from the beginning.  This case has been pending for over two months and the Ineligible Creditors argued to this Court that they know of other creditors who want to join the petition, which must mean they have already been contacting alleged creditors.  (*See* Ex. 15, excerpt of Opp'n. to Mot. to Dismiss, at Bates Stamp 293, note 3.)  Yet, despite the Ineligible Creditors assertions and efforts, no other creditors have attempted to join the petition.  Moreover, absent a stay, the Trustee will be required to perform certain services and tasks, but will be required to do so with the appeal over his head and with the risk that the Order for Relief will be vacated.  Thus, a stay pending appeal prevents the risk of a serious waste of time and money by the Trustee if the Order for Relief is vacated.

**VIII.    THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY**

The public interest weighs in favor of a stay.  Here, there can be no question that the party suffering the most harm is the Debtor, and, for that reason, the public interest supports a stay.  *See also In re Kenny G. Enterprises. LLC*, 2014 WL 1806891, at *3 (C.D. Cal. 2014) ("[t]he public interest here likely follows the party that would suffer the most harm with or without the stay.").  Moreover, as articulated by the Ninth Circuit, an involuntary case is an extreme remedy of last resort that has serious ramifications.  *See Higgins v. Vortex Fishing Systems, Inc.,* 379 F.3d 701, 707 (9th Cir. 2004).  Absent a stay, the Ineligible Creditors will continue to reap the benefits of relief to which they are not entitled.  From a policy perspective, allowing this case to proceed would encourage ineligible creditors to file improper involuntary petitions against putative debtors.  The public interest is supported by the stay of the case pending the outcome of the Appeal.

The public interest is also supported by preserving the *status quo* when an appeal could affect the administration of the case.  In *In re Cont'l Coin Corp.*, the District Court affirmed the bankruptcy court's issuance of a stay pending appeal because it preserved the status quo:

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "33", PAGE 686

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   [T]he bankruptcy court found that a stay was in the public interest
2   because "going forward with the merits of the case while an appeal is
    pending on the very question of what is actionable . . . would be a
3   serious waste of time, money, and judicial resources. Therefore,
    granting a stay pending appeal will best preserve the status quo and
4   serve to prevent irremediable harm to the trustee and to the estate [.]"

5   *In re Cont'l Coin Corp,* 2009 WL 2589635 at *10 (C.D. Cal. Aug. 21, 2009).  The appeal does not

6   concern a single particular transaction or motion in a case, *but whether the case should exist at all*

7   and whether the Debtor was properly forced into bankruptcy against its will.  Because the pending

8   appeal involves the very question of whether the case is proper, absent a stay, there is a risk of a

9   serious waste of time, money, and judicial resources.

10          Finally, notwithstanding the Ineligible Creditors' allegations that they know of other

11  creditors, this case is the result of litigation between the Debtor and the Ineligible Creditors.  The

12  public simply does not have an interest in these particular private disputes.  Accordingly, this

13  factor also weighs in favor of the proposed stay.

14

15  **IX.    CONCLUSION**

16          Based on the foregoing, the Debtor respectfully requests that the Court stay this case

17  pending the Appeal.  The Debtor also requests a temporary stay pending the Court's consideration

18  of the Motion, and, if the Court is inclined to deny the Motion, a temporary stay to allow the

19  Debtor to file a motion with the appellate court on an emergency basis.

20

21                                      Respectfully submitted,

22  DATED:  June 19, 2020              SMILEY WANG-EKVALL, LLP

23

24                              By:        */s/ Robert S. Marticello*
                                        ROBERT S. MARTICELLO
25                                      MICHAEL L. SIMON
                                        Attorneys for Jadelle Jewelry and Diamonds,
26                                      LLC.

27

28

EXHIBIT "33", PAGE 687

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**


A true and correct copy of the foregoing document entitled (*specify*): **Emergency Motion Pursuant to Federal Rule of Bankruptcy Procedure 8007 for Stay Pending Appeal; and Memorandum of Points and Authorities** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/19/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@iq7technology.com;trustee@trusteeleslie.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Neal Salisian    ECF@salisianlee.com
- Michael Simon    msimon@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **06/19/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via First Legal:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/19/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "34"

1  opportunity' to exercise their § 303(c) statutory power to join as petitioners . . . ." Id., at

2  1071.

3          Vortex Fishing, thus, underscores that all creditors must have a reasonable

4  opportunity to join in an involuntary petition where the number of petitioning creditors is

5  being challenged by the debtor.  It was only unnecessary in Vortex Fishing because, in a

6  consolidated hearing, the bankruptcy court correctly found that the involuntary debtor was

7  not in financial distress; joinder, thus, would have been a meaningless endeavor.  In sum,

8  once a trial is required to resolve issues in a contested involuntary proceeding, the

9  involuntary debtor must answer within 14 days.  See QDOS, 607 B.R. at 345 (a Rule

10  12(b)(6) motion is no substitute for a trial on dispositive issues, and a putative debtor

11  must answer an involuntary petition and file the requisite creditor list).

12          Nothing warrants a departure from this line of cases, especially since the

13  Petitioning Creditors are aware of scores of other creditors and victims of Jadelle's fraud.

14  The Debtor has no choice but to follow controlling law and not only answer the petition,

15  but submit its Rule 1003(b) creditor list.[3]

16                                    **IV.**

17          **THE MOTION IS DEVOID OF A SINGLE SHRED OF ADMISSIBLE EVIDENCE**

18          Even presuming that relief could be granted under Rule 12(b)(6), there is no

19  evidentiary basis for any of the Debtor's fanciful contentions.  Since the sworn testimony

20  of a convicted felon and swindler certainly would not be worth the paper it is written on,

21  and possibly would subject him to perjury charges, the Debtor instead relies on a host of

22  hand-selected pleadings from other courts in a fruitless attempt to create an evidentiary

23

24

25

26  _____

27  [3] Petitioning Creditors are aware of other creditors who may be interested in joining the involuntary petition
to prevent the Debtor and the Rechnitz's from further abusing the legal system and other innocent parties.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT "34", PAGE 689

United States Bakruptcy
Appellate Panel for the Ninth
Circuit Case Number(s)

CC-20-1153

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Bankruptcy Appellate Panel for the Ninth Circuit by using the appellate CM/ECF system

on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) _____

*************************************************************************

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

APPENDIX OF EXHIBITS IN SUPPORT OF JOINT EMERGENCY MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 FOR STAY PENDING APPEAL

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Bankruptcy Appellate Panel for the Ninth Circuit by using the appellate CM/ECF system

on (date)  07/09/2020 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| | | |
|---|---|---|
| Carolyn A. Dye, Esq. | Sam S. Leslie | Jona and Rachel Rechnitz |
| Law Office of Carolyn A. Dye | Suite #990 | 9533 Sawyer Street |
| 3435 Wilshire Blvd | 3435 Wilshire Blvd. | Los Angeles, CA 90035 |
| Suite 990 | Los Angeles, CA 90010 | |
| Los Angeles, CA 90010 | | |

Signature (use "s/" format)      /s/ Lynnette Garrett